

FILED
CLERK, U.S. DISTRICT COURT

OCT 2 7 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

OCT 2 7 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-6   NO
JS-2/JS-3 ____
Scan Only ____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENNIS RUTHERFORD, et al. | ) | Case No. CV 75-04111 DDP |
| | ) | |
| Plaintiffs, | ) | ORDER TO SHOW CAUSE RE ISSUANCE |
| | ) | OF PRELIMINARY INJUNCTION AND |
| v. | ) | TEMPORARY RESTRAINING ORDER |
| | ) | |
| LEROY BACA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On October 19, 2006, the Court held a hearing on Plaintiff's Order to Show Cause for Temporary Restraining Order and Preliminary Injunction.  The Court reviewed the declarations and briefs submitted by the parties.  Additionally, the Court heard testimony from Mary Tiedeman, the Jails Coordinator for the ACLU Foundation of Southern California whose responsibilities include monitoring compliance with the orders relating to this case.  The Court heard testimony from Capt. Timothy Cornell, who is responsible for the administration of the Inmate Reception Center ("IRC").  The Court heard testimony from Commander Alex Yim, who is a commander in the correctional services division of the Los Angeles County Sheriff's Department ("LASD").

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

(102)

1    The Court has toured the Men's Central Jail ("MCJ") on two

2  occasions.  During the first tour on May 10, 2006, there was clear

3  evidence of overcrowding.  The Court is aware that overcrowding,

4  per se, may not be a constitutional violation.  However, several

5  examples of what the Court observed consisted of overcrowding to

6  such a degree that a finding of a constitutional violation would be

7  warranted.  Specifically, the Court noted that cells originally

8  designed for four inmates housed six inmates, and cells designed

9  for two inmates held four inmates. The Court observed that the

10  cells were of such a size that inmates were required essentially to

11  be in their bunks at all times because there was not sufficient

12  floor space for them to stand.  The Court also noted that inmates

13  are in these cells 24 hours a day, 7 days a week, unless they have

14  medical visits, family visitation, or are taken to the roof for

15  exercise.  Exercise consists of about three hours per week,

16  typically done in a single three hour session.  The inmates are

17  served all of their meals in these cells.  Inmates may be assigned

18  to these cells for many months.  These cells also contain a

19  toilet/basin facility.  Following this tour, the Court stated that

20  what was observed was inconsistent with basic human values.

21    The Court went on a second tour on September 14, 2006.  During

22  the tour, significant progress had been made in addressing many of

23  the issues that arose during the first tour.  The six person cells

24  were reduced to four persons, the four person cells were reduced to

25  two persons, many of the areas in question had been cleaned and

26  repainted and additional day room space, with televisions, was

27  being developed.

28

1    The genesis of the present hearing is that, as a result of the

2    lessening of the overcrowding issues at MCJ, more and more inmates

3    were backed up into the facility that feeds the MCJ, the Inmate

4    Reception Center ("IRC").  Capt. Cornell testified that, as a

5    result of the population reduction at MCJ, the IRC's typical

6    population was increased by about 500 inmates.  The Court believes

7    that this increase has strained the IRC's ability to function in a

8    satisfactory manner.

9    The IRC handles inmate processing for the system across the

10    state.  The processing includes assigning security classifications

11    and conducting medical screening.  After inmates are processed

12    through the IRC, they wait to be transported to a residential

13    facility.  A substantial percentage of the inmates awaiting

14    transfer from the IRC are sent to MCJ.

15    If no housing is available at MCJ, inmates are held in cells

16    at the IRC known as the Custody Line Holding Cells ("holding

17    cells").  There are 30 holding cells.  The holding cells contain

18    metal benches affixed to a wall and a single toilet located behind

19    a partition.  The holding cells are approximately 15½ x 12 feet, or

20    approximately 186 feet.  There is a memorandum at the IRC that

21    states that no more than 20 inmates should be placed in a holding

22    cell without approval from a supervisor.[1]  The Tiedeman Declaration

23    at ¶29 states that she observed as many as 35 inmates in a holding

24    cell.  Inmate declarations attest to holding cell counts of over 50

25

26

_____

27    [1] If 20 inmates are in a holding cell of 186 feet, each inmate has a space of about 9 square feet.  This equates to an area that is 3 ft. x 3 ft.  If 30 inmates are in a holding cell, the area is

28    reduced to an area of 3ft. x 2 ft.

1  inmates.[2]  It is unclear whether this memorandum constitutes a

2  "policy" of the IRC.  It is also unclear whether the IRC documents

3  the instances in which more than 20 inmates are in a holding cell.

4      The holding cells contain no bunks or mattresses.  In some

5  instances, inmates have been required to remain in the holding

6  cells for as long as 10 hours, which can include the night time

7  period.  When this occurs, the inmates are required to attempt to

8  sleep on the floor.  The holding cells are cleaned by

9  mechanical/steam cleaning machines.  They are also swept and mopped

10 by inmate-trustees.  However, because of the recent population

11 increase in the IRC, it is not always possible to regularly clean

12 the cells by either method.  There are two reasons for this

13 problem.  First, inmates are currently being kept in holding cells

14 for more time than they were held there previously.  Second,

15 because the cells can only be cleaned when they are empty, there is

16 frequently insufficient time to clean them when they are empty

17 because there is a backlog of inmates awaiting placement in a

18 holding cell.  The Court also heard that it is the policy in the

19 IRC to not place inmates in a holding cell if the toilet is broken.

20 The declarations submitted by the ACLU indicate that inmates have

21 complained that the toilets have been filthy.

22     The Court is aware that the Los Angeles County Jail is the

23 largest jail in the country.  Managing it is an immensely

24 complicated enterprise because it houses approximately 19,500

25 inmates spread across eight custody facilities, numerous patrol

26 _____

27     [2]  The Court regards the inmate declarations skeptically
because the declarants have not been subject to cross-examination.
28 Nevertheless, there are numerous declarations attesting to holding
cell populations of over 30 inmates.

stations and at least 40 courthouses.  In addition to providing the
necessities of food, shelter and clothing, the Los Angeles County
Jail must address the serious medical and mental health issues of
many of its inmates.  Inmates are also required to be segregated
from each other based upon security classifications.  Furthermore,
inmates are frequently transported between facilities and two
various courthouses.  Finally, the inmate population varies from
day-to-day, and is subject to unpredictable increases.  Because the
jail facilities have not kept up with the exploding population of
Southern California, the LASD has been required to enact a policy
of releasing inmates well before the expiration of their
sentences.[3]  This is done because there is simply not enough space
to keep inmates for the duration of their sentences.

The Los Angeles County Board of Supervisors has recently
allocated $258 million dollars to upgrade the jail system.  The
Court has been advised that this sum, though substantial, will be
used to upgrade existing facilities, but is insufficient to
construct additional facilities.  Thus, it appears likely that
strains on the system such as those currently occurring at the IRC
will continue to be present in the future.  What exists, therefore,
is a fairly bleak prognosis with the effects of an overburdened
system continuing to manifest themselves.  These effects seem
likely to result in additional civil rights lawsuits arising from

---

[3]  The MCJ houses inmates awaiting trial and inmates who have
been sentenced.

1  overcrowding and greater reductions in the jail time that inmates

2  are required to serve.[4]

3      The Court has no desire to inject itself in the management of

4  the jail.  If the present circumstances are not corrected, the

5  Court foresees itself as constantly being asked by litigants to

6  formulate the minimum constitutional standards for incarceration.[5]

7  Given the intricacies of the system this is wrong for two reasons.

8  First, courts do not have the expertise or time to administer

9  complex enterprises.  Second, inmates, particularly pre-trial

10 detainees who are imbued with presumption of innocence, deserve

11 better than to be housed in a system which has defaulted to the

12 lowest permissible standard of care.

13     On the positive side, the Court has been advised that the

14 termination of the state's contract with the Sheriff's department

15 will result in approximately 1200 additional beds in the MCJ.  The

16 Court is hopeful that the availability of these additional beds

17 will ameliorate some of the more pressing problems at the IRC and

18 the MCJ.  Additionally, the Court has been continually impressed by

19 the dedication of the employees of the LASD who are daily faced

20 with the daunting task of managing this overburdened system.  It

21 was clear from the hearing that Commander Kim and Capt. Cornell,

22 and the many other individuals with whom the Court has encountered

23 _____

24    [4] Current civil rights lawsuits pending before this Court
   include: Dennis Rutherford v. Leroy Baca, Case No. CV 75-04111;

25 R.D. Mortimer v. Leroy Baca, Case No. CV 00-13002; S.A. Thomas v.
   Leroy Baca, Case No. CV 04-08448; and J. Avalos v. Leroy Baca, Case

26 No. CV 05-07602.

27    [5] E.g. how many inmates can be held in a 186 square foot
   cell; what is the maximum amount of time an inmate can be required

28 to stand without a place to sit.

1  working for the LASD are creative, talented, and uniformly have a

2  sincere desire to administer the jail system in the most humane and

3  efficient manner possible.  The systemic deficiencies of the

4  present jail system, however, seem more and more to exceed the

5  ability of management to work around these deficiencies.

6       Having noted the above, the Court believes that certain

7  immediate steps should be taken by the Sheriff's department to

8  address the issues raised by plaintiffs.  Therefore, the Court

9  issues the following order.

10       THE DEFENDANTS ARE ORDERED TO SHOW CAUSE at 11:00 a.m., on

11  December 11, 2006, or as soon as possible thereafter as counsel may

12  be heard in the courtroom of the Honorable Dean D. Pregerson,

13  located at Courtroom 3, 312 Spring Street, Los Angeles, why the

14  Defendants, their officers, agents and assigns and those in active

15  concert or participation with them should not be restrained and

16  enjoined from:

17       1.   Holding an inmate in the IRC for more than 24 hours,

18            unless any period in excess of 24 hours is because the

19            inmate is being treated at the medical facilities within

20            the IRC;

21       2.   Holding more than 20 inmates in a holding cell without

22            first exhausting every other means to avoid placing more

23            than 20 inmates in a holding cell.  In the event more

24            than 20 inmate are placed in a holding cell, Defendants

25            shall document the following:

26            (a)  name of the officer approving the placement;

27            (b)  date;

28            (c)  type of placement;

7

1          (d)    time of release;

2          (e)    number of persons in the cell;

3          (f)    identification of the particular holding cell.

4          Plaintiffs shall be provided with the documentation upon

5          request;

6    3.      Holding an inmate in a cell in the IRC which is not

7          maintained in a clean and sanitary condition, including

8          access to a functioning toilet, potable drinking water

9          and clean water to wash;

10   4.      Holding an inmate in the IRC without providing ongoing

11         access to adequate medical care, including but not

12         limited to regular pill call and sick call;

13   5.      Housing six inmates in cells at Men's Central Jail that

14         were used to house four inmates prior to August 28, 2006

15         without prior notice to the Court and Plaintiffs and

16         written leave of the Court;

17   6.      Housing four inmates in cells at Men's Central Jail that

18         were used to house two inmates prior to September 13,

19         2006 without prior notice to the Court and Plaintiffs and

20         written leave of the Court;

21   Defendant's opposition, if any, to this order shall be filed

22 no later than November 20, 2006.

23   Pending a hearing on the above Order to Show Cause, the

24 Defendants, their officers, agents, employees, attorneys and all

25 those in active concert with them are hereby immediately restrained

26 and enjoined from:

27   1.      Holding an inmate in the IRC for more than 24 hours,

28         unless any period in excess of 24 hours is because the

8

1    inmate is being treated at the medical facilities within

2    the IRC;

3    2.   Holding more than 20 inmates in a holding cell without

4         first exhausting every other means to avoid placing more

5         than 20 inmates in a holding cell.  In the event more

6         than 20 inmate are placed in a holding cell, this event

7         shall be documented as follows:

8         (a)  name of the officer approving the placement;

9         (b)  date;

10        (c)  type of placement;

11        (d)  time of release;

12        (e)  number of persons in the cell;

13        (f)  identification of the particular holding cell.

14        Plaintiffs shall be provided with the documentation upon

15        request;

16   3.   Holding an inmate in a cell in the IRC which is not

17        maintained in a clean and sanitary condition, including

18        access to a functioning toilet, potable drinking water

19        and clean water to wash;

20   4.   Holding an inmate in the IRC without providing ongoing

21        access to adequate medical care, including but not

22        limited to regular pill call and sick call;

23   5.   Housing six inmates in cells at Men's Central Jail that

24        were used to house four inmates prior to August 28, 2006

25        without prior notice to the Court and Plaintiffs and

26        written leave of the Court;

27   6.   Housing four inmates in cells at Men's Central Jail that

28        were used to house two inmates prior to September 13,

9

1       2006 without prior notice to the Court and Plaintiffs and

2       written leave of the Court.

3    The Court sets the above schedule because the Court

4  acknowledges that the Defendants were required to respond to

5  Plaintiff's Application on short notice.  The schedule will permit

6  the parties to have the benefit of the information contained in the

7  documents described on page 7, paragraph number 2.

8       IT IS FURTHER ORDERED that, because Plaintiffs are indigent,

9  they need not post any bond in connection with this temporary

10 restraining order.

11      IT IS SO ORDERED.

12

13 Dated: October 26, 2006

14                                    DEAN D. PREGERSON
                                      United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28