MARK D. ROSENBAUM, SBN 59940
PETER ELIASBERG, SBN 189110
MELINDA BIRD, SBN 102236
ACLU Foundation of Southern California
1313 W 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500, x219
Facsimile: (213) 250-3919
E-mail: mbird@aclu-sc.org

Margaret Winter
ACLU NATIONAL PRISON PROJECT
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6605
Facsimile: (202) 393-4931
E-mail: mwinter@npp-aclu.org
*Not admitted in D.C.; practice limited to federal courts

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS RUTHERFORD, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, YVONNE B. BURKE, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al., <br><br> Defendants. | Case No. Civ. 75-04111-DDP <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO MODIFY ORDER RE: INMATE INTERVIEWS.** <br><br> Honorable Dean Pregerson <br><br> Date: <br> Time: <br> Dept: 3 |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY
ORDER RE: INMATE INTERVIEWS.**

## I. INTRODUCTION

As this Court is aware, the ACLU Foundation of Southern California, which represents the plaintiff class along with the ACLU National Prison Project, is committed to active and ongoing monitoring of the *Rutherford* Judgment. ACLU staff members visit the Los Angeles County jail facilities ("Jails") several times each week, speak to inmates at cell front and follow-up with written complaints or inquiries when needed.

However, an old order in the *Rutherford* case restricts our use of statements from cell-front interviews with our clients. This order, entered nineteen years ago regarding "joint and separate interviews with inmates throughout the jail system," provides that "none of the statements made during inmate interviews or discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except by written stipulation or by order of this Court." Exhibit A to Declaration of Melinda Bird, filed concurrently. The Sheriff's Department views these restrictions as a pre-condition to the ACLU's monitoring access to the Jails.

Over time, it has become impossible to balance the requirements in this 1989 stipulation with the ACLU's ethical and legal obligations to inmates in the jail. On the one hand, the ACLU is counsel to the class of all jail inmates in *Rutherford* and has a duty to take action regarding the problems they report. This includes an obligation to represent these clients to the best of counsel's ability and to present the most effective claims on their behalf. *See, e.g.,* California Bar Association, California Rules of Prof'l Conduct R. 3-110 (A, B) (2008) (requiring competence and diligence). However, the Order acts as a "gag order," preventing ACLU attorneys from raising their clients' grievances in another lawsuit when this may be the effective means to represent them. Consequently, as discussed in the following sections, the 1989 Order

creates an ethical conflict for the ACLU and burdens the First Amendment expression rights of both *Rutherford* class members and their counsel.

The conflict created by the 1989 Order on inmate interviews came to a head with the recent filing in the Central District of a new case, *Johnson v. Los Angeles County Sheriff's Department,* CV 08-03515 PSG JTLx. *Johnson* was filed by a group of civil rights firms including the ACLU, alleging systemic discrimination against jail inmates and detainees with disabilities. This new ADA lawsuit seeks injunctive relief for a class of similarly situated individuals, all of whom are also class members in *Rutherford.*

Now, the legal team in the *Johnson* case is preparing motions for class certification and for a preliminary injunction. The ACLU has collected statements from *Rutherford* class members that are highly relevant to these motions, but their use appears to be barred by the 1989 Order. This will needlessly deprive the *Johnson* court of otherwise available information on which to base its decisions on these motions. It will also unduly burden *Rutherford* class members, who face significant barriers in communicating with the attorneys in *Johnson* and rely on the ACLU's visits to the jail.

The position of the Sheriff's Department is that the 1989 Order represented a compromise in which it voluntarily agreed to allow the ACLU access to the Jail for monitoring purposes in exchange for the ACLU's agreement not to use the resulting communications with its clients in other litigation. Bird Decl., ¶ 16. The ACLU does not agree that its monitoring access is entirely a matter of the Sheriff's discretion, but even assuming *arguendo* that this is true, the 1989 Order is still problematic. In recent years, the courts have applied the doctrine of "unconstitutional conditions" to conclude that government may not condition the receipt of any benefit, even if it is discretionary, on the waiver of First Amendment rights. In *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 533 (2001), the high court found that legal advocacy was just such a right of free expression, and that requiring a legal aid group to agree not to

engage in litigation violated their First Amendment rights. Although this understanding of the First Amendment may not have been available to the parties or Judge Gray in 1989, it is the law of the land today.

The Sheriff will also argue that these restrictions on inmate interviews were agreed to by the parties and have worked well for almost 20 years. As discussed below, First Amendment jurisprudence has evolved since 1989. Further, even if agreed to by the parties, the stipulation on which the 1989 Order is based is so unclear and vague as to be unenforceable.

It is important to note that the modification requested in this motion is extremely modest, given the ethical and Constitutional defects in the 1989 Order. Plaintiffs have not asked to set aside the entire Order or to use inmate statements in other lawsuits generally, only to use these in the *Johnson* litigation. Our request is limited to use of inmate statements; statements by Sheriff's staff remain protected. Instead, we have focused on the most pressing and time-sensitive issue of the use of inmate statements in the upcoming *Johnson* motions. We reserve the right to revisit the scope of the 1989 Order at a later date, if needed, once the Court has resolved this more limited issue.

## II.  BECAUSE OF THEIR LIMITED ACCESS TO OUTSIDE COUNSEL OTHER THAN THE ACLU, THE 1989 ORDER IMPOSES AN UNFAIR BURDEN ON *RUTHERFORD* CLASS MEMBERS.

The ACLU identified significant problems with the treatment of inmates with disabilities in early 2007 through its monitoring work in *Rutherford*. Decl. of Melinda Bird, ¶ 5. The ACLU regularly received complaints from inmates with disabilities and submitted these to the Sheriff's department, but the responses were consistently inadequate. After learning that other public interest groups had received similar complaints, ACLU attorneys worked with these other groups for a year to try to resolve the problems, beginning with meetings with the Sheriff in May 2007.

Anticipating that new litigation would be required and attempting to work within the restrictions in the 1989 Order, the ACLU divided its jail work into two parts

– *Rutherford* monitoring and ADA work on the *Johnson* case. *Id.*, ¶ 7. When ACLU staff interviews an inmate with a disability in the jail as part of our *Rutherford* monitoring and he or she asks for further assistance, we refer the inmate to other co-counsel in *Johnson*, in hopes that the inmate will be successful in making this connection. Then one of our *Johnson* co-counsel tries to arrange an attorney visit to follow-up with the inmate.

This process is both slow and uncertain, and needlessly burdens the rights of *Rutherford* class members, who are already a disadvantaged group with few means to express their concerns and complaints. The ACLU's monitoring is often the only way that inmates are able to contact the outside world. Decls. of Kenyatta Dasher, ¶ 3; Collier Ross, ¶ 4; John Finn, ¶ 23. Accord, Bird Decl., ¶ 9. Most cannot afford prepaid calls and must make collect calls, which the ACLU will accept. Bird Decl., ¶ 9. However, other law firms, including our co-counsel in *Johnson,* are not set up to accept collect calls from inmates they do not know. Furthermore, many inmates have only limited access to telephones. *Id.* There are very few telephones in the Inmate Reception Center, where there are significant problems with architectural access. Many telephones are mounted too high for inmates to reach from a wheelchair. Some inmates in Men's Central Jail have access to telephones only during their 15 minutes of shower time, which may be in the very early morning when law offices are closed. Some inmates are in discipline, where they are denied access to phones or visitation and sometimes, to paper and pencils to write a letter. Some inmates are illiterate and cannot write. Mail delivery has been very slow and unreliable in recent months, with delays of a month or more as a common occurrence. *Id*.

Most importantly, the rights and desires of *Rutherford* class members should be respected. Class members with disabilities have asked to participate in the *Johnson* case, and have already provided written statements to the ACLU. Decls of Kenyatta, Rocha and Ross. In the unlikely event that these inmates are successful in making contact with other counsel in the *Johnson* case, it is a needless waste of time and

energy to require non-ACLU attorneys to re-interview these inmates and prepare duplicate declarations. The 1989 Order imposes an unfair burden on *Rutherford* class members, and on their right of free expression. As discussed above and in Section IV below, this also runs counter to contemporary interpretations of the First Amendment .

### III. THE 1989 ORDER IS FAR DIFFERENT FROM A NORMAL PROTECTIVE ORDER.

Generally, protective orders safeguard the parties and other persons from the broad reach of discovery. See, *United States v. CBS, Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982). Parties typically seek protective orders to protect confidential information that they have been compelled to produce through discovery. *See, e.g., Foltz v State Farm Mut. Auto Ins. Co.* 331 F.3d 1122, 1130 (9th Cir. 2003) (protective order to seal court records and discovery materials produced by defendants). A party may also seek a protective order to prevent the deposition of a witness. *See, e.g. Blankenship v. Hearst Corporation*, 519 F.2d 418 (C.D. Cal. 1975) (protective order to prevent deposition of Henry Hearst).

Here, it was the County defendants who sought and obtained the restrictions in the 1989 Order as a pre-condition for the ACLU's access to class members in the jail. Bird Decl., ¶ 16. As in the discovery cases cited above, these restrictions protect the use of statements from Sheriff's staff. However, the restriction goes much further by also restricting the use of statements from the plaintiffs. This aspect of the 1989 Order is unusual and most troublesome from an ethical and constitutional perspective.

Unlike the defendants and Sheriff's staff, the inmates want their statements to be used in the *Johnson* litigation and see the ACLU's monitoring visits as the only way to accomplish this. One says, "I read about the ADA case in the newspaper and as a disabled inmate, I would like to have my voice heard." Decl. of Leonard Rocha. Another states that "I am very concerned that what I tell the ACLU may not end up in court. It is very difficult to contact the outside world when I am in here. . . . The ACLU is the way that I can contact the outside world about these horrible conditions."

Decl. of Collier Ross, ¶ 4, 6.

These inmates also describe in detail the unsafe conditions, the lack of accommodations such as grab bars or wheelchairs, their need for physical therapy and medical care, and the absence of any recreation or educational programs. Decls. of Ross, ¶ 2, 7; Kenyatta; and Rocha. They describe the ineffectiveness of the jail complaint system and their difficulties in contacting outside groups other than the ACLU due to delays in getting and sending mail and in making telephone calls. Decls. of Rocha; Ross. All refer to a fear of retaliation and deputy mistreatment regarding their disability complaints. Decls. of Ross, ¶ 3, 8; Dasher, page 2; Rocha. If confirmed by additional monitoring, the existence of retaliation should be promptly reported to the *Johnson* court, something that the 1989 Order currently bars.

## IV. THE 1989 ORDER INFRINGES ON THE FIRST AMENDMENT RIGHTS OF ACLU ATTORNEYS AND *RUTHERFORD* CLASS MEMBERS.

The right of attorneys and their clients to bring a lawsuit, as well as the particular set of legal arguments and methods they choose, are forms of speech protected by the First Amendment. *Lenhert v. Ferris Faculty Ass'n*, 500 U.S. 507, 528 (1991) ("We long have recognized the important political and expressive nature of litigation."); *NAACP v. Button*, 371 U.S. 415, 429-30 (1963) (declaring that litigation is "a form of political expression" that "may well be the sole practicable avenue open ... to petition for redress of grievances").

The lead case reconciling First Amendment protections with restrictions on the ability of attorneys to advocate for their clients is *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 533 (2001). In that case, the Legal Services Corporation ("LSC") prohibited recipients of LSC funding from using the courts to challenge welfare laws. *Id.* The Supreme Court found that the LSC rules restricting the legal avenues lawyers could pursue for their clients violated the First Amendment. The Court was particularly concerned that "restricting LSC attorneys in advising their clients and in presenting arguments and analyses to the courts distorts the legal system by altering

-6-

the traditional role of the attorneys." *Id.* at 544. Furthermore, "by seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend." *Id.* at 545.

Similarly, the 1989 Order restricts ACLU attorneys and *Rutherford* class members from pursuing new litigation to remedy the problems they identify in inmate interviews. As in *Velazquez*, the Order "truncate[s]" the presentations that ACLU attorneys may make to a court, specifically, to the federal court in the *Johnson* case. The 1989 Order means that in other cases such as *Johnson*, ACLU attorneys will be barred from offering relevant or even dispositive information and statements even though these are precisely the kinds of speech and expression "upon which the courts must depend." *Velazquez,* 531 U.S. at 545.

By protecting the First Amendment rights of lawyers and their clients against restrictions imposed by the government, *Velazquez* furthers a line of cases that articulates the doctrine of unconstitutional conditions. See *Perry v. Sindermann*, 408 U.S. 593 (1972); *Regan v. Taxation with Representation of Washington*, 461 U.S. 540 (1983); *Federal Communications Commission v. League of Women Voters of California*, 468 U.S. 364 (1984); *Rust v. Sullivan*, 500 U.S. 173 (1991), and *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995). The doctrine "holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold the benefit altogether." Kathleen Sullivan, *Unconstitutional Conditions,* 102 Harv. L. Rev. 1413, 1415 (1989). "What the State may not do directly it may not do indirectly." *Bailey v. State of Alabama*, 219 U.S. 219, 244 (1911). *Velazquez* extended the application of this doctrine to the context of litigation, protecting the rights of lawyers to freely and efficiently advocate for their clients. 531 U.S. at 533.

Here, the County suggests that the ACLU's access to the jails is voluntary and therefore the County can condition access to the jails on the surrender of our First

Amendment rights to litigate. However, the doctrine of unconstitutional conditions asserts that even a discretionary benefit cannot be conditioned on the waiver of a constitutional right. *See, e.g., Perry,* 408 U.S. at 597 ("…even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons… It may not deny a benefit to a person on a basis that infringes his constitutionally protected interest—especially, his interest in freedom of speech.").[1] *Velazquez* cemented this concept in the context of litigation. While it was not clear in 1989 that this doctrine applied to litigation, it is certainly clear today.

Another problem with the 1989 Order is that it prevents the ACLU attorneys from utilizing client statements in the manner that they deem most effective. This cannot be squared with accepted First Amendment protections for such speech. The Supreme Court explained this point in *Meyer v. Grant*, 486 U.S. 414, 424 (1988), a case challenging Colorado's prohibition against paying circulators of petitions. There, the Court recognized that "the First Amendment protects [the] right not only to advocate [one's] cause but also to select what [one] believe[s] to be the *most effective means* for so doing." *Id*. (Emphasis added.)

The 1989 Order also poses an unconstitutional burden on communications between *Rutherford* class members and their counsel. Restrictions on communication with class members have been found to run afoul of the First Amendment even when imposed by a court, as in the case at bar. In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the district court issued an order restricting class counsel from communicating with potential class members without court approval. The Supreme Court overturned the order, as it "made it more difficult for [class representatives] to obtain information about the merits of the case from persons they sought to represent." *Id.,* 452 U.S. at 101. The Supreme Court held that the trial court may not restrict communications

---

[1] The *Rutherford* plaintiffs do not concede that the ACLU's monitoring access to the jails is a discretionary benefit. Rather, it is a natural corollary of counsel's duty to monitor enforcement of the *Rutherford* judgment.

-8-

between plaintiffs' counsel and class members without "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," resulting in a "carefully drawn order that limits speech as little as possible." *Id.*

Measured by this test, the 1989 Order is far too broad. Nothing in the Order establishes a need to limit the rights of class members to express themselves in other, more effective forums. There is a single reference to a fear that statements will be used in criminal proceedings, a fear that does not justify such a blanket restriction. Moreover, inmates can simply inform the ACLU if they do not want their statements to be used in other litigation, whether criminal or not.

## V. THE SCOPE OF THE 1989 ORDER IS UNCLEAR AND THUS UNENFORCEABLE.

The 1989 Order is also unenforceable because its terms are unclear. The fact the order was entered pursuant to stipulation does not redeem its lack of clarity. In *Transamerica Equipment Leasing Corp. v. Union Bank*, 426 F.2d 273, 274 (9th Circ.1970), the Ninth Circuit explained that "where an agreement is not sufficiently definite to enable a court to give it an exact meaning or where an essential element is reserved for future agreement of both parties, a legal obligation cannot result." In *Transamerica,* a loan contract was void because the parties failed to define several terms in the original agreement. The court was particularly concerned that enforcing the contract would require "making a number of assumptions" because of the vagueness of the agreed upon terms. *Id.* at 275.

Here, enforcing the 1989 Order will also require "making a number of assumptions." For example, it is unclear what is meant by the phrase "to ma[ke] [an inmate statement] available for use in other litigation." If ACLU attorneys file a declaration based on an inmate interview in *Rutherford*, this is a matter of public record. The 1989 Order does not require that statements from inmate interviews be placed under seal. If another attorney relies on this declaration in a different court

-9-

action, is the ACLU attorney subject to sanctions?

The phrase "statements made during inmate interviews" is also unclear. One can assume that this refers to interviews conducted inside the jail, but the Order never states this explicitly. What about interviews conducted outside the jail of people who gave the ACLU their contact information while they were still incarcerated? Does the restriction on statements in interviews apply to the inmate's name and contact information, or just the inmate's actual statements? The exact meaning of the Order cannot be discerned from its language.

Another unclear issue is whether the restriction on inmate statements applies only to their use in criminal proceedings, or to civil proceeding as well. According to the stipulation, the only identified basis for the limitation on the use of inmate interviews is the explanation that "inmates must feel confident that they can state facts and make statements without fear that the discussions will be used <u>in their criminal trial</u>." (Emphasis added.) This suggests that the restriction only bars the use of inmate statements in their criminal trials. However, other language in the Order is broader, and thus unclear.

## CONCLUSION

For all the foregoing reasons, the limited modifications to the 1989 Order regarding inmate interviews requested by the plaintiffs would be granted.

DATED:  June 4, 2008

                RESPECTFULLY SUBMITTED,
                ACLU Foundation of Southern California
                ACLU National Prison Project


                By: _____
                    Melinda Bird

            Attorneys for Plaintiffs