MARK D. ROSENBAUM, SBN 59940
PETER ELIASBERG, SBN 189110
MELINDA BIRD, SBN 102236
ACLU Foundation of Southern California
1313 W. 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500, x219
Facsimile: (213) 977-5297
E-mail: mbird@aclu-sc.org

MARGARET WINTER
ACLU NATIONAL PRISON PROJECT
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6605
Facsimile: (202) 393-4931
E-mail: mwinter@npp-aclu.org
*Not admitted in D.C.; practice limited to federal courts

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS RUTHERFORD, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, YVONNE B. BURKE, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al., <br><br> Defendants. | Case No. Civ. 75-04111-DDP <br><br> **NOTICE OF ERRATA AND AMENDED DECLARATION OF MELINDA BIRD IN SUPPORT OF EX PARTE APPLICATION TO SHORTEN TIME AND MOTION TO MODIFY ORDER RE: INMATE INTERVIEWS.** <br><br> Honorable Dean Pregerson <br><br> Date: June 30, 2008 <br> Time: 10:00 am <br> Dept: 3 |

## NOTICE OF ERRATA

Plaintiffs' Notice of Motion and Motion to Modify Order Re: Inmate Interviews filed on June 5, 2008 did not include a hearing date, as plaintiffs had also filed an *ex parte* application to shorten time so that the matter could be heard more rapidly. In response to a notice of deficiency from the Clerk of the Court, plaintiffs have filed an Amended Notice of Motion and Motion to Modify, setting a motion day of June 30, 2008 on a regular 21 day motion calendar. In the event the Court issues the Order Shortening Time proposed by plaintiffs, plaintiffs request that the June 30 hearing date be canceled.

In addition, the declaration of Melinda Bird filed on June 5, 2008 in support of both the *Ex Parte* Application to Shorten Time and Motion to Modify Order re: Inmate Interviews contains an incorrect statement. The last sentence in the declaration, paragraph 16, page 7, lines 16-18, states: "When I asked him to clarify this statement, he indicated that the Sheriff's Department might decide to limit the ACLU's access to inmates in the jail if inmate statements could be used in other litigation." Plaintiffs wish to strike and retract this statement. An amended declaration with this sentence omitted is attached.

DATED:   June 6, 2008

RESPECTFULLY SUBMITTED,

ACLU Foundation of Southern California
ACLU National Prison Project

By: _____
Melinda Bird
Attorneys for Plaintiffs

# AMENDED DECLARATION OF MELINDA BIRD
## IN SUPPORT OF EX PARTE APPLICATION TO SHORTEN TIME AND MOTION TO MODIFY ORDER RE: INMATE INTERVIEWS

I, Melinda Bird, state and declare as follows:

1. The facts set forth in this declaration are from my personal knowledge. If called as a witness, I could and would competently testify to them.

2. I am Senior Counsel at the ACLU of Southern California and lead counsel in this case, *Rutherford v. Baca,* which concerns overcrowding and other constitutionally deficient conditions in the Los Angeles County Jail.

3. As part of my responsibilities in *Rutherford*, I supervise Mary Tiedeman, our jail monitor, and the legal interns who work with us on the ACLU's Jail Project. Ms. Tiedeman, the interns and I visit the jail regularly to inspect conditions and interview jail inmates. We maintain a dedicated telephone line for jail complaints and accept collect calls in this line. Hundreds of jail inmates call this phone line every month and leave messages detailing their complaints. Family members and defense attorneys also call our office and speak directly with me, Ms. Tiedeman or our interns about the problems faced by inmates.

### 1989 Order re: Inmate Interviews

4. I have reviewed the old files and orders in *Rutherford*. One is a stipulated order entered nineteen years ago on June 21, 1989 when Judge William Gray was presiding over the case. This order is Exhibit A to this declaration. This order is based on a stipulation that "counsel for the parties have found it useful to regularly conduct joint and separate interviews with inmates throughout the jail system," and provides that "none of the statements made during inmate interviews or discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except by written stipulation or by order of this Court." Because so many things in this order are unclear to me, it has had a chilling effect on my work, since I am worried about being subjected to sanctions. For example, I am not clear what is meant by the phrase "to ma[ke]

available for use in other litigation." If I file a declaration in *Rutherford*, this is a matter of public record. The 1989 order does not require that statements from inmate interviews be placed under seal. If another attorney takes judicial notice of these declarations, properly filed in *Rutherford*, will I be subject to sanctions? I am also unclear about what is meant by the phrase "statements made during inmate interviews." Is this restricted only to interviews conducted inside the jail? Does the restriction apply to the inmate's name and contact information, or just the inmate's actual statements? Does the reference to use in other litigation refer only to criminal proceedings, or to civil proceeding as well? The stipulation explains that "inmates must feel confident that they can state facts and make statements without fear that the discussions will be used in their criminal trial." However, the order is far broader. I have no way to verify the parties' intent in this stipulation, since none of the attorneys currently representing the parties in the *Rutherford* case were involved in this stipulation. In fact, the attorney who negotiated this agreement for the plaintiffs left the ACLU shortly thereafter. For the reasons that I explain below, this order is both unfair and unworkable for class members in *Rutherford* and for us as their counsel.

### Disability Issues in the Jail and the *Johnson* Lawsuit

5. Through our regular monitoring work in *Rutherford*, by early 2007, my staff and I identified significant problems with the treatment of inmates with disabilities. We regularly received complaints from inmates with disabilities that we submitted to the Sheriff's department. The responses from the Sheriff were consistently inadequate. I discovered a pattern of similar complaints in our records from past years. I learned from other public interest groups that assist people with disabilities that they had also received complaints, primarily from the families of inmates and from people who were recently released. My staff and I worked with these other groups to try to resolve the problems, beginning with meetings with the Sheriff in May 2007. After a year, we were still unable to obtain a commitment from the Sheriff's department to resolve the problems, which are pervasive.

6. Eventually, we joined with these groups to file a new lawsuit raising claims under the Americans with Disabilities Act (ADA) as well as the U.S. Constitution. We filed a new lawsuit because the *Rutherford* case does not include any claims of disability discrimination. The new case, *Johnson v. Los Angeles Sheriff's Department,* was filed in the Central District on May 29, 2008, and has been assigned to the Honorable Phillip Gutierrez. This new ADA lawsuit seeks injunctive relief for a class of similarly situated individuals, all of whom are also class members in *Rutherford*. We have asked the County to stipulate to class certification. If there is no agreement, we will file a motion for class certification within the next week in *Johnson*. We intend to file a motion for a preliminary injunction at the same time. We have also filed a notice that the *Johnson* case is formally related to *Rutherford*.

7. By the Fall of 2007, I realized that the inmates' ADA claims could not be addressed within the existing framework in *Rutherford* and would require a separate lawsuit. In an effort to comply with the 1989 Order regarding statements in inmate interviews, I tried to divide our jail work into two parts – our *Rutherford* monitoring and our ADA work on the *Johnson* case. When we interviewed an inmate with a disability in the jail as part of our *Rutherford* monitoring and he or she asked us for further assistance, we did not pursue this as part of our ADA work. Instead, my staff and I referred the inmate to one of our co-counsel in *Johnson*, and hoped that the inmate is successful in making this connection. Then one of our *Johnson* co-counsel tried to arrange an attorney visit to follow-up with the inmate. This process has been both slow and uncertain, as it is very difficult for inmates to communicate with law firms other than the ACLU. Most importantly, it is unfair to members of the *Rutherford* class, as I explain below.

8. In the course of our monitoring interviews inside the jail pursuant to the *Rutherford* case, we have encountered inmates with disabilities who are putative class members in the *Johnson* case. We interviewed these people at cell front and filed complaints on their behalf. When no changes or improvements occurred in response

to these complaints, they asked for additional help, including filing litigation. Also, my staff and I observed conditions that adversely affected these and other inmates with disabilities. I have submitted a sample of three of these statements from 2007 in support of our request to modify the 1989 Order. The statements we obtained are highly relevant to the claims in the *Johnson* case. However, the 1989 Order seems to bar us from submitting this information from *Rutherford* class members to the court in the *Johnson* case. At the same time, the 1989 Order seems to allow us to submit statements that we obtain from former class members after they have been released in another case, such as *Johnson*. As an example, I have also submitted a declaration from John Finn, also obtained in 2007. I assume that we can use this statement in *Johnson* because we did not interview him in the jail but only after his release. When both groups of clients have asked us to use their statements in litigation, it seems unfair to allow one to proceed but not the other.

9. The 1989 Order imposes a real burden on *Rutherford* class members, a disadvantaged group of people who already have very few means to express their concerns and complaints. The ACLU's monitoring is sometimes the only way that inmates are able to contact the outside world. Most cannot afford prepaid calls and must make collect calls, which we accept. However, other law firms, including our co-counsel in *Johnson,* are not set up to accept collect calls from inmates they do not know. Many inmates have only limited access to telephones. There are very few telephones in the Inmate Reception Center, where we have seen many problems with architectural access. Many telephones are mounted too high for inmates to reach from a wheelchair. Some inmates in Men's Central Jail have access to telephones only during their 15 minutes of shower time, which may be in the very early morning when law offices are closed. Some inmates are in discipline, where they are denied access to phones or visitation and sometimes, to paper and pencils to write a letter. Some inmates are illiterate and cannot write. Mail delivery has been very slow and unreliable in recent months, with delays of a month or more as a common occurrence.

Finally, some of the inmates about whom we are the most concerned are too sick to make the effort to call or contact a law firm, and may be confined to the Correctional Treatment Center.

10. I am especially concerned about the prospective impact of the 1989 Order as the *Johnson* litigation moves forward. Because of turnover in the jail population, we constantly see new inmates with disabilities and receive complaints from them. Their situations may be relevant to the upcoming class certification. Some may even need emergency relief in the form of a Temporary Restraining Order in the *Johnson* case. Referring these inmates to other counsel in *Johnson* to comply with the 1989 Order may cause needless delays, which could also imperil the inmates.

11. The 1989 Order will hinder our ability to update the court with our observations of any changes and improvements, or to take new declarations from inmates about conditions. If the County submits opposition declarations regarding conditions in the jail and inmates provide us with statements that contradict or explain the County's claims, the 1989 Order could prevent us from disclosing this to the court. For example, on Tuesday, June 3, my staff went to Men's Central Jail to interview inmates. When they went to 6050, a "medical step-down" area of the jail where many inmates with disabilities are housed, they encountered a number of people who had heard about the ADA case and wanted to share their experiences. We were forced to tell them that at present, we are barred from helping them submit their statements to the Court.

12. For all these reasons, the 1989 Order places me and my staff in an ethical and moral quandary regarding our obligations to inmates in the jail. On the one hand, I am counsel to the class of all jail inmates in *Rutherford* and have a duty to act competently, diligently and to take effective action regarding the problems they report to me. This includes an obligation to raise viable claims on their behalf. On the other hand, I must also attempt to comply with the restrictions in the 1989 order, which operates as a "gag order," preventing me from raising these same claims in another

1 | lawsuit where it would be most effective.

**Notice to Opposing Counsel of Ex Parte Application and Motion to Modify**

13. After the *Johnson* case was filed on May 29, 2008, we began work on motions for a preliminary injunction and for class certification. My staff also visited the jail on Friday, May 30, 2008 and reported that the inmates were aware of the new ADA lawsuit and eager to participate and provide statements about their treatment. However, we could not offer these statements in the new ADA cases because of the 1989 order. After this occurred, I concluded that we would have to seek a modification to the 1989 Order to permit us to use inmate statements from our *Rutherford* monitoring in the *Johnson* ADA case. Otherwise, we could not effectively represent these clients and respond to their requests.

14. On the next regular workday, Monday, June 2, I called the office of Paul Beach, who represents the county defendants in *Rutherford* and in the *Johnson* ADA case. I left a message explaining my concern with the 1989 Order and asked him to call me. I also sent Mr. Beach a letter by fax and by e-mail. On Tuesday, June 3, I left a second message with Mr. Beach's office and sent a second letter to him. These letters are attached to this declaration as Exhibits B and C.

15. Today, I spoke with Mr. Beach about our *ex parte* application to shorten time. He stated that he would oppose a request to shorten time. He proposed a meet and confer next Tuesday, June 10, and a regularly noticed motion thereafter if we could not agree. I explained that time is of the essence because of the inmates we have interviewed in the jail have asked us to present their stories to the Court in the *Johnson* case. I also explained that this created an ethical and legal conflict for us, since we are counsel in both cases. Finally, I informed Mr. Beach that the legal team in *Johnson* would be filing motions in that case shortly and that we needed a decision regarding the use of the *Rutherford* statements by June 16, 2008. Mr. Beach observed that since he would be busy preparing his opposition to the *Johnson* motions, this was another reason to oppose a motion on shortened time in *Rutherford*. He also

Amended Declaration of Melinda Bird                                                   6

1  suggested that I could resolve my ethical conflicts by withdrawing as counsel in
2  *Johnson.*
3      16.   Mr. Beach and I also discussed our underlying motion to modify the
4  inmate interview order. I began by explaining that we did not seek to use the
5  statements of Sheriff's staff in other litigation, and that we were taking a very
6  moderate position by seeking only to use inmate statements in one other case: the
7  *Johnson* ADA case. Mr. Beach stated that even as to inmate statements, the 1989
8  Order represented a fair balancing of our interests, that the Sheriff's Department
9  provided the ACLU with "unprecedented" access to tour and inspect the jails, and that
10 the ACLU's agreement not to use statements from class members in other litigation
11 was a necessary pre-condition to this access. Mr. Beach suggested that if we
12 continued to press to modify the 1989 order, that we "might not like the results."

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed this sixth day of June 2008 in Los Angeles, California.

_____
Melinda Bird