MARK D. ROSENBAUM, SBN 59940
PETER ELIASBERG, SBN 189110
MELINDA BIRD, SBN 102236
ACLU Foundation of Southern California
1313 W. 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500, x219
Facsimile: (213) 977-5297
E-mail: mbird@aclu-sc.org

MARGARET WINTER
ACLU NATIONAL PRISON PROJECT
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6605
Facsimile: (202) 393-4931
E-mail: mwinter@npp-aclu.org
*Not admitted in D.C.; practice limited to federal courts

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS RUTHERFORD, et al, | Case No. Civ. 75-04111-DDP |
| Plaintiffs, | |
| vs. | **DECLARATION OF MELINDA BIRD IN SUPPORT OF PLAINTIFFS' MOTION TO REOPEN DISCOVERY** |
| LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, YVONNE B. BURKE, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al., | Honorable Dean Pregerson<br><br>Date: July 6, 2009<br>Time: 10:00 a.m.<br>Dept: 3 |
| Defendants. | |

# DECLARATION OF MELINDA BIRD

I, MELINDA BIRD, declare and affirm and would so testify from first hand knowledge if called as a witness:

1. I am Senior Counsel for the American Civil Liberties Union of Southern California (ACLU-SC). I am lead counsel for the plaintiffs in this case. The defendants are Sheriff Lee Baca, the Los Angeles Sheriff's Department ("LASD") and the County Board of Supervisors. I submit this declaration in support of Plaintiffs' Motion to Reopen Discovery.

2. In the *Rutherford* case, the ACLU is counsel for the class of detainees and prisoners in the Los Angeles County Jail system ("Jail"). Through a series of court-approved agreements, the County has provided the ACLU access to the Jail and to documents concerning conditions in the jail. For example, one Order provides that "[t]he County will provide, upon request, relevant non-privileged data as to population, staff, violence, etc., so that relevant statistical information can be prepared and analyzed by both parties." Memorandum of Understanding; Court Approval Thereof, filed November 13, 1985, ¶ 4, page 5, lines 5-8, Exhibit 1. This Order also authorized plaintiffs to employ experts to "provide an independent appraisal of conditions at the Central Jail," including mental health experts. *Id.,* ¶ 6, page 5, lines 22-24.

3. From my review of the files in this case, the parties engaged in discovery after the issuance of the 1979 Judgment regarding custodial issues. A Stipulation and Order issued by Judge William P. Gray provides that "plaintiffs' counsel has been allowed unlimited access to the plaintiff class and all housing units in the Central Jail. Further, the Sheriff has produced all documents and records as requested by plaintiffs." Stipulation and Court Approval Thereof, signed May 19, 1986, attached hereto as Exhibit 2. The stipulation then recites that it is "a result of these

**Declaration of Melinda Bird** 1

inspections, <u>discovery,</u> discussions with inmates and negotiations." *Id.* (emphasis added).

4. I have directly supervised the ACLU's work in responding to complaints from class members and reviewing conditions in the Jail for the past three years. I supervise Mary Tiedeman, our Jail Monitor and Todd Weddle, who assists with our monitoring. I have reviewed the declaration submitted concurrently by Ms. Tiedeman. Based on my own personal observations as well as my close review of her work, the statements in her declarations accurately describe conditions in the jail and our findings regarding the treatment of detainees and prisoners.

5. As described more fully in Ms. Tiedeman's declaration, my staff has observed very serious problems with the treatment of detainees and prisoners with mental illness. Over the past three years, my staff and I have repeatedly brought these matters to the attention of jail staff and have tried to negotiate solutions both in individual cases and systemically in monthly meetings with the Sheriff's Department. We have not seen any meaningful reform as a result of these efforts. Seriously mentally ill prisoners continue to suffer due to inadequate treatment in the jail, but especially those who are housed in Men's Central Jail ("MCJ").

6. My staff and I have asked defendants to produce a variety of documents and other information relevant to determining the nature and scope of the problems affecting the delivery of mental health care to detainees and the more general conditions of confinement in the jail. Having access to these documents is essential to our ability to work cooperatively with the County to develop a meaningful remedy. Defendants have refused to produce these materials. The documents defendants refuse to produce include such basic materials as the following:

- the custody manual governing all jail procedures and the implementing unit orders specific to each jail facility;

**Declaration of Melinda Bird**                2

- investigations into excessive discipline of detainees and placement in solitary confinement;
- reports regarding use of force in overcrowded areas of the jail;
- reports validating the inmate classification system and evaluating the adequacy of deputy staffing levels;

7. Defendants' position is that the ACLU is not entitled to any formal discovery because the *Rutherford* case is in its post-judgment phase, that we do not need these documents because we already have access to the Jail facilities, and because defendants voluntarily comply with some of our requests for documents.

8. It is true that plaintiffs have the ability to visit class members and tour the Jail and that the Sheriff's Department provides certain categories of documents to the ACLU. Unfortunately, the categories of documents defendants refuse to disclose – such as policies and procedures and unit orders -- are the very documents plaintiffs' counsel believes are crucial to analyzing the root causes of systemic problems and developing systemic solutions.

9. I first attempted to initiate discovery in this case in 2006 in connection with plaintiffs' October 18, 2006 application for a temporary restraining order and preliminary injunction regarding conditions in the Inmate Reception Center, which this Court granted on October 27, 2006. Defendants opposed the application with declarations regarding conditions in Men's Central Jail. To rebut those assertions, I noticed depositions of the declarants, and requested production of the documents on which they relied in their statements.

10. Paul Beach, who is lead counsel for the defendants, responded with a letter dated November 20, 2006, asserting that discovery was improper because the case was in a post-judgment posture. We held a conference of counsel on November 30, 2006 but we were unable to resolve our dispute. We reached a settlement regarding

**Declaration of Melinda Bird**         3

the underlying motion that obviated the need to pursue the motion to compel at that time.

11. Throughout 2007, 2008 and 2009, I made many requests to the Sheriff's Department and Mr. Beach for documents we considered highly relevant --and indeed critical – to fulfill the ACLU's duty to the *Rutherford* class to monitor conditions in the Jail. When Mr. Beach and the LASD did not wish to produce the documents they either ignored our requests or else denied the requests orally, without an explanation for the basis of the denial.

12. I learned from the Sheriff's budget requests in 2007 that the LASD had commissioned a report on security and staffing in the jail from a consulting firm, Crout and Sida. The report is highly relevant to the problems that we monitor: class members frequently report that they are denied access to showers, outdoor recreation, religious services and out-of-cell time, and are threatened or injured by other inmates because deputy staffing is inadequate given the overcrowded conditions, especially in Men's Central Jail ("MCJ"). I requested a copy of this report on multiple occasions and was told several times that the Department would provide it. However, Mr. Beach finally informed me orally in a meeting that he would not agree to release the report.

13. Since defendants continued to take the position we were not entitled to post-judgment discovery, we made requests under the California Public Documents Act. In each case, defendants ignored or denied these requests. On June 27, 2007, I sent a letter to Sheriff Baca pursuant to the California Public Records Act, requesting copies of reports prepared by the U.S. Department of Justice ("DOJ") regarding mental health treatment in the jail, and also LASD's responses. I did not receive a response from Sheriff Baca. Mr. Beach later told me orally at a meeting with the Department that they would not agree to release the reports. He declined to explain the basis for the refusal.

14.  Similarly, on July 23, 2007, my staff submitted a public records act request for copies of the Sheriff's Custody Manual (the Sheriff's rules and standards in operating the jail) as well as other basic documents regarding jail operations such as training materials pertinent to the requirements of the *Rutherford* judgment.  On August 21, 2007, county counsel for the County of Los Angeles denied our request in its entirety.  A copy of the denial letter is Exhibit 3 to this declaration.

15.  In early 2008, we learned that hundreds of detainees in Men's Central Jail had been denied outdoor recreation or out of cell time for more than a month because of renovations to the roof area.   The Sheriff's Department had not informed us of this development, which we learned of through calls from the detainees' lawyers.  The Department assured us that they had made alternate plans but refused to provide details.  On April 24, 2008, I gave Mr. Beach's office a written request for copies of the Sheriff's staffing plan with the deputies' schedules for the affected modules to determine whether there was sufficient staff to accomplish this.  Our request was ignored and none of the requested information was provided.

16.  In May 2008, the ACLU retained Dr. Terry Kupers, a nationally recognized expert in mental illness and mental health treatment in prisons and jails, to tour Men's Central Jail and make findings and recommendations for remedial measures.  Dr. Kupers spent two days touring the premises, meeting with staff and detainees, and reviewing records.  He produced a report of his findings and recommendations, which the ACLU provided to the Department in July 2008.  A copy of this letter and the report has been submitted to the Court as Exhibit 1 to the Declaration of Margaret Winter.

17.  Dr. Kupers found that, with very large numbers of seriously mentally ill prisoners entering the jail, and the relative shortage in mental health treatment resources, defendants engage in a pattern of inappropriately down-grading diagnoses of mental illness, removing individuals with serious mental illness from mental health

**Declaration of Melinda Bird**                5

housing and treatment programs, and discharging them to general population, administrative or disciplinary segregation, where there is severe overcrowding, almost no mental health treatment, very little out-of-cell time and almost no programming, "and in too many cases victimization by other prisoners and/or significant abuse at the hands of custody staff." He found that defendants' practice of inappropriately housing seriously mentally ill prisoners and detainees in disciplinary segregation subjects them to extra harsh conditions and isolation that predictably exacerbates their psychiatric disorders and suicidality. He found evidence that it is "very likely" that there is an unacceptably high incidence of custodial abuse at MCJ, disproportionately directed against the seriously mentally ill prisoners.

18. Dr. Kupers concluded that the overcrowding in the Jail is so grossly excessive, the other conditions of confinement in the Jail so harsh, and the denial of basic mental health care so extreme, as to create a toxic environment likely to cause psychiatric breakdown even in individuals who do not have previous symptoms of mental illness.

19. I have had repeated discussions with defendants about the findings in the Kupers Report, and have urged defendants to begin to implement Dr. Kupers' recommendations. Defendants insist that Dr. Kupers exaggerates the extent of the problem; they claim that the delivery of mental health care is adequate; they claim that U.S. DOJ monitors give the jail a clean bill of health for its treatment of mentally ill detainees, while refusing to disclose the DOJ monitoring reports; and they simply ignore plaintiffs' requests for production of the documents that class counsel needs to properly evaluate the adequacy of the mental health care the defendants provide.

20. On July 24, 2008, I prepared a letter (attached as Exhibit 4) to Sheriff Lee Baca outlining some of our most pressing concerns regarding jail conditions. The first issue listed in my letter is the treatment of inmates with mental illness. We met personally with Sheriff Baca after sending this letter and began meeting monthly with

**Declaration of Melinda Bird**            6

Assistant Sheriff Marvin Cavanaugh. Through our monthly meetings, we were able to make some progress on three of the issues in my July letter: conditions in the Inmate Reception Center for women at CRDF; out-of-cell time for women at CRDF; and wake-up time for detainees with court hearings. We did not make substantial progress on the other issues outlined in my letter.

21. Meanwhile, however, the ACLU's ongoing monitoring shows that there has been no meaningful improvement in conditions or treatment for individuals with mental illness since Dr. Kupers' report. We continue to receive many complaints from detainees, especially those with pre-existing mental illness, who suffer significant harm from the toxic conditions and the grossly inadequate mental health care at MCJ.

22. Throughout 2008, we continued our attempts to obtain copies of the Custody Manual and of the Unit Orders. The Custody Manual governs every aspect of the operation of the jail and is updated on a regular basis. At a meeting on August 21, 2008, Mr. Beach, while continuing to refuse to release the manual and unit orders, promised at least to review the Custody manual to decide which discrete sections he might release, and orally agreed to provide us with the table of contents for the Custody Manual so that we could request the sections we wanted. However, Mr. Beach actually never produced the table of contents for the custody manual, nor did he ever report back on which sections he would agree to release.

23. At this same meeting, we requested access to a copy of all Unit Orders, which differ by facility, govern the application of the provisions of the Custody Manual to special conditions in each facility and also address some issues that are not otherwise covered in the Custody Manual. Mr. Beach said that he might consider giving us access to the unit orders – but only on a case-by-case basis if we requested a particular unit order for a particular facility. I explained that this was impracticable

**Declaration of Melinda Bird**             7

1  since we have no idea of the range of issues addressed in the unit orders.  He would
2  not agree to provide any further information regarding the unit orders.
3  24.   On August 25, 2008, I sent a letter to Mr. Beach, again asking that the
4  Department release the DOJ reports regarding mental health services in the jail, since
5  the County continues to rely on those undisclosed reports to minimize the
6  significance of Dr. Kupers' findings.   At meetings in September and October 2008,
7  Mr. Beach stated that he would not provide us with any information regarding the
8  status of the DOJ monitoring—again, however, without providing any written record
9  of or explanation for this denial.
10 25.   The Sheriff's Department has an internal complaint procedure for inmates and
11 tracks every complaint and its resolution on a database.  Many detainees tell us that
12 LASD does not respond when they file internal complaints, or that the deputies tear
13 up their complaints or do not allow them to file them.  We believe it is essential to
14 investigate these concerns, which will require our independent review of the Sheriff's
15 internal complaints.  On October 21, 2008, I asked Mr. Beach to allow the ACLU to
16 review internal complaints that our class members have submitted directly to the
17 Department and the Department's response.  He refused, but proposed that we meet
18 again to discuss the issue further.  I met again in January 2009 with Mr. Beach and
19 Department representatives regarding access to inmate complaints.  I suggested
20 various alternatives, such as redacting names, placing the information under seal or
21 allowing us to review electronic records on-site to reduce the burden on the
22 department.  Mr. Beach never agreed to any of our proposals, and never provided a
23 written explanation of the basis for the Department's denial of access to our own
24 class members' statements.
25 
26 26.   The Department has also refused to provide us with copies of discipline reports,
27 which are crucial to our effective monitoring since we have observed many examples
28 of the imposition of discipline on inmates with mental illness for behaviors produced

**Declaration of Melinda Bird**            8

by their mental illness.  The Department has never provided an explanation for its refusal.

27.  We have asked for reports on out-of-cell time by housing module, since we continue to find significant problems with detainees being held in their cells for 22 to 23 hours per day with little meaningful out-of-cell time in day rooms or other common areas.  Recently, LASD provided us with a one-time "snapshot" report on out-of-cell for women detainees in the Century Regional Detention Facility.  However, for the male detainees at the other jail facilities, the department has provide only oral summaries at our meetings, without confirming detail, comprehensiveness or specificity.

28.  Sheriff Baca has repeatedly described the Los Angeles County Jail system as the largest mental health facility in the nation.  On June 8, 2009, I downloaded the articles attached to this declaration.  Exhibit 5, Los Angeles Times, December 11, 2005, http://articles.latimes.com/2005/dec/11/local/me-lopez11 ("'I run the biggest mental hospital in the country,' Sheriff Lee Baca often says."); Exhibit 6, Los Angeles Times, January 12, 2003, http://articles.latimes.com/2003/jan/12/local/me-jail12 ("Officials estimate that at least one-tenth of the inmates have diagnosed mental illness, making Twin Towers the largest mental-health housing facility in the nation, Baca said.")

## POST-JUDGMENT DISCOVERY

29.  I am lead counsel in another case in the Central District that also involves post-judgment discovery.   In *Emily Q. v. Bonta,* CV 98-4181 AHM (AJWx), a case involving mental health services for children and youth, the Honorable A. Howard Matz issued a judgment and permanent injunction against the California Department of Health Care Services in 2001.  *Emily Q. v. Bonta,* 208 F.Supp.2d. 1078 (C.D. Cal 2001).  Since then, I have been involved in monitoring and enforcement activities, a process that has included requests to produce statistical data, reports, staff correspondence

**Declaration of Melinda Bird**               9

and e-mail, etc. regarding the defendant's compliance efforts and depositions of key state officials regarding their implementation efforts and compliance with the Judgment. Throughout this time, I have worked cooperatively with the attorneys representing the state defendant in the case. That we were also engaged in discovery was not a bar to our working relationship; in fact, we recently agreed on a sweeping new settlement framework in the case.

CONFERENCE OF COUNSEL RE: THIS MOTION

30. On April 15, 2009, I wrote to Mr. Beach and Roger Granbo, the County Counsel assigned to this case, informing him that we intended to file a motion to re-open discovery. I asked them to participate in a meet and confer session with me on April 17, 2009, which was our regularly scheduled monthly meeting with the LASD, or at another time of their convenience. Mr. Beach did not respond to my letter. After our scheduled meeting on April 17, I asked Mr. Beach if he was free to meet regarding our discovery motion but he declined and promised to call me the following day instead. Mr. Beach did not call as he had promised. I left a message with his office on April 18, 2009, asking him to call regarding re-scheduling a meet and confer session. Mr. Beach did not reply to my message.

31. Our next regularly scheduled in-person meeting with Mr. Beach and LASD officers was on May 27, 2009. At this meeting, I raised the issue of our need for additional documents in order to carry out our monitoring duties and provided the Department with a list of documents that we had requested in the past but never received. Mr. Beach would not discuss the issue of documents but promised that he would send me a letter responding to our request for documents the next week. On June 2, 2009, I sent Mr. Beach an email asking him to respond by the end of the week. On June 5, Mr. Beach sent me an email stating that he would provide me with

/ / / /

/ / / /

**Declaration of Melinda Bird**                               10

a letter during the week of June 8 to 12, 2009.  However, as of the close of business on June 12, I have not heard anything further from Mr. Beach.

I declare under penalty of perjury under the Laws of California that the foregoing is true and correct to the best of my knowledge and belief.  Executed this 12th day of June, 2009 in Los Angeles, California.

*Melinda Bird*
_____
Melinda Bird

Exhibits to Declaration of Melinda Bird

1. *Rutherford v. Block,* Memorandum of Understanding; Court Approval Thereof, filed November 13, 1985.
2. *Rutherford v. Block*, Stipulation and Court Approval Thereof, signed May 19, 1986
3. Letter from Los Angeles County Counsel to the ACLU, dated August 21, 2007 re: California Public Records Act Request.
4. Letter from ACLU to Sheriff Lee Baca, July 24, 2008.
5. Los Angeles Times, December 11, 2005, http://articles.latimes.com/2005/dec/11/local/me-lopez11
6. Los Angeles Times, January 12, 2003, http://articles.latimes.com/2003/jan/12/local/me-jail12

**Declaration of Melinda Bird**                    11