# EXHIBIT 1



RECEIVED
NOV 15 1985
INKLE, RODGER AND SPRIGG

NOV 1 3 1985
CLERK U.S.
CENTRAL DIST
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS RUTHERFORD, | No. CV 75-4111 WPG |
| Plaintiff, | MEMORANDUM OF UNDERSTANDING; COURT APPROVAL THEREOF |
| v | |
| SHERMAN BLOCK, et al., | |
| Defendants. | |

A.   Preamble

        The parties to the above-entitled action, through their counsel of record, the undersigned, hereby enter this Memorandum of Understanding, and subject to the court's approval, agree as follows:

A.   Preamble

        Plaintiff's counsel has received complaints alleging that the Sheriff is failing to comply with certain of the orders issued by the Honorable William P. Gray in <u>Rutherford v. Block</u>, CV 75-411 WPG.  The Sheriff acknowledges that current population levels at Men's Central Jail and throughout the County jail system have precluded him from fully complying with all of such

1.

orders.  However, counsel for the parties in <u>Rutherford</u> acknow-
ledge the Sheriff's good faith efforts to reduce population
levels and to comply with the orders of <u>Rutherford</u>.  Consequently,
counsel for the parties in <u>Rutherford</u> believe that contempt
proceedings for actions and events to date are neither necessary
nor likely to be productive.  Rather, counsel for the parties
believe that the cooperative effort contemplated herein is more
likely to result in appropriate remedies.

B.  Goals

     Through the cooperative effort contemplated herein,
counsel for the parties seek to achieve the following goals:

     1.  To limit the legal and factual areas of
disagreement.

     2.  To limit the expenses inherent in resolving issues
of increasing inmate population and prisoners' rights.

     3.  To resolve the issues, if possible without judicial
intervention.

     4.  To bring any unresolved issues to the court for
resolution without need for contempt proceedings or the appoint-
ment of special masters.

     5.  To agree upon a maximum population for Men's Central
Jail with appropriate staffing.

C.  Definition of Overcrowding

     1.  The parties agree that the term "overcrowding" is
subject to several interpretations.  For the purpose of this
document, overcrowding at Men's Central Jail is defined as that

2.

point where the inmate population exceeds a number which:

        a.  Renders it impossible for the Sheriff to comply with the orders in <u>Rutherford v. Pitchess</u> as they now provide or as they may be modified by agreement of the parties and approved by the court.

        b.  Renders it impossible for the Sheriff to exercise his usual discretion and management options to provide adequate security and control.

    2.  The parties further agree that overcrowding, as defined herein, is a function of both Central Jail's structure and its staff.  In reaching Goal 5 set forth above, it is the parties' intent to determine the maximum number of inmates who can be confined in Central Jail under conditions of both present and maximum staffing.  The parties recognize that the present inmate poipulation does not necessarily amount to overcrowding as defined herein if staffing is determined to be adequate.  The present population might even be increased given the appropriate changes in staffing and procedures.  However, the parties also recognize that at some point there are structural limitations to the maximum inmate population at Central Jail.

D.  Methodology

    In furtherance of the goals set forth above, the parties agree to the following:

    1.  Plaintiff's counsel will be allowed continued access to the Central Jail subject to the discretion of the Commander of that facility.

///

3.

/ 0

Exhibit 1
14

1      2.   Plaintiff's counsel will commence an analysis of the

2  Sheriff's compliance with each of the Orders of the Supplemental

3  Memorandum Opinion and Judgment filed February 15, 1979,

4  specifically:

5          a.   Each prisoner kept overnight in the jail will be

6      accorded a mattress and a bed or bunk upon which to

7      sleep [plaintiff's analysis will include a review of the

8      practice of using dayrooms for dormitories and the

9      addition of an extra "bunk" in certain types of cells].

10         b.   Prisoners not excluded from roof exercise will

11     be allowed not less than two and one-half hours of

12     outdoor or other recreation per week.

13         c.   Television receiving sets shall be installed and

14     reasonably maintained in each dayroom.

15         d.   That there is adequate seating provided for

16     detainees placed in holding cells for processing to

17     court.

18         e.   Detainees facing trial, after the first day of

19     trial, will not be required to leave their beds earlier

20     than 6:00 a.m., will not be confined to a holding cell

21     for longer than thirty minutes, waiting time on the bus

22     will not exceed thirty minutes, and will be returned to

23     cells not later than 8:00 p.m.

24         f.   Inmates shall be allowed not less than fifteen

25     minutes to complete each meal.

26         t.   Each inmate shall receive at least twice each

27     week clean outer garments, undergarments, socks and a

28     towel in exchange for those that he has been using.

4.

/ /

Exhibit 1
15

1   3. Plaintiff's counsel will comm~ ~e an analysis of

2 conditions of confinement in the 9,000 floor dormitories,

3 including ventilation, access to indigent supplies, compliance

4 with <u>Rutherford</u> orders, custody practices, classification, etc.

5   4. The County will provide, upon request, relevant non-

6 privileged data as to populations, staff, violence, etc., so that

7 relevant statistical information can be prepared and analyzed by

8 both parties.  The parties will keep each other regularly

9 apprised of the progress and results of such analysis.

10   5. The County may assign a member of the Los Angeles

11 County Sheriff's Department to act as a liaison with plaintiff's

12 counsel.

13   6. Plaintiff intends, at this time, to employ two

14 experts [one psychologist and one statistician] to assist with

15 the above-mentioned analysis, and to request that those experts

16 prepare written reports as part of this analysis.  County

17 representatives, and their counsel, shall be allowed reasonable

18 personal access to these experts and complete access to any

19 reports, computer printouts, tables, exhibits, etc., that they

20 may prepare.  It is plaintiff's intention to utilize these

21 experts to gather information which will be shared with

22 defendants and to provide an independent appraisal of conditions

23 at the Central Jail.  Whenever possible, tours of Central Jail by

24 plaintiff's expert psychologist shall be arranged and conducted

25 so that an appropriate representative from the Sheriff's medical

26 staff may attend.

27   7. The parties agree that changes in the population at

28 the Central Jail will impact upon the populations of the other

5.

Exhibit 1
16

1  facilities in the Los Angeles County Jail system, and the County

2  agrees to inform plaintiffs of changes in the use and capacities

3  of those other facilities which may occur as a result of any

4  proposed limitations on Central Jail's population.

5      8.  The parties will request an October 1985 Status

6  Conference with the Honorable William P. Gray.

7      9.  Counsel for the parties will meet regularly, not

8  less than monthly, to discuss the progress and anticipated

9  findings.  It is the parties' intent and desire to meet and

10 confer with regard to achieving the goals set forth in Paragraph

11 B above at least 30 days prior to seeking judicisl relief.

12      IT IS SO AGREED:

13 DATED:  October 23, 1985      Respectfully submitted,

14                               DE WITT W. CLINTON, County Counsel

15                               By

16                               FREDERICK R. BENNETT
                                 Principal Deputy

17

18 DATED:  October 7, 1985

19                               JOHN H. HAGAR, JR.

20

21 DATED:  October 4, 1985

22                               PAUL HOFFMAN

23                               Attorneys for Plaintiff

24

25      Good cause appearing therefor, the foregoing is approved.

26 DATED:  November 5
        October ___, 1985

27                               WILLIAM P. GRAY
                                 United States District Court

28

                               6.