# EXHIBIT 4



**Chair**
Jarl Mohn

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Operating Officer**
Heather Carrigan

**Communications Director**
Gordon Smith

**Development Director**
Jenni Luke

**Field Director**
Susanne Savage

**Director of Finance &
Administration**
Brenda Maull

**Legal Director**
Mark D. Rosenbaum

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

**Director of Program Support**
Elizabeth Schroeder

# M E M O R A N D U M

**TO:**  Sheriff Lee Baca
Assistant Sheriff Marvin Cavanaugh
Chief Alexander Yim
Chief Dennis Burns
Dr. Kathleen Daly, Director, Jail Mental Health

**FROM:**  Mark Rosenbaum and Melinda Bird

**DATE:**  July 24, 2008

**SUBJECT:**  *Rutherford v. Baca* and Conditions in the Los Angeles County Jail

Since we were last before Judge Pregerson in the *Rutherford* case in 2007, we have continued to see many problems and issues in the jails, including the following:

- Inadequate mental health care, with fewer than half of those with serious mental health needs in any type of treatment;
- Inadequate discharge planning, including failure to provide a supply of medication upon release to those on mental health and other medication and inadequate assistance with housing and federal disability benefits;
- Inadequate medical care, especially for inmates with physical disabilities and chronic illness (for example, male inmates face the same problems with access to sick call documented in Merrick Bobb's recent report on CRDF;
- Inhumane and unsanitary conditions at MCJ, including limited and irregular access to day rooms, showers and outdoor recreation, inadequate accommodations for inmates with disabilities, and a dangerous and antiquated design;
- Inadequate out-of-cell time and programming at MCJ, Twin Towers and CRDF;
- Extreme waits, overcrowding and other constitutional deficiencies in court line processing at all facilities;
- Excessive processing delays in the reception area for women at CRDF.

We have tried to work with the Department in addressing these issues as they arise. However, almost all of these problems can be attributed to the over-population of the jail. They will not be resolved through the complaints that

Rutherford and Jail Conditions                                                  Page 2
July 24, 2008

we file on behalf of individuals, or through our tours and reports on jail conditions. These
problems require systemic solutions.

We recognize that the Department has made a serious effort in discrete areas. The census at MCJ
was reduced and the policy permitting floor sleepers was eliminated. Through the *Rutherford*
panel process, the Department opened some day rooms and improved maintenance policies.
After an order from the Federal Court, the Department also took steps to improve conditions in
the men's IRC.

However, we see little progress regarding other, larger systemic problems:

- After a full year of letters and meetings, the Department failed to address the treatment of
  inmates with disabilities both as to physical accommodations and changes in policies and
  procedures.
- Six months after the CEO unveiled proposals to improve half of MCJ and close the
  remainder of that facility, nothing has been presented to or approved by the Board.
- The monitoring and improvements at the men's IRC have not been carried over to the
  women's IRC, where multi-day delays in processing are common.
- After a year, the County does not appear to have taken advantage of its new statutory
  authority to develop a comprehensive program of mandatory electronic monitoring for
  sentenced inmates.
- Recent efforts by the CEO and CCJCC to address overcrowding through a population
  management study focused on LA's unduly long length of stay, while very welcome, are
  still at a preliminary stage.  The Rand Corporation recommended such a study in 2001,
  we again requested a study in 2007, and arranged a presentation for the CEO in
  January 2008.  The cost for a consultant to get started was minimal - less than $60,000.
  Seven months later, no contract has been issued and the county stakeholders are still
  discussing the scope of work.

Given the stakes for our clients, the pace of change has been unacceptably slow. We have tried
to be as patient as possible but we must also consider the risk and actual harm that many of our
clients experience. As counsel for the *Rutherford* class of jail detainees and inmates, we cannot
stand by in the face of pervasive constitutional deficiencies that jeopardize the health, well-being
and very lives of our clients.

We call on the Department and the County to enter into a new interim agreement with the ACLU
in the *Rutherford* case in the three areas described below.  These agreements may also resolve
some of the ADA claims in the pending *Johnson v. County of Los Angeles* case.

**REQUEST # 1:  Plan and budget for a reduced jail population and commit to closing half
of MCJ in 18 months.**

1.     Expand pre-trial release by using supervised probation and electronic monitoring for
       a.     Detainees with mental illness



LIBERTY | JUSTICE | EQUALITY

Exhibit 4
30

Rutherford and Jail Conditions                                                Page 3
July 24, 2008

       b.     Non-violent detainees
       c.     Detainees with disabilities, who could be housed on electronic monitoring at another county facility such as Rancho Los Amigos.

2.    Fully implement mandatory electronic monitoring for sentenced inmates.
3.    Expedite efforts to develop a population management study that identifies the causes of the Jail's unduly long length of stay and ways to reduce this time.
4.    Develop a plan and timetable to end the practice of awakening detainees earlier than 6 A.M. and holding them for long periods in overcrowded holding cells, through the following measures:
       a.     Informing the Superior Court of the time-table and how they can cooperate in this effort.
       b.     Implementing full-scale video arraignment, not merely a pilot program.
       c.     Funding an independent consultant to study alternatives to house inmate regionally to reduce transport time.
       d.     Establishing capacity limits and a quality assurance system to ensure that detainees are not held for excessive time periods in overcrowded holding cells.

**REQUEST # 2:  Fund an expert advisory panel, selected jointly by the ACLU and LASD, with the following mandates:**

1.    MEDICAL CARE - Review existing barriers to access to medical care, develop protocols to increase access to meet constitutional minimums and monitor implementation of these protocols.  (This review should include practices regarding the treatment of inmates with disabilities, their access to wheelchairs, physical therapy, etc.)
2.    DISABILITY PROTOCOLS - Review existing practices, develop appropriate protocols regarding security, classification, access to medical equipment and monitor implementation of these protocols.
3.    OUT OF CELL TIME - Review practices regarding out-of-cell time at all jail facilities, develop protocols to increase this time to meet constitutional minimums and monitor implementation of these protocols.
4.    MENTAL HEALTH HOUSING EXPANSION.  Develop a plan to (a) increase treatment beds by, for example, by staffing new mental health modules at Pitchess and constructing dedicated mental health housing at Mira Loma or another site, and (b) create alternatives to detention when mental health clients are arrested.

**REQUEST # 3: Ensure that discharge planning is provided to all inmates with mental illness and/or ongoing medical  needs.**

1.    Provide all inmates receiving medication in the jail with a supply of medication upon release and a bridge prescription until they can access a pharmacy.
2.    Provide inmates with mental illness with discharge planning.  For inmates who will be homeless, this must include transportation, assistance with housing, applications for federal disability benefits and any missing identification.



LIBERTY | JUSTICE | EQUALITY

Exhibit 4
31