PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS RUTHERFORD, et al., | Case No. CV 75-04111 DDP |
| Plaintiffs, | Honorable Dean D. Pregerson |
| vs. | **DEFENDANTS' NOTICE OF AND MOTION FOR ENFORCEMENT OF 1989 STIPULATION AND ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| SHERMAN BLOCK, et al., | |
| Defendants. | *[Declarations and Exhibits filed concurrently herewith]* |
| | Date:   July 13, 2009<br>Time:   10:00 a.m.<br>Crtrm:  3 |

TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 13, 2009 at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-captioned Court, which is located at 312 North Spring Street, Los Angeles, California, Defendants Sherman Block, et. al. (hereinafter "Defendants") will, and hereby do, move the Court for an order enforcing the Court's 1989 Stipulation and Order ("the 1989 Order")

1

RUTHERFORD\Mtn to Enforce 1989 Order

1   regarding the use of information outside this case obtained by the American Civil
2   Liberties Union of Southern California ("ACLU") in their position as jail monitors.
3          This Motion is based upon this Notice of Motion, the Memorandum of Points
4   and Authorities, the Declarations and Exhibits, and upon such other and further
5   evidence as may properly come before the Court.
6          Counsel for the parties met and conferred regarding the issues raised in this
7   motion on May 7, 2009.  (*See*, Declaration of Justin W. Clark ["Clark Decl."], ¶ 2.)
8   In addition, this Motion is brought pursuant to the Court's June 8, 2009 Order in
9   *Johnson v. County of Los Angeles*, United States District Court Case No. CV 08-
10  03515 DDP (JTLx).  (*See*, Johnson Docket No. 75.)

12  Dated:  June 22, 2009          LAWRENCE BEACH ALLEN & CHOI, PC

14                                 By_____
15                                     Justin W. Clark
16                                     Attorneys for Defendants
                                       Sherman Block, et al.

2

RUTHERFORD\Mtn to Enforce 1989 Order

1

## **TABLE OF CONTENTS**

2  MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 3

3  I.    Introduction ........................................................................................ 4

4  II.   Relevant Procedural History ............................................................... 4

5  III.  The 1989 Order Should Be Enforced ................................................. 6

6        A.    The Terms Of The 1989 Order ................................................. 6

7        B.    The Court Has The Authority To Enforce The Order ............. 7

8        C.    The Court Should Enforce The Terms Of The 1989 Order ........ 8

9              i     Enforcement Of The 1989 Order Is Necessary To
10                   Preserve The Relationship Between The LASD And
11                   The ACLU ....................................................................... 8

12             ii.   The ACLU Has Used Or Made Available For Use Inmate
13                   Statements In Non-Rutherford Litigation ....................... 9

14             iii.  All Of The Information The ACLU Has About The LACJ
15                   System Has Come From Decades Of Conducting Interviews
16                   With LASD Personnel .................................................... 11

17             iv.   The ACLU Has Essentially Acknowledged That They
18                   Are No Longer Abiding By The Agreements They Made
19                   In The 1989 Order ......................................................... 13

20             v.    Summary ........................................................................ 13

21  IV.  Despite Likely Arguments To The Contrary From The ACLU, The
          1989 Order Is Not Invalid Nor Does It Infringe On Plaintiffs Or The
22        ACLU's Rights .............................................................................. 14

23
24        A.    The Order Is Not Vague Or Ambiguous And The Plain
                Language Of The Order Prohibits The Use Of Information
25              Obtained By The ACLU In Non-Rutherford Litigation ............ 14

26        B.    Even Assuming Arguendo That The 1989 Order Is Invalid,
27              That Fact, Even If True, Would Not Discharge The ACLU's
28              Obligation To Abide By The 1989 Order ............................... 16

C.   Enforcement Of The 1989 Order Will Not Unfairly
     Burden Plaintiffs ...............................................................17

D.   Other Civil Rights Organizations Can Effectively Litigate
     Cases Like Johnson Without The Involvement Of The ACLU
     Or The Problems Incident To Such Involvement .............................18

E.   The 1989 Order Does Not Infringe On The First Amendment
     Rights Of Plaintiffs Or Their Counsel .................................................18

V.   If The 1989 Order Is Not Enforced, The LASD Will Be Severely
     Prejudiced And The Working Relationship Between The ACLU
     And The LASD Will Be Irreversibly Damaged ................................20

A.   The LASD Will Be Severely Prejudiced If The Order Is Not
     Enforced ............................................................................................20

B.   The Relationship Between The ACLU And The LASD Will
     Be Negatively Impacted If The 1989 Order Is Not Enforced............21

VI.  CONCLUSION ........................................................................................22

RUTHERFORD\Mtn to Enforce 1989 Order

# TABLE OF AUTHORITIES

**Cases**                                                                     **Pages**

*A & A Sign Company, Inc. v. Maughan*
    419 F.2d 1152 (9th Cir. 1969) .................................................................21

*Block v. Rutherford*
    468 U.S. 576, 104 S.Ct. 3227 (1984)..........................................................5

*Chapman v. Pacific Tel. and Tel. Co.*
    613 F.2d 193 (9th Cir. 1979) ....................................................................16

*Emerick & Duncan Co. v. Hascy*
    146 F. 688 (9th Cir. 1906)........................................................................21

*F.D.I.C. v. Ernst & Ernst*
    677 F.2d 230 (2d Cir. 1982).....................................................................15

*Howat v. Kansas*
    258 U.S. 181, 42 S.Ct. 277 (1922)............................................................16

*In re Providence Journal Co.*
    820 F.2d 1342 (1st Cir.1986) ...................................................................16

*International Union, UMWA v. Bagwell*
    512 U.S. 821, 114 S.Ct. 2552 (1994)..........................................................7

*Maness v. Meyers*
    419 U.S. 449, 95 S.Ct. 584 (1975).............................................................16

*Marshall v. Barlow's Inc.*
    436 U.S. 307, 98 S.Ct. 1816 (1978)..........................................................17

*Nixon v. Warner Communications, Inc.*
    435 U.S. 589 (1978)................................................................................15

*Rutherford v. Pitchess*
    710 F.2d 572 (9th Cir. 1983) .....................................................................4

*S.E.C. v. TheStreet.Com*
    273 F.3d 222 (2nd Cir. 2001)..................................................................21

*United States v. United Mine Workers*
    330 U.S. 258, 67 S.Ct. 677 (1947)...........................................................16

**RULES**

F.R.Civ.P. Rule 1 ....................................................................................8

F.R.Civ.P. Rule 16(c)(P)...........................................................................8

F.R.Civ.P. Rule 23(d)(1)(C) ......................................................................8

F.R.Civ.P. Rule 23(g)(1)(E) ......................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     Introduction.**

In 1989, to facilitate candid and open interviews between the ACLU, inmates, and members of the Los Angeles County Sheriff's Department ("LASD"), "the parties stipulate[d] that none of the statements made during inmate interviews or in discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except by written stipulation or by order of this Court." (*See*, Clark Decl., ¶ 4; Exhibit "A" - 1989 Stipulation and Order ("the 1989 Order").)  The purpose of this Order was to "develop appropriate methods to minimize the impact of jail overcrowding" through "candid and open" interviews.  (*Id.*)

For more than two decades, the LASD relied on this Order, granting the ACLU unprecedented access to all LASD custody facilities and LASD personnel and providing the ACLU with access to inmates and information that no other civil rights organization in the county enjoys.  This access was granted based on the clear promise from the ACLU that the information obtained during the course of monitoring activities would not be used against the LASD in non-*Rutherford* litigation and would not be made available for use by other attorneys who may bring suit against the LASD.  Essentially, the agreement was that the ACLU would not initiate or prosecute additional litigation against the LASD and instead would continue to work cooperatively with the LASD within the context of the long standing relationship that developed following entry of the Judgment.

In June, 2008, after more than twenty years of cooperative work in accordance with the terms of the 1989 Order, the ACLU chose to bring suit against the LASD and represent plaintiffs in *Johnson v. County of Los Angeles*, United States District Court Case No. CV 08-03515 DDP (JTLx).  Using all of the knowledge and information obtained by the ACLU through access to the jails and interviews of LASD personnel, the plaintiffs in *Johnson* allege violations of the

3

1 │ Americans with Disabilities Act and Section 504 of the Rehabilitation Act as well
2 │ as other causes of action.  In fact, the ACLU has gathered and submitted
3 │ declarations from inmates housed in Los Angeles County jail ("LACJ") facilities
4 │ through their monitoring activities and has filed them in *Johnson*.

5 │         As set forth in greater detail below, the LASD respectfully requests that the
6 │ Court enforce the unambiguous terms of the 1989 Order which prohibits the ACLU
7 │ from using information they have obtained about the LACJ system in non-
8 │ *Rutherford* litigation.  The ACLU should be held to the conditions they agreed to
9 │ and the LASD relied on.  To this end, the ACLU should be ordered to withdraw as
10 │ counsel for plaintiffs in *Johnson* and comply with the terms of the agreement they
11 │ made.  If the terms of the 1989 Order are not enforced, the working relationship
12 │ between the LASD and the ACLU will suffer to the detriment of all parties and the
13 │ LASD will be severely prejudiced based on fact that the LASD has relied on the
14 │ 1989 Order for twenty years.

15 │ **II.     Relevant Procedural History.**

16 │         This case was filed by the ACLU in 1975 as a class action on behalf of all
17 │ present and future inmates incarcerated in the LACJ.  Following class certification
18 │ and trial, Judgment was entered on February 15, 1979 imposing nine orders on the
19 │ LASD regarding the operation of Men's Central Jail.[1]  (*See*, Clark Decl., ¶ 5;
20 │ Exhibit "B", 2:1 - 4:26.)  Three of the nine orders (regarding visitation, restoration
21 │ of windows, and search procedures) were appealed to the Ninth Circuit which
22 │ reversed the order concerning the restoration of windows.  *See*, *Rutherford v.*
23 │ *Pitchess*, 710 F.2d 572 (9th Cir. 1983).  A further appeal was taken to the United
24 │ States Supreme Court which reversed the visitation order to the extent it required

─────────────────────────

[1] Post appeal, the remaining orders address: 1) beds; 2) visitation by children; 3) outdoor recreation; 4) indoor recreation; 5) telephones; 6) cell searches; 7) time for meals; and 8) change of clothing.

1    contact visitation and the search procedures order.  *See*, *Block v. Rutherford*, 468

2    U.S. 576, 104 S.Ct. 3227 (1984).

3         Although none of the orders from the Judgment apply to any facility other

4    than Men's Central Jail, in practice and performance, the LASD has attempted to

5    implement the orders on a system-wide basis. (*See*, Clark Decl., ¶ 6; Exhibit "C" -

6    4:7-11.)  Further, the on-going discussions between the parties have generally

7    focused on the system as a whole rather than just Men's Central Jail and in many

8    cases, the discussions have not been limited strictly to the remaining orders in the

9    Judgment.

10        Beginning in 1985, unprecedented increases in the jail population made it

11   difficult for the LASD to comply with some of the orders referenced above. (*See*,

12   Clark Decl. ¶ 6; Exhibit "C" .)  Specifically, the population of the LACJ system

13   went from approximately 8,000 to over 23,000 inmates. (*Id.*)  To address this rapid

14   increase in population, the ACLU and the LASD entered into a memorandum of

15   understanding which eventually lead to stipulated inmate population limits at each

16   LASD custody facility[2] and a jail population management order.

17        Following the agreements referenced above, the ACLU has continued to

18   monitor the LASD's compliance with the various remaining orders and the parties

19   met and continue to meet regularly to address various issues associated with the

20   conditions of confinement in LACJ system.  Despite any obligation to do so,

21   pursuant to the working relationship between the parties, the LASD has repeatedly

22   included the ACLU in a variety of discussions about issues outside the scope of

23   Judgment.

24        In 1989, following the realization that the ACLU's monitoring necessarily

25   involved interviewing inmates and LASD personnel often in the absence of legal

26   counsel, the parties stipulated to and the Court approved an order "that none of the

27

28   _____

[2] With the exception of the North County Correctional Facility as to which there is
only an agreement between the parties. (*See*, Clark Decl., ¶ 6; Exhibit "C".

1  statements made during inmate interviews or in discussions with Sheriff's staff will
2  be used or made available for use in other litigation or for purposes other than the
3  present litigation except by written stipulation or by order of this Court." (*See*,
4  Clark Decl., ¶ 4; Exhibit "A".)  In this Motion, Defendants seek to have this Order
5  enforced because, beginning in June, 2008, the ACLU is no longer abiding by the
6  clear terms of this Order or the agreements they made.

7  **III.    The 1989 Order Should Be Enforced.**

8           The purpose of this Motion is to request that the Court enforce the 1989
9  Order and require the ACLU to abide by the conditions they agreed to and the
10 LASD relied on.  As set forth below, the terms of the 1989 Order are very clear, the
11 Court has the authority to enforce the Order, enforcement is necessary, and
12 unfortunately, the ACLU is no longer complying with the conditions they agreed
13 to.

14          **A.    The Terms Of The 1989 Order.**

15          As set forth above, the 1989 Order was entered shortly after the parties
16 reached various agreements concerning population limits and a jail management
17 order.  (*See*, Clark Decl., ¶ 6; Exhibit "C" - 4:13 - 5:6.)  "To measure compliance
18 with the Court's Orders in this case and to develop appropriate methods to
19 minimize the impact of jail overcrowding, the counsel for the parties have found it
20 useful to regularly conduct joint and separate interviews with inmates throughout
21 the jail system and to permit discussions between counsel for the plaintiff and
22 Sheriff's staff, frequently without counsel for the Sheriff being present." (*See*,
23 Clark Decl., ¶ 4; Exhibit "A".)

24          For these interviews to be effective, the parties agreed that they "must be
25 candid and open." (*Id*.)  The parties further agreed that "[t]he Sheriff's staff must
26 be confident that they can state facts and their views openly and candidly *without*
27 *concern that their statements will be used in other litigation.*" (*Id*.)(Emphasis
28 added.) To further these goals, the parties agreed that "none of the statements made

6

1   during inmate interviews or discussions with Sheriff's staff will be used or made

2   available for use in other litigation or for purposes other than the present litigation

3   except by written stipulation or by order of this Court." (*Id.*)

4       Basically, the above agreement allows the LASD to share information, both

5   favorable and unfavorable, with the ACLU as part of continuing efforts to improve

6   the LACJ system without concern of such information being used against the

7   LASD or its members in non-*Rutherford* litigation. (*See*, Declaration of Sheriff

8   Leroy Baca, ¶ 10.)  To a certain extent, the entire working relationship that

9   presently exists between the LASD and the ACLU is based on this agreement and

10   the trust inherent to it.  For more than twenty years, the parties have worked

11   together cooperatively pursuant to this agreement and by representing the plaintiffs

12   in *Johnson* (and filing various documents in that case that were obtained by the

13   ACLU through monitoring access), the ACLU is no longer abiding by the

14   agreements they made.  For the relationship between the parties to continue, the

15   1989 Order must be enforced.

16       **B.**     **The Court Has The Authority To Enforce The Order.**

17       Defendants do not expect the ACLU to argue that the Court does not have

18   the authority to enforce the 1989 Order; however, there is ample authority to

19   support the Court's ability to do so.

20       First, Federal Courts have both inherent and statutory authority to coerce

21   compliance with their orders.  *See*, *International Union, UMWA v. Bagwell*, 512

22   U.S. 821, 831-832, 114 S.Ct. 2552, 2559 (1994)(" Courts independently must be

23   vested with power to impose silence, respect, and decorum, in their presence, and

24   submission to their lawful mandates" (internal quotations and citations omitted));

25   *see also*, 18 U.S.C. §401 ("[a] court of the United States shall have power to punish

26   by fine or imprisonment, or both, at its discretion, such contempt of its authority..."

27   for "(3)Disobedience or resistance to its lawful write, process, **order**, rule, decree,

28   or command"(emphasis added).)

7

1   Second, the Court has the authority to enforce the 1989 Order under the

2   Federal Rules of Civil Procedure. *See*, FRCP Rule 1 (Federal Rules should be

3   construed and administered to secure the just, speedy, and inexpensive

4   determination of every action and proceeding); *see also*, Rule 16(c)(P)(in managing

5   a case, the Court may consider facilitating in other ways the just, speedy, and

6   inexpensive disposition of the action); *see also*, Rule 23(d)(1)(C) ("[i]n conducting

7   an action under this rule, the court may issue orders that:…impose conditions on

8   the representative parties or on intervenors"); *see also*, FRCP Rule 23

9   (g)(1)(E)("[i]n appointing class counsel, the court:…may make further orders in

10  connection with the appointment").)

11      Defendants do not expect the ACLU to argue that the Court lacks authority

12  to enforce the 1989 Order; however, as set forth above, the Court clearly has such

13  authority and any argument (however unlikely) to the contrary, is without merit.

14      **C.    The Court Should Enforce The Terms Of The 1989 Order.**

15      Enforcement of 1989 Order is necessary, because, as set forth below, the

16  ACLU is no longer complying with the terms of the 1989 Order in several ways.

17  First, the ACLU has taken statements from inmate interviews and filed them in

18  *Johnson*. Second, the ACLU has used or made available information obtained

19  through interviews with LASD members in non-*Rutherford* litigation. Finally,

20  counsel for the ACLU has acknowledged that they cannot proceed as counsel in

21  *Johnson* if the 1989 Order is enforced.

22      **i.    Enforcement Of The 1989 Order Is Necessary To Preserve**

23      **The Relationship Between The LASD And The ACLU.**

24      The agreements and restrictions outlined in the 1989 Order are vital to the

25  continued cooperation between the ACLU and the LASD. For this reason,

26  Defendants seek to have the terms of the 1989 Order enforced so that the working

27  relationship between the LASD and the ACLU can continue as it has for decades.

28  Basically, Defendants have been forced to seek enforcement of the 1989 Order

8

because the ACLU has taken information they have obtained through interviews with inmates and LASD personnel and they have used it or made it available to other counsel for use in non-*Rutherford* litigation.  This is exactly what the 1989 Order prohibits.  For this reason, enforcement of the 1989 Order is necessary or else, as set forth in greater detail in the concurrently filed Declaration of Sheriff Leroy Baca, the relationship between the ACLU and the LASD will be detrimentally impacted.

ii.    **The ACLU Has Used Or Made Available For Use Inmate Statements In Non-*Rutherford* Litigation.**

The 1989 Order clearly prohibits the ACLU from using or making available for use inmate statements obtained by the ACLU through monitoring activities. (*See*, Clark Decl., ¶ 4; Exhibit "A".)  This agreement prohibits the ACLU from using inmate statements (and statements of LASD personnel) to initiate new litigation against the LASD and it also prohibits the ACLU from providing information to other lawyers for use against the LASD.  Unfortunately, this is exactly what the ACLU has done on at least two occasions.

Most recently, the ACLU filed declarations in support of an *ex parte* application to lift the stay of the *Johnson* case.[3]  This is not the only time the ACLU

_____

[3] In *Johnson*, the parties stipulated to and the Court approved a stay so that the parties could pursue an informal resolution of plaintiffs' claims.  (*See*, *Johnson* Docket Nos. 45, 46.)  On June 1, 2009, plaintiffs filed an *ex parte* application to have the stay lifted and in support of that application, plaintiffs filed declarations from inmates.  (*See*, Docket No. 72 - Declarations of Shane Savage and Raymond McPheters.)  While the ACLU denies that these declarations were obtained through monitoring access (and Defendants do not dispute this claim), the fact of the matter is that both individuals had repeated contacts with the ACLU.  (*See*, *Johnson* Docket No. 74, Declaration of Melinda Bird, ¶¶ 6,7.)  These individuals contacts with the ACLU and the issue this creates highlights the reasons why the 1989 Order must be enforced and why the ACLU must not be permitted to represent plaintiffs in non-*Rutherford* litigation against the LASD.  This same issue, regarding whether a declaration or other evidence was obtained by the ACLU through monitoring

9

1  has filed declarations obtained from inmates through jail monitoring.  On June 9,

2  2008, plaintiffs in *Johnson* filed a motion for a preliminary injunction.  (*See,*

3  *Johnson* Docket No. 21.)  In support of this motion, plaintiff's filed declarations

4  from 21 inmates.  (*See, Johnson* Docket No. 23.)  While the ACLU may argue that

5  some of these declarations were obtained independently by, for example, the

6  Disability Rights Legal Center ("DLRC"), some of these declarations, such as the

7  Declaration from John Finn were, without dispute, obtained by the ACLU during

8  their monitoring of the jails.  (*See, Johnson* Docket No. 23, Exhibit 8, Declaration

9  of John Finn.)  The Finn Declaration was obtained by the ACLU in April, 2007,

10  and it was filed by the ACLU in support of an Order to Show Cause re Contempt in

11  this case.  (*See,* Docket Nos. 130, 132 - Declarations and Exhibits in support of

12  OSC re contempt.)  The ACLU cannot validly claim that they did not obtain the

13  Finn Declaration through their monitoring activities and they cannot dispute that

14  the declaration was made available for use in *Johnson*.  In fact, the Finn declaration

15  was obtained more than  a year before the Johnson Complaint was even filed in

16  May, 2008.

17        While the ACLU may dispute that some of the declarations filed in *Johnson*

18  were not obtained through jail monitoring, the arguments associated with this issue

19  actually highlight the inherent problem with the ACLU's involvement in non-

20  *Rutherford* litigation and why the 1989 must be enforced.  Regardless of any

21  procedures the ACLU may employ to balance monitoring activities and being

22  counsel in other litigation against the LASD, the balance is simply too precarious to

23  be workable.  Even with some of the ethical and procedural safeguards that counsel

24

25

26

27  activities will arise again and again essentially creating a threshold evidentiary

28  problem with every declaration submitted by plaintiffs in a non-*Rutherford* case
    against the LASD in which the ACLU is acting as counsel.

10

1   for the ACLU has described[4], the mere possibility of the ACLU's misuse of the

2   access they have to the LACJ system will always cast a shadow of impropriety over

3   any materials submitted in *Johnson*.  As a threshold matter, the source of any

4   statement from an inmate or any information about the LACJ system will always

5   need to be analyzed to ensure that the 1989 Order has not been violated.  Basically,

6   the question will always be, where did this information come from?  Quite frankly,

7   there is simply no viable way for Defendants to be reassured that evidence was not

8   obtained by the ACLU through monitoring activities and for this reason, the only

9   equitable and workable solution is to have the ACLU withdraw as counsel in

10   *Johnson* and allow that case to proceed with the DRLC representing the plaintiffs.

iii.   **All Of The Information The ACLU Has About The**
       **LACJ System Has Come From Decades Of**
       **Conducting Interviews With LASD Personnel.**

14          While the submission of declarations in *Johnson* obtained by the ACLU

15   clearly violates the 1989 Order, in fact, the ACLU is violating the 1989 Order and

16   the long standing agreements between the parties merely by being involved in

17   *Johnson*.  Based on their decades of work in the LACJ system and the thousands of

18   interviews they have conducted of LASD personnel, the LASD has a vast

19   institutional understanding of the LACJ system.  (*See*, Declaration of Dennis Conte

20   ["Conte Decl."], ¶¶ 4-7.)  This is knowledge that no other civil rights organization

21   or private counsel has.  The only reason the ACLU has such knowledge is the

22   unique position they occupy in the jails and the unrestricted access they have.  (*See*,

23   Conte Declaration, ¶ 8.)  By representing plaintiffs in *Johnson*, the ACLU is

----

[4] Counsel for the ACLU, Melinda Bird, submitted a declaration in support of the ACLU's Motion to Modify the 1989 Order that is the subject of this motion.  Ms. Bird's declaration describes some of the procedures the ACLU has established to address the conditions the ACLU agreed to in the 1989 Order based on the ACLU's involvement in *Johnson*.  (*See*, Docket No. 144 - Bird Declaration.)

11

1    making the information they have about the LACJ available for use by other

2    lawyers in non-*Rutherford* litigation.

3         For example, even a cursory review of the pleadings in *Johnson*

4    demonstrates how the ACLU's working knowledge of the jails is being used

5    against the LASD.  For example, in paragraph 7 of the *Johnson* complaint,

6    plaintiffs allege "[p]eople with disabilities are also explicitly denied the opportunity

7    to be trustees, a valued position within the jail." (*See*, Johnson Complaint, ¶ 7.)

8    This is information that the ACLU has obtained by way of being in the jails on a

9    regular basis.  Another example can be found in that the Complaint includes

10   allegations regarding the processing of inmates in the Inmate Reception Center

11   (which, as the Court is aware, was one of the issues the parties have addressed in

12   this case in the last several years). (*See*, ¶¶ 5, 6.) Further still, the *Johnson*

13   Complaint includes allegations regarding the classification of inmates, where

14   inmates are housed in various LASD custody facilities, and allegations related to

15   policies and procedures regarding the identification of inmates with disabilities.

16   (*See*, ¶¶ 36, 37.)

17        Despite any argument to the contrary, the information incorporated into the

18   *Johnson* Complaint clearly comes from the ACLU's working knowledge of the

19   jails that has developed over the last twenty years by way of interviewing LASD

20   personnel.  The ACLU clearly has knowledge about the LACJ that is above and

21   beyond that of any other civil rights organization in the country.  The very purpose

22   behind the 1989 Order was to further the parties' ability to develop effective means

23   of facilitating the Judgment without concern that information disclosed would be

24   used against the LASD in new litigation.  In *Johnson*, this is exactly what the

25   ACLU is doing.

26   ///

27   ///

28

12

iv.   **The ACLU Has Essentially Acknowledged That They**
      **Are No Longer Abiding By The Agreements They Made In**
      **The 1989 Order.**

In light of the above, it is clear that the ACLU is not abiding by the
conditions they agreed to in the 1989 Order. In fact, counsel for the ACLU has
essentially acknowledged as much. First, shortly after *Johnson* was filed, the
ACLU filed a motion to modify the 1989 Order. (*See, Johnson* Docket No. 143.)
At the same time, the ACLU filed an *ex parte* application for a shortened hearing
and briefing schedule. (*See, Johnson* Docket No. 144.) In support of these papers,
counsel for the ACLU, Melinda Bird, filed a declaration essentially acknowledging
that the ACLU could not proceed in *Johnson* without a modification of the 1989
Order or a stipulation between the parties that inmate statements could be used in
that action. In fact, the ACLU acknowledged that the entire genesis of the *Johnson*
case came about through the ACLU's monitoring activities. Specifically, the
ACLU acknowledged that "[t]he ACLU identified significant problems with the
treatment of inmates with disabilities in early 2007 through its monitoring work in
*Rutherford*" (*See*, Docket No. 144,3:20-21.) Further, the ACLU acknowledged that
they "collected statements from *Rutherford* class members that are highly relevant
to these [Johnson] motions, but their use appears to be barred by the 1989 Order."
(*Id*. at 2:11-13.) Now, rather than seek modification of the 1989 Order, the ACLU
is ignoring it and by doing so, may irreparably harm the relationship between the
parties. At a minimum, the ACLU has violated the terms of the 1989 Order they
agreed to.

v.   **Summary.**

For nearly 20 years, the ACLU has benefited from unprecedented access to
the jails, regularly conducted "joint and separate interviews with inmates" and
"discussions between counsel for the plaintiff and Sheriff's staff, frequently
without counsel for the Sheriff being present." (*See*, Clark Decl., ¶ 4; Exhibit "A" -

1989 Order.)  Through this work, which has furthered the parties' ability to make
changes to the LACJ system and improve conditions of confinement, the ACLU
has obtained information about the LACJ system above and beyond what any other
civil rights organization has.  In exchange for being granted such access to advocate
on behalf of Plaintiffs, the ACLU agreed that they would not bring suit against the
LASD and would not use or make available to other lawyers the knowledge and
information they have about the LACJ system.[5]  Now, Plaintiffs want to have their
cake and eat it to, and strike one of the only two conditions they subjected
themselves to.  Defendants respectfully request that the Court hold the ACLU to the
agreements they made.  To do otherwise would severely prejudice the LASD and in
fact, would be completely inequitable given the substantial reliance the LASD has
placed on the 1989 Order.

**IV.   Despite Likely Arguments To The Contrary From The ACLU, The
1989 Order Is Valid And It Does It Infringe On Plaintiffs Or The
ACLU's Rights.**

Defendants anticipate that, in opposing this Motion, the ACLU will argue
that the 1989 Order is unenforceable.  Any such argument lacks merit and should
be disregarded as set forth below.

**A.   The Order Is Perfectly Clear And Prohibits The Use Of
Information Obtained By The ACLU In Non-*Rutherford*
Litigation.**

Defendants expect that the ACLU will argue that the 1989 Order is too vague
or unclear to be enforced.  First, this argument ignores the twenty year course of
performance between the parties pursuant to the 1989 Order.  Undeniably, the
agreement was clear enough for the parties to work cooperatively together from, at

---

[5] In fact, as part of this agreement, the ACLU is compensated on a monthly basis by
the LASD.  (*See*, Clark Decl. ¶7; Exhibit "D" - Letter from Sheriff Baca.

1    a minimum, 1989 when the order was entered until June, 2008 when *Johnson* was

2    filed.  In fact, it was not until counsel for the ACLU, Melinda Bird, became

3    involved in this case that the ACLU suggested some ambiguity.  For decades, both

4    the LASD and the ACLU understood that a key component to the relationship was

5    the ACLU's agreement not to bring suit against the LASD because the ACLU is

6    prohibited from using or making available for use the information they obtain

7    through their position in jails.  To now assert that the 1989 Order is unclear ignores

8    the long standing relationship and the manner in which that relationship has been

9    maintained.

10        Second, even a plain reading of the 1989 Order makes the agreement very

11   clear.  There is no ambiguity as to what the ACLU is prohibited from doing.  The

12   1989 Order clearly states that "none of the statements made during inmate

13   interviews or discussions with Sheriff's staff will be used or made available for use

14   in other litigation or for purposes other than the present litigation except by written

15   stipulation or by order of this Court."  This language makes it clear that the ACLU

16   cannot use information they obtain through interviews with LASD staff in non-

17   *Rutherford* litigation and they cannot give such information to other attorneys for

18   use against the LASD.  As set forth above, in *Johnson*, the ACLU has done exactly

19   this.

20        Third, it is beyond question that a court may issue orders prohibiting

21   disclosure of documents or information.  *F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230

22   (2d Cir. 1982) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598

23   (1978)).  The 1989 Order (which encapsulates the agreements made between the

24   LASD and the ACLU) prohibits the disclosure or use of information obtained by

25   the ACLU through the access they have to the LACJ system.

26        Defendants are aware of no controlling authority regarding a legal standard

27   which would find the 1989 Order to be unenforceable even if the Court determined

28   that 1989 was somehow ambiguous.

RUTHERFORD\Mtn to Enforce 1989 Order

**B.    Even Assuming *Arguendo* That The 1989 Order Is Invalid, That Fact, Even If True, Would Not Discharge The ACLU's Obligation To Abide By Its Terms.**

Even if the 1989 Order is invalid (and as set forth above, it most certainly is not), the ACLU is still bound by it until they have it modified or set aside. "An attorney who believes a court order is erroneous is not relieved of the duty to obey it. The proper course of action, unless and until the order is invalidated by an appellate court, is to comply and cite the order as reversible error should an adverse judgment result." *Chapman v. Pacific Tel. and Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979) *citing*, *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584 (1975). In fact, even an assertion that a particular order is unconstitutional does not overcome the obligation to comply with the subject order. *Id.*

In brief, the collateral bar rule permits a judicial order to be enforced even though the underlying decision may be incorrect and even unconstitutional. *See, United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677 (1947); *Howat v. Kansas,* 258 U.S. 181, 189, 42 S.Ct. 277, 280 (1922). Ordinarily, a party charged with violating a court order cannot raise the invalidity of the subject order as a defense. *See, Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816 (1978); *see also, In re Providence Journal Co.,* 820 F.2d 1342, 1344 (1st Cir.1986) (calling collateral bar doctrine "sine qua non of orderly government"). The genesis of the collateral bar rule stems from the widely held belief that a smoothly functioning judicial process may be jeopardized if parties are able to determine for themselves when and how to obey court orders. "The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *Maness,* 419 U.S. at 459 (1975) (*quoting, United Mine Workers,* 330 U.S. at 293)(internal quotations omitted). According to this view, although both counsel and a litigant may exercise their right to object to a

16

1   court ruling and may vigorously advocate their positions before the appropriate

2   tribunal, both the dignity of the court and the orderly functioning of the judicial

3   system necessitate prompt adherence to the writ of the court.

4        Here, before the ACLU may proceed as counsel in *Johnson*, they must first

5   successful seek to have the 1989 Order set aside or at a minimum, modified.  They

6   have done neither.  Until that time, regardless of any contention regarding the

7   invalidity of the order, the ACLU is still bound by the agreements they made.  As

8   set forth above, since *Johnson* was filed, the ACLU is no longer abiding by the

9   1989 Order and accordingly, the LASD has been forced to file this Motion to have

10  the 1989 Order enforced.

11  **C.    Enforcement Of The 1989 Order Will Not Unfairly**

12  **        Burden Plaintiffs.**

13       Plaintiffs will likely assert that enforcement of the 1989 Order will unfairly

14  prejudice and burden class members.  This is simply not true.  The purpose of the

15  1989 Order was to "develop appropriate methods to minimize the impact of jail

16  overcrowding" in association with compliance with the Judgment.  (*See*, Clark

17  Decl., ¶ 4; Exhibit "A".)  Plaintiffs will likely assert that *Rutherford* class members

18  are unfairly burdened because they have difficulty in accessing outside counsel in,

19  for example, the *Johnson* case, without the assistance of the ACLU.  First, *Johnson*

20  is a separate class action, unrelated to this action.  Nothing in the 1989 Order

21  prohibits or restricts the rights of inmates to bring claims against the LASD - such

22  claims simply cannot be brought or litigated by the ACLU.  The right to litigate

23  such claims was given up by the ACLU in exchange for the access they were

24  granted to monitor compliance with the Judgment and to effectively develop

25  solutions to issues associated with the conditions of confinement in the LACJ

26  system.  The ACLU voluntarily relinquished that right and they cannot now

27  disregard their agreements after so many years of reliance by the LASD.

28  ///

**D.     Other Civil Rights Organizations Can Effectively Litigate Cases Like _Johnson_ Without The Involvement Of The ACLU.**

Defendants expect that the ACLU will argue that they must represent plaintiffs in _Johnson_ for the claims in that case to be effectively litigated.  This is simply not true.  First, the DRLC is already counsel in _Johnson_ and as stated by counsel for the DRLC, Ms. Jennifer Lee, "[b]ecause the DRLC is well-known in the community, we do not need to rely on the ACLU or any other organization to identify people with disabilities in need of our assistance." (_See_, _Johnson_ Docket No. 74 - Declaration of Jennifer Lee, ¶ 4.)  Thus, any claim by the ACLU that they must be involved in _Johnson_ is directly contradicted by statements made by the DRLC who are seemingly more than capable of litigating _Johnson_ without the ACLU's involvement.  Furthermore, considering the significant issues identified above associated with the 1989 Order, the most efficient and equitable solution is for the Court to enforce the 1989 Order and order the ACLU to withdraw as counsel in _Johnson_.  _Johnson_ can then proceed with the DRLC and the other plaintiffs' counsel involved in that case.

Second, the ACLU's contention that they must be involved in _Johnson_ ignores the fact that there are many plaintiffs attorneys in Southern California that regularly file suit against the LASD and the County of Los Angeles. (_See_, Clark Decl., ¶ 3.)  Many of these attorneys manage to litigate (sometimes successfully) against the LASD without the assistance or involvement of the ACLU. (_Id._)

**E.     The 1989 Order Does Not Infringe On The First Amendment Rights Of Plaintiffs Or Their Counsel.**

The ACLU will likely argue that the terms of the 1989 Order should not be enforced because the 1989 Order infringes on the First Amendment rights of Plaintiffs and counsel for the ACLU.  Specifically, Defendants anticipate that the ACLU will argue that the 1989 Order violates the "unconstitutional conditions" doctrine.  This likely contention lacks merit for several reasons and as set forth

18

1  above, even if the 1989 Order is invalid or unconstitutional, the ACLU is still

2  bound by its terms until the order is modified or set aside.  Moreover, ACLU

3  cannot raise any purported invalidity as a defense to the violations detailed above.

4  To date, the 1989 Order has not been modified or set aside and until that happens,

5  any arguments regarding the purported validity or constitutionality of the 1989

6  Order are irrelevant.

7         Even if the ACLU's likely contentions regarding the constitutionality of the

8  1989 Order were properly considered (and they should not be), with respect to the

9  Plaintiff class members in this case, nothing in the 1989 Order prohibits them from

10  filing suit against the LASD.  Thus, the First Amendment is not implicated any way

11  whatsoever because the 1989 Order does not limit the class members rights to file

12  suit against the LASD.  While the ACLU may not properly litigate non-*Rutherford*

13  claims against the LASD, any inmate incarcerated in the LACJ system is free to

14  bring suit against the LASD using any number of attorneys who regularly litigate

15  cases against law enforcement entities. (*See*, Clark Decl., ¶ 3.)

16         With respect to counsel for the ACLU, Defendants anticipate that Plaintiffs

17  will argue that the 1989 Order restricts the ACLU's First Amendment right to

18  pursue litigation against the LASD; however, the ACLU voluntarily agreed to

19  waive this right and the ACLU cannot now, after receiving the substantial benefits

20  conferred on them through the 1989 Order, choose to no longer abide by the

21  concessions they made.  Even if the 1989 Order could be construed as an absolute

22  waiver of constitutional rights (and Defendants do not believe it does), that fact,

23  standing alone, would not render the 1989 Order invalid.  Indeed, individuals and

24  entities relinquish constitutional rights all the time and such waiver (if it can be

25  construed as such) in no immediately invalidates the 1989 Order.

26  ///

27  ///

28  ///

V. **If The 1989 Order Is Not Enforced, The LASD Will Be Severely Prejudiced And The Working Relationship Between The ACLU And The LASD Will Be Irreversibly Damaged.**

If the 1989 Order is not enforced, not only will the LASD suffer significant prejudice but also, the relationship between the LASD and the ACLU will be detrimentally impacted.

A. **The LASD Will Be Severely Prejudiced If The Order Is Not Enforced.**

For the last twenty years, the LASD has relied on the ACLU's agreement and the 1989 Order discussed herein. In connection with this reliance, the LASD has provided the ACLU with unfettered access to information and personnel that no other civil rights organization in the country has. Thought the course of the ACLU's access to the jails and the personnel who run them, they have gained an institutional level of knowledge regarding the layout of the jails, the operation of the jails, and personnel who work in them. If the 1989 Order is not enforced, the LASD will be severely prejudiced because the ACLU will be able to use the knowledge they have about the jails against the LASD in *Johnson*, and possibly, other new litigation.

For example, if the 1989 Order is not enforced and the ACLU is allowed to remain counsel in *Johnson*, in preparing and serving discovery (when the stay is lifted), what would stop the ACLU from informing their co-counsel in *Johnson* about the appropriate LASD personnel to notice for deposition about a particular topic? Through their work in the jails, the ACLU knows who works where and what their responsibilities include. This same concern applies to possible written discovery requests where the ACLU could assist in preparing pointed discovery requests for documents that other counsel might not even know exist. In most situations, a civil rights organization litigating against a law enforcement entity would not have the benefit of co-counsel that has unlimited access to the custody

20

1   facilities at issue in that action.  Unless the 1989 Order is enforced, this is exactly

2   what would occur in *Johnson*.

3          To prevent the LASD from being unfairly prejudiced, the 1989 Order must

4   be enforced.  Anything less would essentially amount to a modification of the

5   Order which would be presumptively unfair given the confidentiality that the

6   LASD has relied on.  *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 230 (2nd Cir.

7   2001)(the Second Circuit points out that "such modifications unfairly disturb the

8   legitimate expectations of litigants.")

9          Furthermore, fundamental principles of equity dictate that "one party to an

10  agreement, . . . stipulation, or anything else, cannot be relieved of its burdens while

11  holding on to its benefits."  *Emerick & Duncan Co. v. Hascy*, 146 F. 688, 695 (9th

12  Cir. 1906); *see also*, *A & A Sign Company, Inc. v. Maughan*, 419 F.2d 1152, 1155

13  (9th Cir. 1969) (affirming *Emerick* and holding the court "cannot remove a material

14  part of the stipulation over the objection of one of the parties to it and enforce the

15  rest of the agreement").

16     **B.     The Relationship Between The ACLU And The LASD Will Be**

17             **Negatively Impacted If The 1989 Order Is Not Enforced.**

18         As set forth in much greater detail in the concurrently filed Declaration of

19  Sheriff Leroy Baca, if the 1989 Order is not enforced and the ACLU is permitted to

20  continue their representation of plaintiffs in *Johnson*, the working relationship

21  between the ACLU and the LASD will likely suffer.  Under the current

22  relationship, the LASD trusts that it can provide information, both favorable and

23  unfavorable, to the ACLU without concern for it being used against the LASD or

24  its members in new litigation.  (*See*, Baca Declaration, ¶ 10.)  Members of the

25  LASD, especially high-ranking executives, regularly deal directly with attorneys

26  and legal representatives from the ACLU without the benefit of legal counsel.

27         If the 1989 Order is not enforced, it is very likely that the LASD would be

28  forced to reevaluate the working relationship that presently exists between the

21

RUTHERFORD\Mtn to Enforce 1989 Order

1   ACLU and the LASD.  For example, while the LASD would still comply with all
2   outstanding court orders (such as, allowing the ACLU access to LASD custody
3   facilities), the LASD might need to afford LASD members with access to legal
4   counsel during any interaction with the ACLU.  Further, under the present
5   relationship, the LASD regularly interacts with the ACLU regarding subjects and
6   issues unrelated to the Judgment in this case.  If the 1989 Order is not enforced, this
7   too, will likely change.  Defendants have no desire to damage the cooperative
8   relationship that presently exists between the LASD and the ACLU but for this
9   relationship to continue in its present incarnation, the ACLU must abide by the
10  terms of the 1989 Order and the agreements that have been in place for decades.
11  **V.     Conclusion.**
12          Based on the above, Defendants respectfully request that the Court enforce
13  the 1989 Order and thereby preserve the working relationship that has existing
14  between the LASD and the ACLU for more than twenty years.  To this end, the
15  ACLU should be ordered to withdraw as counsel for plaintiffs in *Johnson* and the
16  ACLU should be precluded from providing counsel in *Johnson* with information
17  obtained through the ACLU's monitoring of the jails.

18
19  Dated:  June 22, 2009                LAWRENCE BEACH ALLEN & CHOI, PC
20
21                                       By_____
22                                          Justin W. Clark
23                                          Attorneys for Defendants
                                            Sherman Block, et al.
24
25
26
27
28

22

RUTHERFORD\Mtn to Enforce 1989 Order