MARK D. ROSENBAUM, SBN 59940
mrosenbaum@aclu-sc.org
PETER ELIASBERG, SBN 189110
peliasberg@aclu-sc.org,
MELINDA BIRD, SBN 102236
mbird@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500, x219
Facsimile: (213) 977-5297

MARGARET WINTER
NATIONAL PRISON PROJECT OF THE ACLU FOUNDATION
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6605
Facsimile: (202) 393-4931
E-mail: mwinter@npp-aclu.org
*Not admitted in D.C.; practice limited to federal courts

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS RUTHERFORD, et al., Plaintiffs, vs. LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, YVONNE B. BURKE, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al., Defendants. | Case No. Civ. 75-04111-DDP<br><br>**PLAINTIFFS' OPPOSITION TO MOTION FOR ENFORCEMENT OF 1989 STIPULATION AND ORDER**<br><br>Honorable Dean Pregerson<br><br>Date: July 13, 2009<br>Time: 10:00 a.m.<br>Dept: 3 |

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . 1

II. DISQUALIFICATION MOTIONS ARE A "DRASTIC" REMEDY THAT IS OFTEN USED FOR TACTICAL ADVANTAGE. . . . . . . . . . 3

III. DEFENDANTS' MOTION IS FILED TOO LATE AND IN THE WRONG CASE . . . . . . . . . . 5

IV. PLAINTIFFS HAVE NOT VIOLATED THE 1989 INMATE INTERVIEW ORDER . . . . . . . . . . 8

A. The ACLU Has Not Used Statements From Inmates Or Deputies in the Johnson case that were Obtained as a Result Of Its Interviews Or Its Monitoring Access in *Rutherford* . . . . . . . . 8

B. Defendants' Interpretation of the 1989 Inmate Interview Order to Include an Unstated Agreement to Forbear from Other Litigation has No Support in Law or Fact. . . . . . . . . . 10

V. BECAUSE THE 1989 ORDER DOES NOT RENDER ANY STATEMENTS OR INFORMATION CONFIDENTIAL, PRIVILEGED OR REQUIRE THAT THEY BE FILED UNDER SEAL, IT CANNOT SUPPORT DISQUALIFICATION. . . . . . . . . . 13

VI. THE ACLU WILL CONTINUE TO ADVOCATE COMPETENTLY AND DILIGENTLY FOR CLASS MEMBERS EVEN IF DEFENDANTS ACT ON THEIR THREATS TO DENY VOLUNTARY ACCESS TO JAIL FACILITIES . . . . . . . . . . 15

VII. CONCLUSION . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*In Re County of Los Angeles*, 223 F.3d 990 (9th Cir. 2000) . . . . . . . . 4, 10, 12

*Emerick & Duncan Co. v Hassey*, 146 F. 688 (9th Cir. 1906) . . . . . . . . 11

*F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982) . . . . . . . . 13

*INA Underwriters Insurance Co. v. Rubin*, 635 F. Supp. 1 (E.D.Pa. 1983) . . . . . . . . 6, 10

*S.E.C. v. TheStreet.com*, 273 F.3d 222 (2d Cir. 2001) . . . . . . . . 13

*San Gabriel Basin Water Quality District v. Aerojet-General Corp.*, 105 F. Supp. 2d 1095 (C.D.Cal. 2000) . . . . . . . . 3, 5, 14

*Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435 (9th Cir. 1983) . . . . . . . . 6

*Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980) . . . . . . . . 3

*Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85 (9th Cir. 1983) . . . . . . . . 6

## STATE CASES

*Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324 (2001) . . . . . . . . 3, 4

*Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445 (1991) . . . . . . . . 12

*Higdon v. Superior Court of Kern County*, 227 Cal. App. 3d 1667 (1991) . . . . . . . . 10

*McMillan v. Shadow Ridge at Oak Park Homeowner's Association*, 165 Cal. App. 4th 960 (2008) . . . . . . . . 4, 13

*Med-Trans-Corp., Inc. v. City of California City*, 156 Cal. App. 4th 655 (2008) . . . . . . . . 14

*People Ex Rel. Dept. Of Corps. v. Speedee Oil Change Systems, Inc.*, 20 Cal. 4th 1135 (1999) . . . . . . . . 3, 4, 7, 12

*River West, Inc. v. Nickel*,
188 Cal. App. 3d 1297 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Sharp v. Next Entertainment*,
163 Cal. App. 4th 410 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Sheller v. Superior Court*,
158 Cal. App. 4th 1697 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATUTES**

Code Civ. Proc., §128(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**PLAINTIFFS' OPPOSITION TO MOTION FOR ENFORCEMENT OF 1989 STIPULATION AND ORDER**

## I. INTRODUCTION

The County defendants in this case have filed a motion to disqualify the ACLU Foundation of Southern California (ACLU-SC) as counsel for the plaintiffs in a different case, *Johnson v. Los Angeles County Sheriff's Department*, CV 08-03515 DPP (JTLx). Defendants rely on an old order in the *Rutherford* case that restricts the use of statements from interviews in the jail with class members and deputies. Stipulation and Order entered June 21, 1989, Exhibit A to Declaration of Justin Clark (Docket No. 167) (hereinafter, "Inmate Interview Order"). This Order regarding "joint and separate interviews with inmates throughout the jail system" provides that "none of the statements made during inmate interviews or discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except by written stipulation or by order of this Court." *Id*. at 2. As plaintiffs discuss below, they have complied fully with this Order.

Defendants' disqualification motion is without merit. First, they fail to discuss the case law governing the Court's authority to disqualify an attorney, perhaps because they cannot justify what the courts have described as a drastic course of action that is prone to tactical abuse. Second, although disqualification springs from a judge's inherent power to control ethical breaches in the action over which he or she presides, defendants have filed their request to disqualify counsel in the *Johnson* case in a different case, a procedural error with deprives the *Johnson* plaintiffs of any voice in this serious matter. Third, they effectively concede that the ACLU-SC did not use "statements" from inmates or deputies in violation of the 1989 Inmate Interview Order. Instead, defendants argue that the ACLU-SC should be disqualified in *Johnson* because of an unwritten agreement that the ACLU would not use its experience and familiarity with the jail system in other litigation.

Defendants' Memorandum of Points and Authorities in Support of Disqualification (Docket No. 166) ("Def. Memo") at 11-14. Defendants offer no evidence of this supposed agreement, which simply does not exist.[1]

Far more troubling than the weak merits of this motion is its threatening tone. The ACLU-SC has no wish to provoke or antagonize Sheriff Baca or the other County defendants. Like defendants, plaintiffs also "have no desire to damage the cooperative relationship that presumably exists between the LASD [Los Angeles Sheriff's Department] and the ACLU." Def. Memo. at 22. However, as class counsel, the ACLU has an ethical obligation to advocate for its clients, a duty that includes raising new claims that are not encompassed within *Rutherford* (such as the claims under the Americans with Disabilities Act ("ADA") presented in *Johnson*). While plaintiffs' counsel remains committed to continue working cooperatively and professionally with the County defendants in this case as well as *Johnson*, this motion for disqualification should be denied.

//

//

---

[1] The first and only mention of such an agreement to forbear from other litigation is Sheriff Baca's letter to the ACLU-SC director in 2008. Exhibit D to Clark Decl. (Docket No. 167). Defendants now claim that "as part of this agreement [not to bring suit], the ACLU is compensated on a monthly basis by the LASD." Def. Memo. at 14 n. 5 (citing Baca's 2008 letter). The reality is precisely the opposite. When the Order regarding the ACLU's monitoring fees in *Rutherford* was finalized by the parties and signed by the Court, the ACLU-SC was counsel in two other cases regarding conditions in the Los Angeles Jail – the *Johnson* case and the *Thomas* case. Order re: Stipulation re: Attorneys' Fees, Costs and Other Expenses, filed July 29, 2008 (Docket No. 153). Far from requiring the ACLU-SC to withdraw from these cases or forbear from other cases in the future, the Order provides merely that the ACLU-SC "will not seek additional attorney's fees for any otherwise compensable time spent on <u>any other litigation</u> regarding the conditions in the Los Angeles County jail system for the period of time this agreement is in effect." Order, ¶ 7 (emphasis added).

**II. DISQUALIFICATION MOTIONS ARE A "DRASTIC COURSE OF ACTION" THAT IS OFTEN USED FOR TACTICAL ADVANTAGE.**

In considering disqualification motions, federal courts in the Central District follow state law in determining whether there has been a violation of an attorney's ethical duties. *San Gabriel Basin Water Quality Auth. v. Aerojet-General Corp.*, 105 F.Supp.2d 1095, 1101 (C.D.Cal. 2000), citing *trust v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); L.R. 83-3.1.2 (Central District has adopted the "State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto"). One definitive statement of California law on this issue comes from the California Supreme Court:

> A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5), other citations omitted.) Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility.

*People Ex Rel. Department Of Corporations v. Speedee Oil Change Systems*, Inc., 20 Cal.4th 1135, 1144-45 (1999).

"[D]isqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." *Sheller v. Superior Court*, 158 Cal.App.4th 1697, 1711, 71 Cal.Rptr.3d 207 (2008) (citations omitted). It "usually imposes a substantial hardship on the attorney's innocent client, who has been deprived of chosen counsel." *Adams v. Aerojet-General Corp.*, 86 Cal.App.4th 1324, 1339 (2001).

> Exercise of that power [to disqualify] requires a cautious balancing of competing interests. The court must weigh the combined effect of a party's

> right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel.

*McMillan v. Shadow Ridge at Oak Park Homeowner's Ass'n,* 165 Cal.App.4th 960, 965 (2008).

Judicial opinions recognize the "possibility that tactical abuse underlies the disqualification motion." *Speedee Oil*, 20 Cal.4th at 1145. See also *McMillan*, 165 Cal.App.4th at 965.

> [A]s courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent. [Citation.] Such motions can be misused to harass opposing counsel [citation], to delay the litigation [citation], or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable. [Citations.] In short, it is widely understood by judges that "attorneys now commonly use disqualification motions for purely strategic purposes."

*Adams v. Aerojet-General Corp.*, 86 Cal.App.4th 1324, 1339-1340 (2001) (citations omitted). In one case, the same defendant here - the Los Angeles Sheriff's Department ("LASD") - filed a motion to disqualify an attorney because his law partner had once presided at earlier settlement proceedings in the same case. *In Re County of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000). The Ninth Circuit observed:

> A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice. (Citation.) This is a case in point: [plaintiff's] counsel, Stephen Yagman, has a formidable reputation as a plaintiffs' advocate in police misconduct cases; defendants in such cases may

find it advantageous to remove him as an opponent.

*Id.* [2]

Defendants have done the Court a disservice by failing to address this extensive case law in their opening brief so both sides would have a full opportunity to address these cases. Nonetheless, in the following sections, plaintiffs will apply this extensive case law to the facts at hand.

**III. DEFENDANTS' MOTION IS FILED TOO LATE AND IN THE WRONG CASE.**

Defendants' motion is procedurally defective and should be rejected on this ground alone. Since disqualification is based on a court's "primary responsibility for overseeing the conduct of the attorneys who appear before it" (*San Gabriel Basin Water Quality Auth.*, 105 F.Supp.2d at 1101), it will require an order in the *Johnson* case to disqualify the ACLU-SC as counsel for the putative class in *Johnson*. An order in the *Rutherford* case cannot accomplish this: although the two cases are related, they are still separate matters.

Defendants know this well. They participated in the proceedings in *Johnson* earlier this year involving the disqualification of the Hadsell-Stormer firm. Just a few weeks ago, they asked the *Johnson* court to set a briefing schedule for a motion to disqualify the ACLU-SC in that case. Defendants' Objection to Request to Lift Stay, *Johnson v Baca*, (Docket No. 73), filed June 3, 2009.[3] In an about-face, they

//

//

---

[2] Instead of disqualification, the district court accepted the firm's testimony that it had established a screening procedure to ensure that Mr. Yagman had no access to confidential information.

[3] Plaintiffs respectfully request judicial notice of this and other pleadings in *Johnson v. Baca*, CV 08-03535 DDP (JTLx) that are referenced in the remainder of this memorandum. The fact that so many of the documents pertinent to this motion were filed in *Johnson* (not *Rutherford*) only underscores the fact that defendants filed their motion in the wrong case.

have filed the disqualification motion in *Rutherford*, rather than in *Johnson*.[4]

The plaintiffs in *Johnson* deserve an opportunity to respond to defendants' arguments regarding their counsel. Filing this motion in *Rutherford* is unfair to the *Johnson* plaintiffs and deprives them of the opportunity to demonstrate the baselessness of the legal and factual arguments raised by defendants. Defendants' motion should be summarily denied as procedurally defective and they should be instructed to file the motion in *Johnson*, where the *Johnson* plaintiffs can respond appropriately.

In addition, a disqualification motion must be noticed and filed within a reasonable time after counsel learns of the ethical conflict. *River West, Inc. v. Nickel*, 188 Cal.App.3d 1297, 1311-1313 (1987). In cases in which a party waited an "unreasonable" period of time, causing prejudice to the opposing party, courts have found an "implied waiver of the right to disqualify [the opponent's] attorney." *Id.* at 1313; *Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 443(9th Cir. 1983) (delay of six weeks was reasonable); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87-88 (9th Cir. 1983) (delay of two and a half years after learning of potential ground for disqualification was unreasonable); *INA Underwriters Ins. Co. v. Rubin*, 635 F.Supp. 1, 5-6 (E.D.Pa. 1983) (delay of less than six months to file disqualification motion was unreasonable: "It could appear to the public that . . . [the motion] to disqualify [was] a tactic to delay the lawsuit" undermining public confidence in the legal system's integrity and efficacy.)

Here, defendants learned more than two years ago that the ACLU-SC and

---

[4] The Order regarding the stay, issued in the *Johnson* case on June 8, 2009, notes that "Defendants can file a motion for *Rutherford*-related relief." The Court then ordered that the stay would expire in one month, on July 9, 2009. "This thirty-day delay is intended to give Defendants time to file any *Rutherford*-related motion." Significantly, the Court did not direct defendants to file a motion in *Rutherford* itself. Instead, the Court twice refers to a "*Rutherford*-related" motion, meaning a motion to be filed in *Johnson* regarding claims that may derive from *Rutherford*.

other civil rights were prepared to file new litigation regarding the treatment of inmates with disabilities. Letter from Protection and Advocacy, Inc. to Sheriff Baca, dated April 13, 2007, Exhibit D to declaration of Shawna Parks, filed in *Johnson v. Baca* (Docket No. 12-2). Yet defendants did not raise the supposed agreement by the ACLU-SC not to file new litigation. The ACLU-SC and other civil rights groups retained a disability expert who toured the jail in late 2007 and submitted a report. Again, defendants raised no protest, allowing the ACLU-SC to incur these additional litigation expenses.

Even after the *Johnson* litigation was filed more than a year ago, defendants still did not file a disqualification motion. They continued to wait while the parties went though lengthy proceedings earlier this year to disqualify other counsel in *Johnson.* Not once in the multiple hearings regarding disqualification of the Hadsell-Stormer firm did defendants suggest that the ACLU-SC should be disqualified also. Instead, defendants waited until after the *Johnson* plaintiffs gave them notice that they were preparing a request to lift the stay and renew their motion for a preliminary injunction. See, declaration of Justin Clark dated June 3, 2009 (Docket No. 73), filed in *Johnson v. Baca* (defendants' counsel received notice on May 1, 2009 that the *Johnson* plaintiffs intended to file a new preliminary injunction motion shortly).

This delay, and the timing of the motion on the eve of the new preliminary injunction motion, prejudices the *Johnson* plaintiffs and raises the specter of tactical abuse, in which a party "by belatedly moving to disqualify opposing counsel, was attempting to disrupt a case at a critical juncture." *Speedee Oil*, 20 Cal.4th at 1145 n. 2, *citing River West Inc.*, 188 Cal. App.3d at 1311-1313. Defendants know that this is "a critical juncture" in the *Johnson* case; intentionally or not, by delaying until this point to seek disqualification, they have seriously disrupted the *Johnson* plaintiffs' case and caused them prejudice. Defendants waived their right to file this disqualification motion long ago.

## IV. PLAINTIFFS HAVE NOT VIOLATED THE 1989 INMATE INTERVIEW ORDER.

### A. The ACLU Has Not Used Statements From Inmates or Deputies in the Johnson Case that were Obtained as a Result Of Its Interviews Or Monitoring Access in *Rutherford.*

The plain language of the 1989 Inmate Interview Order limits the use of "statements" obtained in interviews with inmates and deputies in the jail system by barring their use in other lawsuits. Plaintiffs agree that they must comply with the 1989 Order unless and until it is modified by this Court (Def. Memo. at 16-17) and have always done so. The ACLU-SC has complied by dividing its jail work into two parts – *Rutherford* monitoring and ADA work on the *Johnson* case. Declaration of Melinda Bird in support of Plaintiffs' Ex Parte Application to Lift Stay, filed in *Johnson v. Baca*, June 5, 2009 (Docket No. 74), ¶ 3. When ACLU-SC staff interviews an inmate with a disability in the jail as part of its *Rutherford* monitoring and he or she asks for further assistance, the procedure is to refer the inmate to other co-counsel in *Johnson*, in hopes that the inmate will be successful in making this connection. *Id.* If the inmate does contact *Johnson* co-counsel, then those attorneys arrange an attorney visit to follow-up with the inmate. *Id.*[5]

Defendants acknowledge the "ethical and procedural safeguards" that the

---

[5] Defendants are guilty of a gross distortion when they claim that "counsel for the ACLU has acknowledged that they cannot proceed as counsel in *Johnson* if the 1989 Order is enforced." Def. Memo. at 8. Last year, plaintiffs filed a motion requesting modification of the 1989 Inmate Interview Order because of concerns that the screening procedures and ethical wall that had been implemented might reduce the ACLU-SC's effectiveness as counsel for the putative class in *Johnson*. (Docket No. 144). Plaintiffs took their motion for modification off calendar and ultimately withdrew it in part due to the vehemence of Sheriff's Baca's response and the ACLU-SC's concern with preserving its working relationship with the LASD. In addition, the screening procedures to separate the two cases have proven to be workable. Declaration of Jennifer Lee, ¶¶ 3-4, filed on June 5, 2009 in *Johnson v. Baca* (Docket No. 74-3) (describing how DRLC does not need to "rely on the ACLU" to obtain client information in Johnson.)

ACLU established (Def. Memo. at 10- 11), yet they complain that the ACLU-SC violated the 1989 Order on "two occasions" and then equivocate about whether a violation actually occurred. As to declarations filed this month in *Johnson*, they concede that the ACLU had not made improper use of statements obtained during monitoring. See Def. Memo. at 9, n. 3 ("[T]he ACLU denies that these declarations were obtained through monitoring access (and Defendants do not dispute this claim)...") (emphasis added). Next, they point to the declaration of Prof. John Finn which was obtained by ACLU staff and filed in *Rutherford* in 2007.[6] Once Prof. Finn's declaration was filed in *Rutherford*, it became a public document. The *Johnson* plaintiffs could have included it in their request for judicial notice and defendants would have had nothing about which to complain.

More fundamentally, the 1989 order by its terms applies only to statements of jail inmates who are interviewed in jail facilities, not to statements from former class members after they have released.[7] Plaintiffs' counsel explained last year that Prof. Finn's declaration was used in *Johnson* because it falls into this latter category. Amended Declaration of Melinda Bird in Support of Ex Parte Application to Shorten Time and Motion to Modify Order: Inmate Interviews, filed in *Rutherford*, June 6, 2008 (Docket No. 146), ¶ 8. The ACLU did not interview Prof. Finn while he was in jail nor did he contact the ACLU while he was incarcerated; after his release, he contacted the ACLU on his own. *Id.*

Tacitly conceding that no violation of the 1989 Order has occurred, defendants next attempt to conjure problems where these do not exist. "[T]he mere

---

[6] The ACLU-SC filed Prof. Finn's declaration on April 24, 2007 in the *Rutherford* case as Exhibit 60 in support of the ACLU-SC's request for an Order to Show Cause re: Contempt motion regarding conditions in the Inmate Reception Center, Docket No. 132.

[7] Defendants apparently disagree with this interpretation. To the extent that the language in the 1989 Order is susceptible to varying interpretations, clarification or modification from this Court would be helpful.

possibility of the ACLU's misuse of the access they have to [the Jail] system will always cast a shadow of impropriety over any materials submitted in *Johnson*." Def. Memo at 11.

Defendants' suspicions are unavailing. Courts have accepted the erection of an ethical wall and implementation of screening procedures instead of disqualification in cases involving extremely serious ethical violations regarding attorney-client privilege and confidential settlement information. *See, e.g., In Re County of Los Angeles*, 223 F.3d at 996 (screening procedure to ensure counsel had no access to confidential settlement information); *INA Underwriters Ins. Co.*, 635 F.Supp. at 5 (firm screened off attorney to prevent any disclosure of confidences); *Higdon v. Superior Court of Kern County*, 227 Cal.App.3d 1667, 1669-1680 (1991) (same).

Similarly, this Court can rely on the evidence of "the ethical and procedural safeguards that counsel for the ACLU has described." Def. Memo. at 10-11. Plaintiffs have and will continue to comply with the 1989 Order unless and until this Court modifies it.

**B. Defendants' Interpretation of the 1989 Inmate Interview Order to Include an Unstated Agreement to Forbear from Other Litigation has No Support in Law or Fact.**

For the most part, defendants pay little attention to the actual language of the 1989 Inmate Interview Order. They argue for disqualification based on their claim that there are "longstanding agreements between the parties" that the ACLU-SC would not use its "vast institutional understanding of the LACJ system" and "working knowledge of the jails" in other litigation. Def. Memo. at 11-12, 22. Defendants do not offer any competent evidence of such an agreement, nor could they, for it does not exist. As discussed earlier (*supra*. at 2, n. 1), when the Order regarding the ACLU's monitoring fees in *Rutherford* was finalized by the parties and signed by the Court, the ACLU-SC was counsel in two other cases regarding conditions in the Los Angeles Jail – the *Johnson* case and the *Thomas* case. Order

re: Stipulation re: Attorneys' Fees, Costs and Other Expenses, filed July 29, 2008 (Docket No. 153). Far from requiring the ACLU-SC to withdraw from these cases or forbear from other cases in the future, the Order provides merely that the ACLU-SC "will not seek additional attorney's fees for any otherwise compensable time spent on any other litigation regarding the conditions in the Los Angeles County jail system for the period of time this agreement is in effect." Order, ¶ 7 (emphasis added).

The first mention of an agreement to forbear from other litigation is in Sheriff Baca's declaration, in which he claims that as part of the 1989 Inmate Interview Order, the parties agreed that "the ACLU would refrain from initiating new civil litigation against the Department with regard to its jail operations." Baca Decl., ¶ 12 (Dkt. No. 167), filed June 22, 2008. However, Baca is not qualified to make such a claim, since he became Sheriff in 1998, nine years after the Inmate Interview Order. Neither Baca nor any of the attorneys who now represent him participated in the negotiations that led to the 1989 Order, nor do they offer any correspondence or written documentation from that period or any subsequent time. There is no foundation for his suggestion that there was an unrecorded "side agreement" that went beyond the terms of the 1989 Order.[8]

More generally, the expertise that ACLU staff has developed over decades of litigation is no different than the knowledge that any experienced lawyer or law firm develops from long years of practice in one area, whether it is securities law,

---

[8] In addition, even assuming *arguendo* that defendants are correct that there was an additional agreement to forbear from other litigation that was mistakenly omitted from the 1989 Order, under common principles for construing contracts and orders, the Order must be treated as an integrated document and neither the court nor the parties can add to its terms. Where counsel "omitted such a provision by mistake or through inadvertence, it affords no justification to the court … to read into the instrument an agreement not there to be found." *Emerick & Duncan Co. v Hassey*, 146 F. 688, 694 (9th Cir. 1906) (cited in Def. Memo. at 21).

product liability or jail conditions.[9] While defendants may prefer not have a seasoned opponent with experience and knowledge, they may not use a disqualification motion to accomplish this. *See, e.g., In Re County of Los Angeles*, 223 F.3d at 996 (rejecting LASD's attempt to disqualify experienced opposing counsel); *Ahmanson & Co. v. Salomon Brothers, Inc*., 229 Cal.App.3d 1445, 1453 (1991) (disqualification motions may stifle development of expertise in complex areas of law); *s v. Next Entertainment*, 163 Cal.App.4th 410, 435 (2008) (denying motion to disqualify experienced labor counsel). In the *Sharp* case, defendants attempted to disqualify a law firm representing non-union writers in a wage and hour class action case because the firm also represented labor unions. The court found that it "cannot ignore the public interest consequences of permitting the disqualification. . . . To deny these employees access to attorneys knowledgeable in labor law . . . will provide a tactical edge to the employer at the expense of the putative class." *Sharp*, 163 Cal.App.4th at 434-435.

Here, somewhat comically, defendants' attorney offers his considered opinion that the *Johnson* plaintiffs do not need the ACLU-SC as counsel. Clark Decl, ¶ 3 (Docket No. 167); Def. Memo. at 18. Mr. Clark misses the point – it is the right of the *Johnson* plaintiffs to select "the counsel of their choice." *Speedee Oil*, 20 Cal.4th at 1145. He cannot, through a disqualification motion, select the opposing counsel that he prefers.

Finally, seeking disqualification on this basis runs contrary to the "fundamental principle" underlying a disqualification motion: "that the fair

---

[9] Aside from the fact that defendants' argument has no support in the actual language of the 1989 order, it also proves too much. What about ACLU employees who leave and go to other firms and programs? Noted civil rights attorney Paul Hoffman was legal director at the ACLU-SC until 1991 and is now in private practice. If he files a new lawsuit regarding jail conditions, defendants' logic will require that they also seek his disqualification, since he presumably gained knowledge of the jail eighteen years ago while he was the ACLU's counsel on *Rutherford.*

resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel." *McMillan,* 165 Cal.App.4th at 965 (citation omitted, emphasis added). Using disqualification in attempt to enforce an unwritten, apocryphal promise not to sue is just the opposite – the suppression of "vigorous representation." The Court should reject this attempt.

**V. BECAUSE THE 1989 ORDER DOES NOT RENDER ANY STATEMENTS OR INFORMATION CONFIDENTIAL OR PRIVILEGED, OR REQUIRE THAT THEY BE FILED UNDER SEAL, IT CANNOT SUPPORT DISQUALIFICATION.**

Unlike most disqualification cases that involve conflicts of interest posed by successive representation of opposing parties, the issue here is defendants' claim that the ACLU-SC has acted unethically in its use of privileged or confidential information. However, they have not argued that the information at issue here is confidential or privileged, nor could they. The 1989 Order is not a protective order.[10]

Nonetheless, in arguing for disqualification, defendants rely on cases involving the disclosure of privileged or confidential information that was subject to a protective order. Def. Memo. at 19, 21, citing *F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230, 231 (2nd Cir. 1982) and *S.E.C. v. TheStreet.com*, 273 F.3d 222, 230 (2nd. Cir. 2001). In both cases, courts had entered formal protective orders pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, forbidding disclosure of the terms of a confidential settlement agreement (*F.D.I.C.*) and sealed deposition transcripts (*S.E.C.*). In both, third parties sought to intervene to make the confidential materials public and the courts refused.

---

[10] To the extent that defendants argue otherwise, they are simply wrong. *See* Def. Memo. at 15, lines 23-25 ("The 1989 Order . . . prohibits the disclosure . . . of information obtained by the ACLU through the access they have to the LACJ system.") Elsewhere, defendants concede that the 1989 Order permits public disclosure of any information and statements as long as they are filed in the *Rutherford* case. *Compare*, Def. Memo. at

Unlike those cases, there is no protective order pursuant to Rule 26(c) in this case. The 1989 Order allows public disclosure in the *Rutherford* case of statements and information from the ACLU-SC's monitoring. The Order does not require that statements be filed under seal, nor does it provide that statements and other information obtained through monitoring are confidential or subject to some form of privilege.

Courts will not unquestioningly accept a party's claim that confidential information has been or will be disclosed. *See, e.g., Med-Trans Corp. Inc. v. City of California City*, 156 Cal. App.4th 655, 669 (2008) (court engaged in factual inquiry to determine whether attorney's early meeting with city defendant had produced confidential information). "Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact." *San Gabriel Basin*, 105 F.Supp.2d at 1105, (citing ABA Model Rules of Professional Conduct). *Accord*, *Sharp v. Next Entertainment*, 163 Cal.App.4th at 426 (movant must provide "competent evidence" that confidential information is or will be disclosed).

In this case, defendants have not provided any competent facts to show that confidential information has been improperly disclosed. Instead, they speculate that the *Johnson* complaint "demonstrates how the ACLU's working knowledge of the jail is being used against the LASD." Def. Memo. at 12. However, the three allegations in the complaint to which they point are all based on information available to the ACLU's co-counsel as a result of their expert witness' inspection of the jails and his subsequent report, which was very based on his very detailed observations. Specifically, expert Logan Hopper identified LASD's refusal to allow inmates with disabilities to serve as trustees and problems with inmate classification in pages 7- 8 of his report, and also noted problems with the Inmate Reception Center in pages 24-25. Hopper Report, Exhibit I to Parks Decl., filed on June 9, 2008 in *Johnson v. Baca* (Docket No. 12-3). This report was provided to defendants more than 18 months ago. *Id.* Defendants' other examples are similar - they point to

information that any attorney with experience litigating against the Sheriff's department will have, would rapidly acquire in discovery.[11]

## VI. THE ACLU WILL CONTINUE TO ADVOCATE COMPETENTLY AND DILIGENTLY FOR CLASS MEMBERS EVEN IF DEFENDANTS ACT ON THEIR THREATS TO DENY VOLUNTARY ACCESS TO JAIL FACILITIES.

Ironically, the only ethical duty implicated by defendants' motion is the obligation the ACLU-SC has to represent its clients with "competence" and diligence." California Bar Association, Rules of Professional Conduct, Rule 3-110 (A & B) (2008). As counsel for detainees and prisoners in the jail, the ACLU-SC is committed to continue its vigorous advocacy on their behalf, which includes raising claims under the Americans with Disabilities Act that are not encompassed in *Rutherford*.

For the past year, defendants have openly threatened to deny the ACLU-SC voluntary access to jail facilities in an attempt to chill this advocacy. Def. Memo. at 21-22; Baca Decl., ¶¶ 5; Letter from Sheriff Baca dated June 20, 2008, Exhibit D to Clark Decl. Although plaintiffs have no wish to disturb the cooperative relationship between the ACLU-SC and the Sheriff, this cooperation cannot come at the expense of our obligations under the Rules of Professional Conduct. Moreover, some access to the jail system will always be required, whether through traditional discovery or other orders of the Court, even if it is not as extensive as that presently offered by defendants.

---

[11] Defendants argue that only the ACLU would know "about the appropriate LASD personnel to notice for deposition about a particular topic," and that "the ACLU could assist in preparing pointed discovery requests for documents that other counsel might not know exist." Def. Memo. at 20. Under the discovery rules, the *Johnson* defendants are obligated to produce appropriate deponents in response to a deposition notice for the person most qualified on a topic, and to make a thorough production of relevant documents, even if the *Johnson* counsel do not know in advance that these exist.

Sheriff Baca himself proposed one way to resolve this dispute when he asked the Court to "appoint a new, neutral court monitor."[12] Baca Decl., ¶ 15, page 6. The mental health expert retained by the ACLU, Dr. Terry Kupers, made the same recommendation. Report by Dr. Terry Kupers, Ex. 1 to Declaration of Margaret Winter (Dkt No. 161-2) at 50. The ACLU-SC agrees that in specialized areas such as the treatment of detainees with mental illness, the Court should consider the appointment of a neutral court monitor in future proceedings.

## VII. CONCLUSION

For all of the foregoing reasons, defendants' motion should be denied.

DATED: June 29, 2009

Respectfully submitted,

National Prison Project of the ACLU Foundation
ACLU Foundation of Southern California

Melinda Bird

BY: Melinda Bird
Attorney for Plaintiffs

---

[12] Sheriff Baca believed that this would "return the ACLU to its original, limited role in this litigation, that of counsel for the plaintiff class." Baca Decl., ¶ 15, page 6. In fact, Sheriff Baca misunderstands the role of the ACLU-SC. The ACLU has never purported to be a neutral monitor and has never stopped serving as counsel to the class.