# EXHIBIT
# 3



ACLU FOUNDATION OF SOUTHERN CALIFORNIA

1616 BEVERLY BOULEVARD LOS ANGELES CA 90026-5711 T: 213 977 9500 F: 213 250 3919 WWW.ACLU-SC.ORG

Chair
Jarl Mohn

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster†
Irving Lichtenstein, MD†
Laurie Ostrow†
Stanley K. Sheinbaum
†DECEASED

Chief Executive Officer
Ramona Ripston

Legal Director
Mark D. Rosenbaum

Chief Operating Officer
Heather Carrigan

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

Development Director
Lindsay Rachelefsky

Director of Investments &
Gift Planning
Harold Gunn

Director of Finance &
Administration
Brenda Maull

Director of Program Support
Elizabeth Schroeder

November 27, 2007

Members of the Board of Supervisors
County of Los Angeles
856 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, CA 90012

Dear Supervisors:

Although the issue of construction of a new jail has been postponed to January, 2008, we would like to offer two points for your consideration in the interim.

## TEAR DOWN MEN'S CENTRAL JAIL

The Sheriff and Special Counsel Merrick Bobb are correct that Men's Central Jail (MCJ) must be demolished. The problems are not limited to the lack of outside exercise and out-of-cell time. The linear design of the jail inhibits sight lines and makes close supervision impossible, placing inmates and guards at great risk. Upgrading every system, making its seismically safe and conforming with current codes will cost hundreds of millions and still leave us with a fundamentally bad design and an unconstitutional jail. Finally, renovation raises the stubborn problem of where to house inmates in the interim.

Building a new jail is prohibitively expensive only if we assume that we must replace 6000 beds, or even the current population, which was under 5000 at last count. A new jail tower with 1000 or 2000 beds, constructed next to MCJ, will cost far less than renovation and come on line faster. And it is possible that we will not need more beds that this, as we discuss below.

On a related note, replacing MCJ must include a hard look at how we meet our obligations under the Americans with Disabilities Act. Today, we segregate inmates with disabilities in MCJ, the oldest and more overcrowded facility in the system. They cannot go outside in the open air as they can at Pitchess, nor can they participate in the Sheriff's excellent new programs at NCCF. This systemic discrimination needs to be addressed as we move forward on jail construction .

## DOWNSIZE OUR JAIL SYSTEM

Fifteen years ago, New York's jail system had more than 21,000 inmates. New York reduced its beds by one third, to its present level of 14,000 beds. They did it in three ways:

Members of the Board of Supervisors                                                    Page 2
November 27, 2007

- Alternatives to incarceration for felony defendants,
- Improved discharge planning for inmates with mental illness and addiction disorders to reduce re-arrests, and
- Faster processing of defendants in the criminal justice system.

These approaches reduce length of stay as well as new admissions. Length of stay is especially important. If we could speed court processing so that average length of stay was reduced by just three days, we would save 2000 beds without resorting to early release. These options are not cost-free, but they are far less than the constructing two thousand new jail beds or operating them, at a cost of $150,000 per day.

Downsizing our jail system, as New York did, will require leadership and cooperation across many agencies. The Sheriff can't do it alone. However, this Board's leadership cna make it happen. In New York, for example, they had trouble getting judges and DA's to accept alternatives to incarceration. New York responded by placing staff in the courtrooms to advocate for the programs, armed with exhaustive studies that established that the defendants in these programs had fewer re-arrests and posed less risk to the public safety than those who spend 6 to 12 months in jail, and may in fact pose less risk. The programs, run by non-profit agencies are far less cost than jail time and account for 3000 inmates per year.

This approach is the wave of the future. Scores of counties are exploring these alternatives with remarkable results. One county in Florida found that in the consultant they brought in was able to reduce their jail population by 20% in a matter of months before he had even completed his study, by getting stakeholders in the criminal justice system to implement several of his recommendations. This Board approved $20 million for planning and design of new jail construction. It would take a small fraction of this sum to fund plans to reduce our jail system by three or four thousand beds. I've attached a list of some consultants if you and your staff are interested.

I look forward to working with your staff on these issues.

Sincerely,

Melinda Bird
Senior Counsel



## RESOURCES FOR DOWNSIZING A JAIL SYSTEM

Dr. James Austin, JFA Institute,
http://www.jfa-associates.com
5 Walter Houp Court NE
Washington, DC  20002
Phone: (202)544-4211
Fax: (202)544-1460
Malibu office:  Phone: (310)867-0569

Marie VanNostrand
 Luminosity Solutions
www.Luminosity-Solutions.com
1767 Tanglewood Drive NE
St Petersburg FL 33702
(727)525-8955

Alan Kalmanoff, akalmanoff@ilpp.org
Institute for Law and Policy Planning
http://www.ilpp.org
P.O. Box 5137
Berkeley, CA 94705
Voice: (510) 486-8352
Fax: (510) 841-3710

Vera Institute of Justice
233 Broadway, 12th Floor
New York, NY 10279
Tel: (212) 334-1300
Fax: (212) 941-9407
www.vera.org

Dr. Allen Beck
Justice Concepts Inc.
417 W. 87th Place
Kansas City, MO  64114
(818) 361-1711
http://www.justiceconcepts.com

Pre-trial Justice Institute
www.pretrial.org
927 15th Street
Washington DC 20005
(202) 638-3080

# ALTERNATIVE TO INCARCERATION PROGRAMS:
## Cut **Crime**, Cut **Costs** and **Help** People and Communities



Alternative to Incarceration Programs (ATIs) are an integral part of the strategy that has allowed the City to **reduce crime, reduce jail and prison populations**, and help individuals and neighborhoods across the City. Instead of sentencing someone to jail or prison, **ATIs allow a judge to sentence someone to a program where they receive treatment, education and employment training in the community**, all the while remaining under strict supervision. And, if people do not succeed in these programs, the court still has the option of sentencing them to incarceration. Studies by the nation's leading criminal justice researchers have shown that ATIs **reduce jail time, and successfully treat people in the community without compromising public safety.** All the while, ATIs are meeting the diverse needs of the people they serve, while enhancing the quality of life of the City's most challenged communities.

Across the nation, states and cities face serious budget problems and are considering cuts to all sorts of programs. But cutting ATIs costs far more than it saves in the short term by driving up jail and prison populations, at great expense. Further, cuts to ATI programs could jeopardize the crime drop that is critical to New York's future. An investment in ATIs is an investment in people who, with the right mix of services, programs, supervision and opportunities for change, could return to their communities to lead crime-free lives.

Page 14

# ATIS CUT CRIME

*"To the extent that they are viewed as alternatives to jail sentences, these ATI programs can be recommended as more effective in reducing recidivism."*

—The New York City,
Criminal Justice Agency (2003)

▪ A recent analysis by The New York City Criminal Justice Agency found that felony ATI participants were significantly less likely to be re-arrested than similar people sent to and discharged from a City jail. ATI participants were no more likely to be re-arrested than similar people sentenced to and released from probation or prison.

▪ A study of the City's felony ATI programs by the Vera Institute of Justice showed that among those who successfully completed their ATI programs (the majority), graduates were less likely to be convicted of a new offense than those who did not complete the program. In general, the Vera study showed that ATI participants were no more likely to re-offend than people who were sent to prison or jail. When the amount of time ATI participants and similar people in jail actually spent in the community was accounted for (meaning, they were at risk of being re-arrested, versus being in jail) successful program graduates were projected to be less at risk of re-arrest than either the comparison group, or those who did not complete their programs. If they were re-arrested, ATI program graduates were more likely to be convicted for minor offenses than those who did not complete the program. ATIs have met and exceeded the goals set by the

City, and compare favorably with the results seen in similar programs around the country.

▪ While ATIs are beginning to spread across the country, and while a variety of factors are responsible for the decline in crime, the growth of New York's ATIs has occurred as jail and prison populations have fallen, and as the city has experienced a drop in crime. Since 1994, the New York City jail population has declined by 23%, during a time when the nation's total jail population increased by 36%. During the same period, New York State's prison population barely grew (1.2%), while the country's prison population grew by 33%. Since 1994, New York City's total crime and violent crime rate dropped by 52%—twice the size of the total national drop, and significantly larger than the national violent crime drop (respectively, 22% and 29%).

*"For those concerned about public safety, these results are good news; they show that many felony offenders can be sent to rigorous community programs rather than jail without increasing the risk to the public."*

—The Vera Institute of Justice (2003)

# ATIS CUT COSTS

*"The research results provide strong justification for the City's continuing support for ATI programs on the grounds that the programs do displace a substantial amount of jail time for both misdemeanor and felony defendants."*

—The New York City, Criminal Justice Agency (2003)

▪ A recent report by the Criminal Justice Agency showed that ATI programs met the City's goals for displacing days that these defendants would have served in jail had they not been sent to an ATI program. The programs serving felons displaced an average of 116 days of jail time per participant. Among successful program completers (the majority of program participants), the ATIs displaced 334 days (over 11 months) of incarceration for each successful client—more than exceeding the city's target. ATI programs serving misdemeanants displaced an average of 14 days in jail for each successful participant—well over the city target of 11 days. Over the course of the 21 month study period, the CJA analysis showed that ATI programs displaced over 100,000 days of jail time.

▪ According to the City of New York Department of Correction, the average annual cost per jail inmate is $62,595. By contrast, some ATI services cost as little as $1,400 to $13,000 per person served.





- By keeping program participants active in their communities, families and local economies, ATI programs save the City far more than the costs of incarceration. ATI programs save governments and communities millions in foster care, shelter, welfare and child support costs.

- ATIs reduce rates of relapse– and thus reduce the financial burden on the City and State – by tapping the natural resources of families and communities and creating a 24/7 safety net around participants in the community. In a recent evaluation of one ATI program by the Vera Institute of Justice, illegal drug use declined from 80% to 42% by participating in an ATI program that involves a unique partnership between parole and probation and family members.

- Within three months of entering an ATI program, participants attend on average nine group sessions and receive 1.6 hours of individual, one-on-one counseling each week. By the third month of the program, 61% of ATI participants were living with their immediate families. At any given time, ATI participants are receiving education, job training, drug treatment counseling, mental health counseling, and some participants received relaxation therapy or acupuncture. No matter what kind of treatment they received, a substantial majority of the ATI participants said these services were helpful.

# ATIS HELP PEOPLE AND BUILD COMMUNITIES

- ATIs provide key services, treatment and programming to a needy clientele. Less than a third of ATI program participants had a high school diploma or a GED, nearly a third reported that they needed drug treatment, and 4 out 5 reported that they depended on others for financial support.

- Of the families served by one ATI program, 90% of the participants had at least two members with a history of substance abuse, 80% of the families had at least two members with a history of criminal justice involvement, and half the families had at least one member with HIV/AIDS. ATIs can meet the complex needs of the whole family by helping to coordinate existing support systems, providing increased access to additional supports, and helping families recognize their own strengths and resources.

- By keeping people out of jail, ATIs avoid the disruption that incarceration causes families and communities. ATIs allow people to remain part of the workforce, to be parents, and to play a role in strengthening the fabric of their families and neighborhoods.

- ATIs invigorate the network of services in a community. ATI staff partner with schools, the faith community, local employers, and local treatment providers to give their clients what they need. By taking on this coordinating role, ATIs strengthen the network of organizations, institutions and people that lower crime, and build a neighborhood's quality of life. Many ATI program participants enhance the communities they serve through service projects, such as preparing meals in community kitchens, and building community centers. In just one of the City's ATI programs, participants completed almost 100,000 hours of community service last year.

- New York City's ATIs employ hundreds of people, many of whom work in the neighborhoods most affected by high crime, and high incarceration rates. ATIs may do more to build the local economy than investments in more jail cells, or upstate prisons.

At a time when the rest of the country is looking to emulate our ATI experience by reducing prison and jail populations and reforming policy, New York should invest in programs that are cutting crime, cutting costs and building communities.



**Contact:**
Tracie Gardner
Director of State Policy
Legal Action Center
153 Waverly Place
New York, NY 10014
Phone # (212) 243-1313
Fax # (212) 675-0286
E-mail: tgardner@lac.org

**Or Contact**
ATI Coalition member programs directly (see following pages).

# ATI COALITION MEMBERS
# NEW YORK CITY

**CASES**
(Center for Alternative Sentencing &
Employment Services)
Joel Copperman, Executive Director
346 Broadway, 3rd Floor
New York, NY 10013
(212) 553-6301
Fax: (212) 619-2821
E-mail: jcopperman@cases.org

**Center for Community Alternatives**
Marsha Weissman, Executive Director
Kathleen O'Boyle, Deputy Director
39 West 19th Street, 10th Floor
New York, NY 10011
(212) 691-1911
Fax: (212) 675-0825
E-Mail: mweissman@communityalternatives.org,
kob@communityalternatives.org

**Center for Employment Opportunities**
Mindy Tarlow, Executive Director
32 Broadway, 15th Floor
New York, NY 10004
(212) 422-4850
Fax: (212) 422-4855
E-mail: mtarlow@ceoworks.org

**La Bodega de la Familia/Family Justice**
Carol Shapiro, Executive Director
Alissa Kampner Rudin, Managing Director for Practice
625 Broadway, 8th Floor
New York, NY 10012
(212) 475-1500
Fax: (212) 475-232
E-mail: cshapiro@familyjusticeinc.org,
arudin@familyjusticeinc.org

**Legal Action Center**
Paul Samuels
Anita Marton
Tracie Gardner
153 Waverly Place
New York, NY 10014
(212) 243-1313
Fax: (212) 675-0286
E-mail: psamuels@lac.org, amarton@lac.org,
tgardner@lac.org

**Osborne Association**
Elizabeth Gaynes, Executive Director
Carolina Cordero Dyer, Associate Executive Director
36-31 38th Street
Long Island City, NY 11101
(718) 707-2600
Fax: (718) 707-3103
E-mail: egaynes@osborneny.org,
cdyer@osborneny.org

**Women's Prison Association**
Ann Jacobs, Executive Director
Ana Checo, Director of Program Operations
for Residential & Family Services
110 Second Avenue
New York, NY 10003
(212) 674-1163
Fax: (212) 677-1981
E-mail: ajacobs@wpaonline.org, acheco@wpaonline.org

# ATI COALITION MEMBERS
# NEW YORK STATE

## CASES
(Center for Alternative Sentencing & Employment Services)
Joel Copperman, Executive Director
346 Broadway, 3rd Floor
New York, NY 10013
(212) 553-6301
Fax: (212) 619-2821
E-mail: jcopperman@cases.org

## Center for Community Alternatives
Marsha Weissman, Executive Director
115 E. Jefferson Street, Suite 300
Syracuse, NY 13202
(315) 422-5638, x218
Fax: (315) 471-4924
E-mail: mweissman@communityalternatives.org

Kathleen O'Boyle, Deputy Director
39 West 19th Street, 10th Floor
New York, NY 10011
(212) 691-1911
Fax: (212) 675-0825
E-mail: kob@communityalternatives.org

## Center for Employment Opportunities
Mindy Tarlow, Executive Director
32 Broadway
New York, NY 10004
(212) 422-4850
Fax: (212) 422-4855
E-mail: mtarlow@ceoworks.org

## Correctional Association
Robert Gangi, Executive Director
135 East 15th Street
New York, NY 10003
(212) 254-5700
Fax: (212) 473-2807
E-mail: rgangi@correctionalassociation.org

## Education and Assistance Corporation
Susan Timler, Director, Criminal Justice Division
50 Clinton Street, Suite 107
Hempstead, NY 11550
(516) 539-0150
Fax: (516) 539-0160
E-mail: stimler@eacinc.org

## Fortune Society
JoAnne Page, Executive Director
53 West 23rd Street, 8th Floor
New York, NY 10010
(212) 691-7554
Fax: (212) 255-4948
E-mail: jpage@fortunesociety.org

## La Bodega de la Familia/Family Justice
Carol Shapiro, Executive Director
Alissa Kampner Rudin, Managing Director for Practice
625 Broadway, 8th Floor
New York, NY 10012
(212) 475-1500
Fax: (212) 475-232
E-mail: cshapiro@familyjusticeinc.org,
arudin@familyjusticeinc.org

## Legal Action Center
Paul Samuels
Anita Marton
Tracie Gardner
153 Waverly Place
New York, NY 10014
(212) 243-1313
Fax: (212) 675-0286
E-mail: psamuels@lac.org, amarton@lac.org,
tgardner@lac.org

## Osborne Association
Elizabeth Gaynes, Executive Director
Carolina Cordero Dyer, Associate Executive Director
36-31 38th Street
Long Island City, NY 11101
(718) 707-2600
Fax: (718) 707-3103
E-mail: egaynes@osborneny.org,
cdyer@osborneny.org

## Project Greenhope Services for Women
Anne Rebecca Elliot, Executive Director
448 East 119th Street
New York, NY 10035
(212) 369-5100
Fax: (212) 348-3684
E-mail: greenhope1@aol.com

## STEPS to End Family Violence
Edwin Gould Services for Children and Families
Sister Mary Nerney, Director
1968 2nd Avenue
New York, NY 10029
(212) 410-4200
Fax: (212) 410-4345
E-mail: mnerney@egsc.org

## TASC of the Capital District
Joanne Schlang, Executive Director
87 Columbia Street
Albany, NY 12210
(518) 465-1455
Fax: (518) 465-1842
E-mail: schlangj@aol.com

## Women's Prison Association
Ann Jacobs, Executive Director
Ana Checo, Director of Program Operations
for Residential & Family Services
110 Second Avenue
New York, NY 10003
(212) 674-1163
Fax: (212) 677-1981
E-mail: ajacobs@wpaonline.org,
acheco@wpaonline.org