MARK D. ROSENBAUM, SBN 59940
mrosenbaum@aclu-sc.org
PETER ELIASBERG, SBN 189110
peliasberg@aclu-sc.org
MELINDA BIRD, SBN 102236
mbird@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN
    CALIFORNIA
1313 W. 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500, x219
Facsimile: (213) 977-5297

MARGARET WINTER
ACLU NATIONAL PRISON PROJECT
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6605
Facsimile: (202) 393-4931
E-mail: mwinter@npp-aclu.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS RUTHERFORD, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, YVONNE B. BURKE, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al., <br><br> Defendants. | Case No. Civ. 75-04111-DDP <br><br> **DECLARATION OF MARY TIEDEMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RE: PLAN FOR CLOSURE OF JAIL FACILITIES** <br><br> Honorable Dean Pregerson <br><br> Date: August 3, 2009 <br> Time: 10:00 a.m. <br> Dept: 3 |

# DECLARATION OF MARY TIEDEMAN

I, MARY TIEDEMAN, hereby declare:

1. I am Jails Project Coordinator for the ACLU Foundation of Southern California. My responsibilities include monitoring compliance with orders and directives relating to the *Rutherford v. Baca* case.

## NORTH FACILITY

2. I have personally visited every Los Angeles County jail facility, including the North facility at Pitchess Detention Center ('PDC'). In my experience touring all seven of the LA county jail facilities, North has better conditions than many of the other facilities in the system. Detainees and prisoners ("detainees") at North generally have regular access to outdoor time since their recreation area is directly adjacent to their housing area, and they have better access to programming and school activities than detainees in other jails. Attached as Exhibit 1 is a true copy of a page from the Los Angeles County Sheriff's Department's website, describing the history of the North Facility. I downloaded this page on July 13, 2009 from the following URL: http://www.lasd.org/divisions/custody/pdc-north/index.html. According to this website, North Facility was built in 1987, which makes it one of the newer jail facilities. It also reports that detainees with "low to high" security levels are housed there.

3. Attached to this declaration as Exhibit 2 is today's copy of the Inmate census that the Sheriff's Department emails to me on a daily basis. This report tells me how many detainees are in each facility. According to this report, the North Facility has the capacity to house approximately 1600 people, though currently it houses approximately 1100 detainees because one of the dorms is under repair. From this report, however, I cannot tell how many people are squeezed into dorms or dayrooms. To be able to gauge that, I would need to see the reports that the facility Captains

already receive, which indicate the census of the dayrooms and dorms within each facility.

4. The jail beds the Department should be closing are those on the "old side" of MCJ, where the conditions are the worst in the County, as I describe below. Several of the dorms and cells at MCJ house general population mediums, which is the security level for most, if not all, of the detainees at North. I know the security levels of the detainees at MCJ because periodically I am able to obtain an MCJ security level housing chart when I conduct walk-throughs. I did not attach it to this declaration because LASD has raised security concerns regarding these documents, but I can file it under seal if necessary.

## KENT AND BAIR DECLARATIONS

5. I have been the Jails Project coordinator since July 2006. The Jails Project coordinator before me was Jody Kent. Attached as Exhibit 3 is a declaration from Ms. Kent prepared April 12, 2006, describing conditions in Men's Central Jail at that time. I have reviewed this declaration. One difference that I observe from what Ms. Kent describes is in the census in the multi-man cells: that four men are housed in the cells that held six men then, and only two men are housed in the cells that once held four. This was a valuable change. I was working for the Jails Project when this change was made and I saw what a difference it made. I also spoke to many men in the jail who expressed their appreciation for the change.

6. However, other than that, the larger problems in MCJ have not changed from what Ms. Kent described in her 2006 declaration.

7. I have also reviewed the April 12, 2006 declaration of Toni Bair, which is attached hereto as Exhibit 4. In the declaration, Mr. Bair discusses the conditions in the dorms at MCJ. Those conditions exist today and are largely unchanged: there still over 100 people in each dorm, and the jail staff operating the module cannot see what goes on in many parts of the dorms. Besides the safety concerns, the conditions there

Declaration of Mary Tiedeman 2

are overcrowded and horrible. I have been in those dorms when the toilets are so clogged up that the entire dorm reeks of stale urine and feces. The air is extremely stagnant and the entire room feels extremely claustrophobic. These conditions are atrocious and would only worsen if there were more people housed at MCJ.

8. Overcrowding is a systemic problem that causes detainees many problems. From limited access to medical care and showers to an increased risk of violence, it impacts almost every aspect of life in the Los Angeles County jails. When I ask them about its effects, the detainees are painfully aware of the impact overcrowding has on their lives. As Mr. Bair discusses his declaration (exhibit 4, paragraph 33), the detainees still are packed in dorms where the beds are so close together that the bedposts touch and a detainee can only get off his bed by crawling over his neighbor's bed. Be cause everyone is so crammed together, detainees tell me arguments will break out about who will get the toilet paper, who will get a bottom bunk, or who will have to sleep closest to the toilet.

## CURRENT CONDITIONS IN MCJ

9. In addition to the dorms discussed above, other seriously problematic areas of MCJ are the single-man cells. When I go to MCJ, I devote a large portion of my time to addressing appalling conditions in these rows. The detainees are housed in single-man cells for a variety of reasons, including for their own protection because they are cooperating with detectives on their criminal cases or for their safety because they dropped out of a gang. There are hundreds and hundreds of detainees in single-man cells at MCJ, and the only time they are even scheduled to have any recreation or out of cell time is for 3 hours per week on the roof in a cage. These detainees constantly report problems regarding access to the roof or showers, which I discuss below. If there were more people in jail, this problem would only be exacerbated. For example, there are only so many time slots during the day when the deputies can schedule

Declaration of Mary Tiedeman          3

someone roof time and if there were more people, not everyone would be able to go every week, or the deputies would have to take the detainees to the roof at very early or late hours of the day.

10. Another significantly overcrowded area of MCJ that would surely get worse if the population increased is on the pre-classification rows, called K10 FISH rows. The detainees on these rows do not see the light of day or get out of their cells as a matter of policy. They also do not get any phone calls or visits. For example, I went to MCJ on 6/23/09, over 10 of 26 detainees reported they had been housed there for over 20 days. The practice of housing detainees in this manner has been an ongoing problem that we have brought to LASD's attention. One of the responses LASD has told me about these backups is because there is a logjam for housing and LASD does not have anywhere to house these detainees even though they are already classified. Consequently, these detainees simply wait in limbo with no outside contact until regular housing becomes available.

11. I regularly encounter complaints from detainees at MCJ that they do not get the required access to showers, which is every other day or every day under enhanced MRSA shower schedule. Additionally, when I walk the rows and talk to detainees, I can often tell they have not had showers because they smell and their hair is matted. Also, I see them giving themselves bird baths in their sinks because they tell me that they are not allowed out of their cells to shower. Detainees also report that when they do receive showers, they only get showers for 1 or 2 minutes. When I inquire as to why they cannot provide longer showering opportunities, deputies, sergeants, and lieutenants tell me it is because there is not enough time in the day to shower all the detainees they need to shower for more than a few minutes every other day. This problem would only get worse if there were more people.

12. Rats are something that detainees on the oldside of MCJ complain about frequently. They report that rats scurry around their cells, and they are worse at nighttime when the lights are off. I have personally seen rats running on the tiers outside of the detainees' cells and I have seen dead rats in the cells where detainees sleep.

13. Overcrowding also creates a filthy physical environment for the detainees. For example, as a result of greater toilet use necessitated by overcrowding, toilets in the cells frequently leak onto the floor or overflow. I have seen toilets overflowing with feces and urine on numerous occasions during my jail tours. Additionally, I have witnessed dorms at PDC where 60-70 men are given only one roll of toilet paper. These detainees routinely complain about irregular access to toilet paper. They state they have to use linens or nothing at all because the toilet paper runs out and the deputies do not have more to provide them. This situation would significantly worsen should the populations in the dorms increase.

14. Another common complaint from detainees at MCJ, particularly on the oldside, is about extreme temperatures. They report that the temperatures in their cells are either excessively cold, or excessively hot. I also experience these extreme temperatures (usually cold) during my tours. Often I am wearing a sweater and I am still cold so I cannot imagine what it would be like to try to sleep in these extreme conditions with only a paper-thin blanket. I frequently report this problem to the module officers, who will place a work order to fix it but I worry about the parts of the jail that I am unable to visit because the jail is so big and I cannot go everywhere.

15. One of the complaints detainees at MCJ often articulate to me is regarding their infrequent access to the roof, which is where they get their only out of cell time. Moreover, many of these detainees are only scheduled to go to the roof at 6 or 7am. Many of them tell me they will not go to the roof because it is too early, too cold, and

the jail does not provide them with any coats or thermals, even though they request them.

16. Overcrowding also causes LASD to keep detainees locked down in their cells nearly 24 hours a day. LASD requires all detainees to stay in their cells virtually all the time other than visits to court, legal and family visitation, and one block of 3 hours of outdoor exercise. Detainees eat all meals and use the restroom in their small, cramped cells or overcrowded dorms. Instead of getting any fresh air, they are stuck in windowless, cramped cells or in stuffy crowded dorms for days and days without ever getting out. As a result, most detainees at MCJ, for example, are locked down in their cells for almost 165 out of 168 hours each week. When I speak them, they are often disconnected from the world and they have ask me for the time or what the weather is like because they have no idea.

17. When the detainees complain about problems accessing showers, extreme temperatures, or getting recreation, I will frequently check the Uniform Daily Activity Log, or the UDAL, in the module. This is where deputies are supposed to log everything that happens in the module. It is my experience, however, that the information in these logs is frequently inaccurate. For example, on several occasions, entire rows of men and other jail staff will tell me that the rows are not receiving showers, but the log will indicate that showers have been offered every day. Additionally, on several occasions I have seen activities pre-logged in the book as having happened when they clearly had not because it was pre-logged.

## REDUCING THE JAIL POPULATION

18. I regularly encounter people in the LA Jails who are in custody for low-level charges or convictions. For example, a couple of months ago, I met a man who was in jail for skipping the turnstile in a subway station. Two weeks ago, I met a man who was housed in MCJ on a FISH row simply because he drove his car on suspended

Declaration of Mary Tiedeman          6

license. I have also met many individuals who are in custody for technical parole violations without additional charges. I can verify this by checking their status on the lasd.org website and I see that they do not have pending court cases and no sentenced time; they simply have a hold from the California Department of Corrections.

### NEED TO ADEQUATELY PLAN

19. LASD does not have a strong track record of adequately planning for changes in jail housing. Based on my experience in the jails, a similar situation would happen again unless LASD creates a clear and concrete plan about what they will do when they close any jail beds.

I declare under penalty of perjury under the Laws of California that the foregoing is true and correct to the best of my knowledge and belief. Executed this 13th day of July, 2009 in Los Angeles, California.

*Mary Tiedeman*

Exhibits to Declaration:

1. Description of North Facility at Pitchess Detention Center
2. Inmate Census Report, dated July 13, 2009
3. Declaration of Jody Kent, dated April 12, 2006.
4. Declaration of Toni Bair, dated April 12, 2006.