# EXHIBIT 1

# COUNTY OF LOS ANGELES
## OFFICE OF THE COUNTY COUNSEL



648 HALL OF ADMINISTRATION
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012

TELEPHONE
(213) 974-1903
TELECOPIER
(213) 626-2105

DE WITT W. CLINTON, COUNTY COUNSEL

August 11, 1992

Paul Hoffman, Director
ACLU Foundation of Southern California
1616 Beverly Blvd.
Los Angeles, CA 90026

Re:  Rutherford Joint Status Report

Dear Paul:

Enclosed are two modified Joint Status Reports without attachments. One version shows deletions in ~~strikeout~~ and additions in redline, and the other has only the revisions with no indication of strikeout or redline. Both contain all of your requested changes except as follows:

I did not add the Sybil Brand or Dillard decisions as suggested because they are referenced to published official citations.

I modified your suggested addition to page 7, line 18 to read "and providing *constitutionally* adequate health care to all inmates in his custody."

I suggest we wrap this up at our next meeting on August 17, 1992. We also need to discuss the particulars of the planned tours and a strategy to convince these other jails that they shouldn't be afraid in include ACLU attorneys in the tour. I have a draft letter in this regard being reviewed by Chief Ciulik and Jake Katz.

Very truly yours,

DE WITT W. CLINTON
County Counsel

By
FREDERICK R. BENNETT
Assistant County Counsel

c:   Chief Robert Ciulik

Ruth2:JTStat2.Ltr

Exhibit 1
Page 4

PAUL L. HOFFMAN
LISE ANDERSON
ACLU Foundation of Southern California
1616 Beverly Boulevard
Los Angeles, CA 90026

(213) 977-9500

Attorneys for Plaintiffs

DE WITT W. CLINTON
County Counsel
FREDERICK R. BENNETT
Assistant County Counsel
648 Hall of Administration
500 W. Temple Street
Los Angeles, CA 90012

(213) 974-1903
FAX (213) 626-2105

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS RUTHERFORD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SHERMAN BLOCK, *et al.*, <br><br> Defendants | CASE NO. CV-75-4111 <br><br> Joint Status Report |

The present action was filed by the American Civil Liberties Union Foundation of Southern California (ACLU) in 1975 invoking jurisdiction under 28 U.S.C. §1343 for a claim under 42 U.S.C. §§1983, 1985, and for injunctive and declaratory relief pursuant to 28 U.S.C. §§2201, 2202, as a class action on behalf of all

- 1 -

Exhibit 1
Page 5

present and future inmates challenging a wide range of conditions of confinement at the Los Angeles County Men's Central Jail.

The class was certified and the matter proceeded to trial. After trial, the United States District Court Judge William P. Gray, filed a reported decision, *Rutherford v. Pitchess* (C.D. Cal. 1978) 457 F.Supp. 104 (Attachment 1[1]), and in an unreported supplemental memorandum opinion filed February 15, 1981 (Attachment 2), and a Judgment dated February 15, 1979 (Attachment 3), imposing nine (9) orders at Mens' Central Jail concerning (1) beds, (2) visitation, (3) outdoor recreation, (4) indoor recreation, (5) restoration of windows, (6) processing for court, (7) cell search procedures, (8) time for meals, and (9) changes of clothing. By order filed January 5, 1979, a separate tenth (10th) order was filed approving and directing implementation of a plan for the improvement of telephone facilities in the jail.

Three of these orders, visitation, restoration of windows, and search procedures, were appealed to the Ninth Circuit, which reversed the order concerning restoration of windows (*Rutherford v. Pitchess* (9th Cir. 1983) 710 F.2d 572) [Attachment 4]), and to the United States Supreme Court, which reversed the visitation order insofar as it required contact visitation, and the search procedures order (*Block v. Rutherford* (1984) 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 [Attachment 5]).

---

[1] Referenced opinions are reproduced from the published reports or from the Joint Appendix filed with the United States Supreme Court in *Block v. Rutherford* (1984) 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438.

The Sheriff has never been able to fully comply with one of these orders concerning processing for court, and that provision has been the subject of many motions for modification and enforcement, and on December 16, 1987, District Court Judge Gray approved a plan which ultimately lead to a jail population management order discussed below, which suspended for at least six months the orders concerning processing for court. The court processing orders remain suspended.

An unreported memorandum of understanding in other litigation initiated by the ACLU, *ACLU v. Pitchess*, the Sheriff agreed to work toward obtaining state licensure of the jails health care delivery system, which has not yet been accomplished. In 1984 and in 1991 the medical facilities at Men's Central Jail, Sybil Brand Institute, and the Forensic Outpatient Unit (#7200) in Central Jail were inspected by the state licensing agency. In May 1992 this agency issued reports detailing many areas in need of improvement before licensing could occur.

Through 1985, none of the orders technically affected any jails in the multi-facility Los Angeles County jail system except Mens' Central Jail, although orders had been issued concerning other jails in the system in litigation brought by the same attorneys representing the class in the Central Jail litigation. Orders concerning the main Women's jail, Sybil Brand Institute, were obtained in a state court proceeding, *Inmates of Sybil Brand v. Pitchess* (1982) 130 Cal.App.3d 89, and concerning the Mens Hall of Justice Jail in *Dillard v. Pitchess* (C.D. Cal. 1975) 399 F.Supp. 1225, and by subsequent stipulated agreements approved by District

- 3 -

Exhibit 1
Page 7

Court Judge William P. Gray. However, it was the Sheriff's practice to attempt to implement orders directed at any one facility system-wide, and discussions between the parties generally focused on the system rather than on any particular facility.

Beginning in 1985, the Sheriff began experiencing difficulty in complying with the various jail orders ~~as a result~~ in the context of unprecedented and unexpected increases in the jail population. During the 1980's the jail system population almost tripled from about 8,000 to over 23,000. As alternatives to contempt proceedings, the parties entered a number of memorandums of understanding, which are summarized in a letter to Los Angeles Municipal Court Judge Richard A. Paez, dated June 15, 1988 (attachment 5), and which ultimately lead to United States District Court Judge William P. Gray approved stipulated population limits at each of the jail facilities in the jail system (except the newest facility, the North County Correctional Facility, as to which there is only an understanding of the parties), and a Court imposed jail population management order which directs the Sheriff to "manage the jail system within those capacities by discharging or citing inmates to court upon a written promise to appear, according to priorities that he shall establish." (See Attachment 6). Using this authority, the Sheriff has generally managed the jail system within the stipulated jail facility capacities by using a variety of criteria for releasing or citing inmates to court as needed.

Since 1985, the ACLU has continued to monitor the Sheriff's compliance with the various orders, and the parties have met

regularly since 1985. During this time, the parties have been able to agree to appropriate attorneys' fees for such monitoring efforts which are periodically submitted to the District Court to be ordered without hearing or objection, and to various plans for dealing with periodic difficulties of compliance which have been either reported to United States District Court Judge William P. Gray orally in periodic status conferences, in periodic written status reports, or submitted to him for modification orders.

Current meetings and discussions have largely centered on the jail's health care delivery system.

This cooperative process has worked well for almost a decade, with the parties meeting regularly, providing the court with periodic status reports, and seeking United States District Court intervention or approval as necessary.

To assist the District Court, the ~~parties stipulate and agree that the various court orders as modified by order and stipulation over the years are currently~~ basic framework of existing court orders and modifications is as follows:

> 1. **Beds.** Every prisoner kept overnight in the jail will be accorded a mattress and a bed or bunk upon which to sleep. This order shall not preclude the defendants from permitting inmates to be housed with full bedding but without a bunk, for one night only, if, in the defendants' judgment, such inmate or inmates require more secure housing than is provided in the available areas and the appropriate housing does not have a sufficient number of bunks. Further, this order shall not apply in the event of an emergency causing a sudden and unusual intake of prisoners,

- 5 -

Exhibit 1
Page 9

in which case full bedding shall be provided and the defendants will exercise their best efforts to provide bunks for all inmates as soon as possible. (Attachment 2, 2/15/~~92~~79 Judgement, para. 1).

    2.  **Visitation by Children of Prisoners.** Upon prior request from a prisoner, his minor children over the age over the age of twelve (12) years shall be permitted to visit him unaccompanied by an adult. (*Id.*, para. 2).

    3.  **Outdoor Recreation.** All prisoners except those that are hospitalized, in disciplinary segregation, those under the jurisdiction of medical staff of the Forensic Mental Health Unit who such medical staff determine are appropriate for roof recreation, and except for those high security inmates who the Sheriff believes cannot safely be permitted roof recreation shall be allowed not less than two and one-half hours of outdoor exercise or other recreation per week. (*Id.*, para. 3).

    4.  **Indoor Recreation.** Television sets shall be installed and reasonably maintained in each day room. (*Id.*, para. 4).

    5.  **Telephones.** Primarily collect and some pay telephones shall be installed in each jail facility to permit all inmates reasonable access to telephones. (*Id.*, para. 7, as modified).

    6.  **Time for Meals.** An inmate shall be allowed not less than fifteen minutes within which time to complete each meal. (*Id.*, para 9).

    7.  **Change of Clothing.** Each inmate shall receive at

least twice each week clean outer garments, undergarments, socks and a towel in exchange for those that he has been using.

    8. **Jail Population Management.** The maximum inmate population at each of the listed facilities, subject to modification upon addition of new facilities, is set forth below and the Sheriff shall "manage the jail system within those capacities by discharging or citing inmates to court upon a written promise to appear, according to priorities that he shall establish" (Attachment 5):

| Jail Facility | Court Approved Capacity |
|---|---|
| Mens' Central Jail Permanent housing | 6,800 Normal - 7500 Emergency[2] |
| Inmate Reception Center | 700 Inmates[3] |
| Los Angeles Medical Center | 50 Inmates |
| Hall of Justice Jail | 1,800 Normal - 2100 Emergency |
| Biscailuz Center | 1,470 Inmates |
| North County Correctional Facility | 3,120 Normal - 3600 Emergency[4] |

---

[2] The normal agreed population limit is 6800 inmates. However, the parties and the Court have approved permitting this jail's population to temporarily exceed 6800 to as much as 7500 on occasion for short periods of time when necessary. Similar ~~goal~~ normal and ~~permissible~~ emergency capacities are identified for certain other facilities.

[3] There is no prior court order concerning this capacity. However, this number reflects the average number of inmates being processed in the Inmate Reception Center at any one time, and the number of inmates in the Inmate Reception Center are reported on the daily count sheets used by the parties to monitor the jail population.

[4] Since this facility was built after the original inmate population capacity agreements were adopted, there has been no prior formal approval of these limits.

- 7 -

Exhibit 1
Page 11

| PHR-East | 1,786 Normal - 1800 Emergency |
|---|---|
| PHR-North | 1,600 Normal - 1650 Emergency |
| PHR-South | 1,900 Normal - 1950 Emergency |
| PHR-Ranch | 2,366 Inmates |
| Mira Loma Male Facility | 1,089 Inmates |
| Mira Loma Female Facility | 854 Inmates |
| Sybil Brand Institute for Women | 2,064 Normal - 2300 Emergency |
| **Total** | **25,599 Normal - 27,429 Emergency** |

9. **Health care system.** The Sheriff shall work towards obtaining State licensure of all jail health care facilities and providing constitutionally adequate health care to all inmates in his custody, and in furtherance of that effort:

A. A joint Sheriff/ACLU team, including a mutually acceptable outside expert, will visit mutually acceptable jail medical care facilities such as Cook County (Chicago), Illinois, and Riker's Island (New York), for the purpose of identifying practical and appropriate ways of providing adequate jail medical care, and to provide a baseline for evaluation of the Los Angeles County system.

B. After the visit, the team will meet to identify necessary improvements to the Los Angeles County jail medical care system, and to prioritize those improvements to be implemented over time, (assuming that there are insufficient available resources), and to establish a reasonable time frame for implementation.

C. During this process the Sheriff will continue efforts to make short term improvements to meet the most serious deficiencies identified in the most recent State licensure inspection report.

10. **Administrative Remedy.** When any inmate has information that he believes to disclose a violation of a jail condition orders order, he may set forth that information in writing to the Commander of the jail who shall cause an investigation thereof to be made as soon as reasonably practicable, and in any event within ten days following receipt of such written statement. Promptly following the completion of the investigation the Commander shall deliver a written reply to the inmate indicating what, if any, action, has been taken concerning the inmate's complaint and what, if any, action has been taken to prevent violations of this judgment. Absent unusual circumstances indicating compelling reasons why following this procedure would result in substantial prejudice to the inmate, no petition for a judgment of contempt for violation of this order shall be entertained by the court until the inmate first complies with this administrative procedure. In considering any petition for contempt for violation of jail condition orders order, the court shall take into account the appropriateness of any action taken by the jail Commander in response to information provided him in accordance with this procedure. (*Id.*, para 11).

11. **Emergencies.** In the event the Sheriff or his authorized representatives have reasonable cause to believe

- 9 -

Exhibit 1
Page 13

there exists facts showing a serious imminent threat to the security of the jail~~,~~ or the safety of any persons therein that would occur if any of the provisions of ~~this decision~~ the *Rutherford* orders were enforced and there is insufficient time to seek a formal modification or exception to such provisions, the Sheriff may temporarily suspend such jail condition orders as may be necessary to overcome or reduce such threat for a period not exceeding five court days, provided he submits a statement in writing to this court setting forth what he has done and why he has done it. (*Id.*, para. 12).

IT IS SO STIPULATED:

Date:_____    _____
                                Frederick R. Bennett
                                Assistant County Counsel
                                Attorney for Defendants

Date:_____    _____
                                Paul Hoffman
                                Legal Director
                                ACLU Foundation of Southern Calif.
                                Attorney for the Plaintiff Class


IT IS SO APPROVED AND ORDERED:


Date:_____    _____
                                United States District Court Judge