O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENNIS RUTHERFORD, | ) | Case No. CV 75-04111 DDP |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION TO REOPEN** |
| | ) | **DISCOVERY** |
| v. | ) | |
| | ) | [Motion filed on June 15, 2009] |
| LEROY BACA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on Plaintiffs' Motion to Reopen Discovery in this case. After reviewing the materials submitted by the parties and considering the arguments therein, the Court grants the Motion. This Order does not consider whether Plaintiffs are entitled to particular documents or information, which may not be discoverable for various reasons.

**I. BACKGROUND**

This case was filed in December 1975 as a class action on behalf of sentenced and unsentenced inmates of the Los Angeles County Jails. It sought declaratory judgment and permanent injunctive relief for constitutional violations relating to jail conditions. The Court issued its Memorandum of Decision in July

1978. <u>Rutherford v. Pitchess</u>, 457 F. Supp. 104 (C.D. Cal. 1978). On February 15, 1979, the Court entered judgment in this case. The Judgment ordered a permanent injunction with respect to (1) beds, (2) visitation, (3) outdoor recreation, (4) indoor recreation, (5) the restoration of windows, (6) processing for court, (7) telephones, (8) cell searches, (9) the time for meals, (10) changes of clothing, (11) provisions for enforcing the order, and (12) emergencies. The Ninth Circuit reversed the judgment with respect to the restoration of windows, <u>see</u> <u>Rutherford v. Pitchess</u>, 710 F.2d 572 (9th Cir. 1983), and the Supreme Court reversed the aspects of the judgment that concerned contact visits and cell searches, <u>see</u> <u>Block v. Rutherford</u>, 468 U.S. 576 (1984).

The parties subsequently entered into a working relationship to enforce the permanent injunction. This working relationship yielded Court-approved Memoranda of Understanding and Stipulated Orders to address issues arising from the enforcement of the permanent injunction.

In 1989, the parties entered into and the Court signed as an order a Joint Stipulation and Order. That Order explained that, in measuring compliance "with the Court's orders in this case . . . , the counsel for parties have found it useful to regularly conduct joint and separate interviews with inmates throughout the jail system, and to permit discussions between counsel for the plaintiff and Sheriff's staff, frequently without counsel for the Sheriff being present." Stipulation and Order at 1 (June 21, 1989). The parties stipulated that "none of the statements made during inmate interviews or in discussions with the Sheriff's staff will be used or made available for use in other litigation." <u>Id.</u> at 2.

In 1992, the Court signed as an Order a Joint Status Report submitted by the parties. Joint Status Report and Proposed Order at 6 (August 27, 1992). It outlined "the basic framework for existing court orders and modifications." In particular, it described orders and conditions concerning (1) beds, (2) visitation by children of prisoners, (3) outdoor recreation, (4) indoor recreation, (5) telephones, (6) time for meals, (7) changes of clothing, (8) jail population management, (9) the health care system,[1] (10) administrative remedies, and (11) emergencies. More recently, the Court ruled on issues related to holding inmates in the Inmate Reception Center and providing inmates with appropriate bedding and bunks. Those recent orders require that adequate access to medical care be provided to IRC-housed inmates.

Plaintiffs now move to reopen discovery in <u>Rutherford</u>. Plaintiffs raise as specific concerns supporting their motion the situation of individuals with mental illness in the jail, as well as related issues regarding medical care, access to showers, and unsanitary conditions. Plaintiffs seek access to reports and policies, though they do not ask the Court to decide whether they are entitled to specific documents or resolve specific disputes at this time. Defendants argue that the requested order reopening

---

[1] The 1992 Joint Status Report and Order includes a requirement that the Sheriff "shall work towards obtaining State licensure of all jail health facilities and providing constitutionally adequate health care to all inmates in his custody." Joint Status Report and Order at 10. This Joint Status Report was signed as an Order in this case that established the current status of all agreements and orders in this case.

Moreover, in addition to the issues actually ruled on in the permanent injunction, the Amended Complaint, filed December 31, 1975, includes allegations regarding health conditions, medical and health care, and care for mentally ill inmates. <u>See</u> Am. Compl. ¶¶ 27-28, 31.

discovery is too broad, that Plaintiffs have not met the standard for re-opening discovery, and that they fear defendants will abuse discovery.

**II.    DISCUSSION**

Courts have inherent power to enforce their judgments, including by granting post-judgment discovery to determine compliance with judgments and orders. Cal. Dep't of Soc. Servs. v. Leavitt, 533 F.3d 1025, 1033 (9th Cir. 2008). Where Plaintiffs seek a post-judgment order permitting discovery, "the kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance. If significant questions of noncompliance have been raised, appropriate discovery should be granted." Id. at 1034. Such a motion is analogous to a Rule 56(f) request, see id., and requires "[v]ery little proof of noncompliance," see Rutter Group Practice Guide: Federal Civil Trials and Evidence ¶ 20:438.3. Where parties seek to terminate or modify a consent decree or injunction, for example, post-judgment discovery or hearings may be warranted. Cf. Sharp v. Weston, 233 F.3d 1166, 1169 (9th Cir. 2000).

While the Court makes no comment as to whether the particular documents Plaintiffs mention in their motion are discoverable, the Court finds that Plaintiffs have provided sufficient information to raise "significant questions" regarding the orders in this case and to justify reopening discovery. As the basis for their request, Plaintiffs argue that discovery is justified in order to determine whether the Rutherford injunction should be modified and in order to effectively continue with their monitoring duties. They submit

4

the declaration of Mary Tiedeman, the Jails Project Coordinator for the ACLU, who testifies about the mental health issues she has observed in the jails, Tiedeman Decl. ¶¶ 4-5, and opines as to information she feels she needs to effectively perform her monitoring role, e.g., id. ¶¶ 8-9.  Additionally, Plaintiffs submit the Report of Terry Kupers on Mental Health Issues as Los Angeles County Jail, see Winter Decl., Ex. 1, which opines on Kupers' observations of the conditions in the jails and their impact on mental health issues.

    Defendants argue that Plaintiffs have failed to make a sufficient showing of non-compliance with the judgment to warrant a reopening of discovery.  They frame further discussions by the Sheriff regarding issues beyond the judgment as purely voluntary and therefore not the subject of any motion reopening discovery.  This argument is unavailing.  While mental health issues are not expressly listed in the 1979 Judgment, the subsequent (largely sitpulated) orders in this case have modified the obligations of the parties and, as noted above, they contemplate and incorporate both medical care and mental health issues.  Those additional issues – which are within the scope of the 1975 Amended Complaint – have therefore become more than voluntary "extras."  The Court has yet to interpret those obligations in great detail, and does not do so here.  Against that backdrop, however, the Court is satisfied that Plaintiffs have provided a basis for the discovery of documents: they have provided evidence regarding medical care and

conditions that may plausibly fall below the Constitutional minimum.[2]

Defendants express two additional concerns. First, they argue that the relief Plaintiff requests – an order reopening discovery without any particular focus – is too broad and authorizes a fishing expedition. In reopening discovery, the Court limits that discovery, at this stage, to the issues identified in Plaintiffs' motion – specifically, issues regarding medical care and mental health – but the Court notes that the allegedly systemic nature of these issues may make discovery inherently broad.[3] The Court urges and expects the parties to work cooperatively to arrive on a satisfactory discovery framework. Second, Defendants express a fear that the ACLU will improperly use information obtained in discovery for other litigation. The Court notes that such a concern is more appropriately dealt with through procedural barriers such as protective orders.[4] Additionally, the Court reiterates that this Order does not establish Plaintiffs'

---

[2] To the extent some of Plaintiffs' evidence regarding the reopening of discovery comes from situations where the Sheriff has allowed Plaintiffs *more* access than the injunction and orders require, the Court notes that this evidence is not improperly submitted. The Court will not allow Plaintiffs to enforce LASD courtesies that have not become part of an order; however, Defendants have pointed to no order that bars the ACLU from using the information gained through those courtesies in support of efforts to enforce orders and obligations in *this* case. That said, the Court is not convinced that Plaintiffs' monitoring duties, in and of themselves, entitle them to certain documents simply because such documents would be helpful.

[3] The Kupers Report suggests, for example, that a number of issues, taken together, make the confinement of mentally ill prisoners particularly problematic.

[4] The Court will not assume that Plaintiffs or their counsel will violate any such orders. Defendants' second argument therefore carries little weight.

6

*entitlement* to any specific document.  To the extent the Sheriff claims such documents are privileged, the discovery procedures are more than equipped to aid the parties and the Court in appropriately designating, adjudicating, and protecting such privileges.

**III. CONCLUSION**

For the foregoing reasons, the Court grants the Motion to Re-Open Discovery.  As mentioned above, the Court's Order does not resolve whether specific documents are discoverable or specific document disputes.

IT IS SO ORDERED.

Dated: August 4, 2009

DEAN D. PREGERSON
United States District Judge

7