1   MARK D. ROSENBAUM, SBN 59940
    mrosenbaum@aclu-sc.org
2   PETER ELIASBERG, SBN 189110
    peliasberg@aclu-sc.org
3   ACLU Foundation of Southern California
    1313 W. 8th Street
4   Los Angeles, California 90017
    Telephone:  (213) 977-9500
5   Facsimile:  (213) 977-5297

6   MARGARET WINTER*
    mwinter@npp-aclu.org
7   ERIC G. BALABAN*
    ebalaban@npp-aclu.org
8   National Prison Project of the ACLU
    915 15th Street NW, 7th Floor
9   Washington, D.C. 20005
    Telephone:  (202) 393-4930
10  Facsimile:  (202) 393-4931
    *Not admitted in D.C.; practice limited to federal courts
11
    Attorneys for Plaintiffs
12  (continued on next page)

13

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16

17  DENNIS RUTHERFORD, et al,              ) Case No.  Civ. 75-04111-DDP
                                           )
18                    Plaintiffs,          )
                                           )
19                                         ) **EX PARTE APPLICATION FOR**
            vs.                            ) **STATUS CONFERENCE;**
20                                         ) **MEMORANDUM OF POINTS AND**
    LEROY BACA, as Sheriff of the          ) **AUTHORITIES; DECLARATIONS IN**
21  County of Los Angeles, MICHAEL D.      ) **SUPPORT**
    ANTONOVICH, YVONNE B.                  )
22  BURKE, DON KNABE, GLORIA               ) Honorable Dean Pregerson
    MOLINA, ZEV YAROSLAVSKY, as            )
23  Supervisors of the County of Los       ) Date:
    Angeles, et al.,                       ) Time:
24                                         ) Dept:  3
                      Defendants.          )
25  _____   )

26

27

28

1  MELINDA BIRD, SBN 102236
   melinda.bird@disabilityrightsca.org
2  Disability Rights California
   3580 Wilshire Blvd., Suite 902
3  Los Angeles, California 90010
   Telephone:  (213) 355-3605
4  Facsimile:  (213) 427-8767

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**EX PARTE APPLICATION FOR STATUS CONFERENCE**

2   Plaintiffs hereby apply, pursuant to local rule 7-19, for a status conference

3

4   with the court at the court's earliest convenience.  Plaintiffs have notified

5   defendants' counsel, Paul Beach, whose address is set forth below, of their intention

6   to file this ex parte application.  *See* Declaration of Melinda Bird §§ 3-4.

7
    Paul Beach
8   Lawrence Beach Allen & Choi
    100 West Broadway, Suite 1200
9   Glendale, CA  90210
    TEL: 818-545-1925
10   Plaintiffs make this request ex parte because of the continuing acute and

11

12   intolerable problems at Mens Central Jail (MCJ), most notably the overcrowding

13   problems that have a particularly severe impact on those inmates with mental

14

15   illness.  Plaintiffs hope that a status conference may set in motion a collaborative

16   process that will obviate the need for plaintiffs to request an evidentiary hearing and

17   injunction against defendants requiring the County to remedy the grossly deficient

18

19   conditions that are causing the violations of Plaintiffs' constitutional rights.

20

**MEMORANDUM OF POINTS AND AUTHORITIES**

21   Plaintiffs request a status conference to consider a collaborative solution to a

22

23   critically important problem raised during the Court's October 29, 2009 tour of

24   Men's Central Jail: the impact of overcrowding on the mental health of the MCJ

25   population.  We believe that a status conference would be particularly productive at

26

27   the present juncture.

28

1    The parties and the Court have defined overcrowding as the point where the

2    population of the jail "renders it impossible for the Sheriff to exercise his usual

3    discretion and management options to provide adequate security and control" in the

4    jail.  Memorandum of Understanding; Court Approval Thereof, filed November 13,

5    1985 (Docket No. 463), Ex. 1 to Declaration of Melinda Bird (attached).   Plaintiffs

6    believe that that point has long been reached at MCJ, where massive overcrowding

7    in a severely obsolete and dangerous facility has made it virtually impossible for the

8    Sheriff adequately to manage a population with an extraordinarily high prevalence

9    of serious mental illness.   In Dr. Kupers' words, "The general population areas of

10   the Men's Central Jail are massively overcrowded, and the prisoners are almost

11   entirely idle – a combination of toxic conditions that is guaranteed to predictably

12   increase the prevalence of violence, psychiatric breakdown and self-harm."

13

14   From Plaintiffs' perspective, the problems stemming from overcrowding at

15   MCJ have become so acute and intolerable, particularly for the mentally ill, that

16   class counsel has an ethical duty to press for immediate remedial action.  The only

17   question is, what is the most realistic and productive method of obtaining prompt

18   relief for the class.

19   One option is for Plaintiffs to move for an evidentiary hearing, prove through

20   expert testimony and other evidence that the massive overcrowding at MCJ leads to

21   a daily denial of constitutionally adequate mental health care, and request an

22   injunction requiring the County to remedy the grossly deficient conditions that are

causing the violations.  That process will be extremely time-consuming, resource-intensive and costly for all of the parties. Plaintiffs believe that a swifter and more effective collaborative solution may, with the Court's assistance, be available; and that it would be in the best interests of the County, the detainees, and the public, to first attempt a collaborative rather than an adversarial solution.

Specifically,  we propose a collaboration of the County, the Sheriff and the ACLU, with the assistance of Dr. Terry Kupers, a nationally recognized expert who was present at the most recent jail tour, and Dr. James Austin, another nationally recognized expert who has successfully collaborated with Dr. Kupers on previous occasions, to formulate a plan to substantially decrease the population of detainees with mental illness at MCJ and ameliorate the harsh conditions that are currently generating mental illness, while at the same time improving safety and decreasing spending.

Dr. Kupers, Dr. Austin and the ACLU have been involved in a remarkably successful collaboration with the Mississippi Department of Corrections, which has succeeded in reducing the super-max population of that state to one-tenth of its former size.   The reduction of the super-max population resulted in the plummeting of incidents of use of force and of inmate-on-inmate violence, a dramatic improvement in the delivery of mental health care to the prison population, and an enormous net savings to the Department of Corrections.  The Mississippi collaboration is documented in an article jointly authored by

3

Mississippi's Deputy Commissioner, Dr. Kupers, Dr. Austin, and the ACLU, published in Corrections and Behavior, a peer review journal, and attached to the declaration of Dr. Austin as Exhibit 1.

Dr. Austin has successfully collaborated with local and state correctional systems around the country to help them reduce their prison and jail populations through reliance on community-based alternatives to incarceration, at considerable savings to the taxpayers and without risk to public safety. He has participated in producing major jail master plans and assessments, or such major urban jails as Cook County, IL; Bexar County and Harris County, TX; Baltimore City, MD; and Washington DC.   He is currently working in ten jurisdictions to help prison and jail officials reduce crowding and improve correctional facility conditions. He was a principal expert relied on by the three-judge panel in *Coleman v. Schwarzenegger* and *Plata v. Schwarzenegger,* 2009 WL 2430820, *(*E.D.Cal., September 03, 2009) (NO. C01-1351 TEH, CIV S90-0520LKKJFMP*)* in addressing whether and how California can safely reduce prison overcrowding, at great financial savings to the state.  *Id.* at * 24 n.39, *83, *89-92, *94-95, *100-03. *110 n.88, *111-12 & ns. 89-91.

We have submitted with this application the declarations of Dr. Kupers and Dr. Austin, outlining the method by which they would work with the parties to arrive at a plan to decrease the population of mentally ill inmates at MCJ within the next twelve months while also mitigating the overcrowding and unconstitutional

4

conditions that generate and exacerbate mental illness in the population at MCJ. Dr. Kupers and Dr. Austin estimate that these changes can be effectuated very rapidly, within 6 to 12 months, based on their previous experience, including their recent collaboration with Mississippi Department of Corrections officials in devising and implementing a plan that radically reduced overcrowding in the facility, ended systemic patterns of deputy abuse and excessive force, and removed virtually all inmates with mental illness from the toxic conditions that existed previously.

Dr. Kupers' declaration describes how an analysis of readily obtainable data files would enable him, working with the Sheriff, the County, and Dr. Austin, to identify the significant number of seriously mentally ill detainees in MCJ who are currently unidentified and untreated; identify a significant number of pre-trial detainees who suffer from significant mental illness who could be safely released from the jail to participate in community-based mental health and substance abuse treatment programs, with appropriate monitoring and controls; and identify comparatively low-cost methods of offering effective treatment to the mentally ill inmates who cannot be released to the community.

Dr. Austin's declaration describes how an analysis of readily-available data files would identify the factors that are producing the current average daily population of 19,000 in LA County Jail, and from this data how the County could identify its options for safely reducing that population. For example, one target

group might be persons charged with non-violent crimes in minimum custody who have been in custody for more than two weeks.  A close analysis might show that court processing, lack of treatment programs, or other factors are preventing a more timely release from custody, making it possible for the County to identify new criteria to safely divert low-risk individuals to pre-trial release programs.

We are aware that the County is planning major new jail construction to relieve overcrowding and improve conditions for the detainees.  It will be half a decade at the earliest, however, before these plans come to fruition.[1]  Even then, the powerful engines of homelessness, untreated mental illness and substance abuse, and inadequate use of community supervision as an alternative to incarceration, will continue to generate overcrowding that no amount of new construction can ever solve without a plan to address the underlying causes.

We believe that the collaboration we propose here is by far the most realistic, efficient and economically viable avenue for remedying the overcrowding that is causing serious mental illness and exacerbating previously existing mental illness in the in the detainees at MCJ.   Unfortunately, cooperative relations between the parties have been rapidly deteriorating in recent weeks.  We believe that with the Court's assistance the parties can surmount those difficulties

//

//

and resume a productive dialog.  We respectfully urge the Court to schedule a status conference, with Dr. Kupers and Dr. Austin in attendance, to explore the possibilities of launching the collaboration outlined here.

Dated: December 16, 2009                RESPECTFULLY SUBMITTED

                                        ACLU FOUNDATION
                                        OF SOUTHERN CALIFORNIA

                                        NATIONAL PRISON PROJECT OF
                                        THE ACLU

                                        DISABILITY RIGHTS CALIFORNIA

                                        __/s/_____
                                        Peter Eliasberg
                                        Attorney for Plaintiffs

---

[1]  If the County wishes to discuss the new jail plan, plaintiffs would have no objection to including that plan as a subject to be addressed at the status conference.

7