MARK D. ROSENBAUM, (SBN 59940)
mrosenbaum@aclu-sc.org
PETER ELIASBERG, (SBN 189110)
peliasberg@aclu-sc.org
ACLU Foundation of Southern California
1313 W. 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARGARET WINTER*
mwinter@npp-aclu.org
ERIC G. BALABAN*
ebalaban@npp-aclu.org
National Prison Project of the ACLU
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
*Not admitted in D.C.; practice limited to federal courts

Attorneys for Plaintiffs
(continued on next page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DENNIS RUTHERFORD, et al, | Case No.  Civ. 75-04111-DDP |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |
| vs. | Honorable Dean Pregerson |
| LEROY BACA, et al., | Hearing Date: November 8, 2010 |
| Defendants. | Time: 10:00 a.m.<br>Courtroom: 3 |

1   MELINDA BIRD, (SBN 102236)
2   melinda.bird@disabilityrightsca.org
    Disability Rights California
3   3580 Wilshire Blvd., Suite 902
    Los Angeles, California 90010
4   Telephone: (213) 355-3605
    Facsimile: (213) 427-8767

5   Bingham McCutchen LLP
6   STEPHEN D. ALEXANDER (SBN 141099)
    stephen.alexander@bingham.com
7   JENNIFER B. MIKOLEVINE (SBN 236745)
    jennifer.mikolevine@bingham.com
8   355 South Grand Avenue, Suite 4400
    Los Angeles, California 90071-1560
9   Telephone: (213) 680-6400
    Facsimile: (213) 680-6499

10  Bingham McCutchen LLP
11  STACY W. HARRISON, SBN 175028
    stacy.harrison@bingham.com
12  1620 26th Street
    4th Floor, Main Tower
13  Santa Monica, California 90404
    Telephone: (310) 907-1000
14  Facsimile: (310) 907-2000

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

3    I.  Introduction ....................................................................................................1

4

5    II.  Argument .......................................................................................................2

6        A.  The Court Has Ample Authority to Enter the Requested Order ....................2

7        B.  The Facts Warrant a Protective Order Against Retaliation............................5

8

9    III.  Conclusion....................................................................................................12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

3   CASES

4   *Bell v. Johnson,*
5       308 F.3d 594 (6th Cir. 2002)............................................................1

6   *Ben David v. Travisono,*
7       495 F.2d 562 (1st Cir. 1974) .........................................................3, 4

8   *Chambers v. NASCO, Inc.,*
9       501 U.S. 32 (1991)..........................................................................5

10  *Cinel v. Connick,*
        792 F. Supp. 492 (E.D. La. 1992) ...................................................3
11

12  *Fillmore v. Page,*
        358 F.3d 496 (7th Cir. 2004)...........................................................1
13

14  *Gomez v. Vernon,*
        255 F.3d 1118 (9th Cir. 2001).........................................................4

15

16  *Harris v. Nelson,*
        394 U.S. 286 (1969).......................................................................3

17  *Hay v. Waldron,*
18      834 F.2d 481 (5th Cir. 1987).............................................................1

19  *Hines v. Gomez,*
20      108 F.3d 265 (9th Cir. 1997)...........................................................4

21  *Hudson v. Palmer,*
        468 U.S. 517 (1984).........................................................................1
22

23  *ITT Community. Dev. Corp. v. Barton,*
        569 F.2d 1351 (5th Cir. 1978)...........................................................5
24

25  *Madrid v. Gomez,*
        No. C90-3094 (N.D. Cal. Sept. 17, 1993) .........................................5

26  *Rubin v. Smith,*
27      882 F. Supp. 212 (D.N.H. 1995) ......................................................3

28

*Thaddeus-X v. Blatter*,
   175 F.3d 378 (6th Cir. 1999) (per curiam) (en banc)...........................................4

*United States v. New York Tel. Co.*,
   434 U.S. 159 (1977)........................................................................................3

*Wright v. Newsome*,
   795 F.2d 964 (11th Cir. 1986).........................................................................1


**STATUTES**

28 U.S.C. § 1651(a) ............................................................................................2

28 U.S.C § 1651 ...........................................................................................1, 2


**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(c) .........................................................................................4

Fed. R. Civ. P. 52.............................................................................................4

## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

### I.   INTRODUCTION

Plaintiffs ask the Court to enter a protective order, pursuant to its authority under the All Writs Act, 28 U.S.C § 1651, and its inherent powers, restraining Defendants, their officers, agents, and all persons acting in concert with them, from retaliating against *Rutherford* class members in Men's Central Jail (MCJ) for communicating problems about the conditions of their confinement to the ACLU. Plaintiffs request an order

(1) prohibiting Defendants, their officers, agents, and all those acting in concert with them from retaliating against prisoners in MCJ by any means, including but not limited to punishments, the denial of privileges, and searches,[1] for communicating with the ACLU;

(2) prohibiting Defendants, their officers, agents, and all those acting in concert with them, from attempting to intimidate by any means prisoners in MCJ from communicating with the ACLU;

(3) requiring Defendants to enforce their official anti-retaliation policy by training any deputies assigned to MCJ in that policy, and thoroughly investigate claims of retaliation;

(4) requiring Defendants to post their official anti-retaliation policy in all housing areas and common areas in Men's Central Jail and to distribute the policy to all prisoners held in segregation in MCJ;

---

[1] The Constitution does not, of course, prohibit prison staff from conducting random cell searches, *Hudson v. Palmer*, 468 U.S. 517 (1984), but prison officials may not search an inmate's cell or person for the purpose of harassment or in retaliation for exercising their First Amendment rights. *Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004); *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *see also Hay v. Waldron*, 834 F.2d 481, 487 (5th Cir. 1987) (remanding prisoner challenge of strip searches to district court for determination whether the searches were "retaliatory or discriminatory").

1

(5) requiring Defendants to track in their Facility Automated Statistical Tracking (F.A.S.T.) system all complaints of retaliation in MCJ for communicating with the ACLU, including identifying the officer(s) who are the subject of such allegations, and documenting the extent and result of such investigations;

(6) requiring Defendants to inform the ACLU of all complaints of retaliation in MCJ for communicating with the ACLU, and to report the results of all investigations of any such retaliation complaints to the ACLU;

(7) requiring Defendants to take all reasonable steps to protect prisoners who complain of retaliation in MCJ for communicating with the ACLU from future retaliation; and

(8) requiring Defendants to offer prisoners who complain of retaliation for speaking with the ACLU the opportunity to have an immediate medical exam, where the complained of retaliation took the form of physical abuse.

The protective order Plaintiffs seek is well within the Court's authority under the All Writs Act and its inherent powers to guarantee a fair and meaningful evidentiary hearing.  The requested order is necessary because, as shown herein, *Rutherford* class members at Men's Central Jail reasonably fear retaliation for communicating with the ACLU about the conditions of their confinement, efforts over the past year to resolve the problem collaboratively have failed, and the Court's fact-finding may be materially impaired unless the requested order is issued.

## II.   ARGUMENT

### A.   The Court Has Ample Authority to Enter the Requested Order.

Under the All Writs Act, 28 U.S.C. § 1651, federal courts are empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  The U.S. Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate

2

1    and prevent the frustration of orders it has previously issued," and has noted that

2    "[t]his statute has served since its inclusion, in substance, in the original Judiciary

3    Act as a "legislatively approved source of procedural instruments designed to

4    achieve 'the rational ends of law.'"  *United States v. New York Tel. Co.*, 434 U.S.

5    159, 172 (1977) (citing cases).  Encompassed in the "rational ends of law" is the

6    notion that "the courts may rely upon this statute in issuing orders appropriate to

7    assist them in conducting factual inquiries." *Harris v. Nelson*, 394 U.S. 286, 299

8    (1969).  The Court has emphasized that "a federal court may avail itself of all

9    auxiliary writs as aids in the performance of its duties, when the use of such historic

10   aids is calculated in its sound judgment to achieve the ends of justice entrusted to

11   it." *New York Tel. Co.*, 434 U.S. at 173 (quoting *Adams v. United States,* 317 U.S.

12   269, 273 (1942)).  Further, "[t]he power conferred by the [All Writs] Act extends,

13   under appropriate circumstances, to persons who, though not parties to the original

14   action or engaged in wrongdoing, are in a position to frustrate the implementation of

15   a court order or the proper administration of justice, and encompasses even those

16   who have not taken any affirmative action to hinder justice." *Id.* at 174 (citations

17   omitted).

18        The district courts may apply the All Writs Act to "control actions or conduct

19   that would inhibit [the courts'] ability to resolve or manage a case before it," *see,*

20   *e.g., Cinel v. Connick*, 792 F. Supp. 492, 497 (E.D. La. 1992) (staying state criminal

21   court's order requiring turnover of material seized from plaintiff's residence), as

22   well as conduct that if "left unchecked, would have had the practical effect of

23   diminishing the court's power to bring the litigation to a natural conclusion." *Rubin*

24   *v. Smith,* 882 F. Supp. 212, 219 (D.N.H. 1995) (granting order requiring plaintiff to

25   grant authorizations to guardian ad litem).

26        The authority of the federal courts to enter protective orders to prevent

27   retaliation against prisoner witnesses has long been recognized.  In *Ben David v.*

28   *Travisono*, 495 F.2d 562, 563 (1st Cir. 1974), prison inmates brought a class action

suit alleging that they were being subjected to "unconstitutional treatment in the form of beatings, mental abuse, inhumane and unsanitary conditions, mail censorship, and the like." Plaintiffs requested "orders for the protection of plaintiffs and their class . . . to insure a complete and thorough investigation of the claim raised herein." *Id.* The district court, after a hearing on that request, found that inmates had testified to "beatings, gassing and 'strip' lockups, and that they feared further harassment and beatings," and entered an order restraining prison officials, state police, and their agents "from taking any action in retaliation against plaintiffs and members of plaintiffs' class or of depriving plaintiffs and members of plaintiffs' class of any and all rights and privileges on account of plaintiffs and members of their class participating, assisting, or volunteering any facts or circumstances in the furtherance of this lawsuit." *Id.*

The Court of Appeals upheld this Order, and approved the district court's determination that under the authority of the All Writs Act the plaintiffs did not need to meet the usual criteria for ordinary protective orders, Fed. R. Civ. P. 26(c), or preliminary injunctions, Fed. R. Civ. P. 52, such as probability of success and balancing of equities: It was sufficient that the district court found that "serious accusations have been made" that the plaintiffs reasonably feared retaliation if they co-operated in the preparation of the litigation, and that the order prohibiting the defendants and those acting in concert with them from taking any retaliatory action was essential to guarantee "a 'fair and meaningful evidentiary hearing' and an 'adequate inquiry' into plaintiffs' claims." *Ben David*, 495 F.2d at 563.[2]

---

[2] Retaliating against prisoners for speaking to attorneys or otherwise exercising their right of access to the courts also violates the First Amendment. *See Gomez v. Vernon*, 255 F.3d 1118, 1126-7 (9th Cir. 2001) (retaliation for exercising right of access to the courts); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (retaliation for use of prison grievance system); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (per curiam) (en banc) (retaliation for exercising right of access to the

Separate and apart from this statutory grant of authority under the All Writs Act, federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). This doctrine "is rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion." *ITT Community. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (citation omitted). In *Madrid v. Gomez*, No. C90-3094, (N.D. Cal. Sept. 17, 1993),[3] the district court, the Honorable Thelton Henderson, relied upon the court's "inherent powers" to enter a broad protective order in a prisoner class action, ordering that "defendants, their officers, agents, servants, employees, and all persons acting in concert or participation with them," be restrained from "threatening" any prisoners "with punishment, penalty or other reprisals," or imposing upon them such penalties, punishments or reprisals, for lawfully assisting in the prosecution of the action by such means as supplying information to plaintiffs' counsel.

**B.     The Facts Warrant a Protective Order Against Retaliation.**

In the course of its duties as counsel for the *Rutherford* class, the ACLU communicates every year with hundreds of prisoners at Men's Central Jail concerning the conditions of their confinement.[4] During these interviews, the ACLU

---

courts). However, in this motion, Plaintiffs seek relief solely under the All Writs Act and the Court's inherent powers.

[3] A copy of the *Madrid* Order is attached hereto as Exhibit A.

[4] The ACLU's authority to interview *Rutherford* class members has been recognized in numerous orders. *See, e.g.*, 1989 Confidentiality Order ("To measure compliance with the Court's orders in this case and to develop appropriate methods to minimize the impact of jail overcrowding, the counsel for parties have found it useful to regularly conduct joint and separate interviews with inmates throughout the jail system, and to permit discussions between counsel for the plaintiff and Sheriff's staff."); 1985 Memorandum of Understanding (granting plaintiffs' counsel

5

receives a steady stream of reports from prisoners who have experienced retaliation and intimidation by Sheriff's deputies for communicating problems about the conditions of their confinement to the ACLU or other prisoner advocates, which Plaintiffs have reported to the Court. *See* Dkt. No. 217-1, Annual Report on Conditions Inside Los Angeles County Jail 2008-2009 (filed May 6, 2010) ("Annual Report"); Dkt. No. 226-1, Interim Report on Conditions Inside Los Angeles County Jail (filed September 10, 2010) ("Interim Report").

Deputies' efforts to discourage prisoners from speaking to the ACLU, combined with a pervasive climate of savage, uncurbed violence in Men's Central Jail,[5] significantly hinder the ACLU's ability to monitor conditions in the jail. Three years ago, ACLU staff members frequently spoke to prisoners about their complaints at cell front. As incidents of retaliation increased in the last two years, the ACLU monitors reduced cell-front interviews and instead began arranging to speak to prisoners individually in the attorney interview rooms at the jail.[6] In 2010, retaliation has continued to increase, so that even speaking to an ACLU staff person in the attorney room now exposes prisoners to the risk of retaliation.[7] On virtually every monitoring visit to the jail, the ACLU encounters several prisoners who refuse

---

"continued access to the Central Jail" in furtherance of several goals, including "[t]o limit the expenses inherent in resolving issues of increasing inmate population and prisoners' rights" and "[t]o resolve the issues, if possible without judicial intervention.").

[5] *See* Annual Report at 10-14; Interim Report at 3-9.

[6] Declaration of Mary Tiedeman, filed with Interim Report (Dkt. No. 226-6) at ¶ 21, attached hereto as Exhibit B.

[7] *Id. See also* Interim Report, Dkt. No. 226-1, Declarations of Prisoner 8, ¶ 12, attached hereto as Exhibit C (deputies interrogate him for ten minutes about his criminal case when he has an interview with the ACLU in the attorney room); Prisoner 5a ¶ 24, attached hereto as Exhibit D (deputies make disparaging comments about the ACLU and tell prisoner not to talk with ACLU representatives). Prisoner 5a submitted another declaration as Prisoner 5. Both declarations were attached to the Interim Report.

to talk to the monitors, explaining that they fear retaliation if deputies see or suspect them of speaking with the ACLU.[8]

Plaintiffs have submitted to the Court multiple sworn declarations with detailed allegations showing that *Rutherford* class members reasonably fear retaliation if they co-operate in the litigation. Deputies retaliate against some prisoners by savagely beating them; in some of these cases deputies plant drugs or contraband on the prisoner as a pretext for disciplining them or using excessive force.[9] Deputies subject some prisoners who meet with the ACLU to repeated searches in which they destroy the prisoners' family photographs and other personal property.[10] Deputies deny some prisoners showers or television, stating that this is "because you were talking to the ACLU."[11]

---

[8] Tiedeman Decl.(Exhibit B) ¶ 18.

[9] Regarding beatings and planted contraband and weapons in connection with prisoners' communicating with ACLU, *see* Annual Report, Dkt. No. 217-5 declarations of Prisoner 35, attached hereto as Exhibit E (beating requiring hospitalization for period of days); Prisoner 36, attached hereto as Exhibit F (slapping, beating, and stripping of cell); Prisoner 37, attached hereto as Exhibit G (harassment and threats). *See also* Interim Report, Dkt. No. 226-3, declaration of Prisoner 7, attached hereto as Exhibit J (planting of contraband). *Cf.* Annual Report, Dkt. No. 217-5 declarations of Prisoner 38, attached hereto as Exhibit H (beating resulting in broken leg and requiring hospitalization for 3 days with knee surgery, stitches in eye, staples in head); Prisoner 39, attached hereto as Exhibit I (beating and sexual manhandling); Interim Report, Dkt. No. 226-3, declaration of Prisoner 11, attached hereto as Exhibit K (beating requiring hospital stay, planting of contraband).

[10] Regarding retaliatory searches, *see* Interim Report, Dkt. No. 226-1, declarations of Prisoner 7, attached hereto as Exhibit J; Prisoner 5a (Exhibit D) ¶¶ 9-23; Tiedeman, (Exhibit B) ¶ 23.

[11] Regarding the retaliatory denial of showers and television *see* Declarations of Prisoner 5a (Exhibit D) ¶¶ 10-11; Prisoner 12 (Exhibit L) ¶ 13; Tiedeman (Exhibit B) ¶ 22.

In June 2010, for example, Prisoner 5[12] spoke to the ACLU about multiple incidents of deputy beatings and excessive force. Soon afterwards, he was questioned by deputies who specifically mentioned the ACLU. Twice when ACLU monitors attempted to conduct follow-up interviews with him, so many deputies approached him to escort him to the meetings that he was afraid to leave his cell and refused the interviews. On subsequent days, deputies began walking past his cell, asking aloud "Who's talking to ACLU?"[13] When Prisoner 5 was finally able to meet with the ACLU again, he signed a declaration describing instances of beatings and excessive force, the denial of showers and television, prisoner-on-prisoner attacks facilitated or fomented by deputies, and the planting of weapons and other contraband on prisoners by deputies.[14] Prisoner 5 told the monitor that he was afraid that deputies would also plant a weapon in his cell in retaliation for his speaking with the ACLU.[15] The following week, deputies searched Prisoner 5's cell and reported that they had found contraband in the cell; he was sentenced to a month in disciplinary segregation (solitary confinement in a small dark cell). The circumstances surrounding discovery of the contraband raise a serious question as to whether the contraband was planted in retaliation for his talking with the ACLU.[16]

---

[12] This prisoner submitted two declarations. *See* Interim Report, Dkt. No. 226-1. One declaration (Prisoner 5, attached hereto as Exhibit M) discusses the deputy-on-inmate abuse he has witnessed; the other (Prisoner 5a, attached hereto as Exhibit D) discusses the retaliation he endured for speaking with the ACLU.

[13] Declaration of Prisoner 5a (Exhibit D) ¶¶ 5-7.

[14] Declaration of Prisoner 5 (Exhibit M) ¶¶ 5-21.

[15] Declaration of Prisoner 5a (Exhibit D) ¶ 9: Declaration of Lisa Ma ¶¶ 7-9, attached hereto as Exhibit R (Prisoner, who told an ACLU jail monitor that he was "afraid that deputies will attempt to frame him by placing weapons on him, because of [sic] he has been speaking to ACLU" was put in the hole about one week later for allegedly having a razor in his cell).

[16] Declaration of Prisoner 5a (Exhibit D) ¶¶ 17-22 (deputies were heard discussing change in accusation from possession of a stick to possession of a razor; charges were later changed to possession of a shaver and creating a disturbance).

The prisoner was not allowed to appeal the decision.[17]  Deputies continued to warn him not to talk to the ACLU.[18]

The declarations Plaintiffs have submitted amply meet the standard for the issuance of an anti-retaliation order under the All Writs Act and the courts' inherent powers.  The need for a court order is plain, since the parties' repeated efforts over the course of more than a year to resolve the problem without judicial intervention have failed.  For well over a year, the ACLU has repeatedly notified the Sheriff that retaliation, intimidation and physical abuse is a major and escalating problem at MCJ, which is interfering significantly with the ACLU's ability to monitor conditions in the Jail, and it has asked the Sheriff to implement the reforms that Plaintiffs are now asking this Court to order. By letter of June 19, 2009,[19] the ACLU stated:

> As you know, we have raised the issue of retaliation against detainees who complain to the ACLU on many occasions in our monthly meetings with the Department.  Many, many class members tell us that they are too fearful to speak with us or to file complaints because of what will happen to them if they do so.  These allegations of retaliation make it almost impossible for our staff to effectively monitor conditions in the jail. For example, we have been forced to reduce our jail-front contact with class members because they report that if they speak to us, deputies harass and intimidate them after we leave the jail. The pre-existing level of retaliation is unacceptable and must be stopped. However, these new charges of retaliatory beatings and physical abuse, by deputies who expressly mention the ACLU, represent an extremely serious escalation of the intimidation and retaliation against our class members.

The ACLU asked the Department to enter into a stipulation and proposed order requiring promulgation of an anti-retaliation Unit Order, the dissemination of the Order to staff, the posting of the Order throughout all housing areas of Men's Central Jail, and the distribution of the Order to all prisoners in segregation.

---

[17] *Id.,* ¶ 20.
[18] *Id.,* ¶ 24.
[19] June 19, 2009 letter from Melinda Bird to Roger Granbo and Paul Beach, attached hereto as Exhibit N.

9

To the Department's credit, it did promulgate a Unit Order expressly forbidding retaliation in MCJ.   The Unit Order, captioned "Retaliation Against Inmates Who Make Complaints to the ACLU or Other Inmate Advocacy Groups," applies "to all sworn and civilian personnel assigned to Men's Central Jail."[20] Its stated purpose is "to establish operational procedures to prevent/prohibit retaliation practices against inmates who make complaints or speak to the American Civil Liberties Union (ACLU) or any other inmate advocacy group." It provides that "[a]ll inmates who are confined at this facility shall have the right to submit a written or verbal complaint, and speak to the American Civil Liberties Union (ACLU) or any other inmate advocacy group without any type of interference from staff," and further provides that "[a]ll personnel assigned to Men's Central Jail are strictly prohibited from the following:

"1. Questioning any inmate about any of his contacts with the ACLU or other inmate advocacy group and/or;

"2. Threatening, harassing or otherwise retaliating against any inmate on account of his contacts with the ACLU or any other inmate advocacy group.

"Any Department member found to be engaging in these types of practices will be disciplined and may potentially be prosecuted,.  Under the Rutherford v. Baca agreement with the Federal Court, the ACLU has an absolute right to question and interview inmates about jail practices.  We have a legal and moral obligation to allow the inmate complaint process to proceed unencumbered and without interference.  Sergeants and lieutenants shall ensure compliance without exception."

Although this official anti-retaliation policy incorporates much of the essential language, it has been ineffectual in stemming retaliation because the Sheriff's Department has done little if anything to enforce the policy; indeed, the Department has not even made the policy known to prisoners at MCJ.  In a July 1, 2009 letter to the Department, the ACLU reiterated the importance of posting the

---

[20]  Los Angeles County Sheriff's Department, Custody Division Men's Central Jail, Unit Order 5-12-010, Effective Date 06-20-09, Revision Date 11-02-09, attached hereto as Exhibit O.

1   anti-retaliation policy, stating, "From our perspective, informing inmates of their
2   rights is a crucial part of this process. … [I]nmates have come to expect retaliation
3   when they speak to the ACLU, so our attempts to encourage people to come forward
4   are ineffective. Posting these orders publicly will put inmates and deputies on notice
5   that retaliatory action is unacceptable."[21]   Posting did not take place, and retaliation
6   continued unabated.  On October 28, 2009, the ACLU once more wrote to the
7   Sheriff, with detailed accounts of brutal retaliatory beatings, threats and
8   intimidation.[22]  In May 2010 and September 2010, the ACLU published reports
9   supported by declarations detailing a systemic pattern of deputy abuse.  To this day
10  the anti-retaliation policy has not been posted, prisoners remain unaware of its
11  existence, deputies continue to ignore it with impunity, and the Department appears
12  to have done nothing to enforce it.

---

[21] July 1, 2009 letter from Melinda Bird to Deputy Sheriff Marvin O. Cavanaugh , attached hereto as Exhibit P.
[22] October 28, 2009 letter from Mark Rosenbaum to Sheriff Lee Baca, attached hereto as Exhibit Q.

11

### III.    CONCLUSION

Plaintiffs have presented substantial evidence that prisoners at Men's Central Jail reasonably fear retaliation for communicating with the ACLU about the conditions of their confinement. The relief Plaintiffs request requires Defendants to implement their own official policy, make *Rutherford* class members at MCJ aware of that policy, and take reasonable steps to ensure that LASD personnel follow that policy by, for example, requiring adequate investigation and tracking of complaints of retaliation. The parties' efforts over more than a year to find a non-adversarial remedy have failed.  Unless the requested order issues, the Court's fact-finding may be materially impaired. Accordingly, the Court should grant the requested relief.

Dated:  October 8, 2010                    Respectfully Submitted,

                                           ACLU Foundation of Southern California
                                           ACLU National Prison Project
                                           Disability Rights California
                                           Bingham McCutcheon, LLP


                                              s/ Peter Eliasberg_____
                                           Peter Eliasberg
                                           ACLU Foundation of Southern California
                                           Attorney for Plaintiffs