MARK D. ROSENBAUM (SBN 59940)
mrosenbaum@aclu-sc.org
PETER ELIASBERG (SBN 189110)
peliasberg@aclu-sc.org
ACLU Foundation of Southern California
1313 W. 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARGARET WINTER
mwinter@npp-aclu.org
ERIC G. BALABAN*
ebalaban@nnp-aclu.org
National Prison Project of the ACLU
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
*Not admitted in D.C.; practice limited to
federal courts

Attorneys for Plaintiffs
DENNIS RUTHERFORD, ET AL.
(continued on next page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, et al.<br><br>Plaintiffs,<br><br>v.<br><br>LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al.<br><br>Defendants. | Case No. **CV 75-04111 DDP**<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>[Declarations and Exhibits of Jennifer B. MikoLevine, Justin Clark, Mary Tiedeman, Plaintiffs' and Defendants' Requests for Judicial Notice, and Defendants' Objections to Plaintiffs' Request for Judicial Notice and Decl. of Mary Tiedeman filed concurrently herewith]<br><br>Date:   December 6, 2010<br>Time:   10:00 a.m.<br>Judge: Hon. Dean D. Pregerson<br>Place:  Courtroom 3 |

A/73456833.2

MELINDA BIRD (SBN 102236)
melinda.bird@disabilityrightsca.org
Disability Rights California
3580 Wilshire Blvd., Suite 902
Los Angeles, California 90010
Telephone: (213) 355-3605
Facsimile: (213) 427-8767

Bingham McCutchen LLP
STEPHEN D. ALEXANDER (SBN 141099)
stephen.alexander@bingham.com
JENNIFER B. MIKOLEVINE (SBN 236745)
jennifer.mikolevine@bingham.com
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071-1560
Telephone: (213) 680-6400
Facsimile: (213) 680-6499

Bingham McCutchen LLP
STACY W. HARRISON (SBN 175028)
stacy.harrison@bingham.com
1620 26th Street
4th Floor, Main Tower
Santa Monica, California 90404
Telephone: (310) 907-1000
Facsimile: (310) 907-2000

A/73456833.2

Joint Stipulation Regarding Plaintiffs' Motion To Compel Responses
To First Set Of Requests For Production Of Documents

# TABLE OF CONTENTS

Page

I.   INTRODUCTORY STATEMENTS ........................................ 1

   A.   Plaintiffs' Introductory Statement ................................................1

   B.   Defendants' Introductory Statement...........................................2

II.   DISPUTED DISCOVERY REQUESTS ............................... 4

III.   PARTIES' CONTENTIONS AND POINTS AND
AUTHORITIES .............................................................. 25

   A.   Plaintiffs' Contentions And Points And Authorities ...................25

      1.   Relevant Background ............................................................25

      2.   Defendants Should Be Compelled To Produce
Documents Responsive To Plaintiffs' Requests .................29

         a.   Mental Health Issues Are Within The Scope Of
This Litigation ........................................................29

            (1)   Mental Health Care Issues Have Been
Encompassed in this Litigation From Its
Inception ..................................................29

            (2)   A Preliminary Investigation Has
Demonstrated How Defendants'
Violations of the Orders and Stipulations
Are Adversely Affecting Inmates With
Mental Health Issues ............................34

            (3)   The Document Requests Seek Materials
Relating To the Overcrowding and
Mental Health Issues Discovered By the
Preliminary Investigation ....................36

         b.   Plaintiffs' Discovery Is Not Precluded.......................36

            (1)   Defendants Have Failed to Meet Their
Burden Of Proving Preclusion ...........................38

            (2)   There Is No Claim Preclusion Where, As
Here, Different Operational Facts Based
On Continuous Acts Exist................................39

            (3)   There Is No Claim Preclusion Where, As
Here, The Claims Are Distinct.........................41

# TABLE OF CONTENTS
(continued)

Page

(4)    There Is No Issue Preclusion Here Due To The Absence of Due Process ........................... 42

(5)    The Issue Preclusion Standard Is Not Met Here .......................................................... 44

(6)    There Is No Claim or Issue Preclusion Where The Classes Are Distinct ..................... 48

  c.   Plaintiffs' Discovery Is Neither Overly Broad Nor Burdensome .......................................... 49

  d.   Plaintiffs' Discovery Is Relevant ............................... 53

  e.   HIPAA Permits The Disclosure Of Protected Information In Response To Discovery Requests ......................................................... 54

  f.   Privacy Rights Of Third Parties May Be Protected Adequately Through Protective Orders And/Or Document Redaction ........................ 56

  g.   Defendants' Claims Of Privilege Or Confidentiality With Respect To the Department of Justice Reports Are Without Merit; Nor Can Privilege Be Used As Both Sword And Shield ....................................................... 59

  h.   Defendants' Assertion Of The "Official Information Privilege" And Concerns Over Security Are Unwarranted Or Can Be Appropriately Addressed Through The Issuance Of A Protective Order ................................. 62

  i.   Defendants' Privilege Log Is Inadequate ................. 65

B.   Defendants' Contentions And Points And Authorities ................. 66

  1.   Plaintiffs' Portions Of The Joint Discovery Stipulation Fail To Comply With The Requirements Of Local Rule 37 ........................................................ 66

  2.   Threshold Defects Bar Any Entitlement To Discovery Without Even Reaching Whether Medical And Mental Health Issues Are Part Of This Action ................... 68

TABLE OF CONTENTS
(continued)

Page

a.   Despite Plaintiffs' Representations To The
     Contrary, The Court's Orders Reopening
     Discovery Does Not Address The Scope Of The
     Judgment Or Whether Medical And Mental
     Health Treatment In County Jail Are A Proper
     Subject Of Discovery ....................................................68

b.   Plaintiffs' Portions Do Not Demonstrate
     Substantial Non- Compliance With Any Term
     Of The Judgment ..........................................................69

3.   The Constitutionality Of The Medical And Mental
     Health Care Provided To Inmates In County Jail Is
     Not Part Of This Case....................................................72

a.   Law Regarding Judgments And Pretrial
     Conference Orders........................................................72

b.   None Of The Documents Plaintiffs Reference
     Include Any Claims Or Issues Regarding The
     Constitutionality Of Medical Or Mental Health
     Treatment In County Jail ..............................................73

c.   Other Relevant Pre And Post Trial Documents
     Similarly Include No References To The
     Constitutionality Of The Medical And Mental
     Health Care In County Jail............................................76

d.   The Judgment Includes No Orders Related To
     Medical Or Mental Health Care ...................................77

e.   Medical / Mental Health Treatment Issues
     Were Abandoned In This Case And Addressed
     In ACLU v ....................................................................78

f.   This Motion Is An Improper Attempt To
     Modify The Terms Of The Judgment...........................78

g.   Conclusion Regarding Whether Medical And
     Mental Health Treatment Are Part Of This
     Action ...........................................................................79

4.   Plaintiffs' Are Barred From Arguing That The Jails
     Are Overcrowded Based On The Law Of The Case ..........79

# TABLE OF CONTENTS
### (continued)

Page

5.   In Addition To The Defects Briefed Above, Plaintiffs'
     Motion Should Still Be Denied Based On Defendants'
     Objections To The Subject Discovery ...................................81

     a.   Given Plaintiffs' Multiple Attempts To Narrow
          The Scope Of The Original Requests And
          Because Of Plaintiffs' Failure To Include Any
          Proposed Resolution, Defendants Are Unclear
          As To What Documents Plaintiffs Actually Seek .....82

     b.   The Subject Requests Fail To Designate The
          Documents  Sought With Reasonable
          Particularity ................................................................82

     c.   Documents Responsive To The Subject
          Requests Are Protected By From Disclosure By
          HIPAA..........................................................................85

     d.   Plaintiffs' Discovery Is Precluded By Prior
          Class Action Litigation In This District
          Addressing The Constitutionality Of The
          Medical Care System in County jail ..........................87

     e.   Mental Health Care In The Los Angeles County
          Jail System Is Already The Subject Of
          Monitoring By The Department Justice And
          Reports Associated Therewith Are Confidential......92

     f.   Documents Responsive To The Subject
          Requests Are Protected By The Official
          Information Privilege .................................................93

     g.   The Subject Requests Are Overbroad,
          Burdensome, And Would Be Prohibitively
          Costly To Respond To As Phrased..............................97

     h.   Privacy Rights Of Inmates And Third Parties .......100

6.   Proposed Resolution ...........................................................102

7.   Conclusion...........................................................................102

Joint Stipulation Regarding Plaintiffs' Motion To Compel Responses
To First Set Of Requests For Production Of Documents

1    Pursuant to Rule 37-2 of the Local Rules of this Court, Plaintiffs Dennis

2    Rutherford, et al. ("Plaintiffs") and Defendants Leroy Baca, et al. ("Defendants")

3    respectfully submit this Joint Stipulation Regarding Plaintiffs' Motion to Compel

4    Responses to First Set of Requests for Production of Documents (the "Document

5    Requests").

6    **I.       INTRODUCTORY STATEMENTS**

7    **A.     Plaintiffs' Introductory Statement**

8    Despite this Court's Order granting Plaintiffs' Motion to Reopen Discovery

9    (Docket No. 192), Defendants refuse to produce responsive documents to requests

10   Plaintiffs propounded eleven months ago.  Defendants have stonewalled at every

11   step in the meet and confer process, from failing to provide substantive support for

12   their objections, to delaying responding to written correspondence, to ignoring

13   Plaintiffs' good faith efforts to address Defendants' concerns and narrow the

14   discovery.  Indeed, Defendants continue to refuse to accept the fact that mental

15   health issues are within the scope of this litigation, and, as such, have refused to

16   produce anything more than 26 pages of documents in response to the Document

17   Requests.

18   As described in section III.A.2 below, Defendants should be compelled to

19   produce responsive documents for a variety of reasons: mental health issues are

20   within the scope of *Rutherford*; this discovery is not precluded; this discovery is

21   relevant and is not overly broad or burdensome; HIPAA allows for the production

22   of protected health documents in response to discovery requests; Defendants'

23   privacy and security concerns may be addressed through a protective order and

24   redactions; privilege cannot be asserted as both sword and shield; the official

25   information privilege neither applies nor is that standard met here; and the

26   privilege log Defendants provided is inadequate.  Plaintiffs thus respectfully

27   request that this Court grant their motion to compel without delay.

28

A/73456833.2

1

## B.   Defendants' Introductory Statement

In this Motion, Plaintiffs seek the production of a huge volume of records related to the provision of mental health treatment in the Los Angeles County jail system ("County jail").  The subject discovery requests ("the subject requests") seek an extremely broad and equally sensitive range of documents including, without limitation, inmate's medical records, autopsy reports, audit reports regarding the health care system in County jail, and information contained in mental health professionals' personnel files.  Aside from the application of any particular objection to the subject requests, this Motion should be denied in its entirety for many reasons.  As a preliminary matter, this Motion should be denied because Plaintiffs rest their purported entitlement to responsive records on two flawed assumptions.  First, Plaintiffs contend that the provision of mental health treatment is part of this action and has been since its inception.  Therefore, Plaintiffs contend that medical and mental health treatment are within the proper scope of discovery.  **In fact, since at least March, 1979, medical treatment issues raised in the pleadings in this matter were abandoned in this case and addressed by the ACLU Foundation of Southern California ("ACLU") in** *ACLU et al. v. Pitchess et al.*, **LASC Case No. C 275653.**[1]  This fact explains why, despite references to seeking licensure for the County jail health care system and discussions between the parties, the Judgment does not contain any orders or terms regarding medical or mental health care.  This same fact holds true for relevant post trial documents such as Plaintiffs' Post Trial Brief and the Court's Memorandums of Decision as well as the Pretrial Conference Order.  The lack of

---

[1] Defendants are in the process of locating and obtaining any available Court files from this action and at this time, Defendants only have limited documents from this case (*see*, Declaration of Justin W. Clark ["Clark Decl."], ¶7 ; Exhibit "6"); however, the documents Defendants have make it abundantly clear that at a very early stage of this litigation, the parties elected to bifurcate medical and non-medical issues.

1   any reference to medical or mental health treatment issues in these documents is

2   telling.  Quite simply, there has never been any adjudication (or discovery) of

3   issues related to medical or mental health treatment in this case because it was

4   abandoned in this case and addressed in *ACLU v. Pitchess*.  Because of this fact,

5   Plaintiffs are not entitled to take discovery on medical and mental health issues in

6   what would amount to a second bite at the apple.

7          While the parties may have had discussions regarding medical and mental

8   health treatment during the three decades since the Court's Judgment (in addition

9   to many other topics), despite Plaintiffs' contentions to the contrary, it is very clear

10  that these discussion were largely in the context of providing the Court with

11  updates regarding the status of *ACLU v. Pitchess* and efforts to obtain state

12  licensure for the jails as a health care provider.  Indeed, documents referenced by

13  Plaintiffs in support of their contentions contain only the most bare references to

14  medical issues (like transportation to County hospitals) and in most cases, such

15  references (such as the ones in the 1992 Joint Status Report – Plaintiffs' Request

16  for Judicial Notice ["Plaintiffs' RJN"]) directly reference *ACLU v. Pitchess* and the

17  state licensure issue.  Providing the Court with updates regarding bifurcated issues

18  abandoned from this action most certainly does not create an entitlement to

19  discovery on such issues, yet this is exactly what Plaintiffs argue.  At most, limited

20  issues regarding state licensure were involved; however, that does not in any way

21  equate to the adjudication of the constitutionality of the medical and mental care

22  provided to inmates nor do such updates provide Plaintiffs with a spring board

23  toward discovery.

24         In addition to the fact that medical and mental health treatment are not part

25  of this action, as a fallback position, Plaintiffs argue that the County jail system is

26  "overcrowded".  Plaintiffs contend that mental health treatment suffers due to

27  alleged overcrowded conditions and that this fact entitles them to discovery.  The

28  problem with this argument is that, by Plaintiffs own agreements, the County jail

A/73456833.2                                     3

1    system is not overcrowded and there is not one shred of evidence before the Court

2    which proves otherwise.  Further, based on stipulated agreements, Plaintiffs are

3    barred by the law of the case from arguing that the jails are overcrowded.  Indeed,

4    as set forth in greater detail below, while the population of the County jail system

5    remains significant at just under 16,000 inmates, this population is historically low

6    and well below the 25,599 total population cap that was agreed to by the parties

7    and approved by the Court.  (*See*, Exhibit 4, 9:1-2 – referencing jail population

8    caps for each County jail facility.)

9          Even ignoring the fundamental defects with Plaintiffs' Motion set forth

10    above and in greater detail herein, this Motion should still be denied.  First,

11    because Plaintiffs cannot cite any part of the Judgment regarding mental health

12    treatment, with respect to the subject discovery requests, it is impossible for

13    Plaintiffs to show any substantial non-compliance with the Judgment which is a

14    prerequisite for post-judgment discovery under controlling Ninth Circuit authority.

15    Further, based on prior class action adjudications in this District regarding the

16    constitutionality of the health care system in County jail, Plaintiffs are collaterally

17    estopped from re-litigating these issues in this action.  In addition, the subject

18    Requests are objectionable for many other reasons including, without limitation,

19    that they fail to designate the documents sought with reasonable particularly, they

20    are overbroad, unduly burdensome, and would be prohibitively costly to respond to

21    and in some cases, the subject requests seek documents protected from disclosure

22    by various privileges.

23          As set forth below, Plaintiffs' Motion should be denied and the Court should

24    not order any document production whatsoever.

25    **II.   DISPUTED DISCOVERY REQUESTS**

26          The issues in dispute addressed by this Joint Stipulation concern 27

27    Requests for Production of Documents ("RFPs") propounded by Plaintiffs to

28    Defendants on September 23, 2009, as narrowed during the meet and confer

A/73456833.2                                    4

1    process (and for purposes of this motion to compel) in Plaintiffs' meet and confer

2    correspondence dated May 24, 2010.  Below are Plaintiffs' initial RFPs, followed

3    by Defendants' initial, substantive December 9, 2009 responses, followed by

4    Plaintiffs' many narrowed substantive RFPs at issue.[2]

5    **PLAINTIFFS' RFP NO. 1:**

6            All policies, procedures, regulations, guidelines, manuals, directives, post

7    orders, forms, and other documents concerning mental health care at the Jail,

8    including, but not limited to:

9    • Intake screening;

10   • Initial mental health screening;

11   • Triage and referrals;

12   • access to mental health care;

13   • staffing;

14   • treatment programs, including outpatient treatment, crisis stabilization

15        units, intermediate care housing units, and inpatient psychiatric

16        hospitalization;

17   • special issues related to mental health services provided to inmates in

18        locked down housing units such as disciplinary segregation (e.g., mental

19        health screening upon admission, regular mental health rounds, exclusion

20        from such housing when clinically appropriate, etc.);

21   • informed consent and the right to refuse treatment;

22   • mental health rounds;

23   • co-pays;

24   _____

25   [2]  Plaintiffs' received no response to the narrowed requests provided in their May
     24 letter beyond a non-substantive June 4 letter from Defendants indicating an
26   "update" would be provided to Plaintiffs once Defendants' counsel had a
     "reasonable opportunity to confer with relevant County personnel."  Declaration of
27   Jennifer B. MikoLevine ("MikoLevine Decl.") at ¶ 21; Exh. I.  Defendants have
     yet to provide an update in the two months following their June 4 letter.

28

- use of restraints or seclusion;
- dispensing of psychotropic medication;
- "Keep-on-person" medications for mental health patients;
- Involuntary medication;
- Involuntary psychiatric hospitalization;
- Housing and treatment of prisoners with mental health or developmental issues;
- Management of suicidal inmates, Transfers of mentally ill prisoners to hospitals or other mental health facilities;
- Quality improvement;
- training of correctional staff concerning mental health issues and training of mental health staff regarding correctional and security issues, and
- Discharge planning.

## DEFENDANTS' RESPONSE TO RFP NO. 1:

Defendants object to this Request on the grounds that it seeks information that is outside the scope of the Judgment. The terms of the Judgment do not expressly or implicitly address any issues related to the provision of mental health treatment in the Los Angeles County jail ("LACJ") system. Whether or not issues regarding mental health were part of the pleadings or briefed to the Court during the course the proceedings (either pre or post-judgment) is of no consequence. *See, Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994)(judgments are self-contained documents, stating "who has won and what relief has been awarded"); *American Nat'l Bank & Trust Co. of Chicago v. Secretary of HUD of Washington, D.C.*, 946 F.2d 1286, 1289 (7th Cir. 1991); *Claybrook Drilling Co. v. Divanco, Inc.*, 336 F.2d 697 (10th Cir.1964)(the final judgment in a case should be complete and self-contained); Charles Alan Wright & Arthur R. Miller, 11 *Federal Practice and Procedure* § 2785 at 15-16 (1973); *Reytblatt v. Denton*, 812 F.2d 1042, 1043 (7th Cir.1987)(the purpose of the separate judgment required by

A/73456833.2

6

1   Fed.R.Civ.P. 58 is to let the parties (and the appellate court) know exactly what has

2   been decided and when); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th

3   Cir. 1993)(claims asserted in the pleadings but omitted in the pretrial order cannot

4   be raised at trial and accordingly, cannot be incorporated into a judgment); *Youren*

5   *v. Tintic School Dist.* 343 F3d 1296, 1305 (10th Cir. 2003)(statute of limitations

6   defense, raised in answer, waived by omission from pretrial order); *In re Hunt*, 238

7   F.3d 1098, 1101-1102 (9th Cir. 2000)(if an issue is included in the pretrial order, it

8   can be presented at trial even if not previously pled).  The terms of the Judgment

9   are very clear and they do not impose any affirmative objections on Defendant.

10          Post appeal, and despite any suggestion to the contrary, the only remaining

11   orders in the Judgment address: 1) beds; 2) visitation by children; 3) outdoor

12   recreation; 4) indoor recreation; 5) telephones; 6) cell searches; 7) time for meals;

13   and 8) change of clothing.  *See, Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227

14   (1984); *Rutherford v. Pitchess*, 710 F.2d 572 (9th Cir. 1983); *see also*, Exhibit "A"

15   - Judgment.)  Accordingly, this Request, which has nothing to do with any of the

16   above orders, seeks documents that are beyond the scope of the Judgment and the

17   Request cannot be characterized as seeking information necessary to show

18   substantial non-compliance with any of the remaining terms of the Judgment.  For

19   identical reasons, this Request seeks information that is irrelevant to any claim or

20   defense in this action; is irrelevant to the subject matter of this action as a whole;

21   and, is not reasonably calculated to lead to the discovery of admissible evidence.

22   *See*, FRCP Rule 26(b)(1).

23          Defendant further objects to this Request because, to the extent these

24   Requests seek information regarding the provision of mental health care in the

25   LACJ system, such issues have already been addressed in this District in *Juan*

26   *Porras et al v. Los Angeles County*, United States District Court Case No.  CV 04-

27   01229 RGK (RNB)(County of Los Angeles granted defense judgment against

28   certified class action claims for injunctive relief based on allegations of systematic

A/73456833.2                                    7

1    inadequacy of medical and mental health care for inmates). This decision was just

2    recently the basis for the Ninth Circuit to dismiss a challenge to the adequacy of

3    the mental health care in the LACJ system. *See, Leandry v. County of Los Angeles*,

4    2009 WL 3748147, *1 (9th Cir. 2009) (applying recent authority holding that the

5    County of Los Angeles did not have an unconstitutional pattern or practice of

6    deliberate indifference to inmates' serious medical or mental health needs).

7           Defendant further objects to this Request as vague and ambiguous as to

8    "other documents concerning mental health care at the Jail" as this language

9    essentially requires the production of every document or record that is even

10   remotely related to the provision of mental health treatment in the LACJ system.

11   Defendant further objects this Request as it fails to specify with reasonable

12   particularity the documents requested.

13          Defendant further objects to this Request as overly broad and unduly

14   burdensome. Responding to this Request alone (and particularly, responding to

15   these Requests as a whole), would require the expenditure of a tremendous amount

16   of scarce public resources. This Request seeks documents (including policies and

17   procedures) for a huge array of subjects and the Request includes no time

18   limitation, no facility limitation, nor is it limited to class members. Responding to

19   this Request and Plaintiffs' additional requests below would require the production

20   of at least 100,000 pages of records and at least $50,000 in costs to the Los

21   Angeles County Sheriff's Department alone. This estimate does not include any

22   necessary attorney's fees which would be incurred prior to any production to

23   counsel for Plaintiffs. In addition, this Request arguably seeks the complete

24   medical/ mental health file for every inmate receiving mental health care in LACJ

25   as well as a huge volume of other records. Any such records are subject to the

26   restrictions of the Health Insurance Portability and Accountability Act of 1996

27   ("HIPAA").

28

Defendant further objects to this Request to the extent it seeks documents protected from disclosure by the work product doctrine, attorney client privilege, and official information privilege.  Defendant asserts these privileges because the language of the Request is so broad that it is virtually impossible to determine what documents may or may not be responsive and as phrased, certain records may be responsive that would be protected from disclosure by the above-referenced privileges.

Defendant further objects to this Request due to the fact that it seeks information regarding the provision of mental health care in the LACJ system (and records related thereto) which is currently the subject of a privileged and confidential investigation by the United States Department of Justice ("DOJ") pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §1997a et seq.  Other than information publically available at http://www.justice.gov/crt/split/cripa.php, information regarding DOJ's investigations or the ongoing monitoring of mental health care in the LACJ system is confidential.

**PLAINTIFFS' NARROWED RFP NO. 1:**

Policies, procedures, regulations, guidelines, manuals, post orders, directives, and forms for Men's Central Jail ("MCJ"), Twin Towers ("TT"), and the Inmate Reception Center ("IRC") regarding mental health care, including the following:

- initial mental health screening;
- triage and referrals;
- mental health staffing;
- special issues related to mental health services provided to inmates in locked down housing units such as disciplinary segregation (e.g., mental health screening upon admission, regular mental health rounds, exclusion from such housing when clinically appropriate, etc.);

A/73456833.2

9

- informed consent and the right to refuse treatment;
- co-pays;
- dispensing of psychotropic medication;
- "keep-on-person" medications for mental health patients;
- involuntary medication;
- housing and treatment of prisoners with mental health and developmental issues;
- policies and procedures regarding access to mental health care;
- policies and procedures, post orders, and training materials regarding the use of restraints or seclusion;
- policies and procedures and post orders regarding involuntary psychiatric hospitalization;
- policies and procedures and post orders regarding management of suicidal inmates, and transfers of mentally ill prisoners to hospitals or other mental health facilities; and
- discharge planning policies and procedures, including those from the Community Transition Unit.
- Health screening policy and form;
- Documents describing all mental health programs offered at MCJ, attendance lists for all mental health programs and classes over the past ninety days at both MCJ and TT, a description of each of these programs/classes, and all materials that were distributed to prisoners who attended;
- Rounds by mental health staff/JMET, likely documented in unit logs, on each segregation unit at MCJ over the past ninety days;
- Quality improvement programs descriptions, quality improvement studies, and quality improvement meeting minutes for the past twelve months; and

1   • Handouts, attendance sheets, and descriptions of classes of pre-service

2   and in-service mental health trainings received by all staff and TT

3   custody staff over the past six months.

4   • A list of all prisoners identified in response to RFPs 4 and 5, below, who

5   were discharged from MCJ or TT over the past ninety days.

6   **PLAINTIFFS' RFP NO. 2:**

7   All policies, procedures, regulations, guidelines, manuals, post orders,

8   directives, forms, and other documents relating to Jail operations, including:

9   • use of force;

10  • recreation;

11  • classification;

12  • gang/security threat group activity;

13  • visitation;

14  • housing assignments;

15  • special needs treatment plans;

16  • programming;

17  • discipline;

18  • stripping prisoners of clothing;

19  • restraint and seclusion;

20  • cell and body searches;

21  • use of chemical agents to control prisoners;

22  • loss of privileges, (e.g., recreation time, shower, telephone calls);

23  • lockdown; and

24  • protective custody.

25  **DEFENDANTS' RESPONSE TO RFP NO. 2:**

26  Defendant hereby incorporates by reference the objections stated above in

27  response to Request for Production No. 1. Defendant further objects this Request

28  as it fails to specify with reasonable particularity the documents requested and is

A/73456833.2                                    11

1    dramatically overbroad.  This Request arguably requests all documents (including

2    policies and procedures) regarding "jail operations" without regard for security,

3    operational, or administrative concerns.  For these same reasons, the Request is

4    vague and ambiguous.

5        Without waiving the forgoing objections and subject thereto, Defendant

6    hereby responds as follows:

7        Defendant agrees to produce LASD policies and procedures regarding

8    visitation, recreation, telephones, and cell searches and any other policies and

9    procedures that Plaintiffs can demonstrate fall within the terms of the Judgment.

10   **PLAINTIFFS' NARROWED RFP NO. 2:**

11       Policies, procedures, regulations, guidelines, manuals, post orders,

12   directives, and forms for MCJ, TT, and the IRC regarding the following:

13   • use of force;

14   • indoor and outdoor recreation;

15   • housing assignments;

16   • special needs treatment plans;

17   • discipline;

18   • stripping prisoners of clothing;

19   • loss of privileges (e.g., recreation time, shower, telephone calls);

20   • lockdown;

21   • protective custody;

22   • policies and procedures regarding classification;

23   • policies and procedures for MCJ, TT, and the IRC regarding visitation,

24       including movement to visits and distribution of visitation passes;

25   • policies and procedures, post orders, and training materials for MCJ, TT,

26       and the IRC regarding the use of restraints or seclusion; and

27   • policies and procedures, post orders, and training materials for MCJ, TT,

28       and the IRC related to the use of chemical agents to control prisoners and

A/73456833.2                                    12

1    logs documenting all uses of chemical agents to control prisoners over

2    the past six months.

3    Documents describing programming, including all programs offered to MCJ

4    and TT prisoners in the past ninety days, descriptions of all programs offered to

5    MCJ prisoners housed in segregation in the past ninety days, attendance sheets for

6    all programs offered to MCJ prisoners over the past ninety days, and recreations

7    log from MCJ for the past thirty days.

8    **PLAINTIFFS' RFP NO. 3:**

9    Documents showing all prisoners who have attempted or committed suicide,

10   been on suicide watch status, been transferred or are awaiting transfer to a

11   psychiatric facility, or have been transferred to the Jail from a psychiatric facility

12   since September 1, 2007.

13   **DEFENDANTS' RESPONSE TO RFP NO. 3:**

14   Defendant hereby incorporates by reference the objections stated above in

15   response to Request for Production No. 1.

16   Defendant further objects to this Request based on the privacy rights of non-

17   class members and any third party.  In addition, this Request seeks information that

18   would be contained in an inmate's medical/ mental health records and accordingly,

19   such information/ records are subject to the disclosure restrictions of HIPAA.

20   **PLAINTIFFS' NARROWED RFP NO. 3:**

21   Documents, including lists, showing all prisoners who have attempted

22   suicide or been on suicide watch during the past six months; and documents,

23   including lists and psychological autopsies, showing all in-custody deaths and

24   suicides during the past three years.

25   **PLAINTIFFS' RFP NO. 4:**

26   Documents identifying prisoners who are currently on the mental health

27   caseload, their current housing location, their current medications (if any), the

28   dosage of those medications, and the frequency of administration.

A/73456833.2

13

1  **DEFENDANTS' RESPONSE TO RFP NO. 4:**

2      Defendant hereby incorporates by reference the objections stated above in

3  response to Request for Production Nos. 1 and 3.

4  **PLAINTIFFS' NARROWED RFP NO. 4:**

5      Documents, including a master list, identifying prisoners at MCJ and TT

6  who are currently on the mental health caseload, their current housing location,

7  their current medications (if any), the dosage of those medications and the

8  frequency of administration, and whether they are refusing treatment.

9  **PLAINTIFFS' RFP NO. 5:**

10      Documents showing all prisoners currently prescribed psychotropic

11  medications, the dosage of those medications, and the frequency of their

12  administration.

13  **DEFENDANTS' RESPONSE TO RFP NO. 5:**

14      Defendant hereby incorporates by reference the objections stated above in

15  response to Request for Production Nos. 1 and 3.

16      Defendant further objects to this Request as vague and ambiguous as it

17  includes no time limitation or time period for responsive records.

18  **PLAINTIFFS' RFP NO. 6:**

19      Documents relating to discharge planning and discharge medications for

20  prisoners who were released within the past six months.

21  **DEFENDANTS' RESPONSE TO RFP NO. 6:**

22      Defendant hereby incorporates by reference the objections stated above in

23  response to Request for Production Nos. 1 and 3.

24      Defendant further objects to this Request as vague and ambiguous as to

25  "discharge planning" and as to "documents". For similar reasons, this Request

26  fails to set forth with reasonable particularity the documents sought.

27

28

A/73456833.2

1  **PLAINTIFFS' NARROWED RFP NO. 6:**

2      Documents relating to discharge planning, including a log of prisoners the

3  discharge planner has assisted, and discharge medications, including discharge

4  medication logs, for prisoners who were released within the past ninety days from

5  MCJ, TT, and IRC.

6  **PLAINTIFFS' RFP NO. 7:**

7      Documents chronicling, reporting on, or otherwise concerning the

8  involuntary administration of psychotropic medications on prisoners since

9  September 1, 2008, including all documents identifying prisoners who have been

10  involuntarily medicated.

11  **DEFENDANTS' RESPONSE TO RFP NO. 7:**

12      Defendant hereby incorporates by reference the objections stated above in

13  response to Request for Production Nos. 1 and 3.

14  **PLAINTIFFS' NARROWED RFP NO. 7:**

15      Documents, including involuntary medication logs and court orders for

16  involuntary treatment, chronicling, reporting on, or otherwise concerning the

17  involuntary administration of psychotropic medications on prisoners over the past

18  six months, including documents identifying prisoners who have been

19  involuntarily medicated.

20  **PLAINTIFFS' RFP NO. 8:**

21      Documents that chronicle all episodes of the use of restraints, seclusion, or

22  isolated confinement of prisoners who either were on the mental health caseload,

23  or were receiving psychotropic medications, at the time of the episode(s).

24  **DEFENDANTS' RESPONSE TO RFP NO. 8:**

25      Defendant hereby incorporates by reference the objections stated above in

26  response to Request for Production Nos. 1 and 3.

27      Defendant further objects to this Request as vague and ambiguous as to

28  "episode" and as to "restraints, seclusion."

A/73456833.2

15

1 **PLAINTIFFS' NARROWED RFP NO. 8:**

2      Documents, including logs regarding therapeutic and custodial restraints, of

3 all episodes over the past six months of the use of restraints, seclusion, or isolated

4 confinement of prisoners who either were on the mental health caseload, or were

5 receiving psychotropic medications, at the time of the episode(s).

6 **PLAINTIFFS' RFP NO. 9:**

7      The current mental health staffing plan for the Jail, indicating which

8 positions are filled, and which are vacant.

9 **DEFENDANTS' RESPONSE TO RFP NO. 9:**

10      Defendant hereby incorporates by reference the objections stated above in

11 response to Request for Production No. 1.

12 **PLAINTIFFS' RFP NO. 10:**

13      The current health care organizational chart for the Jail.

14 **DEFENDANTS' RESPONSE TO RFP NO. 10:**

15      Defendant hereby incorporates by reference the objections stated above in

16 response to Request for Production Nos. 1.  Defendant further objects to this

17 Request as vague and ambiguous as to "current health care organizational chart."

18 Defendant further objects to this Request as it fails to with reasonable particularly

19 the documents requested.

20 **PLAINTIFFS' RFP NO. 11:**

21      The current housing schema for the Jail, indicating housing designations for

22 each unit by custody, including special needs (medical, mental health, protective

23 custody, administrative segregation, disciplinary segregation, maximum custody)

24 units.

25 **DEFENDANTS' RESPONSE TO RFP NO. 11:**

26      Defendant hereby incorporates by reference the objections stated above in

27 response to Request for Production Nos. 1 and 3.

28

A/73456833.2

16

1  Defendant further objects to this Request based on significant security

2  concerns associated with the release or dissemination of any information which

3  could be used to determine where inmates are housed in a particular custody

4  facility. For the safety of inmates and LASD personnel, records including such

5  information are not the proper subject of discovery as they have no relevance to

6  any claim or defense in this action pre or post-Judgment. *See*, FRCP Rule 26.

7  Defendant further objects to this Request as vague and ambiguous as it does

8  not specify from which "jail" records are sought. For this same reason, the

9  Request fails to specify with reasonably particularity which records are responsive.

10 **PLAINTIFFS' RFP NO. 12:**

11  The current classification instrument and any related instructions.

12 **DEFENDANTS' RESPONSE TO RFP NO. 12:**

13  Defendant hereby incorporates by reference the objections stated above in

14 response to Request for Production No. 1. Defendant further objects to this

15 Request as vague and ambiguous as to "current classification instrument."

16 **PLAINTIFFS' NARROWED RFP NO. 12:**

17  The current classification instrument, and any related instructions,

18 instructing staff on how to classify prisoners.

19 **PLAINTIFFS' RFP NO. 13:**

20  Documents identifying all mental health personnel working at the Jail, and

21 showing their job titles, job descriptions, qualifications (including resumes and

22 licensure documentation), and work schedules.

23 **DEFENDANTS' RESPONSE TO RFP NO. 13:**

24  Defendant hereby incorporates by reference the objections stated above in

25 response to Request for Production No. 1. Defendant further objects to this

26 Request based on the privacy rights of County employees and pursuant to the

27 official information privilege.

28

1  **PLAINTIFFS' NARROWED RFP NO. 13:**

2      Documents identifying all mental health personnel working at the Jail, and

3  showing their job titles, job descriptions, and qualifications (including resumes and

4  licensure documentation).

5  **PLAINTIFFS' RFP NO. 14:**

6      The health care staffing roster for the first week of each of the last three

7  months, showing the days, hours, and posting/location for all mental health

8  personnel.

9  **DEFENDANTS' RESPONSE TO RFP NO. 14:**

10     Defendant hereby incorporates by reference the objections stated above in

11 response to Request for Production Nos. 1, 3, and 13. Defendant further objects to

12 this Request as it seeks information that is irrelevant to any claim or defense in this

13 action; is irrelevant to the subject matter of this action as a whole; and, is not

14 reasonably calculated to lead to the discovery of admissible evidence. *See*, FRCP

15 Rule 26(b)(1).

16 **PLAINTIFFS' RFP NO. 15:**

17     All contracts with non-Jail personnel or outside facilities for the provision of

18 mental health services to prisoners.

19 **DEFENDANTS' RESPONSE TO RFP NO. 15:**

20     Defendant hereby incorporates by reference the objections stated above in

21 response to Request for Production No. 1.

22 **PLAINTIFFS' RFP NO. 16:**

23     Incident reports, disciplinary reports, and use of force reports for all

24 prisoners who have been on the mental health caseload, or have received

25 psychotropic medications, at any time during the past twelve months.

26 **DEFENDANTS' RESPONSE TO RFP NO. 16:**

27     Defendant hereby incorporates by reference the objections stated above in

28 response to Request for Production Nos. 1 and 3. Defendant further objects to this

A/73456833.2

18

1   Request based on the extreme burden it would place on the LASD as it would

2   require essentially a hand search of thousands of inmate records which would be

3   prohibitively costly.

4   **PLAINTIFFS' NARROWED RFP NO. 16:**

5        Use of force, incident report and disciplinary logs for all prisoners who have

6   been on the mental health caseload, or have received psychotropic medications, at

7   any time during the past six months.

8   **PLAINTIFFS' RFP NO. 17:**

9        Inmate grievances and complaints and the Jail's responses for the past three

10  months.

11  **DEFENDANTS' RESPONSE TO RFP NO. 17:**

12       Defendant hereby incorporates by reference the objections stated above in

13  response to Request for Production Nos. 1 and 16.  Defendant further objects to

14  this Request as overly broad as it is not limited to complaints associated with the

15  terms of the Judgment and to the extent if seeks documents regarding non-class

16  members.

17  **PLAINTIFFS' NARROWED RFP NO. 17:**

18       MCJ inmate grievances and complaints and the Jail's responses from the

19  past week.

20  **PLAINTIFFS' RFP NO. 18:**

21       Annual operational budgets and supporting documents submitted to the

22  County Commissioners for Jail operations for fiscal years 2008-2010, including

23  those for mental health care operations.

24  **DEFENDANTS' RESPONSE TO RFP NO. 18:**

25       Defendant hereby incorporates by reference the objections stated above in

26  response to Request for Production No. 1.  Defendant further objects to this

27  Request as vague and ambiguous and nonsensical because the County of Los

28  Angeles does not have "County Commissioners."

A/73456833.2                                    19

1    Without waiving the forgoing objections and subject thereto, Defendant

2  hereby responds as follows:

3    To the extent this Request seeks information regarding the County of Los

4  Angeles' budget, that information is publicly available at www.lacounty.gov.

5  **PLAINTIFFS' NARROWED RFP NO. 18:**

6    Annual operational budgets and supporting documents submitted to LASD

7  authorities for Jail operations for fiscal years 2008-2010, including those for

8  mental health care operations.

9  **PLAINTIFFS' RFP NO. 19:**

10    All quality assurance reviews, expert reports, staffing analyses, audits,

11  investigations, utilization reviews, needs assessments and other documents created

12  since January 2007 assessing mental health care, including, but not limited to, state

13  audits for Title 15 compliance, all reports and audits performed by or for any state

14  agency or the United States Department of Justice, and any documents sent to, or

15  report by the National Commission on Correctional Health Care (NCCHC) or the

16  Joint Commission on the Accreditation of Healthcare Organizations (JCAHO).

17  **DEFENDANTS' RESPONSE TO RFP NO. 19:**

18    Defendant hereby incorporates by reference the objections stated above in

19  response to Request for Production No. 1.

20  **PLAINTIFFS' RFP NO. 20:**

21    All autopsy reports, investigative records, and other documents related to the

22  deaths of all prisoners during the past three years.

23  **DEFENDANTS' RESPONSE TO RFP NO. 20:**

24    Defendant hereby incorporates by reference the objections stated above in

25  response to Request for Production Nos. 1, 3, and 13.  Defendant further objects to

26  this Request to the extent it seeks documents that are publically available such as

27  autopsy reports prepared by the Los Angele County Coroner's Office.

28

A/73456833.2

20

1    Defendant further objects to this Request to the extent it seeks documents

2    protected from disclosure by the attorney client privilege, work product doctrine,

3    or official information privilege.

4    **PLAINTIFFS' RFP NO. 21:**

5    Documents concerning all prisoners indentified in response to Requests 4

6    and 5 above who have been placed in administrative or disciplinary segregation in

7    the past six months, the reason for such placement, and the length of stay.

8    **DEFENDANTS' RESPONSE TO RFP NO. 21:**

9    Defendant hereby incorporates by reference the responses to Request for

10   Production Nos. 4 and 5 above.

11   **PLAINTIFFS' RFP NO. 22:**

12   Documents relating to the operation of the Jail's mental health housing

13   facilities at Twin Towers and other units, including, but not limited [to] screening

14   and admission, individual and group therapy and other programs, specialized

15   training for officers and staff members assigned to the unit, discharge from the unit

16   back to other Jail units or facilities, and discharge planning.

17   **DEFENDANTS' RESPONSE TO RFP NO. 22:**

18   Defendant hereby incorporates by reference the objections stated above in

19   response to Request for Production Nos. 1 and 3.  Defendants further object to this

20   Request as vague and ambiguous as to "documents", "units", "specialized

21   training", and "discharge planning."

22   **PLAINTIFFS' NARROWED RFP NO. 22:**

23   All policies, program descriptions and schedules, and procedures relating to

24   the operation of the Jail's mental health housing facilities at TT and other units,

25   including, but not limited to, those covering screening and admission, individual

26   and group therapy and other programs, specialized training for officers and staff

27   members assigned to the unit, discharge from the unit back to other Jail units or

28   facilities, and discharge planning.

A/73456833.2

21

1  **PLAINTIFFS' RFP NO. 23:**

2      Documents identifying all prisoners in mental health housing in Twin

3  Towers over the past six months; and documents showing their diagnoses,

4  medications, lengths of stay in mental health housing and the reasons for their

5  transfer or release from mental health housing.

6  **DEFENDANTS' RESPONSE TO RFP NO. 23:**

7      Defendant hereby incorporates by reference the objections stated above in

8  response to Request for Production Nos. 1 and 3.

9  **PLAINTIFFS' NARROWED RFP NO. 23:**

10     Logs or reports identifying all prisoners admitted to TT 1 from the IRC and

11 MCJ, and discharged from TT 1 to MCJ, over the past six months.

12 **PLAINTIFFS' RFP NO. 24:**

13     Documents identifying all prisoners who have been transferred to or from a

14 psychiatric facility in the past twelve months, including the date(s) of their transfer

15 or admission.

16 **DEFENDANTS' RESPONSE TO RFP NO. 24:**

17     Defendant hereby incorporates by reference the objections stated above in

18 response to Request for Production Nos. 1 and 3.

19 **PLAINTIFFS' NARROWED RFP NO. 24:**

20     Hospitalization logs, psychiatric hospitalization logs, and transportation

21 logs, identifying all prisoners who have been transferred to or from a psychiatric

22 facility from either the IRC or MCJ in the past six months, including the date(s) of

23 their transfer or admission.

24 **PLAINTIFFS' RFP NO. 25:**

25     Documents identifying all prisoners who are currently awaiting transfer to a

26 psychiatric facility.

27

28

A/73456833.2

1   **DEFENDANTS' RESPONSE TO RFP NO. 25:**

2       Defendant hereby incorporates by reference the objections stated above in

3   response to Request for Production Nos. 1 and 3.  Defendant further objects to this

4   Request as vague and ambiguous as to "currently" and as to "psychiatric facility."

5   **PLAINTIFFS' NARROWED RFP NO. 25:**

6       Current hospitalization waiting lists, identifying all prisoners who are

7   currently waiting transfer to a psychiatric facility.

8   **PLAINTIFFS' RFP NO. 26:**

9       The Data Files prepared by Los Angeles County in connection with the

10  County's contract with the Vera Institute.

11  **DEFENDANTS' RESPONSE TO RFP NO. 26:**

12      Defendant hereby incorporates by reference the objections stated above in

13  response to Request for Production No. 1.  Defendant further objects to this

14  Request as overly broad, unduly burdensome, and prohibitively costly due to the

15  fact that this Request seeks information regarding all of the approximately 20,000

16  inmates housed in the LACJ system on any given day.  There is no legitimate

17  reason for Plaintiffs to propound such a sweeping discovery request nor can such

18  information be characterized as relevant to any claim or defense in this action.

19  Defendant further objects to this Request to the extent it seeks information that

20  would violate the privacy rights of non-class members and third parties.  Defendant

21  further objects to this Request to the extent it implicates potential security threats

22  such as the dissemination of information regarding gang member classifications.

23  **PLAINTIFFS' RFP NO. 27:**

24      The following Data Files:

25      Data File #1: For the past calendar year, the data file of all inmates released

26  from the County Jail System, containing the following data elements for each

27  release:

28      • Inmate ID number, official name, DOB, gender, Race/Ethnicity

A/73456833.2

23

1  • Admission date and time, the Law Enforcement or Correctional Agency
2     admitting the inmate, the facility to which the inmate was admitted
3  • Admission Type (pretrial, sentenced, CDCR parolee)
4  • Legal Status at admission (pretrial release, probation, parole)
5  • Primary Charge/Offense at admission (if multiple offenses or charges list
6     up to 5 other charges or offenses)
7  • Custody level and factors at admission
8  • Release date and time; facility released from; type of release (bail, OR,
9     transfer to CDCR, sentenced)
10 • If sentenced to jail, date of sentence, sentence length
11 • Custody level and factors at release
12 • Early Release (Y/N); if released early, the amount of time granted
13 • Primary Charge/Offense at release (if multiple offenses or charges list up
14    to 5 other charges or offenses at release)
15 Data File #2: A snap-shot file of the current jail population containing the
16 following elements:
17 • Inmate's ID number, official name, DOB, Gender, Race or Ethnicity
18 • Admission date and time, the Law Enforcement/Correctional Agency
19    admitting the inmate, the facility to which inmate was admitted
20 • Admission Type (pretrial, sentenced, CDCR parolee)
21 • Legal Status at admission (pretrial release, probation, parole)
22 • Primary Charge/Offense at admission (if multiple offenses or charges list
23    up to 5 other charges or offenses)
24 • Custody level and factors at admission
25 • Current Custody level and factors
26 • Current facility location, housing unit and cell location
27 • Special management flags (e.g., PC, Gang, Juvenile, etc.)
28 • If sentenced to jail, sentence length

Joint Stipulation Regarding Plaintiffs' Motion To Compel Responses
To First Set Of Requests For Production Of Documents

1      • Current Primary Charge/Offense at admission (if multiple current

2         offenses or charges list up to 5 other charges or offenses)

3  **DEFENDANTS' RESPONSE TO RFP NO. 27:**

4         Defendant hereby incorporates by reference the objections stated above in

5  response to Request for Production No. 1.  Defendant further objects to this

6  Request as overly broad, unduly burdensome, and prohibitively costly due to the

7  fact that this Request seeks information regarding all of the approximately 20,000

8  inmates housed in the LACJ system on any given day.  There is no legitimate

9  reason for Plaintiffs to propound such a sweeping discovery request nor can such

10  information be characterized as relevant to any claim or defense in this action.

11  Defendant further objects to this Request to the extent it seeks information that

12  would violate the privacy rights of non-class members and third parties.  Defendant

13  further objects to this Request to the extent it implicates potential security threats

14  such as the dissemination of information regarding gang member classifications.

15  **III.  PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES**

16      **A.    Plaintiffs' Contentions And Points And Authorities**

17          **1.    Relevant Background**

18          On August 4, 2009, the Court granted Plaintiffs' Motion to Reopen

19  Discovery, noting that "[i]n reopening discovery, the Court limits that discovery, at

20  this stage, to the issues identified in Plaintiffs' motion--specifically, issues

21  regarding medical care and *mental health*--but the Court notes that the allegedly

22  systemic nature of these issues may make discovery inherently broad."  Docket

23  No. 192, 6:6-10 (emphasis added).

24          On September 22, 2009, the Court clarified that the August 4, 2009 Order

25  "did not address the appropriate scope of discovery.  In fact, the Order included an

26  express disclaimer advising the parties that it did not resolve whether *specific*

27  *documents* are discoverable or specific document disputes."  Docket No. 201, 1:27-

28  2:1 (emphasis added, internal citation omitted).

A/73456833.2                                          25

1    On September 23, 2009, Plaintiffs propounded their First Set of Requests for

2    Production of Documents on Defendants. MikoLevine Decl. at ¶ 2; Exh. A.

3    Defendants waited 45 days before informing Plaintiffs on November 6, 2009

4    that they had not responded to the RFPs because they were served electronically

5    and Defendants had not consented in writing to electronic service. MikoLevine

6    Decl. at ¶ 3. Plaintiffs re-served their discovery, by mail, on November 6, 2009.

7    MikoLevine Decl. at ¶ 4; Exh. A.

8    On December 9, 2009, Defendants responded to Plaintiffs' RFPs and refused

9    to produce responsive documents, with the exception of an agreement to produce

10   certain documents responsive to RFP No. 2, and a statement that documents

11   responsive to RFP Nos. 18 and 20 were "publicly available." Defendants,

12   however, did not produce any documents with their responses. MikoLevine Decl.,

13   Exh. B.

14   On February 16, 2010, pursuant to Local Rule 37-1, Plaintiffs sent

15   Defendants a 10-page letter initiating the meet and confer process and outlining

16   Plaintiffs' positions regarding the objections and issues Defendants' Responses

17   raised. That letter provided extensive authority and rationale as to why

18   Defendants' positions were not tenable. Defendants never issued a written

19   response to the February 16 letter. To date Plaintiffs have not received substantive

20   responses supported by caselaw to many of the issues raised in their initial letter.

21   MikoLevine Decl. at ¶¶ 9, 11; Exh. C.

22   On March 3, 2010, pursuant to Local Rule 37-1, the parties met and

23   conferred in person at Bingham McCutchen's offices. During that meeting, the

24   parties reached an impasse, as discussed in detail below, regarding the threshold

25   issues of whether mental health issues are beyond the scope of the *Rutherford*

26   litigation and whether *Porras v. County of Los Angeles*, Civ. No. 04-1229 RGK,

27   2006 U.S. Dist. LEXIS 96971 (C.D. Cal. Oct. 31, 2006) precludes Plaintiffs'

28   discovery. MikoLevine Decl. at ¶ 13. Defendants also raised their privacy/HIPAA

A/73456833.2

26

1   objections, which Plaintiffs stated would readily be addressed by an "attorneys

2   eyes only" protective order; Defendants, however, outright rejected that proposal.

3   *Id.* In response to Defendants' objection that the RFPs, including No. 17 (inmate

4   grievances and complaints), were too broad and burdensome, Plaintiffs agreed to

5   review the RFPs to see if there were particular requests where the documents

6   sought could be more specifically identified, and Plaintiffs subsequently narrowed

7   the majority of the requests. MikoLevine Decl. at ¶¶ 12, 18.

8        Despite Plaintiffs' counsel's best efforts, no agreements were reached at the

9   meeting, and on March 11, Plaintiffs sent Defendants meet and confer

10  correspondence memorializing the parties' positions at their in-person meet and

11  confer. MikoLevine Decl. at ¶¶ 14, 15; Exh. D. In that letter, Plaintiffs indicated

12  their willingness to narrow requests and asked Defendants to identify the requests

13  they believed were particularly burdensome and broad. Defendants responded in a

14  March 12 letter that stated that the burden of responding to the RFPs "would be

15  astronomical" and that "such burden obviates any responsibility for Defendants to

16  respond." However, Defendants' complaints regarding "undue burden" only

17  related to why the production of medical records and inmate complaints was

18  burdensome; Defendants gave no explanation to support their contention that the

19  production of any other requested documents or materials would cause any

20  hardship. Furthermore, the burdensome objection as to medical records is moot as

21  Plaintiffs have indicated they are not currently seeking medical records.

22  MikoLevine Decl. at ¶¶ 16, 18; Exhs. D, E, F. Defendants also did not provide any

23  other legitimate reason why they claim they are not obligated to produce the

24  requested documents.[3]

25  _____

26  [3]  Following Plaintiffs' repeated inquiries for the responsive and "publicly
    available" documents, Defendants did produce some responsive documents --
27  twenty-six pages -- on March 30, 2010, presumably in response to RFP Nos. 2, 18,
    and 20. Those twenty-six pages of documents are the only documents Defendants
28

(Footnote Continued on Next Page.)

1    Nonetheless, on April 6, Plaintiffs sent another letter to Defendants in which

2    they significantly narrowed more than half of the requests in an effort to

3    compromise and avoid time-consuming motion practice for both parties.

4    Defendants never responded to the April 6 letter. MikoLevine Decl. at ¶ 18;

5    Exh. F.

6        On May 24, Plaintiffs sent yet another letter as a final effort to meet and

7    confer. The requests were narrowed even further, and Plaintiffs outlined three

8    major areas (policies and procedures, inmate complaints, and data files) where

9    Defendants had claimed production would be burdensome but where Plaintiffs had

10   evidence to the contrary. On June 2, Defendants sent a non-substantive response.

11   MikoLevine Decl. at ¶¶ 19, 20; Exhs. G, H. On June 4, Defendants sent another

12   letter that stated, without explanation, that Plaintiffs' characterization of the

13   production requirements in the three areas was "inaccurate" and requested

14   Plaintiffs further delay their pursuit of this discovery. MikoLevine Decl. at ¶ 21;

15   Exh. I. On June 17, Plaintiffs sent another letter noting that Defendants' counsel

16   had agreed to confer with LASD regarding a possible compromise based on

17   Plaintiffs' proposal in the May 24 letter to narrow discovery, but that no response

18   had been forthcoming. MikoLevine Decl. at ¶ 22; Exh. J. Defendants have not

19   responded to that letter or the May 24 proposal. MikoLevine Decl. at ¶ 22.

20       In short, Defendants have met Plaintiffs' repeated attempts to meet and

21   confer in good faith to avoid motion practice with stonewalling and delay tactics.

22   Having received almost nothing in the way of production, Plaintiffs have no choice

23   but to move forward with a motion to compel on the document requests they

24   propounded on Defendants eleven months ago.

25   _____

     (Footnote Continued from Previous Page.)

26

27   have produced to date. Defendants also have not responded to Plaintiffs' inquiry
     regarding whether this represents the entire production in response to these
     Requests. MikoLevine Decl. at ¶ 17.

28

2. **Defendants Should Be Compelled To Produce Documents Responsive To Plaintiffs' Requests**

a. **Mental Health Issues Are Within The Scope Of This Litigation**

Incorporating by reference the objections in Defendants' Response to RFP No. 1, Defendants objected to the *entire* First Set of RFPs (Nos. 1-27) on the grounds that the Requests seek information outside the scope of the 1979 Judgment in this case because the "terms of the Judgment do not expressly or implicitly address any issues related to the provision of mental health treatment in the Los Angeles County Jail ('LACJ') system." Defendants' Response to RFP No. 1 (quoted in full above).[4]   Defendants' objection, however, is not well taken.

(1) **Mental Health Care Issues Have Been Encompassed in this Litigation From Its Inception.**

During the meet and confer process it became clear that the parties could not reach consensus on this threshold issue. MikoLevine Decl. at ¶ 13; Exhs. D, E, F. Defendants maintain that the Court's September 22, 2009 Order Clarifying Court's August 4, 2009 Order ("August 2009 Order") Reopening Discovery (Docket No. 201) ("September Order") states that information regarding mental health issues is not discoverable. MikoLevine Decl., Exh. E. Plaintiffs contend that, while the

---

[4]   Defendants have also made the unsupported assertion that, in order to be entitled to their discovery, Plaintiffs must "detail, as a threshold issue, the precise instances where Defendants are purportedly not in compliance with a specific order. A satisfactory response to this inquiry must include specific reference to the Judgment." Defendants' March 12, 2010 letter, attached to MikoLevine Decl., Exh. E. This is nonsense. The purpose of the discovery is to gather information about Defendants' non-compliance with the Judgment. Defendants cannot avoid producing documents on the ground that Plaintiffs do not have enough information about Defendants' violations of the Judgment. *See generally* Fed. R. Civ. P. 26(b)(1) (Each party generally has the right to discover "any nonprivileged matter that is relevant to any party's claim or defense."). In addition, post-judgment discovery is so routine in cases involving ongoing prospective relief, such as this one, that it is often noted without comment or further discussion in reported decisions. *See, e.g., Rodriguez v. IBP*, 243 F.3d 1221, 1230 (10th Cir. 2001); *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

1    September Order states that the August Order does not address the scope of

2    discovery, it also does not alter the Court's August 4, 2009 Order (Docket No. 192)

3    stating that mental health issues, in general, are within the scope of the *Rutherford*

4    litigation.  MikoLevine Decl., Exhs. C, D, F.  Despite the August and September

5    Orders, Defendants still contend that mental health issues are not within the scope

6    of the *Rutherford* litigation, and thus they do not need to produce any documents

7    related to those issues.

8        Health care--including mental health care--issues have been encompassed by

9    this litigation from its inception.  Plaintiffs' 1975 Amended Complaint includes

10    allegations regarding inmates' medical and mental health care.  *See* Plaintiffs'

11    December 31, 1975 Amended Complaint, ¶¶ 27-31, Plaintiffs' Request for Judicial

12    Notice ("Plaintiffs' RJN"), Exh. 1.  In addition, the 1977 Pretrial Conference Order

13    covered a large swath of issues, from beds to windows to inmates access to

14    medical care.  *See* 1977 Pretrial Conference Order, 46:19-28, 47:12-13, Plaintiffs'

15    RJN, Exh. 2.  A few years later, in 1985, the parties agreed to, and the Court

16    approved, an Order specifically contemplating the need for further discovery and

17    relief regarding mental health care.  Memorandum of Understanding ("MOU");

18    Court Approval Thereof, filed November 13, 1985 ("1985 MOU"), p. 5 ¶ 4:5-9,

19    Plaintiffs' RJN, Exh. 3.  The 1985 MOU described Plaintiffs' right to employ

20    experts--including a psychologist--to tour the jail with Los Angeles Sheriff

21    Department medical staff, analyze jail conditions, and draft reports.  *Id.*, ¶ 6:13-26.

22        Subsequently, in August 1992, the Court signed as an Order a Joint Status

23    Report the parties submitted ("1992 Order"), Plaintiffs' RJN, Exh. 4.  The 1992

24    Order outlined "the basic framework of existing court orders and modifications"

25    and included the "Health care system" at LACJ as one of eleven enumerated

26    categories.  The 1992 Order stated that "The Sheriff *shall* work towards . . .

27    *providing constitutionally adequate health care* to all inmates in his custody . . . ."

28    *Id.*, 10:1-4 (emphasis added).  The constitutional standard for health care

A/73456833.2                                    30

1   referenced in the 1992 Order requires Defendants to provide adequate care for

2   serious medical, mental health, and dental needs. *See Hoptowit v. Ray*, 682 F.2d

3   1237, 1252-53 (9th Cir. 1982); *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th

4   Cir. 1994) ("In accordance with the other courts of appeals that have examined this

5   issue, we now hold that the requirements for mental health care are the same as

6   those for physical health care needs."). The constitutional standard for a minimally

7   adequate prison mental health care delivery system includes the following

8   components, all of which are relevant to the discovery at issue here:

9           (1) a systematic program for screening and evaluating

10          inmates to identify those in need of mental health care;

11          (2) a treatment program that involves more than

12          segregation and close supervision of mentally ill inmates;

13          (3) employment of a sufficient number of trained mental

14          health professionals; (4) maintenance of accurate,

15          complete and confidential mental health treatment

16          records; (5) administration of psychotropic medication

17          only with appropriate supervision and periodic

18          evaluation; and (6) a basic program to identify, treat, and

19          supervise inmates at risk for suicide.

20  *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (E.D. Cal. 1995). This

21  1992 Order expressing the Sheriff's intent to work towards providing

22  constitutionally adequate mental health care "was signed as an Order in this case

23  that established the current status of all agreements and orders in this case."

24  August 4, 2009 Order Granting Plaintiffs' Motion to Reopen Discovery (Docket

25  No. 192) ("August 2009 Order"), n.1.

26          Subsequent to the 1992 Order, in a 2006 published order, Judge Pregerson

27  enjoined Defendants from holding inmates at the Inmate Reception Center

28  "without providing ongoing access to *adequate medical care*". *Rutherford v.*

A/73456833.2                              31

1    *Baca*, No. CV 75-04111 DPP, 2006 U.S. Dist. LEXIS 81431, at *13 (C.D. Cal.

2    Oct. 27, 2006) (emphasis added).  Moreover, the Court in its August 2009 Order

3    has already considered and rejected Defendants' current argument as "unavailing":

4               While mental health issues are not expressly listed in the

5               1979 Judgment, the subsequent (largely stipulated) orders

6               in this case have modified the obligations of the parties

7               and . . . *they contemplate and incorporate both medical*

8               *care and mental health issues.*  Those additional issues--

9               which are within the scope of the 1975 Amended

10              Complaint--have therefore become more than voluntary

11              'extras.'

12   August 2009 Order, 5:15-21 (emphasis added).  The Court then expressly

13   permitted this vein of discovery, stating that it was "satisfied that Plaintiffs have

14   provided a basis for the discovery of documents: they have provided evidence

15   regarding medical care and conditions that may plausibly fall below the

16   Constitutional minimum."  *Id.* at 5:23-6:2.[5]

17        As the Court has found, the orders in this case explicitly contemplate

18   remedial action to address deficiencies in mental health treatment.  Even if,

19   arguendo, they did not, the scope of *Rutherford* is not frozen at the time of the

20   1979 Judgment, and its expansion is entirely permissible under the Court's

21   inherent authority and Fed. R. Civ. P. 60(b), or stipulation of the parties.[6]  Thus,

22

23   [5]  As mentioned above, Plaintiffs recognize that the Court did not determine
     whether Plaintiffs are entitled to any particular document in the August Order.
24   August 2009 Order, 1:20-22; *see also* September 22, 2009 Order Clarifying
     Court's August 4, 2009 Order Reopening Discovery, 2:24.  However, the Court's
25   August 2009 Order did clearly recognize, at 3, that mental health issues have been
     part of the *Rutherford* litigation for decades prior to the initiation of the *Porras v.*
26   *County of Los Angeles* litigation, as discussed in detail in section III.A.2.a below.
     [6]  The Court has the inherent authority to modify the injunctive relief in this case
27   to account for changed circumstances and to effectuate the basic purpose of the
     original judgment.  *See Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 859 (9th Cir.
28                                                        (Footnote Continued on Next Page.)

A/73456833.2                              32

1   Defendants' reliance on cases in their Response to RFP No. 1 (incorporated by

2   reference in Defendants' responses to the other Document Requests) regarding the

3   completeness and self-containment of final judgments and pretrial orders is

4   misplaced in a case, like the one here, involving numerous post-judgment orders

5   and stipulations over the span of three decades.[7] Indeed, "[f]inal . . . does not

6   necessarily mean the last order possible to be made in a case." *Gillespie v. United*

7   *States Steel Corp.*, 379 U.S. 148, 152, 85 S. Ct. 308, 13 L. Ed. 2d 199 (1964) (cited

8   in *United States v. Washington*, 761 F.2d 1404, 1406 (9th Cir. 1985)).  Contrary to

9   Defendants' assertions, the 1979 Judgment does not control the scope of discovery.

10         In addition, mental health concerns go hand-in-hand with issues regarding

11   overcrowding, and overcrowding is indisputably a facet of *Rutherford.  See, e.g.,*

---

(Footnote Continued from Previous Page.)

2004) (Beezer, J., concurring) ("There is no dispute but that a sound judicial
discretion may call for the modification of the terms of an injunction decree if the
circumstances, whether of law or fact, obtaining at the time of its issuance have
changed, or new ones have since arisen.") (internal citation omitted). Fed. R. Civ.
P. 60(b) codifies this right to seek modification of existing relief based on changed
circumstances. That right is fully applicable to litigants in institutional reform
litigation. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 381, 112 S.
Ct. 748, 116 L. Ed. 2d 867 (1992). A three-judge panel is not required to modify
injunctive relief where a prisoner release order is not sought. *See* 18 U.S.C.
§3626(a)(3)(A); *Plata v. Schwarzenegger,* 2007 WL 2122657 (N.D. Cal. July, 23,
2007).
[7]   Defendants' Response to RFP No. 1 string-cited seven cases and one treatise in
support of their contention that the 1979 Judgment controls the scope of this
discovery. Their case law is inapposite here. Three of the cases and the treatise
deal with Fed. R. Civ. P. 58, the procedures for entering judgment, and the finality
of a court document for purposes of appeal. *See Otis v. City of Chicago*, 29 F.3d
1159, 1163 (7th Cir. 1994); *Am. Nat'l Bank & Trust Co. of Chicago v. Secy. of
HUD of Washington D.C.*, 946 F.2d 1286, 1289 (7th Cir. 1991); *Reytblatt v.
Denton*, 812 F.2d 1042, 1043 (7th Cir. 1987); Wright & Miller, 11 *Federal
Practice and Procedure* § 2785 at 15-16 (1973). Another three cases address the
effect of pretrial orders on the consideration of issues at trial and actually support
*Plaintiffs'* position: medical care issues were included in the 1977 Pretrial
Conference Order, and these cases stand for the proposition that pretrial orders are
liberally construed to include all issues embraced within their language. *See
Youren v. Tintic School Dist.*, 343 F.3d 1296, 1305 (10th Cir. 2003); *In re Hunt*,
238 F.3d 1098, 1101-02 (9th Cir. 2002); *Patterson v. Hughes Aircraft Co.*, 11 F.3d
948, 950 (9th Cir. 1993). Defendants' final case (*Claybrook Drilling Co. v.
Divanco, Inc.*, 336 F.2d 697 (10th Cir. 1964)) concerns the application of a section
in Ch. X of the Bankruptcy Code and has no relevance here whatsoever.

1   1985 MOU (defining and discussing overcrowding, p. 2-3).  The post-judgment

2   remedial orders described above were entered to alleviate overcrowding and its

3   attendant effects, including its effect on the treatment of mentally ill inmates.  Dr.

4   Terry Kupers, M.D., M.S.P., a nationally recognized expert in mental illness and

5   mental health treatment in prisons and jails, described the link between

6   overcrowding and mental health issues in the LACJ system in his June 27, 2008

7   Report (the "Kupers Report").  The Kupers Report concludes that overcrowding at

8   LACJ aggravates the systemic deficiencies in the jail's mental health program and

9   exacerbates the conditions of the seriously mentally ill prisoners housed there.  The

10  Kupers Report discusses how de-institutionalization has, since the 1980's,

11  transferred a population that once resided in psychiatric hospitals into prisons and

12  jails (pp. 2-3), how overcrowding both exacerbates and causes increased rates of

13  violence, psychiatric breakdown and suicide (pp. 6, 8), how overcrowding makes it

14  more difficult to perform mental health assessments (p. 9), how overcrowding

15  means there are more inmates in need of services than can be accommodated on

16  the mental health caseload (*id.*), and how overcrowding conditions that worsen

17  disorders also affect staff and make treatment problematic (p. 16).  Dr. Kupers

18  toured facilities in the LACJ in May 2008 and was "stunned by the degree of

19  overcrowding" he witnessed (p. 10).  This effect of overcrowding on mental health

20  can colloquially be referred to as the "madhouse effect."  Therefore, in addition to

21  mental health issues being within the scope of binding post-judgment orders and

22  stipulations, the interdependent and inextricably linked issues of mental health and

23  overcrowding mean discovery regarding mental health issues is entirely

24  appropriate and within the scope of this case.

25          (2)     **A Preliminary Investigation Has Demonstrated How Defendants' Violations of the Orders and Stipulations Are Adversely Affecting Inmates With Mental Health Issues.**

26

27

28

A/73456833.2                                    34

As Plaintiffs explained in their June 15, 2009 Motion to Reopen Discovery (Docket No. 159) and discussed immediately above, preliminary investigation has revealed the following:

- There is a high incidence of serious mental illness among inmates in MCJ, but only about half of those inmates receive treatment.  Kupers Report, pp. 5-6

- Due to the relative shortage in mental health treatment resources in the LACJ system, Defendants engage in a pattern of inappropriately down-grading diagnoses of mental illness, removing individuals with serious mental illness from mental health housing and treatment programs, and discharging them to general population.  Kupers Report, pp. 23-33, 44.

- Many of those inmates end up housed in MCJ where they face severe overcrowding, almost no mental health treatment, very little out-of-cell time "and in too many cases victimization by other prisoners and/or significant abuse at the hands of custody staff."  *Id.*

- Once in general population, many seriously mentally ill prisoners and detainees end up in disciplinary segregation, where the extra harsh conditions and isolation predictably exacerbates their psychiatric disorders and suicidality.  Kupers Report, pp. 33- 40.

Our preliminary investigation also provides a basis to conclude that:

- There is an unacceptably high incidence of custodial abuse at MCJ, disproportionately directed against the seriously mentally ill prisoners.  Kupers Report, pp. 40-43.

- Overcrowding in MCJ is so grossly excessive, the other conditions of confinement in there so harsh, and the denial of basic mental health care so extreme, as to create a toxic environment likely to cause

1    psychiatric breakdown even in individuals who do not have previous

2    symptoms of mental illness.  Kupers Report, p. 16.

3              (3)    **The Document Requests Seek Materials
                        Relating To the Overcrowding and Mental
4                       Health Issues Discovered By the Preliminary
                        Investigation.**
5

6          The RFPs seek materials that relate to issues of overcrowding and mental

7    health discovered by the preliminary investigation and set forth in Plaintiffs'

8    Motion to Reopen Discovery.  For example, RFP No. 4 seeks "Documents

9    identifying prisoners who are currently on the mental health caseload, their current

10   housing location, their current medications (if any), the dosage of those

11   medications and the frequency of their administration."  That request is relevant to

12   confirming whether there are substantial numbers of prisoners identified as having

13   mental illness who are housed in MCJ.  RFP No. 8, which seeks "documents that

14   chronicle all episodes of the use of restraints, seclusion, or isolated confinement of

15   prisoners who either were on the mental health caseload, or were receiving

16   psychotropic medications, at the time of the episode(s)" is relevant to confirming

17   the conclusion of the preliminary investigation that many seriously mentally ill

18   prisoners end up in disciplinary segregation.  Furthermore, Plaintiffs have

19   narrowed all requests to specifically focus on MCJ, Twin Towers, and the Inmate

20   Reception Center.  The request for this information will allow Plaintiffs to prove,

21   for example, that treatment in Twin Towers is far more comprehensive than in

22   MCJ, and that inmates who receive an appropriate level of care at Twin Towers are

23   inappropriately downgraded and transferred to MCJ, where they receive

24   inadequate treatment and suffer unnecessarily.

25              **b.    Plaintiffs' Discovery Is Not Precluded**

26         Incorporating by reference the objections in Defendants' Response to RFP

27   No. 1, Defendants objected to the *entire* First Set of RFPs (Nos. 1-27), to the extent

28   the 27 Requests seek information regarding the provision of mental health care in

A/73456833.2                                    36

1    the Los Angeles County Jail system, on the ground that such issues have already

2    been addressed in the Central District in *Porras v. County of Los Angeles*, No. 04-

3    1229 RGK, 2006 U.S. Dist. LEXIS 96971 (C.D. Cal. Oct. 31, 2006), and *Leandry*

4    *v. County of Los Angeles*, No. 08-55984, 2009 U.S. App. LEXIS 24704 (9th Cir.

5    Nov. 2, 2009).[8]

6         During the meet and confer process it became clear that the parties also

7    could not reach consensus on this threshold issue. *See* MikoLevine Decl. at ¶ 13;

8    Exhs. D, E, F. Plaintiffs outlined, in their February 16 letter to Defendants, five

9    separate arguments, supported by caselaw, as to why preclusion does not apply

10   here. *See* MikoLevine Decl., Exh. D. At the in-person meet and confer meeting

11   on March 3, when pressed as to why *Porras* precludes the discovery here,

12   Defendants responded that preclusion applies "because it does." MikoLevine

13   Decl. at ¶ 13. Rather than respond substantively to any of Plaintiffs' arguments,

14   and even though proving preclusion is clearly the burden of the party asserting it,

15   Defendants instead insisted *Plaintiffs* provide further support for their contentions.

16   *Id.* As of their March 12 letter, Defendants continued to place the onus of proving

17   preclusion on Plaintiffs, asserting that "[r]egarding preclusion, the law provides

18   that it is Plaintiffs' burden to demonstrate an entitlement to discovery."

19   MikoLevine Decl., Exh. E. Because the parties are at an impasse regarding the

20   supposedly preclusive effect of *Porras*, Plaintiffs brief the issue below.

21

22

23   [8]   The case of Edward Leandry, a *Porras* plaintiff whose later class action claim
24   the Ninth Circuit summarily affirmed was precluded on res judicata/claim
     preclusion grounds, is not discussed at length as there was no analysis in that case
25   beyond the holding. *See Leandry v. County of Los Angeles*, 2009 U.S. App.
     LEXIS 24704, at *2 ("The defendants' motion for summary judgment was granted
26   [in *Porras*], thereby precluding Leandry from making the same claims against the
     County in the present case."). Thus, both of these cases are collectively referred to
27   as "*Porras*" herein.

28

A/73456833.2                              37

1    As a preliminary matter, Plaintiffs note that Defendants have yet to fully

2    articulate a specific legal theory or introduce any facts regarding their preclusion

3    objection.  It is therefore unclear whether they are making a res judicata, (i.e.,

4    *claim* prelusion) argument, or a collateral estoppel (i.e., *issue* preclusion),

5    argument.[9]  Claim preclusion "treats a judgment, once rendered, as the full

6    measure of relief to be accorded between the same parties of the same claim or

7    cause of action." *Kaspar Wire Works, Inc. v. Lego Eng'g & Mach., Inc.*, 575 F.2d

8    530, 535 (5th Cir. 1978) (internal citation omitted).  It is a different concept from

9    issue preclusion, where "the judgment in the prior suit precludes relitigation of

10   issues actually litigated and necessary to the outcome of the first action." *Parklane*

11   *Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5, 99 S. Ct. 645, 58 L. Ed. 2d 552

12   (1979).  The two concepts are often confused.  *In re Super Van, In*c., 92 F.3d 366,

13   370 n.11 (5th Cir. 1996) ("[T]he terminology used in this area of the law often

14   breeds confusion.") (internal citation omitted).  Plaintiffs address both concepts

15   below.

16          **(1)    Defendants Have Failed to Meet Their Burden**
                     **Of Proving Preclusion**
17

18          As an initial matter, it is Defendants' burden to show *Porras* and *Leandry*

19   preclude this discovery, and their cursory mention of *Porras* is insufficient to meet

20   that burden.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050-51 (9th Cir.

21   2008) (finding party asserting issue preclusion failed to meet its burden and stating

22   "[t]he burden is on the party seeking to rely upon issue preclusion to prove each of

23   the elements have been met."); *Resolution Trust Corp. v. Keating*, 186 F.3d 1110,

24

25   [9]  It is also unclear whether preclusion arguments are even relevant at the
     discovery stage of this proceeding because, among other things, the information
26   gained from discovery may shape the exact contours of any motion Plaintiff may
     make.  Until it is clear the exact issues that Plaintiffs will be proceeding on, there
27   would be no point in the court issuing advisory opinions on whether issues are
     subject to issue preclusion.  Nonetheless, Plaintiffs brief the issues here.

28

A/73456833.2                                    38

1   1115-16 (9th Cir. 1999) (reversing grant of summary judgment due to lack of

2   preclusion); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 n.4 (9th

3   Cir. 1988) (denying res judicata to party for failure to meet its burden).

(2)   **There Is No Claim Preclusion Where, As Here,**
4         **Different Operational Facts Based On**
5         **Continuous Acts Exist**

6         Res judicata/claim preclusion is also inapplicable here as the operational

7   facts based on continuous acts in Rutherford occurred *after* the 2006 *Porras*

8   judgment and therefore did not even exist and could not have been sued upon in

9   that case. *See Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 (9th Cir. 2000),

10   *cert denied*, 532 U.S. 914 (2001).  In *Frank*, plaintiffs were a class comprised of all

11   current and future female flight attendants employed by United who were

12   challenging United's maximum weight requirements for flight attendants as a

13   violation of Title VII of the Civil Rights Act of 1964.[10]  The district court granted

14   summary judgment for United on all plaintiffs' Title VII class claims, holding that

15   any facial challenge to the 1980 weight policy was foreclosed by claim preclusion

16   resulting from an earlier case, *Air Line Pilots Ass'n Int'l ("APLA")*, a decision

17   resolving a facial challenge in favor of United to an earlier, 1977, version of the

18   weight policy.[11]  The court of appeals reversed, noting that "plaintiffs in this suit

19   assert claims based on alleged Title VII violations arising *after* 1980."[12]  The Ninth

20   Circuit held *APLA* could not preclude claims based on events occurring after the

21   date the *APLA* judgment was entered, declaring a blanket rule that "[a] claim

22   arising after the date of an earlier judgment is not barred [by claim preclusion],

23   even if it arises out of a continuing course of conduct that provided the basis for

24

25

---

26   [10] *Frank*, 216 F.3d at 848-49.

27   [11] *Id.* at 849.

28   [12] *Id.* at 851 (emphasis added).

1    [an] earlier claim."[13]  The approach taken by the Ninth Circuit in *Frank* is similar

2    to that taken by courts in other jurisdictions, as well as in Supreme Court

3    precedent.[14]  For example, in *Crowe et al. v. Leeke et al.*, 550 F.2d 184 (4th Cir.

4    1977), a prisoner was not precluded from litigating the constitutionality of

5    regulations governing the opening and inspection of legal mail by prison guards,

6    even though an earlier lawsuit had already determined the constitutionality of the

7    regulations, where the prisoner's action was based on the inspection of mail that

8    occurred *after* the earlier judgment: "[R]es judicata has very little applicability to a

9    fact situation involving a continuing series of acts, for generally each act gives rise

10   to a new cause of action."  *Crowe*, 550 F.2d at 187.

11          Applying such precedent to the current case, claims that the *Rutherford*

12   Plaintiffs are not receiving adequate mental health treatment are not barred by res

13   judicata, even if the provision of medical care in a penal institution is part of a

14   long, continuous act that began pre-*Porras*, because the facts giving rise to the

15   current claims in *Rutherford* took place after the *Porras* judgment, i.e., after 2006.

16   In other words, because this discovery is based on "fresh claims," it is not

17   precluded by the judgment in *Porras*.  In *Rutherford*, Plaintiffs contend that it is

18   unconstitutional to house inmates with severe mental illness in MCJ because, *in*

19   *toto*, the conditions of their confinement there—conditions which include, but are

20

21   _____

22   [13] *Id.*
     [14] *See, e.g., Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)

23   (allowing plaintiffs' antitrust claims to proceed despite a consent judgment entered
     into by the parties seven years earlier regarding "essentially the same course of

24   wrongful conduct") ("While the 1943 judgment precludes recovery on claims
     arising prior to its entry, it cannot be given the effect of extinguishing claims which

25   did not even then exist and which could not possibly have been sued upon in the
     previous case."); *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948) (holding, with

26   regards to tax litigation, that each tax year gives rise to a new cause of action)
     ("[A] judgment on the merits is res judicata as to any subsequent proceeding

27   involving the same claim and the same tax year," but not as to identical or similar
     claims relating to a different tax year).

28

1  not limited to, the "madhouse effect" and inadequate mental health treatment—

2  violate constitutional minimums.

3      Furthermore, changed circumstances present new operational facts post-

4  *Porras* that vitiate any preclusive effect the *Porras* court's determination that the

5  LACJ system of medical care for inmates is constitutionally adequate may have

6  had.  Since 2006, a number of events have occurred that arguably could have

7  changed the adequacy of medical and mental health treatment available in the

8  LACJ system.  These changes include budget cuts, staffing changes, and dramatic

9  shifts in how the inmate population is housed, including the closure of parts of

10  MCJ and other LACJ facilities.  These changes would inevitably affect the quality

11  of the mental health treatment available to inmates and could very well change the

12  calculus if a court considered the same issues as in *Porras* under the current factual

13  circumstances.  *See, e.g., Comm'r v. Sunnen*, 333 U.S. 591, 600, 68 S. Ct. 715, 92

14  L. Ed. 898 (1948) ("[W]here the situation is vitally altered between the time of the

15  first judgment and the second, the prior determination is not conclusive.") (internal

16  citations omitted).

17      Thus, not only are *Rutherford* Plaintiffs bringing claims based on post-

18  *Porras* consequences of post-*Porras* events, which prevents claim preclusion

19  under the *Frank* line of cases, but they are also presenting the Court with an

20  altogether different claim than that in *Porras*, one based on new theories and a

21  different set of operative facts.  Claim preclusion does not preclude this discovery.

22          (3)    **There Is No Claim Preclusion Where, As Here,**
                          **The Claims Are Distinct**
23

24      For a final judgment such as *Porras* to have a claim preclusive effect on

25  subsequent litigation, there must be an identity of claims in the two actions.  *Hells*

26  *Canyon Pres. Council v. U.S. Forest Servc.*, 403 F.3d 683, 686 (9th Cir. 2005).

27  Res judicata/claim preclusion thus does not apply here, where it is clear from the

28  face of the *Porras* and *Rutherford* complaints that distinct causes of actions have

A/73456833.2                                    41

1   been alleged. *Compare, e.g., Porras* Complaint at 29 (Plaintiffs' RJN, Exh. 5)

2   ("Defendants knowingly and intentionally denied and/or delayed Plaintiffs'

3   medical care and treatment...") *to Rutherford* Amended Complaint at 11,

4   (Plaintiffs' RJN, Exh. 1) ("Supervision of mentally disturbed prisoners is

5   inadequate, and little or no medical or psychological treatment is provided for

6   them."). The *Porras* Complaint alleges physical harm to plaintiffs as a result of

7   lack of adequate medical care for ailments and failure to provide plaintiffs with

8   necessary medication. *See Porras* Complaint at 29-30. *Porras* does not address

9   psychiatric services or the placement of mentally ill inmates in jail facilities. By

10  contrast, the *Rutherford* Complaint alleges lack of access to psychiatrists and

11  psychologists and the presence of mentally ill prisoners in the mainstream prison

12  population. *See Rutherford* Amended Complaint at 11; 18.

13      Even if, *arguendo*, it were the case that the complaints alleged similar

14  claims, which Plaintiffs do not concede, it is clear that at the very least one of

15  Plaintiffs' current claims was not addressed even remotely in *Porras*. That is a

16  claim regarding the "madhouse effect" Dr. Kupers has detailed, as described in

17  section III.A.2.a.(1) above, whereby overcrowding exacerbates if not causes

18  mental illness. Plaintiffs seek this discovery to further develop and shape this

19  claim, which clearly was not addressed in *Porras*. As the "madhouse effect" claim

20  encompasses all of the current discovery requests, and since it is a claim that was

21  not asserted in *Porras*, Plaintiffs' discovery is not precluded and should be

22  produced.

23      **(4)   There Is No Issue Preclusion Here Due To The**
             **Absence of Due Process**
24

25      As a preliminary matter, collateral estoppel/issue preclusion is an equitable

26  doctrine (*Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995))

27  that can only be applied where the party against whom it is asserted was afforded

28  due process. *See generally* 18 James Wm. Moore et al., Moore's Federal Practice

A/73456833.2

42

1   ¶ 1332.04 (3d ed. 1999).  Due process requires reasonable notice to interested

2   parties: "An elementary and fundamental requirement of due process in any

3   proceeding which is to be accorded finality is *notice reasonably calculated,* under

4   all the circumstances, *to apprise interested parties* of the pendency of the action

5   and afford them an opportunity to present their objections." *Mullane v. Cent.*

6   *Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)

7   (emphasis added).  Due process in the specific context of preclusion requires not

8   only reasonable notice and an opportunity to be heard, but also the right to a full

9   and fair opportunity to litigate the issue. *Blonder-Tongue Lab., Inc. v. Univ. of Ill.*

10  *Found.*, 402 U.S. 313, 317-20, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971); *Af-Cap*

11  *Inc.*, 475 F.3d at 1086.  Thus issue preclusion is inapplicable when the party

12  against whom it is asserted did not have a full and fair opportunity to litigate the

13  issue in the earlier case. *See Blonder-Tongue*, 402 U.S. at 329.

14          Defendant County of Los Angeles knew, or at the very least had notice and

15  can be charged with knowledge of, the medical and mental health issues

16  encompassed within *Rutherford* and the post-judgment orders.  The County, a

17  defendant in both the *Porras* and *Rutherford* class action suits, thus should have

18  notified *Rutherford* counsel, an interested party, of the *Porras* class certification so

19  that *Rutherford* counsel could have an opportunity to intervene pursuant to Fed. R.

20  Civ. P. 24 in *Porras*. *See Mullane*, 339 U.S. at 314.  As a result of the County's

21  failure to notify, *Rutherford* counsel was unable to intervene in *Porras*, and

22  *Rutherford* Plaintiffs were not afforded the opportunity to fully and fairly litigate

23  the issues at stake in *Porras*. *See Blonder-Tongue*, 402 U.S. at 317-20.  Plaintiffs

24  were thereby denied due process (*Mullane*, 339 U.S. at 314), and issue preclusion

25  is thus inapplicable and would be inequitable here. *See Blonder-Tongue*, 402 U.S.

26  at 329; *Copeland*, 47 F.3d at 1423.

27

28

1            **(5)      The Issue Preclusion Standard Is Not Met Here**

2         Even if there were no due process concerns barring the application of issue

3    preclusion here, the standard itself is not met:

4              To foreclose relitigation of an issue under collateral

5              estoppel: (1) the issue at stake must be *identical* to the

6              one alleged in the prior litigation; (2) the issue must have

7              been *actually litigated* in the prior litigation; and (3) the

8              determination of the issue in the prior litigation must

9              have been a *critical and necessary* part of the judgment

10             in the earlier action.

11   *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir. 1992)

12   (internal citation omitted) (emphasis added).  None of these prongs is met here.

13        In terms of the first prong, it is not sufficient that the issues in the prior and

14   subsequent litigation are similar--they must be *identical.  Shapley v. Nevada Bd. f*

15   *State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985), *per curiam*, (delay in

16   surgery issue underlying deliberate medical indifference claim in plaintiff's

17   subsequent action was not identical to any of the issues litigated in first action,

18   which involved plaintiff's transfer to a new unit, the denial of medication, and the

19   refusal of prison officials to feed him in his cell; collateral estoppel did not bar the

20   second action).  The issues and supporting evidence submitted in *Porras* are

21   distinct from the issues and information currently sought in the *Rutherford*

22   discovery.  Indeed, the absence of requisite identity of issues is just as striking, if

23   not more so, as it was in *Shapley*.

24        The *Porras* opinion[15] and the evidence described in that opinion[16] reveal that

25   the focus in *Porras* was on medical care generally, with apparently scant attention

26

27   [15] *See, e.g., Porras*, 2006 U.S. Dist. LEXIS 96971, at *2 ("Plaintiffs claim that

     Defendants . . . fail[ed] to provide adequate *medical care* for serious *medical*

28                                                        (Footnote Continued on Next Page.)

1   given to mental health care. The *Porras* Complaint *generally* alleges barriers to

2   medical, dental, and mental health; however, the *specific* allegations of the

3   complaint are exclusively related to medical health.[17] The *Porras* opinion itself

4   focuses solely on lack of access to adequate medical services for physical ailments,

5   with no discussion of mental health services.[18] No attention was given to mental

6   health care's relation to overcrowding and the "madhouse effect"--the focus of the

7   current *Rutherford* discovery. The evidence that the *Porras* plaintiffs presented to

8   the court in support of class certification exclusively focused on lack of access to

9   adequate medical services;[19] mental health-related evidence was presented only

---

(Footnote Continued from Previous Page.)

*conditions . . . .*"); at *3 ("The instant order certifies a class . . . who have sought or will seek *medical care* . . . ."); at *3 ("*Porras* suffered from necrosis in both legs, hepatitis C, partial paralysis below his hips, and other serious medical conditions" for which defendants denied and delayed necessary medical care); at *4 ("[Plaintiff] Grigsby suffered a recurrence of testicular atrophy resulting in extreme pain" for which he was refused prompt medical attention and adequate medication); at *5 n. 2 ("Plaintiffs offer the accounts of several inmates besides Porras and Grigsby alleging various facts of mistreatment and inadequate *medical care*."); at *11 ("the Court finds that, as a matter of law, Plaintiffs have failed to demonstrate that the *medical care system* operated by Defendants is constitutionally inadequate.") (all emphasis added).

[16] *See, e.g., Porras,* 2006 U.S. Dist. LEXIS 96971, at *9-11 (describing evidence offered by Plaintiffs: "declarations of eleven other inmates who, similar to Porras and Grigsby, claim in various ways to have been mistreated and deprived of *medical care*." (at *9); inmate complaint forms, the content of which remained "somewhat unknown" (at *9-10); court orders "pertaining to inmate *medical exams*" including dentist and eye examinations (at *10); LASD 2000 semiannual report regarding "the condition of *medical care* in Defendant's jails." (at *11); California Bureau of Corrections Audit Reports for years 1998-2004 "concerning the conditions of *medical care*." (at *11)) (all emphasis added).

[17] *See Porras* Complaint at 33 ("Defendants' heath care system is insufficient to address inmates' routine and emergency medical, dental and mental health care needs"); at 34 ("Defendants deny inmates reasonably speedy access to medical care; Defendants deny inmates treatment prescribed by physicians, nurses or medical staff; Defendants refuse to dress inmates and detainees' open wounds with clean bandages...").

[18] *See, e.g., Porras,* 2006 U.S. Dist. LEXIS 96971.

[19] Fourteen separate declarations in the *Porras* case deal exclusively with lack of access to medical treatment for various physical ailments and injuries. *See, e.g., Declaration of Juan Porras* at 2-5 (discussing lack of access to treatment for, *inter alia*, Plaintiff's broken rib and "drop foot" condition); *Declaration of Phillip Schweitzer* at 3-4 (discussing Plaintiff's lack of access to medical treatment for a

(Footnote Continued on Next Page.)

1   with reference to the Defendants' failure to provide previously-prescribed

2   necessary medication to ailing inmates, an essentially medical, rather than

3   psychological, concern.[20]   In fact, a *Porras* order establishes the class as consisting

4   of "present and future pretrial detainees and post-conviction inmates who have

5   sought or will seek *medical care* while they are or will be in Defendants' custody

6   in MCJ and Twin Towers facilities." *Porras,* Docket No. 105 (emphasis added),

7   Plaintiffs' RJN, Exh. 6. Accordingly, the *Porras* opinion virtually ignored what

8   little mental health-related evidence was presented, focusing exclusively on access

9   to medical care. Contrast the current *Rutherford* discovery, requesting, *inter alia,*

10   documents related to inmate suicides and deaths, discharge planning, the use of

11   restraints, seclusion, or isolated confinement, mental health staffing, housing

12   schema, transfers to psychiatric facilities, and data files, to name a few of the

13   current 27 RFPs. In sum, since the issues in *Porras* and *Rutherford* are not

14   identical, the discovery sought here is not precluded. *Clark*, 966 F.2d at 1320,

15   *Shapley*, 766 F.2d at 408.

16   Even if there were an identity of issues, "[c]ollateral estoppel is

17   inappropriate if there is *any doubt* as to whether an issue was *actually litigated* in a

18   prior proceeding." *Eureka Fed. Sav. & Loan Ass'n. v. Am. Casualty Co.*, 873 F.2d

19   229, 233 (9th Cir. 1989) (internal citation omitted) (emphasis added). When a

20   court cannot ascertain precisely what was litigated and decided, issue preclusion

21   cannot operate. *Mitchell v. Humana Hosp.-Shoals*, 942 F.2d 1581, 1583-84 (11th

22

---

23   (Footnote Continued from Previous Page.)

24   hernia and other injuries relating to his paralysis); *Declaration of Gaston Murphy*
     at 2 (discussing Plaintiff's lack of access to medication for diabetes). Plaintiffs'
25   RJN, Exhs. 7, 8, 9.
     [20] Four declarations relate to inmates with mental health issues. All four discuss
26   mental health only in the context of lack of access to already-prescribed mental
     health-related medications. *See Declaration of Jeffrey Dessaint* at 5-7;
27   *Declaration of Edward Leandry* at 2-3; *Declaration of Christian Najera* at 3-4;
     *Declaration of Lawrence Jackson* at 8-9. Plaintiffs' RJN, Exhs. 10, 11, 12, 13.

28

1    Cir. 1991) (state court did not specify reasons for its decision and federal courts

2    could not be certain whether earlier court actually decided issue).  It is Defendants'

3    burden to show "with *clarity and certainty* what was determined by the prior

4    judgment." *Clark* , 966 F.2d at 1321 (emphasis added).  *See also United States v.*

5    *Lasky*, 600 F.2d 765, 769 (9th Cir. 1979), *cert. denied*, 444 U.S. 979, 62 L. Ed. 2d

6    405, 100 S. Ct. 480 (1979) ("It is not enough that the party introduce the decision

7    of the prior court; rather, the party must introduce a sufficient record of the prior

8    proceeding to enable the trial court to pinpoint the exact issues previously

9    litigated.").  Evidence of downgrading of illness, transfers from the mental health

10   unit to MCJ, lack of adequate staff, and lack of appropriate mental health

11   interventions are among the many issues raised by the *Rutherford* discovery that

12   were never addressed in either the *Porras* discovery or opinion; this means the

13   *Rutherford* issues have not been actually litigated.  Furthermore, Defendants'

14   introduction of *Porras* without any effort to "pinpoint the exact issues previously

15   litigated" falls far short of meeting their burden.  Collateral estoppel is barred

16   where such doubt and lack of clarity and certainty exist. *Eureka*, 873 F.2d at 233,

17   *Clark*, 966 F.2d at 1321.

18           Finally, collateral estoppel is available only if determination of an issue was

19   *necessary* to the judgment in the prior adjudication. *Bobby v. Bies*, ____U.S. ____,

20   129 S. Ct. 2145, 2152, 173 L. Ed. 2d 1173, 1182 (2009).  The Ninth Circuit

21   requires that an issue be both "*critical and necessary*" to the judgment in the prior

22   action before collateral estoppel will be applied. *Clark*, 966 F.2d at 1321.  It is

23   insufficient "that some question of fact or law in a later suit was relevant to a prior

24   adjudication between the parties; the contested issue must have been litigated and

25   necessary to the judgment earlier rendered." *Kaspar Wire Works, Inc. v. Leco*

26   *Eng'g & Mach., Inc.*, 575 F.2d 530, 536 (5th Cir. 1978).  The only mental health

27   issue that was arguably relevant to the *Porras* judgment was continuous access to

28   medication for mental health ailments.  For the same reasons discussed above,

A/73456833.2                                                      47

1   there is no indication from *Porras* that any *mental health* issues were "critical and

2   necessary" to that judgment, and as a result they cannot preclude the *Rutherford*

3   discovery. *Clark*, 966 F.2d at 1321.

### (6)   There Is No Claim or Issue Preclusion Where The Classes Are Distinct

6   Finally, there is no preclusion where the class in a subsequent case differs

7   from the class in the prior case. *Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d

8   1350, 1355 (2d Cir. 1992), *rev'd on other grounds*, 509 U.S. 155 (1993). The

9   *Porras* order defining the class establishes a class of "present and future pretrial

10  detainees and post-conviction inmates who *have sought or will seek* medical care

11  while they are or will be in Defendants' custody in Men's Central Jail and Twin

12  Towers facilities." *Porras*, Docket No. 105 (emphasis added), Plaintiffs' RJN,

13  Exh. 6. Insofar as the subset of the *Rutherford* class that needs medical care but

14  *has not and will not* seek such care is concerned, preclusion does not apply because

15  it is not covered by the *Porras* class definition.

16

17  *Porras*, unlike *Rutherford*, was not an ongoing 30-year-old post-judgment

18  case implicating changes in the legal landscape, evolving facts, and continual

19  monitoring. *Porras*, unlike *Rutherford*, did not implicate conditions of inmate

20  confinement *in toto*, including issues of overcrowding and the downgrading of

21  diagnoses resulting in seriously ill patients being discharged from Twin Towers to

22  MCJ, where they received inadequate care. *Porras*, unlike *Rutherford*, was not a

23  case in which the plaintiffs sought to ensure compliance with constitutional

24  standards set forth in dozens of pre-existing court orders. For these reasons and

25  those set forth above, *Porras* does not preclude *Rutherford's* discovery.

26

27

28

A/73456833.2

48

1
2

      **c.**      **Plaintiffs' Discovery Is Neither Overly Broad Nor Burdensome**

3          Incorporating by reference the objections in Defendants' Responses to RFP

4  Nos. 1, Defendants have claimed the *entire* First Set of RFPs (Nos. 1-27) is overly

5  broad and unduly burdensome.  This objection has been emphasized particularly in

6  relation to RFP Nos. 1 (mental health care policies and procedures), 2 (jail

7  operations policies and procedures), 16 (incident reports), 17 (inmate complaints),

8  and 26-27 (Data Files).

9          Throughout the meet and confer process and despite Plaintiffs' repeated

10  good faith efforts to narrow the requests, Defendants have maintained that the

11  burden of responding to the RFPs "would be astronomical" and that "such burden

12  obviates any responsibility for Defendants to respond."  MikoLevine Decl., Exh. E.

13  *Yet, with the exception of medical records, which Plaintiffs are not seeking*

14  *currently,[21] and inmate complaints (which, as explained below, apparently would*

15  *not be at all burdensome for Defendants to produce), Defendants have never*

16  *explained how or why production would be burdensome or cause any hardship.*

17  Defendants thus have established no burden regarding the production of the vast

18  majority of the documents Plaintiffs requested, and they may not rely on

19  boilerplate burdensome objections to evade production.  *See Panola Land Buyers*

20  *Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (quoting *Davis v. Fendler*,

21  650 F.2d 1154, 1160 (9th Cir. 1981)).

22          Moreover, Plaintiffs subsequently discovered that, for numerous requests,

23  Defendants' claims of burden simply are not supported by the facts.  First, jail

24

25   [21] As Plaintiffs have advised Defendants previously, Plaintiffs are not currently
26  requesting the production of *any* inmate medical records, although they reserve the
    right to seek such records at a later date, either by way of the First Set of RFPs or
27  in response to future RFPs. Thus, Defendants' burdensome argument regarding
    this universe of documents is moot.  MikoLevine Decl., Exh. F.
28

1   policies and procedures (RFP No. 2) apparently are encompassed within a Custody

2   Division Manual (CDM) which was produced recently to the Corrections Standard

3   Authority (CSA). Defendants apparently provided the CSA access to their CDM

4   during CSA's site inspection visit in May 2009. The September 25, 2009 Custody

5   Operations and Correctional Services Divisions Biennial Inspection Report ("CSA

6   Report") clearly reviewed and summarized various CDM policies related to Title

7   15 issues. *See* Plaintiffs' RJN, Exh. 14, at 27 onwards.

8        When Plaintiffs raised this point, Defendants responded, "your statement

9   that the entire CDW was provided to the CSA on disc is not accurate."

10   MikoLevine Decl., Exh. I. Defendants did not address whether the policies and

11   procedures are indeed included in the CDM, nor did they explain why the

12   statement was inaccurate--or why this production is burdensome. To the contrary,

13   Defendants maintain the CDM on their intranet. Declaration of Mary Tiedeman at

14   ¶ 3. Specific policies are linked to the manual and are accessible by clicking on the

15   screen of the computer used to access the intranet. *Id.* at ¶ 4. LASD has made the

16   CDM available to outside entities, including contractors. *Id.* at ¶ 5. Thus,

17   documents responsive to RFP No. 2 regarding jail policies and procedures do not

18   appear to be as burdensome to produce as Defendants claim.

19        Second, Defendants previously had maintained that inmate complaints are

20   not scanned into a database and are instead maintained at the facility originating

21   the complaint, and that a production responsive to RFP No. 17 would thus require

22   a costly hand search of records. MikoLevine Decl., Exh. E. Plaintiffs

23   subsequently raised the fact that the Facility Automated Statistical Tracking

24   ("FAST") system allows LASD to track and monitor prisoner complaints, and that

25   this electronic system would presumably allow for the expeditious production of

26   inmate complaints. MikoLevine Decl., Exh. G. Although Plaintiffs do not

27   maintain that FAST contains actual complaints in electronic form, the information

28   in FAST--e.g., data about the number of complaints for different categories of

1   complaints per facility per year--demonstrates that LASD personnel or contractors

2   must go through the complaints and sort them into categories by year, facility, etc.

3   That is to say, the complaints should be in a centralized location and already sorted

4   in such a way that producing them for the *past week* should not be overly

5   burdensome.  Indeed, the aforementioned CSA Report states, "The [FAST] system

6   continues to be an excellent management tool that provides the Divisions with

7   opportunities to track and utilize inmate complaints for gathering information and

8   making management decisions."  Again, the CSA Report indicates that Defendants

9   allowed CSA access to this system as well.  *See* Plaintiffs' RJN, Exh. 14, at 9.

10      Furthermore, it has come to Plaintiffs' attention that LASD produced a

11   significant amount of data from FAST files in response to discovery in a separate

12   lawsuit.  *See* Declaration of George Sullivan dated October 15, 2009 and filed in

13   *Dion Starr v. County of Los Angeles, et al.*, Case No. CV 08-00508 GW (SHx), at

14   25 ¶ 3, Plaintiffs' RJN, Exh. 15.  In response to Plaintiffs countering that the FAST

15   system would appear to render production less burdensome than Defendants claim,

16   Defendants reiterated that the inmate complaints are not scanned into a database

17   and that Plaintiffs' understanding of the implication of the FAST system was

18   "simply inaccurate", but they have yet to explain how or why. MikoLevine Decl.,

19   Exh. I.

20      Third, it also came to Plaintiffs' attention that recently LASD was compelled

21   to turn over the Automated Justice Information System ("AJIS")[22] data, which

22   would appear to be responsive to at least RFP No. 27 (Data Files), in database form

23   in *Alvarado v. Bratton et al.,* Case No. 06-7812-PA(RCx), Docket No. 95 at 10,

24

25   _____

25   [22] Custody Automation/AJIS is the primary unit that is specifically dedicated to

26   automating all avenues regarding current arrest, booking, housing data, automated
     inmate court dates and classifications, and generating the Departmental arrest

27   statistics for the California Department of Justice.  *See* http://www.la-
     sheriff.org/divisions/tsdiv/dsb/dsb_overview.html#ajis.

28

1   filed May 21, 2009, Plaintiffs' RJN, Exh. 16.  This prior production would

2   presumably render current production less burdensome.  Defendants once again

3   responded without further explanation that Plaintiffs' assertions were "inaccurate

4   and entirely out of context" because Plaintiffs were "not aware of the extreme

5   burden, cost and difficulty" involved in that discovery.  MikoLevine Decl., Exh. I.

6        At any rate, the alleged burden that Defendants would face in responding to

7   highly relevant discovery does not provide a legitimate justification for

8   Defendants' repeated failure to produce the requested documents.  *See, e.g., Rowe*

9   *Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 431 (S.D.N.Y. 2002)

10  (burdensomeness of production may affect cost shifting but does not preclude

11  production of otherwise relevant documents).  Even if the burden were substantial,

12  which it does not appear to be, Plaintiffs have good cause for seeking the

13  production of the highly relevant information, as described in section III.A.2.d

14  above.  *See, e.g.,* Fed. R. Civ. P. 26(b)(2)(B).

15       In addition, with the exception of the inmate complaints, Defendants have

16  failed to comply with the FRCP because they have not identified the specific

17  sources of documents they have refused to search and produce.  *See* Adv. Comm.

18  Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2) ("The responding party must

19  identify, by category or type, the sources containing potentially responsive

20  information that it is neither searching nor producing.").  Defendant' failure to

21  identify the sources of potentially relevant information makes it is impossible to

22  gauge the accuracy of Defendants' claim that identifying responsive documents

23  would be prohibitively costly.[23]  For example, Defendants likely have records

24

25  _____

    [23] It is curious that Defendants are complaining about the costs of litigation when
26  Defendants have declined to work with Plaintiffs in implementing the
    recommendations of the Kupers Report, a document which recommends feasible
27  methods for treating mentally ill inmates and reducing overcrowding that would
    result in significant savings for LACJ.
28

1   pertaining to the classification of mentally ill inmates, disciplinary reports, or

2   incident reports, which can be searched without the burden they claim.

3        Nonetheless, in an attempt to address Defendants' purported concerns about

4   burden, Plaintiffs have substantially narrowed the Document Requests.

5   MikoLevine Decl., Exh. G. Despite this fact, Defendants still contend -- without

6   basis or explanation -- that the Requests are unduly burdensome, and, as such, they

7   are unable to produce the requested documents.

8        However, the Document Requests -- particularly in their current form -- do

9   not create any undue burden or hardship on Defendants. Because Defendants have

10  failed to meet their burden that the requested documents are overly broad and

11  burdensome, Plaintiffs' requests should be granted.

### d.    Plaintiffs' Discovery Is Relevant

13       Defendants refused to produce documents in response to RFP Nos. 11

14  (current housing schema), 14 (health care staffing roster) and 27 (Data Files) on

15  the grounds that, *inter alia*, these documents are not relevant to any claim or

16  defense. Defendants did not pursue this objection during the meet and confer

17  process (MikoLevine Decl. at ¶ 23); however, Plaintiffs assume this objection

18  stands and therefore substantively respond below.

19       As with the other twenty-four RFPs in the First Set, the information

20  requested in these RFPs is relevant to Plaintiffs' claims. The current housing

21  schema (RFP No. 11) is relevant to showing whether Defendants have specialized

22  housing for mentally ill prisoners at MCJ, the capacity of the mental health units at

23  Twin Towers, and it would also identify the segregation units at MCJ. These facts

24  are relevant to Plaintiffs' assertions that conditions, particularly the overcrowding

25  and conditions in segregation units, exacerbate symptoms in mentally ill prisoners.

26  The health care staffing roster for all mental health personnel for the limited three-

27  month period requested (RFP No. 14) will assist Plaintiffs in determining whether

28  the constitutional standard for a minimally adequate prison mental health care

1   delivery system is met in accord with the 1992 Order and the *Coleman* component

2   regarding the "employment of a sufficient number of trained mental health

3   professionals." *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (E.D. Cal.

4   1995).

5        In addition, the Data Files (RFP No. 27), which provide snap-shots of the

6   entire current and released jail population, are particularly crucial as they are

7   relevant to Plaintiffs' claims of overcrowding and may also show that the

8   population could be reduced without affecting public or institutional safety.

9   Defendants concede overcrowding conditions are the focus of the *Rutherford*

10   judgment, and they are also inextricably linked to mental health issues, as

11   described at length above.  Because the information requested in these RFPs is

12   reasonably calculated to lead to the discovery of admissible evidence with regard

13   to Plaintiffs' claims regarding mental health issues and overcrowding, it is relevant

14   and discoverable.  Fed. R. Civ. P. 26(b)(1).

15        e.    **HIPAA Permits The Disclosure Of Protected
             Information In Response To Discovery Requests**
16

17        Incorporating by reference the objections in Defendants' Responses to RFP

18   Nos. 1 and 3, Defendants claim that the documents requested in the *entire* First Set

19   of RFPs (Nos. 1-27) are subject to the restrictions of the Health Insurance

20   Portability and Accountability Act of 1996 ("HIPAA").

21        First, the argument that the entire First Set of RFPs is subject to HIPAA is

22   overbroad as several of the Requests do not implicate the health information of

23   individual inmates at all.  *See, e.g.*, RFP Nos. 1, 2, 9-19, 22, 26, and 27.  Indeed,

24   Defendants have not explained how inmates' protected health information and

25   HIPAA are implicated in RFPs that seek, for example, documents regarding Jail

26   operations (No. 2), the health care organizational chart (No. 10), documents related

27   to mental health personnel (No. 13), contracts with non-Jail personnel providing

28   mental health services (No. 15), and annual operational budgets (No. 18).

A/73456833.2                              54

1        Second, for those Document Requests that seek health information regarding

2  individual inmates, authorization by the individual inmates is not necessary

3  because these documents are being sought via discovery. HIPAA permits the use

4  and disclosure of protected health information in response to a discovery request in

5  judicial proceedings without an individual's authorization or permission. *See* 45

6  C.F.R. §164.512(e)(1)(ii) (protected health information may be disclosed in the

7  course of any judicial proceeding "[i]n response to a subpoena, *discovery request,*

8  or other lawful process....") (emphasis added). Thus, the disclosure of these

9  documents without inmate authorization is permissible under HIPAA.

10       Furthermore, Plaintiffs proposed (as an attachment to the original February

11  16 meet and confer letter) a draft protective order that complies with HIPAA

12  requirements and would more than adequately address any privacy concerns raised

13  by the production of HIPAA-protected documents, but Defendants refused.[24]

14       Finally, Defendants have cited no authority for their position that HIPPA

15  prevents them from releasing inmates' health-related information without releases

16  and continue to insist on their erroneous interpretation of HIPPA. *See* MikoLevine

17  Decl., Exh. E ("Defendants' [sic] do not agree with Plaintiffs' interpretation of

18  HIPPA that Defendants can legally produce 20,000 inmates, medical records to

19  Plaintiffs' counsel without releases."). *See also* MikoLevine Decl., Exh. I

---

21  [24] 45 C.F.R. 164.512(e)(ii) governs the disclosure of protected information in

22  response to a subpoena or discovery request. It allows such disclosure, *inter alia*, when "[t]he parties to the dispute have agreed to a qualified protective order and have presented it the court with jurisdiction over the dispute" or when "[t]he party

23  seeking the protected health information has requested a qualified protective order from such court." 45 C.F.R. 164.512(e)(iv)(A)-(B). 45 C.F.R. 164.512(e)(v)

24  defines a "qualified protective order" as an order of the court or stipulation of the parties that (A) Prohibits the parties from using or disclosing the protected health

25  information for any purpose other than the litigation or proceeding for which such information was requested; and (B) Requires the return to the covered entity or

26  destruction of the protected health information (including all copies made) at the end of the litigation or proceeding. The protective order Plaintiffs proposed more

27  than adequately meets this standard. *See* MikoLevine Decl., Exh. C (Sample Protective Order).

1   ("medical records cannot be released, even to an inmate's counsel, without a

2   signed release from the subject inmate.")  Aside from the gross exaggeration and

3   mischaracterization of the documents Plaintiffs are seeking (e.g., all medical

4   records for 20,000 prisoners), Defendants' position fails for its utter lack of

5   support.

        **f.**    **Privacy Rights Of Third Parties May Be Protected
6                Adequately Through Protective Orders And/Or
7                Document Redaction**

8   Defendants object to RFP Nos. 3-8, 11, 13-14, 16, 20, 22-23, and 25-27 on

9   the basis that the information sought implicates the "privacy rights of non-class

10   members and any third party."  The response to RFP No. 13 also asserts an

11   objection "based on the privacy rights of County employees."  The RFPs objected

12   to on privacy grounds seek information about mental health treatment, screening,

13   medication, and suicide attempts regarding inmates in the Jail.  *See, e.g.*, RFP Nos.

14   3-8, 22-23.

15   There is no reason why a protective order cannot be crafted in this case, as is

16   the well-established practice in institutional reform litigation, to address the

17   unavoidable fact that inspection of medical information implicates the privacy

18   concerns of present and former class members.  Such an order would, like the

19   sample Plaintiffs have provided to Defendants, include detailed provisions to

20   protect against any unnecessary disclosure of sensitive medical information by

21   strictly limiting the individuals allowed to view the information, and by requiring

22   the filing of confidential information only under seal and the redacting of

23   identifying information of present or former class members in any public filing.

24   *See* MikoLevine Decl., Exh. C (Sample Protective Order ¶¶ 3-6, 8).

25   Inspection of medical records inevitably implicates privacy concerns of class

26   members. *See, e.g.*, *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999).  These

27   concerns, however, "must yield to the federal interest in discovering whether

28   public officials and public institutions are violating federal civil rights." *Ginest v.*

A/73456833.2

56

1   *Bd. of County Comm'rs*, 306 F. Supp. 2d 1158, 1159-60 (D. Wyo. 2004) (jail

2   conditions case); *see also Doe v. Meachum*, 126 F.R.D. 444, 450 (D. Conn. 1989)

3   ("Given that disclosure sought is sought by professionals whose purpose it is to

4   protect the constitutional rights of the plaintiff class [of inmates], the court finds

5   that it is more important to the interests of justice that the communications be

6   disclosed, under the strict parameters set forth in the protective order, than that the

7   relationship between patient and psychologist/psychiatrist be protected."). In fact,

8   "[c]ourts are virtually unanimous in holding that class counsel in institutional

9   litigation of this nature has a right to examine client medical records to determine

10   whether a systemic failure exists in the institution's health care system." *Ginest*,

11   306 F. Supp. 2d at 1159.[25]

12       The protective order needed in this case will allow medical information to be

13   available to the parties' experts while strictly limiting the disclosure to what is

14   essential to vindicate the interest of the class in constitutionally adequate medical

15   care.[26] The identification of individuals is required to the extent it is necessary to

16

---

17   [25] *Ginest* relied on *Doe v. Meachum*, 126 F.R.D. 444, 450 (D. Conn. 1989)
    (compelling jail to produce inmate medical records in class action litigation
18   involving HIV health care); *N.O. v. Callahan*, 110 F.R.D. 637, 646-47 (D. Mass.
    1986) (allowing access to medical records of students in school for the mentally
19   retarded); *Garrity v. Thomson*, 81 F.R.D. 633, 635-36 (D.N.H. 1979) (similar);
    *Lora v. Bd. of Educ. of New York*, 74 F.R.D. 565, 579 (E.D.N.Y. 1977) (allowing
20   access to diagnostic and referral files of mentally handicapped children). *See also
    Haus v. New York*, No. 03 Civ. 4915RWSMHP, 2006 WL 1148680, at *3-4
21   (S.D.N.Y., Apr. 24, 2006) (requiring production of class arrest records); *Keith H. v.
    Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 657-58 (C.D. Cal. 2005)
22   (compelling production of documents despite implications for privacy rights of
    nonparty juveniles).
23   [26] Plaintiffs are amenable to a protective order that redacts names from publicly
    disclosed documents but that allows Plaintiffs' counsel to view the identities of the
24   class members it represents. It is necessary for counsel to have access to the
    underlying facts to carry out its obligation to represent the class. Class counsel has
25   a fiduciary obligation to class members and can be expected to observe the above-
    described privacy protections. *See Sondel v. Nw. Airlines, Inc.*, 56 F.3d 934, 938
26   (8th Cir. 1995); *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 832 (3d Cir.
    1973) ("in addition to the normal obligations of an officer of the court, and as
27   counsel to parties to the litigation, class action counsel possess, in a very real
    sense, fiduciary obligations to those not before the court").

28

1   correlate the medical information with other information obtained from

2   Defendants. *See Ginest*, 306 F. Supp. 2d at 1159 (requiring production of medical

3   information without requiring redaction of identifying information); *Doe*, 126

4   F.R.D. at 449 (recognizing that with a large number of class members affected by

5   the alleged violations, "it may be critical to plaintiffs' experts and their counsel to

6   be aware of the names of individual inmates, in order to evaluate their medical

7   records over time and in comparison with those of other HIV-infected inmates").

8        At the same time, the invasion of privacy is limited to the narrowest possible

9   extent by requiring that class members' identities be concealed in expert reports, in

10  any court documents, and in comments and responses by counsel. *See* MikoLevine

11  Decl., Exh. C (Sample Protective Order ¶¶ 4-5, 8, 10). The data will be supplied

12  only to experts and to counsel and counsel's agents under strict controls over

13  confidentiality, as detailed in the sample protective order Plaintiffs provided. In

14  order to afford an effective opportunity to conduct discovery as contemplated by

15  the Federal Rules, Plaintiffs must be given access to the total pool of prison health

16  records so that their experts can obtain a broad, representative sampling of records.

17  *See Todaro v. Ward*, 565 F.2d 48, 53 (2nd Cir. 1977) (finding that random

18  sampling of the records is an appropriate discovery method technique in cases like

19  the present one); *Lora*, 74 F.R.D. at 586 (same).

20       The various concerns Defendants have expressed about the alleged

21  deficiencies in a possible protective order do not provide a legitimate basis for

22  withholding the requested documents. For example, Defendants have claimed a

23  protective order would be insufficient because even disclosure under a protective

24  order would "effectively compromise[] the privacy interests at stake." MikoLevine

25  Decl., Exh. B (Mathers Decl., ¶ 13). However, as stated above, the right to privacy

26  is not unconditional, and a protective order can be crafted to ensure that legitimate

27  privacy interests are maintained as much as possible. Defendants also claim that,

28  once disclosed, Plaintiffs could use the information in the documents, such as by

A/73456833.2                                    58

1    discussing such information with Plaintiff inmates.  *Id.*  Again, the RFPs focus on

2    information and documents pertaining to inmates, not third parties.  To the extent

3    the documents contain private information about third parties, such as former class

4    members, such information can be redacted or a protective order can be crafted to

5    prevent identifiable information about third parties from being disseminated from

6    Plaintiffs' counsel to Plaintiffs.

7         Defendants' latest missive mentions the possibility of the parties entering

8    into a protective order for the first time, but they offer too little, too late,

9    particularly since Plaintiffs have already informed Defendants that they are not

10   currently seeking medical records.  MikoLevine Decl., Exh. I ("Perhaps if the

11   parties can agree on a protective order, a production of some kind might be

12   possible from which Plaintiff could obtain names for particular inmates and then

13   seek releases from those inmates to authorize the production of their medical

14   records.")

15        In sum, Defendants' privacy objections are not a legitimate justification for

16   Defendants' blanket and blatant refusal to produce a wide range of highly relevant

17   documents.  Defendants have failed to articulate the specific privacy interests of

18   any non-class members or third parties that they believe are implicated by the

19   RFPs, let alone why those privacy interests outweigh Plaintiffs' interest in and

20   need for the information sought.  Even if there are legitimate third party privacy

21   interests at stake, those interests can be appropriately protected through a

22   protective order and/or redaction of identifying information.

23              **g.      Defendants' Claims Of Privilege Or Confidentiality**
                         **With Respect To the Department of Justice Reports**
24                       **Are Without Merit; Nor Can Privilege Be Used As**
                         **Both Sword And Shield**
25

26        Incorporating by reference the objections in Defendants' Responses to RFP

27   No. 1, Defendants objected to the *entire* First Set of RFPs (Nos. 1-27) on the

28   grounds they seek information "which is currently the subject of a privileged and

A/73456833.2                                59

1  confidential investigation by the United States Department of Justice" (the "DOJ").

2  The objection states that, other than information available on the Department of

3  Justice's website, "information regarding DOJ's investigations or the ongoing

4  monitoring of mental health care in the LACJ system is confidential."   Response

5  to RFP No. 1

6       Defendants have provided no authority or explanation for how or why the

7  reports by the DOJ are allegedly protected from discovery by virtue of privilege or

8  confidentiality.  The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §

9  1997 *et seq.*, ("CRIPA") does not contain any provision requiring the DOJ or

10  Attorney General to maintain the confidentiality of an investigation.  In fact,

11  CRIPA provides that it "shall in no way expand or restrict the authority of parties

12  other than the United States to enforce the legal rights which they may have

13  pursuant to existing law with regard to institutionalized persons.  In this regard, the

14  fact that the Attorney General may be conducting an investigation or

15  contemplating litigation pursuant to this Act shall not be grounds for delay of or

16  prejudice to any litigation on behalf of parties other than the United States."  42

17  U.S.C. § 1997j; *see also United States v. State of Oregon*, 839 F.2d 635, 637 (9th

18  Cir. 1988) ("Both the language and the history of the statute show that Congress

19  did not intend by its enactment to restrict in any way the authority of the district

20  courts to adjudicate claims brought by or on behalf of the institutionalized persons

21  themselves.").  Indeed, the purported confidentiality of DOJ reports has been found

22  to be an inadequate basis for failing to produce relevant information.  *See United*

23  *States v. Certain Parcels of Land, Etc.*, 15 F.R.D. 224, 228-30 (S.D. Cal. 1953)

24  (rejecting claim that purportedly "confidential reports in Department of Justice

25  files" were exempt from discovery because "there is no such privilege known to

26  the law of evidence").

27       Even if Defendants were able to establish the privilege or confidentiality of

28  the DOJ reports, investigations and monitoring, Defendants' refusal to produce any

A/73456833.2

60

1   such documents should preclude Defendants from relying on such information in

2   this action.  Defendants cannot use the purportedly privileged and confidential

3   nature of the DOJ investigations, monitoring, and reports as both a sword and a

4   shield.  *Cf.* Fed. R. Civ. P. 26(a)(3)(A)(iii) (requiring disclosure of documents on

5   which the party intends to rely); *Kaiser Found. Health Plan Inc. v. Abbott Labs.,*

6   *Inc.,* 552 F.3d 1033, 1042 (9th Cir. 2009) ("The privilege which protects attorney-

7   client communications may not be used both as a sword and a shield.  Where a

8   party raises a claim which in fairness requires disclosure of the protected

9   communication, the privilege may be implicitly waived." (quoting *Chevron Corp.*

10  *v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir. 1992))); *SEC v. Graystone Nash,*

11  *Inc.,* 25 F.3d 187, 190 (3rd Cir. 1994) (stating that a witness who invokes the self-

12  incrimination privilege cannot subsequently waive the privilege and testify on

13  matters as to which the privilege was claimed, if doing so would prejudice the

14  opposing party); *Chedick v. Thomas Nash & Capital City Mortgage Corp.,* 151

15  F.3d 1077, 1084 (D.C. Cir. 1998) (affirming district court's order prohibiting

16  plaintiff from testifying about attorneys' fees that she had incurred because

17  plaintiff failed to provide any discovery or documents on that subject); *Walker v.*

18  *County of Contra Costa,* 227 F.R.D. 529, 532-34 (N.D. Cal. 2005) (stating that any

19  privileges or work product protection afforded documents pertaining to an

20  investigation are waived when defendants rely on such documents); *Fox v. Cal.*

21  *Sierra Fin. Servs.,* 120 F.R.D. 520, 527 (N.D. Cal. 1988) (stating that "selective

22  disclosure of confidential communications for the sake of obtaining a tactical

23  advantage in litigation constitutes a waiver of the attorney-client privilege");

24  *Brownell v. Roadway Package Sys., Inc.,* 185 F.R.D. 19, 25 (N.D.N.Y. 1999)

25  (finding waiver of the attorney-client privilege where the defendant asserted the

26  adequacy of its investigation as a defense).

27       If Defendants plan to rely on this information, it must be disclosed.

28  Defendants acknowledged this reality at the March 3 meet and confer meeting,

A/73456833.2                                   61

1   then made a statement in their March 12 letter that was at odds with that

2   representation, and presumably maintain the position that they are entitled to use

3   these reports in this litigation even if they fail to produce them.  MikoLevine Decl.

4   at ¶12; Exh. E.  Regardless, Defendants clearly are not permitted to use these

5   documents as both sword and shield.  *See, e.g., Kaiser Found. Health Plan Inc.,*

6   552 F.3d at 1042.

        **h.**    **Defendants' Assertion Of The "Official Information**
7               **Privilege" And Concerns Over Security Are**
8               **Unwarranted Or Can Be Appropriately Addressed**
9               **Through The Issuance Of A Protective Order**

10         Defendants initially asserted the "official information" privilege with respect

11   to RFP Nos. 1 (mental health care policies and procedures), 13 (mental health

12   personnel), 14 (health care staffing roster), and 20 (prisoner deaths).  In response to

13   RFP Nos. 11 (current housing schema) and 27 (Data Files), Defendants also

14   initially claimed that the production of the requested information will create

15   security concerns or threats.  Defendants then backtracked and currently maintain

16   that they are "unable to specifically determine whether [the official privilege]

17   would apply or not because of the vague and ambiguous nature of the subject

18   Requests and the over breadth issues discussed [by the parties]."  MikoLevine

19   Decl., Exh. E.  Although it thus unclear whether Defendants will even pursue this

20   objection, Plaintiffs assume it stands and accordingly respond below.  Since the

21   benefits of disclosure outweigh the disadvantages here, and since a protective order

22   can address any security or privacy concerns, these documents should be produced.

23         As a threshold matter, Defendants have not met their burden of establishing

24   that the official information privilege applies, let alone is met, here.  *United States*

25   *v. Zolin,* 809 F.2d 1411, 1415 (9th Cir. 1987) ("The burden of demonstrating the

26   existence of an evidentiary privilege rests on the party asserting the privilege."

27   (citing *United States v. Gann,* 732 F.2d 714, 723 (9th Cir. 1984))).  Defendants

28

A/73456833.2

62

1   have done no more than make a statement, unsupported by facts or law, that the

2   privilege applies. *See* Response to RFP No. 1.

3          It does not. In federal question cases, "the law of privilege is governed by

4   the principles of the common law as they may be interpreted by the courts of the

5   United States in the light of reason and experience." *Religious Tech. Ctr. v.*

6   *Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992). Under federal common law,

7   the "official information" privilege is recognized as "the government's privilege to

8   prevent the disclosure of information whose disclosure would be contrary to public

9   interest." *See Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990).

10  Balancing of the benefits and harms of disclosure is to be done on a "case by case

11  basis." *See Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992). Therefore,

12  when faced with the assertion of the "official information" privilege, courts must

13  weigh the potential benefits of disclosure against the potential disadvantages in that

14  particular case. *Id.* at 299-300. This balancing test is "moderately pre-weighted in

15  favor of disclosure" because "privileges operate in derogation of the truth finding

16  process." *Id.* at 300. Defendants have not shown that the balance weighs in their

17  favor.

18         Defendants have also claimed that disclosure of the requested documents

19  would jeopardize the safety of Jail personnel, the future ability to obtain candid

20  statements from inmate witnesses, and "the trust by and between the County of Los

21  Angeles, the LASD, any third-party informants, third-party witnesses, and the

22  public." MikoLevine Decl., Exh. B (Mathers Decl., ¶ 5). Plaintiffs fail to see how

23  any of the claimed ills will befall Defendants and the LACJ if the documents

24  requested by the RFPs are produced. As discussed above, the RFPs seek targeted

25  information relating to mental health classification and treatment in the LACJ

26  system. For example, it is difficult to see how information relating to suicide

27  attempts, medications provided to inmates, and the mental health classification

28  system would create security or trust concerns for the Jail or its staff. If anything,

A/73456833.2

63

1   the transparency provided by the production of such information would augment

2   the public's trust in the Jail system and educate inmates and "third-party

3   informants" about services that may be available to them.

4       Further, the "official information" privileged is a qualified privilege.

5   Plaintiffs have a significant interest in obtaining the information requested by the

6   RFPs to ensure that their constitutional rights are adequately being protected and

7   that Defendants are complying with the 1979 Judgment and subsequent orders in

8   this case.  That interest must be balanced against the theoretical harm that may

9   occur if the requested information is produced. *Miller,* 141 F.R.D. at 299-300.

10       Finally, to the extent Defendants have a legitimate interest in maintaining

11   the confidentiality of certain information, such as personal information of law

12   enforcement officers or the anonymity of confidential informants (which are not

13   sought by the RFPs), a protective order such as the one referenced above will

14   provide the necessary safeguards.  The Court in *Miller* stated, "[T]he parties could

15   avoid the hassle of a discovery dispute with a well tailored protective order.  Such

16   protective orders are customarily entered into by stipulation of the parties in cases

17   involving highly sensitive trade secrets, etc.  No compelling reason has been

18   advanced as to why such a device is unsuitable for use by the parties to a civil

19   rights case." *Id.* at 301.  Plaintiffs have repeatedly indicated to Defendants that

20   they are willing to stipulate to a protective order to address any legitimate claim of

21   "official information" privilege or security or privacy concerns asserted by

22   Defendants. MikoLevine Decl. at ¶¶ 12, 13;  Exhs. C, D, F.[27]

---

[27] In addition to the foregoing objections, Defendants' Responses included vague and ambiguous objections with regards to RFP Nos. 1, 2, 5, 6, 8, 10, 11, 12, 18, 22, and 26.  Plaintiffs clarified all identified terms in their initial meet and confer correspondence.  MikoLevine Decl., Exh. C.  Defendants never responded to Plaintiffs' clarification of contested terms. MikoLevine Decl. at ¶ 11.

### i.   Defendants' Privilege Log Is Inadequate

The "privilege log" provided by Defendants with their December 9, 2009 Responses fails to satisfy the requirements of the Federal Rules of Civil Procedure. *See* MikoLevine Decl. Exh. B (Privilege Log).  A party withholding documents based on a privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed -- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).  In order to satisfy the privilege log requirement, the log should include the general nature of the document, the identity and position of its author, the date it was written, the identity of recipients, the document's location, and the specific reasons the document was withheld. *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).  Defendants' log does not meet these requirements.

The log includes only five entries.  Each entry describes a vague category of documents that does not allow Plaintiffs to assess the privileges claimed as to each document or category of documents.  The dates and authors for each category are provided only in the most general, superficial way.  Defendants must provide more specificity in its log in order to allow Plaintiffs, and the Court, to evaluate the claimed privileges as to each category of documents.

At the March 3 meet and confer conference, Defendants acknowledged that the "log by category" they provided was cursory and not in compliance with applicable Federal Rules and stated that the log would be amended once the parties agreed upon the scope of the Requests.  MikoLevine Decl. at ¶ 12.   Although Plaintiffs subsequently significantly narrowed the scope of their Requests, Defendants have failed to submit an adequate privilege log to date.  MikoLevine Decl. at ¶ 14.

1    For the foregoing reasons, Plaintiffs respectfully request the Court compel

2    Defendants to produce documents responsive to Plaintiffs' First Set of Requests for

3    Production of Documents, as set forth above.

4    **B.    Defendants' Contentions And Points And Authorities**

5        **1.    Plaintiffs' Portions Of The Joint Discovery Stipulation Fail
6    To Comply With The Requirements Of Local Rule 37.**

7        Without even reaching the substantive discovery issues presented by

8    Plaintiffs, the Court should deny this Motion because Plaintiffs have failed to

9    present Defendants and the Court with a discovery stipulation that complies with

10   the requirements of Central District of California Local Rule 37.  This failure has

11   prejudiced (and most cases, entirely prevented) Defendants from adequately

12   addressing many of the unique issues relevant to individual requests at issue.

13   Because Plaintiffs failed to set forth contentions to individual requests and instead

14   provided contentions that seemingly apply without regard to specific requests,

15   Defendants have not been given an opportunity to respond to the purported issues

16   about which Plaintiffs seek Court intervention.

17       Local Rule 37-2.1 provides,

18       The stipulation shall contain all issues in dispute and, with respect to each

19       such issue, the contentions and points and authorities of each party. The

20       stipulation shall not refer the Court to any other documents. For example, if

21       the sufficiency of an answer to an interrogatory is in issue, ***the stipulation***

22       ***shall contain, verbatim, both the interrogatory and the allegedly***

23       ***insufficient answer, followed by each party's contentions as to that***

24       ***particular interrogatory, separately stated.***

25   Local Rule 37-2.1 (emphasis added).

26       Under this rule, joint discovery stipulations are formatted in a very specific

27   way.  Following each party's introductory statement, the proper format for a

28   discovery stipulation is for each discovery request at issue to be separately stated

1   followed by the responding party's objection and answer, if any.  Then, as Local

2   Rule 37-2.1 specifically states, "each party's contention as to that particular

3   interrogatory" are separately stated.  Plaintiffs' portions of this discovery

4   stipulation violate this specific requirement because Plaintiffs have improperly

5   grouped discovery requests together.  In fact, Plaintiffs' portions purport to offer a

6   single set of contentions as to all of the discovery requests at issue.  This prospect

7   ignores the reality that specific objections may have unique application to each of

8   the requests.  For example, a privilege could apply to documents responsive to one

9   particular request, but have no application to other requests at issue.

10        Plaintiffs' attempt to "group" requests together violates Local Rule 37 and

11  prevents Defendants and the Court from specifically addressing individual

12  discovery requests and the unique factors that may apply to each request in the

13  group.[28]  This, in turn, creates a very real danger of a lack of clarity in the Court's

14  ruling on the subject issues and requests and also makes it extremely difficult for

15  the parties to discuss potential documents that may be responsive.

16        A stipulation in the format required by Local Rule 37 is the only proper

17  means by which discovery disputes should be presented to the Court and based on

18  Plaintiffs' failure to adhere to the Local Rules, this Motion should be denied in its

19  entirety.  At a minimum, the Court should decline to consider or rule upon those

20  portions of the discovery stipulation that did not provide Defendants with an

21  opportunity to specifically address individual requests at issue.  Further,

22  Defendants have labored to respond as intelligently as possible to Plaintiff's

23  contentions; however, such effort should not be construed as a waiver of

24  Defendants' objection as to form of Plaintiffs' papers.  At a minimum, before the

25  Court addresses the merits of the subject requests, the Court should order the

26

27  [28] Plaintiff's portions also violate Local Rule 37-2.1 in that Plaintiff has not
    included any statement regarding a proposed resolution for each request at issue.

28

1  parties to brief each individual request and require Plaintiffs to set out what

2  documents they actually seek.

### 2.  Threshold Defects Bar Any Entitlement To Discovery Without Even Reaching Whether Medical And Mental Health Issues Are Part Of This Action.

In addition to the defects in the format[29] of Plaintiffs' portions, significant

threshold defects warrant denial of this Motion without reaching the issue of

whether medical and mental health treatment are part of this action or the specific

objections Defendants asserted to the subject requests.

### a.  Despite Plaintiffs' Representations To The Contrary, The Court's Orders Reopening Discovery Does Not Address The Scope Of The Judgment Or Whether Medical And Mental Health Treatment In County Jail Are A Proper Subject Of Discovery.

In June, 2009, Plaintiffs filed a motion to re-open discovery. (*See*, Docket

No. 158.)  On August 4, 2009, the Court granted Plaintiffs' motion. *See*, Docket

No. 192.)  Because the Court's Order granting Plaintiffs' Motion included

statements by the Court arguably expanding the scope of the Judgment, on August

19, 2009, Defendants filed a motion for reconsideration. (*See*, Docket No. 194.)

In an order dated September 22, 2009, with respect to whether the August 4, 2009

order ruled on or expanded the scope of the Judgment or what subject matters were

the proper subject of discovery, the Court held as follows:

> "[t]he Court also clarifies that the August 4, 2009 Order
>
> did not rule on the scope of the issues properly before the
>
> Court in this matter, and thus, it should not be construed
>
> as doing so."

(*See*, Docket No. 201 – Order Clarifying Court's August 4, 2009 Order Reopening

---

[29] While defects in format may seem trivial, with respect to Joint Discovery Stipulation, the Local Rule 37 format is crucial.  Proper formatting allows the parties and the Court to consider and make arguments as to *specific* discovery requests and the objections asserted thereto.

1   Discovery.)

2       Despite the clarity of this ruling[30], during meet and confer discussions

3   related to the subject requests and again in Plaintiffs' portions of this Motion,

4   Plaintiffs have done exactly what Defendants feared they would – use the August

5   4, 2009 Order as support for an argument that medical and mental health issues are

6   the proper subject of discovery.  As the Court's September 22, 2009 Order makes

7   clear, the Court made no such ruling and to assert otherwise ignores the plain

8   language cited above.

9         **b.**    **Plaintiffs' Portions Do Not Demonstrate Substantial**
10                  **Non- Compliance With Any Term Of The Judgment.**

11      Defendants do not dispute that the Court had the power to order post-

12  judgment discovery or that Plaintiffs are entitled to propound discovery.  However,

13  simply because the Court allowed post-judgment discovery does not mean that any

14  subject is within the appropriate scope of discovery.  On the contrary, the scope of

15  permissible discovery post-judgment is very limited and as set forth below,

16  Plaintiffs have failed to satisfy their initial burden of demonstrating substantial

17  non-compliance with any portion of the Judgment which defines the proper scope

18  of discovery.  Plaintiffs were required to make this showing before being entitled

19  to take discovery on **any** subject. *Cal. Dep. Of Soc. Services v. Leavitt*, 523 F.3d

20  1025, 1034 (9th Cir. 2008).  Indeed, before discovery may be granted, Plaintiffs

21  are required to put forth some proof to establish its charges of noncompliance.

22  *See, H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1122 (6th

23  Cir. 1976) ("To permit discovery after judgment in addition to the extensive

24  discovery ordered during the trial…it was at least necessary for the [party

25  _____

26  [30] Considering Plaintiffs attempt to use the August 4, 2009 Order as a justification
   for seeking medical and mental health related documents, not surprisingly,
27  Plaintiffs' portions fail to cite the Court's disclaimer above. (*See*, Plaintiffs'
   Portions, 23:20-24.)

28

1    requesting discovery] to <u>present some proof</u> to establish its...charges [of fraud].").

2    Here, Plaintiffs have made no such showing.

3         In *Leavitt*, the Ninth Circuit held that, when considering whether to permit

4    discovery prior to the resolution of a motion to enforce a judgment, a district court

5    should first determine whether the proponent of discovery has put forth sufficient

6    evidence to raise **significant questions** regarding noncompliance.[31]  523 F.3d at

7    1034.  The underlying action in *Leavitt* concerned the statutory eligibility

8    requirements for a federal program, administered by the States, which provided

9    financial incentives to individuals and families to take in needy foster children.

10   *Id., see also, State of Cal. Dep't of Soc. Servs. v. Thompson ("Rosales")*, 321 F.3d

11   835, 838 (9th Cir. 2003).  That underlying action, referred to by the *Leavitt* Court

12   as *"Rosales,"* resulted in an injunction against the defendants, a federal

13   department, to administer the federal program according to the eligibility standards

14   articulated by the *Rosales* decision.  *Id.* at 1027-28.

15        At issue in *Leavitt* was the defendants' alleged noncompliance with the

16   injunction.  On appeal, the *Leavitt* Court reversed the district court's denial of the

17   plaintiffs' motion to enforce the injunction "insofar as the court failed to address

18   the [plaintiffs'] request to authorize discovery."  *Id.* at 1036.  The *Leavitt* Court

19   explained that the plaintiffs had provided sufficient evidence to raise significant

20   questions regarding the defendants' noncompliance with the injunction.  *Id.* at

21   1027 & 1034.

22        Specifically, the evidence was sufficient because: (1) plaintiffs' counsel had

23   reported that, in at least twelve cases, federal officials used eligibility standards

24   contrary to the direct terms of the injunction; (2) the defendants represented to the

25

26   ---

     [31] Here, Plaintiffs have not filed a motion to enforce the judgment and instead,
27   without even a reference to a specific term in the judgment, are seeking a blanket
     order reopening discovery.

28

1  plaintiffs and to the courts that it did not have the information requested by the

2  plaintiffs, despite that the injunction expressly required the defendants to document

3  and retain such information; (3) the defendants' failure to pay in at least two

4  eligible foster care cases was "indicative of noncompliance" since the injunction

5  specifically required that the defendants pay "for *all* [qualifying] foster care cases";

6  and (4) the defendants relied on the fact that district court had not authorized post-

7  judgment discovery, which should have alerted the district court that the plaintiffs

8  "could not come forward with further evidence of noncompliance without an order

9  authorizing discovery." *Id.* at 1035-36.

10      To date, and despite many requests, Plaintiffs have thus far not been able to

11  cite any part of the Judgment they allege Defendants are out of compliance with.

12  This is because, as set forth below in greater detail, the Judgment does not include

13  terms relevant to medical or mental health care because these issues were long ago

14  abandoned from this case. In attempting to circumvent this fact, Plaintiffs contend

15  that "[t]he purpose of [this] discovery is to gather information about Defendants'

16  non-compliance with the Judgment." (Plaintiffs' Portions, Page 27, Footnote 3.)

17  Plaintiffs claim that Defendants miss this point; however, it is Plaintiffs that miss

18  the point. Defendants do not object to Plaintiffs taking discovery regarding any

19  alleged non-compliance with the Judgment. The issue is that, by this Motion,

20  Plaintiffs are attempting to take discovery on claims and issues outside the

21  Judgment.

22      Plaintiffs cite a number of cases in support of their argument that "[p]ost-

23  judgment discovery is so routine…that it is often noted without comment or further

24  discussion in the reported decisions" (Plaintiffs' Motion, 8:19-27)  however,

25  Plaintiffs have not cited or addressed *Leavitt*. This is significant because *Leavitt*

26  was very recently decided (2008) and because, as Ninth Circuit authority, it is

27  controlling. Indeed, all of the cases cited by Plaintiffs pre-date *Leavitt* and *Leavitt*

28  represents the most recent pronouncement regarding appropriate considerations for

A/73456833.2                                   71

1    post-judgment discovery. *See, Leavitt* at 1034-35 (explaining that "the request to

2    authorize discovery warrant[s] careful consideration" and providing "guidance to

3    the district court as it considers whether to permit limited discovery").

4         Here, Plaintiffs entirely fail to produce even a hint of non-compliance with

5    the Judgment and in fact, Plaintiffs do not reference the Judgment nor have

6    Plaintiffs included it with their Exhibits. This fatal to this Motion and Plaintiffs

7    efforts to obtain post-judgment discovery under *Leavitt.*

8         **3.   The Constitutionality Of The Medical And Mental Health
9              Care Provided To Inmates In County Jail Is Not Part Of
               This Case.**

10        If the Court chooses to consider the merits of the subject requests (basically,

11   ignoring the defects briefed above), the core issue before the Court is whether

12   medical and mental treatment in County jail are part of this action. As set forth

13   below, they are not for several reasons. Before going into these reasons,

14   Defendants have provided a brief section on the law regarding Judgments and

15   Pretrial Conference Orders.

16        **a.   Law Regarding Judgments And Pretrial Conference
17              Orders.**

18        Before briefing the reasons why medical and mental health care in the

19   County jail system are not part of this action and before addressing Plaintiffs'

20   purported evidence on this issue, it is important for the Court to consider the

21   function and impact of the Judgment. Judgments are self-contained documents,

22   stating "who has won and what relief has been awarded." *Otis v. City of Chicago,*

23   29 F.3d 1159, 1163 (7th Cir. 1994); *American Nat'l Bank & Trust Co. of Chicago*

24   *v. Secretary of HUD of Washington, D.C.,* 946 F.2d 1286, 1289 (7th Cir. 1991);

25   *Claybrook Drilling Co. v. Divanco, Inc.,* 336 F.2d 697 (10th Cir.1964)(the final

26   judgment in a case should be complete and self-contained); Charles Alan Wright &

27   Arthur R. Miller, 11 *Federal Practice and Procedure* § 2785 at 15-16 (1973). The

28   purpose of the separate judgment required by Fed.R.Civ.P. 58 is to let the parties

A/73456833.2                          72

1    (and the appellate court) know exactly what has been decided and when. *Reytblatt*

2    *v. Denton*, 812 F.2d 1042, 1043 (7th Cir.1987).

3           Judgments clearly can only be based on the issues briefed at trial, which are

4    directly controlled by the pretrial conference order, which can only be modified to

5    prevent manifest injustice. *See*, FRCP 16(e); *United Phosphorus, Ltd. v. Midland*

6    *Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000); *McLean Contracting Co. v.*

7    *Waterman Steamship Corp.*, 277 F.3d 477, 479–480 (4th Cir. 2002)(failure to

8    identify a disputed issue in pretrial order waived right to have the issue tried).

9    "Accordingly, a party need offer no proof at trial as to matters agreed to in the

10   order, nor may a party offer evidence or advance theories at the trial which are not

11   included in the order or which contradict its terms." *United States v. First Nat'l*

12   *Bank of Circle*, 652 F.2d 882, 886(9th Cir. 1981).  Most importantly, the pleadings

13   are superseded. *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir.

14   1993)(claims asserted in the pleadings but omitted in the pretrial order *cannot be*

15   *raised at trial); Youren v. Tintic School Dist.* 343 F.3d 1296, 1305 (10th Cir.

16   2003)(statute of limitations defense, raised in answer, waived by omission from

17   pretrial order.)

18          While additional reasons support Defendants contention that medical and

19   mental issues are simply irrelevant to this action (and thus, not within the scope of

20   permissible discovery), even based on the above, because the Judgment does not

21   include any terms regarding anything related to medical or mental health treatment

22   in the Count jail system, this Motion should be denied.

23             **b.**    **None Of The Documents Plaintiffs Reference Include**

24                    **Any Claims Or Issues Regarding The**
                      **Constitutionality Of Medical Or Mental Health**

25                    **Treatment In County Jail.**

26          To support their argument that medical and mental health treatment is

27   relevant to this case, Plaintiffs submit and cite to the Court several documents.

28   Importantly, and despite Plaintiffs' representations to the contrary, none of these

1    documents (nor any other relevant documents discussed below) include references

2    to the constitutionality of the medical and mental care in the County jail system.

3         First, Plaintiffs' purport to rely on an Amended Complaint. Such reliance is

4    unavailing. As set forth above, even if referenced in the Amended Complaint, the

5    pleadings were superseded by the Pretrial Conference Order ("PTCO").

6    References to issues in the pleadings are wholly irrelevant as to the proper scope of

7    discovery and this action as a whole.

8         With respect to the PTCO, Plaintiffs contend that it "encompasses...inmates

9    access to medical care." This assertion is a very large stretch. In the section

10   entitled "Other Issues – Scope of Bifurcation", in less than one page of a 50-page

11   order, sparse statements regarding transportation to medical facilities and housing

12   in the "Jail's infirmary" are referenced. (*See*, Plaintiffs' Request for Judicial

13   Notice ["RJN"], Exhibit 2, 46:15 – 47:19.) **There is not one single reference to**

14   **mental or medical treatment issues or the constitutionality thereof in the**

15   **PTCO and in fact, the words "mental health" do not even appear in the**

16   **document.** Considering the scope of the subject requests and Plaintiffs'

17   unequivocal statement that "health care – including mental health care – have been

18   encompassed by this litigation from its inception", one would think that the PTCO

19   would include more significant details as to such issues or, at an absolute

20   minimum, that the words "mental health" would appear in the document. The

21   reason the PTCO includes no such references is because such issues have never

22   been part of this action nor is discovery regarding such issues permissible.

23        Next, Plaintiffs cite to a 1985 Memorandum of Understanding ("1985

24   MOU") and Plaintiffs state that in this document "the Court approved, an Order

25   specifically contemplating the need for further discovery and relief regarding

26   mental health care." (Plaintiffs' Portions, 28:13-15.) This too, is a very large

27   stretch. Plaintiffs' reference Page 5, Paragraph 4, Lines 5-9 of the 1985 MOU

28   which states:

A/73456833.2                                    74

1        The County will provide, upon request, relevant non-privileged data as to

2  populations, staff, violence, etc., so that relevant statistical information can be

3  prepared and analyzed by both parties.  The parties will keep each other regularly

4  appraised of the progress and results of such analysis.

5  (Plaintiffs' RJN, Exhibit 3, 5:5-9.)

6        Then, in a passing reference and without specifics as to purpose and without

7  any reference to medical or mental health treatment, the document states that

8  Plaintiff intends, at this time, to employ two experts (one psychologist and one

9  statistician) to assist with the      above-mentioned analysis, and to request that

10  those experts prepare written reports as part of this analysis.

11  (Plaintiffs' RJN, Exhibit 3, 5:13-16.)

12        First, Plaintiffs' suggestion that the above statements "contemplate[e] the

13  need for further discovery and relief regarding mental health care" is a gross

14  misrepresentation.  Second, here again, the 1985 MOU does not include any

15  reference to medical or mental health treatment in the County jail system or the

16  constitutional standards applicable thereto.  Again, if medical and mental health

17  treatment issues were as germane to this case as Plaintiffs contend, one would

18  think that these issues would have been at the forefront of Plaintiffs' counsel's

19  concerns regarding any alleged lack of compliance with Court orders.

20        Other sections of the 1985 MOU actually highlight the importance of the

21  Judgment and its terms to this case.  In detailing the work Plaintiffs' counsel would

22  perform in evaluating the Sheriff's Department's lack of compliance with Court

23  orders, the 1985 MOU states

24        Plaintiffs' counsel will commence an analysis of the Sheriff's compliance

25  with each of the Orders of the Supplemental Memorandum Opinion and Judgment

26  filed February 15, 1979..."

27  (Plaintiffs' RJN, Exhibit 3, 4:1-4.)

28

1    The 1985 MOU then goes on to list each of the issues identified in the

2    Judgment and the Supplemental Memorandum Opinion ("SMO") which DO NOT

3    include any orders regarding medical or mental health treatment.  Basically, in

4    listing the framework for Plaintiffs' counsel's inquiry, the perimeters and structure

5    for that inquiry are expressly defined by the Judgment and the SMO.  As set forth

6    herein, neither of these documents include any references to the constitutionality of

7    medical or mental health care in County jail.

8        Lastly, Plaintiffs rely on the 1992 Stipulation / Joint Status Report

9    (Plaintiffs' RJN, Exhibit 4).  This Order is addressed below in "e"; however, as a

10   preliminary matter, much like the documents discussed above, other than minor

11   references to collateral medical issues, the 1992 Stipulation / Joint Status Report

12   does not reference the constitutionality of the medical and mental health treatment

13   provided to inmates in County jail.

     **c.**    **Other Relevant Pre And Post Trial Documents Similarly Include No References To The Constitutionality Of The Medical And Mental Health Care In County Jail.**

14

15

16

17   Defendants maintain that the lack of detailed reference to medical / mental

18   health issues in any of the above documents is extremely telling; however, in

19   addition, in preparing Defendants' portions of this Motion, Defendants' counsel

20   reviewed thousands of pages of court records from the history of this action going

21   back to 1976 and in similar fashion to the documents above, other significant Court

22   documents include no references to medical / mental health issues.  (*See*, Clark

23   Decl., ¶ 8.)  Some of these documents are briefed below and are submitted

24   concurrently herewith attached to the Declaration of Justin W. Clark.

25   First, just like the above documents, Plaintiffs' Post Trial Brief includes no

26   references to medical or mental health care and exactly like the PTCO, includes

27   only bare comments regarding transportation issues to the County hospital.  (*See*,

28   Clark Decl., ¶ 3; Exhibit "2" – Post Trial Brief, 65:23 – 66:4.)  Despite almost 100

1   pages of extensive briefing regarding issues raised at trial, Plaintiffs' Post Trial

2   Brief dedicates a single paragraph to this transportation issue and other than the

3   fact that the transportation issues related to transportation to a hospital, the Brief

4   includes no references to medical or mental health care.

5      Just like the Post Trial Brief, the Court's Memorandum of Decision and

6   Supplemental Memorandum of Decision which immediately preceded the

7   Judgment include no references to medical or mental health care.  (*See*, Clark

8   Decl., ¶¶ 4 and 5; Exhibits "3" and "4".)

9      Even when the ACLU of Southern California sought to be appointed

10  monitor of the Sheriff's Department's compliance with the Judgment, no mention

11  whatsoever was made regarding medical or mental health issues.   (*See*, Clark

12  Decl., ¶ 6; Exhibit "5".)  Importantly though, this document, much like the 1985

13  MOU characterizes all non-compliance issues by referencing the Judgment which,

14  as set forth below, includes no terms or orders regarding medical or mental health

15  issues.

16      d.      **The Judgment Includes No Orders Related To**
17              **Medical Or Mental Health Care.**

18      Following appeals to the Ninth Circuit and the United States Supreme Court,

19  the only remaining orders in the Judgment address: 1) beds; 2) visitation by

20  children; 3) outdoor recreation; 4) indoor recreation; 5) telephones; 6) cell

21  searches; 7) time for meals; and 8) change of clothing.  **There are no orders**

22  **regarding medical or mental health care for inmates in the County jail and**

23  **this fact is fatal to Plaintiffs' Motion and efforts to take discovery on medical**

24  **or mental health issues.**  Plaintiffs are entitled to take discovery on any of the

25  above terms provided they can establish as a prerequisite that Defendants are

26  somehow substantially out of compliance.

27

28

A/73456833.2

77

1          **e.     Medical / Mental Health Treatment Issues Were**
               **Abandoned In This Case And Addressed In *ACLU v.***
2               ***Pitchess.***

3          Defendants acknowledge that the pleadings in this case raised issues

4    regarding alleged violations of inmate's constitutional rights associated with the

5    provision of medical care in County jail; however, the simple fact is that these

6    issues were abandoned in this case when the parties determined that the best course

7    of action would be seek state licensure of the jails as a health care provider.  At

8    some point, the parties agreed to bifurcate the medical and non-medical aspects of

9    Plaintiffs' claims and from what Defendants can determine, no adjudication of the

10   medical issues was ever made. (*See*, Clark Decl., ¶ 7; Exhibit "6" – Status Report

11   re *ACLU v. Pitchess*, 6:10-13.)  Basically, the medical issues were never pursued in

12   this action and instead, the ACLU filed *ACLU et al. v. Pitchess et al.*, LASC Case

13   No. C 275653 in which the ACLU sought to mandate state licensure for the jails as

14   a health care provider.  This fact explains the lack of any references to medical /

15   mental health issues in the PTCO, the Judgment, and the various other documents

16   discussed herein.  While the Court received updates regarding the status of *ACLU*

17   *v. Pitchess* in this case, there was never any adjudication of the constitutionality of

18   the medical / mental health care in this case that Defendants can locate and for all

19   intents and purposes, the medical issues were abandoned.

20         **f.     This Motion Is An Improper Attempt To Modify The**
               **Terms Of The Judgment.**
21

22         Plaintiffs' portions recognize that the terms of the Judgment cannot be

23   modified absent a motion or a stipulation between the parties.  Specifically,

24   Plaintiffs admit that the "expansion [of the judgment] is entirely permissible under

25   the Court's inherent authority and under Fed.R.Civ.P. Rule 60(b), or stipulation of

26   the parties." (Plaintiffs' Portions, 30:19-20, footnote omitted.)

27   As set forth above, the Judgment includes no orders regarding the provision of

28   mental or medical care to inmates in County jail and because of this fact, such

A/73456833.2                          78

1  issues are irrelevant to this action.  Because of this fact, and as Plaintiffs' papers

2  essentially acknowledge, this Motion is an attempt modify the terms of the

3  Judgment – albeit in a procedurally improper manner.

4      Plaintiffs' obviously contend that issues related to mental health treatment in

5  County jail are part of the Court's Judgment in this case.  The above authorities

6  and documents directly contradict this position.  If Plaintiffs want to litigate this

7  issue, the procedurally proper means to do so would be to seek modification of the

8  Judgment, not to seek to compel discovery regarding issues outside the scope of

9  the case.

10          **g.**    **Conclusion Regarding Whether Medical And Mental**
**Health Treatment Are Part Of This Action.**

11

12      As set forth above, the core issue before the Court is whether medical /

13  mental health treatment is part of this case.  Based on the above, it is clear that

14  while such issues may have been raised in the pleadings, at some point in time

15  prior to trial Plaintiffs abandoned the medical issues from this action and pursued

16  them in *ACLU v. Pitchess*.  This fact explains very clearly by the PTCO, the

17  Judgment, and various other documents make no mention whatsoever to

18  constitutional issues associated with medical / mental health treatment.

19          **4.**    **Plaintiffs' Are Barred From Arguing That The Jails Are**
**Overcrowded Based On The Law Of The Case.**

20

21      As briefed above, the constitutionality of medical and mental health care in

22  the County jail system is not part of this action and because of this fact, as a fall-

23  back position, Plaintiffs contend that the jails are "overcrowded" and that such

24  "overcrowding" impacts health care thus entitling Plaintiffs' to take discovery on

25  this subject.  Plaintiffs are barred by the law of the case from making this argument

26

27

28

1    because, pursuant to agreements made by Plaintiffs and approved by the Court, by

2    definition, the jails are not overcrowded.[32]

3          "Law of the case is a jurisprudential doctrine under which an appellate court

4    does not reconsider matters resolved on a prior appeal." *Jeffries v. Wood,* 114 F.3d

5    1484, 1488-89 (9th Cir.1997) (en banc). "The law of the case doctrine states that

6    the decision of an appellate court on a legal issue must be followed in all

7    subsequent proceedings in the same case." *Caldwell v. Unified Capital Corp. (In re*

8    *Rainbow Magazine, Inc.),* 77 F.3d 278, 281 (9th Cir.1996) (internal quotation

9    marks omitted). "[U]nder the 'law of the case' doctrine one panel of an appellate

10   court will not as a general rule reconsider questions which another panel has

11   decided on a prior appeal in the same case." *Kimball v. Callahan,* 590 F.2d 768,

12   771 (9th Cir.1979).

13         Law of the case is a discretionary doctrine: It "merely expresses the practice

14   of courts generally to refuse to reopen what has been decided, not a limit to their

15   power." *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152

16   (1912). That discretion, however, is limited.  *Thomas v. Bible,* 983 F.2d 152, 155

17   (9th Cir.1993). The prior decision should be followed unless: "(1) the decision is

18   clearly erroneous and its enforcement would work a manifest injustice, (2)

19   intervening controlling authority makes reconsideration appropriate, or (3)

20

21   [32] In support of their contention that the jails are "overcrowded", Plaintiffs rely
22   heavily on a declaration from one of Plaintiffs' experts, Dr. Terry Kupers.  Other
     portions of Plaintiffs arguments also rely on Dr. Kupers' report.  A report by Dr.
23   Kupers was not part of the Exhibits provided to Defendants in support of Plaintiffs'
     portions and accordingly, the Court should decline to consider any arguments
24   based on Dr. Kupers' report.  Pursuant to Local Rule 37-2.2., "[f]ollowing the
     conference of counsel, counsel for the moving party shall personally deliver, e-
25   mail or fax to counsel for the opposing party the moving party's portion of the
     stipulation, **together with all declarations and exhibits to be offered in support**
26   **of the moving party's position.** (*Id.* Emphasis added.)  In the event the Court
     considers arguments based on Dr. Kupers' report or statements contained therein,
27   Defendants should be provided with an opportunity to respond after being provided
     with the report itself.

28

1  substantially different evidence was adduced at a subsequent trial." *In re Rainbow*

2  *Magazine,* 77 F.3d at 281 (internal quotation marks omitted).

3       For purposes of this case, overcrowding "is defined as that point where the

4  inmate population exceeds a number which:

5       a.     Renders it impossible for the Sheriff to comply with the orders in

6  *Rutherford v. Pitchess* as they now provide or as they may be modified by

7  agreement of the parties and approved by the court.

8       b.     Renders is impossible for the Sheriff to exercise his usual discretion

9  and management options to provide adequate security and control."

10  (*See,* Plaintiffs' Request for Judicial Notice, Exhibit 3, 2:28 – 3:8.)

11       Importantly, Plaintiffs agreed to the above definition of overcrowding and

12  the Court approved it. Even more importantly, there is not one shred of evidence

13  that either of the above situations that trigger a finding of overcrowding has been

14  established. The definitions above bar Plaintiffs from arguing that the jails are

15  overcrowded and it renders Dr. Kupers' opinions, even with the defects discussed

16  in Defendants' evidentiary objections, meaningless.

17       In addition to the lack of evidence, even looking at the actual inmate

18  population of the jail system demonstrates that the jails are not overcrowded. As

19  of October 5, 2010, the County jail population was approximately 15, 800 inmates

20  including both males and females. (*See,* Clark Decl., ¶ 9.) The inmate population

21  of Men's Central Jail was just 4,000. (*Id.*) Under existing stipulated and approved

22  agreements in this case, the Sheriff's Department can house up to 6,800 in Men's

23  Central Jail and the entire jail system can house up to 25,599 inmates. (*See,*

24  Plaintiffs' RJN, Exhibit 4, 8:6-7 referencing Jail Population Management Order.)

25       **5.     In Addition To The Defects Briefed Above, Plaintiffs'**
          **Motion Should Still Be Denied Based On Defendants'**
26          **Objections To The Subject Discovery.**

27       In addition to the above issues, Defendants also asserted other objections to

28  the subject requests and these additional objections are briefed below. In short,

A/73456833.2

81

1   other objections asserted in response to the subject requests warrant the denial of

2   this Motion.  Defendants have provided largely generalized briefings regarding

3   these objections because of the format of Plaintiffs' portions.  Plaintiffs' grouping

4   of requests together makes it next to impossible for Defendants to brief all relevant

5   objections as they relate to individual requests.  Where possible, Defendants have

6   provided examples of an objection's application to a specific request.  **In the event**

7   **the Court is inclined to order any document production, Defendants**

8   **respectfully request an opportunity to brief and be heard on unique issues and**

9   **relevant objections that may apply to specific requests.**  It was Plaintiffs'

10  burden to serve Defendants with contentions that comply with the Local Rules and

11  Plaintiffs failed to do so.  Defendants should not be prejudiced because of this

12  failure.

> **a.  Given Plaintiffs' Multiple Attempts To Narrow The Scope Of The Original Requests And Because Of Plaintiffs' Failure To Include Any Proposed Resolution, Defendants Are Unclear As To What Documents Plaintiffs Actually Seek.**

16       During the parties' meet and confer discussions, Plaintiffs narrowed their

17  requests several times as part of efforts to respond to Defendants objections based

18  on the scope and breadth of the subject requests.  (*See*, Plaintiffs' Exhibits

19  generally, letters from Plaintiffs' counsel.)  Unfortunately, Defendants do not agree

20  with Plaintiffs that the proposed amendments to the subject requests actually

21  narrow the scope of responsive documents.  In seeking to compel production,

22  Plaintiffs have included both the original and narrowed versions of the subject

23  request; however, it is unclear whether Plaintiffs are seeking to compel a response

24  to the original or narrowed versions.

> **b.  The Subject Requests Fail To Designate The Documents Sought With Reasonable Particularity.**

One of Defendants largest concerns associated with the subject requests

(other than those briefed above regarding the scope of the Judgment) is that they

1   fail to designate with reasonable particularity the documents sought. This creates a

2   very real danger that Defendants could search extensively for documents and still

3   be unable to ever conclusively determine whether all responsive documents have

4   been produced.

5        The subject requests fail to describe the documents they seek with

6   reasonable particularity such that Defendants could search for and produce

7   responsive records absent significant assumptions regarding what Plaintiffs

8   actually want. This was a central issue during the parties meet and confer

9   discussions. The purpose of the requirement that a request for production describe

10  what it seeks with reasonable particularity is so that a party can adequately be

11  informed as to what documents are responsive. When an entity as large as

12  Sheriff's Department is involved and considering the extremely large volume of

13  records such an entity has in its possession, custody, or control, it is absolutely

14  imperative that discovery requests be narrowly drawn and as specific as possible to

15  avoid undue burden and unnecessary costs. Here, despite Plaintiffs' assertions to

16  the contrary, the subject requests fail to describe the documents sought with

17  reasonable particularity and instead, with respect to mental health issues, Plaintiffs'

18  request take more of a "kitchen sink" approach to discovery.

19       **While a description by category is not *per se* objectionable, it is**

20  **objectionable if the category fails to offer some reasonable specificity so that a**

21  **responding party can adequately determine what records are responsive.** *See*,

22  FRCP 34(b)(1)(A); *SEC v. American Beryllium & Oil Corp.* 47 F.R.D. 66, 68 (SD

23  NY 1968). Although the terms "by category" and "reasonable particularity" are

24  not defined in the Federal Rules, the apparent test is whether a respondent of

25  average intelligence would know what items to produce. *See, Regan-Touhy v.*

26  *Walgreen Co,* 526 F.3d 641, 649–650 (10th Cir. 2008); *In re Folding Carton*

27  *Antitrust Litig.* 76 F.R.D. 420, 42 (ND IL 1977) 4; *Kidwiler v. Progressive*

28  *Paloverde Ins. Co.* 192 F.R.D. 193, 202 (ND WV 2000). Thus, requests for "all

A/73456833.2

83

1  financial records" or "all correspondence" or "all documents relating to liability"

2  may be objectionable for inadequate description.  They embrace too many

3  subcategories to have much meaning. *See, Regan-Touhy v. Walgreen Co., supra,*

4  526 F.3d at 649–650.

5      Here, the vast majority of the subject requests fail to describe the documents

6  they seek with reasonable particularity.  Request for Production No. 3 (even as

7  narrowed), which seeks "documents, including lists, showing all prisoners who

8  have attempted suicide or been on suicide watch during the past six months; and

9  documents, including lists and psychological autopsies, showing all in-custody

10  deaths and suicides during the past three years" , is a good example.  First, this

11  request highlights why Local Rule 37 requires each discovery request at issue to be

12  separately stated so that a responding party can specifically address unique issues

13  that may apply.  Unquestionably, Request No. 3 seeks extremely sensitive records

14  and as phrased, this Request seeks the production of every inmate's medical and

15  mental health records that attempted suicide or has been on suicide watch during

16  incarceration in County jail.  Defendants doubt that Plaintiffs are actually seeking

17  inmate's mental health records, however, as phrased, such records would arguably

18  be responsive and Request No. 3 is indicative of this defect with is present in many

19  of the subject requests.[33]

20      For each Request that fails to designate the documents requested with

21  reasonable particularity, no document production should be ordered and if the

22  Court does order a document production, first, Defendants should be given an

23  opportunity to brief the Court on specific concerns associated with responsive

24  documents and if the Court concludes that production should be made, to avoid the

25  needless expenditure of scare public resources, Defendants should be provided

26

27  [33] Further examples can be found in, without limitation, Request Nos. 5, 6, 7, 8, 12, 20, and 22.

28

1   with a very specific list of the documents that must be produced so that Defendants

2   are not forced to search aimlessly for responsive documents.

        c.      **Documents Responsive To The Subject Requests Are
                Protected By From Disclosure By HIPAA.**

5       Many of the subject requests undeniably seek information that is protected

6   from disclosure under the Health Insurance Portability and Accountability Act

7   ("HIPAA").  HIPAA establishes a general policy for security of protected health

8   information.  42 U.S.C. § 1320d-2.  The Act also establishes penalties for wrongful

9   disclosure of protected health information.  HIPAA's specific disclosure

10  restrictions are found at 45 C.F.R. § 164.500 et. seq.  Under 45 C.F.R. §

11  164.502(a), an entity that is considered a "covered entity" under 45 C.F.R. §

12  160.103 is not permitted to use or disclose protected health information except as

13  provided by the Code.  "Health information" is defined as information created or

14  received by a health care provider or relating to the past, present or future medical

15  condition of an individual.  *Id.*

16      45 C.F.R. §§ 164.510 and 164.511 require the written authorization of the

17  individual whose information is sought, or an opportunity to agree or object, prior

18  to any disclosure of protected health information, except in limited circumstances

19  described by 45 C.F.R. § 164.512.  Under HIPAA, disclosure of an individual's

20  medical information, in a litigation context, can be made by a "covered entity"

21  pursuant to a subpoena, court order, or discovery request only if the following

22  compliance procedures are met:

23      1)      the covered entity receives satisfactory assurance from the requesting

24              party that the individual whose medical information is sought has

25              been given notice of the request; **or**

26      2)      the covered entity receives satisfactory assurance from the requesting

27              party that the party seeking the information has made reasonable

28              efforts to secure a qualified protective order.

A/73456833.2                              85

1    45 C.F.R. § 164.512(e)(1)(ii).

2         "Satisfactory assurance" for purposes of subsection B is provided through a

3    written statement and accompanying documents that demonstrate that the party

4    seeking the protected information has requested a qualified protective order from

5    the court, or entered into a qualified protective order presented to the court. *Id.* §

6    164.512(e)(1)(iv).  A qualified protective order is defined as a court order that: (a)

7    prohibits the parties from using or disclosing the protected health information for

8    any purpose other than the litigation or proceeding for which it was requested; and

9    (b) requires the return of the protected information to the covered entity or

10   destruction of the information at the end of the litigation or proceeding.  *Id.* §

11   164.512(e) (1)(v).

12        Here, while Defendants acknowledge that Plaintiffs have submitted a

13   proposed protective order, this case is a class action and many of the subject

14   requests essentially require the production of all County jail inmates' medical and

15   mental health records.  While 45 C.F.R. § 164.512(e)(1)(ii) allows for production

16   of protected records subject to a qualifying protective order, Defendants

17   contemplate that such disclosure is normally in the context of a single litigant or

18   specified individual's medical information.  Plaintiffs have not cited and

19   Defendants have been unable to locate any case in which class members medical

20   records were produced to class counsel without the knowledge or consent of class

21   members.  **In this situation, the production of extremely sensitive mental**

22   **health and medical documents to Plaintiffs' counsel without releases exposes**

23   **Defendants to a huge risk of liability from actions filed by inmates who may**

24   **learn of and object to the disclosure of their medical records.**  A protective

25   order, while certainly appropriate for such records, does little, if anything, to

26   protect Defendants from incurring substantial attorney's fees and costs in defense

27   of claims by inmates associated with the production of their County mental and

28   medical records.  Defendants' counsel raised this concern during meet and confer

1  discussions with Plaintiffs' counsel and inquired as to whether Plaintiffs would be

2  willing to indemnify Defendants for any attorney's fees, costs, and damages

3  incurred associated with claims by inmates against Defendants based on the

4  production of records and, not surprisingly, Plaintiffs declined. (*See*, Clark Decl.,

5  ¶ 10.)  Producing documents to Plaintiffs should not force Defendants to expose

6  themselves to potentially huge liability and with all due respect, absent indemnity,

7  a protective order does little to address Defendants concerns.

### d.  Plaintiffs' Discovery Is Precluded By Prior Class Action Litigation In This District Addressing The Constitutionality Of The Medical Care System in County jail.

11  Defendants contemplate that Plaintiffs seek documents responsive to the

12  subject discovery requests in furtherance of an argument that mental health

13  treatment in the County jail system is constitutionally deficient.  Indeed, Plaintiffs

14  "contend that it is unconstitutional to house inmates with severe mental illness in

15  MCJ because, *in toto*, the conditions of their confinement there – conditions which

16  include, but are not limited to, the "madhouse effect" and inadequate mental health

17  treatment – violate constitutional minimums.  As set forth below, Plaintiffs are

18  precluded from pursuing this claim based on rulings in prior class action cases in

19  the Central District and Ninth Circuit.  As Plaintiffs correctly point out, these

20  concepts are often confused; however, in this situation, both "claim preclusion"

21  and "issue preclusion" standards are satisfied and each preclude Plaintiffs from

22  seeking discovery regarding mental and medical health treatment in County jail.

23  As the Court is aware, Municipalities cannot be held liable under 42 U.S.C.

24  § 1983 under a theory of "respondeat superior" for injuries inflicted solely by their

25  employees and agents.  *Monell v. Department of Social Services*, 436 U.S. 658,

26  691, 98 S.Ct. 2018 (1978).  Municipalities can be held liable under section 1983

27  only where there is evidence that "action pursuant to official municipal policy of

28  some nature caused a constitutional tort." *Monell, supra*, 436 U.S. at 691 and 694.

1       Regardless of whether mental health or medical treatment issues are part of

2   this action (and as set forth above, Defendants maintain they are not), Plaintiffs

3   herein are collaterally estopped from relitigating whether the health care system in

4   County jail is constitutionally adequate because of prior determinations against

5   them made by District Courts and the Ninth Circuit in *Juan Porras and Donald*

6   *Grisby, Individually and on Behalf of All Others Similarly Situated, v. County of*

7   *Los Angeles and Los Angeles County Sheriff's Department*, U.S.D.C., C.D. Cal.

8   Case No. CV04-1229 RGK (RNBx)("Porras") and *Leandry v. County of Los*

9   *Angeles*, 2009 U.S. App LEXIS 24704, at *2. Specifically, on March 24, 2005, as

10  amended on August 31, 2005, the District Court in *Porras* certified a class

11  pursuant to Fed.R.Civ.P. 23(b)(2) "consisting of present and future pretrial

12  detainees and post-conviction inmates who have sought or will seek medical care

13  while they are or will be in defendants' custody in the Men's Central Jail and Twin

14  Towers Correctional facilities." (*See*, Plaintiffs RJN, Exhibit 6, 1:15-19.)

15  Plaintiffs herein are members of this class.[34]

16      In *Porras*, the plaintiffs brought claims under 42 U.S.C. § 1983 asserting

17  that Defendants have violated their Eighth and Fourteenth Amendment Rights by

18  failing to provide a system of ready access to adequate medical care and services.

19  Likewise in the present case, while Defendants contest that medical care and

20  mental health issues are part of this action, in the event the Court rules otherwise,

21  Plaintiffs herein claim exactly the same thing.

22      On October 31, 2006, the District Court in *Porras* determined that

23  Defendants' medical care system was constitutionally adequate, and determined

24  that there was no evidence of a pattern of conduct which demonstrates a systemic

25

26  [34] The class in this case is defined as "all prisoners in the Jail since December 31,
27  1975..." (*See*, Plaintiffs' RJN, Exhibit 2, 2:6-7.) The class includes both pretrial
    and convicted inmates.)

28

A/73456833.2                                88

1  failure in the County's medical care system in violation of the Eighth Amendment.

2  (*See*, Defendants Request for Judicical Notice, Exhibit "A".)  Judgment in *Porras*

3  was entered in favor of these defendants on December 21, 2006, and that judgment

4  is now final.

5       As stated by the United States Supreme Court in *Cooper v. Federal Reserve*

6  *Bank of Richmond*, 467 U.S. 867, 104 S.Ct. 2497 (1984):

7       There is of course no dispute that under elementary

8       principles of prior adjudication a judgment in a properly

9       entertained class action is binding on class members in

10       any subsequent litigation. [citations] Basis principles of

11       res judicata (merger and bar or claim preclusion) and

12       collateral estoppel (issue preclusion) apply.... A judgment

13       in favor of the defendant extinguishes the claim, barring

14       a subsequent action on that claim. A judgment in favor of

15       the other side is conclusive in a subsequent action

16       between them on any issue actually litigated and

17       determined, if its determination was essential to that

18       judgment."

19  Cooper, *supra*, 467 U.S. at 874.

20       "Collateral estoppel may be asserted even when the prior determination... is

21  made on a motion for summary judgment rather than after a full-fledged trial.

22  [citation]." *Scripps Clinic & Research Foundation v. Baxter Travenol*, 729

23  F.Supp.1473, 1475 (D. Del. 1990). "[O]nce a class is certified, principles of res

24  judicata and collateral estoppels apply to all class members. [citation]." *Rodriguez*

25  *v. Gates*, 2002 U.S. Dist. LEXIS 10654, n. 16 (C.D. Cal.).

26       In *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115 (1940), the United States

27  Supreme Court stated: "It is a familiar doctrine of the federal courts that members

28  of a class not present as parties to the litigation may be bound by the judgment

A/73456833.2

89

1   where they are in fact adequately represented by parties who are present...."
2   *Hansberry, supra*, 311 U.S. at 42-43.

3        Preclusion can be either "claim preclusion", which prevents the re-litigation
4   of a claim previously tried and decided, or issue preclusion, which bars the re-
5   litigation of issues actually adjudicated in previous litigation between the same
6   parties. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §
7   4402 (1981).  Under either test, Plaintiffs here are precluded from re-litigating
8   whether the health care system in County jail is constitutionality adequate.

9        To establish claim preclusion, Courts consider: (1) whether rights or
10  interests established in the prior judgment would be destroyed or impaired by
11  prosecution of the second action; (2) whether substantially the same evidence is
12  presented in the two actions; (3) whether the two suits involve infringement of the
13  same right; and (4) whether the two suits arise out of the same transactional
14  nucleus of facts. *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201-02 (9th
15  Cir.), *cert. denied,* 459 U.S. 1087 (1982).  Here, all of these elements are satisfied.
16  First, if Plaintiffs herein were permitted to re-litigate the constitutionality of the
17  medical and mental health treatment in County jail, the *Porras* Judgment would be
18  virtually meaningless.  Second, if Plaintiffs are permitted to re-litigate the issues
19  decided in *Porras*, they would have to rely on exactly the same evidence that was
20  presented in *Porras* which would amount to inmate declarations regarding lack of
21  medical care, medical records, County jail policies and procedures, and expert
22  testimony regarding medical care. The firs three categories of documents are, in a
23  nut shell, the documents Plaintiffs seek in the subject requests.  Third, both
24  Plaintiffs herein and the *Porras* plaintiffs allege violations of their Eighth and
25  Fourteenth Amendment rights associated with the provision of health care services
26  in County jail.  Fourth and finally, both this case and *Porras* arise from the
27  provision of health care services to inmates in County jail.  All of the requirements
28

A/73456833.2

1   for claim preclusion are satisfied and this fact bars any entitlement to discovery

2   aimed at advancing claims already litigating in *Porras*.

3          To establish issue preclusion, (1) the issue at stake must be identical to the

4   one alleged in the prior litigation; (2) the issue must have been actually litigated in

5   the prior litigation; and (3) the determination of the issue in the prior litigation

6   must have been a critical and necessary part of the judgment in the earlier action.

7   *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985).

8   Here, this standard is easily satisfied.  The issues are same, it was unquestionably

9   litigated in *Porras*, and the determination was the the sole issue involved in the

10  case.

11         In attempting to defeat preclusion, Plaintiffs make several arguments.  First,

12  Plaintiffs claim that "changed circumstances present new operational facts post-

13  *Porras* that vitiate any preclusive effect the *Porras* court's determination that the

14  LACJ system of medical care for inmates is constitutionally adequate may have

15  had." (Plaintiffs' portions, 39:12-15.)  First, this argument ignores the fact that the

16  Ninth Circuit's decision in *Leandry* (which was based on *Porras*) was entered in

17  2009.  Second, Plaintiffs offer no explanation of just how circumstances have

18  changed and instead base these arguments on pure speculation.  For example,

19  Plaintiffs claim that "[s]ince 2006, a number of events have occurred that arguably

20  could have changed the adequacy of medical and mental health treatment available

21  in the LACJ system."  Basically, Plaintiffs have no proof whatsoever that anything

22  has changed, otherwise, Plaintiffs would have filed such proof in support of their

23  Motion.  Absent something more than "could have", "would" and "arguably",

24  Plaintiffs have wholly failed to demonstrate any changed circumstance that would

25  remove the preclusive effect of the *Porras* Judgment.

26         Next, Plaintiffs argue that the claims in this action are different from those in

27  *Porras*.  Regardless of Plaintiffs' attempts to draw minute distinctions, as cited

28  above, Plaintiffs herein seek discovery so they can prove that inadequate mental

A/73456833.2

91

1   health treatment and access thereto violates inmates' constitutional rights.  In fact,

2   the plaintiffs' claims in *Porras* were fundamentally identical.  Specifically, in

3   *Porras*, plaintiffs alleged that "Defendants' systematic barriers to medical, dental,

4   and mental health care violate the inmates' rights under the Eighth and Fourteenth

5   Amendments."  (*See*, Plaintiffs' RJN, Exhibit 5, page 7.)  Here, Plaintiffs' claims

6   are virtually and materially identical to the claims in *Porras*.

7        Based on the above, Plaintiffs are barred in this action from re-litigating the

8   issue of whether Defendants, through their policies, procedures, and customs,

9   failed to provide class members with adequate medical and mental health care and

10  accordingly, discovery related to this issue is precluded.

11       e.   **Mental Health Care In The Los Angeles County Jail**
              **System Is Already The Subject Of Monitoring By The**
12            **Department Justice And Reports Associated**
              **Therewith Are Confidential.**
13

14       Some of the subject requests seek confidential reports of the United States

15  Department Justice' monitoring of the provision of mental health care in County

16  jail.  DOJ's investigation into mental health services in the County jail system have

17  always been confidential based on the need for DOJ investigators to have

18  unfettered access to Sheriff's Department personnel and information.  Despite

19  Plaintiffs' arguments and even if CRIPA does not include an express

20  confidentiality provision, both DOJ and the Sheriff's Department have always

21  maintained the DOJ reports under strict confidentiality standards.  If these reports

22  are not confidential and are ordered produced, the result would be to discourage

23  Sheriff's Department cooperation with DOJ.  Defendants are in the process of

24  requesting further information from DOJ regarding the confidentiality of their

25  reports and, if possible, Defendants will provide further details in a supplemental

26  memorandum.  Given the sensitivity of the DOJ reports, in the event the Court

27  considers ordering Defendants to produce them, Defendants respectfully request

28  that the Court review them in camera prior to production.

A/73456833.2
92

1
2

      **f.**    **Documents Responsive To The Subject Requests Are Protected By The Official Information Privilege.**

3      Given the scope of Plaintiffs' requests, out of an abundance of caution,

4 Defendants asserted the official information privilege, the attorney-client privilege,

5 and the work product doctrine.[35]  The reason for this is that the subject requests, as

6 phrased, made it impossible for Defendants to accurately determine the complete

7 universe of responsive documents and it is entirely possible that many of the

8 subject requests actually call for privileged records, but some of them most

9 certainly do.

10     Several of the subject requests seek information that is protected from

11 disclosure by the official information privilege.  Most notably, Request No. 13

12 (which seeks documents most likely contained in mental health professionals'

13 personnel files) and any requests which seek either disciplinary, investigative, or

14 audit reports fall within this category.  The cited requests are just examples and in

15 many cases, the subject requests were often so broadly phrased that other

16 documents protected from disclosure could be responsive.  Out of an abundance of

17 caution, Defendants asserted the Official Information Privilege and maintain that

18 this privilege bars disclosure of certain documents responsive to the subject

19 requests.

20     Here, while Defendants remain uncertain as to all of the subject requests that

21 potentially call for information protected by the Official Information privilege;

22 however, to the extent that is the case, the requirements for asserting the privilege

23 have been satisfied.

24

25  [35] Plaintiffs have not briefed the attorney-client privilege or work production

26 doctrine and Defendants assume Plaintiffs do not seek to compel production of

documents protected by these privileges, if any even exist.  Defendants have not

27 briefed either of these privileges, but this lack of briefing should not be construed

as a waiver.

28

1     Federal common law recognizes a qualified privilege for official

2     information.  *Sanchez v. City of Santa Ana*, *supra*, 936 F.2d at 1033-34.

3     "Government personnel files are considered official information" for purposes of

4     the privilege.  *Id.*; *see also*, *Zaustinsky v. University of California*, *supra*, 6 F.R.D.

5     at 625.

6     The official information privilege is grounded in the recognition that

7     "disclosure of at least some kinds of information developed by law enforcement

8     could harm significant governmental interests."  *Kelly v. City of San Jose*, *supra*,

9     114 F.R.D. 563, 660.  "To determine whether the information sought is privileged,

10    courts must weigh the potential benefits of disclosure against the potential

11    disadvantages."  *Sanchez v. City of Santa Ana*, 936 F.2d at 1033.

12    The factors for judicial consideration include:

13          (1)  The extent to which disclosure will thwart governmental

14    processes by discouraging citizens from giving the government information;

15          (2)  The impact upon persons who have given information of having

16    their identities disclosed;

17          (3)  The degree to which government self-evaluation and consequent

18    program improvement will be chilled by disclosure.

19    *Kelly*, *supra*, 114 F.R.D. at 663.

20    In determining whether or not the official information privilege applies, the

21    weighing and balancing "should be conducted on a **case by case basis**,

22    determining what weight each wrong consideration deserves, any specific fact

23    situation that is before the court."  *Kelly*, 114 F.R.D. at 656.  To facilitate this

24    process, a party asserting the official information privilege must submit a

25    declaration or affidavit from a responsible official that includes, among other

26    factors, an affirmation that the materials requested are, in fact, confidential and an

27    explanation how disclosure subject to a protective order would create a risk of

28    harm to significant governmental or privacy interests.  *Id.* at 670.  Here,

A/73456833.2
94

1   Defendants submitted the Declaration of Captain Shaun Mathers detailing

2   addressing each of the above requirements.   In addition to the Mathers

3   Declaration, Defendants submitted a privilege log, listing by category, the

4   documents Defendants are aware are protected from disclosure.  Plaintiffs assert

5   that the privilege log submitted with the subject responses is insufficient to support

6   the assertion of the Official Information Privilege.  This contention is without

7   merit.  First, Plaintiffs do not dispute that a privilege log was included with

8   Defendants' responses to the subject requests.  Despite Plaintiffs' assertions to the

9   contrary, Defendants were not required to provide Plaintiffs with a detailed,

10   document by document privilege log in this circumstance.  *See, Burlington*

11   *Northern & Santa Fe Railway Co. v. United States District Court,* 408 F.3d 1142,

12   1149 (9th Cir.2005)(rejecting *per se* rule that privilege is deemed waived if

13   privilege log is not produced with discovery responses in favor of multi-factored

14   "holistic reasonableness analysis" of waiver issue); *see also, Imperial Corporation*

15   *of America v. Durkin,* 174 F.R.D. 475, 478 (S.D.Cal.1997)(recognizing that

16   document-by-document privilege log is not rigid requirement where circumstances

17   make less detailed assertion appropriate).

18       The federal rules do not require a privilege log to assert objections, and case

19   law following Rule 26 has noted the absence of any privilege log requirement.

20   Fed.R.Civ.P. Rule 26(b)(5)(A)(ii) (requiring only that the responding party

21   "describe the nature of the documents, communications, or tangible things not

22   produced or disclosed").  In addition, a document by document log is not required

23   when such an endeavor would impose an undue burden on the responding party.

24   *See, Imperial Corporation of America v. Durkin,* 174 F.R.D. at 477-479.  A

25   general description of the documents to which the responding party is claiming

26   privilege will suffice.  Thus, although Defendants produced a privilege log as an

27   accommodation to Plaintiffs, it was not required to do so and the log itself clearly

28   identified the limited number of documents that were being withheld.

A/73456833.2

95

1        It is also well established that, while a responding party should identify the

2    documents in a way that will permit the asking party and the Court to evaluate the

3    grounds for assertion of the privilege, the responding party should not reveal any

4    information in the privilege log that is itself privileged.  Fed.R.Civ.P. Rule

5    26(b)(5)(A)(ii) (stating that, while a party must describe the documents, a party

6    must "do so . . . **without revealing information itself privileged or protected**").

7    There is therefore a limit to the amount of information a party must disclose in a

8    privilege log in those circumstances where a privilege log is required.  Defendants'

9    privilege log clearly identified the extremely limited selection of documents that

10   was being withheld based on claims of privilege.

11       Based on the above, all of the requirements for asserting the official

12   information privilege were satisfied and the privilege should bar production of

13   certain documents to Plaintiffs including, without limitation, any documents

14   contained in personnel files and investigative and audit reports.[36]

---

16   [36] In the event the Court does not deny this Motion in it's entirety, prior to any
17   order requiring the production of personnel files or other information which
     Defendants contend is protected by the Official Information Privilege, Defendants
18   request that the Court conduct an in camera review of the subject documents.  The
     Supreme Court "has long held the view that in camera review is a highly
19   appropriate and useful means of dealing with claims of governmental privilege."
20   *Kerr v. United States District Court*, 426 U.S. 394, 504, 96 S.Ct. 2119 (1976).
     Indeed, the Supreme Court has emphasized that an in-camera review is a
21   "relatively costless and eminently worthwhile method to protect both sides."  *Id.*
22       In light of the Kerr court's pronouncement, district court's "routinely conduct
     [in camera] reviews in civil rights cases...."  *Kelly*, 114 F.R.D. at 667.  The
23   rationale for in-camera review is grounded in the recognition that requested
24   documents in civil rights cases raise a myriad of confidentiality concerns, thereby
     requiring appropriate orders to protect that information from dissemination:
25             Since there are so many different categories of
26             information that Plaintiffs might seek to discover in
27             these types of cases, and since it is impossible to foresee
28             all the kinds of situations in which preserving the

(Footnote Continued on Next Page.)

1    **g.    The Subject Requests Are Overbroad, Burdensome, And Would Be Prohibitively Costly To Respond To As Phrased.**

2

3    Here again, this category of objections highlights the importance of the

4    Local Rule 37 format requirements because some of the subject requests are more

5    burdensome and costly than others.  With respect to some of the subject requests,

6    Defendants maintain that the burden and cost of responding alone warrants the

7    denial of this Motion as to such requests.  The court may limit the use of any

8    discovery method if it determines that the burden or expense of the discovery

9    outweighs its likely benefit.  FRCP 26(b)(2)(C); *see also, Coleman v. American*

10   *Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994); *Sonken-Galamba Corp. v.*

11   *Atchison, T. & S.F. Ry. Co.*, 333 F.2d 661 (W.D.Mo 1939) (civil procedure rule

12   providing for production of documents for inspection and copying or

13   photographing does not authorize the court to require production of documents

14   which could be produced only after weeks of labor and at great cost).  Whether a

15   discovery request imposes an undue burden on a party is identified by looking at

16   factors such as relevance, the need for the documents, the breadth of the document

17   request, the time period covered by such request, the particularity with which the

18   documents are described, and the burden imposed.  *Moore v. Hartman*, 241 F.R.D.

19   59, 63 (D.D.C. 2007).

20

21   _____

(Footnote Continued from Previous Page.)

22

23                    confidentiality of different kinds of information might be
                      important, it makes no sense to decide that certain kinds

24                    of information, regardless of the context in which it is
                      sought, should be wholly outside the reach of privilege

25                    and always discoverable.

26   *Kelly*, 114 F.R.D. at 662.
           Furthermore, in the event any production of documents is ordered, as

27   previous requested, Defendants respectfully request that the Court impose an
     "attorneys' eyes only" protective order on the subject documents.

28

A/73456833.2                                    97

1    Courts have continually noted the impropriety of massive documents

2    requests similar to the ones made by Plaintiffs.  In *Coleman*, plaintiffs argued that

3    they should have been allowed to search every file that exists at the headquarters of

4    the American Red Cross for any documents that might be relevant to their case.  23

5    F.3d at 1098.  The Red Cross objected to this request on the basis of it being overly

6    burdensome and the Court agreed.  *Id*.  Similarly, in *N.O. v. Callahan*, 110 F.R.D.

7    637 (D.Mass 1986), mental patients requested personnel information about each

8    person involved in the delivery of medical care to inpatients at a state mental

9    health facility.  *Id*. at 639.  The court held that this request was unduly

10   burdensome, because the information was not available in computerized files, had

11   to be obtained through a manual search, and involved at least 15,600 persons.  *Id*.

12   at 643, 646.  The court eventually allowed production of a much smaller number of

13   documents limited to only a few relevant locations.  *Id*. at 644, 646-647.

14   Here, Plaintiffs' document requests are burdensome on their face because of

15   the broad language they employ.  A request for production of documents may be

16   overly broad or unduly burdensome on its face if it is couched in such broad

17   language as to make arduous the task of deciding which of numerous documents

18   may conceivably fall within its scope.  *Cardenas v. Dorel Juvenile Group Inc.*, 232

19   F.R.D. 377, 382 (D.Kan 2005).  For example, a discovery request seeking "[a]ll

20   documents relating to [defendant's] participation in any purchase of wheat in any

21   country including, but not limited to, the United States and Argentina" was overly

22   broad and unduly burdensome on its face, due to its use of the omnibus phrase

23   "relating to."  *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D.

24   655 (D.Kan 1999).  Plaintiffs' requests use the same "relating to" language, and

25   are equally unduly burdensome and overbroad.

26   For example, several of the subject requests present a potentially huge and

27   burden and cost to Defendants if the Court orders a response.  As Defendants

28   stated in objecting to the subject requests, "[r]esponding to this Request and

A/73456833.2
98

1    Plaintiffs' additional request below would require the production of at least

2    100,000 pages of records and at least $50,000 in costs to the Los Angeles County

3    Sheriff's Department alone.  This estimate does not include any necessary

4    attorney's fees which would be incurred prior to any production to counsel for

5    Plaintiffs."  Realistically, responding to even a handful of Plaintiffs' requests, as

6    phrased, will force Defendants to expend more than $100,000 of scare public

7    resources and considering the dramatic budget cuts the Sheriff's Department has

8    been forced to make, this is money the Department simply does not have.  Further

9    examples of overly burdensome and costly requests can be found in, without

10   limitation, Request Nos. 3, 4, 6, 7, 16, 19, 20, 23, 24, 26 and 27.

11          For similar reasons to those discussed above regarding the undue burden and

12   cost, the subject requests are also objectionable because they are overbroad.  To

13   avoid duplicative briefing, Defendants incorporate by reference the objections

14   stated above regarding undue burden into this section.  General language in a

15   document request can be objected to on the grounds that the discovery request is

16   overbroad.  For example, in *In re Urethane Antitrust Litigation*, 261 F.R.D. 570

17   (D.Kan. 2009) the district court held, "a request may be overly broad on its face if

18   it is couched in such broad language as to make arduous the task of deciding which

19   of numerous documents may conceivably fall within its scope.  A request seeking

20   documents 'pertaining to' or 'concerning' a broad range of items requires the

21   respondent either to guess or move through mental gymnastics ... to determine

22   which of many pieces of paper may conceivably contain some detail, either

23   obvious or hidden, within the scope of the request." *Id.* at 576.  Many of the

24   subject requests are so broad that, for Defendants to respond to them, it would

25   require "mental gymnastics" and significant assumptions regarding the documents

26   Plaintiffs are actually seeking.  This is not Defendants' burden in responding to

27   discovery.

28

A/73456833.2

99

Joint Stipulation Regarding Plaintiffs' Motion To Compel Responses
To First Set Of Requests For Production Of Documents

**h.   Privacy Rights Of Inmates And Third Parties.**

Many of the subject requests implicate the privacy rights of third parties and inmates of the County jail. Privacy rights of third parties can form the basis for not producing records (or first requiring a protective order). A person whose privacy is affected by a discovery request may either object to that request or seek a protective order. *Laxalt v. McCLatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987). Privacy objections are particularly important, because "it is well-established that [under the Federal Rules of Civil Procedure,] the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News Inc., v. United States Dist. Court N. Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999).

Unlike a privilege, the right of privacy is not an absolute bar to discovery. Rather, courts balance the need for the information against the claimed privacy right. Resolution of a privacy objection or request for protective order requires a balancing of the need for the particular information against the privacy right asserted. *Perry v. State Farm Fire & Cas. Co.*, 734 F2d 1441, 1447 (11th Cir. 1984). In general, protection of privacy rights is a matter of state law. *See, Katz v. United States*, 389 U.S. 347, 350-351 (1967) ("[P]rotection of a person's general right to privacy -- his right to be let alone by other people -- is, like the protection of his property and life, left largely to the law of the individual states."); California Constitution Article 1, Section 1 ("All people are by nature free and independent and have inalienable rights. Among these are... pursuing and obtaining safety, happiness, and privacy."). However, **Federal courts recognize a right of privacy** that can be raised in response to discovery requests. *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992); *DeMasi v. Weiss*, 669 F2d 114, 119–120 (3rd Cir. 1982).

The California Supreme Court has interpreted the state constitutional right to privacy to be "inalienable." *White v. Davis*, 13 Cal.3d 757, 773 (1975); *see*, Weil

1  & Brown, *Cal.Prac.Guide: Civ. Pro. Before Trial*, § 8:293 (TRG 1998) ("even

2  highly relevant, non-privileged information may be shielded from discovery if its

3  disclosure would impair a person's inalienable right of privacy....)"  The party

4  seeking discovery must show a particularized need for the confidential information

5  sought.  The court "must be convinced that the information is ***directly relevant*** to a

6  cause of action i.e., that it is ***essential*** to determining the matters in dispute."  Weil

7  & Brown, *supra*, § 8:320 (Emphasis original); *citing, Britt v. Superior Court*, 20

8  Cal.3d 844, 859-62 (1978); *Harris v. Superior Court*, 3 Cal.App.4th 661, 665 (2d

9  Dist. 1992).

10       The subject requests unquestionably seek information that implicates the

11  privacy rights of third parties and inmates.  For example, Request for Production

12  No. 13 requires Defendants to produce resumes and licensure documentation for

13  mental health professionals working in the jails.  Similarly, Request for Production

14  No. 20 seeks autopsy reports deaths of prisoners in County jail.  Further, Request

15  No. 23 seeks documents identifying all inmates on the mental health case load.[37]

16  Defendants have a right and a duty to protect information regarding mental health

17  professionals working in the jails as well as private information regarding inmates

18  including their mental health records.  As stated by the Eastern District of

19  California: "a custodian of private information has the right, in fact the duty, to

20  resist attempts at unauthorized disclosure and the person who is the subject of the

21  record is entitled to expect that his right will be thus asserted.  Indeed, the court is

22  of the view that an uncontested and unwarranted disclosure of such information

23  **may expose the party who releases such information without a court order to**

24  **potential liability."** *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 696 (E.D. Cal.

25

26

27  [37] Privacy rights would be implicated for any of the subject requests that seek
production of inmate medical and mental health records.

28

A/73456833.2                          101

1    1993), *citing*, *Craig v. Municipal Court*, 100 Cal.App.3d 69, 77, (2d Dist. 1979)

2    (emphasis added.)

### 6.    Proposed Resolution.

4    No document production whatsoever should be ordered in response to  the

5    subject requests based on the contentions and authorities set forth above.  In the

6    event the Court is inclined to grant this Motion in any respect, Defendants

7    respectfully request that the Court conduct a conference at which the parties can

8    discuss each specific request and the documents responsive to each one.  Further,

9    to the extent the Court considers ordering the production of any potentially

10   sensitive or privileged documents (such as the Department of Justice Reports

11   regarding monitoring of the mental health treatment system in County jail),

12   Defendants request that the Court review documents in camera prior to any

13   production.  Finally, if the Court orders any production, given the extremely

14   sensitive nature of the responsive documents (such as inmate mental health

15   records), Defendants request that the Court enter an "attorney's eyes only"

16   protective order which conforms to the requirements of HIPAA detailed above.

### 7.    Conclusion.

18   Because the constitutionality of medical and mental health treatment in the

19   County jail system were abandoned by Plaintiffs long ago, and because all of the

20   subject requests seek documents relevant to such issues, Defendants respectfully

21   request that the Court deny this Motion in its entirety.  While this fundamental

22   defect should warrant outright denial of this Motion, in the alternative, Defendants

23   maintain that other objections bar any document production.  In the event the Court

24   is inclined to order any production, Defendants respectfully request that the Court

25   solicit additional briefing on individual documents and discovery requests so that

26   / / /

27   / / /

28   / / /

A/73456833.2

102

1    Defendants can have a meaningful opportunity to respond to unique issues

2    applicable to each of the subject requests.

3

4    DATED:  October 25, 2010            Respectfully submitted,

5

6                                       BINGHAM MCCUTCHEN LLP

7

8

9    By: /s/ Stacy W. Harrison
                                        Stacy W. Harrison

10                                      Attorneys for Plaintiff
                                        Dennis Rutherford, et al.
11

12

13   By:   /s/ Jennifer B. MikoLevine
                                        Jennifer B. MikoLevine
14

15                                      Attorneys for Plaintiff

16

17   DATED:  October 25, 2010            Disability Right California

18

19

20   By:   /s/ Melinda Bird
                                        Melinda Bird
21

22                                      Attorneys for Plaintiff

23   DATED:  October 25, 2010            ACLU Foundation of Southern California

24

25   By:     /s/ Peter Eliasberg
                                        Peter Eliasberg
26

27                                      Attorneys for Plaintiff

28

Joint Stipulation Regarding Plaintiffs' Motion To Compel Responses
To First Set Of Requests For Production Of Documents



DATED: October 25, 2010     National Prison Project of the ACLU

By:    /s/ Margaret Winter
          Margaret Winter
     Attorneys for Plaintiff

DATED: October   , 2010     LAWRENCE BEACH ALLEN & CHOI

By: _____
         Justin W. Clark
     Attorneys for Defendant

DATED: October   , 2010     LAWRENCE BEACH ALLEN & CHOI

By: _____
         Matthew P. Allen
     Attorneys for Defendant

DATED: October 27, 2010     LAWRENCE BEACH ALLEN & CHOI

By: _____
         Paul Beach
     Attorneys for Defendant

A/73456833.2

Joint Stipulation Regarding Plaintiffs' Motion To Compel Responses
To First Set Of Requests For Production Of Documents