MARK D. ROSENBAUM (SBN 59940)
mrosenbaum@aclu-sc.org
PETER ELIASBERG (SBN 189110)
peliasberg@aclu-sc.org
ACLU Foundation of Southern California
1313 W. 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARGARET WINTER
mwinter@npp-aclu.org
ERIC G. BALABAN*
ebalaban@nnp-aclu.org
National Prison Project of the ACLU
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
*Not admitted in D.C.; practice limited to
federal courts

Attorneys for Plaintiffs
DENNIS RUTHERFORD, ET AL.
(continued on next page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, et al.<br><br>Plaintiffs,<br><br>v.<br><br>LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al.<br><br>Defendants. | Case No. CV 75-04111 DDP<br><br>**DECLARATION OF JENNIFER B. MIKOLEVINE IN SUPPORT OF JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Date:    December 6, 2010<br>Time:    10:00 a.m.<br>Judge: Hon. Dean D. Pregerson<br>Place:   Courtroom 3<br><br>Discovery cut-off:<br>Trial Date: |

A/73455900.1

1    MELINDA BIRD (SBN 102236)
     melinda.bird@disabilityrightsca.org
2    Disability Rights California
     3580 Wilshire Blvd., Suite 902
3    Los Angeles, California 90010
     Telephone: (213) 355-3605
4    Facsimile: (213) 427-8767

5    Bingham McCutchen LLP
     STEPHEN D. ALEXANDER (SBN 141099)
6    stephen.alexander@bingham.com
     JENNIFER B. MIKOLEVINE (SBN 236745)
7    jennifer.mikolevine@bingham.com
     355 South Grand Avenue, Suite 4400
8    Los Angeles, California 90071-1560
     Telephone: (213) 680-6400
9    Facsimile: (213) 680-6499

10   Bingham McCutchen LLP
     STACY W. HARRISON (SBN 175028)
11   stacy.harrison@bingham.com
     1620 26th Street
12   4th Floor, Main Tower
     Santa Monica, California 90404
13   Telephone: (310) 907-1000
     Facsimile: (310) 907-2000

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Jennifer B. MikoLevine In Support Of Joint Stipulation Regarding Plaintiffs' Motion To Compel
Responses To First Set Of Requests For Production Of Documents

# DECLARATION OF JENNIFER B. MIKOLEVINE

I, Jennifer B. MikoLevine, declare:

1.     I am a member of the State Bar of California, and am admitted to practice before the United States District Court for the Central District of California.  I am an attorney with the law firm of Bingham McCutchen LLP ("Bingham McCutchen"), co-counsel for Dennis Rutherford et al. ("Plaintiffs").  I have personal knowledge of the matters stated herein, and if called as a witness, I would and could competently testify to them.

2.     On September 23, 2009, Plaintiffs propounded their First Set of Requests for Production of Documents (the "Requests") on Defendants.  A true and correct copy of the Requests is attached hereto as **Exhibit A**.

3.     On November 6, 2009, Defendants informed Plaintiffs that Defendants had not responded to the Requests because those Requests were served electronically, and Defendants had not consented in writing to electronic service.

4.     On November 6, 2009, Plaintiffs re-served the Requests on Defendants, by mail.

5.     On December 9, 2009, Defendants responded to the Requests ("Defendants' Responses").  In Defendants' Responses, Defendants refused to produce responsive documents, with the exception of an agreement to produce certain documents responsive to Request No. 2, and a statement that documents responsive to Request Nos. 18 and 20 were "publicly available."  Defendants did not produce any documents with Defendants' Responses.  A true and correct copy of Defendants' Responses, including exhibits and declarations, is attached hereto as **Exhibit B**.

6.     In Defendants' Responses, Defendants raised specific objections to the Requests, including the following:

a.     Incorporating by reference the objections in Defendants' Responses to Request No. 1, Defendants objected to all Requests (Nos. 1-27) on

1

1    the grounds they seek information "which is currently the subject of a privileged

2    and confidential investigation by the United States Department of Justice" (the

3    "DOJ"), and that other than information available on the DOJ's website,

4    "information regarding DOJ's investigations or the ongoing monitoring of mental

5    health care in the LACJ system is confidential."

6              b.  Defendants objected to Request Nos. 1, 2, 5, 6, 8, 10, 11,

7    12, 18, 22, and 26 on the grounds that they were vague and ambiguous.

8              c.  Defendants refused to produce documents in response to

9    Request Nos. 11 (current housing schema), 14 (health care staffing roster) and 27

10   (Data Files) on the grounds that, inter alia, these documents are not relevant to any

11   claim or defense.

12         7.    In the declaration of Lt. Shaun Mathers (the "Mathers

13   Declaration") attached to Defendants' Responses, Defendants claimed a protective

14   order would be insufficient because even disclosure under a protective order would

15   "effectively compromise[] the privacy interests at stake."  In the Mathers

16   Declaration, it is also claimed that Plaintiffs could use the disclosed information in

17   the documents by, for example, discussing such information with Plaintiff inmates.

18   The Mathers Declaration also claims that disclosure of the requested documents

19   would jeopardize the safety of Jail personnel, the future ability to obtain candid

20   statements from inmate witnesses, and "the trust by and between the County of Los

21   Angeles, the LASD, any third-party informants, third-party witnesses, and the

22   public."  A true and correct copy of the Mathers Declaration is attached hereto and

23   included within **Exhibit B**.

24         8.    With Defendants' Responses, Defendants included what was

25   styled as a "privilege log" (the "Defendants' Privilege Log").  The Defendants'

26   Privilege Log provided a "log by category."  A true and correct copy of the

27   Defendants' Privilege Log is attached hereto and included within **Exhibit B**.

28         9.    On February 16, 2010, Plaintiffs sent Defendants a ten-page

A/73455900.1                                    2

1   letter (the "February 16 Letter"), to initiate the meet and confer process and to
2   outline Plaintiffs' positions regarding the objections and issues raised by
3   Defendants' Responses.  In the February 16 Letter, Plaintiffs provided extensive
4   authority and rationale as to why Defendants' positions on production were not
5   tenable.  For example, Plaintiffs outlined five separate arguments, supported by
6   authority, as to why preclusion does not apply here.  Further, Plaintiffs clarified all
7   terms that Defendants identified as vague and ambiguous in Request Nos. 1, 2, 5,
8   6, 8, 10, 11, 12, 18, 22, and 26.  Moreover, Plaintiffs indicated that they would be
9   willing to stipulate to a protective order to address any legitimate claim of "official
10  information" privilege or security or privacy concerns asserted by Defendants.  A
11  true and correct copy of the February 16 Letter is attached hereto as **Exhibit C**.

12          10.     Attached to the February 16, 2010 Letter, Plaintiffs provided
13  Defendants a sample protective order (the "Sample Protective Order"), by which
14  any invasion of privacy Defendants contended would occur due to production
15  would be limited to the narrowest possible extent.  The Sample Protective Order
16  provides that class members' identities would be concealed in expert reports, in
17  any court documents, and in comments and responses by counsel.  Furthermore,
18  that data produced would be supplied only to experts and to counsel and counsel's
19  agents under strict controls over confidentiality.  The Sample Protective Order
20  would also safeguard information not sought in the Requests, such as personal
21  information of law enforcement officers or the anonymity of confidential
22  informants.  A true and correct copy of the Sample Protective Order is attached
23  hereto and included within **Exhibit C**.

24          11.     Defendants never issued a written response to the February 16
25  Letter.  Defendants have never responded to the clarification of contested terms
26  that Plaintiffs included in the February 16 Letter.  For many of the issues raised in
27  the February 16 Letter, Defendants have never provided substantive responses
28  supported by authority.

A/73455900.1

3

12.   On March 3, 2010, Plaintiffs and Defendants met and conferred in person at Bingham McCutchen's offices (the "March 3 Meeting").  During the March 3 Meeting, Plaintiffs and Defendants worked to resolve certain issues, including the following:

a.  In response to Defendants' objection that the Requests, including Request No. 17 (inmate grievances and complaints), were too broad and burdensome, Plaintiffs agreed to review the Requests to determine whether documents sought by particular Requests could be more specifically identified.

b.  Plaintiffs indicated to Defendants that they were willing to stipulate to a protective order to address any legitimate claim of "official information" privilege or security or privacy concerns Defendants asserted.

c.  Defendants acknowledged that the "log by category" they provided in the Defendants' Privilege Log was cursory and not in compliance with applicable Federal Rules.  Defendants stated that the log would be amended once the parties agreed upon the scope of the Requests.

d.  Defendants acknowledged that if they intended to rely on information related to the ongoing DOJ investigation, that information would need to be disclosed.

13.   Despite substantial effort, Plaintiffs and Defendants could not resolve a number of issues during the March 3 Meeting, including the following:

a.  Defendants would not agree that mental health issues are within the scope of the *Rutherford* litigation.

b.  Defendants would not agree that *Porras v. County of Los Angeles*, Civ. No. 04-1229 RGK, 2006 U.S. Dist. LEXIS 96971 (C.D. Cal. Oct. 31, 2006) ("*Porras*") does not preclude Plaintiffs' discovery.  When pressed as to why *Porras* precludes the discovery here, Defendants responded that preclusion applies "because it does."

c.  Defendants also raised objections to discovery based on

A/73455900.1                                                4

Declaration of Jennifer B. MikoLevine In Support Of Joint Stipulation Regarding Plaintiffs' Motion To Compel
Responses To First Set Of Requests For Production Of Documents

1    privacy and HIPAA protections.  In response, Plaintiffs stated these objections

2    could readily be addressed by an "attorneys eyes only" protective order.

3    Defendants rejected the proposal to employ a protective order.

4         14.    Despite Plaintiffs' counsel's best efforts, no agreements were

5    reached at the March 3 Meeting.  Following the March 3 Meeting, Plaintiffs

6    significantly narrowed the scope of the Requests.  Furthermore, to date,

7    Defendants have failed to submit a privilege log that complies with applicable

8    Federal Rules.

9         15.    On March 11, 2010, Plaintiffs sent Defendants a meet and

10   confer letter (the "March 11 Letter") memorializing the discussions at the March 3

11   Meeting.  In the March 11 Letter, Plaintiffs indicated their willingness to narrow

12   the scope of the Requests and asked Defendants to identify the Requests they

13   believed were particularly burdensome and broad.  Plaintiffs also again indicated

14   their willingness to stipulate to a protective order to address any legitimate claim of

15   "official information" privilege or security or privacy concerns asserted by

16   Defendants.  A true and correct copy of the March 11, 2010 Letter is attached

17   hereto as **Exhibit D**.

18        16.    On March 12, 2010, Defendants sent Plaintiffs a letter in

19   response to Plaintiffs' March 11, 2010 letter.  A true and correct copy of the March

20   12, 2010 letter is attached hereto as **Exhibit E**.  In this letter, Defendants made a

21   number of statements, including the following:

22        a.   Defendants contended that, in order to be entitled to their

23   discovery, Plaintiffs must "detail, as a threshold issue, the precise instances where

24   Defendants are purportedly not in compliance with a specific order.  A satisfactory

25   response to this inquiry must include specific reference to the Judgment."

26        b.   Defendants contended that the Court's September 22,

27   2009 Order Clarifying Court's August 4, 2009 Order ("August  Order") Reopening

28   Discovery (Docket No. 201) ("September Order") does not permit discovery

A/73455900.1                                   5

1   regarding mental health issues.

2          c.  Defendants contended that HIPPA prevents them from

3   releasing inmates' medical records without releases, stating "Defendants' [sic] do

4   not agree with Plaintiffs' interpretation of HIPPA that Defendants can legally

5   produce 20,000 inmates' medical records to Plaintiffs' counsel without releases."

6          d.  Defendants contended that inmate complaints are not

7   scanned into a database and are instead maintained at the facility originating the

8   complaint, so that a production responsive to Request No. 17 would thus require a

9   costly hand search of records.

10          e.  Defendants continued to place the onus of proving

11   preclusion on Plaintiffs, asserting that "[r]egarding preclusion, the law provides

12   that it is Plaintiffs' burden to demonstrate an entitlement to discovery."

13          f.  Defendants contended that the burden of responding to

14   the Requests "would be astronomical" and that "such burden obviates any

15   responsibility for Defendants to respond."  Defendants gave no explanation to

16   support their contention that the production of any requested documents or

17   materials other than medical records and inmate complaints would cause any

18   hardship or burden.

19          g.  Defendants contended that they were "unable to

20   specifically determine whether [the official privilege] would apply or not because

21   of the vague and ambiguous nature of the subject Requests and the overbreadth

22   issues discussed [by the parties.]"  Yet Defendants initially had asserted in their

23   Responses that the "official information" privilege prevented production with

24   regards only to Request Nos. 1 (mental health care policies and procedures), 13

25   (mental health personnel), 14 (health care staffing roster), and 20 (prisoner deaths).

26          h.  Defendants contended that they could rely on information

27   related to the ongoing DOJ investigation without disclosing that information, a

28   statement at odds with Defendants' representations at the March 3 Meeting.

A/73455900.1

6

17.   On March 30, 2010, Defendants produced twenty-six (26) pages of documents.  Defendants produced these documents only after Plaintiffs' repeated inquiries for the responsive documents, including those Defendants contended were "publicly available[.]"  These documents were responsive to Request Nos. 2, 18, and 20.  These twenty-six pages of documents are the only documents Defendants have produced to date.  Defendants have not responded to Plaintiffs' inquiry regarding whether this document production represents the entire production in response to the Requests.

18.   On April 6, 2010, Plaintiffs sent Defendants a meet and confer letter (the "April 6 Letter").  Plaintiffs significantly narrowed the majority of the Requests.  Plaintiffs did so in an effort to compromise and avoid time-consuming motion practice for both parties.  Plaintiffs advised Defendants that Plaintiffs are not currently requesting the production of any inmate medical records, although they reserve the right to seek such records at a later date, either by way of the Requests or in response to future Requests for Production.  Plaintiffs once again indicated that they were willing to stipulate to a protective order to address any legitimate claim of "official information" privilege or security or privacy concerns asserted by Defendants.  Defendants never responded to the April 6 Letter. A true and correct copy of the April 6, 2010 Letter is attached hereto as **Exhibit F.**

19.   On May 24, 2010, as part of another effort to meet and confer, Plaintiffs sent Defendants a letter (the "May 24 Letter") in which the Requests were further narrowed again.  Plaintiffs also outlined three major areas (policies and procedures, inmate complaints, and data files) where Defendants had claimed production would be burdensome but where Plaintiffs had evidence to the contrary.  Plaintiffs also raised the fact that the Facility Automated Statistical Tracking ("FAST") system allows LASD to track and monitor prisoner complaints, and that this electronic system would presumably allow for the expeditious production of inmate complaints, lessening Defendants' claimed burden.  Plaintiffs also raised

1    the fact that records had been provided to the CSA.  Defendants have not

2    responded to Plaintiffs' proposals to narrow discovery in the May 24 Letter.  A

3    true and correct copy of the May 24 Letter is attached hereto as **Exhibit G.**

4            20.   In a letter dated May 28, 2010, received on June 2, 2010,

5    Defendants responded, non-substantively, to Plaintiffs' May 24 Letter.  A true and

6    correct copy of this May 28, 2010 letter is attached hereto as **Exhibit H.**

7            21.   On June 4, 2010, Defendants sent Plaintiffs another letter (the

8    "June 4 Letter").  In the June 4 Letter, Defendants stated that Plaintiffs'

9    characterization of the production requirements in the three major areas outlined in

10    the May 24 Letter was "inaccurate[.]"  Defendants stated that Plaintiffs' assertions

11    were "inaccurate and entirely out of context" because Plaintiffs were "not aware of

12    the extreme burden, cost and difficulty" involved in that discovery.  Defendants

13    stated that "your statement that the entire CDW was provided to the CSA on disc is

14    not accurate."  Defendants reiterated that inmate complaints are not scanned into a

15    database and that Plaintiffs' understanding of the implication of the FAST system

16    was "simply inaccurate[.]"  In claiming that HIPPA prevents them from releasing

17    inmates' medical records without releases, Defendants stated that "medical records

18    cannot be released, even to an inmate's counsel, without a signed release from the

19    subject inmate."  Defendants requested Plaintiffs further delay their pursuit of this

20    discovery, indicating they would provide an "update" following a "reasonable

21    opportunity to confer with relevant County personnel."  Defendants have yet to

22    provide an update in the two months that have passed since they issued the June 4

23    letter.  Defendants' June 4 letter also mentioned, for the first time, the possibility of

24    the parties entering into a protective order, stating, "[p]erhaps if the parties can

25    agree on a protective order, a production of some kind might be possible from

26    which Plaintiff could obtain names for particular inmates and then seek releases

27    from those inmates to authorize the production of their medical records."  A true

28    and correct copy of the June 4 Letter is attached hereto as **Exhibit I.**

A/73455900.1

8

1      22.   On June 17, 2010, Plaintiffs sent Defendants a letter (the "June

2   17 Letter").  In the June 17 Letter, Plaintiffs noted that Defendants' counsel had

3   agreed to confer with LASD regarding a possible compromise based on Plaintiffs'

4   proposal in the May 24 Letter to narrow discovery, but that no response had been

5   forthcoming.  Defendants have not responded to the June 17 Letter.  A true and

6   correct copy of this June 17, 2010 letter is attached hereto as **Exhibit J**.

7      23.   During the meet and confer process, Defendants did not pursue

8   their objections that documents responsive to Request Nos. 11 (current housing

9   schema), 14 (health care staffing roster) and 27 (Data Files) are not relevant to any

10   claim or defense.

11      I declare under penalty of perjury under the laws of the United States

12   that the foregoing is true and correct and that this declaration was executed on

13   August 6, 2010, in Los Angeles, California.

14

15                                            _____
                                              Jennifer B. MikoLevine
16

17

18

19

20

21

22

23

24

25

26

27

28

A/73455900.1                                9

# EXHIBIT A

MARK D. ROSENBAUM, SBN 59940
mrosenbaum@aclu-sc.org
PETER ELIASBERG, SBN 189110
peliasberg@aclu-sc.org,
MELINDA BIRD, SBN 102236
mbird@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN
    CALIFORNIA
1313 W. 8th Street
Los Angeles, California 90017
Telephone:  (213) 977-9500, x219
Facsimile:  (213) 977-5297

MARGARET WINTER
ACLU NATIONAL PRISON PROJECT
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6605
Facsimile:  (202) 393-4931
E-mail: mwinter@npp-aclu.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS RUTHERFORD, et al, | Case No.  Civ. 75-04111-DDP |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION** |
| LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, YVONNE B. BURKE, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al., | Honorable Dean Pregerson |
| Defendants. | |

**EXHIBIT A**

Pursuant to Fed. R. Civ. P. 34, Plaintiffs submit to the Defendants the following

Requests for Production. Under Fed. R. Civ. P. 34(b), Defendants are to serve their

Responses no later than thirty (30) days from the date of service.

## DEFINITIONS AND INSTRUCTIONS

**DEFENDANTS ARE URGED TO READ THE FOLLOWING DEFINITIONS AND INSTRUCTIONS AND TO IMMEDIATELY CONTACT PLAINTIFFS' COUNSEL, IN WRITING, IF THERE IS ANY CONFUSION OR UNCERTAINTY AS TO THE SCOPE OF MATERIALS COVERED BY THESE REQUESTS.**

1.     These instructions and definitions should be construed to require answers based upon

the knowledge of, and information available to you, as well as your agents, representatives,

employees, servants and, unless privileged, your attorneys.  When addressing these Requests,

you are to exercise due diligence to secure the requested information, and not merely to

respond on the basis of your personal knowledge.  The process of responding will require a

search of past and present records and securing information in the possession of current and

former employees and other persons associated with Defendants in their official capacities.

2.     These Requests are directed in their entirety to each of the Defendants, and each

Defendant is instructed to respond to each part of each Request.

3.     These Requests are continuing in character, and therefore require you to submit

supplementary documents to Plaintiffs' counsel if you obtain further or different information

after you file your responses to these Requests.

4.     You are to answer each Request separately and fully, and under oath. No part of a

Request should be left unanswered merely because an objection is interposed to another part

of the Request.  If a partial or incomplete answer is provided, you shall state that the answer

3

is partial or incomplete.  If there are no responsive documents, then so state in your Responses.

5.      If for any reason it is claimed that any document called for by any Request or part thereof need not be produced, identify each portion of the Request and give each specific ground or reason asserted for not producing the document or part thereof. For any information withheld on the ground of privilege or work product protection, you must produce the information required by Fed. R. Civ. P. 26(b) (5), and specify which privilege is being claimed.  For all Requests for which the answers involve both privileged or protected material, and non-privileged or unprotected matter, answer the Request to the extent that it calls for non-privileged and unprotected material.

6.      Notwithstanding any definition below, each word, term or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

7.      "Concerning" means related to, referring to, describing, evidencing, or constituting.

8.      The terms "You," "Defendants," and "Government" refer to all personnel of the Los Angeles County Sheriff's Office, their agents, representatives, employees, and servants; and all other persons associated with the named Defendants in their official capacity.

9.      To "identify" or "list" a person, or to provide their "identity" means to state that person's full name, job title, business address, and date of hire.  The term "identify" when applied to a prisoner means to provide the prisoner's name and institutional number

4

10.    "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11.    "Staff," "Person," or "Persons" includes any natural person, firm, associations, partnership, company, corporation, governmental entities, agents, representatives, employees or other persons acting on behalf of such person or other entity.

13.    "Document, "record" and "material" include, but are not limited to, any written, typed, printed, recorded or graphic matter, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation, all correspondence, minutes, records, tables, charts, analyses, graphs, regulations, investigation results, microfiche or microfilm, training materials, electronic records, electronic logs, schedules, report, audit, guidelines, policies, protocols, reviews, assessments, budgets, standing order directives, post orders, manuals, memoranda, notes, lists, logs, notations, contact sheets, calendar and diary entries, letters (sent or received); telegrams, faxes, telexes, messages (including, but not limited to: reports of telephone conversations and conferences), studies, rosters, schedules, booklets, circulars, bulletins, instructions, papers, files, minutes, other communications (including but not limited to, inter, and intra-office communications), e-mail, summaries, bulletins, questionnaires, contracts, memoranda or agreements, requests for proposals or responses to requests for proposals, assignments, licenses, ledgers, books of account, orders, invoices, statements, bills, checks, vouchers, notebooks, receipts, acknowledgments, data processing cards, computer generated matter, photographs, photographic negatives, phonograph records, tape recordings, evaluations, video recordings,

wire recordings, discs, other mechanical recording transcripts or logs of any such recordings, all other data compilations from which information can be obtained, or translated if necessary, and any other tangible thing of a similar nature. Each request for a document or documents shall be deemed to call for the production of the original document or documents to the extent of that they are in or subject to, directly or indirectly, the control of the party to whom this notice is directed. In addition, each request should be considered as including all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

15. "Communication" means transmission of information by any medium including without limitation orally, in writing, or by telephone, telex, telecopy, wire, radio, television, electronic mail, magnetic tape, floppy disk, diagram, graph, chart, or drawing.

16.     The term "prisoners" refers to all persons in Defendants' custody in Los Angeles County Jail, whether they are pre-trial detainees or sentenced.

17.     Unless otherwise noted, these requests seek all responsive documents and information for the time period March 1, 2009 to September 1, 2009.

**Requests:**

1.     All policies, procedures, regulations, guidelines, manuals, directives, post orders, forms, and other documents concerning mental health care at the Jail, including, but not limited to:

- Intake screening;
- Initial mental health screening;
- Triage and referrals;
- access to mental health care;
- staffing;
- treatment programs, including outpatient treatment, crisis stabilization units, intermediate care housing units, and inpatient psychiatric hospitalization;
- special issues related to mental health services provided to inmates in locked down housing units such as disciplinary segregation (e.g., mental health screening upon admission, regular mental health rounds, exclusion from such housing when clinically appropriate, etc.);
- informed consent and the right to refuse treatment;
- mental health rounds;
- co-pays;
- use of restraints or seclusion;
- dispensing of psychotropic medication;
- "Keep-on-person" medications for mental health patients;
- Involuntary medication;
- Involuntary psychiatric hospitalization;
- Housing and treatment of prisoners with mental health or developmental issues;
- Management of suicidal inmates, Transfers of mentally ill prisoners to hospitals or other mental health facilities;
- Quality improvement;
- training of correctional staff concerning mental health issues and training of mental health staff regarding correctional and security issues, and
- Discharge planning.

2. All policies, procedures, regulations, guidelines, manuals, post orders, directives, forms, and other documents relating to Jail operations, including:

- use of force;
- recreation;
- classification;
- gang/security threat group activity;
- visitation;
- housing assignments;
- special needs treatment plans;
- programming;

7

- discipline;
- stripping prisoners of clothing;
- restraint and seclusion;
- cell and body searches;
- use of chemical agents to control prisoners;
- loss of privileges, (e.g., recreation time, shower, telephone calls);
- lockdown; and
- protective custody.

3.      Documents showing all prisoners who have attempted or committed suicide, been on suicide watch status, been transferred or are awaiting transfer to a psychiatric facility, or have been transferred to the Jail from a psychiatric facility since September 1, 2007.

4.      Documents identifying prisoners who are currently on the mental health caseload, their current housing location, their current medications (if any), the dosage of those medications, and the frequency of administration.

5.      Documents showing all prisoners currently prescribed psychotropic medications, the dosage of those medications, and the frequency of their administration.

6.      Documents relating to discharge planning and discharge medications for prisoners who were released within the past six months.

7.      Documents chronicling, reporting on, or otherwise concerning the involuntary administration of psychotropic medications on prisoners since September 1, 2008, including all documents identifying prisoners who have been involuntarily medicated.

8.      Documents that chronicle all episodes of the use of restraints, seclusion, or isolated confinement of prisoners who either were on the mental health caseload, or were receiving psychotropic medications, at the time of the episode(s).

8

9.    The current mental health staffing plan for the Jail, indicating which positions are filled, and which are vacant.

10.    The current health care organizational chart for the Jail.

11.    The current housing schema for the Jail, indicating housing designations for each unit by custody, including special needs (medical, mental health, protective custody, administrative segregation, disciplinary segregation, maximum custody) units.

12.    The current classification instrument and any related instructions.

13.    Documents identifying all mental health personnel working at the Jail, and showing their job titles, job descriptions, qualifications (including resumes and licensure documentation), and work schedules.

14.    The health care staffing roster for the first week of each of the last three months, showing the days, hours, and posting/location for all mental health personnel.

15.    All contracts with non-Jail personnel or outside facilities for the provision of mental health services to prisoners.

16.    Incident reports, disciplinary reports, and use of force reports for all prisoners who have been on the mental health caseload, or have received psychotropic medications, at any time during the past twelve months.

17.    Inmate grievances and complaints and the Jail's responses for the past three months.

18.    Annual operational budgets and supporting documents submitted to the County Commissioners for Jail operations for fiscal years 2008-2010, including those for mental health care operations.

9

19.     All quality assurance reviews, expert reports, staffing analyses, audits, investigations, utilization reviews, needs assessments and other documents created since January 2007 assessing mental health care, including, but not limited to, state audits for Title 15 compliance, all reports and audits performed by or for any state agency or the United States Department of Justice, and any documents sent to, or report by the National Commission on Correctional Health Care (NCCHC) or the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO).

20.     All autopsy reports, investigative records, and other documents related to the deaths of all prisoners during the past three years.

21.     Documents concerning all prisoners indentified in response to Requests 4 and 5 above who have been placed in administrative or disciplinary segregation in the past six months, the reason for such placement, and the length of stay.

22.     Documents relating to the operation of the Jail's mental health housing facilities at Twin Towers and other units, including, but not limited screening and admission, individual and group therapy and other programs, specialized training for officers and staff members assigned to the unit, discharge from the unit back to other Jail units or facilities, and discharge planning.

23.     Documents identifying all prisoners in mental health housing in Twin Towers over the past six months; and documents showing their diagnoses, medications, lengths of stay in mental health housing and the reasons for their transfer or release from mental health housing.

10

24. Documents identifying all prisoners who have been transferred to or from a psychiatric facility in the past twelve months, including the date(s) of their transfer or admission.

25. Documents identifying all prisoners who are currently awaiting transfer to a psychiatric facility.

26. The Data Files prepared by Los Angeles County in connection with the County's contract with the Vera Institute.

27. The following Data Files:

Data File #1: For the past calendar year, the data file of all inmates released from the County Jail System, containing the following data elements for each release:

- Inmate ID number, official name, DOB, gender, Race/Ethnicity
- Admission fate and time, the Law Enforcement or Correctional Agency admitting the inmate, the facility to which the inmate was admitted
- Admission Type (pretrial, sentenced, CDCR parolee)
- Legal Status at admission (pretrial release, probation, parole),
- Primary Charge/Offense at admission (if multiple offenses or charges up to 5 other charges or offenses)
- Custody level and factors at admission
- Release date and time; facility released from; type of release (bail, OR, transfer to CDCR, sentenced)
- If sentenced to jail, date of sentence, sentence length
- Custody level and factors at release
- Early Release (Y/N); if released early, the amount of time granted
- Primary Charge/Offense at release (if multiple offenses or charges list up to 5 other charges or offenses at release)

Data File #2: A snap-shot file of the current jail population containing the following elements

- Inmate's ID number, official name, DOB, Gender, Race or Ethnicity
- Admission date and time, the Law Enforcement/Correctional Agency admitting the inmate, the Facility to which admitted

11

- Admission Type (pretrial, sentenced, CDCR parolee)
- Legal Status at admission (pretrial release, probation, parole)
- Primary Charge/Offense at admission (if multiple offenses or charges list up to 5 other charges or offenses)
- Custody level and factors at admission
- Current Custody level and factors
- Current facility location, housing unit and cell location
- Special management flags (e.g., PC, Gang, Juvenile, etc.)
- Current legal status at admission (pretrial release, probation, parole)
- If sentenced to jail, sentence length
- Current Primary Charge/Offense at admission (if multiple current offenses or charges list up to 5 other charges or offenses)

# EXHIBIT B

1   PAUL B. BEACH, State Bar No. 166265
    pbeach@lbaclaw.com
2   JUSTIN W. CLARK, State Bar No. 235477
    jclark@lbaclaw.com
3   LAWRENCE BEACH ALLEN & CHOI, PC
    A Professional Corporation
4   100 West Broadway, Suite 1200
    Glendale, California  91210-1219
5   Telephone No. (818) 545-1925
    Facsimile No. (818) 545-1937
6
7   Attorneys for Defendants

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  DENNIS RUTHERFORD, et al.,        )   Case No. CV 75-04111 DDP
                                      )
13                  Plaintiffs,       )   Honorable Dean D. Pregerson
                                      )
14          vs.                       )   **DEFENDANT'S RESPONSES TO**
                                      )   **PLAINTIFFS' REQUESTS FOR**
15                                    )   **PRODUCTION OF DOCUMENTS,**
                                      )   **SET ONE (POST-JUDGMENT)**
16  SHERMAN BLOCK, et al.,            )
                                      )
17                                    )
                    Defendants.       )
18  _____  )
                                      )
19                                    )

20  PROPOUNDING PARTY:      Plaintiff Dennis Rutherford

21  RESPONDING PARTY:       Defendant Sherman Block

22  SET NO.:                One (Post-Judgment)

23  ///

24  ///

25  ///

26

27

28

RUTHERFORD\Resp to RFPs

                            1

                                            **EXHIBIT B**

1      Pursuant to Federal Rules of Civil Procedure, Rule 34(b), Defendant

2  Sherman Block hereby submits the following written response to Plaintiff Dennis

3  Rutherford's Requests for Production, Set One (Post Judgment).

4

5               **General Objections and Reservations**

6      Defendant responds to these Requests for Production subject to the

7  accompanying general and specific objections without waiving, but expressly

8  preserving, all such objections.  Defendant also submits these responses subject to

9  and without intending to waive, but expressly preserving: (a) any objections as to

10 the competency, relevance, materiality, privilege or admissibility of any of these

11 responses, and (b) the right to object to the other discovery procedures involving

12 or relating to the subject matter of the response herein.

13     Defendant reserves the right to amend, revise, correct, supplement, or

14 clarify any of the objections and responses herein pursuant to any facts or

15 information gathered at any time subsequent to the date of this response.

16 Moreover, the responses contained herein are not intended to and shall not

17 preclude Defendant from making any contentions or relying upon any facts or

18 documents, whether or not identified or relied upon herein, which result from

19 subsequently discovered information and/or evidence.

20     Defendant incorporates the following general objections (the "General

21 Objections") into the response set forth below as though set forth at length.

22 Defendant objects to this request for production: (1) insofar as it seeks

23 information that is protected by the attorney-client privilege, the attorney work

24 product doctrine and/or any other applicable privilege; (2) insofar as it seeks

25 information that is publicly available and/or uniquely or equally available to

26 Plaintiffs; (3) insofar as it seeks information that is neither relevant to the subject

27 matter of the litigation nor reasonably calculated to lead to the discovery of

28 admissible evidence; (4) insofar as it attempts or purports to impose obligations

exceeding those authorized by the Federal Rules of Civil Procedure, including, but not limited to Rule 33 of the Federal Rules of Civil Procedure; (5) insofar as it purports to impose an obligation on Defendant to provide a response for or on behalf of any other person or entity and/or seeks information not in the possession, custody, or control of Defendant; (6) insofar as it violates the right to privacy of Defendant or any other person's right to privacy; (7) insofar as it is overly broad, unduly burdensome, oppressive and/or harassing; (8) insofar as it is compound; and (9) insofar as it is vague, ambiguous and unintelligible.

Notwithstanding the above objections, and expressly reserving the same, Defendant hereby responds to Plaintiffs' Requests For Production as follows:

**REQUEST FOR PRODUCTION NO. 1:**

All policies, procedures, regulations, guidelines, manuals, directives, post orders, forms, and other documents concerning mental health care at the Jail, including, but not limited to:

- Intake Screening;
- Initial mental health screening;
- Triage and referrals;
- Access to mental health care;
- Staffing;
- Treatment programs, including outpatient treatment, crisis stabilization units, intermediate care housing units, and inpatient psychiatric hospitalization;
- Special issues related to mental health services provided to inmates in locked down housing units such as disciplinary segregation (e.g., mental health screening upon admission, regular mental health rounds, exclusion from such housing when clinically appropriate, etc.);
- Informed consent and the right to refuse treatment;
- Mental health rounds;
- Co-pays;
- Use of restraints or seclusion;
- Dispensing of psychotropic medication;

- "Keep-on-person" medications for mental health patients;
- Involuntary medication;
- Involuntary psychiatric hospitalization;
- Housing and treatment of prisoners with mental health or developmental issues;
- Management of suicidal inmates, Transfers of mentally ill prisoners to hospitals or other mental health facilities;
- Quality improvement;
- Training of correctional staff concerning mental health issues and training of mental health staff regarding correctional and security issues, and
- Discharge planning.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**

Defendants object to this Request on the grounds that it seeks information that is outside the scope of the Judgment. The terms of the Judgment do not expressly or implicitly address any issues related to the provision of mental health treatment in the Los Angeles County jail ("LACJ") system. Whether or not issues regarding mental health were part of the pleadings or briefed to the Court during the course the proceedings (either pre- or post-judgment) is of no consequence. *See, Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994)(judgments are self-contained documents, stating "who has won and what relief has been awarded"); *American Nat'l Bank & Trust Co. of Chicago v. Secretary of HUD of Washington, D.C.*, 946 F.2d 1286, 1289 (7th Cir. 1991); *Claybrook Drilling Co. v. Divanco, Inc.*, 336 F.2d 697 (10th Cir.1964)(the final judgment in a case should be complete and self-contained); Charles Alan Wright & Arthur R. Miller, 11 *Federal Practice and Procedure* § 2785 at 15-16 (1973); *Reytblatt v. Denton*, 812 F.2d 1042, 1043 (7th Cir.1987)(the purpose of the separate judgment required by Fed.R.Civ.P. 58 is to let the parties (and the appellate court) know exactly what has been decided and when); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993)(claims asserted in the pleadings but omitted in the pretrial order cannot be raised at trial and

1    accordingly, cannot be incorporated into a judgment*); Youren v. Tintic School*

2    *Dist.* 343 F3d 1296, 1305 (10th Cir. 2003)(statute of limitations defense, raised in

3    answer, waived by omission from pretrial order); *In re Hunt,*c238 F.3d 1098,

4    1101–1102 (9th Cir. 2000)(if an issue is included in the pretrial order, it can be

5    presented at trial even if not previously pled).  The terms of the Judgment are

6    very clear and they do not impose any affirmative objections on Defendant.

7        Post appeal, and despite any suggestion to the contrary, the only remaining

8    orders in the Judgment address: 1) beds; 2) visitation by children; 3) outdoor

9    recreation; 4) indoor recreation; 5) telephones; 6) cell searches; 7) time for meals;

10   and 8) change of clothing.  *See, Block v. Rutherford,* 468 U.S. 576, 104 S.Ct.

11   3227 (1984); *Rutherford v. Pitchess,* 710 F.2d 572 (9th Cir. 1983); *see also,*

12   Exhibit "A" - Judgment.)   Accordingly, this Request, which has nothing to do

13   with any of the above orders, seeks documents that are beyond the scope of the

14   Judgment and the Request cannot be characterized as seeking information

15   necessary to show substantial non-compliance with any of the remaining terms of

16   the Judgment.   For identical reasons, this Request seeks information that is

17   irrelevant to any claim or defense in this action; is irrelevant to the subject matter

18   of this action as a whole; and, is not reasonably calculated to lead to the discovery

19   of admissible evidence.  *See,* FRCP Rule 26(b)(1).

20        Defendant further objects to this Request because, to the extent these

21   Requests seek information regarding the provision of mental health care in the

22   LACJ system, such issues have already been addressed in this District in *Juan*

23   *Porras et al v. Los Angeles County,* United States District Court Case No. CV 04-

24   01229 RGK (RNB)(County of Los Angeles granted defense judgment against

25   certified class action claims for injunctive relief based on allegations of

26   systematic inadequacy of medical and mental health care for inmates).  This

27   decision was just recently the basis for the Ninth Circuit to dismiss a challenge to

28   the adequacy of the mental health care in the LACJ system.  *See, Leandry v.*

5

1   *County of Los Angeles*, 2009 WL 3748147, *1 (9th Cir. 2009) (applying recent
2   authority holding that the County of Los Angeles did not have an unconstitutional
3   pattern or practice of deliberate indifference to inmates' serious medical or mental
4   health needs).

5       Defendant further objects to this Request as vague and ambiguous as to
6   "other documents concerning mental health care at the Jail" as this language
7   essentially requires the production of every document or record that is even
8   remotely related to the provision of mental health treatment in the LACJ system.
9   Defendant further objects this Request as it fails to specify with reasonable
10   particularity the documents requested.

11       Defendant further objects to this Request as overly broad and unduly
12   burdensome.  Responding to this Request alone (and particularly, responding to
13   these Requests as a whole), would require the expenditure of a tremendous
14   amount of scarce public resources.  (*See*, Declaration of Shaun Mathers, ¶ 4.)
15   This Request seeks documents (including policies and procedures) for a huge
16   array of subjects and the Request includes no time limitation, no facility
17   limitation, nor is it limited to class members.  Responding to this Request and
18   Plaintiffs' additional requests below would require the production of at least
19   100,000 pages of records and at least $50,000 in costs to the Los Angeles County
20   Sheriff's Department alone.  This estimate does not include any necessary
21   attorney's fees which would be incurred prior to any production to counsel for
22   Plaintiffs .  In addition, this Request arguably seeks the complete medical/ mental
23   health file for every inmate receiving mental health care in LACJ as well as a
24   huge volume of other records.  Any such records are subject to the restrictions of
25   the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").
26   (*See*, Declaration of Michael Kwan, ¶ 4.)

27       Defendant further objects to this Request to the extent it seeks documents
28   protected from disclosure by the work product doctrine, attorney client privilege,

6

and official information privilege.  Defendant asserts these privileges because the language of the Request is so broad that it is virtually impossible to determine what documents may or may not be responsive and as phrased, certain records may be responsive that would be protected from disclosure by the above-referenced privileges. (*See*, Declaration of Shaun Mathers, ¶ 4.)

Defendant further objects to this Request due to the fact that it seeks information regarding the provision of mental health care in the LACJ system (and records related thereto) which is currently the subject of a privileged and confidential investigation by the United States Department of Justice ("DOJ") pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §1997a et seq. (*See*, Declaration of Michael Kwan, ¶ 5.) Other than information publically available at http://www.justice.gov/crt/split/cripa.php, information regarding DOJ's investigations or the ongoing monitoring of mental health care in the LACJ system is confidential.

**REQUEST FOR PRODUCTION NO. 2:**

All policies, procedures, regulations, guidelines, manuals, post orders, directives, forms, and other documents relating to Jail operations, including:

- Use of force;
- Recreation;
- Classification;
- Gang/security threat group activity;
- Visitation;
- Housing assignments;
- Special needs treatment plans;
- Programming;
- Discipline;
- Stripping prisoners of clothing;
- Restraint and seclusion;
- Cell and body searches;
- Use of chemical agents to control prisoners;

RUTHERFORD\Resp to RFPs

- Loss of privileges, (e.g., recreation time, shower, telephone calls);
- Lockdown; and
- Protective custody.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Defendant hereby incorporates by reference the objections stated above in response to Request for Production No. 1. Defendant further objects this Request as it fails to specify with reasonable particularity the documents requested and is dramatically overbroad. This Request arguably requests all documents (including policies and procedures) regarding "jail operations" without regard for security, operational, or administrative concerns. For these same reasons, the Request is vague and ambiguous.

Without waiving the forgoing objections and subject thereto, Defendant hereby responds as follows:

Defendant agrees to produce LASD policies and procedures regarding visitation, recreation, telephones, and cell searches and any other policies and procedures that Plaintiffs can demonstrate fall within the terms of the Judgment.

## REQUEST FOR PRODUCTION NO. 3:

Documents showing all prisoners who had attempted or committed suicide, been on suicide watch status, been transferred or are awaiting transfer to a psychiatric facility, or have been transferred to the Jail from a psychiatric facility since September 1, 2007.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Defendant hereby incorporates by reference the objections stated above in response to Request for Production No. 1.

Defendant further objects to this Request based on the privacy rights of non-class members and any third party. In addition, this Request seeks information that would be contained in an inmate's medical/ mental health

8

1  records and accordingly, such information/ records are subject to the disclosure

2  restrictions of HIPAA.  (*See*, Declaration of Michael Kwan, ¶ 4.)

3

4  **REQUEST FOR PRODUCTION NO. 4:**

5        Documents identifying prisoners who are currently on the mental health

6  caseload, their current housing location, their current medications (if any), the

7  dosage of those medications, and the frequency of administration.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

9        Defendant hereby incorporates by reference the objections stated above in

10  response to Request for Production Nos. 1 and 3.

11

12  **REQUEST FOR PRODUCTION NO. 5:**

13        Documents showing all prisoners currently prescribed psychotropic

14  medications, the dosage of those medications, and the frequency of their

15  administration.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

17        Defendant hereby incorporates by reference the objections stated above in

18  response to Request for Production Nos. 1 and 3.

19        Defendant further objects to this Request as vague and ambiguous as it

20  includes no time limitation or time period for responsive records.

21

22  **REQUEST FOR PRODUCTION NO. 6:**

23        Documents relating to discharge planning and discharge medications for

24  prisoners who were released within the past six months.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

26        Defendant hereby incorporates by reference the objections stated above in

27  response to Request for Production Nos. 1 and 3.

28

RUTHERFORD\Resp to RFPs

Defendant further objects to this Request as vague and ambiguous as to "discharge planning" and as to "documents". For similar reasons, this Request fails to set forth with reasonable particularity the documents sought.

**REQUEST FOR PRODUCTION NO. 7:**

Documents chronicling, reporting on or otherwise concerning the involuntary administration of psychotropic medications on prisoners since September 1, 2008, including all documents identifying prisoners who have been involuntarily medicated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1 and 3.

**REQUEST FOR PRODUCTION NO. 8:**

Documents that chronicle all episodes of the use of restraints, seclusion, or isolated confinement of prisoners who either were on the mental health caseload, or were receiving psychotropic medications, at the time of the episode(s).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1 and 3.

Defendant further objects to this Request as vague and ambiguous as to "episode" and as to "restraints, seclusion."

///

///

///

**REQUEST FOR PRODUCTION NO. 9:**

The current mental health staffing plan for the Jail, indicating which positions are filled, and which are vacant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 10:**

The current health care organizational chart for the jail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1. Defendant further objects to this Request as vague and ambiguous as to "current health care organizational chart." Defendant further objects to this Request as it fails to with reasonable particularly the documents requested.

**REQUEST FOR PRODUCTION NO. 11:**

The current housing schema for the Jail, indicating housing designations for each unit by custody, including special needs (medical, mental health, protective custody administrative segregation, disciplinary segregation, maximum custody) units.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1 and 3.

Defendant further objects to this Request based on significant security concerns associated with the release or dissemination of any information which could be used to determine where inmates are housed in a particular custody facility. For the safety of inmates and LASD personnel, records including such

11

1  information are not the proper subject of discovery as they have no relevance to

2  any claim or defense in this action pre or post-Judgment.  *See*, FRCP Rule 26.)

3  Defendant further objects to this Request as vague and ambiguous as it

4  does not specify from which "jail" records are sought.  For this same reason, the

5  Request fails to specify with reasonably particularity which records are

6  responsive.

7

8  **REQUEST FOR PRODUCTION NO. 12:**

9  The current classification instrument and any related instructions.

10 **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

11 Defendant hereby incorporates by reference the objections stated above in

12 response to Request for Production No. 1.  Defendant further objects to this

13 Request as vague and ambiguous as to "current classification instrument."

14

15 **REQUEST FOR PRODUCTION NO. 13:**

16 Documents identifying all mental health personnel working at the Jail, and

17 showing their job titles, job descriptions, qualifications (including resumes and

18 licensure documentation), and work schedules.

19 **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

20 Defendant hereby incorporates by reference the objections stated above in

21 response to Request for Production No. 1.  Defendant further objects to this

22 Request based on the privacy rights of County employees and pursuant to the

23 official information privilege.  (*See*, Declaration of Shaun Mathers.)

24

25 **REQUEST FOR PRODUCTION NO. 14:**

26 The health care staffing roster for the first week of each of the last three

27 months, showing the days, hours, and posting/location for all mental health

28 personnel.

12

RUTHERFORD\Resp to RFPs

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1, 3, and 13. Defendant further objects to this Request as it seeks information that is irrelevant to any claim or defense in this action; is irrelevant to the subject matter of this action as a whole; and, is not reasonably calculated to lead to the discovery of admissible evidence. *See*, FRCP Rule 26(b)(1).

**REQUEST FOR PRODUCTION NO. 15:**

All contracts with non-Jail personnel or outside facilities for the provision of mental health services to prisoners.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 16:**

Incident reports, disciplinary reports, and use of force reports for all prisoners who have been on the mental health caseload, or have received psychotropic medications, at any time during the past twelve month.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1 and 3. Defendant further objects to this Request based on the extreme burden it would place on the LASD as it would require essentially a hand search of thousands of inmate records which would be prohibitively costly. (*See*, Declaration of Shaun Mathers, ¶ 4.)

///

///

///

**REQUEST FOR PRODUCTION NO. 17:**

Inmate grievances and complaints and the Jail's responses for the past three months.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1 and 16.  Defendant further objects to this Request as overly broad as it is not limited to complaints associated with the terms of the Judgment and to the extent if seeks documents regarding non-class members.  (*See*, Exhibit "A" - Judgment.)

**REQUEST FOR PRODUCTION NO. 18:**

Annual operational budgets and supporting documents submitted to the County Commissioners for Jail operations for fiscal years 2008-2010, including those for mental health care operations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production No. 1.  Defendant further objects to this Request as vague and ambiguous and nonsensical because the County of Los Angeles does not have "County Commissioners."

Without waiving the forgoing objections and subject thereto, Defendant hereby responds as follows:

To the extent this Request seeks information regarding the County of Los Angeles' budget, that information is publically available at www.lacounty.gov.

**REQUEST FOR PRODUCTION NO. 19:**

All quality assurance reviews, expert reports, staffing analyses, audits, investigations, utilization reviews, needs assessments and other documents created since January 2007 assessing mental health care, including, but not limited to, state

14

RUTHERFORD\Resp to RFPs

1   audits for Title 15 compliance, all reports and audits performed by or for any state

2   agency or the United States Department of Justice, and any documents sent to, or

3   report by the National Commission on Correctional Health Care (NCCHC) or the

4   Joint Commission on the Accreditation of Healthcare Organizations (JCAHO).

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

6      Defendant hereby incorporates by reference the objections stated above in

7   response to Request for Production No. 1. (*See*, Declaration of Michael Kwan, ¶

8   5.)

9

10  **REQUEST FOR PRODUCTION NO. 20:**

11     All autopsy reports, investigative records, and other documents related to the

12  deaths of all prisoners during the past three years.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

14     Defendant hereby incorporates by reference the objections stated above in

15  response to Request for Production Nos. 1, 3, and 13. Defendant further objects to

16  this Request to the extent it seeks documents that are publically available such as

17  autopsy reports prepared by the Los Angele County Coroner's Office.

18     Defendant further objects to this Request to the extent it seeks documents

19  protected from disclosure by the attorney client privilege, work product doctrine,

20  or official information privilege. (*See*, Declaration of Shaun Mathers, ¶¶ 5-17.)

21

22  **REQUEST FOR PRODUCTION NO. 21:**

23     Documents concerning all prisoners identified in response to Requests 4 and

24  5 above who have been placed in administrative or disciplinary segregation in the

25  past six months, the reason for such placement, and the length of stay.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

27     Defendant hereby incorporates by reference the responses to Request for

28  Production Nos. 4 and 5 above.

15

**REQUEST FOR PRODUCTION NO. 22:**

Documents relating to the operation of the Jail's mental health housing facilities at Twin Towers and other units, including, but not limited screening and admission, individual and group therapy and other programs, specialized training for officers and staff members assigned to the unit, discharge from the unit back to other Jail units or facilities, and discharge planning.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1 and 3. Defendants further object to this Request as vague and ambiguous as to "documents", "units", "specialized training", and "discharge planning."

**REQUEST FOR PRODUCTION NO. 23:**

Documents identifying all prisoners in mental health housing in Twin Towers over the past six months; and documents showing their diagnoses, medications, lengths of stay in mental health housing and the reasons for their transfer or release from mental health housing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production Nos. 1 and 3.

**REQUEST FOR PRODUCTION NO. 24:**

Document provided by Los Angeles County to the Pretrial Institute (PTI) and documents received by the County from PTI, in connection with PTI's contract with the County.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production No. 1. Defendant further objects to this

16

RUTHERFORD\Resp to RFPs

1   Request as it seeks information that is irrelevant to any claim or defense in this
2   action; is irrelevant to the subject matter of this action as a whole; and, is not
3   reasonably calculated to lead to the discovery of admissible evidence. *See,* FRCP
4   Rule 26(b)(1).
5
6   **REQUEST FOR PRODUCTION NO. 25:**
7        Documents identifying all prisoners who have been transferred to or from a
8   psychiatric facility in the past twelve months, including the date(s) of their transfer
9   or admission.
10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**
11       Defendant hereby incorporates by reference the objections stated above in
12  response to Request for Production Nos. 1 and 3.
13
14  **REQUEST FOR PRODUCTION NO. 26:**
15       Documents identifying all prisoners who are currently awaiting transfer to a
16  psychiatric facility.
17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**
18       Defendant hereby incorporates by reference the objections stated above in
19  response to Request for Production Nos. 1 and 3.  Defendant further objects to
20  this Request as vague and ambiguous as to "currently" and as to "psychiatric
21  facility."
22
23  **REQUEST FOR PRODUCTION NO. 27:**
24       The Data Files prepared by Los Angeles County in connection with the
25  County's contract with Vera Institute and in particular the following Data Files:
26       Data File #1:  For the past calendar year, the data file of all inmates released
27  from the County Jail System, containing the following data elements for each
28  release:

17

- Inmate ID number, official name, DOB, gender, Race/Ethnicity
- Admission fate and time, the Law Enforcement or Correctional Agency admitting the inmate, the facility to which the inmate was admitted
- Admission Type (pretrial, sentenced, CDCR parolee)
- Legal status at admission (pretrial release, probation, parole)
- Primary Charge/Offense at admission (if multiple offenses or charges up to 5 other charges or offenses)
- Custody level and factors at admission
- Release date and time; facility released from; type of release (bail, or, transfer to CDCR, sentenced)
- If sentenced to jail, date of sentence, sentence length
- Custody level and factors at release
- Early Release (Y/N); if released early, the amount of time granted
- Primary Charge/Offense at release (if multiple offenses or charges list up to 5 other charges or offenses at release)

Data File #2: A snap-shot file of the current jail population containing the following elements

- Inmate's ID number, official name, DOB, Gender, Race or Ethnicity
- Admission date and time, the Law Enforcement/Correctional Agency admitting the inmate, the facility to which admitted
- Admission Type (pretrial, sentenced, CDCR parolee)
- Legal Status at Admission (pretrial release, probation, parole)
- Primary Charge/Offense at admission (if multiple offenses or charges list up to 5 other charges or offenses)
- Custody level and factors at admission
- Current Custody level and factors
- Current facility location, housing unit and cell location
- Special management flags (e.g., PC, Gang, Juvenile, etc.)
- Current legal status at admission (pretrial release, probation, parole)
- If sentenced to jail, sentence length
- Current Primary Charge/Offense at admission (if multiple current offenses or charges list up to 5 other charges or offenses)

///

18

RUTHERFORD\Resp to RFPs

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendant hereby incorporates by reference the objections stated above in response to Request for Production No. 1. Defendant further objects to this Request as overly broad, unduly burdensome, and prohibitively costly due to the fact that this Request seeks information regarding all of the approximately 20,000 inmates housed in the LACJ system on any given day. There is no legitimate reason for Plaintiffs to propound such a sweeping discovery request nor can such information be characterized as relevant to any claim or defense in this action. Defendant further objects to this Request to the extent it seeks information that would violate the privacy rights of non-class members and third parties. Defendant further objects to this Request to the extent it implicates potential security threats such as the dissemination of information regarding gang member classifications

Dated:  December 9, 2009                    LAWRENCE BEACH ALLEN & CHOI, PC


By _____
        Justin W. Clark
        Attorneys for Defendant
        Sherman Block, et al.

# EXHIBIT A

ENTERED

FEB 16 1979

CLERK, U. S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
DEPY

FILED

FEB 15 1979

CLERK, U. S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DENNIS RUTHERFORD,
HAROLD TAYLOR, and
RICHARD ORR, et al.,

        Plaintiffs,

   v.

PETER J. PITCHESS,
et al.,

        Defendants.

CASE NO. CV 75-4111-WPG

JUDGMENT

In this action, the plaintiffs, on behalf of inmates
of the Los Angeles County Central Jail, challenge certain
policies and practices of the defendant administrators of the
jail and the living conditions under which the inmates are
maintained. The matter has been tried and briefed, and the
court has made findings of fact and conclusions of law in the
form of a Memorandum of Decision filed on July 25, 1978, and a
Supplemental Memorandum of Decision that is being filed contem-
poraneously herewith. In accordance with such findings, the
court renders this judgment.

*1097*

MICROFILMED

FEB 22 1979

Docketed
Mld copy Ptys
Mld Notice Ptys
JS-6

FEB 15 1979

EXHIBIT A          EXHIBIT "B"

IT IS ORDERED AS FOLLOWS:

1. Beds. Every prisoner kept overnight in the jail will be accorded a mattress and a bed or bunk upon which to sleep.

This order shall not preclude the defendants from permitting inmates to be housed with full bedding but without a bunk, for one night only, if, in the defendants' judgment, such inmate or inmates require more secure housing than is provided in the available areas and the appropriate housing does not have a sufficient number of bunks. Further, this order shall not apply in the event of an emergency causing a sudden and unusual intake of prisoners, in which case full bedding shall be provided and the defendants will exercise their best efforts to provide bunks for all inmates as soon as possible.

2. Visitation.

(a) Visits By Children Of Prisoners. Upon prior request from a prisoner, his minor children over the age of twelve (12) years shall be permitted to visit him unaccompanied by an adult.

(b) Contact Visits. Commencing not more than ninety days following the date of this order, the defendants will make available a contact visit once each week to each pre-trial detainee that has been held in the jail for one month or more, and concerning whom there is no indication of drug or escape propensities; provided, however, that no more than fifteen hundred such visits need be allowed in any one week. In the event that the number of requested visits in any week exceeds fifteen hundred, or such higher number as the Sheriff voluntarily undertakes to accommodate, a reasonable system of rotation or

-2-

1098

22
21

EXHIBIT "B"

1 | other priorities may be maintained.  The lengths of such visits
2 | shall remain in the discretion of the Sheriff.

3 |      3. <u>Outdoor Recreation</u>.  All prisoners except those
4 | that are hospitalized, in disciplinary segregation, those under
5 | the jurisdiction of the medical staff of the Forensic Mental
6 | Health Unit who such medical staff determine are inappropriate
7 | for roof recreation, and except for those high security inmates
8 | who the Sheriff believes cannot safely be permitted roof recrea-
9 | tion shall be allowed not less than two and one-half hours of
10 | outdoor exercise or other recreation per week.  Within sixty
11 | days following the date of this order, the Sheriff shall report
12 | to the court the number of inmates under the jurisdiction of the
13 | Forensic Mental Health Unit and the number of high security
14 | inmates included in the roof recreation program and the nature
15 | of alternative recreation provided for high security inmates not
16 | allowed roof recreation.

17 |      4. <u>Indoor Recreation</u>.  Television receiving sets
18 | shall be installed and reasonably maintained in each day room.

19 |      5. <u>Restoration Of Windows</u>.  Within ninety days
20 | following the filing of this order, transparent windows shall be
21 | restored in each portion of the jail from which they previously
22 | have been removed.

23 |      6. <u>Processing For Court</u>.  As soon as practical, but
24 | not more than four months from the date of this order,

25 |      (a) each detainee placed in a holding cell will be
26 | given a chair or a bench upon which to sit;

27 |      (b) on each day of trial after the first day a
28 | detainee will not be required to leave his bed earlier than

-3-

1099

EXHIBIT "B"

1  6:00 A.M., and will not be confined in a holding cell for longer

2  than thirty minutes, either before leaving for court or following

3  his return; and his waiting time on a bus at the jail will not

4  exceed thirty minutes; and he will be returned to his cell not

5  later than 8:00 P.M.

6        Within four months from the date of this order,

7  the Sheriff shall report his progress in this regard to the court

8  and the reasons, if any, for his inability to comply in all

9  respects.  At that time, the court will review this portion of

10 this order as to whether there is any justification for modifi-

11 cation thereof.

12       7.  Telephones.  On January 5, 1979, a separate order

13 was filed approving and directing implementation of a plan for

14 the improvement of telephone facilities in the jail.  Accordingly,

15 no further order is indicated on this subject at this time.

16       8.  Cell Searches.  Inmates that are in the general

17 area when a "shakedown" inspection of their cells is undertaken

18 shall be permitted to be sufficiently proximate to their respec-

19 tive cells that they may observe the process and respond to such

20 questions or make such requests as circumstances may indicate.

21       9.  Time For Meals.  An inmate shall be allowed not

22 less than fifteen minutes within which time to complete each meal.

23       10.  Change Of Clothing.  Effective not more than sixty

24 days following the filing of this order, each inmate shall receive

25 at least twice each week clean outer garments, undergarments,

26 socks and a towel in exchange for those that he has been using.

27       11.  Injunctive Relief.  When any inmate has information

28 that he believes to disclose a violation of this order, he may

-4-

1100



EXHIBIT "B"

1  set forth that information in writing to the Commander of the
2  jail who shall cause an investigation thereof to be made as soon
3  as reasonably practicable, and in any event within ten days
4  following receipt of such written statement.  Promptly following
5  the completion of the investigation the Commander shall deliver
6  a written reply to the inmate indicating the results thereof and
7  what, if any, action has been taken concerning the inmate's
8  complaint and what, if any, action has been taken to prevent
9  violations of this judgment.  Absent unusual circumstances
10 indicating compelling reasons why following this procedure would
11 result in substantial prejudice to the inmate, no petition for
12 a judgment of contempt for violation of this order shall be
13 entertained by the court until the inmate first complies with
14 this administrative procedure.  In considering any petition for
15 contempt for violation of this order, the court shall take into
16 account the appropriateness of any action taken by the jail
17 Commander in response to information provided him in accordance
18 with this procedure.
19     12.  Emergencies.  In the event that the Sheriff or
20 his authorized representatives have reasonable cause to believe
21 that there exist facts showing a serious imminent threat to the
22 security of the jail or the safety of any persons therein that
23 would occur if any of the provisions of this decision were
24 enforced and there is insufficient time to seek a formal modifi-
25 cation or exception to such provisions, the Sheriff may temporarily
26 suspend such of the provisions of this decision as may be
27 necessary to overcome or reduce such threat for a period not
28 exceeding five court days, provided he submits a statement in

1107

25
24

EXHIBIT "B"

1  writing to this court setting forth what he has done and why he

2  has done it.

3      13.  Posting Of This Judgment.  The defendants and

4  their successors in interest shall cause this judgment to be

5  posted permanently and conspicuously in each prisoner housing

6  area in the jail for the period of one year; thereafter, the

7  defendants and their successors in interest shall permanently

8  and conspicuously post this judgment in each of the jail's law

9  libraries.

10      14.  Counsel for the plaintiffs shall recover his costs

11  incurred in this action.

12

13  DATED:  February 15, 1979.

14

15

16                   WILLIAM P. GRAY
                United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

1102

-6-

1   writing to this court setting forth what he has done and why he

2   has done it.

3        13.   Posting Of This Judgment.  The defendants and

4   their successors in interest shall cause this judgment to be

5   posted permanently and conspicuously in each prisoner housing

6   area in the jail for the period of one year; thereafter, the

7   defendants and their successors in interest shall permanently

8   and conspicuously post this judgment in each of the jail's law

9   libraries.

10        14.   Counsel for the plaintiffs shall recover his costs

11   incurred in this action.

12

13   DATED:   February 15, 1979.

14

15

16                      WILLIAM P. GRAY
                        United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

1102

-6-

EXHIBIT "B"

Rutherford v. Block United States District Court Case No. CV-75-04111 DDP – Privilege Log.
Defendant's Response to Plaintiffs' Requests for Production of Documents, Set One, (Post-Judgment.)

**PRIVILEGE LOG**

| DOCUMENT CATEGORY DESCRIPTION | DATE OF DOCUMENTS | AUTHOR | PRIVILEGES CLAIMED |
|---|---|---|---|
| 1.   Los Angeles County Sheriff's Department ("LASD") personnel records and related documents | Various | Los Angeles County Sheriff's Department Personnel | Official Information Privilege, *see, Miller v. Pancucci*, 141 F.R.D. 292, 299-300 (C.D.Cal. 1992); Individual Defendant and Third-Party Privacy Rights; California Evidence Code §1040, 1041, 1042 et seq.; attorney-client privilege, *see e.g. Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); attorney work product doctrine, *see e.g. Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981). |

28

| | | | |
|---|---|---|---|
| 2.   Inmate medical records and related documents | From January 2007 to present | LASD medical personnel - various | Official Information Privilege, *see, Miller v. Pancacci,* 141 F.R.D. 292, 299-300 (C.D.Cal. 1992); Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); Third-Party Privacy Rights. |
| 3.   Inmate mental health records and related documents | From January 2007 to present | LASD medical and mental health personnel - various | Official Information Privilege, *see, Miller v. Pancacci,* 141 F.R.D. 292, 299-300 (C.D.Cal. 1992); Health Insurance Portability and Accountability Act of 1996; Third-Party Privacy Rights; "Civil Rights of Institutionalized Persons Act ("CRIPA"); Department of Justice investigation." |

29

| 4.  Inmate mental health records and related documents | From January 2007 to present | LASD medical and mental health personnel - various | Official Information Privilege, *see, Miller v. Pancucci*, 141 F.R.D. 292, 299-300 (C.D.Cal. 1992); Health Insurance Portability and Accountability Act of 1996; Third-Party Privacy Rights; "Civil Rights of Institutionalized Persons Act ("CRIPA"); Department of Justice investigation." |
|---|---|---|---|

30

| 5.   Attorney Correspondence and related documents | Various | Various | Attorney-Client Privilege; Work product-doctrine. |
|---|---|---|---|

## DECLARATION OF LIEUTENANT SHAUN MATHERS

I, Lt. Shaun Mathers, declare as follows:

1.     The facts set forth herein are based on my personal knowledge and based on my understanding of official acts and writings. If called upon as a witness, I could and would testify competently to the facts contained herein under oath.

2.     I am a Lieutenant of the Los Angeles County Sheriff's Department ("LASD") and am the Lieutenant of the Risk Management Bureau of the LASD as of the date of this Declaration.

3.     I am thoroughly familiar with the policies and procedures of the LASD as they pertain to administrative, personnel, and operational record keeping, including records regarding inmate complaints, crime and incident reporting, and administrative and/or special investigations of incidents involving the Los Angeles County jail system and its inmates. I am obliged under constitutional, statutory and decisional law to invoke privileges and/or protections against discovery or disclosure of such records and to maintain the confidentiality of such records. Depending upon the circumstances presented by a given case, it is my understanding that such privileges and/or protections against discovery or disclosure may be afforded by the United States Constitution, First Amendment; the California Constitution, Article I, § 1; California Evidence Code §§ 1040 and 1043 et seq.; and decisional law relating to such provisions including a federal privilege known as the official information privilege.

4.     I have personally reviewed Plaintiffs' Requests for Production of Documents ("RPD") served on November 6, 2009 and I am familiar with the numerous types and categories of documents responsive to Plaintiffs' Requests. The Requests are tremendously overbroad and unduly burdensome to respond to and this declaration is made in support of a number of objections asserted in

32

1   Defendant's responses to the subject Requests. Because of the overbreadth of the

2   Requests, it would be impossible to specifically review every single privileged

3   document that may be responsive to the subject Requests.  While it is almost

4   impossible to estimate with reasonable precision, Plaintiffs' Requests impose an

5   enormous burden upon the LASD.  For example, responding to Plaintiffs'

6   numerous and overbroad Requests would require the LASD to identify, compile,

7   and review, at a minimum, 100,000-some pages of records and would force the

8   LASD to incur at least $50,000 in costs (excluding any attorneys fees associated

9   with having the LASD's counsel review these documents prior to their

10   production) associated with undertaking such a herculean task.  Further, if the

11   privacy and confidentiality assertions in this declaration are not as specific as

12   would ordinarily be the case when sensitive records are sought in litigation, that

13   fact is due entirely to Plaintiffs' failure to indicate with reasonable particularity

14   what documents are actually being sought.

15       5.       With respect to certain categories of documents responsive to the

16   subject Requests, as set forth in greater detail below, I believe that identification

17   and/or disclosure of the documents and the information contained therein

18   responsive to the above-mentioned Requests would further be contrary to the

19   public interest, as well as to the specific governmental and privacy interests of the

20   LASD.  For example, the governmental and/or privacy interests that would be

21   threatened by the disclosure of above-referenced materials to Plaintiffs and/or their

22   attorneys are:

23       (a)       Disclosure would put third-party inmate or former inmate

24   witnesses at risk of physical harm and/or death by criminals and/or would-be

25   criminals for cooperating with law enforcement and/or providing information and

26   intelligence to jail personnel;

27   ///

28   ///

1            (b)    Disclosure would violate the privacy rights of these third-party

2    inmate or former inmate witnesses and their families;

3            (c)    Disclosure would jeopardize the future ability of the LASD to

4    obtain candid, thorough statements and/or information from third-party inmate

5    witnesses and/or complainants;

6            (d)    Disclosure would also compromise the safety of LASD jail

7    personnel and staff as well as the jail facilities themselves because specific

8    information in the documents and materials are instructive of and/or reveal

9    intelligence gathered by various jail personnel and Operation Safe Jails deputies,

10   as well as security measures and procedures that were implemented by deputies

11   and custody staff responding to the particular incident which could be exploited

12   for any weaknesses in the system of procedures; and,

13           (e)    Disclosure would jeopardize the trust by and between the

14   County of Los Angeles, the LASD, any third-party informants, third-party

15   witnesses, and the public.

16       6.    As a Lieutenant with the LASD, I am aware that it is the policy of

17   the LASD to protect all sensitive information and records, such as the

18   administrative and criminal investigative materials and information that may be

19   contained in peace officer personnel files, from being made accessible to the

20   general public due to grave concerns of safety and privacy for the deputies and

21   any involved inmate witnesses. Additionally, pursuant to Craig v. Municipal

22   Court, 100 Cal. App.3d 69 (1979), I am informed and believe that it is incumbent

23   upon law enforcement agencies, such as the LASD, to prevent unauthorized

24   disclosure of records which are compiled by them without a person's consent

25   (i.e., arrest records) or records compiled with a person's consent, pursuant to

26   some legal requirement that entitles the person to restrict access to the records.

27   ///

28   ///

7.    LASD managers, including myself, make every effort to maintain the security and confidentiality of LASD records under our respective control pursuant to federal and state law.  Based on my experience, privileged and confidential information (which may be contained in a variety of documents any of which may be responsive to several of the RPDs) is not disclosed to the public.

8.    With respect to information about or concerning law enforcement officers, it has been my experience that deputies expect that information such as personal data, medical and employment history, personnel files, and other private information about them will not be voluntarily disclosed by their employer.  I am well aware that statutes such as California Penal Code §§ 146(e) and 1328.5 and California Vehicle Code § 1808.4 explicitly recognize that the disclosure of certain information about law enforcement officers can jeopardize their safety and the safety of their families.  In view of the clear dangers of law enforcement work, the LASD has a significant interest in assuring the safety, security, and privacy of its deputies and their families to the fullest extent possible.

9.    It has been my experience that deputies have certain rights and procedural safeguards in connection with administrative investigations, including those in the Public Safety Officers' Procedural Bill of Rights Act, California Government Code §§ 3300 et. seq., as well as in the previously mentioned authorities.  Subject to such rights and procedural safeguards, however, deputies are nonetheless asked to provide information to the investigators conducting the administrative investigation solely for the purposes of that investigation.  To the extent that this information would be subject to disclosure for such other purposes, the ability of these investigators to conduct fair and thorough administrative investigations would be undermined and impaired, since deputies will be less willing to make complete and aboveboard statements in aid of administrative investigations if they knew such information would later be disclosed.  Far worse, to the extent that information and records from criminal

35

1    investigations are disclosed, deputies will be even less willing to cooperate in

2    such investigations, given that they could be facing potentially far more severe

3    consequences.

4        10.    In my law enforcement experience, many persons who report or

5    witness alleged police misconduct or crimes request and/or expect anonymity in

6    exchange for providing information. Regardless of whether or not they request

7    anonymity, however, police investigators typically advise and assure citizen

8    complainants and witnesses that the information provided by them is confidential

9    and for internal use by the LASD only. The cooperation of the members of the

10    public is often dependent on such assurances. Such assurances are in turn

11    dependent on the capabilities of the LASD to keep sources of information

12    confidential and to fulfill representations made to members of the public

13    concerning confidentiality. Without such assurances, it is apparent to me that the

14    LASD would not receive the benefit of much information provided by citizen

15    complainants and witnesses in the course of administrative or criminal

16    investigations.

17        11.    As a Lieutenant with the LASD, I also understand that inmates or

18    former inmates of the jail facilities of the LASD as well as LASD personnel

19    generally expect that the information, contained in the above-mentioned class of

20    documents and records, which contain, among other things, their custody status

21    and their personal identifying information and other private information about

22    them will not be voluntarily disclosed by the LASD. It has further been my

23    experience that inmates or former inmates of the jail facilities of the LASD are

24    generally aware of their rights and the procedural safeguards in connection with

25    ///

26    ///

27    ///

28

1   the dissemination of their personal identifying information. Subject to such rights

2   and procedural safeguards, however, these inmates or former inmates of the jail

3   facilities of the LASD are nonetheless required to provide their personal

4   identifying information for the purposes of identification, booking, housing,

5   discipline, and administrative and/or criminal investigation. To the extent that

6   such personal information is sought, obtained, or used for other purposes, the

7   ability of the LASD to protect the privacy rights of third-party inmates and former

8   inmates of the jail facilities of the LASD will be undermined and impaired by the

9   disclosure of such information for other purposes. Additionally, I understand that

10  the above-mentioned class of documents and records potentially sought contain

11  sensitive information regarding jail security measures and intelligence gathered

12  by jail personnel and used for the purposes of ensuring the safety of the jail, its

13  staff, and the inmates. As such, sensitive information, documents, and records of

14  this nature are not typically disseminated by the LASD.

15      12.   In addition, the LASD has a significant governmental interest in

16  efficiently providing its law enforcement services to the public: such a goal

17  cannot be realized where indiscriminate disclosure and dissemination of

18  confidential records kept by the LASD can disrupt the vital, day-to-day

19  operations of the LASD; divert LASD personnel from their regular duties; erode

20  the integrity and security of such records; affect morale of many LASD

21  employees; consume inordinate time, expense and resources; and frustrate the

22  legitimate specific purposes of compiling and maintaining such records.

23      13.   In this circumstance, I firmly believe that a protective order is not

24  sufficient to protect the LASD's interests with respect to the subject Requests –

25  ///

26  ///

27  ///

28

37

especially considering the irrelevance of the vast majority of the documents requested to this case because the terms of the Judgment in this matter do not address issues related to the provision of mental health services in the jails. Even if any disclosure were to be governed by a protective order restricting use of the information disclosed, the fact that disclosure was made at all effectively compromises the privacy interests at stake, no matter how carefully the court crafts the language of the protective order. Although a protective order may govern and theoretically restrict the use of the responsive documents themselves, it cannot protect against the possession and use of information contained within the documents. Once disclosed, the information in these documents may be improperly used and disseminated by anyone who comes into possession of such knowledge and at any time. For example, it is my understanding that Plaintiff's counsel in this matter has every intention of discussing information contained in the requested personnel files with Plaintiff who is presently incarcerated in California State Prison. While the Court could craft a protective order with significant limitations, preventing Plaintiff from disseminating information in the state prison environment would be next to impossible and, once disseminated, Defendants would have no meaningful recourse.

14.    While, unquestionably, an order from the court is to be taken with the utmost seriousness and complied with by the parties at all times, there are individuals in society who, unfortunately, do not adhere to these requirements. In a circumstance where individuals make improper use of the information in disregard of the court's order, the damages to the LASD, its personnel, the subject

///

///

///

38

1   witnesses, inmates, and society is irreparable, and Defendants will have no
2   meaningful recourse whatsoever, after the fact, once this very sensitive
3   information has been disclosed.

4       15.   Accordingly, on behalf of the LASD, County of Los Angeles, and
5   Defendants herein, I assert all privileges and/or protections afforded by federal
6   and state constitutional, statutory and decisional law against disclosure of any
7   such records and the information contained therein.

8       16.   Furthermore, in the event that Plaintiff seeks a court order
9   compelling disclosure of the documents for which Defendant's assert applicable
10  privileges or objections, I respectfully request on behalf of the LASD, County of
11  Los Angeles, and Defendant herein that the court conduct an *in camera* inspection
12  of such documents, and in doing so, balance the need for confidentiality, the
13  grave security concerns outlined above, and the public interest in non-disclosure
14  against the claimed need for disclosure.  In addition, before any production of
15  records is ordered, Plaintiffs should be required to make a sufficient offer of proof
16  as to how the specific documents are relevant to this action.

17      17.   In the event that any disclosure of any record, document, or
18  information is ordered by the Court, I respectfully request on behalf of the LASD,
19  the County of Los Angeles, and Defendant herein that the Court issue a protective
20  order to be prepared by Defendant to preclude any disclosure or dissemination of
21  any records, documents or information for purposes other than the express and
22  specific purpose for which the Court has ordered such disclosure, and such other
23  safeguards and sanctions as the court deems proper.  This protective order should
24  require that the records be produced subject to an attorney's eyes only limitation
25  and that no copies of any produced records can be made.
26  ///
27  ///
28  ///

39

1       I declare under penalty of perjury under the laws of the state of California

2 and the United States of America that the foregoing is true and correct.

3       Executed this 9th day of December, 2009 at Commerce, California.

4

5

6                             Shaun Mathers

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40

## DECLARATION OF CAPTAIN MICHAEL K. KWAN

I, Captain Michael K. Kwan, declare as follows:

1.      The facts set forth herein are based on my personal knowledge and based on my understanding of official acts and writings. If called upon as a witness, I could and would testify competently to the facts contained herein under oath.

2.      I currently hold the rank of Captain in the Los Angeles County Sheriff's Department ("LASD") and am assigned to the LASD's Medical Services Bureau. I have held this position for approximately two and a half years and have been employed with the LASD for approximately 32 years.

3.      I have reviewed Plaintiffs' Requests for Production of Documents (which were served on November 6, 2009) and based on this review and on information and belief, it is my understanding, that counsel for Plaintiffs in this matter, the American Civil Liberties Union of Southern California, have requested a variety of documents which relate to the provision of mental health care in the Los Angeles County jail ("LACJ") system. As set forth in greater detail below, certain of the requests absolutely call for the production of records and documents that are protected from disclosure by applicable confidential, privilege, and privacy restrictions.

4.      First, with respect to any of the Requests which call for the production of information or documents that would be contained or are part of an inmate's medical or mental health records, that information is subject to the restrictions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). As such, absent a signed release from the specific inmate, medical and mental health records may not legally be disclosed. In addition, even without the restrictions of HIPAA, the LASD has an obligation to protect the privacy

41

1   rights of inmates which includes the protection of their confidential medical and
2   mental health records.
3        5.      Second, Plaintiffs' Requests seek information regarding the
4   provision of mental health care in the LACJ system, however, the provision of
5   mental health services is already the subject of a privileged and confidential
6   investigation by the United States Department of Justice ("DOJ") pursuant to the
7   Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §1997a et
8   seq.  Other than information publically available at
9   http://www.justice.gov/crt/split/cripa.php, information regarding the DOJ's
10  investigation and monitoring of mental health care in the LACJ system is not
11  publicly available nor is it subject to disclosure.
12       I declare under penalty of perjury under the laws of the state of California
13  and the United States of America that the foregoing is true and correct.
14       Executed this 9th day of December, 2009 at Commerce, California.
15
16  _____
17  Michael K. Kwan
18
19
20
21
22
23
24
25
26
27
28

42

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I, Ana Escamilla, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action; my business address is 100 West Broadway, Suite 1200, Glendale, CA 91210.

     On December 9, 2009, I served the foregoing **DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE (POST-JUDGMENT)** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

## SEE ATTACHED SERVICE LIST

**X**    BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Glendale, California, in the ordinary course of business.  I am aware that on motion of the party service, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

     Executed on December 9, 2009, at Glendale, California.

                                      _____

                                      Declarant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SERVICE LIST
### Rutherford, et al. v. Baca, etc., et al.
CV 75-04111 DDP

Mark Rosenbaum
ACLU Foundation of So. California
1313 W. 8th St.
Los Angeles, CA 90017

Melinda Bird
Disability Rights California
3580 Wilshire Blvd., Suite 902
Los Angeles, CA 90010

Roger H. Granbo
Assistant County Counsel
Law Enforcement Division
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, CA 90012

RUTHERFORD\Resp to RFPs

# EXHIBIT C

# BINGHAM

Stacy Weinstein Harrison
Direct Phone: 310.255.9169
Direct Fax:     310.907.2169
stacy.harrison@bingham.com

February 16, 2010

**Via Messenger**

Mr. Roger Granbo, Office of County Counsel
County of Los Angeles
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, CA 90012

Mr. Paul Beach
Lawrence Beach Allen & Choi PC
100 West Broadway, Suite 1200
Glendale, CA 91210

Re:   **Meet and Confer Correspondence Regarding Plaintiffs' First
      Set of Requests for Production of Documents in *Rutherford v.
      Baca, et al.*, Civil No. 75-04111 DPP**

Dear Messrs. Granbo and Beach,

  This letter is an effort to meet and confer regarding Defendants' December 9,
2009 Responses ("Responses")[1] to Plaintiffs' First Set of Requests for Production of
Documents ("Requests" or "RFPs"). Please let us know when you are available to
discuss the issues outlined below in person at our offices on or before February 26, 2010
pursuant to L.R. 37-1 ("counsel for the opposing party shall confer with counsel for the
moving party within ten (10) calendar days after the moving party serves a letter
requesting such conference").

---

[1]  As an initial matter, there are several erroneous numberings in
Defendants' Responses. Plaintiffs' initial RFP No. 24 (regarding prisoner transfers
to/from psychiatric facilities in the past twelve months) has been labeled No. 25 in the
Responses, and Plaintiffs' original RFP No. 25 (regarding prisoners currently awaiting
transfer to psychiatric facilities) has been labeled No. 26 in the Responses. In addition,
Plaintiffs' original RFP No. 26 sought "The Data Files prepared by Los Angeles County
in connection with the County's contract with the Vera Institute." Defendants have
incorporated this original RFP No. 26 into RFP No. 27 in its Responses. Defendants also
inserted, as RFP No. 26 in the Responses, a request that did not appear in Plaintiffs' First
Set of RFPs for "Document provided by Los Angeles County to the Pretrial Institute
(PTI) and documents received by the County from PTI, in connection with PTI's contract
with the County." In the interest of avoiding confusion, Plaintiffs employ throughout
Defendants' numbering system as it appears in the Responses, thereby incorporating the
PTI request (Defendants' No. 26) into Plaintiffs' First Set of RFPs.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

T 213.680.6400
F 213.680.6499
bingham.com

A/73279981.3

**EXHIBIT C**

Messrs. Granbo and Beach
February 16, 2010
Page 2

Plaintiffs' positions regarding the specific objections and issues raised in the Responses are as follows:

<u>Mental Health Issues Are Within The Scope Of This Litigation</u>

Incorporating by reference the objections in Defendants' Responses to RFP Nos. 1 and 3, Defendants object to the *entire* First Set of RFPs (Nos. 1-27) on the grounds that the Requests seek information outside the scope of the 1979 Judgment in this case because the "terms of the Judgment do not expressly or implicitly address any issues related to the provision of mental health treatment in the Los Angeles County jail ('LACJ') system." Responses, 4:12-14.

As Judge Pregerson recently found in the August 4, 2009 Order Granting Motion To Reopen Discovery ("August 2009 Order"), the amended complaint and orders in this case explicitly contemplate remedial action to address deficiencies in mental health treatment at LACJ.[2] Even if, arguendo, they did not, the scope of *Rutherford* is not frozen at the time of the 1979 Judgment, and its expansion is entirely permissible under the Court's inherent authority and Fed. R. Civ. P. 60(b), or stipulation of the parties. *See Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 859 (9th Cir. 2004). Thus, Defendants' reliance on cases regarding the completeness and self-containment of final judgments and pretrial orders (Responses, 4-5) is misplaced in a case, like the one here, involving numerous post-judgment orders and stipulations over the span of three decades. Indeed, "[f]inal . . . does not necessarily mean the last order possible to be made in a case." *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152, 85 S. Ct. 308, 13 L. Ed. 2d 199 (1964) (cited in *United States v. Washington*, 761 F.2d 1404, 1406 (9th Cir. 1985)).

In addition, mental health concerns go hand-in-hand with issues regarding overcrowding, and overcrowding is undisputably a facet of *Rutherford. See, e.g.*, Court's November 13, 1985 Order (Memorandum of Understanding). The post-judgment remedial orders were entered to alleviate overcrowding and its attendant effects, including its effect on the treatment of mentally ill inmates. The interdependent and inextricably linked issues of mental health and overcrowding mean discovery regarding mental health issues is entirely appropriate and within the scope of this case.

*Porras And Leandry Do Not Preclude Plaintiffs' Discovery*

---

[2]      Plaintiffs recognize that the Court's August 2009 Order did not rule on whether Plaintiffs are entitled to any particular document. August 2009 Order, 1:20-22; *see also* September 22, 2009 Order Clarifying Court's August 4, 2009 Order Reopening Discovery, 2:24. However, the Court's August 2009 Order did clearly recognize, at 3, that mental health issues have been part of the *Rutherford* litigation for decades prior to the initiation of the *Porras v. County of Los Angeles* litigation, as discussed below.

Messrs. Granbo and Beach
February 16, 2010
Page 3

Incorporating by reference the objections in Defendants' Responses to RFP Nos. 1 and 3, Defendants object to the *entire* First Set of RFPs (Nos. 1-27) to the extent the 27 Requests seek information regarding the provision of mental health care in the Los Angeles County Jail system.

Without articulating any specific legal theory or introducing any facts, Defendants stand on their objection that "to the extent [the RFPs] seek information regarding the provision of mental health care in the LACJ system, such issues have already been addressed in this District...." Responses, 5:22. Defendants rely on *Porras v. County of Los Angeles*, No. 04-1229 RGK, 2006 U.S. Dist. LEXIS 96971 (C.D. Cal. Oct. 31, 2006) and the unpublished *Leandry v. County of Los Angeles*, No. 08-55984, 2009 U.S. App. LEXIS 24704 (9th Cir. Nov. 2, 2009) in support of what is apparently a collateral estoppel, or issue preclusion, argument. As an initial matter, it is Defendants' burden to show *Porras* and *Leandry* preclude this discovery, and this cursory "argument" would be insufficient to meet that burden. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 n.4 (9th Cir. 1988). Defendants' argument that *Porras* and *Leandry* preclude Plaintiffs' discovery fails for a number of other reasons as well.

First, collateral estoppel, by definition, simply does not apply here as *Rutherford* was adjudicated long before *Porras*: "Under the doctrine of collateral estoppel . . . the judgment in the *prior suit* precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979) (emphasis added). The 1979 *Rutherford* suit and the mental health issues it encompasses existed pre, not post, *Porras*. As such, collateral estoppel is not applicable here and the later *Porras* judgment has no preclusive effect on the earlier *Rutherford* judgment. *See, e.g., Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007).

Second, even if collateral estoppel were applicable here, issue preclusion is an equitable doctrine (*Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995)) that can only be applied where the party against whom it is asserted was afforded due process. *See generally* 18 James Wm. Moore et al., Moore's Federal Practice ¶ 1332.04 (3d ed. 1999). Due process requires reasonable notice to interested parties: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated,* under all the circumstances, *to apprise interested parties* of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (emphasis added). Defendant County of Los Angeles should have notified *Rutherford* counsel, an interested party, of the *Porras* class certification so that *Rutherford* counsel could have an opportunity to intervene in *Porras*. Defendants' failure to notify means *Rutherford* Plaintiffs were effectively denied due process, and for this equitable reason alone *Porras* should not be found to preclude this *Rutherford* discovery.

Third, even if the doctrine of collateral estoppel were applicable here, and even if there were no due process concerns barring its application, the standard itself is not met:

Messrs. Granbo and Beach
February 16, 2010
Page 4

"To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must
be *identical* to the one alleged in the prior litigation; (2) the issue must have been *actually
litigated* in the prior litigation; and (3) the determination of the issue in the prior litigation
must have been a *critical and necessary* part of the judgment in the earlier action." *Clark
v. Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir. 1992) (internal citation omitted)
(emphasis added). None of these prongs is met here.

Fourth, *Rutherford* Plaintiffs are not bound by *Porras* due to the material changes
in fact and law that have occurred since the entry of the *Porras* judgment. *See
Commissioner v. Sunnen*, 333 U.S. 591, 599-600, 68 S. Ct. 715, 92 L. Ed. 898 (1948).

Finally, there is no preclusion where the class in a subsequent case differs from
the class in the prior case. *Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1350, 1355
(2d Cir. 1992) (*rev'd on other grounds*, 509 U.S. 155 (1993)). The *Porras* class
certification order establishes a class of "present and future pretrial detainees and post-
conviction inmates who have sought or will seek medical care while they are or will be in
Defendants' custody in Men's Central Jail and Twin Towers facilities." *Porras*, Docket
No. 105 (filed August 31, 2005). Insofar as the subset of the *Rutherford* class that needs
medical care but *has not and will not* seek such care is concerned, preclusion does not
apply because it is not covered by the *Porras* class definition.

<u>Plaintiffs' Discovery Is Relevant</u>

Defendants refuse to produce documents in response to RFP Nos. 11 (current
housing schema), 14 (health care staffing roster), 24 (Pretrial Institute documents), and
27 (Data Files) on the grounds that, *inter alia*, these documents are not relevant to any
claim or defense.

As with the other twenty-three RFPs in the First Set, the information requested in
these RFPs is relevant to Plaintiffs' claims. For example, the production of the health
care staffing roster for all mental health personnel for the limited three-month period
requested (RFP No. 14) will assist Plaintiffs in determining whether the constitutional
standard for a minimally adequate prison mental health care delivery system is met. The
Data Files (RFP No. 27), which provide snapshots of the entire current and released jail
population, are particularly crucial as they will assist Plaintiffs' expert Dr. Terry Kupers
in establishing the current conditions of overcrowding, which Defendants concede are the
focus of the *Rutherford* judgment, and which are also inextricably linked to mental health
issues. Because the information requested in these RFPs is reasonably calculated to lead
to the discovery of admissible evidence with regard to Plaintiffs' claims regarding mental
health issues and overcrowding, it is relevant and discoverable. Fed. R. Civ. P. 26(b)(1).

<u>HIPAA Provides For Disclosure In Response To Discovery Requests</u>

Messrs. Granbo and Beach
February 16, 2010
Page 5

Incorporating by reference the objections in Defendants' Responses to RFP Nos.
1 and 3, Defendants claim that the documents requested in the *entire* First Set of RFPs
(Nos. 1-27) are subject to the restrictions of the Health Insurance Portability and
Accountability Act of 1996 ("HIPAA").

First, the argument that the entire First Set of RPFs is subject to HIPAA is
overbroad as several of the Requests do not implicate the health information of individual
inmates at all. *See, e.g.*, RFP Nos. 1, 2, 8-19, 21, 22, 24, 25, 26, and 27. Defendants'
Responses do not explain how inmates' protected health information and HIPAA are
implicated in RFPs that seek, for example, documents regarding Jail operations (No. 2),
the health care organizational chart (No. 10), documents related to mental health
personnel (No. 13), contracts with non-Jail personnel providing mental health services
(No. 15), annual operational budgets (No. 18), and Pretrial Institute documents (No. 24).

Furthermore, 45 C.F.R. 164.512 details the uses and disclosures for which
authorization to release protected health information is *not* required under HIPAA.
HIPAA permits the use and disclosure of protected health information--without an
individual's authorization or permission--for twelve recognized national priority
purposes. *See* Summary of the HIPAA Privacy Rule, OCR Privacy Brief, published by
the U.S. Department of Health & Human Services, p. 6, available at
http://www.hhs.gov/ocr/privacy/hipaa/understanding/summary/privacysummary.pdf.
The relevant national priority purpose here involves disclosures made for judicial and
administrative proceedings, including those made in response to discovery requests. *See*
45 C.F.R. 164.512(e)(1)(ii) (protected health information may be disclosed in the course
of any judicial proceeding "[i]n response to a subpoena, *discovery request*, or other
lawful process....") (emphasis added). Thus, the disclosure of these documents without
inmate authorization is permissible under HIPAA.

Privacy Rights Of Third Parties May Be Protected Adequately Through
Protective Orders And/Or Document Redaction

Defendants object to RFP Nos. 3-8, 11, 13-14, 16, 20, 22-23, and 25-27 on the
basis that the information sought implicates the "privacy rights of non-class members and
any third party." The response to RFP No. 13 also asserts an objection "based on the
privacy rights of County employees." The RFPs objected to on privacy grounds seek
information about mental health treatment, screening, medication, and suicide attempts
regarding inmates in the Jail. *See, e.g.*, RFP Nos. 3-8, 22-23.

Privacy concerns implicated in the inspection of medical records "must yield to
the federal interest in discovering whether public officials and public institutions are
violating federal civil rights." *Ginest v. Bd. of County Comm'rs*, 306 F. Supp. 2d 1158,
1159-60 (D. Wyo. 2004); *see also Doe v. Meachum*, 126 F.R.D. 444, 450 (D. Conn.
1989). There is no reason why a protective order cannot be crafted in this case, as is the
well-established practice in institutional reform litigation, to address the unavoidable fact
that inspection of medical information implicates the privacy concerns of present and
former class members. Such an order would, like the sample attached here, include

Messrs. Granbo and Beach
February 16, 2010
Page 6

detailed provisions to protect against any unnecessary disclosure of sensitive medical information by strictly limiting the individuals allowed to view the information, and by requiring the filing of confidential information only under seal and the redacting of identifying information of present or former class members in any public filing. *See* Sample Protective Order, ¶¶ 3-6, 8. These measures would adequately address privacy concerns.

<u>Defendants' Claims Of Privilege Or Confidentiality With Respect To The Department of Justice Reports Are Without Merit; Nor Can Privilege Be Used As Both Sword And Shield</u>

Incorporating by reference the objections in Defendants' Responses to RFP Nos. 1 and 3, Defendants object to the *entire* First Set of RFPs (Nos. 1-27) on the grounds they seek information "which is currently the subject of a privileged and confidential investigation by the United States Department of Justice" ("DOJ"). The objection states that, other than information available on the DOJ's website, "information regarding DOJ's investigations or the ongoing monitoring of mental health care in the LACJ system is confidential."

Defendants' objections provide no authority or explanation for how or why the DOJ reports are protected from discovery by virtue of privilege or confidentiality. Nor does the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997 *et seq.*) ("CRIPA") contain any provision requiring the DOJ or Attorney General to maintain the confidentiality of an investigation. In fact, CRIPA provides that "the fact that the Attorney General may be conducting an investigation or contemplating litigation pursuant to this Act *shall not be grounds for delay of or prejudice to any litigation* on behalf of parties other than the United States." 42 U.S.C. § 1997j (emphasis added); *see also United States v. State of Oregon*, 839 F.2d 635, 637 (9th Cir. 1988). Indeed, the purported confidentiality of DOJ reports has been found to be an inadequate basis for failing to produce relevant information. *See United States v. Certain Parcels of Land Etc.*, 15 F.R.D. 224, 228-30 (S.D. Cal. 1953).

Finally, even if Defendants were able to establish the privilege or confidentiality of the DOJ reports, investigations and monitoring, Defendants' refusal to produce any such documents will preclude Defendants from relying on such information in this action. Defendants cannot use the purportedly privileged and confidential nature of the DOJ reports, investigations, and monitoring as both a sword and a shield. *Cf.* Fed. R. Civ. Proc. 26(a)(3)(A)(iii) (requiring disclosure of documents on which the party intends to rely); *Kaiser Found. Health Plan Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009). If Defendants plan to rely on this information, it must be disclosed.

<u>Defendants' Assertion Of The "Official Information" Privilege And Concerns Over Security Are Unwarranted Or Can Be Appropriately Addressed Through The Issuance Of A Protective Order</u>

Messrs. Granbo and Beach
February 16, 2010
Page 7

Defendants assert the "official information" privilege with respect to RFP Nos. 1 (mental health care policies and procedures), 13 (mental health personnel), 14 (mental health personnel staffing roster), and 20 (prisoner deaths). In response to RFP Nos. 11 (current housing schema) and 27 (Data Files), Defendants also claim that the production of the requested information will create security concerns or threats.

When faced with the assertion of the qualified "official information" privilege, courts must weigh the potential benefits of disclosure against the potential disadvantages. *See Miller v. Pancucci*, 141 F.R.D. 292, 299-300 (C.D. Cal. 1992). This balancing test is "moderately pre-weighted in favor of disclosure" because "privileges operate in derogation of the truth finding process". *Id.* at 300. Here Plaintiffs' significant interest in obtaining the requested information to ensure that their constitutional rights are adequately being protected and that Defendants are complying with the 1979 Judgment and subsequent orders weighs in favor of disclosure. Nor does the declaration of Shaun Mathers illustrate how disclosure of the requested documents would jeopardize the safety of Jail personnel, the future ability to obtain candid statements from inmate witnesses, and "the trust by and between the County of Los Angeles, the LASD, any third-party informants, third-party witnesses, and the public." Mathers Decl., ¶ 5. Indeed, it is difficult to see how information relating to suicide attempts, medications provided to inmates, and the mental health classification system would create security or trust concerns for the Jail or its staff.

Finally, to the extent Defendants have a legitimate interest in maintaining the confidentiality of certain information, such as personal information of law enforcement officers or the anonymity of confidential informants (which are not sought by the RFPs), a well-crafted protective order would provide the necessary safeguards.

Defendants' Privilege Log Is Inadequate

The "privilege log" provided by Defendants fails to satisfy the requirements of the Federal Rules of Civil Procedure. A party withholding documents based on a privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Defendants' skeletal log is inadequate. *See United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996).

Plaintiffs' Discovery Is Neither Overly Broad Nor Burdensome

Defendants' objection that RFP Nos. 1 (mental health care policies and procedures), 2 (jail operations policies and procedures), 16 (incident reports), 17 (inmate complaints), and 27 (Data Files) are overly broad is without merit because, as explained above, the RFPs seek information that is relevant to this case and necessary for Plaintiffs to ensure that Defendants are complying with the Judgment and subsequent orders in this case.

Messrs. Granbo and Beach
February 16, 2010
Page 8

      Defendants also object that responding to the RFPs would be burdensome.  The
alleged burden that Defendants would face in responding to highly relevant discovery
does not provide a legitimate justification for Defendants' failure to produce the
requested documents.  *See, e.g., Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205
F.R.D. 421, 431 (S.D.N.Y. 2002).  Even if the burden is substantial, Plaintiffs have good
cause for seeking the production of the highly relevant information.  *See, e.g.*, Fed. R.
Civ. P. 26(b)(2)(B).

      Further, this objection is not well taken because Defendants have not identified
the specific sources of documents that Defendants have refused to search on the basis of a
burdensome objection.  *See* Adv. Comm.  Note to 2006 Amendment to Fed. R. Civ. P.
26(b)(2) ("The responding party must also identify, by category or type, the sources
containing potentially responsive information that it is neither searching nor producing.")
Any excessive burden imposed by the RFPs can be mitigated through the use of sampling
the sources of potentially responsive documents, the hiring of a forensic expert to search
Defendants' computer files, the use of search terms on electronically-stored information,
or the issuance of a protective order.  *See id.; see also* Fed. R. Civ. P. 26(c).  Further,
Defendants could allow Plaintiffs' counsel to review all sources of potentially relevant
information under the protection of an "attorney eyes only" protective order, and then
subsequently assert any objections it may have with respect to specific documents
identified by Plaintiffs' counsel as responsive.

<u>Clarification Of Terms</u>

      Defendants' Responses state that the bolded terms below are vague and
ambiguous.  Although Plaintiffs disagree, clarification is provided herein for the terms
and issues raised in RFP Nos. 1, 2, 5, 6, 8, 10, 11, 12, 18, 22, and 26.  These clarifications
cure any alleged failure to specify documents with reasonable particularity.

<u>RFP No. 1</u>: The phrase "**other documents concerning mental health care at the Jail**"
means documents in prisoners' health care records.

<u>RFP No. 2</u>: Defendants objected to the phrase "**Jail operations.**"  This RFP is revised to
read "The custody operations manual and current unit orders relating to Jail procedures
and operations as specified herein: use of force; recreation; classification . . . ." (see
current RFP No. 2 for entire enumerated list).

<u>RFP No. 5</u>: Defendants objected that the Request contained no time limitation or time
period for responsive records.  RFP No. 5, however, is already explicitly limited to the
present time: "Documents showing all prisoners *currently* prescribed psychotropic
medications, the dosage of those medications, and the frequency of their administration."
(emphasis added)

<u>RFP No. 6</u>: The term "**discharge planning**" refers to ensuring the dissemination of
discharge medications, educating prisoners about community-based mental health
services, enrolling discharging prisoners in local/state mental health plans, notifying local

Messrs. Granbo and Beach
February 16, 2010
Page 9

community-based mental health clinics about the discharging prisoner, and setting up appointments.  The word **"documents"** is defined in First Set RFP page 4, paragraph 13, "Definitions and Instructions."

RFP No. 8: The word **"episode,"** means documented incident or occurrence.  The word **"restraints"** refers to both therapeutic restraints (ordered by mental health staff) and custodial restraints (ordered by custodial staff).  The word **"seclusion"** means the practice of placing inmates in solitary confinement.  Documents covering the period of the past six months are acceptable.

RFP No. 10: The term **"current health care organization chart"** refers to the document that sets forth all health care staff positions in a hierarchy, from supervisors to line staff.

RFP No. 11: **"Jail"** refers to Twin Towers, Men's Central Jail, and the Inmate Reception Center.

RFP No. 12: The term **"current classification instrument"** refers to LASD's classification manual, which should include all instructions for staff on how to classify prisoners.

RFP No. 18: The term **"County Commissioners"** refers to LASD authorities to whom annual operational budgets and supporting documents are submitted.

RFP No. 22: The word **"document"** is defined in First Set RFP page 4, paragraph 13, "Definitions and Instructions."  The word **"units"** means all cells, dorms, dayrooms, rooms, benches, bunks or any other area that houses prisoners at Men's Central Jail. The term **"specialized training"** means training beyond that which is required of all officers and staff members.  The term **"discharge planning"** refers to ensuring the dissemination of discharge medications, educating prisoners about community-based mental health services, enrolling discharging prisoners in local/state mental health plans, notifying local community-based mental health clinics about the discharging prisoner, and setting up appointments.

RFP No. 26: The word **"currently"** means as of the present time.  The term **"psychiatric facility"** means any building, department, office, hospital, treatment center, or other place at which mental health evaluation, diagnosis, treatment, or care is determined or provided.

Thank you for agreeing to produce the LASD policies and procedures regarding visitation, recreation, telephones, and cell searches in response to RFP No. 2.  Production, however, was due on the same date as the responses.  We request that you make these documents available for review and copying on February 19, 2010.  We note that the remaining discovery requested in RFP No. 2 falls within the scope of this litigation and is discoverable because it is relevant to mental health and overcrowding issues at LACJ, as discussed above.

Messrs. Granbo and Beach
February 16, 2010
Page 10

Finally, Defendants have asserted that some of the documents requested in RFP Nos. 18 (annual operational budgets) and 20 (prisoner deaths) are publicly available. This objection is not well taken. Plaintiffs are not required to comb through public records to find these documents. The responsive documents should be produced, regardless of whether they are publicly available or not. *See* Fed. R. Civ. P. 34(a)(1) (party is obliged to produce all specified relevant and nonprivileged documents which are in his or her "possession, custody, or control" on the date and place specified in the request).

We look forward to resolving the outstanding issues regarding this discovery with you on a mutually agreeable date within 10 days of the date of this letter. Although we are confident the parties can reach a satisfactory resolution to these issues without court intervention, in the event they are unable to do so, please be advised that Plaintiffs will seek compulsory disclosure and production of the universe of documents as set forth in the First Set of Requests for Production of Documents.

Sincerely,

Stacy W. Harrison

1    MARK D. ROSENBAUM, SBN 59940
     mrosenbaum@aclu-sc.org
2    PETER ELIASBERG, SBN 189110
     peliasberg@aclu-sc.org
3    ACLU FOUNDATION OF
     SOUTHERN CALIFORNIA
4    1313 W. 8th Street
     Los Angeles, California 90017
5    Telephone:  (213) 977-9500
     Facsimile:   (213) 977-5297
6
     MARGARET WINTER
7    ACLU NATIONAL PRISON PROJECT
     915 15th Street NW, 7th Floor
8    Washington, D.C. 20005
     Telephone:  (202) 548-6605
9    Facsimile:   (202) 393-4931
     E-mail: mwinter@npp-aclu.org
10
     MELINDA R. BIRD, SBN 102236
11   DISABILITY RIGHTS CALIFORNIA
     3580 Wilshire Blvd., Suite 902
12   Los Angeles, California 90010
     Telephone:  (213) 427-8747
13   Facsimile:   (213) 427-8767
     E-mail: melinda.bird@
14      disabilityrightsca.org

STACY W. HARRISON, SBN 175028
BINGHAM MCCUTCHEN LLP
1620 26th Street
4th Floor, Main Tower
Santa Monica, California 90404
Telephone: (310) 907-1000
Facsimile: (310) 907-2000
E-mail: stacy.harrison@bingham.com

Attorneys for Plaintiffs

PAUL B. BEACH, SBN 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, SBN 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN &
    CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone: (818) 545-1925
Facsimile: (818) 545-1937

Attorneys for Defendants

15            UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17

18   DENNIS RUTHERFORD, et al.,

19           Plaintiffs,

20        v.

21   LEROY BACA, as Sheriff of the County
     of Los Angeles, MICHAEL D.
22   ANTONOVICH, YVONNE B. BURKE,
     DON KNABE, GLORIA MOLINA, ZEV
23   YAROSLAVSKY, as Supervisors of the
     County of Los Angeles, et al.,

24         Defendants.

Case No. Civ. 75-04111-DDP

**STIPULATION REGARDING
ACCESS TO AND
CONFIDENTIALITY OF
MEDICAL RECORDS**

Judge:     Hon. Dean Pregerson

25      To enable the parties to adequately prosecute and defend this litigation and to

26   enable the parties' experts to examine relevant documents and give testimony about

27   their conclusions based on those documents, the parties hereby stipulate that the

28

A/73292850.1

1    Court may enter the following protective order without hearing or notice:

2    1.    Counsel for both parties may have access to records in the possession and

3           control of the Los Angeles Sheriff's Department ("LASD") that relate to the

4           medical care of class members or former prisoners in the Los Angeles

5           County Jail ("LACJ") system and that might otherwise be subject to

6           confidentiality restrictions.

7    2.    Any employee to whom counsel for the parties makes a disclosure from

8           confidential records shall be provided with a copy of, and become subject to,

9           the provisions of this Order requiring that the documents and information be

10          held in confidence.

11    3.    Counsel for either party may share information from confidential records,

12          including the record itself, with the following persons, to the extent

13          reasonably necessary for the litigation of this action: (1) expert witnesses or

14          consultants retained by the party for this case; (2) employees and agents of

15          counsel who have direct functional responsibility for the preparation and trial

16          of the lawsuit; (3) current or former LASD/LACJ health services employees

17          who have provided treatment to class members; (4) court reporters and court

18          personnel; (5) persons designated to represent named defendants for the

19          purposes of defending and/or resolving this lawsuit; and (6) those persons, if

20          any, specifically engaged for the limited purpose of making photocopies of

21          documents.  Prior to disclosure to any such persons other than employees of

22          counsel, such persons must be informed of and agree in writing to be subject

23          to the provisions of this Order requiring that the documents and information

24          be held in confidence.   These written agreements must be filed with

25          opposing counsel before such persons may examine confidential records or

26          information from the records.

27    4.    If an expert believes that his or her report must reference personally

28          identifying information, the expert may do so but must then submit his or her

1    report to the Court under seal to be opened only by agreement of counsel for

2    both parties or by order of the Court.  The information so obtained shall

3    remain confidential and may not be shared with anyone other than the

4    individual to whom the information pertains, except as authorized by this

5    Order or by another order of the Court.

6    5.    The expert may discuss personally identifying information with the counsel

7          who retained him or her or with the person who is the subject of the

8          information.  The expert may also discuss personally identifying information

9          with health care providers who provided health care services to that

10         individual, with health care staff employed by LASD/LACJ, and with

11         employees of health services organizations under contract with LASD/LACJ.

12         However, all such discussions shall remain confidential except to the extent

13         they may be otherwise discoverable or disclosable under the terms of this

14         protective order.  Further, any such discussions are subject to the ordinary

15         rules of practice regarding counsel contacting and communicating with

16         persons who are represented by counsel.

17   6.    All persons allowed access to confidential records pursuant to this agreement

18         shall take reasonable and necessary measures to maintain the confidentiality

19         of such records, and are prohibited from using or disclosing the confidential

20         records for any other purposes other than litigating or pursuing settlement in

21         this lawsuit.

22   7.    No information may be withheld from discovery on the ground that the

23         material to be disclosed requires protection greater than that afforded by this

24         Order, unless the party claiming a need for greater protection moves for an

25         order providing such special protection pursuant to Fed. R. Civ. P. 26(c).

26   8.    Any medical records or other documents containing medical information that

27         identifies a specific class member filed or used in the litigation will either:

28         (1) be filed entirely under seal; or (2) will have the names and identifying

A/73292850.1                                        3

1    information redacted, with a key to their identities submitted to the Court and
2    opposing counsel.  This key will identify individuals by their last and first
3    initial.  For example, John Doe will be referred to as D.J.  To the extent that
4    any materials subject to this Order (or any pleadings, motion or
5    memorandum referring to them) are proposed to be filed or are filed with the
6    Court, those materials and papers, or any portions thereof which disclose
7    confidential information, shall be filed under seal (by the filing party) with
8    the Clerk of the Court in an envelope marked "FILED FOR *IN CAMERA*
9    INSPECTION PURSUANT TO ORDER OF COURT DATED _____,"
10   together with a simultaneous motion (Hereinafter the "Interim Sealing
11   Motion").  Even if the filing party believes that the materials subject to the
12   Protective Order are not properly classified as confidential, the filing party
13   shall file the Interim Sealing Motion; provided, however, that the filing of the
14   Interim Sealing Motion shall be wholly without prejudice to the filing party's
15   rights under ¶ 9 of this Order.

16   9.    A designation of confidentiality may be challenged upon motion.  The
17         burden of proving the confidentiality of designated information remains with
18         the party asserting the confidentiality.

19   10.   Upon termination of this lawsuit, including termination of any appeal from
20         the final judgment of this Court, all confidential records obtained, disclosed
21         or used pursuant to this order, and any copies thereof, shall be destroyed or
22         returned to the entity that provided the records.  In the alternative, counsel
23         shall protect the confidentiality of the records for so long as they are retained

1   by counsel, and shall limit further uses and disclosures of confidential

2   information as required by this Order.

3

4                                            Respectfully Submitted,

5   DATED: _____, 2010

6                                            By:_____
7                                            Mark D. Rosenbaum
                                             ACLU Foundation of Southern
8                                            California

9
                                             By:_____
10                                           Margaret Winter
11                                           ACLU National Prison Project

12

13                                           By:_____
                                             Melinda Bird
14                                           Disability Rights California

15

16                                           By:_____
                                             Stacy W. Harrison
17                                           Bingham McCutchen LLP

18
                                             Attorneys for Plaintiffs
19

20
                                             By:_____
21                                           Paul B. Beach
22                                           Lawrence Beach Allen & Choi, PC

23                                           Attorneys for Defendants

24

25

26

27

28

1

## __ORDER__

2   **IT IS SO ORDERED:**

3   DATED this ____ day of _____, 2010

4

5   _____

6          HON. DEAN PREGERSON
         UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

       I am a citizen of the United States, over 18 years of age, not a party to this action and employed in the County of Los Angeles, California at 355 South Grand Avenue, Suite 4400, Los Angeles, California  90071-3106.

       Today I served the attached:

**STIPULATION REGARDING ACCESS TO AND CONFIDENTIALITY OF MEDICAL RECORDS**

by causing a true and correct copy of the above to be hand delivered in sealed envelope(s) with all fees fully paid, addressed as follows:

| | |
|---|---|
| Mr. Roger Granbo, Office of County Counsel | Mr. Paul Beach |
| County of Los Angeles | Lawrence Beach Allen & Choi PC |
| 648 Kenneth Hahn Hall of Administration | 100 West Broadway, Suite 1200 |
| 500 West Temple Street | Glendale, CA  91210 |
| Los Angeles, CA  90012 | |

       I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that this declaration was executed on February 16, 2010.

                                           Angie Rigor

# EXHIBIT D

# BINGHAM

Stacy Weinstein Harrison
Direct Phone: 310.255.9169
Direct Fax:   310.907.2169
stacy.harrison@bingham.com

March 11, 2010

**Via US Mail**

Mr. Justin W. Clark
100 West Broadway, Suite 1200
Glendale, California 91210

**Via E-Mail**

jclark@lbaclaw.com

Re:   **March 3, 2010 Meet and Confer Meeting Regarding Plaintiffs'
First Set of Requests for Production of Documents in**
*Rutherford v. Baca, et al.*, **Civil No. 75-04111 DPP**

Dear Justin:

This letter memorializes the parties' discussions that occurred during the meet and confer
meeting held at our offices on Wednesday March 3, 2010 pursuant to L.R. 37-1 regarding
the *Rutherford* Plaintiffs' First Set of Requests for Production of Documents ("1st Set
RFPs"). We will assume this summary accurately reflects what transpired during this
meeting and the parties' respective positions unless we hear from you otherwise within
two business days after the date of this letter.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

<u>Scope</u>: Defendants continue to maintain that mental health issues are beyond the scope of
the *Rutherford* litigation.  The parties agreed to disagree on this threshold issue and that it
will need to be briefed for the Court.  Defendants believe the Court's September 2009
order (Docket No. 201) does not address whether mental health issues are within the
scope of discovery.  Plaintiffs maintain the September 2009 order does not address the
scope of discovery insofar as whether any *particular/specific* documents are
discoverable, but that it also does not alter the Court's August 2009 Order (Docket No.
192) stating that mental health issues, in general, are within the scope of the *Rutherford*
litigation and that discovery regarding medical care and mental health issues is indeed
permissible.

Bingham McCutchen LLP
The Water Garden
Fourth Floor
North Tower
1620 26th Street
Santa Monica, CA
90404-4060

T  310.907.1000
F  310.907.2000
bingham.com

<u>Preclusion</u>: Defendants continue to maintain that *Porras v. County of Los Angeles*, No.
04-1229 RGK, 2006 U.S. Dist. LEXIS 96971 (C.D. Cal. Oct. 31, 2006) and the
unpublished *Leandry v. County of Los Angeles*, No. 08-55984, 2009 U.S. App. LEXIS
24704 (9th Cir. Nov. 2, 2009) preclude the 1st Set RFPs, but this position was not
articulated beyond the statement that preclusion applies "because it does."  The parties
agreed to disagree on this threshold issue and that it will need to be briefed for the Court.
Mr. Clark was reminded the burden of proving preclusion rests on the party asserting it.

A/73313930.2

**EXHIBIT D**

Mr. Justin W. Clark
March 11, 2010
Page 2

<u>Privacy Issues/HIPAA/"Official Information" Privilege</u>: We had proposed an
"attorneys eyes only" protective order and had provided an exemplar enclosed with our
February 16, 2010 meet and confer correspondence. Mr. Clark initially stated
Defendants had a "bad taste in their mouths" about protective orders and would not take
stock in them because of ACLU's (and Bingham's) purported "violation" of the 1989
stipulated order, which Mr. Clark characterized as forbidding ACLU from sharing
information with anyone who is not employed at ACLU. We strongly disagreed with Mr.
Clark's characterization of this order and vehemently denied that either ACLU or
Bingham has violated it. Mr. Clark then backed off this accusation and stated that
Defendants were basing this claim on their interpretation of this order. Later Mr. Clark
stated Defendants are concerned about (1) remedies, in the event the protective order
were violated and (2) inmates suing LASD for turning over their medical records (even if
LASD were under a court order to do so), because LASD would have to defend such
suits, even if frivolous, and would want Bingham/ACLU to indemnify them against such
suits. This issue was not resolved. The parties also discussed the "official information"
privilege, and Mr. Clark agreed that it may or may not apply, depending on the scope and
breadth of the requests.

<u>Burden/Breadth</u>: Mr. Clark stated that Defendants were unclear as to what Plaintiffs
were seeking in several of the RFPs. He raised RFP No. 17 (requesting inmate
"grievances and complaints") as an example. We stated that we may be willing to narrow
some of the requests, but that we needed to better understand how the responsive records
are kept and organized (e.g., whether they are electronic and "searchable"). Mr. Clark
was unsure about how records are kept, the extent to which they are searchable, or how
much of a burden it would truly be to retrieve requested documents. He stated he would
look into this, as well as the purported burden to gather and produce documents in
response to the other requests (e.g., whether certain policies and procedures were
electronic and searchable) and provide us with answers by the end of the following week
(March 12). We requested Mr. Clark tell us which RFPs Defendants believed were
particularly burdensome/broad. In turn, we agreed to look at the RFPs and see if there
are particular requests where we could more specifically identify the documents we are
seeking, noting that it may not be possible to narrow our requests until we receive
Defendants' information regarding how the materials are organized and stored. We
agreed not to file our portion of the Joint Stipulation for the next week or so -- allowing
for an additional meet and confer on "burden" -- but we made it clear that we will not put
off filing indefinitely. We did not agree to the proposal to wait to file until after the tour
of the jail facilities (other than MCJ) currently scheduled for March 18 and 19, 2010.

<u>DOJ Reports</u>: Mr. Clark stated he is attempting to convince his clients to release the
DOJ reports. We again made the point that Defendants must either produce them or are
precluded entirely from using them. Mr. Clark acknowledged that Defendants cannot use
these reports unless they are produced.

<u>Privileges/Log</u>: We stated that once burden/breadth issues were settled, we would need a
more detailed log. Mr. Clark agreed the log submitted with the 1st Set RFP Responses
was inadequate.

Mr. Justin W. Clark
March 11, 2010
Page 3

**RFP No. 2**:  Defendants agreed to produce documents as per their Responses.  We had requested in the February 16 meet and confer correspondence that these documents be made available for review and copying on February 19.  *Please let us know by the close of business tomorrow when and where we will be able to review and copy these documents.*

**RFP Nos. 18 and 20**: Defendants' 1st Set RFP Responses asserted that some of the documents responsive to these RFPs are publicly available.  As stated in our February 16 letter, Plaintiffs are not required to comb through public records to find these documents, and responsive documents should be produced, regardless of whether they are publicly available or not.  FRCP 34(a)(1).  *Please let us know by the close of business tomorrow when and where we will be able to review and copy these documents.*

**RFP No. 24**: The RFP labeled as No. 24 in Defendants' Responses reads, "Document provided by Los Angeles County to the Pretrial Institute (PTI) and documents received by the County from PTI, in connection with PTI's contract with the County."  This RFP did not appear in Plaintiffs' 1st Set RFPs.  The parties agreed it should come out.  To avoid future confusion and for purposes of clarification, the following original numbering from the 1st Set RFPs reflects the correct numbering and content for RFP Nos. 24-27:

No. 24: Documents identifying all prisoners who have been transferred to or from a psychiatric facility in the past twelve months, including the date(s) of their transfer or admission.

No. 25: Documents identifying all prisoners who are currently awaiting transfer to a psychiatric facility.

No. 26: The Date Files prepared by Los Angeles County in connection with the County's contract with the Vera Institute.

Mr. Justin W. Clark
March 11, 2010
Page 4


No. 27: The following Data Files: Date File #1 and Date File #2 (*see* 1st Set RFPs for
complete description of Data Files)

We look forward to hearing from you regarding the various issues discussed above.
Thank you.

Sincerely,

Stacy W. Harrison


cc:  Stephen D. Alexander
     Jennifer MikoLevine
     Peter Eliasberg
     Melinda Bird

# EXHIBIT E

# LAWRENCE BEACH | ATTORNEYS AT LAW
## ALLEN & CHOI · PC

www.lawrencebeach.com

100 West Broadway, Suite 1200
Glendale, California 91210
T 818-545-1925
F 818-545-1937

Orange County
1600 North Broadway, Suite 1010
Santa Ana, California 92706
T 714-479-0180
F 714-479-0181

March 12, 2010

**VIA E-MAIL**

Stacy Weinstein Harrison
Bingham McCutchen LLP
The Water Garden
Fourth Floor, North Tower
1620 26th Street
Santa Monica, CA 90404-4060

Re:     Rutherford, et al. v. Block, et al.
         U.S.D.C. Case No. CV 75-04111 DDP

Dear Ms. Harrison:

This letter is written to follow-up on issues discussed at the March 3, 2010 Local Rule 37-1 meeting in the above-referenced matter and in response to your March 11, 2010 letter.

First, so the record is clear, I have briefly addressed the items in your March 11, 2010 letter and have corrected several inaccuracies. With regard to whether mental health issues are within the scope of the Judgment in this case, as your letter correctly notes, Defendants maintain that discovery regarding mental health issues is improper because such issues are beyond the scope of the Final Judgment. At the March 3, 2010 meeting, Defendants requested that Plaintiffs specifically delineate what orders or stipulated agreements have been violated so that Defendants can evaluate Plaintiffs' entitlement (if any) to discovery. In response to this inquiry, you and your co-counsel were either unable or unwilling to provide a specific response. The only limited response I received was from Mr. Eliasberg, who stated that County jail facilities (I can only assume he meant all Los Angeles County jail facilities) are "over-crowded" and that such overcrowding has made it impossible for the Sheriff to exercise his usual discretion and management options to provide adequate security and control. I renew my request that Plaintiffs detail, as a threshold issue, the precise instances where Defendants are purportedly not in compliance with a specific order. A satisfactory response to this inquiry must include specific reference to the Judgment.

**EXHIBIT E**

LAWRENCE BEACH | ATTORNEYS AT LAW
| ALLEN & CHOI · PC

Stacy Weinstein Harrison
Re: <u>Rutherford, et al. v. Block, et al.</u>
March 12, 2010
Page 2


With respect to your assertion that the Court's August 4, 2009 Order is a determination that mental health issues are within the scope of the Rutherford Judgment and that discovery on mental health issues is permissible, this statement ignores plain language in the Court's September 22, 2009 Order. As I informed you and your three co-counsel that attended the discovery meeting, the Court's September 22, 2009 Order clarified the August 4, 2009 so as to remove any confusion as to whether the August 4 order expanded the scope of the Judgment. Indeed, the September 22 Order states that "[t]he Court also clarifies that the August 4, 2009 Order did not rule on the scope of the issues properly before the Court in this matter, and thus, it should not be construed as doing so." At the March 3, 2010 meeting and again in your March 11, 2010 letter, Plaintiffs have done exactly what the Court instructed them NOT to, namely, construe the August 4, 2009 Order as a ruling that mental health issues are the proper subject of discovery. To date, the Court has made no such ruling despite your representations to the contrary.

Regarding preclusion, the law provides that it is Plaintiffs' burden to demonstrate an entitlement to discovery. At the March 3 meeting, regarding Plaintiffs' assertions of changed circumstances in facts and law (that would potentially limit the application of Porras v. County of Los Angeles and Leandry v. County of Los Angeles), despite multiple requests, you and your co-counsel refused to provide me with the information upon which you relied in asserting that these cases do not bar Plaintiff from seeking the subject discovery.

Regarding HIPPA and other privilege and privacy concerns discussed at the March 3 meeting, you letter ignores the fact that Defendants' do not agree with Plaintiffs' interpretation of HIPPA that Defendants can legally produce 200,000 inmates' medical records to Plaintiffs' counsel without releases. This is the source of Defendants' very real concerns associated with litigation against Defendants based on said production. In terms of the official information privilege, Defendants was unable to specifically determine whether it would apply or not because of the vague and ambiguous nature of the subject Requests and the overbreadth issues discussed at length in your letter and at the March 3 meeting.

Your letter also asserts that I agreed that the Privilege Log submitted with Defendants' responses to the subject Requests was inadequate. This is false. Instead, I stated that Defendants were forced to prepare a log by category because of the significant defects of the subject requests. In fact, in the face of subject objectionable Requests, case law provides that a log by category is acceptable. As we discussed, in some cases, the subject Requests were so overbroad and vague that it was impossible for Defendants to even begin to determine what documents may be responsive.

With regard to the Department of Justice Reports, I did not agree that Defendants cannot use the reports unless they are produced.

LAWRENCE BEACH|   ATTORNEYS AT LAW
           |ALLEN & CHOI · PC

Stacy Weinstein Harrison
Re: <u>Rutherford, et al. v. Block, et al.</u>
March 12, 2010
Page 3


        As to the other Requests and items listed in your letter (including , RFP Nos. 2, 18, and 20),
first, as a preliminary matter, it is not reasonable to demand a response to a request in less than one
business day and I respectfully request that you refrain from making such unreasonable demands in
the future. I have requested responsive documents from my client; however, given the time
limitation you imposed, I was unable to obtain a definitive time table for production. Had you made
a more reasonable request for a response, I probably could have provided a better answer. I do
expect to obtain the documents in the very near future and I will produce them, as promised, as soon
as I get them.

        For clarification of further details concerning the March 3, 2010 meeting, at the beginning of
the meeting, I inquired as to whether Bingham McCutchen had filed a motion to be appointed class
counsel. (*See*, FRCP Rule 23(g).) You informed me that no motion has been filed and instead, your
firm only filed a notice of association of counsel. At the conclusion of the meeting (based on
agreements made during the meeting), I agreed that I would investigate further the burden on
Defendants associated with responding to Plaintiffs' discovery requests, including the burden
associated with production of medical records, inmate complaints, and policies and procedures. The
information I have been able to gather on these issues is set forth below.

        Based on the preliminary information I have been able to obtain this week, even ignoring
Defendants' other objections (which Defendants do not waive), Defendants maintain that the burden
alone of responding to Plaintiffs' Requests (as currently phrased) would be astronomical and that
such burden obviates any responsibility for Defendants to respond. This conclusion is highlighted by
the fact that Plaintiffs have not even set out a threshold basis for an entitlement to discovery on
mental health issues at all. With respect to medical records, I inquired of knowledgeable Sheriff's
Department personnel regarding how medical records are stored and how they could be produced if
appropriate. It is my understanding that Sheriff's Department medical records are stored and
accessed through a software application provided by a third party contractor. At the March 3
meeting, I asked you and your co-counsel several times for a more specific definition of whose
medical records were responsive to the subject requests. I received no response so I was left to
assume that Plaintiffs are seeking all medical records for all inmates for an entire year. As I
informed you at the March 3 meeting, this is over 200,000 inmates' records. I have requested a more
detailed statement concerning this issue from the Sheriff's Department and I have been informed that
it will take several weeks to obtain a detailed quote because it will require inquiry of the third-party
contractor. The preliminary response I received was that the production of the medical records in
electronic format would require the production of a "script" (essentially, a computer program) that
would gather the data for production. It is my understanding that even a small portion of the records
would contain over a billion table entries and that the data file itself would be so large that locating
an appropriate transfer and storage medium would be a initial hurdle. As I said, this is a preliminary
response and I will provide further details from my client when I receive them. I sincerely hope that
this information alone causes Plaintiffs to re-formulate their Requests.

LAWRENCE BEACH | ATTORNEYS AT LAW
| ALLEN & CHOI · PC

Stacy Weinstein Harrison
Re: Rutherford, et al. v. Block, et al.
March 12, 2010
Page 4

     Regarding inmate complaints, the burden here, too, would be prohibitive.  It is my
understanding that inmate complaints are not scanned into a database and are maintained at the
facility originating the complaint.  It is my understanding that the Sheriff's Department receives, on a
monthly basis, between 10,000 - 15,000 inmate complaints regarding a host of issues.  Thus, to
respond to Request No. 17 alone (which seeks all inmate complaints for a three month period) would
require a hand search for records which alone, would be extremely costly, and the production of
between 30,000 to 45,000 pages of records.  Importantly, this figure is based on an assumption that
each complaint is only one page which in most cases, it is not.  Further, Plaintiffs have sought the
Sheriff's Department's response to each complaint which is maintained separately.  This response
too, is preliminary; however, it is my understanding that responding to this Request alone would
require the production of at least 75,000 pages of records and would cost between $50,000 to
$100,000 excluding attorney's fees.

     Regarding polices and procedures, I have made inquires to the Sheriff's Department as I said
I would, but I have not yet received a response.  Once I get a response, I will prepare a follow-up
letter.

     As I informed you and your co-counsel at the March 3 meeting, even ignoring the threshold
defects discussed above, Plaintiffs' Requests are tremendously overbroad and place an undue burden
on Defendants.  At the March 3 meeting, I requested that Plaintiffs dramatically narrow the scope of
the subject Requests and I make this request again.  While your firm has only been involved in this
litigation for a short period of time (and perhaps that lack of familiarity with the issues is to blame), I
suspect that Plaintiffs can substantially focus the discovery requests to help reduce the burden
discussed herein.  It is not unreasonable to think that the Court would want Plaintiffs to make every
effort in this regard.

LAWRENCE BEACH | ATTORNEYS AT LAW
| ALLEN & CHOI · PC

Stacy Weinstein Harrison
Re: <u>Rutherford, et al. v. Block, et al.</u>
March 12, 2010
Page 5


        As we agreed at the March 3 meeting, a further meet and confer may be productive especially
in that I have only been able to obtain preliminary information from my client.  Please contact me at
your earlier convenience to schedule another meeting or to continue our discussion of issues related
to the subject discovery requests.

                                        Very truly yours,

                                        LAWRENCE BEACH ALLEN & CHOI, PC

                                              /s/

                                        Justin W. Clark

cc:     Stephen D. Alexander
        Jennifer MikoLevine
        Peter Eliasberg
        Melinda Bird

# EXHIBIT F

# BINGHAM

Stacy W. Harrison
Direct Phone:   310.255.9169
Direct Fax:   310.907.2169
stacy.harrison@bingham.com

April 6, 2010

**Via US Mail and E-mail**

Mr. Justin W. Clark
100 West Broadway, Suite 1200
Glendale, California 91210
jclark@lbaclaw.com

**Re:   Response to Defendants' Letter Re March 3, 2010 Meet and
Confer Meeting Regarding Plaintiffs' First Set of Requests for
Production of Documents in *Rutherford v. Baca, et al.*, Civil
No. 75-04111 DPP**

Dear Justin:

This letter is in response to your March 12, 2010 letter regarding the parties' L.R. 37-1
meet and confer meeting held on March 3 regarding the *Rutherford* Plaintiffs' First Set of
Requests for Production of Documents.

SCOPE

Despite thirty years of post-Judgment orders and stipulations, several of which
specifically discuss medical care and/or mental health issues, and the ability to modify
injunctive relief whether by the Court's inherent authority, the parties' stipulation, or
pursuant to Fed. R. Civ. P. 60(b), Defendants maintain that any issue not specifically
included in the 1979 judgment cannot be the subject of discovery. As you know,
Plaintiffs disagree. Moreover, you continue to misconstrue the Court's September 22,
2009 Order, which certainly does not preclude Plaintiffs from conducting discovery on
mental health issues.

Furthermore, Plaintiffs do not have to provide "precise instances" where Defendants are
"not in compliance with a specific order" that "include[s] specific reference to the
Judgment" (Defendants' March 12 letter, 1) in order to be entitled to their discovery, nor
have Defendants provided any authority indicating this is the standard.  The purpose of
discovery is to gather information about Defendants' non-compliance with the Judgment.
Defendants cannot avoid producing documents on the ground that Plaintiffs do not have
enough information about Defendants' violations of the Judgment.  It appears that the
parties have reached an impasse regarding whether mental health issues are within the
scope of the *Rutherford* litigation and that this threshold issue will need to be briefed for
the Court.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
The Water Garden
Fourth Floor
North Tower
1620 26th Street
Santa Monica, CA
90404-4060

T 310.907.1000
F 310.907.2000
bingham.com

A/73339378.2

**EXHIBIT F**

Mr. Justin W. Clark
April 6, 2010
Page 2

<u>PRECLUSION</u>

Even though it is Defendants' burden to prove preclusion, Plaintiffs previously have shown why *Porras* and *Leandry* do not preclude this discovery. *See* Plaintiffs' February 16, 2010 letter, 3-4. Defendants have not responded substantively to any of these arguments, nor explained how the cases Defendants cite in their December 9, 2009 Discovery Responses preclude the discovery sought here.

As a result, the parties are at an impasse regarding the preclusive effect of *Porras* and *Leandry*, and this threshold issue will need to be briefed for the Court.

<u>PRIVACY ISSUES/HIPAA/"OFFICIAL INFORMATION" PRIVILEGE</u>

In your March 12 letter, you state that Defendants believe that HIPPA prevents them from releasing the inmates' medical records to Plaintiffs without releases. You cite no authority for this position, nor any basis for this interpretation of HIPPA. Also, even assuming this position has any merit (which we do not believe it does), a protective order would properly address any such concerns. Indeed, we included a draft protective order in our original meet and confer letter, which would be more than sufficient. We discussed this very issue at our meet and confer with respect to all privacy and privilege concerns, and you have provided no response as to why the protective order we provided -- or any protective order -- would be insufficient.

<u>DEFENDANTS' OBJECTIONS REGARDING PURPORTED BURDEN AND BREADTH OF THE DOCUMENT REQUESTS</u>

In your March 12 letter, you state that the burden of responding to the Document Requests "would be astronomical" and "such burden obviates any responsibility for Defendants to respond." However, you have only given reasons why the productions of medical records and complaints by inmates would be burdensome. You have not tried to show that the production of any other documents or materials would cause Defendants any hardship. Indeed, you state that you had only made inquiries regarding Defendants' policies and procedures and would send a follow up letter -- which we have yet to receive. Defendants thus have established no burden regarding the production of the vast majority of the documents Plaintiffs requested.

Moreover, Plaintiffs never requested all medical records for all 20,000 inmates for an entire year. Plaintiffs have requested policies, procedures, regulations, guidelines, manuals, directives, post orders, forms and other such documents relating to mental health care at the Jail (RFP No. 1) and Jail operations (RFP No. 2). Your response indicates that these documents are accessible and can be produced in an electronic form and thus most likely are easily searchable. In any event, at this point, we will not require the production of any medical records in response to any of these RFPs (even if the language of the RFP may call for their production). However, we specifically reserve the right to seek such medical records at a later date, either by way of these RFPs or in response to future RFPs.

Mr. Justin W. Clark
April 6, 2010
Page 3

Also, in a good faith effort to resolve our dispute, we have reviewed the RFPs, and ask
that Defendants produce the following, more narrow subset of documents covered by the
RFPs. In responding to this subset of the RFPs, Defendants will not be required initially
to review individual medical records. Rather, we are, for the most part, asking
Defendants to produce policies and procedures and logs and lists that are typically
maintained by jails and by correctional health care providers. Since we have not yet
taken depositions of your records custodians, it is possible that LA County Jail does not
maintain these logs/lists. Therefore, we ask you in responding to this letter to tell us for
each RFP whether Defendants have such responsive documents. By proceeding in this
fashion, we hope to avoid time-consuming motion practice for both parties. Again, we
specifically reserve our rights to seek production of the documents and materials
responsive to the RFPs as set forth our First Set of Requests, either by way of these RFPs
or in response to future RFPs.

**RFP No. 1**

Policies, procedures, regulations, guidelines, manuals, post orders, directives, and forms
regarding the following:

- o initial mental health screening;
- o triage and referrals;
- o mental health staffing;
- o special issues related to mental health services provided to inmates in locked
  down housing units such as disciplinary segregation (e.g., mental health
  screening upon admission, regular mental health rounds, exclusion from such
  housing when clinically appropriate, etc.);
- o informed consent and the right to refuse treatment;
- o co-pays;
- o dispensing of psychotropic medication;
- o "keep-on-person" medications for mental health patients;
- o involuntary medication; and
- o housing and treatment of prisoners with mental health and developmental
  issues;

- Health screening policy and form;
- Policies and procedures regarding access to mental health care;
- Documents describing all mental health programs offered at MCJ, attendance lists
  for all mental health programs and classes over the past ninety days at both MCJ
  and Twin Towers, a description of each of these programs/classes, and all materials
  that were distributed to prisoners who attended;
- Rounds by mental health staff/JMET, likely documented in unit logs, on each
  segregation unit at MCJ over the past ninety days;
- Policies and procedures, post orders, and training materials regarding the use of
  restraints or seclusion;
- Policies and procedures and post orders regarding involuntary psychiatric
  hospitalization;

Mr. Justin W. Clark
April 6, 2010
Page 4

- Policies and procedures and post orders regarding management of suicidal inmates, and transfers of mentally ill prisoners to hospitals or other mental health facilities;
- Quality improvement programs descriptions, quality improvement studies, and, quality improvement meeting minutes for the past twelve months;
- Handouts, attendance sheets, and descriptions of classes of pre-service and in-service mental health trainings received by all staff and Twin Towers custody staff over the past six months; and
- Discharge planning documents for inmates with identified mental health issues, and discharge planning policies and procedures from the Community Transition Unit.

## RFP No. 2

Policies, procedures, regulations, guidelines, manuals, post orders, directives, and forms regarding the following:

- o use of force;
- o indoor and outdoor recreation;
- o housing assignments;
- o special needs treatment plans
- o discipline;
- o stripping prisoners of clothing;
- o loss of privileges (e.g., recreation time, shower, telephone calls);
- o lockdown; and
- o protective custody;

- Policies and procedures regarding classification;
- Policies and procedures regarding visitation, including movement to visits and distribution of visitation passes;
- Documents describing programming, including all programs offered to MCJ and Twin Tower prisoners, descriptions of all programs offered to MCJ prisoners housed in segregation, attendance sheets for all programs offered to MCJ prisoners over the past ninety days, and recreations log from MCJ for the past thirty days;
- Policies and procedures, post orders, and training materials regarding the use of restraints or seclusion; and
- Policies and procedures, post orders, and training materials related to the use of chemical agents to control prisoners and logs documenting all uses of chemical agents to control prisoners.

## RFP No. 3

Documents, including lists, showing all prisoners who have attempted suicide or been on suicide watch during the past six months; and documents, including lists and psychological autopsies, showing all in-custody deaths and suicides during the past three years.

Mr. Justin W. Clark
April 6, 2010
Page 5

**RFP No. 4**

Documents, including a master list, identifying prisoners at MCJ and Twin Towers who are currently on the mental health caseload, their current housing location, their current medications (if any), the dosage of those medications and the frequency of administration, and whether they are refusing treatment.

**RFP No. 6**

Documents relating to discharge planning, including a log of prisoners the discharge planner has assisted, and discharge medications, including discharge medication logs, for prisoners who were released within the past ninety days.

**RFP No. 7**

Documents, including involuntary medication logs and court orders for involuntary treatment, chronicling, reporting on, or otherwise concerning the involuntary administration of psychotropic medications on prisoners over the past six months, including all documents identifying prisoners who have been involuntarily medicated.

**RFP No. 8**

Documents, including logs regarding therapeutic and custodial restraints, that chronicle all episodes over the past six months of the use of restraints, seclusion, or isolated confinement of prisoners who either were on the mental health caseload, or were receiving psychotropic medications, at the time of the episode(s).

**RFP No. 12**

The current classification instrument, and any related instructions, instructing staff on how to classify prisoners.

**RFP No. 13**

Documents identifying all mental health personnel working at the Jail, and showing their job titles, job descriptions, and qualifications (including resumes and licensure documentation).

**RFP No. 16**

Use of force, incident report and disciplinary logs for all prisoners who have been on the mental health caseload, or have received psychotropic medications, at any time during the past six months.

Mr. Justin W. Clark
April 6, 2010
Page 6

## RFP NO. 17

In order to address your assertion in your March 12 letter that it would cost between $50,000 and $75,000 for Defendants to produce documents responsive to this Request, we are willing to accept the production of one week's worth of complaints from the Men's Central Jail at this stage. We fully reserve our rights to seek additional responsive documents after receiving this production and reviewing these complaints.

## RFP No. 23

Logs or reports identifying all prisoners admitted to Twin Towers 1 from IRC and MCJ, and discharged from Twin Towers 1 to MCJ over the past six months.

## RFP No. 24

Hospitalization logs, psychiatric hospitalization logs, and transportation logs, identifying all prisoners who have been transferred to or from a psychiatric facility from either IRC or MCJ in the past six months, including the date(s) of their transfer or admission.

## RFP No. 25

Current hospitalization waiting lists, identifying all prisoners who are currently waiting transfer to a psychiatric facility.

\*   \*   \*

Finally, we requested at the March 3 meeting that you inform us which RFPs you and your client believe are unduly burdensome. Except for the medical records for 12 months for 20,000 inmates (which we did not request) and the inmate complaints and LASD responses for 3 months (RFP No. 17), you have not indicated which Requests are overly broad or burdensome. We have narrowed those four Requests that were discussed at the March 3 meet and confer meeting (Nos. 1, 2, 16, 17), as outlined above, as well as nearly a dozen others that were not specifically discussed. We will assume the remaining discovery requests are not overly burdensome or broad since you have not made any indication to the contrary.

## PRIVILEGE LOG

You acknowledged at the March 3 meeting that the privilege log you provided was cursory and not in compliance with the applicable Federal Rules, and stated that the log would be amended once the parties agreed upon the scope of the Requests. Defendants are obligated to submit a more detailed privilege log for any withheld documents, and Plaintiffs request that they do so.

Mr. Justin W. Clark
April 6, 2010
Page 7

DEPARTMENT OF JUSTICE REPORTS

The Federal Rules of Civil Procedure and Ninth Circuit authority make it clear that
Defendants cannot use the DOJ reports as a defense if they refuse to produce them,
invoking privilege. The statement in Defendants' March 12 letter to the contrary is at
odds with your representation at the March 3 meet and confer meeting. Plaintiffs will
object to any attempt by Defendants to rely on these documents during the course of
litigation if they fail to produce them in response to these RFPs.

PRODUCTION OF DOCUMENTS (RFP NOS. 2, 18, 20)

Your statement that we demanded production of the documents responsive to Request
Nos. 2, 18, and 10 in "less than one business day" is simply incorrect. More than three
months ago, Defendants agreed to produce documents responsive to RFP No. 2, and
should have produced publicly available documents responsive to RFP Nos. 18 and 20.
Plaintiffs once more requested these documents in their February 16 letter.

On or about March 30, 2010, we received a production in response to the RFPs consisting
of 26 pages. Is this your entire production in response to RFP Nos. 2, 18, and 20? If not,
and if we do not receive the documents immediately, we will include these requests in
our motion to compel.

Finally, during the March 19 Pitches tour, the Sheriff's Department passed out a
brochure regarding LASD's programs and proposed improvements to the jail system.
You stated that you would provide us with a copy of that brochure, once the Sheriff had
signed off on it. Please let us know when this document can be made available. Of
course, if that brochure is responsive to any of our document requests, we are entitled to
its production, regardless of whether the Sheriff has approved it.

Thank you.

Sincerely,

Stacy W. Harrison

cc:   Stephen D. Alexander
      Jennifer MikoLevine
      Peter Eliasberg
      Melinda Bird

# EXHIBIT G

# BINGHAM

Stacy W. Harrison
Direct Phone:   310.255.9169
Direct Fax:   310.907.2169
stacy.harrison@bingham.com

May 24, 2010

**Via US Mail and E-mail**

Mr. Justin W. Clark
100 West Broadway, Suite 1200
Glendale, California 91210
jclark@lbaclaw.com

Re:   Plaintiffs' First Set of Requests for Production of Documents in
      *Rutherford v. Baca, et al.*, Civil No. 75-04111 DPP

Dear Justin:

On April 6, 2010, we sent you a letter regarding the parties' L.R. 37-1 meet and confer held on March 3 regarding the *Rutherford* Plaintiffs' First Set of Requests for Production of Documents. In that letter, we asked Defendants to produce a more narrow subset of documents covered by the RFPs in the hope of avoiding time-consuming motion practice for both parties. To date we have not received a response to the April 6 letter.

Although it appears that the parties have reached an impasse and that we will be forced to move to compel production of the documents to which we are entitled, this letter constitutes a final effort to meet and confer on these document requests. The requests have been narrowed even further here in an effort to compromise. As noted in our April 6 letter, we specifically reserve our rights to seek production of the documents and materials responsive to the RFPs as set forth in the First Set of Requests for Production of Documents served on you in September 2009, either by way of these RFPs or in response to future RFPs.

Finally, it has come to our attention that several requests which you have claimed are burdensome do not appear to be burdensome at all. First, in regards to documents requesting policies and procedures, it is our understanding that they are encompassed within one document, the CDM, which was produced to the Corrections Standard Authority recently and which could therefore readily be updated and produced to us. Second, the FAST system that allows LASD to track and monitor prisoner complaints should allow for the expeditious production of documents regarding complaints (RFP No. 17). Third, LASD has previously turned over the AJIS data in database form, in *Davey v. County of Los Angeles*, LASC Case No. BC 182579 and *Derkallessalian v. County of Los Angeles*, LASC Case No. BC 204624. Not only is there precedent for producing these data files, defendants should be able to readily produce this information to *Rutherford* plaintiffs in response to RFP Nos. 26 and 27 (data files).

Below please find the RFPs as further narrowed:

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
The Water Garden
Fourth Floor
North Tower
1620 26th Street
Santa Monica, CA
90404-4060

T 310.907.1000
F 310.907.2000
bingham.com

A/73376766.3

**EXHIBIT G**

Mr. Justin W. Clark
May 24, 2010
Page 2

RFP No. 1

- Policies, procedures, regulations, guidelines, manuals, post orders, directives, and forms for Men's Central Jail ("MCJ"), Twin Towers ("TT"), and the Inmate Reception Center ("IRC") regarding mental health care, including the following:

    o   initial mental health screening;
    o   triage and referrals;
    o   mental health staffing;
    o   special issues related to mental health services provided to inmates in locked down housing units such as disciplinary segregation (e.g., mental health screening upon admission, regular mental health rounds, exclusion from such housing when clinically appropriate, etc.);
    o   informed consent and the right to refuse treatment;
    o   co-pays;
    o   dispensing of psychotropic medication;
    o   "keep-on-person" medications for mental health patients;
    o   involuntary medication;
    o   housing and treatment of prisoners with mental health and developmental issues;
    o   policies and procedures regarding access to mental health care;
    o   policies and procedures, post orders, and training materials regarding the use of restraints or seclusion;
    o   policies and procedures and post orders regarding involuntary psychiatric hospitalization;
    o   policies and procedures and post orders regarding management of suicidal inmates, and transfers of mentally ill prisoners to hospitals or other mental health facilities; and
    o   discharge planning policies and procedures, including those from the Community Transition Unit.
- Health screening policy and form;
- Documents describing all mental health programs offered at MCJ, attendance lists for all mental health programs and classes over the past ninety days at both MCJ and TT, a description of each of these programs/classes, and all materials that were distributed to prisoners who attended;
- Rounds by mental health staff/JMET, likely documented in unit logs, on each segregation unit at MCJ over the past ninety days;
- Quality improvement programs descriptions, quality improvement studies, and quality improvement meeting minutes for the past twelve months; and
- Handouts, attendance sheets, and descriptions of classes of pre-service and in-service mental health trainings received by all staff and TT custody staff over the past six months.
- A list of all prisoners identified in response to RFPs 4 and 5, below, who were discharged from MCJ or TTI over the past ninety days.

Mr. Justin W. Clark
May 24, 2010
Page 3

RFP No. 2

- Policies, procedures, regulations, guidelines, manuals, post orders, directives, and forms for MCJ, TT, and the IRC regarding the following:

    o   use of force;
    o   indoor and outdoor recreation;
    o   housing assignments;
    o   special needs treatment plans;
    o   discipline;
    o   stripping prisoners of clothing;
    o   loss of privileges (e.g., recreation time, shower, telephone calls);
    o   lockdown;
    o   protective custody;
    o   policies and procedures regarding classification;
    o   policies and procedures for MCJ, TT, and the IRC regarding visitation, including movement to visits and distribution of visitation passes;
    o   policies and procedures, post orders, and training materials for MCJ, TT, and the IRC regarding the use of restraints or seclusion; and
    o   policies and procedures, post orders, and training materials for MCJ, TT, and the IRC related to the use of chemical agents to control prisoners and logs documenting all uses of chemical agents to control prisoners over the past six months.

- Documents describing programming, including all programs offered to MCJ and TT prisoners in the past ninety days, descriptions of all programs offered to MCJ prisoners housed in segregation in the past ninety days, attendance sheets for all programs offered to MCJ prisoners over the past ninety days, and recreations log from MCJ for the past thirty days.

RFP No. 3

Documents, including lists, showing all prisoners who have attempted suicide or been on suicide watch during the past six months; and documents, including lists and psychological autopsies, showing all in-custody deaths and suicides during the past three years.

RFP No. 4

Documents, including a master list, identifying prisoners at MCJ and TT who are currently on the mental health caseload, their current housing location, their current medications (if any), the dosage of those medications and the frequency of administration, and whether they are refusing treatment.

Mr. Justin W. Clark
May 24, 2010
Page 4

<u>RFP No. 5</u>

Documents showing all prisoners currently prescribed psychotropic medications, the dosage of those medications, and the frequency of their administration.

<u>RFP No. 6</u>

Documents relating to discharge planning, including a log of prisoners the discharge planner has assisted, and discharge medications, including discharge medication logs, for prisoners who were released within the past ninety days from MCJ, TT, and IRC.

<u>RFP No. 7</u>

Documents, including involuntary medication logs and court orders for involuntary treatment, chronicling, reporting on, or otherwise concerning the involuntary administration of psychotropic medications on prisoners over the past six months, including documents identifying prisoners who have been involuntarily medicated.

<u>RFP No. 8</u>

Documents, including logs regarding therapeutic and custodial restraints, of all episodes over the past six months of the use of restraints, seclusion, or isolated confinement of prisoners who either were on the mental health caseload, or were receiving psychotropic medications, at the time of the episode(s).

<u>RFP No. 9</u>

The current mental health staffing plan for the Jail, indicating which positions are filled, and which are vacant.

<u>RFP No. 10</u>

The current health care organizational chart for the Jail.

<u>RFP No. 11</u>

The current housing schema for the Jail, indicating housing designations for each unit by custody, including special needs (medical, mental health, protective custody, administrative segregation, disciplinary segregation, maximum custody) units.

<u>RFP No. 12</u>

The current classification instrument, and any related instructions, instructing staff on how to classify prisoners.

Mr. Justin W. Clark
May 24, 2010
Page 5

<u>RFP No. 13</u>

Documents identifying all mental health personnel working at the Jail, and showing their job titles, job descriptions, and qualifications (including resumes and licensure documentation).

<u>RFP No. 14</u>

The health care staffing roster for the first week of each of the last three months, showing the days, hours, and posting/location for all mental health personnel.

<u>RFP No. 15</u>

All contracts with non-Jail personnel or outside facilities for the provision of mental health services to prisoners.

<u>RFP No. 16</u>

Use of force, incident report and disciplinary logs for all prisoners who have been on the mental health caseload, or have received psychotropic medications, at any time during the past six months.

<u>RFP No. 17</u>

MCJ inmate grievances and complaints and the Jail's responses from the past week.

<u>RFP No. 18</u>

Annual operational budgets and supporting documents submitted to LASD authorities for Jail operations for fiscal years 2008-2010, including those for mental health care operations.

<u>RFP No. 19</u>

All quality assurance reviews, expert reports, staffing analyses, audits, investigations, utilization reviews, needs assessments and other documents created since January 2007 assessing mental health care, including, but not limited to, state audits for Title 15 compliance, all reports and audits performed by or for any state agency or the United States Department of Justice, and any documents sent to, or report by the National Commission on Correctional Health Care (NCCHC) or the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO).

<u>RFP No. 20</u>

All autopsy reports, investigative records, and other documents related to the deaths of all prisoners during the past three years.

Mr. Justin W. Clark
May 24, 2010
Page 6

RFP No. 21

Documents concerning all prisoners indentified in response to Requests 4 and 5 above
who have been placed in administrative or disciplinary segregation in the past six months,
the reason for such placement, and the length of stay.

RFP No. 22

All policies, program descriptions and schedules, and procedures relating to the operation
of the Jail's mental health housing facilities at TT and other units, including, but not
limited to, those covering screening and admission, individual and group therapy and
other programs, specialized training for officers and staff members assigned to the unit,
discharge from the unit back to other Jail units or facilities, and discharge planning.

RFP No. 23

Logs or reports identifying all prisoners admitted to TT 1 from the IRC and MCJ, and
discharged from TT 1 to MCJ, over the past six months.

RFP No. 24

Hospitalization logs, psychiatric hospitalization logs, and transportation logs, identifying
all prisoners who have been transferred to or from a psychiatric facility from either the
IRC or MCJ in the past six months, including the date(s) of their transfer or admission.

RFP No. 25

Current hospitalization waiting lists, identifying all prisoners who are currently waiting
transfer to a psychiatric facility.

RFP No. 26

The Data Files prepared by Los Angeles County in connection with the County's contract
with the Vera Institute.

RFP No. 27

The following Data Files:

Data File #1: For the past calendar year, the data file of all inmates released from the
County Jail System, containing the following data elements for each release:

- Inmate ID number, official name, DOB, gender, Race/Ethnicity
- Admission date and time, the Law Enforcement or Correctional Agency
  admitting the inmate, the facility to which the inmate was admitted
- Admission Type (pretrial, sentenced, CDCR parolee)

Mr. Justin W. Clark
May 24, 2010
Page 7

- Legal Status at admission (pretrial release, probation, parole)
- Primary Charge/Offense at admission (if multiple offenses or charges list up to 5 other charges or offenses)
- Custody level and factors at admission
- Release date and time; facility released from; type of release (bail, OR, transfer to CDCR, sentenced)
- If sentenced to jail, date of sentence, sentence length
- Custody level and factors at release
- Early Release (Y/N); if released early, the amount of time granted
- Primary Charge/Offense at release (if multiple offenses or charges list up to 5 other charges or offenses at release)

Data File #2: A snap-shot file of the current jail population containing the following elements:

- Inmate's ID number, official name, DOB, Gender, Race or Ethnicity
- Admission date and time, the Law Enforcement/Correctional Agency admitting the inmate, the facility to which inmate was admitted
- Admission Type (pretrial, sentenced, CDCR parolee)
- Legal Status at admission (pretrial release, probation, parole)
- Primary Charge/Offense at admission (if multiple offenses or charges list up to 5 other charges or offenses)
- Custody level and factors at admission
- Current Custody level and factors
- Current facility location, housing unit and cell location
- Special management flags (e.g., PC, Gang, Juvenile, etc.)
- If sentenced to jail, sentence length
- Current Primary Charge/Offense at admission (if multiple current offenses or charges list up to 5 other charges or offenses)

The narrowed requests above represent the requests on which we will move to compel, should such action be necessary. **For purposes of this meet and confer only, however, if you indicate that you are amenable to producing logs/lists for the following requests (as specified below), we will review the information provided, request and review selected medical records from the listed prisoners, and possibly forestall filing a motion to compel on the specifically identified requests below. For each of these requests, please tell us if you are, or are not, able to produce the requested logs/lists using your current records/management information system.**

RFP No. 3

*A list of* all prisoners who have attempted suicide or been on suicide watch during the past six months; and documents, including lists and psychological autopsies, showing all in-custody deaths and suicides during the past three years.

Mr. Justin W. Clark
May 24, 2010
Page 8

RFP No. 4

*A master list,* identifying prisoners at MCJ and TT who are currently on the mental health
caseload, their current housing location, their current medications (if any), the dosage of
those medications and the frequency of administration, and whether they are refusing
treatment.

RFP No. 5

*A log of* all prisoners currently prescribed psychotropic medications, the dosage of those
medications, and the frequency of their administration.

RFP No. 6

*A log of* prisoners the discharge planner has assisted, and discharge medications,
including discharge medication logs, for prisoners who were released within the past
ninety days from MCJ, TT, and IRC.

RFP No. 7

*All lists,* including involuntary medication logs and court orders for involuntary
treatment, chronicling, reporting on, or otherwise concerning the involuntary
administration of psychotropic medications on prisoners over the past six months,
including documents identifying prisoners who have been involuntarily medicated.

RFP No. 8

*A log/list,* of all episodes over the past six months of the use of restraints (therapeutic or
custodial), seclusion, or isolated confinement of prisoners who either were on the mental
health caseload, or were receiving psychotropic medications, at the time of the
episode(s).

RFP No. 21

*A list of* all prisoners indentified in response to Requests 4 and 5 above who have been
placed in administrative or disciplinary segregation in the past six months, the reason for
such placement, and the length of stay.

Mr. Justin W. Clark
May 24, 2010
Page 9

If we do not receive a response within 5 business days of this letter's date, we will have
no choice but to move forward with our portion of a Joint Stipulation to compel
production of these requests, as narrowed on pages 2-7 of this letter.

Sincerely,

Stacy W. Harrison

# EXHIBIT H

# LAWRENCE BEACH | ATTORNEYS AT LAW
## | ALLEN & CHOI · PC

www.lawrencebeach.com

100 West Broadway, Suite 1200
Glendale, California 91210
T 818-545-1925
F 818-545-1937

Orange County
1600 North Broadway, Suite 1010
Santa Ana, California 92706
T 714-479-0180
F 714-479-0181

May 28, 2010

Stacy W. Harrison
Bingham McCutchen LLP
1620 26th Street, 4th Floor
Santa Monica, CA 90404

Re:     Rutherford, et al. v. Block, et al.
        U.S.D.C. Case No. CV 75-04111 DDP

Dear Ms. Harrison:

I received your letter dated May 24, 2010. I am researching the assertions made therein and will provide you with a written response; however, because of the holiday weekend, I will not be able to provide you with a more specific response until next week.

If you would like to discuss this matter further, please feel free to contact me.

Very truly yours,

LAWRENCE BEACH ALLEN & CHOI, PC

Justin W. Clark

**EXHIBIT H**

# EXHIBIT I

# LAWRENCE BEACH

ATTORNEYS AT LAW

# ALLEN & CHOI · PC

www.lawrencebeach.com

100 West Broadway, Suite 1200
Glendale, California 91210
T 818-545-1925
F 818-545-1937

Orange County
1600 North Broadway, Suite 1010
Santa Ana, California 92706
T 714-479-0180
F 714-479-0181

June 4, 2010

**VIA E-MAIL AND U.S. MAIL**

Stacy W. Harrison, Esq.
Bingham McCutchen LLP
1620 26th Street, 4th Floor
Santa Monica, CA 90404

Re:    Rutherford, et al. v. Block, et al.
       U.S.D.C. Case No. CV 75-04111 DDP

Dear Ms. Harrison:

This letter is written in response to your letter dated May 24, 2010, regarding Plaintiffs' First Set of Requests for Production of Documents (Post Judgment)("the subject discovery") in the above-referenced matter.

First, in response to your assertions regarding the Custody Division Manual ("CDM"), I have conferred with Sheriff's Department personnel and your statement that the entire CDM was provided to the Corrections Standards Authority ("CSA") on disc is not accurate. Even assuming that the entire CDM was provided to CSA as you claim, that fact would not establish any precedent for the production of the CDM to Plaintiffs. Further, your continuing efforts to have the entire CDM produced ignore the objections that were asserted in response to the subject discovery and my subsequent explanations to you during the parties' meet and confer.

Second, in response to your assertions regarding the F.A.S.T. system and the purported lack of a burden associated with the production of inmate complaints, here again, your letter fails to acknowledge the information that has already been provided to you. As I explained in my March 12, 2010 letter to you, inmate complaints are not scanned into a database as your letter suggests and, instead, are maintained at the facility originating the complaint. Your statement that the F.A.S.T. system could allow for the "expeditious production of documents" is simply inaccurate.

Third, with respect to document productions in *Davey v. County of Los Angeles*, LASC Case No. BC 182579, and *Derkallessalian v. County of Los Angeles*, LASC Case No. BC 204624,

**EXHIBIT I**

LAWRENCE BEACH |    ATTORNEYS AT LAW
      | ALLEN & CHOI · PC

Stacy W. Harrison
Re: Rutherford, et. al. v. Block, et al.
June 4, 2010
Page 2

your assertions are inaccurate and entirely out of context. Neither the ACLU nor anyone from
your office was involved in either case and, therefore, you are not aware of the extreme burden,
cost, and difficulty that was involved in the discovery in those cases. Even ignoring Defendants'
undue burden and cost objections (as well as Defendants' other objections), in fact, the data files
at issue (responsive to RFP Nos. 26 and 27) were specifically discussed at the last status
conference with Judge Pregerson on April 20, 2010. In discussing Dr. Austin's proposed
involvement in this case, Plaintiffs' counsel specifically requested that the data files be provided
to Dr. Austin and the Court declined to order the Sheriff's Department to produce them because
they are part of an on-going evaluation of the entire Los Angeles County criminal justice system.
Further, as you are well aware, at the last status conference, the parties and the District Court
agreed to a process involving the subject dorms and Dr. Austin. Your repeated requests for the
data files ignore Judge Pregerson's clear directives and the agreements made by the parties at the
last status conference.

     While Defendants appreciate Plaintiffs' efforts to "narrow" the scope of the subject
discovery, in most cases, you have not narrowed the requests whatsoever. The requests, even as
"narrowed", still present an undue burden and expense to Defendants. Further, to date, Plaintiffs
have not presented any acceptable solution to Defendants' very real concerns associated with the
disclosure of information protected by the Health Insurance Portability and Accountability Act of
1996 ("HIPAA") and, as I explained to you in my March 12, 2010 letter, medical records cannot
be released, even to an inmate's counsel, without a signed release from the subject inmate. The
fact that a class has been certified in this case is of no consequence and to date, you have not
provided any authority indicating otherwise. Further, all of these issues assume, for purposes of
discussion, that Plaintiffs overcome a threshold entitlement to mental health related discovery
which has not yet occurred.

     In spite of the above, I have provided a copy of your letter to Sheriff's Department and
Department of Mental Health personnel for purposes of investigating whether a compromise
based on your log/list proposition is possible. Perhaps if the parties can agree on a protective
order, a production of some kind might be possible from which Plaintiff could obtain names for
particular inmates and then seek releases from those inmates to authorize the production of their
medical records. Once I have had a reasonable opportunity to confer with relevant County
personnel, I will provide you with an update.

     While I remain willing to discuss issues with you in the spirit of reaching an informal
resolution of issues discussed herein, should you choose to move forward with a joint discovery
stipulation before I have an opportunity to brief my clients on your log/list proposal, please be
advised that I will be out of state on a family vacation during the week of June 13.

LAWRENCE BEACH |   ATTORNEYS AT LAW
                | ALLEN & CHOI · PC

Stacy W. Harrison
Re:  Rutherford, et. al. v. Block, et al.
June 4, 2010
Page 3


        In the event Plaintiffs move forward with a motion to compel further production of
documents responsive to the subject discovery, I respectfully request that you either not serve
Plaintiff's portions until after June 21, 2010, or agree to provide me with sufficient time after I
return from vacation to prepare Defendants' portions.  Thank you in advance your consideration.

                                    Very truly yours,

                                    LAWRENCE BEACH ALLEN & CHOI, PC


                                    Justin W. Clark

# EXHIBIT J

**BINGHAM**

Stacy W. Harrison
Direct Phone:   310.255.9169
Direct Fax:   310.907.2169
stacy.harrison@bingham.com

June 17, 2010

**Via US Mail and E-mail**

Mr. Justin W. Clark
100 West Broadway, Suite 1200
Glendale, California 91210
jclark@lbaclaw.com

Re:   Plaintiffs' First Set of Requests for Production of Documents in
      *Rutherford v. Baca, et al.*, Civil No. 75-04111 DPP

Dear Justin:

This is in response to your letter dated June 4, 2010 regarding Plaintiffs' First Set of
Requests for Production of Documents.

Despite your representation that you would confer with the Sheriff's Department
regarding a possible compromise based upon the last proposal in our May 24, 2010 letter,
we have not heard from you. As such, it appears we have reached an impasse on that
proposal, as well as on all other proposals for compromise that we have made.

We also are compelled to respond to the misstatements in your letter regarding what
transpired at the last status conference. First, no agreements were reached between the
parties about the subject dorms, Dr. Austin, or otherwise. Second, Judge Pregerson did
not "decline to order" the production of the data files requested by Request Nos. 26 and
27. Indeed, Judge Pregerson commented that the data files, in fact, probably are
discoverable, and he did not understand why Defendants would spend time and money
fighting a motion to compel that data.

Also, we have more than sufficiently addressed your concerns associated with HIPPA
regulations. In our very first meet and confer letter, we provided you with a draft
protective order that would adequately protect any privacy rights affected by disclosure
of the inmates' medical records. Moreover, **inmate authorization is not necessary for
disclosure since these documents are being sought via discovery.** 45 C.F.R. 164.512
details the uses and disclosures for which authorization to release protected health
information is *not* required under HIPAA. HIPAA permits the use and disclosure of
protected health information--without an individual's authorization or permission--for
twelve recognized national priority purposes. *See* Summary of the HIPAA Privacy Rule,
OCR Privacy Brief, published by the U.S. Department of Health & Human Services, p. 6.
One of those purposes is disclosure of health information in response to discovery
requests. *See* 45 C.F.R. 164.512(e)(1)(ii) (protected health information may be
disclosed in the course of any judicial proceeding "[i]n response to a subpoena,

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
The Water Garden
Fourth Floor
North Tower
1620 26th Street
Santa Monica, CA
90404-4060

T 310.907.1000
F 310.907.2000
bingham.com

A/73404356.1

**EXHIBIT J**

Mr. Justin W. Clark
June 17, 2010
Page 2

*discovery request*, or other lawful process....") (emphasis added).  Defendants
therefore cannot avoid their discovery obligations by hiding behind HIPAA.

While we still are willing to discuss possible resolutions to our discovery disputes, due to
Defendants' lack of cooperation, we have no choice but to move forward accordingly.

Sincerely,

*Stacy W. Harrison (JS)*

Stacy W. Harrison