PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS RUTHERFORD, et al., | Case No. CV 75-04111 DDP |
| Plaintiffs, | Honorable Dean D. Pregerson |
| vs. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF ORDER RE PURPORTED RETALIATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| SHERMAN BLOCK, et al., | |
| Defendants. | [*Declarations of Dennis Burns And Paul B. Beach and supporting Exhibits and Evidentiary Objections filed concurrently herewith*] |
| | Date:      November 29, 2010<br>Time:      10:00 a.m.<br>Crtrm:    3 |

TO THE COURT, ALL INTERESTED PARTIES AND TO THEIR

ATTORNEYS OF RECORD:

///

///

///

1

1    PLEASE TAKE NOTICE that Defendants Sherman Block, et. al.

2   (hereinafter "Defendants") hereby submit the following Memorandum of Points

3   and Authorities in Opposition to Plaintiffs' Motion for an Injunctive Relief Order

4   regarding purported retaliation against jail inmates.

5

6   Dated:  November 8, 2010                    LAWRENCE BEACH ALLEN & CHOI, PC

7
                                        By___/s/ Justin W. Clark_____
8                                               Justin W. Clark
                                                Attorneys for Defendants
9                                               Sherman Block, et al.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I.   Introduction. .........................................................................................1

II.  Plaintiffs' Motion Should Be Denied Because They Cannot Exploit The All Writs Act To Circumvent Their Evidentiary Burden For Obtaining Injunctive Relief...............................................................2

III. Plaintiffs' Motion Should Also Be Denied Because This Court Does Not Have The "Inherent Authority" To Issue An Injunctive Relief Order Without A Proper Showing Of Good Cause....................................6

IV.  Plaintiffs' Motion Does Not Satisfy The Requirements For Prospective Relied Under The PLRA. ...................................................7

V.   Even Ignoring The Legal Defects Of Plaintiffs' Motion, There Is No Factual Support For The Extraordinary Relief Plaintiffs' Seek.................10

A.   The Department Does Not Condone, And Specifically Prohibits,  Retaliation Against Inmates. ...........................................12

B.   The Department Investigates And Holds Its Members Accountable For Mistreatment Of Inmates. ...................................13

C.   In Addition To The Department's Internal Policies And Procedures Designed To Prevent, Investigate, And Punish Retaliation Against Inmates, There Are Multiple Independent Outside Resources That Monitor The Department, Its Members, And Its Investigations ........................................14

a)   Merrick Bobb and the Police Assessment Resource Center Recruitment ("PARC") ...................................14

b)   Michael J. Gennaco and the Office of Independent Review ("OIR") ........................................14

c)   Various Federal And State Agencies....................................14

D.   Inmates Have Multiple Avenues Of Relief If They Feel That They Have Been Subject To Retaliation By Department Members..........................................................15

a)   Access to Staff and Supervisors ...............................15

b)   Inmate Complaint Forms .......................................15

c)   Ombudsman ...................................................16

d)   Government Code Tort Claim ..................................16

e)   Civil Lawsuit...................................................16

i

E.    The Inmate Declarations That Have Been Provided To The Department By The ACLU Have Been Thoroughly Investigated And No Retaliation Has Been Found. ........................... 16

F.    Ignoring The Fact That The Department Investigations Have Not Found Any Retaliation, This Motion Should Still Be Denied Because Granting It Would Dramatically Frustrate The Department's Ability To Effectively And Safely Operate The County Jails. ............................................................................. 17

     i.    Plaintiffs' Proposed Order Would Inhibit The Department's Ability To Search And Discipline Inmates. ................................................................................. 17

     ii.   The Disclosure And Tracking Portions Of The Proposed Order Violate California Law And Put The ACLU In A Supervisory Role Of Department Personnel. .......................... 18

     iii.  The Proposed Order Would Interfere With And Allow Inmates To Manipulate The Provision Of Medical Care In County Jail. ................................................................... 19

     iv.   The Proposed Order Would Generally Interfere With Department Personnel Performing Their Duties And Will Likely Have Additional Unforeseen Consequences ....... 19

VI.  Conclusion. ................................................................................. 20

# **TABLE OF AUTHORITIES**

Cases          Page

*Armstrong v. Ward,*
    529 F.2d 1132 (2d Cir. 1976) ....................................................11

*Bell v. Wolfish,*
    441 U.S. 520 (1979) ..............................................................8, 9

*Ben David v. Travisono,*
    495 F.2d 562 (1st Cir. 1974) .......................................................5

*Benjamin v. Fraser,*
    343 F.3d 35 (2d Cir. 2003) .........................................................8

*Block v. Rutherford,*
    468 U.S. 576 (1984) ................................................................8

*Carlisle v. United States,*
    517 U.S. 416 (1996); ...............................................................3

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) .................................................................6

*Clinton v. Goldsmith,*
    526 U.S. 529 (1999) ................................................................4

*County of Los Angeles v. Davis,*
    440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) .....................11

*Dahl v. HEM Pharmaceuticals Corp.,*
    7 F.3d 1399 (9th Cir. 1993) ........................................................4

*Florida Medical Ass'n v. U.S. Department of Health, Education, & Welfare,*
    601 F.2d 199 (5th Cir. 1979) .......................................................5

*Handberry v. Thompson*
    436 F.3d 52 (2d. Cir. 2006) ........................................................8

*Harris v. Nelson*
    394 U.S. 286 (1969) ................................................................4

*Klay v. United Healthcare Group, Inc.,*
    376 F.3d 1092, 1101 n.13 (11th Cir. 2004) ....................................5

*Matter of Wick,*
    40 F.3d 367 (Fed. Cir. 1994) ......................................................3

*Miller v. French,*
    530 U.S. 327, 333, 120 S.Ct. 2246 (2000) ....................................7

*Ohio Citizens for Responsible Energy, Inc.* v. *NRC,*
  479 U.S. 1312 (1986) ............................................................................3

*Pennsylvania Bureau of Corrections v. United States Marshals Service*,
  474 U.S. 34 (1985) ...............................................................................3

*Plyler v. Moore*
  100 F.3d 365 (4th Cir. 1996) ...............................................................8

*Preiser v. Newkirk,*
  422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) ......................11

*Tanner Motor Livery, Ltd. v. Avis, Inc.,*
  316 F.2d 804 (9th Cir. 1963) .............................................................11

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,*
  60 F.3d 27 (2nd Cir. 1995). .................................................................4

*Tyler v. Murphy*
  135 F.3d 594 (8th Cir. 1998) ...............................................................8

*United States v. New York Tel Co*
  434 U.S. 159, 172 (1977). ....................................................................4

*United States v. Scrap,*
  412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) ......................12

*United States v. W.T. Grant Co,*
  345 U.S. 629, 632-33 (1953) .............................................................10

*United States v. Wunsch,*
  84 F.3d 1110 (9th Cir. 1995) ...............................................................6

*Western Sys., Inc. v. Ulloa,*
  958 F.2d 864 (9th Cir. 1992) ...............................................................6

*Wharton v. Calderon*
  127 F.3d 1201 (9th Cir. 1997) .............................................................6

*Williams v. Alioto,*
  549 F.2d 136 (9th Cir. 1977) .............................................................12

*Winter v. Natural Resources Defense Council, Inc.,*
  129 S. Ct. 365 (2008) ...........................................................................4

*Wisconsin Right to Life Inc v. Federal Election Com'n,*
  542 U.S 1305(2004) ..............................................................................3

Statutes

18 U.S.C. § 3626(a)(2) ...............................................................................9

18 U.S.C. § 3626(g)(7) ...............................................................................9

iv

18 U.S.C. § 3636(a)(2) ............................................................9

28 U.S.C. § 1651(a) ..............................................................3

Rules

Fed. R. Civ. P.] Rule 65..........................................................7

H.R.Rep. No. 104-12, at 24 n.2 (1995) ....................................8

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.**     <u>**Introduction.**</u>

      Plaintiffs claim that inmates in County jail are intentionally and maliciously retaliated against by Los Angeles County Sheriff's Department ("LASD" or "Department") personnel for speaking with representatives of Plaintiffs' counsel, the American Civil Liberties Union of Southern California ("ACLU"). **While many reasons exist for the Court to deny this Motion, most importantly, this Motion should be denied because the assertions of retaliation are without merit. Every investigation, which are reviewed by the Office of Independent Review ("OIR"), conducted to date by the Department into the ACLU's allegations has determined that they are unfounded. There has not been any retaliation, much less retaliation condoned by the Department.**

      To address purported retaliation, Plaintiffs asks this Court to enter an order the effect of which would allow inmates to manipulate, influence, and control various aspects of the operation of the Los Angeles County jail system. While Plaintiffs will surely quarrel with this characterization, if the Court grants this Motion, the resulting order would place limitations and conditions on the ability of the Department to conduct searches and impose discipline on inmates – both of which are of paramount importance to the Department' ability to manage the jails. Further, if the Court grants this Motion, the ACLU and the Court would assume an unprecedented role regarding the Department's operation of the County jails. As set forth below, Plaintiffs' Motion should be denied for numerous legal and factual reasons.

      First, Plaintiffs premise their entitlement to relief on the All Writs Act and the Court's inherent authority. The All Writs Act, however, provides no such authority for a court to disregard existing standards and rules regarding prospective relief. Additionally, the inherent authority of a court relates to a

1

court's ability to manage its own cases in terms of sanctions, attorney discipline, and other measures needed to control courtroom proceedings pending before the court, not side-stepping the rule of law to grant substantive relief.  In short, there is no legal justification whatsoever for the extraordinary relief Plaintiffs seek.

Second, as detailed in the Declaration of Chief Dennis Burns, the admissible evidence is that the Department already has a myriad of policies and safeguards (both internal and external) to address deputy misconduct, including, without limitation, claims of retaliation.  In addition to the Department's efforts to prevent and, if necessary, respond to deputy misconduct, the Department has investigated many of the retaliation claims raised by Plaintiffs and of the investigated retaliation claims, all of them have been determined to be unfounded. The independent OIR has concurred in these determinations.  Instead, investigators have found incidents in which inmates were collaborating to bring suit against deputies (and in the process, concocting false claims of excessive force), incidents in which claimants are substantially mentally ill, and many cases in which there was absolutely no evidence of retaliation.

In light of the above, Plaintiffs have not met their burden either factually or legally for the extraordinary and overreaching relief they seek.  For these reasons and as set forth in greater detail below, this Motion should be denied.

## II.  **Plaintiffs' Motion Should Be Denied Because They Cannot Exploit The All Writs Act To Circumvent Their Evidentiary Burden For Obtaining Injunctive Relief.**

Plaintiffs' reliance on the All Writs Act is misguided.  The All Writs Act provides:  "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Although the language in the Act provides virtually no guidance as to its application, existing case authority reveals that the All Writs Act is, in actuality, applied very

"sparingly and only in the most critical and exigent circumstances." *Wisconsin Right to Life Inc v. Federal Election Com'n*, 542 U.S 1305, 1306 (2004) (quoting *Ohio Citizens for Responsible Energy, Inc.* v. *NRC*, 479 U.S. 1312, 1313 (1986)).

Indeed, the All Writs Act serves only as "a residual source of authority to issue writs **that are not otherwise covered by statute**." *Pennsylvania Bureau of Corrections v. United States Marshals Service*, 474 U.S. 34, 43 (1985) (emphasis added). For this reason, if a statute covers the issue at hand, that statute (and not the All Writs Act) is controlling. *Id.* Accordingly, the All Writs Act is only to be used "to fill statutory interstices." *Id.* at 42 n. 7. The All Writs Act "does not authorize [the courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Id.* at 43. Simply put, the All Writs Act is not available to provide alternatives to other adequate remedies available at law. *Carlisle v. United States*, 517 U.S. 416, 429 (1996); *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999) ("The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law").

Furthermore, the "party seeking such a writ [under the All Writs Act] has the burden of showing, *inter alia,* that its right to the issuance of the writ is "clear and indisputable," [citations omitted]. **The All Writs Act does <u>not</u> augment the jurisdiction of a court**, and Wick has not established that, without the extraordinary writ, the court will be prevented or frustrated from exercising its statutorily granted jurisdiction over a Board decision." *Matter of Wick*, 40 F.3d 367, 372–73 (Fed. Cir. 1994) (emphasis added). Here, Plaintiffs have not even come close to meeting their burden. Plaintiffs, in their Motion, do not establish how, without the issuing of extraordinary relief under the All Writs Act, this Court will be prevented from its jurisdiction in this matter. In addition, Plaintiffs also do not justify why they should be allowed to circumvent the required evidentiary showing and heightened scrutiny for preliminary injunctions. *See,*

3

*e.g., Winter v. Natural Resources Defense Council, Inc*., 129 S. Ct. 365, 374 (2008) (to be entitled to injunctive relief, a plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest); *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (preliminary injunctive relief is "subject to a heightened scrutiny and should not be issued unless the facts and law ***clearly favor the moving party***") (emphasis added); *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2nd Cir. 1995).

Predictably, even the cases relied upon by Plaintiffs fail to support their desired position. For example, in *Harris v. Nelson*, the federal district court below had no other means of providing an effective habeas corpus proceeding except by way of extraordinary writ allowing for an evidentiary hearing. 394 U.S. 286, 299 (1969). Because the Federal Rules of Civil Procedure ("FRCP") did not apply to habeas corpus proceedings, the petitioner had no method of proving specific allegations that could demonstrate that he was illegally confined. *Id.* at 298-300. Relying on the All Writs Act, the court held that it was its duty to provide necessary procedures to allow for the development of this kind of information. *Id.* The court cautioned that, in using the All Writs Act, courts should first utilize familiar rules and procedures, i.e., the Federal Rules of Civil or Criminal Procedure, in which case a court would have had no discretion to create procedures under the All Writs Act. *Id.* at 300, n. 7.

Next, although *United States v. New York Tel Co*. held that the district court could compel a third party to assist the FBI install devices that would register the numbers dialed on certain phones under the All Writs Act, the court reasoned that this was only because there was "no conceivable way in which the surveillance authorized by the District Court could have been successfully accomplished." 434 U.S. 159, 172, 175 (1977). This case was just another

1   example of where "the All Writs Act filled a gap in federal statutes by granting

2   the District Court jurisdiction over the only party capable of installing the

3   devices." *See, Pennsylvania Bureau of Corrections*, 474 U.S. at 42, n. 7.

4         Finally, Plaintiffs misinterpret the First Circuit's decision in *Ben David v.*

5   *Travisono*, 495 F.2d 562, 563 (1st Cir. 1974).  Plaintiffs contend that the First

6   Circuit "approved the district court's determination that under the authority of the

7   All Writs Act the plaintiffs did not need to meet the usual criteria for ordinary

8   protective orders . . . or preliminary injunctions." [Plaintiffs' Motion, 4:14-15.]

9   However, the exact opposite is true.  The First Circuit Court of Appeals held that,

10  although the district court was incorrect regarding the need for making findings of

11  fact, it had met the criteria for issuing a protective order.  *Id.* at 564.  The court

12  did not hold that the All Writs Act was a replacement for the procedures required

13  to obtain a protective order or preliminary injunction.  *Id.*  Indeed, the existing

14  authority is to the contrary: other courts have explicitly held that such a use of the

15  All Writs Act is improper.  *See, e.g., Klay v. United Healthcare Group, Inc.,* 376

16  F.3d 1092, 1101 n.13 (11th Cir. 2004) ("a district court **may not evade the**

17  **traditional requirements of an injunction** by purporting to issue what is, in

18  effect, a preliminary injunction under the All Writs Act") (emphasis added);

19  *Florida Medical Ass'n v. U.S. Department of Health, Education, & Welfare*, 601

20  F.2d 199, 202 (5th Cir. 1979) ("The All Writs Act does not free a district court

21  from the restraints of [Fed. R. Civ. P.] Rule 65 . . . it does not authorize a district

22  court to promulgate an ad hoc procedural code whenever compliance with the

23  Rules proves inconvenient").

24        Therefore, Plaintiffs' Motion based on the All Writs Act should be denied.

25  ///

26  ///

27  ///

28

5

1    **III.    Plaintiffs' Motion Should Also Be Denied Because This Court Does Not**
2            **Have The "Inherent Authority" To Issue An Injunctive Relief Order**
3            **Without A Proper Showing Of Good Cause.**

4            *Chambers v. NASCO*, which Plaintiffs cite in their Motion, does not stand
5    for the proposition that a court may use its inherent powers to issue injunctive
6    relief without a party's proper showing of good cause. *Chambers v. NASCO,*
7    *Inc.,* 501 U.S. 32, 43-49 (1991). In fact, in *Chambers*, the United States Supreme
8    Court held that a district court's inherent powers must be exercised with "restraint
9    and discretion." *Id.* at 44. Further, *Chambers* merely addresses a district court's
10   inherent powers to impose sanctions in an effort to ensure respect and decorum in
11   the courtroom. *Chambers v. NASCO, Inc.*, 501 U.S. at 35 ("This case requires us
12   to explore the scope of the inherent power of a federal court to sanction a litigant
13   for bad faith conduct"). The court's inherent power to sanction does not warrant
14   the authority to grant an order for injunctive relief.

15           It is no different in the Ninth Circuit. In *Wharton v. Calderon*, the Ninth
16   Circuit vacated an order that prohibited respondent warden from interviewing
17   petitioner prisoner's former trial counsel in petitioner's habeas corpus proceeding.
18   127 F.3d 1201, 1207 (9th Cir. 1997). The Ninth Circuit held that such an order
19   **could not be issued under the district court's inherent authority** because it
20   could not be justified as a sanction, as an attorney discipline measure, or as
21   necessary to control courtroom proceedings pending before the court. *Id.* (citing
22   *Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 873 (9th Cir. 1992), *United States v.*
23   *Wunsch,* 84 F.3d 1110, 1114 (9th Cir. 1995), and *Chambers,* 501 U.S. at 44).
24   Accordingly, the Ninth Circuit held that the district court's granting of an order
25   under its inherent authority to be an abuse of discretion as well as beyond the
26   recognized authority of a federal district court and, as a result, vacated the order.
27   *Id.*

28

1    Here, the Court should not grant Plaintiffs any order based upon its

2  inherent powers because it would suffer from the same deficiencies as presented

3  in *Wharton*.  What Plaintiffs seek here is not a sanction, as an attorney discipline

4  measure, or as necessary to control courtroom proceedings.  Instead, Plaintiffs

5  seeks a wholly new injunctive relief order based upon baseless claims of

6  retaliation without a proper evidentiary showing.

7    The Court's inherent authority does not provide a proper basis for

8  Plaintiffs' Motion and, accordingly, it should be denied.

9  **IV.  Plaintiffs' Motion Does Not Satisfy The Requirements For Prospective**

10     **Relied Under The PLRA.**

11    In addition to the reasons discussed above, any relief granted must comply

12  with the requirements under the PLRA.  Plaintiffs' Motion fails to address these

13  exacting requirements, much less make a showing that they satisfy their burden of

14  meeting those standards.

15    The PLRA establishes standards for the entry and termination of

16  prospective relief in civil actions challenging prison conditions.  *See, Miller v.*

17  *French,* 530 U.S. 327, 333, 120 S.Ct. 2246, 2251 (2000).  The term "prospective

18  relief" is interpreted broadly and encompasses "all relief other than compensatory

19  monetary damages."  18 U.S.C. § 3626(g)(7).  Moreover, the statute requires that

20  prospective relief be "**narrowly drawn, extend[s] no further than necessary to**

21  **correct the harm** the court finds requires preliminary relief, and [be] the least

22  intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2)

23  (emphasis added).

24    Further, the Court must give "substantial weight to any adverse impact on

25  public safety or the operation of a criminal justice system caused by the

26  preliminary relief. "  *Id.*  Section 802 of the PLRA amended 18 U.S.C. § 3626 to

27  further restrict the power of federal courts to manage prison conditions through

28  injunctive orders and consent decrees.  This statute "limits remedies to those

7

1   necessary to remedy the proven violation of federal rights." H.R.Rep. No. 104-
2   12, at 24 n.2 (1995); *Plyler v. Moore*, 100 F.3d 365, 369 (4th Cir. 1996); *Tyler v.*
3   *Murphy*, 135 F.3d 594 (8th Cir. 1998). Thus, "the PLRA requires the court to
4   make **particular findings** when it identifies [federal] violations" when
5   prospective relief is sought by a plaintiff. *Handberry v. Thompson*, 436 F.3d 52,
6   63 (2nd Cir. 2006) (emphasis added), citing to *Benjamin v. Fraser*, 343 F.3d 35,
7   56 (2d Cir. 2003).

8       Additionally, the United States Supreme Court has held that jail officials
9   are to be granted "wide-ranging" deference in their decisions regarding the day-
10  to-day operations of jail facilities. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

11      In this very case, the Supreme Court has held that when federal courts find
12  it necessary to intervene, it should be done so with restraint and should not
13  unnecessarily limit jail officials in developing and adapting operations in
14  accordance with institutional needs and exigencies. *Block v. Rutherford*, 468 U.S.
15  576, 584 (1984) ("[W]e reaffirmed the very limited role that courts should play in
16  the administration of detention facilities."). As the Supreme Court also held in
17  *Bell*:

18          [M]any of these same [federal] courts have, in the name of the
19          Constitution, become increasingly enmeshed in the minutiae of
20          prison operations. Judges, after all, are human. They, no less than
21          others in our society, have a natural tendency to believe that their
22          individual solutions to often intractable problems are better and
23          more workable than those of the persons who are actually charged
24          with and trained in the running of the particular institution under
25          examination. But **under the Constitution, the first question to be**
26          **answered is not whose plan is best, but in what branch of the**
27          **Government is lodged the authority to initially devise the plan.**
28          This does not mean that constitutional rights are not to be

8

scrupulously observed.  It does mean, however, that **the inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution** or, in the case of a federal prison, a statute.  The wide ranges of **"judgment calls" that meet constitutional and statutory requirements are confided to officials outside of the Judicial Branch of Government**.

*Bell v. Wolfish*, 441 U.S. at 562 (emphasis added).

Here, Plaintiffs' Motion does not meet this precise and exacting standard under the PLRA.  Instead, Plaintiffs have adopted a "shotgun" approach and seek an order that essentially says "comply with the law or be held in contempt of court." This is not proper nor is it consistent with the requirements under the PLRA. Instead, under the PLRA, a party seeking injunctive relief must specifically outline the terms of an appropriate order.  Plaintiffs' have not done so.  First, the relief they seek is not narrowly drawn.  Instead, it is their attempt to obtain broad relief based upon unsubstantiated (without proper, competent evidence) inmate retaliation claims.

Next, Plaintiffs fail to specify how their requested relief is limited to what would be necessary to correct the alleged deprivation.  That is, ordering the LASD to "take reasonable steps to ensure that LASD personnel follow that policy" (Motion, 12:6-7) extends far beyond what is necessary to address Plaintiffs' unsubstantiated complaints.  For example, it is nebulous as to what "reasonable steps" would be required of Defendants in the name of preventing unsubstantiated claims of retaliation since Plaintiffs do not properly explain that in their Motion.

Finally, as detailed above and below, if this Court granted Plaintiffs injunctive relief, it would be substantially intrusive on the operation of the County Jail and can hardly be characterized as the least intrusive means necessary to correct the purported harm.

**V.     Even Ignoring The Legal Defects Of Plaintiffs' Motion, There Is No**
**Factual Support For The Extraordinary Relief Plaintiffs' Seek.**

In essence, Plaintiffs claim an injunctive relief order is necessary because inmates have been retaliated against by Department personnel and the Department does nothing to prevent or punish retaliation when and if it occurs.  Both of these assertions are completely false and without credible evidentiary support.  In fact, as set forth below, the Department has investigated many of the claims of retaliation in support of Plaintiffs' Motion and the Department has not found any evidence of retaliation.  (*See*, Declaration of Chief Dennis Burns ("Burns Decl."), ¶¶ 3, 10, 13.) Moreover, the Department has a myriad of internal and external safeguards and procedures that exist solely to address deputy misconduct, including, without limitation, retaliation.  (*Id.*)  Furthermore, in the rare instance where deputy misconduct is found, the Department can and does discipline its personnel and if appropriate, the Department can and will refer cases of deputy misconduct to the District Attorney's Office for criminal prosecution.  (*Id*.)

Because of this evidence, Plaintiffs' Motion is completely without justification.  Stated another way, Plaintiffs' Motion is essentially moot.  A request for injunctive relief is moot if the defendant voluntary ceases the allegedly illegal conduct and can demonstrate that there is no reasonable expectation that the wrong sought to be enjoined will be repeated.  *United States v. W.T. Grant Co*, 345 U.S. 629, 632-33 (1953); *University of Texas v. Camenisch*, 451 U.S. at 390 (request for preliminary injunction is moot when the terms of the injunction have already been carried out).

In seeking an injunction, the moving party must satisfy the court that relief is needed.  *Id.*  The necessary determination is that there exists some cognizable danger of recurrent violation, something more than allegations of past misconduct or a mere possibility.  *Id.*  An order granting a preliminary injunction can be reconsidered by the district court if an appeal is not taken.  *Tanner Motor Livery,*

1  *Ltd. v. Avis, Inc.*, 316 F.2d 804, 810 (9th Cir. 1963).

2  In *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979), the United

3  States Supreme Court held that properly acquired jurisdiction may abate if a case

4  becomes moot because: 1) there is no reasonable expectation that the alleged

5  violation will recur; and, 2) interim relief or events have eradicated the effects of

6  the alleged violation.  When both conditions are satisfied, it may be said that the

7  injunctive relief sought is moot because neither party has a legally cognizable

8  interest in the final determination of the underlying questions of fact and law.  *Id.*

9  Other cases have held that when a defendant changes its alleged illegal

10  practices, the need for an injunction is moot.  For example, in *Armstrong v. Ward*,

11  prisoners brought a class action lawsuit challenging the legality of their transfers

12  from the institution in which they were housed to a less desirable institution.  529

13  F.2d 1132 (2d Cir. 1976).  The suit by New York state prisoners sought, inter alia:

14  1) a permanent injunction requiring the return of all prisoners transferred to the less

15  desirable prison back to the original institution; 2) a judgment declaring the

16  transfers to have been in violation of procedural due process requirements; and, 3) a

17  permanent injunction against future transfers of any of the prisoners to the less

18  desirable institution.  *Id.*  The district court granted class certification, issued a

19  declaratory judgment, and permanently enjoined the State from future transfers of

20  any member of the class to the less desirable prison.  *Id.* at 1134-1135.

21  Even before the order was issued, however, all the prisoners had been

22  transferred back to the original institution, the less desirable institution had been

23  closed and, in the unexpected event that the reopening became necessary, the State

24  made clear its intention not to transfer any member of the inmate population at the

25  original institution to the less desirable institution.  The appellate court, relying on

26  *Preiser v. Newkirk*, 422 U.S. 395 (1975)[1], vacated the judgment of the district court

27  _____

28  Briefly, in *Preiser*, the Supreme Court dismissed a prisoner's action challenging
his transfer without hearing or explanation from a medium security prison after a

and remanded the case with instructions to dismiss as moot.  *Id*. at 1135-1136.

In holding that the case was moot because the State had made clear its intention not to transfer any member of the inmate population at the original prison to the less desirable prison, the court stated:

> "[W]hile there is always the possibility that [the less desirable prison] will have to be reopened and that the State will change its mind as to the transfer of inmates, '**such speculative contingencies afford no basis for our passing on the substantive issues (appellees) would have us decide** …'"

*Id*. at 1136 (emphasis added); *United States v. Scrap*, 412 U.S. 669, 688-689 (1973).  *See also*, *Williams v. Alioto*, 549 F.2d 136, 143 (9th Cir. 1977) (speculative possibility of repetition of challenged conduct is not sufficient to prevent an appeal from an order granting injunctive relief from being moot).

### A.   The Department Does Not Condone, And Specifically Prohibits, Retaliation Against Inmates.

First and foremost, the Department in no way, shape, or form condones retaliation against inmates for any reason.  (*See*, Burns Decl., ¶ 4.)  In fact, the opposite is true: the Department specifically prohibits its members from retaliating against inmates.  Moreover, the Department dedicates significant resources to prevent, investigate and, if necessary, punish Department members for improper treatment of inmates.  As set forth in the Declaration of Chief Dennis Burns filed concurrently herewith, the Department's efforts to prevent deputy misconduct (including retaliation) exist in almost every facet of Department operations.  (Burns Decl., ¶ 5a-e.)

---

showing that he had returned to the medium security prison.  The court found that "[a]ny subjective fear [the plaintiff] might have entertained of being again transferred, under the circumstances similar to those alleged in the complaint … (is) indeed remote and speculative …."  422 U.S. at 402-03.

1   Basically, from the moment the Department hires an employee and

2   throughout their career, Department personnel are trained and supervised to protect

3   inmates and the public and the Department would not and does not tolerate the

4   mistreatment (in anyway) of inmates, which includes prohibiting Department

5   personnel from retaliating against inmates.

6   **B.     The Department Investigates And Holds Its Members**

7   **Accountable For Mistreatment Of Inmates.**

8   As with any claim of deputy misconduct, when the Department receives a

9   retaliation allegation, the Department investigates and, if corrective action is

10   needed, punishes Department members.  This process can occur in three different

11   ways, depending upon the nature and severity of the accusation.  If the suspected

12   wrongdoing by LASD personnel is relatively minor, then the accusation will be

13   investigated and addressed at the unit level.  Here, this means that the Captain of

14   Men's Central Jail, Daniel Cruz, will personally supervise and review the

15   investigation and take any and all necessary corrective action against the subject

16   Department member.  If the suspected wrongdoing is of a more serious nature,

17   then the matter will be referred directly to the LASD's Internal Affairs Bureau

18   ("IAB") for investigation.  IAB, which is staffed by trained and experienced

19   supervisors, will conduct a thorough investigation (including interviewing all key

20   witnesses, including the purported victim and involved Department personnel).

21   If it is determined that the involved Department personnel violated any

22   Department policy, then appropriate discipline (including, if appropriate,

23   termination) will be imposed.  Finally, if the alleged misconduct conduct rises to

24   the level of criminal activity, the matter will also be referred to the Department's

25   Internal Criminal Investigations Bureau ("ICIB"), which specifically investigates

26   criminal activity by law enforcement.  A complete criminal investigation will be

27   conducted and if it reveals criminal wrongdoing, then the results of the

28   investigation will be referred to criminal prosecutors for their determination

1 | whether to file criminal charges.

2 | **C.** **In Addition To The Department's Internal Policies And**
3 | **Procedures Designed To Prevent, Investigate, And Punish**
4 | **Retaliation Against Inmates, There Are Multiple Independent**
5 | **Outside Resources That Monitor The Department, Its**
6 | **Members, And Its Investigations**

7 | As this Court knows, Sheriff Baca is dedicated to running a transparent law

8 enforcement agency. As part of this mission, the Department has entered into

9 arrangements with multiple outside entities that monitor the Department's

10 operations and its members. These organizations are independent and the

11 Department cannot and does not control their scrutiny of the Department. While

12 Plaintiffs claim a need to further monitor the Department's supervision of its

13 personnel and response to alleged deputy misconduct, the truth of the matter is

14 that several outside agencies already perform this exact function. For example:

15 | a) Merrick Bobb and the Police Assessment Resource Center

16 Recruitment ("PARC") – Mr. Bobb is the President and founding director of

17 PARC, a nationally known monitor of law enforcement agencies. PARC

18 regularly publishes public reports assessing the operations of the Department.

19 (*See*, www.parc.info/)

20 | b) Michael J. Gennaco and the Office of Independent Review

21 ("OIR") – Mr. Gennaco is the former Chief of the Civil Rights section of the

22 Office of the United States Attorney and he now heads OIR, which is a civilian

23 oversight group that was created in 2001 to monitor the Department and provide

24 legal advice to ensure that allegations of officer misconduct involving the

25 Department are investigated in thorough, fair, and effective ways. OIR regularly

26 produces public reports in accordance with its mission. (*See*, www.laoir.com)

27 | c) Various Federal And State Agencies – The Department is also

28 under the jurisdiction of and regularly inspected by both federal and state

14

1  agencies.  These organizations visit and review the Department's custody

2  operations to ensure that they are in compliance with all federal, state, and local

3  laws and regulations.

4  Here, OIR has been specifically involved in the Department's

5  investigations into the ACLU's complaints of retaliation.  (*See*, Burns Decl., ¶

6  13.)  Despite this independent civilian oversight, there has been no evidence

7  unearthed that inmates have been retaliated against.

8  **D.    Inmates Have Multiple Avenues Of Relief If They Feel That**

9  **They Have Been Subject To Retaliation By Department**

10 **Members.**

11 To prevail on this Motion, pursuant to the PLRA, the Court must find that

12 Plaintiffs' request for relief is narrowly drawn and goes no further than

13 necessary.  (*See*, Section IV.)  Here, that is not the case because inmates who feel

14 that they have been mistreated while incarcerated in the Los Angeles County jails

15 have various means of obtaining relief without the Court granting Plaintiffs'

16 Motion.  For example:

17 a)    Access to Staff and Supervisors – If an inmate believes that he

18 has been mistreated, that inmate has access to other Department members,

19 including supervisors who are assigned to every floor at MCJ.  Also, if an inmate

20 has been accused of conduct that could subject him to discipline, he will receive

21 an administrative hearing before a neural supervisor who was not involved in the

22 incident that gave rise to the proposed discipline.

23 b)    Inmate Complaint Forms –Inmates who wish to make a

24 formal complaint with the Department may complete and turn in an inmate

25 complaint form, which are available in every housing location.  Inmates may also

26 ask jail staff for blank copies of the form.  Inmates complete these forms and

27 deposit them in locked boxes that only supervisors have keys to.  Additionally,

28 inmates who are unhappy with the Department's response to their complaint may

appeal the decision.

c)   <u>Ombudsman</u> – In accordance with the County Code, the County also has an Office of the Ombudsman, which is a neutral third-party that is specifically trained and devoted to hearing and responding to complaints about the Department.

d)   <u>Government Code Tort Claim</u> – Furthermore, inmates may also file a tort claim against the Department pursuant to the California Government Code.

e)   <u>Civil Lawsuit</u> – Finally, inmates who believe that their rights have been violated by the Department or its members may also pursue civil litigation in either federal or state court.

(*See*, Burns Declaration, ¶ 9 a – e.)

**E.   <u>The Inmate Declarations That Have Been Provided To The Department By The ACLU Have Been Thoroughly Investigated And No Retaliation Has Been Found.</u>**

The ACLU first raised claims of retaliation in early 2009.  (See, Burns Declaration, ¶ 10.)  In several cases, the inmate declarations submitted by the ACLU in support of Plaintiffs' Motion overlap with previously raised allegations of retaliation that are now more than a year old.  **For the retaliation claims that were provided to the Department in the past so that an investigation could be conducted, the Department has completed its investigation and has not found any retaliation.**  This includes the following inmate's claims:

1) Dayshaun Rushing;

2) Emmanuel Benson;

3) Antonio Rodriguez;

4) Michael Holguin;

5) Eefrom Jones.

Plaintiffs' Motion also includes new declarations from the following

RUTHERFORD\Opp 2 Mtn for Injunctive Relief Order re Retal

inmates:

    1) Robert Dragusica (two declarations);

    2) Mario Love;

    3) Ruben Beltran;

    4) Antonio Candelario;

    5) Timothy Gaines.

For these inmates, the ACLU did not provide their declarations to the Department before Plaintiffs' Motion was filed.  The Department will conduct a thorough investigation as to these inmates and if any retaliation is found, the Department will take appropriate corrective action.  (*See*, Burns Decl., ¶¶ 10, 11.)

**F.**     **Ignoring The Fact That The Department Investigations Have Not Found Any Retaliation, This Motion Should Still Be Denied Because Granting It Would Dramatically Frustrate The Department's Ability To Effectively And Safely Operate The County Jails.**

While Plaintiffs' claims of retaliation are simply not true (and thus, there is no reason for the Court to enter the order Plaintiffs seek), a further justification for the Court to deny this Motion is the negative impact that it would have on the operation of the County jail system.  Several portions of the ACLU's proposed order are particularly problematic.

**i.**     **Plaintiffs' Proposed Order Would Inhibit The Department's Ability To Search And Discipline Inmates.**

As an overarching concern, the proposed order would drastically inhibit the Department's ability to operate and manage the jails in a safe and secure manner.  By limiting the Department's ability to discipline inmates and conduct searches as it sees fit, the relief sought by the ACLU would essentially put the ACLU and the Court in the position of determining when and where it is appropriate to discipline or search an inmate.  This oversight would, in turn, basically amount to the

17

ACLU and the Court running, or at the very least, significantly interfering with, the operation of the jail system.  Considering the sheer size and complexity of the County jail system, with all due respect to the ACLU and the Court, Department personnel are in the best position to determine when and where an inmate can and should be searched and disciplined.  While the ACLU may have good intentions, the relief they seek would detrimentally impact the Department's ability to effectively manage a large and violent jail population.  (*See*, Burns Decl., ¶ 22.)

### ii.    The Disclosure And Tracking Portions Of The Proposed Order Violate California Law And Put The ACLU In A Supervisory Role Of Department Personnel.

The relief sought by the ACLU is also problematic to the extent it requires information regarding retaliation complaints to be tracked in the Facilities Automated Statistical Tracking system ("FAST") and to the extent it requires the disclosure of information about retaliation investigations to the ACLU.  First, the FAST system was not designed and cannot properly track information about deputy misconduct.  Second, as stated above, various provisions of California law strictly limit the disclosure of information related to complaints of misconduct and discipline associated therewith against law enforcement officers.  Yet access to the FAST system is not limited to only those persons who have the legal authority to access personnel information.  With respect to the disclosure and tracking requirements, if the Court granted the ACLU's Motion, the Department would be required to violate California law and the substantive rights of deputy personnel.  Third, to the extent the ACLU seeks disclosure of the results of the Department's investigations, this would place the ACLU in an unprecedented oversight role regarding the Department's supervision and management of its employees, which would further frustrate the efficient and safe operation of the County jail system.

**iii.**     **The Proposed Order Would Interfere With And Allow Inmates To Manipulate The Provision Of Medical Care In County Jail.**

In addition to the above concerns, the proposed order would also have a disastrous impact on the provision of medical care to inmates.  As this Court knows, given the size of the County jail system, the provision of adequate medical care to inmates is a massive task.  The proposed order would allow inmates to manipulate and control the delivery of health care services by mandating that inmates be given an immediate medical exam if they complain about retaliation.  In a normal circumstance in jail, just as it is outside of the custody environment, when an inmate requests to see a doctor, barring a medical emergency, that inmate is seen in the order in which they requested services.  The proposed order would allow an inmate to jump to the front of the line by alleging retaliation.  By the terms of the proposed order, the Department would be required to provide a medical exam to any inmate that made such a complaint and in turn, delay medical treatment for inmates who had previously requested it.

**iv.**     **The Proposed Order Would Generally Interfere With Department Personnel Performing Their Duties And Will Likely Have Additional Unforeseen Consequences.**

In addition to allowing inmates to abuse the medical treatment system, the proposed order would cause deputies to hesitate in performing their duties for fear of an inmate claiming retaliation against them.  This, in turn, would place inmates and Department personnel in significant danger.  Basically, the proposed order would allow inmates to manipulate, influence, and in some cases, control the operation of various aspects of the County jail system by making claims of retaliation.  These paramount concerns should give the Court significant pause before granting a motion such as the one brought by the ACLU.

19

1    In addition to the concerns outlined above, as the Court knows, no County

2  jail facility operates in a vacuum and the Department firmly believes that

3  additional unforeseen consequences will result if the Court grants Plaintiffs'

4  Motion.

5  **VI.    Conclusion.**

6    Plaintiffs' Motion should be denied as set forth above.  Most importantly,

7  the Department does not tolerate deputy misconduct and would never allow

8  personnel to retaliation against inmates for any reason.  Further and perhaps most

9  importantly, while the Department has investigated many of the retaliation claims

10 raised by the ACLU, none of them have any merit.  For these reasons, the Court

11 should not enter Plaintiffs' proposed order.

12

13 Dated:  November 8, 2010              LAWRENCE BEACH ALLEN & CHOI, PC

14

15                                                      By _____/s/ Justin W. Clark_____

16                                                              Justin W. Clark
                                                               Attorneys for Defendants
17                                                             Sherman Block, et al.

18

19

20

21

22

23

24

25

26

27

28

20