1  MARK D. ROSENBAUM (SBN 59940)
   mrosenbaum@aclu-sc.org
2  PETER ELIASBERG (SBN 189110)
   peliasberg@aclu-sc.org
3  ACLU Foundation of Southern California
   1313 W. 8th Street
4  Los Angeles, CA 90017
   Telephone: (213) 977-9500
5  Facsimile: (213) 977-5297

6  MARGARET WINTER
   mwinter@npp-aclu.org
7  ERIC G. BALABAN*
   ebalaban@nnp-aclu.org
8  National Prison Project of the ACLU
   915 15th Street NW, 7th Floor
9  Washington, D.C. 20005
   Telephone: (202) 393-4930
10 Facsimile: (202) 393-4931
   *Not admitted in D.C.; practice limited to
11 federal courts

12 Attorneys for Plaintiffs
   DENNIS RUTHERFORD, ET AL.
13 (continued on next page)

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                    WESTERN DIVISION

17

| 18 DENNIS RUTHERFORD, et al. | Case No. CV 75-04111 DDP |
|---|---|
| 19         Plaintiffs, | SUPPLEMENTAL MEMORANDUM TO JOINT STIPULATION RE PLAINTIFS' MOTION TO COMPEL RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS |
| 20      v. | |
| 21 LEROY BACA, as Sheriff of the County of Los Angeles, MICHAEL D. ANTONOVICH, DON KNABE, GLORIA MOLINA, ZEV YAROSLAVSKY, as Supervisors of the County of Los Angeles, et al. | |
| 22 | |
| 23 | Date: December 6, 2010<br>Time: 10:00 a.m.<br>Judge: Hon. Dean D. Pregerson<br>Place: Courtroom 3 |
| 24 | |
| 25         Defendants. | |

A/73548619.2

1  MELINDA BIRD (SBN 102236)
   melinda.bird@disabilityrightsca.org
2  Disability Rights California
   3580 Wilshire Blvd., Suite 902
3  Los Angeles, California 90010
   Telephone: (213) 355-3605
4  Facsimile: (213) 427-8767

5  Bingham McCutchen LLP
   STEPHEN D. ALEXANDER (SBN 141099)
6  stephen.alexander@bingham.com
   JENNIFER B. MIKOLEVINE (SBN 236745)
7  jennifer.mikolevine@bingham.com
   355 South Grand Avenue, Suite 4400
8  Los Angeles, California 90071-1560
   Telephone: (213) 680-6400
9  Facsimile: (213) 680-6499

10 Bingham McCutchen LLP
   STACY W. HARRISON (SBN 175028)
11 stacy.harrison@bingham.com
   1620 26th Street
12 4th Floor, Main Tower
   Santa Monica, California 90404
13 Telephone: (310) 907-1000

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28  A/73548619.2

## I. INTRODUCTION

Fifteen months after serving Plaintiffs' First Set of Requests for Production of Documents ("requests" or "RFPs") regarding mental health-related issues at the County jail, Defendants continue to stonewall and pursue delay tactics. As discussed below and in Plaintiffs' portions of the Joint Stipulation (Docket No. 232), Plaintiffs are entitled to this discovery.

## II. PLAINTIFFS HAVE COMPLIED WITH LOCAL RULE 37

As Defendants noted, the Local Rules provide the Joint Stipulation "shall contain *all issues* in dispute and, with respect to *each such issue,* the contentions and points and authorities of each party." L.R. 37-2.1 (emphasis added). Plaintiffs have complied with L.R. 37-2.1 by clearly setting forth their contentions as to each issue raised by Defendants' objections to the document requests in dispute.

Because Defendants asserted nearly identical objections to each of Plaintiffs' requests, Plaintiffs chose to organize their motion based on the issues raised in Defendants' objections, rather than by individually numbered requests. The format Defendants insist is the only valid one (listing each individual request, response, and repeating all relevant arguments for each request, Joint Stip. p. 66-68) would have required hundreds of pages and made the Joint Stipulation highly redundant. Plaintiffs also specified the particular requests at issue in each section of the Joint Stipulation by identifying each of the requests in the very first sentence of every section. Finally, pages 5-25 of the Joint Stipulation set forth, *verbatim*, each original document request and response in dispute, and Plaintiffs further set forth their requests as narrowed for purposes of the motion to compel.[1] For the Court's convenience, a

---

[1] Defendants' claim that it is "unclear whether Plaintiffs are seeking to compel a response to the original or narrowed versions" (Joint Stip. p. 82) is puzzling given Plaintiffs' clear statement (Joint Stip. pp. 4-5) that only responses to the *requests as narrowed* are sought currently.

1

chart summarizing the document requests discussed in each section of the Joint Stipulation is attached to the Supplemental Declaration of Jennifer MikoLevine ("MikoLevine Supp'l Dec'l") accompanying this Supplemental Memorandum. Plaintiffs' organization of the Joint Stipulation was the most efficient way, within the L.R. 37-2.1 guidelines, to address Defendants' numerous, repetitive, and unfounded objections to Plaintiffs' narrowed requests. Thus there is no need for further briefing by Defendants on the "unique issues and relevant objections" (Joint Stip. p. 82) about which they already have had ample time and space to address.

## III. MEDICAL AND MENTAL HEALTH ISSUES ARE WITHIN THE SCOPE OF THIS LITIGATION

### A. Medical Issues Were Not "Abandoned" In This Action

After more than a year of numerous meet and confer exchanges, Defendants now argue for the first time that medical issues were "abandoned" in *Rutherford* and addressed in a different case--*ACLU v. Pitchess*, LASC Case No. C275653. Joint Stip. pp. 2-3; 78-79. However, medical issues were never bifurcated from this action, nor did the parties "abandon" the medical issues and choose to pursue them only in *Pitchess*. Defendants cite a December 17, 1984 Status Report in the *Rutherford* case as support (*see* Defendants' Request for Judicial Notice ("RJN") Exh. 6), but neglect to mention that the document they rely on was almost immediately superseded by later documents.

A June 6, 1985, a document captioned "Joint Stipulation to Dismiss Pending Action; Order Dismissing Action," purports to "dismiss[] [the *Rutherford* action] *in its entirety* as to all remaining causes of action and as to all named defendants" because the "health care presently being provided to plaintiffs meets or exceeds Fed-

A/73548619.2                                2

Supplemental Memorandum To Joint Stipulation Re Plaintiffs' Motion To Compel Responses To First Set Of Requests For Production Of Documents

eral Constitutional standards." Plaintiffs' Supp'l RJN, Exh. 1 (emphasis added).[2]
However, the "dismissal" was no more than an administrative closure, and the parties and the Court treated it as such. Following the June 1985 dismissal, the parties continued to file status reports on a regular basis, and numerous orders and stipulations were entered; more than eighty such entries appear on the *Rutherford* docket between the 1985 "dismissal" and February 1993. Plaintiffs' Supp'l RJN, Exh. 2. On February 9, 1993 *Rutherford* was formally re-assigned and re-opened in its entirety. *See* Order by Judge Real reassigning all closed cases previously assigned to Judge Gray on an as needed and random basis). Plaintiffs' Supp'l RJN, Exh. 3. A number of the orders and stipulations from 1985 through 1993 and beyond indicate medical and mental health issues continued to be addressed in *Rutherford*.[3]

---

[2] Further proof that this "dismissal" was no more than an administrative closure is the absence in the docket of any indication that notice was provided to class members as is required under the Federal Rules (requiring "approval of the court, *after notice*, for the dismissal . . . of any class action.") 1966 Amendments to Fed. R. Civ. P. 23(e) (emphasis added). *See Carracter v. Morgan*, 491 F.2d 458, 459 (4th Cir. 1973) (where final order was entered in case without providing notice to class, order could not be considered dismissal of class action); Plaintiffs' Supp'l RJN, Exh. 2.

[3] Plaintiffs have investigated the procedural posture of *ACLU v. Pitchess* and have concluded it is a red herring. A Judgment granting Writ was entered in that case on March 21, 1980 commanding respondents to apply for licensure for the Men's Central Jail ("MCJ") and Sybil Brand health facilities. Plaintiffs' Supp'l RJN, Exh. 4. A Notice of Motion for Modification of Peremptory Writ was entered on January 4, 1984, seeking a determination as to whether the facilities would be licensed. Plaintiffs' Supp'l RJN, Exh. 5. The Modification was taken off calendar on May 6, 1984--the last entry on the docket. Plaintiffs' Supp'l RJN, Exh. 6. It is clear from reviewing *ACLU v. Pitchess* documents that the *state statutory* issues regarding licensure asserted there bore no resemblance to the *federal constitutional* issues supposedly "abandoned" in *Rutherford*. Moreover, any attempt by the *ACLU v. Pitchess* plaintiffs (who were not inmate class members but rather two organizations and an organization's president asserting taxpayer standing) to litigate claims based on the constitutional rights of inmates would have resulted in a prompt dismissal for lack of standing. It is also clear from the record in *Rutherford* that the parties did not agree that the *ACLU v. Pitchess* case was the only forum in which health issues could be litigated. Even assuming, arguendo, that such issues were addressed in *ACLU v. Pitchess*, at most *ACLU v. Pitchess* and *Rutherford* proceeded on parallel tracks; one did not preempt the other.

A/73548619.2    3

### B. Post-Judgment Orders And Stipulations Address Medical And Mental Health Care Issues

Defendants maintain that because the 1979 Judgment does not include terms regarding medical or mental health judgment, Plaintiffs are not entitled to this mental health-related discovery. Joint Stip. p. 73. But the scope of *Rutherford* is not frozen at the time of Judgment; indeed, post-judgment orders and stipulations are routine and affect a case's scope. *See generally Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed. 2d 199 (1964); Joint Stip. p. 29-34. As mentioned above, several post-judgment stipulations and orders reveal the ongoing presence of medical issues in *Rutherford*.[4]

On November 13, 1985 the Court approved a Memorandum of Understanding describing Plaintiffs' right to employ experts--including a psychologist--to tour the jail with medical staff, analyze jail conditions, and draft reports. Joint Stip. at 30; Plaintiffs' RJN, Exh. 3.

Two years later, in July 1987, as a result of interviews Plaintiffs' counsel conducted as part of its ongoing monitoring role, the Court approved a Stipulation allowing Plaintiffs' counsel access to *medical records of all inmates* confined at MCJ ("During these interviews [of MCJ inmates by Plaintiffs' counsel] questions have

---

[4] In a related argument regarding the 1979 Judgment, Defendants cite *California Department of Social Services v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008), in support of their position Plaintiffs are not entitled to this discovery because Plaintiffs have not submitted "sufficient evidence" to raise "significant questions" regarding non-compliance with the 1979 Judgment (Joint Stip. pp. 69-72). Defendants claim that Plaintiffs have not cited or addressed *Leavitt* (*id.* p. 71). Plaintiffs had no need to do so; this Court already addressed *Leavitt* when it granted Plaintiffs' Motion to Reopen Discovery and found "Plaintiffs have provided *sufficient information to raise 'significant questions'* regarding the orders in this case and to justify reopening discovery." August 4, 2010 Order, Docket No. 192 at 4:23-25 (emphasis added) (citing *Leavitt*). Moreover, *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976) (Joint Stip. p. 69) was decided in the context of a Fed. R. Civ. P. 60(b) motion and is likewise dissimilar to *Rutherford*'s procedural posture. Regardless, Plaintiffs have already made the showing required by *Leavitt*, as this Court's August Order established. The Court should not permit Defendants

(Footnote Continued on Next Page.)

A/73548619.2    4

1  arisen concerning *medical treatment* in the Central Jail."). Plaintiffs' Supp'l RJN,
2  Exh. 7 (emphasis added).

3        One year later, in August 1988, the Court entered yet another "Stipulation Re
4  Examination Of Inmate Medical Records." Plaintiffs' Supp'l RJN, Exh. 8.

5        Four years later, in August 1992, the Court signed as an Order a Joint Status
6  Report that included the "Health care system" at LACJ as one of eleven enumerated
7  categories, stating "The Sheriff *shall* work towards . . . providing *constitutionally*
8  *adequate health care* to all inmates in his custody . . . ." Id., 10:1-4 (emphasis
9  added). Plaintiffs' RJN, Exh. 4.[5]

10       In more recent years, this Court's 2006, 2007 and 2009 Orders have all rec-
11 ognized that medical and mental health issues are encompassed in this litigation.
12 *See Rutherford v. Baca*, Civ. No. 75-04111 DPP, 2006 U.S. Dist. LEXIS 81431, at
13 *13 (C.D. Cal. Oct. 27, 2006); January 25 and April 20, 2007 Orders Re Preliminary
14 Injunction at 3:8-10 and 3:9-11, respectively; and August 4, 2009 Order at 3, at-
15 tached hereto respectively as Plaintiffs' Supp'l RJN Exhs. 9, 10, 11, and 12.

    **C.   Defendants Are Judicially Estopped From Arguing Mental Health Is Beyond The Scope Of *Rutherford***

      As a result of these orders and stipulations, Defendants are judicially estopped from arguing medical issues are outside the scope of *Rutherford*. Judicial estoppel is an equitable concept indented to "preclude[] a party from gaining advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.

---

(Footnote Continued from Previous Page.)
to re-argue a motion that has already been decided.
[5] Defendants' contentions that none of the documents Plaintiffs have introduced make any "mention whatsoever to constitutional issues" associated with medical or mental health treatment (Joint Stip. p. 79) and that there are "no orders regarding medical or mental health care for inmates in the County jail" (Joint Stip. p. 77) are thus flat out misrepresentations.

A/73548619.2        5

1996). The purpose of judicial estoppel is to protect the integrity of the judicial process. *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993). The doctrine is employed to prevent litigants from playing "fast and loose" with courts, and to avoid unfair results and unseemliness. *See Gen. Signal Corp. v. MCI Telecom. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995). It is an equitable doctrine that should be guided by a sense of fairness. *See Risetto*, 94 F.3d at 601.

In determining whether to apply the doctrine, courts typically consider (1) whether a party's later position is "clearly inconsistent" with its original position; (2) whether the party has "succeeded in persuading" the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to "derive an unfair advantage or impose an unfair detriment on the opposing party...." *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). Here, Defendants latest position (medical issues are beyond the scope of the litigation) is "clearly inconsistent" with its previous position (medical issues are within the scope of the litigation) as evidenced by the "succe[ssful]" entry of the medical-related court-approved stipulations and orders discussed above. If the Court were to base its rulings on Defendants' inconsistent position, it would have the unfair result of precluding Plaintiffs' discovery in the short-term and precluding vindication of class members' constitutional rights in the long-term. Defendants thus should be judicially estopped from asserting this inconsistent position.

### D. Defendants Are Equitably Estopped From Arguing Mental Health Is Beyond The Scope Of *Rutherford*

Equitable estoppel "adjust[s] the relative rights of parties based upon consideration of justice and good conscience." *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 95-96 (9th Cir. 1970). It is a "broader" doctrine than judicial estoppel and one that "focuses principally on the relationship among the parties. As such, a party will be equitably estopped from asserting an inconsistent position whenever the ad-

A/73548619.2    6

verse party has detrimentally relied on it." *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1201 n.3 (9th Cir. 1988) (internal citation omitted). A plaintiff must show defendant "engaged in some questionable conduct that rises to the level of conscientious or inequitable behavior." *Headlands Reserve, LLC v. Ctr. For Natural Lands Mgmt.*, 523 F.Supp.2d 1113, 1130 (C.D. Cal. 2007). As discussed in sections III.B-C above, Defendants are currently asserting a position regarding the scope of *Rutherford* that is contrary to their previous position. Plaintiffs have detrimentally relied on this position over the years by continuing to pursue issues related to medical and mental health, including the hiring of experts and the subject discovery.[6]

## IV. PLAINTIFFS' DISCOVERY IS NOT PRECLUDED

Defendants claim *Porras* and *Leandry* preclude Plaintiffs' discovery.[7] Defendants concede that Plaintiffs make "several arguments" but proceed to only address, in the most cursory fashion, two of them (regarding changed circumstances and comparing *Porras* claims to *Rutherford* claims). Joint Stip. pp. 91-92.

These broad, unsupported arguments are not only meritless,[8] they are insuffi-

---

[6] For the reasons discussed herein and in sections III.B-C, Defendants prior inconsistent position also results in a waiver of their current "outside the scope" argument. A waiver is the express or implied voluntary relinquishment of a known right. *Kansas City Life Ins. Co. v. Davis*, 95 F.2d 952, 957 (9th Cir. 1938). "The [waiver] doctrine acts as an admonition to parties rather than as a limitation on courts, and the doctrine is used by courts to avoid a result where parties have conducted themselves in such a way as to make that result unfair." 31 Corpus Juris Secondum, Estoppel and Waiver § 67 (internal citations omitted).

[7] Defendants claim these cases preclude Plaintiffs' discovery because (1) to allow such discovery (thereby "re-litigat[ing] the constitutionality of the medical and mental health treatment in the County jail") would render *Porras* meaningless; (2) Plaintiffs would rely on the same evidence as in *Porras*; (3) Plaintiffs here and *Porras* Plaintiffs allege 8th and 14th Amendment violations; and (4) *Rutherford* and *Porras* arise from the provision of health care services to inmates. Joint Stip. p. 90. Defendants do not attempt to explain the inherently contradictory position here (that *Rutherford* arises from the provision of health care services to inmates) with their argument addressed in section III above (that health care is outside the scope of *Rutherford*).

[8] As discussed in detail in the Joint Stipulation pp. 36-48, Defendants' position is

A/73548619.2          7      (Footnote Continued on Next Page.)

cient to meet Defendants' burden to prove each distinct element of claim and issue preclusion, as is required in the Ninth Circuit. *See, e.g., Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1115-16 (9th Cir. 1999). Furthermore, as Plaintiffs raised in the Joint Stipulation, it is not at all clear that preclusion arguments are even relevant at this discovery stage because the information gained from discovery likely will shape any future motion. Until the issues Plaintiffs will proceed on are clear, there is no point in the court issuing advisory opinions about whether issues are subject to preclusion. Defendants entirely fail to address this issue and seven of Plaintiffs' arguments which directly address Defendants' arguments above, as discussed in the Joint Stip. pp. 39-48. Any one of these arguments would defeat Defendants' preclusion argument, and Defendants' utter failure to address them is revealing.

## V. THE LAW OF THE CASE DOCTRINE IS INAPPLICABLE HERE

Defendants' argument (Joint Stip. pp. 79-81) that Plaintiffs are precluded from arguing the jails are overcrowded because of the "law of the case" is unavailing. The Memorandum of Understanding signed by the District Court in 1985 (the "MOU") does not establish any "law of the case." *See* Plaintiffs' RJN, Exh. 3. While Defendants state the MOU defines overcrowding "[f]or the purposes of this case", the MOU clearly defined the term overcrowding "for the purpose *of this document* [the MOU]." *Id.*, 2:27-28 (emphasis added). Defendants also cite a 1992 Joint Status Report (the "Joint Report"). *See* Plaintiffs' RJN, Exhibit 4. The Joint Report, as approved by the District Court, establishes maximum court approved capacities for the County jails; however, this document has no bearing on the question of whether the jails are *actually, currently* overcrowded.

---

(Footnote Continued from Previous Page.)

meritless because, *inter alia*, the operational facts based on continuous acts in *Rutherford* occurred *after* the 2006 *Porras* judgment and therefore did not even exist and could not have been litigated in that case. *See Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 (9th Cir. 2000).

A/73548619.2                                8

Supplemental Memorandum To Joint Stipulation Re Plaintiffs' Motion To Compel Responses To First Set Of Requests For Production Of Documents

Indeed, Plaintiffs' *preliminary* investigation, conducted in its role as jail monitor and as reflected in the Kupers Report,[9] reveals that overcrowding continues to be an issue at MCJ. Thus even if, arguendo, the law of the case doctrine were applicable here, the Court is permitted to reconsider a previously decided question "where new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt Co. v. United States.*, 55 F.3d 1388, 1393 (9th Cir. 1995); *Moritmer v. Baca*, 594 F. 3d 714. 721 (9th Cir. 2010). Here, the Kupers report is new evidence that demonstrates that overcrowding at MCJ does exist. In light of this report--and whatever new evidence of overcrowding Plaintiffs' discovery uncovers--the Court could properly reconsider whether overcrowding is an issue in the jail.

Moreover, at this stage, Plaintiffs are not even requesting the Court reconsider a prior ruling regarding overcrowding. Rather, Plaintiffs *are seeking discovery* regarding overcrowding and the impact overcrowding has on the mental health of prisoners. Defendants' position here is a Catch-22: Plaintiffs need discovery to prove overcrowding exists but, according to Defendants, since Plaintiffs cannot show overcrowding exists, they should not be entitled to discovery. The doctrine of law of the case is inapplicable here and Plaintiffs should be afforded the opportunity to conduct discovery regarding these issues.[10]

---

[9] Defendants' insinuation that they have not received a copy of Dr. Kupers' report (Joint Stip. p. 80 n.32) is erroneous. A complete copy of Dr. Kupers' report was attached as Exhibit B to Dr. Kupers' Declaration in support of Plaintiffs' Ex Parte Application for Status Conference, filed December 15, 2009 (Docket No. 205). Moreover, more than a year earlier, on July 7, 2008, Plaintiffs provided the Kupers Report to Defendants. In light of the fact that Defendants already have Dr. Kupers' report -- and that the Court has referred to it in status conferences -- Defendants cannot claim to be ignorant of this document or to need additional time to respond to it. Nonetheless, the Kupers report (both as it appears in the docket and with the cover letter provided to Defendants in July 2008) is provided, again, as Exhibit A to the MikoLevine Supp'l Dec'l.

[10] The remainder of Defendant's objections are equally unavailing with regard to the following. <u>Particularity</u>: Defendants claim the "vast majority" of the requests fail to

A/73548619.2      9      (Footnote Continued on Next Page.)

Supplemental Memorandum To Joint Stipulation Re Plaintiffs' Motion To Compel Responses To First Set Of Requests For Production Of Documents

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request Defendants be ordered to produce the subject discovery as narrowed in the Joint Stipulation without further briefing or delay.

Respectfully submitted,

DATED: November 22, 2010

ACLU Foundation of Southern California
ACLU National Prison Project
Disability Rights California
Bingham McCutchen LLP

By: /s/ Jennifer B. MikoLevine
Jennifer B. MikoLevine
Bingham McCutchen LLP
Attorneys for Plaintiffs

---

(Footnote Continued from Previous Page.)

describe documents with reasonable particularity, but the only example they provide strains credulity: they construe RFP No. 3, which clearly seeks to determine which prisoners have attempted suicide or been on suicide watch over the past six months, as "seek[ing] production of every inmate's medical and mental health records that attempted suicide or has been on suicide watch during incarceration in County jail." Joint Stip. p. 84. Defendants' characterization of that RFP is simply untrue. <u>Burden</u>: Defendants' argument regarding burden and breadth is replete with caselaw but utterly lacking in detail regarding the subject requests. Joint Stip. pp. 97-99. With the exception of medical records, which Plaintiffs are not currently seeking, Defendants have never explained how or why production would cause hardship or be burdensome. Joint Stip. pp. 49-53. <u>HIPAA/Privacy/Protective Order:</u> As explained more fully in the Joint Stipulation, HIPAA authorizes the disclosure of protected health information in response to discovery without an individual's authorization. Moreover, although Defendants insist otherwise, Plaintiffs are not currently seeking inmates' medical records. Regardless, there is no reason why redactions and a protective order, such as the exemplar Plaintiffs provided, would not adequately address any privacy concerns here. Joint Stip. pp. 54-56; 56-59. <u>DOJ Reports:</u> If Defendants plan to rely on the DOJ Reports, they must be disclosed. Defendants have represented for months that they are "in the process" of requesting further information regarding the reports; they should not be allowed to delay further regarding these reports. Joint Stip. pp. 59-62. <u>Official Information Privilege:</u> Defendants have failed to demonstrate why any of the requests are subject to this privilege. Their claim that "[m]ost notably" this privilege applies to RFP No. 13 (documents identifying mental health personnel working in the Jail) (Joint Stip. p. 93) is nonsensical as this *qualified* privilege held by the government exists to prevent the disclosure of information contrary to the public interest. Joint Stip. pp. 62-64. <u>Privilege Log:</u> Defendants' vague and inadequate five-entry privilege log must be remedied or their claims to privilege are waived. Joint Stip. p. 65.

A/73548619.2          10