# EXHIBIT 5

1  JOHN H. HAGAR, JR.
   444 Lincoln Blvd., Suite 319
2  Marina Del Rey, CA 90291
   (213) 396-3498
3
   FRED OKRAND
4  ACLU Foundation of
     Southern California
5  633 South Shatto Place
   Los Angeles, California 90005
6  (213) 487-1720

7  Attorneys for Petitioners.

**FILED**

JAN - 4 1984

JOHN J. CORCORAN, COUNTY CLERK

BY X. O. SESSIONS, Deputy

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       FOR THE COUNTY OF LOS ANGELES

10

11  AMERICAN CIVIL LIBERTIES UNION   )   Case No.  C 275653
12  OF SOUTHERN CALIFORNIA, Inc.,    )
    et al.,                          )   NOTICE OF MOTION FOR
13                                   )   MODIFICATION OF
       Petitioners,                  )   PEREMPTORY WRIT OF MANDATE;
14                                   )   POINTS AND AUTHORITIES;
    vs.                              )   DECLARATIONS.
15                                   )
    PETER J. PITCHESS, et al.,       )
16                                   )   Department: 85
       Respondents.                  )   Date:  February 2, 1984
17  _____)   Time:  9 a.m.

18  To each party and attorney of record:

19      PLEASE TAKE NOTICE that on February 2, 1984 at 9 a.m. in

20  Department Number 85 in the Los Angeles County Superior Court

21  located at 111 North Hill Street, Los Angeles, California,

22  Petitioner American Civil Liberties Union Of Southern California

23  will move the Court for an order modifying the Peremptory Writ of

24  Mandate dated April 4, 1980 to command Respondents PATRICIA RAUSCHER

25  as Acting Chief Deputy Director of the Department of Health Services

26  for the State of California; PETER RANK, as Director of the

27  Department of Health Services of the State of California; and DAVID

28

(1)

**EXHIBIT 5**

SWOAP as Secretary of the Health and Welfare Agency of the State of California, to grant or deny Respondent COUNTY OF LOS ANGELES licensure pursuant to Health and Safety Code, section 1250 et seq., of those health facilities in the Los Angeles County Men's Central Jail and in the Sybil Brand Institute for Women within ninety (90) days, and for petitioners' reasonable costs and attorney fees.

This motion is made under California Health and Safety Code, sections 1250 et seq. and on the grounds that:

a) The physical and mental well being of the inmates at the Central Jail and Sybil Brand continue to suffer as long as the facilities remain unlicensed;

b) Money damages are extremely difficult to calculate for the harm caused said inmates;

c) Money damages will not adequately compensate those inmates harmed; and

d) Although Respondent County of Los Angeles has complied with the Peremptory Writ of Mandate issued by this Court on April 4, 1980, Respondents PATRICIA RAUSCHER, as Acting Chief Deputy Director of the Licensing and Certification Division of the Department of Health Services of the State of California; PETER RANK, as Director of Health Services of the State of California; and DAVID SWOAP, as Secretary of the Health and Welfare Agency of the State of California have failed, and continue to fail, over the course of more than three and one half years, to either grant or deny said licenses to the Los Angeles County Men's Central Jail and the Sybil Brand Institute for Women.

This motion is based on all the pleadings, papers, and records

1  filed in this action, on the attached points and authorities, the

2  Declaration of John H. Hagar Jr., the attached exhibits referenced

3  within that declaration, and on such evidence as may be presented at

4  the hearing.

5

6  Dated:  January 3, 1984

7

8

9                              Fred Okrand
                                John H. Hagar, Jr.
10

11                       By
                                John H. Hagar, Jr.
12                              Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 6

**SUPERIOR COURT LOS ANGELES COUNTY**

C 275653

AMERICAN CIVIL LIBERTIES UN ET AL     SHERLING-OKRAND-ROSENBAUM

LOS ANG CO SHERIFF          ET AL

| NATURE OF ACTION: | MISC CIVIL COMPLAINT-MONEY INVOLVED | CODE | 0601 |
| --- | --- | --- | --- |

REPORTER  C. OLESON

| YEAR | MONTH | DAY | PROCEEDINGS | FILED DOC | FE |
| --- | --- | --- | --- | --- | --- |
| 575 | MAR | 09 | COMPLAINT FILED AND SUMMONS ISSUED | | 51 |
| 80 | Jan | 16 | Petro Mo for Peremptory Writ 2-14-80 9am D 85 | | |
| 80 | Feb | 14 | Writ ⊗ issued Motion granted | D 85 | |
| 80 | Feb | 11 | resp ans to peto for writ of mandate declaratory relief memo | | |
| | | | M P + A + decl | ✓ | |
| 80 | Feb | 11 | resp ans + return to peto for writ of mandatory decl relief | ✓ | |
| | | | + mo for peremptory writ of mandate | ✓ | |
| 80 | Feb | 13 | petro replication to resp ans & peto | ✓ | |
| 80 | Feb | 13 | petro replication to resp ans to return to peto | ✓ | |
| 80 | Mar | 21 | JUDGMENT FILED | | |
| 80 | Mar | 24 | JUDGMENT ENTERED | | |
| 80 | Mar | 25 | NOTICE OF ENTRY OF JUDGMENT AND    7600-121 | ✓ | |
| | | | CERTIFICATE OF MAILING FILED | ✓ | |
| 80 | Mar | 4 | Writ of Mandate    issued | | ✓ |
| 80 | Apr | 10 | Notice of points + authorities | ✓ | |
| 80 | Apr | 11 | Peremptory writ of mandate | ✓ | |
| 80 | Apr | 11 | proof of service | ✓ | |
| 80 | May | 5 | Letter - Not of motion, mo D ranch | | |
| | | | By atty's Fees 5-22-80 9AM | | |
| | | | Dept 82 | | |
| 80 | May | 22 | ord tr to D 83    D 82. | | |
| 80 | May | 22 | mo tr to D 85 + cont 6-20-80 9AM D85 D 83 | | |
| 80 | Jun | 30 | attorney fees $ 4,500.00, Counsel for plaint D 83 | | |
| | | | to prepare order - Notice by M D | | |
| 80 | May | 14 | State resp opps to mot for award of attorney fees | ✓ | |
| | | | mem of pts + auth    82 | | |
| 80 | May | 20 | Reply Pts County Resp re points - award of attorney | | |
| | | | fees    82 | | |
| 80 | May | 20 | opp to mot for award of att fees | | |
| 80 | Jul | 3 | Order awarding attorney's fees | ✓ | |
| 80 | Jun | 27 | request for findings of fact + conclusions of law | ✓ | |
| | | | C.C. Rules of Court Rule 23.21 | ✓ | |
| 80 | July | 22 | objections to proposed findings of fact + conclusion | ✓ | |
| | | | of law + proposed conclusions - findings | | |
| 80 | July | 29 | finding of fact + conclusions of law re | ✓ | |
| | | | order awarding atty fees | | |
| 84 | 1 | 4 | petnors mo for modification of peremptory writ | ✓ | 10 |
| | | | of mandate, 2-2-84, 9 a m D-85 | | |
| 84 | 1 | 4 | petnors p's + a's | | |

**EXHIBIT 6**

: NC.

**SUPERIOR COURT LOS ANGELES COUNTY**

RTER   C. Bell 2-8-84

ORTER

| R | MONTH | DAY | | FILED DOC | FEES |
|---|---|---|---|---|---|
| 4 | 2 | 2 | Cont 3-22-84 @ 9:00 in O 85 | | |
| 84 | 4 | 30 | Cont 5-16-84 @ 9:00 in D 85 | | |
| 84 | 5 | 31 | Nta g continuance | | |
| 84 | 5 | 7 | " | | |
| 84 | 5 | 26 | stip to cont plffs Mot for Modification | | |
| 84 | 5 | 16 | Mot O/C | O 85 | |

# EXHIBIT 7

```
1   JOHN HAGAR
    ACLU Foundation of So. California
2   633 South Shatto Place
    Los Angeles, CA   90005
3
    (213) 487-1720
4
    Attorney for Plaintiffs
5
```

FILED

JUL 29 1987

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENNIS RUTHERFORD, et al., | ) | NO. CV 75-4111 WPG |
| | ) | |
| Plaintiffs, | ) | STIPULATION AND COURT |
| | ) | APPROVAL THEREOF |
| vs. | ) | |
| | ) | |
| SHERMAN BLOCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

The parties to the above-entitled action, through their counsel of record, the undersigned, hereby enter this Stipulation subject to the Court's approval, and stipulate as follows:

/
/
/
/
/

— 1 —

76T576T–  PS 2-85                    **EXHIBIT 7**

A.    PREAMBLE

Plaintiffs' counsel continues to be afforded access to both inmates and the entire Central Jail facility by Defendants.  As part of this access program, a series of inmate interviews has been conducted by a representative from the ACLU and a representative from the Sheriff's Department.

During these interviews questions have arisen concerning medical treatment in the Central Jail.  Consequently, the parties stipulate as follows:

B.    STIPULATIONS

1.    Plaintiffs' counsel and one ACLU summer intern will have access at the Central Jail to the following documents for inspection purposes only.  Plaintiffs' counsel and the summer intern will not copy these documents.  Further, they shall not discuss these documents with any third parties without obtaining prior Court approval.  A Jail Medical Services person may be present to interpret the records.

a.    The medical records of all inmates confined in 1800 at the Central Jail on July 1, 1987.

b.    The medical records of all inmates confined in 1800 at the Central Jail on July 8, 1987.

c.    The medical records of all inmates confined in 1800 at the Central Jail on July 14, 1987.

d.    The medical records of all inmates interviewed by Jake Katz and Elizabeth Grayer pursuant to the summer interview program.

/

/

- 2 -

76T576T-  PS 2-85

e.    The medical records, autopsy records, investi-
gative reports and coroner's reports of each inmate who died in
the Los Angeles County Jail system in 1987.

IT IS SO STIPULATED:

Date: _____          _____
                                        JOHN HAGAR, Esq

                                        Attorney for Plaintiffs

Date: _____          _____
                                        FREDERICK R. BENNETT
                                        Assistant County Counsel

                                        Attorneys for Defendants

GOOD CAUSE APPEARING THEREFORE, IT IS SO ORDERED:

Date: _____          _____
                                        WILLIAM P. GRAY
                                        United States District Court

- 3 -

76T576T-   PS 2-85

# EXHIBIT 8

JOHN HAGAR
PAUL HOFFMAN
ACLU Foundation of
    Southern California
633 South Shatto Place
Los Angeles, California 90005
(213) 487-1720

Attorneys for Plaintiffs



IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

DENNIS RUTHERFORD,            )     No: CV 75-4111 WPG
                              )
            Plaintiff,        )
                              )
      vs.                     )     STIPULATION RE EXAMINATION
                              )     OF INMATE MEDICAL RECORDS;
SHERMAN BLOCK, et al.,        )     ORDER THEREON
                              )
            Defendants.       )
_____)

    The parties have received inmate complaints concerning certain
specific medical procedures which require inmates to be transported
from jail to County USC hospital facilities.  The parties are
uncertain as to the scope of this problem and require a review of
inmate medical files and records.  Some of the affected inmates have
been released from custody and if would be difficult, if not
impossible, to obtain their consent for an examination of the
medical records maintained for them by the Sheriff during their jail
confinement.

    Consequently, the parties stipulate, with the Court's approval,
to review approximately forty inmate medical records before August
31, 1988 without obtaining formal consent from the affected former
inmate.  The parties further stipulate not to review the medical

**EXHIBIT 8**

1  file of any in-custody inmate without obtaining formal written

2  consent.

3      The records shall not be disclosed to any other person than the

4  parties' counsel, their legal assistants, and experts as may be

5  necessary to review and evaluate the records; and no person

6  permitted to review the records pursuant to this stipulation and

7  order shall disclose the involved inmates' names' to any person or

8  use information gained therefrom for any purpose other than this

9  litigation without further order of this court.

10

11  Dated:  August 4, 1988.

12  DE WITT W. CLINTON, County Counsel    JOHN HAGAR

13      PAUL HOFFMAN
       ACLU Foundation of
         Southern California

14

15  By:_____    By:_____

16      FREDERICK R. BENNETT      JOHN HAGAR
       Assistant County Counsel    Attorneys for Plaintiffs
       Attorneys for Defendants

17

18

19                    ORDER

20

21  It is so ordered.

22  Dated:  August 15, 1988

23

24  _____
   United States District Judge

25

26

27

28

# EXHIBIT 9

1 of 1 DOCUMENT

DENNIS RUTHERFORD, et al., Plaintiffs, v. LEROY BACA, et al., Defendants.

Case No. CV 75-04111 DDP

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

2006 U.S. Dist. LEXIS 81431

October 26, 2006, Decided
October 27, 2006, Filed, Entered

PRIOR HISTORY: *Rutherford v. Block, 2005 U.S. Dist. LEXIS 40375 (C.D. Cal., Nov. 18, 2005)*

COUNSEL: [*1] For Dennis Rutherford, Plaintiff: David C Fathi, ACLU National Prison Project, Washington, DC, US.; Mark D Rosenbaum, Melinda R Bird, Peter J Eliasberg, Ranjana Natarajan, ACLU Foundation of Southern California, Los Angeles, CA.

For Sherman Block, Substituted for Peter J Pitchess, Defendant: Justin W Clark, Paul B Beach, Franscell Strickland Roberts & Lawrence, Glendale, CA.; Roger H Granbo, Jr, Los Angeles County Counsel, Los Angeles, CA.

For M Quintana, R Costa, E P Gipson, M Hernandez, J Lozada, L Mora, S A Thomas, Intervenors: Marion R Yagman, Stephen Yagman, Yagman Yagman & Reichmann, Venice, CA.

For Los Angeles Times Communications LLC, non-party press organization, Intervenor: Alonzo B Wickers, IV, Kelli L Sager, Susan E Seager, Davis Wright Tremaine, Los Angeles, CA.; Karlene Worthington Goller, Los Angeles Times Communications LLC, Los Angeles, CA.

JUDGES: DEAN D. PREGERSON, United States District Judge.

OPINION BY: DEAN D. PREGERSON

OPINION

ORDER TO SHOW CAUSE RE ISSUANCE OF PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

On October 19, 2006, the Court held a hearing on Plaintiff's Order to Show Cause for Temporary Restraining Order and Preliminary Injunction. The [*2] Court reviewed the declarations and briefs submitted by the parties. Additionally, the Court heard testimony from Mary Tiedeman, the Jails Coordinator for the ACLU Foundation of Southern California whose responsibilities include monitoring compliance with the orders relating to this case. The Court heard testimony from Capt. Timothy Cornell, who is responsible for the administration of the Inmate Reception Center ("IRC"). The Court heard testimony from Commander Alex Yim, who is a commander in the correctional services division of the Los Angeles County Sheriff's Department ("LASD").

The Court has toured the Men's Central Jail ("MCJ") on two occasions. During the first tour on May 10, 2006, there was clear evidence of overcrowding. The Court is aware that overcrowding, per se, may not be a constitutional violation. However, several examples of what the Court observed consisted of overcrowding to such a degree that a finding of a constitutional violation would be warranted. Specifically, the Court noted that cells originally designed for four inmates housed six inmates, and cells designed for two inmates held four inmates. The Court observed that the cells were of such a size that [*3] inmates were required essentially to be in their bunks at all times because there was not sufficient floor space for them to stand. The Court also noted that inmates are in these cells 24 hours a day, 7 days a week, unless they have medical visits, family visitation, or are taken to the roof for exercise. Exercise consists of about three hours per week, typically done in a single three hour session. The inmates are served all of their meals in these cells. Inmates may be assigned to these cells for many months. These

**EXHIBIT 9**

cells also contain a toilet/basin facility. Following this tour, the Court stated that what was observed was inconsistent with basic human values.

The Court went on a second tour on September 14, 2006. During the tour, significant progress had been made in addressing many of the issues that arose during the first tour. The six person cells were reduced to four persons, the four person cells were reduced to two persons, many of the areas in question had been cleaned and repainted and additional day room space, with televisions, was being developed.

The genesis of the present hearing is that, as a result of the lessening of the overcrowding issues at MCJ, more and more [*4] inmates were backed up into the facility that feeds the MCJ, the Inmate Reception Center ("IRC"). Capt. Cornell testified that, as a result of the population reduction at MCJ, the IRC's typical population was increased by about 500 inmates. The Court believes that this increase has strained the IRC's ability to function in a satisfactory manner.

The IRC handles inmate processing for the system across the state. The processing includes assigning security classifications and conducting medical screening. After inmates are processed through the IRC, they wait to be transported to a residential facility. A substantial percentage of the inmates awaiting transfer from the IRC are sent to MCJ.

If no housing is available at MCJ, inmates are held in cells at the IRC known as the Custody Line Holding Cells ("holding cells"). There are 30 holding cells. The holding cells contain metal benches affixed to a wall and a single toilet located behind a partition. The holding cells are approximately 15 1/2 x 12 feet, or approximately 186 feet. There is a memorandum at the IRC that states that no more than 20 inmates should be placed in a holding cell without approval from a supervisor. [1] The Tiedeman [*5] Declaration at P29 states that she observed as many as 35 inmates in a holding cell. Inmate declarations attest to holding cell counts of over 50 inmates. [2] It is unclear whether this memorandum constitutes a "policy" of the IRC. It is also unclear whether the IRC documents the instances in which more than 20 inmates are in a holding cell.

    1   If 20 inmates are in a holding cell of 186 feet, each inmate has a space of about 9 square feet. This equates to an area that is 3 ft. x 3 ft. If 30 inmates are in a holding cell, the area is reduced to an area of 3ft. x 2 ft.

    2       The Court regards the inmate

declarations skeptically because the declarants have not been subject to cross-examination. Nevertheless, there are numerous declarations attesting to holding cell populations of over 30 inmates.

The holding cells contain no bunks or mattresses. In some instances, inmates have been required to remain in the holding cells for as long as 10 hours, which can include the night time period. When this occurs, the inmates [*6] are required to attempt to sleep on the floor. The holding cells are cleaned by mechanical/steam cleaning machines. They are also swept and mopped by inmate-trustees. However, because of the recent population increase in the IRC, it is not always possible to regularly clean the cells by either method. There are two reasons for this problem. First, inmates are currently being kept in holding cells for more time than they were held there previously. Second, because the cells can only be cleaned when they are empty, there is frequently insufficient time to clean them when they are empty because there is a backlog of inmates awaiting placement in a holding cell. The Court also heard that it is the policy in the IRC to not place inmates in a holding cell if the toilet is broken. The declarations submitted by the ACLU indicate that inmates have complained that the toilets have been filthy.

The Court is aware that the Los Angeles County Jail is the largest jail in the country. Managing it is an immensely complicated enterprise because it houses approximately 19,500 inmates spread across eight custody facilities, numerous patrol stations and at least 40 courthouses. In addition to providing [*7] the necessities of food, shelter and clothing, the Los Angeles County Jail must address the serious medical and mental health issues of many of its inmates. Inmates are also required to be segregated from each other based upon security classifications. Furthermore, inmates are frequently transported between facilities and two various courthouses. Finally, the inmate population varies from day-to-day, and is subject to unpredictable increases. Because the jail facilities have not kept up with the exploding population of Southern California, the LASD has been required to enact a policy of releasing inmates well before the expiration of their sentences. [3] This is done because there is simply not enough space to keep inmates for the duration of their sentences.

    3   The MCJ houses inmates awaiting trial and inmates who have been sentenced.

The Los Angeles County Board of Supervisors

has recently allocated $ 258 million dollars to upgrade the jail system. The Court has been advised that this sum, though substantial, [*8] will be used to upgrade existing facilities, but is insufficient to construct additional facilities. Thus, it appears likely that strains on the system such as those currently occurring at the IRC will continue to be present in the future. What exists, therefore, is a fairly bleak prognosis with the effects of an overburdened system continuing to manifest themselves. These effects seem likely to result in additional civil rights lawsuits arising from overcrowding and greater reductions in the jail time that inmates are required to serve. [4]

> 4    Current civil rights lawsuits pending before this Court include: *Dennis Rutherford v. Leroy Baca,* Case No. CV 75-04111; *R.D. Mortimer v. Leroy Baca,* Case No. CV 00-13002; *S.A. Thomas v. Leroy Baca,* Case No. CV 04-08448; and *J. Avalos v. Leroy Baca,* Case No. CV 05-07602.

The Court has no desire to inject itself in the management of the jail. If the present circumstances are not corrected, the Court foresees itself as constantly being asked by litigants to [*9] formulate the minimum constitutional standards for incarceration. [5] Given the intricacies of the system this is wrong for two reasons. First, courts do not have the expertise or time to administer complex enterprises. Second, inmates, particularly pre-trial detainees who are imbued with presumption of innocence, deserve better than to be housed in a system which has defaulted to the lowest permissible standard of care.

> 5    E.g. how many inmates can be held in a 186 square foot cell; what is the maximum amount of time an inmate can be required to stand without a place to sit.

On the positive side, the Court has been advised that the termination of the state's contract with the Sheriff's department will result in approximately 1200 additional beds in the MCJ. The Court is hopeful that the availability of these additional beds will ameliorate some of the more pressing problems at the IRC and the MCJ. Additionally, the Court has been continually impressed by the dedication of the employees of the LASD who are daily [*10] faced with the daunting task of managing this overburdened system. It was clear from the hearing that Commander Kim and Capt. Cornell, and the many other individuals with whom the Court has encountered working for the LASD are creative, talented, and uniformly have a sincere desire to administer the jail system in the most humane and efficient manner possible. The systemic deficiencies of the present jail system, however, seem more and more to exceed the ability of management to work around these deficiencies.

Having noted the above, the Court believes that certain immediate steps should be taken by the Sheriff's department to address the issues raised by plaintiffs. Therefore, the Court issues the following order.

THE DEFENDANTS ARE ORDERED TO SHOW CAUSE at 11:00 a.m., on December 11, 2006, or as soon as possible thereafter as counsel may be heard in the courtroom of the Honorable Dean D. Pregerson, located at Courtroom 3, 312 Spring Street, Los Angeles, why the Defendants, their officers, agents and assigns and those in active concert or participation with them should not be restrained and enjoined from:

> 1. Holding an inmate in the IRC for more than 24 hours, unless any [*11] period in excess of 24 hours is because the inmate is being treated at the medical facilities within the IRC;
>
> 2. Holding more than 20 inmates in a holding cell without first exhausting every other means to avoid placing more than 20 inmates in a holding cell. In the event more than 20 inmate are placed in a holding cell, Defendants shall document the following:
>
>> (a) name of the officer approving the placement;
>>
>> (b) date;
>>
>> (c) type of placement;
>>
>> (d) time of release;
>>
>> (e) number of persons in the cell;
>>
>> (f) identification of the particular holding cell.
>>
>> Plaintiffs shall be provided with the documentation upon request;

3. Holding an inmate in a cell in the IRC which is not maintained in a clean and sanitary condition, including access to a functioning toilet, potable drinking water and clean water to wash;

4. Holding an inmate in the IRC without providing ongoing access to adequate medical care, including but not limited to regular pill call and sick call;

5. Housing six inmates in cells at Men's Central Jail that were used to house four inmates prior to August 28, 2006 without prior notice to the Court and Plaintiffs and written [*12] leave of the Court;

6. Housing four inmates in cells at Men's Central Jail that were used to house two inmates prior to September 13, 2006 without prior notice to the Court and Plaintiffs and written leave of the Court;

Defendant's opposition, if any, to this order shall be filed no later than November 20, 2006.

Pending a hearing on the above Order to Show Cause, the Defendants, their officers, agents, employees, attorneys and all those in active concert with them are hereby immediately restrained and enjoined from:

1. Holding an inmate in the IRC for more than 24 hours, unless any period in excess of 24 hours is because the inmate is being treated at the medical facilities within the IRC;

2. Holding more than 20 inmates in a holding cell without first exhausting every other means to avoid placing more than 20 inmates in a holding cell. In the event more than 20 inmate are placed in a holding cell, this event shall be documented as follows:

(a) name of the officer approving the placement;

(b) date;

(c) type of placement;

(d) time of release;

(e) number of persons in the cell;

(f) identification of the particular holding cell. [*13]

Plaintiffs shall be provided with the documentation upon request;

3. Holding an inmate in a cell in the IRC which is not maintained in a clean and sanitary condition, including access to a functioning toilet, potable drinking water and clean water to wash;

4. Holding an inmate in the IRC without providing ongoing access to adequate medical care, including but not limited to regular pill call and sick call;

5. Housing six inmates in cells at Men's Central Jail that were used to house four inmates prior to August 28, 2006 without prior notice to the Court and Plaintiffs and written leave of the Court;

6. Housing four inmates in cells at Men's Central Jail that were used to house two inmates prior to September 13, 2006 without prior notice to the Court and Plaintiffs and written leave of the Court.

The Court sets the above schedule because the Court acknowledges that the Defendants were required to respond to Plaintiff's Application on short notice. The schedule will permit the parties to have the benefit of the information contained in the documents described on page 7, paragraph number 2.

IT IS FURTHER ORDERED that, because Plaintiffs are indigent, they [*14] need not post any bond in connection with this temporary restraining order.

IT IS SO ORDERED.                                DEAN D. PREGERSON

Dated: October 26, 2006                          United States District Judge

# EXHIBIT 10

Priority  ✓
Send  ✓
Enter  ✓
Closed ·
JS-5/JS-6  NO
JS-2/JS-3 \_\_\_\_
Scan Only \_\_\_\_

FILED
CLERK, U.S DISTRICT COURT

JAN 25 2007

CENTRAL DISTRICT OF CALIFORNIA
BY      DEPUTY

ENTERED
CLERK, U S DISTRICT COURT

JAN 2 6 2007

CENTRAL DISTRICT OF CALIFORNIA
BY      DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DENNIS RUTHERFORD, et al.    )  Case No. CV 75-04111 DDP
                       )
         Plaintiffs,   )  **ORDER RE: PRELIMINARY INJUNCTION**
                       )  **ISSUED ON OCTOBER 27, 2006**
   v.                 )
                       )
LEROY BACA, et al.,      )
                       )
        Defendants.   )
                       )

This Order merely renews the preliminary injunction already in place.  On October 27, 2006, the Court issued an Order to Show Cause Re: Issuance of Preliminary Injunction and Temporary Restraining Order.  In its Order, the Court discussed the overcrowding problem at Men's Central Jail and the Inmate Reception Center and issued a preliminary injunction to alleviate some of the overcrowding while the Sheriff's Department considered alternative, permanent solutions.

Pursuant to the Prison Litigation Reform Act ("PLRA"), the preliminary injunction will automatically expire on January 26, 2007.[1]  After meeting with representatives from the Sheriff's Department and the ACLU on December 11, 2006 and again on January

---

[1] The PLRA mandates that preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court . . . makes the order final before the expiration of the 90-day period.  18 U.S.C. § 3626(a)(2).  However, if the preliminary relief is still warranted, a district court may enter a new injunction after the previous one expires.  Mayweathers v. Newland, 258 F.3d 930, 936 (9th Cir. 2001).

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

|21|

**EXHIBIT 10**

1  12, 2007, the Court has determined that the Sheriff's Department
2  has made significant progress in developing plans to alleviate jail
3  overcrowding.  While the parties continue to discuss these plans,
4  however, the Court finds that the injunction described in its
5  October 27 Order should remain in place.  Accordingly, the Court
6  hereby issues the following injunction consistent with the one
7  described in its October 27 Order.[2]

8       Defendants, their officers, agents, employees, attorneys and
9  all those in active concert with them are restrained and enjoined
10 from:

11     1.    Holding an inmate in the IRC for more than 24 hours,
12           unless any period in excess of 24 hours is because the
13           inmate is being treated at the medical facilities within
14           the IRC;

15     2.    Holding more than 20 inmates in a holding cell without
16           first exhausting every other means to avoid placing more
17           than 20 inmates in a holding cell.  In the event more
18           than 20 inmate are placed in a holding cell, this event
19           shall be documented as follows:

20           (a)   name of the officer approving the placement;
21           (b)   date;
22           (c)   type of placement;
23           (d)   time of release;
24           (e)   number of persons in the cell;

25  _____

26       [2]  On December 11, 2006, the Court issued an Order Continuing
     the Hearing to Show Cause, in which it ordered, *inter alia*, that
27   the ACLU be entitled to visit the Men's Central Jail and Inmate
     Reception without notice.  The Court also recommended that the ACLU
28   provide the Sheriff's Department with one hour notice before before
     visiting.  That order shall also remain in effect.

(f) identification of the particular holding cell.
Plaintiffs shall be provided with the documentation upon
request;

3. Holding an inmate in a cell in the IRC which is not
maintained in a clean and sanitary condition, including
access to a functioning toilet, potable drinking water
and clean water to wash;

4. Holding an inmate in the IRC without providing ongoing
access to adequate medical care, including but not
limited to regular pill call and sick call;

5. Housing six inmates in cells at Men's Central Jail that
were used to house four inmates prior to August 28, 2006
without prior notice to the Court and Plaintiffs and
written leave of the Court;

6. Housing four inmates in cells at Men's Central Jail that
were used to house two inmates prior to September 13,
2006 without prior notice to the Court and Plaintiffs and
written leave of the Court.

The Court expects that the parties will continue to provide it
with updates on the need for the injunction in future settlement
conferences.

IT IS SO ORDERED.

/-25-07

DEAN D. PREGERSON
United States District Judge

3

# EXHIBIT 11



Priority ✓
Send ✓
Enter ✓
Closed
JS-5/JS-6 ___NO
JS-2/JS-3 ___
Scan Only___

ENTERED
CLERK, U.S. DISTRICT COURT
APR 23 2007
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED.
CLERK, U.S. DISTRICT COURT
APR 20 2007
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DENNIS RUTHERFORD, et al.          )   Case No. CV 75-04111 DDP
                                   )
                Plaintiffs,        )   ORDER RE: PRELIMINARY INJUNCTION
                                   )   ISSUED ON JANUARY 25, 2007
        v.                         )
                                   )
LEROY BACA, et al.,                )
                                   )
                Defendants.        )
                                   )

        This Order merely renews the preliminary injunction already in
place.  On October 27, 2006, the Court issued an Order to Show
Cause Re: Issuance of Preliminary Injunction and Temporary
Restraining Order.  In its Order, the Court discussed the
overcrowding problem at Men's Central Jail and the Inmate Reception
Center and issued a preliminary injunction to alleviate some of the
overcrowding while the Sheriff's Department considered alternative,
permanent solutions.

        Pursuant to the Prison Litigation Reform Act ("PLRA"), the
preliminary injunction will automatically expire on April 25,
2007.[1]   After meeting with representatives from the Sheriff's

_____

[1] The PLRA mandates that preliminary injunctive relief shall
automatically expire on the date that is 90 days after its entry,
unless the court . . . makes the order final before the expiration
of the 90-day period.  18 U.S.C. § 3626(a)(2).  However, if the
preliminary relief is still warranted, a district court may enter a
new injunction after the previous one expires.  Mayweathers v.
Newland, 258 F.3d 930, 936 (9th Cir. 2001).
        The Court has already extended the injunction once:  on
January 25, 2007.  Thus, another 90-day term is about to expire.

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

128

**EXHIBIT 11**

1  Department and the ACLU several times over the past few months, the

2  Court has determined that progress has been made in developing

3  plans to alleviate jail overcrowding.  While the parties continue

4  to discuss these plans, however, the Court finds that the

5  injunction described in its October 27 (and January 25) Order

6  should remain in place.  Accordingly, the Court hereby issues the

7  following injunction consistent with the one described in its

8  previous orders.[2]

9       Defendants, their officers, agents, employees, attorneys and

10 all those in active concert with them are restrained and enjoined

11 from:

12      1.   Holding an inmate in the IRC for more than 24 hours,

13           unless any period in excess of 24 hours is because the

14           inmate is being treated at the medical facilities within

15           the IRC;

16      2.   Holding more than 20 inmates in a holding cell without

17           first exhausting every other means to avoid placing more

18           than 20 inmates in a holding cell.  In the event more

19           than 20 inmate are placed in a holding cell, this event

20           shall be documented as follows:

21           (a)  name of the officer approving the placement;

22           (b)  date;

23           (c)  type of placement;

24           (d)  time of release;

25  _____

26      [2] On December 11, 2006, the Court issued an Order Continuing
    the Hearing to Show Cause, in which it ordered, *inter alia*, that
27  the ACLU be entitled to visit the Men's Central Jail and Inmate
    Reception without notice.  The Court also recommended that the ACLU
28  provide the Sheriff's Department with one hour notice before before
    visiting.  That order shall also remain in effect.

1        (e)   number of persons in the cell;

2        (f)   identification of the particular holding cell.

3    Plaintiffs shall be provided with the documentation upon

4    request;

5   3.   Holding an inmate in a cell in the IRC which is not

6    maintained in a clean and sanitary condition, including

7    access to a functioning toilet, potable drinking water

8    and clean water to wash;

9   4.   Holding an inmate in the IRC without providing ongoing

10    access to adequate medical care, including but not

11    limited to regular pill call and sick call;

12   5.   Housing six inmates in cells at Men's Central Jail that

13    were used to house four inmates prior to August 28, 2006

14    without prior notice to the Court and Plaintiffs and

15    written leave of the Court;

16   6.   Housing four inmates in cells at Men's Central Jail that

17    were used to house two inmates prior to September 13,

18    2006 without prior notice to the Court and Plaintiffs and

19    written leave of the Court.

20   The Court expects that the parties will continue to provide it

21 with updates on the need for the injunction in future settlement

22 conferences.

23

24 IT IS SO ORDERED.

25   4-20-07

26                 DEAN D. PREGERSON

27                 United States District Judge

28

3

# EXHIBIT 12

1

2

3    O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  DENNIS RUTHERFORD,              )   Case No. CV 75-04111 DDP
                                    )
12                  Plaintiff,      )   **ORDER GRANTING MOTION TO REOPEN**
                                    )   **DISCOVERY**
13        v.                        )
                                    )   [Motion filed on June 15, 2009]
14  LEROY BACA,                     )
                                    )
15                  Defendant.      )
                                    )
16  _____)

17       This matter comes before the Court on Plaintiffs' Motion to

18  Reopen Discovery in this case.  After reviewing the materials

19  submitted by the parties and considering the arguments therein, the

20  Court grants the Motion.  This Order does not consider whether

21  Plaintiffs are entitled to particular documents or information,

22  which may not be discoverable for various reasons.

23  I.    **BACKGROUND**

24       This case was filed in December 1975 as a class action on

25  behalf of sentenced and unsentenced inmates of the Los Angeles

26  County Jails.  It sought declaratory judgment and permanent

27  injunctive relief for constitutional violations relating to jail

28  conditions.  The Court issued its Memorandum of Decision in July

**EXHIBIT 12**

1  1978.  Rutherford v. Pitchess, 457 F. Supp. 104 (C.D. Cal. 1978).

2  On February 15, 1979, the Court entered judgment in this case.  The

3  Judgment ordered a permanent injunction with respect to (1) beds,

4  (2) visitation, (3) outdoor recreation, (4) indoor recreation, (5)

5  the restoration of windows, (6) processing for court, (7)

6  telephones, (8) cell searches, (9) the time for meals, (10) changes

7  of clothing, (11) provisions for enforcing the order, and (12)

8  emergencies.  The Ninth Circuit reversed the judgment with respect

9  to the restoration of windows, see Rutherford v. Pitchess, 710 F.2d

10  572 (9th Cir. 1983), and the Supreme Court reversed the aspects of

11  the judgment that concerned contact visits and cell searches, see

12  Block v. Rutherford, 468 U.S. 576 (1984).

13      The parties subsequently entered into a working relationship

14  to enforce the permanent injunction.  This working relationship

15  yielded Court-approved Memoranda of Understanding and Stipulated

16  Orders to address issues arising from the enforcement of the

17  permanent injunction.

18      In 1989, the parties entered into and the Court signed as an

19  order a Joint Stipulation and Order.  That Order explained that, in

20  measuring compliance "with the Court's orders in this case . . . ,

21  the counsel for parties have found it useful to regularly conduct

22  joint and separate interviews with inmates throughout the jail

23  system, and to permit discussions between counsel for the plaintiff

24  and Sheriff's staff, frequently without counsel for the Sheriff

25  being present."  Stipulation and Order at 1 (June 21, 1989).  The

26  parties stipulated that "none of the statements made during inmate

27  interviews or in discussions with the  Sheriff's staff will be used

28  or made available for use in other litigation."  Id. at 2.

2

1     In 1992, the Court signed as an Order a Joint Status Report
2  submitted by the parties.  Joint Status Report and Proposed Order
3  at 6 (August 27, 1992).  It outlined "the basic framework for
4  existing court orders and modifications."  In particular, it
5  described orders and conditions concerning (1) beds, (2) visitation
6  by children of prisoners, (3) outdoor recreation, (4) indoor
7  recreation, (5) telephones, (6) time for meals, (7) changes of
8  clothing, (8) jail population management, (9) the health care
9  system,[1] (10) administrative remedies, and (11) emergencies.  More
10  recently, the Court ruled on issues related to holding inmates in
11  the Inmate Reception Center and providing inmates with appropriate
12  bedding and bunks.  Those recent orders require that adequate
13  access to medical care be provided to IRC-housed inmates.

14     Plaintiffs now move to reopen discovery in Rutherford.
15  Plaintiffs raise as specific concerns supporting their motion the
16  situation of individuals with mental illness in the jail, as well
17  as related issues regarding medical care, access to showers, and
18  unsanitary conditions.  Plaintiffs seek access to reports and
19  policies, though they do not ask the Court to decide whether they
20  are entitled to specific documents or resolve specific disputes at
21  this time.  Defendants argue that the requested order reopening

22

---

23     [1]The 1992 Joint Status Report and Order includes a requirement
that the Sheriff "shall work towards obtaining State licensure of
24  all jail health facilities and providing constitutionally adequate
health care to all inmates in his custody."  Joint Status Report
25  and Order at 10.  This Joint Status Report was signed as an Order
in this case that established the current status of all agreements
26  and orders in this case.
     Moreover, in addition to the issues actually ruled on in the
27  permanent injunction, the Amended Complaint, filed December 31,
1975, includes allegations regarding health conditions, medical and
28  health care, and care for mentally ill inmates.  See Am. Compl.
¶¶ 27-28, 31.

3

1  discovery is too broad, that Plaintiffs have not met the standard
2  for re-opening discovery, and that they fear defendants will abuse
3  discovery.

4  II.  DISCUSSION

5       Courts have inherent power to enforce their judgments,
6  including by granting post-judgment discovery to determine
7  compliance with judgments and orders.  Cal. Dep't of Soc. Servs. v.
8  Leavitt, 533 F.3d 1025, 1033 (9th Cir. 2008).  Where Plaintiffs
9  seek a post-judgment order permitting discovery, "the kind and
10 amount of evidence of noncompliance required to justify discovery
11 is, necessarily, considerably less than that needed to show actual
12 noncompliance.  If significant questions of noncompliance have been
13 raised, appropriate discovery should be granted."  Id. at 1034.
14 Such a motion is analogous to a Rule 56(f) request, see id., and
15 requires "[v]ery little proof of noncompliance," see Rutter Group
16 Practice Guide: Federal Civil Trials and Evidence ¶ 20:438.3.
17 Where parties seek to terminate or modify a consent decree or
18 injunction, for example, post-judgment discovery or hearings may be
19 warranted.  Cf. Sharp v. Weston, 233 F.3d 1166, 1169 (9th Cir.
20 2000).

21      While the Court makes no comment as to whether the particular
22 documents Plaintiffs mention in their motion are discoverable, the
23 Court finds that Plaintiffs have provided sufficient information to
24 raise "significant questions" regarding the orders in this case and
25 to justify reopening discovery.  As the basis for their request,
26 Plaintiffs argue that discovery is justified in order to determine
27 whether the Rutherford injunction should be modified and in order
28 to effectively continue with their monitoring duties.  They submit

4

1  the declaration of Mary Tiedeman, the Jails Project Coordinator for

2  the ACLU, who testifies about the mental health issues she has

3  observed in the jails, Tiedeman Decl. ¶¶ 4-5, and opines as to

4  information she feels she needs to effectively perform her

5  monitoring role, e.g., id. ¶¶ 8-9.  Additionally, Plaintiffs submit

6  the Report of Terry Kupers on Mental Health Issues as Los Angeles

7  County Jail, see Winter Decl., Ex. 1, which opines on Kupers'

8  observations of the conditions in the jails and their impact on

9  mental health issues.

10       Defendants argue that Plaintiffs have failed to make a

11  sufficient showing of non-compliance with the judgment to warrant a

12  reopening of discovery.  They frame further discussions by the

13  Sheriff regarding issues beyond the judgment as purely voluntary

14  and therefore not the subject of any motion reopening discovery.

15  This argument is unavailing.  While mental health issues are not

16  expressly listed in the 1979 Judgment, the subsequent (largely

17  sitpulated) orders in this case have modified the obligations of

18  the parties and, as noted above, they contemplate and incorporate

19  both medical care and mental health issues.  Those additional

20  issues - which are within the scope of the 1975 Amended Complaint -

21  have therefore become more than voluntary "extras."  The Court has

22  yet to interpret those obligations in great detail, and does not do

23  so here.  Against that backdrop, however, the Court is satisfied

24  that Plaintiffs have provided a basis for the discovery of

25  documents: they have provided evidence regarding medical care and

26

27

28

1  conditions that may plausibly fall below the Constitutional

2  minimum.[2]

3      Defendants express two additional concerns.  First, they argue

4  that the relief Plaintiff requests - an order reopening discovery

5  without any particular focus - is too broad and authorizes a

6  fishing expedition.  In reopening discovery, the Court limits that

7  discovery, at this stage, to the issues identified in Plaintiffs'

8  motion - specifically, issues regarding medical care and mental

9  health - but the Court notes that the allegedly systemic nature of

10  these issues may make discovery inherently broad.[3]  The Court urges

11  and expects the parties to work cooperatively to arrive on a

12  satisfactory discovery framework.  Second, Defendants express a

13  fear that the ACLU will improperly use information obtained in

14  discovery for other litigation.  The Court notes that such a

15  concern is more appropriately dealt with through procedural

16  barriers such as protective orders.[4]  Additionally, the Court

17  reiterates that this Order does not establish Plaintiffs'

18

19      [2]To the extent some of Plaintiffs' evidence regarding the
   reopening of discovery comes from situations where the Sheriff has
20  allowed Plaintiffs *more* access than the injunction and orders
   require, the Court notes that this evidence is not improperly
21  submitted.  The Court will not allow Plaintiffs to enforce LASD
   courtesies that have not become part of an order; however,
22  Defendants have pointed to no order that bars the ACLU from using
   the information gained through those courtesies in support of
23  efforts to enforce orders and obligations in *this* case.  That said,
   the Court is not convinced that Plaintiffs' monitoring duties, in
24  and of themselves, entitle them to certain documents simply because
   such documents would be helpful.

25      [3]The Kupers Report suggests, for example, that a number of
   issues, taken together, make the confinement of mentally ill
26  prisoners particularly problematic.

27      [4]The Court will not assume that Plaintiffs or their counsel
   will violate any such orders.  Defendants' second argument
28  therefore carries little weight.

6

1  *entitlement* to any specific document.  To the extent the Sheriff

2  claims such documents are privileged, the discovery procedures are

3  more than equipped to aid the parties and the Court in

4  appropriately designating, adjudicating, and protecting such

5  privileges.

6  **III.  CONCLUSION**

7      For the foregoing reasons, the Court grants the Motion to Re-

8  Open Discovery.  As mentioned above, the Court's Order does not

9  resolve whether specific documents are discoverable or specific

10  document disputes.

11  IT IS SO ORDERED.

12

13

14  Dated: August 4, 2009

15                                  DEAN D. PREGERSON

                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28