MARK D. ROSENBAUM, SBN 59940
mrosenbaum@aclu-sc.org
PETER ELIASBERG, SBN 189110
peliasberg@aclu-sc.org
JESSICA G. PRICE
jprice@aclu-sc.org
ACLU Foundation of Southern California
1313 W. 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARGARET WINTER*
mwinter@npp-aclu.org
ERIC G. BALABAN*
ebalaban@npp-aclu.org
National Prison Project of the ACLU
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
*Not admitted in D.C.; practice limited to federal courts

Attorneys for Plaintiffs
(continued on next page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS RUTHERFORD, et al, | Case No. Civ. 75-04111-DDP |
| Plaintiffs, | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PROTECTIVE ORDER** |
| v. | |
| LEROY BACA, et al., | |
| Defendants. | |

MELINDA BIRD, SBN 102236
melinda.bird@disabilityrightsca.org
Disability Rights California
3580 Wilshire Blvd., Suite 902
Los Angeles, California 90010
Telephone: (213) 355-3605
Facsimile: (213) 427-8767

Bingham McCutchen LLP
STEPHEN D. ALEXANDER (SBN 141099)
stephen.alexander@bingham.com
JENNIFER B. MIKOLEVINE (SBN 236745)
jennifer.mikolevine@bingham.com
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071-1560
Telephone: (213) 680-6400
Facsimile: (213) 680-6499

Bingham McCutchen LLP
STACY W. HARRISON, SBN 175028
stacy.harrison@bingham.com
1620 26th Street
4th Floor, Main Tower
Santa Monica, California 90404
Telephone: (310) 907-1000
Facsimile: (310) 907-2000

# PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PROTECTIVE ORDER

## I. INTRODUCTION

Under the All Writs Act and the Court's inherent authority, Plaintiffs are entitled to a protective order if they demonstrate that class members reasonably fear retaliation, and that such retaliation threatens to undermine this litigation by intimidating witnesses and otherwise interfering with the collection and presentation of evidence. The extensive documentation that Plaintiffs submitted with their motion, in the form of thirteen declarations, easily satisfies that standard.

In their Opposition, Defendants contend that Plaintiffs must meet the requirements that would apply to a preliminary injunction.[1] However, that standard simply does not apply to a motion under the All Writs Act and the Court's inherent authority. Nor do provisions of the Prison Litigation Reform Act ("PLRA") that govern traditional injunctions alter the standards applicable here.

## II. ARGUMENT

### A. The Requested Protective Order Is Governed By Standards Applicable to the All Writs Act and the Court's Inherent Powers.

The All Writs Act permits "all writs necessary or appropriate in aid of [the federal courts'] respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651, and the requested protective order would constitute such a writ because it would aid the Court's jurisdiction by protecting witness testimony and factual investigation from interference. *See Harris v. Nelson*, 394 U.S. 286, 299 (1969) ("[T]he courts may rely upon [The All Writs Act] in issuing orders appropriate to assist them in conducting factual inquiries."); *Adams v. United States*, 317 U.S. 269, 273 (1942) ("[A] federal court may avail itself of all

---

[1] *See* Defendants' Opposition to Plaintiffs' Motion ("Def. Op.") at 2-6.

auxiliary writs as aids in the performance of its duties"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (courts' inherent powers reflect "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

Because the Court's authority to issue the requested relief is based on the All Writs Act, the standard for the issuance of a preliminary injunction under Federal Rule of Civil Procedure 65 does not apply. A court may issue orders "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it," *Adams,* 317 U.S. at 273, and "the requirements for a traditional injunction do not apply to injunctions under the All Writs Act because the historical scope of a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) (vacating injunctions against arbitration under the All Writs Act because, among other reasons, allowing arbitration to proceed would not undermine the district court's jurisdiction over any matter before it). *See also In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) ("While the issuance of the injunction here did not comply with the requirements that Fed. R. Civ. P. 65 prescribes for the issuance of preliminary injunctions, this is not a fatal defect. Injunctions issued under the authority of the All-Writs Act stem from very different concerns than those motivating preliminary injunctions governed by Fed. R. Civ. P. 65."); *Stratton v. Glacier Ins. Admin'rs, Inc.*, No. 1:02-CV-06213, 2007 WL 274423, at *16 (E.D. Cal. Jan. 29, 2007) ("Injunctions under the ;8449;8449All ;8450;8450Writs Act are not subject to the ;8457;8457standards for preliminary ;8460;8460injunction under Fed. R. Civ. P. 65").

Defendants contend that *Ben David v. Travisono*, 495 F.2d 562 (1st Cir. 1974), supports their position that the All Writs Act does not confer authority on the Court to enter the requested order. Def. Op. at 5. In fact, the *Ben David* Court explicitly rejected the argument Defendants make here and approved the very

same kind of protective order Plaintiffs seek, based on the same kind of evidentiary showing. In *Ben David*, the court contrasted the standard for a traditional injunction – a showing that retaliation is "objectively probable" – with the more liberal standard for a protective order under the All Writs Act. <u>See</u> 495 F.2d at 564. The court explained as follows:

> [T]he [district] court took the position that where the purpose of an injunctive order of this sort was to reassure fearful witnesses and thereby to assist the court's fact-finding, the actual likelihood of the enjoined conduct was secondary. Such a theory, if correct, as in these unique circumstances we believe it was, does not exempt the court from the requirement that it make relevant findings; it merely alters the character of such findings. *The findings necessary to support such a protective order are simply that the plaintiffs reasonably fear retaliation and that the court's fact-finding may be materially impaired unless there is provided the tangible protection of a suitable court order.* Normally, perhaps, in order to show that retaliation is reasonably feared it might be necessary to show that it was objectively probable; however, in a prisoner setting, given the charges and counter charges revealed here, a court might well conclude that an inmate would be fearful of retaliation even without an entirely objective basis: rumor, suspicion, and the dependency of the inmate might parlay even a low objective probability of misconduct into a substantial subjective fear.

*Id.* (emphasis added) (citation omitted). Plaintiffs have met the standard by documenting class members' reasonable fear of retaliation.[2]

Defendants correctly point out that the All Writs Act "is not available to provide alternatives to other adequate remedies available at law," Def. Op. at 3 (citing *Carlisle v. United States*, 517 U.S. 416, 429 (1996); *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999)) – but here there is no other adequate remedy at law, and Defendants do not point to any. A legal remedy, such as an individual claim for damages by a prisoner who has suffered retaliation, might vindicate that prisoner's individual interest, but would not adequately protect the interests at stake here – preserving the integrity of the judicial system and the Court's ability in *Rutherford* to hear the evidence from witnesses who, without a protective order, will fear coming forward.

---

[2] *See* Memorandum of Points and Authorities in Support of Motion for Protective Order ("Pl. Mem.") at 5-10.

1 Defendants also assert that the All Writs Act cannot augment jurisdiction, Def. Op. at 3 (citing *Matter of Wick*, 40 F.3d 367, 372-73 (Fed. Cir. 1994); but no such augmentation is necessary here because this Court indisputably has jurisdiction over *Rutherford*. And while Defendants assert that the requested relief falls into none of the categories of inherent powers listed by the Ninth Circuit, *see* Def. Op. at 6, the very case they cite states that courts have inherent authority to "control … proceedings pending before the court." *Wharton v. Calderon*, 127 F.3d 1201, 1207 (9th Cir. 1997).

The Prison Litigation Reform Act ("PLRA") does not alter the standard applicable to the requested protective order. The PLRA is concerned with prospective relief in a "civil action with respect to prison conditions." *See* 18 U.S.C. § 3626(a)(1). Here, the requested relief is not directed at providing relief to prisoners, but at protecting the Court's ability to manage the case and ensure the orderly presentation of evidence without intimidation of witnesses. In interpreting the PLRA, the courts may "not lightly assume that Congress meant to restrict the equitable powers of the federal courts." *Miller v. French*, 530 U.S. 327, 336 (2000); *see also Chambers*, 501 U.S. at 47. Courts continue to have undiminished authority to enter case management orders in prison cases, and these orders do not constitute "prospective relief" – *i.e.*, preliminary or permanent injunctions – merely because they arise in the context of a civil action challenging prison conditions. *See, e.g.*, Protective Order, *Johnson v. Johnson*, No. 7:02-CV-087R (N.D. Tex. Jan 23, 2002) (attached hereto as Exhibit [A]) (granting anti-retaliation order in prison rape case without consideration of PLRA requirements); *In re Arizona*, 528 F.3d 652, 658 (9th Cir. 2008) (district court's order that prison defendants submit to the court a detailed factual report on the case did not constitute prospective relief under the PLRA because "the district court appears to have issued the order in connection with the district court's customary pretrial management prerogatives."); *Gomez v. Vernon*, 255 F.3d 1118, 1133-34 (9th Cir.

4

2001) (affirming, without any mention of PLRA standards, sanctions imposed by district court on opposing attorneys who secretly read class counsel's correspondence with prisoner class members).[3]

### B. The Investigations Cited by Defendants Do Not Diminish the Need for a Protective Order.

None of the assertions made in Defendants' brief or in Chief Burns' declaration addresses the fears expressed by prisoners in the declarations submitted by Plaintiffs or diminishes the need for a protective order. Defendants assert that the retaliation complaints by five of the declarants have been investigated and found to be insubstantial or fraudulent, and that the others "the Department will conduct a thorough investigation." Burns Decl. ¶ 11. But they do not provide the slightest factual support for their claims. *See* Declaration of Chief Dennis Burns ("Burns Decl.") ¶¶ 10-11. Defendants point to oversight by the Police Assessment Resource Center, Office of Independent Review ("OIR"), and Ombudsman, *Id.* ¶¶ 8-9, but do not claim that any of these bodies investigated any of the incidents discussed in the declarations.[4] Indeed, the only investigation

---

[3] *See also Hadix v. Caruso*, No. 4:92-CV-110, 2006 WL 2830062, at *1 (W.D. Mich. Oct. 2, 2006) (stating that, the PLRA notwithstanding, "the presentation of testimony must still abide by the ordinary rules of case management and discovery in order to ensure that competing parties have fair access to information …"); *Carruthers v. Jenne*, 209 F. Supp. 2d 1294, 1300 (S.D. Fla. 2002) ("[C]ourts have treated the means of obtaining relief differently than the relief itself. Clearly monitoring is not an 'ultimate remedy' and only aids the prisoners in obtaining relief."); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1383 (N.D. Ga. 1997) (PLRA requirements do not apply to class certification order because "Section 3626(a)(1) addresses only the type of relief courts may use to redress constitutional violations, and says nothing about the nature of the proceedings underlying the remedy …"); *Williams v. Edwards*, 87 F.3d 126, 133 (5th Cir. 1996) (district court order that extended jurisdiction over prisons that had previously been released from the litigation did not constitute prospective relief under the PLRA because the order merely "brought the nine previously released institutions back within the court's continuing jurisdiction so that it may examine whether prospective relief is necessary to avoid constitutional violations from occurring in those institutions.").

[4] OIR has also documented major lapses in the Los Angeles County Sheriff's Department's protection of prisoners. In a recent report, OIR found that deputies faked records regarding row checks, contributing to at least one suicide. OIR reported "a disappointing lapse in integrity on the part of the involved deputies. Their actions were overt and premeditated and demonstrated wholesale failure on the deputies' part to recognize one of the most important responsibilities of a

for which Defendants provide any specific information involves a prisoner (Matthew Schubert) who did not submit a declaration in support of this motion. *Id.* ¶ 18.[5]

Defendants' conclusory assertion that they have resolved the investigations for five of the prisoners who submitted declaration to their own satisfaction fails for three reasons. First, it does not provide the Court any specific information to rebut the serious allegations contained in the declarations submitted by Plaintiffs.[6] For example, Chief Burns does not identify the specific officer(s) who conducted the investigation, how the investigation was conducted, whether the prisoners who complained about retaliation were interviewed, what prisoner witnesses, if any were interviewed, and how the conclusion was reached that the complaints were unfounded. Second, even if Chief Burns' conclusory statements about the results of the investigations were probative of anything, they are not admissible because

---

custody deputy, namely to diligently watch over and provide safety and security for the inmates under his or her supervision." Office of Independent Review, "Deputy Vigilance in the Jails" at 6, July 19, 2010, *available at* www.laoir.com/reports/Deputy%20Vigilance%20in%20Jails.PDF.

[5] While Defendants argue that California law prevents them from disclosing information about investigations of other incidents described in the declarations, Defendants fail to explain why such laws allow disclosures regarding the Schubert investigation, but not other investigations. *See* Burns Decl. ¶¶ 18-20 (citing Cal. Penal Code §§ 832.5 *et seq.* & Cal. Evid. Code § 1040 *et seq.*). In any case, the cited provisions are state evidentiary privileges that do not apply in federal court proceedings based on federal question jurisdiction. *Ochotorena v. Adams*, No. 1:05-cv-01524-LJO-DLB, 2010 WL 1035774, at *8 n.3 (E.D. Cal. Mar. 19, 2010) ("Defendant's citation to California Penal Code section 832.7 is unavailing. The law of the forum state does not inform federal privilege law."). Defendants also gesture at the Peace Officer Bill of Rights, Cal. Govt. Code §§ 3300-3312, but do not cite any specific provisions that would be violated by disclosing information about an investigation. *See* Burns Decl. ¶ 15.

[6] Even if Plaintiffs were required to meet the evidentiary standard for a preliminary injunction, Chief Burns' declaration would be insufficient to rebut the showing of a substantial pattern of retaliation demonstrated by the declarations Plaintiffs submitted. By way of example, if Plaintiffs were to bring a Fourth Amendment case alleging a pattern of arrests and searches without probable cause, and supported their claim with dozens of declarations, it would not be sufficient for the Chief of Police to rebut this showing with a declaration stating that Internal Affairs had investigated the claims in all the declarations and none of them was true.

they are based on entirely on hearsay. Chief Burns' statement that the allegations have been determined to be without merit is based on out-of-court statements either conveyed to him by LASD investigators, or set forth in a non-public investigative report, offered to prove the truth of the matter asserted. Such statements are hearsay not subject to any exception. (FRE802, 803, 804). *See* Plaintiffs' Evidentiary Objections, filed along with this reply brief. If Chief Burns' statement about the results of the investigation are based on investigative reports, those reports are not a public record pursuant to Fed. R. Evid. 803(c)(8) and are therefore not admissible.[7] *See* Plaintiffs' Evidentiary Objections, filed along with this reply brief.Third, Chief Burns' summary of the results of the five investigations does nothing to alter the prisoners' reasonable fear of retaliation, which are palpable in the numerous prisoner declarations submitted with the motion, and which threaten to compromise the proceedings before this Court by preventing class members from communicating relevant information to counsel.

### C.  Defendants' Arguments About the Effects of the Proposed Order Do Not Withstand Scrutiny.

Defendants assert that the requested relief would interfere with prisoner searches and discipline, would "basically amount to the ACLU and the Court running … the operation of the jail system," and would result in "additional unforeseen consequences." Def. Op. at 17-18, 20. In fact, the only searches and disciplinary actions the order would forbid are those intended to retaliate against prisoners for communicating with the ACLU or to punish them for doing so. Defendants do not explain how forbidding retaliation or requiring them to post

---

[7] Even if the various investigative reports were public records subject to the FRE 803(8) hearsay exception, Defendants do not offer evidence of factors that may be of assistance in passing upon the admissibility of investigative reports, including the timeliness of the investigation, the special skills of the officer conducting the investigation, whether a hearing was held, and possible motivation problems. Fed. R. Evid. 803 advisory committee's notes.

1 their official anti-retaliation policy in housing areas and common areas could
2 possibly interfere with the proper functioning of the Jail.

3   Defendants' remaining objections, which focus on a few particular
4 provisions, either lack support or can be addressed through minor changes to the
5 proposed order. First, in response to a provision that would require Defendants to
6 track and disclose retaliation complaints to the ACLU, Defendants cite California
7 Penal Code §§ 832.5 *et seq.*, Def. Op. at 18; Burns Decl. ¶ 14, but, as stated above,
8 these state privileges do not apply in this case. *See supra* n. 5. Second,
9 Defendants assert that the Facilities Automated Statistical Tracking system
10 ("FAST") "was not designed and cannot properly track information about deputy
11 misconduct." Def. Op. at 18. Plaintiffs, however, are open to any method that
12 accurately tracks retaliation complaints and investigations and provides the
13 complaints and investigative materials to the ACLU. Finally, in response to the
14 paragraph that would grant prisoners who are retaliated against with physical
15 abuse the opportunity to have a medical exam, Defendants assert that prisoners
16 could jump the queue for medical care by claiming retaliation. The provision of
17 the proposed order is critical to ensure that physical retaliation is documented and
18 treated, but to the extent Defendants are concerned that other urgent medical needs
19 could go untreated, Plaintiffs would not object to an "exigent circumstances"
20 exception to this provision of the proposed order.

22 //
23 //
24 //

## III. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant an appropriate protective order that forbids retaliation by Defendants.

November 22, 2010　　　　　　　　Respectfully Submitted,

ACLU Foundation of Southern California

ACLU National Prison Project

Disability Rights California

Bingham McCutcheon, LLP

By: s/ Peter Eliasberg

Peter Eliasberg
ACLU Foundation of Southern California

Attorney for Plaintiffs

9