1  PAUL B. BEACH, State Bar No. 166265
   pbeach@lbaclaw.com
2  JUSTIN W. CLARK, State Bar No. 235477
   jclark@lbaclaw.com
3  LAWRENCE BEACH ALLEN & CHOI, PC
   100 West Broadway, Suite 1200
4  Glendale, California  91210-1219
   Telephone No. (818) 545-1925
5  Facsimile No. (818) 545-1937

6  Attorneys for Defendants

7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  DENNIS RUTHERFORD, et al.,            ) Case No. CV 75-04111 DDP
                                          )
12                                        ) Honorable Dean D. Pregerson
               Plaintiffs,                )
13                                        ) **JOINT REPORT PURSUANT TO**
                                          ) **THE COURT'S INSTRUCTION TO**
14       vs.                              ) **THE PARTIES AT THE MARCH**
                                          ) **24, 2011 HEARING RE**
15                                        ) **PLAINTIFFS' MOTION FOR**
    SHERMAN BLOCK, et al.,                ) **PROTECTIVE ORDER**
16                                        )
                                          )
17             Defendants.                ) Date:  April 22, 2011
                                          ) Time:  10:00 a.m.
18  _____) Crtrm: 3

19

20

21       TO THE COURT, ALL INTERESTED PARTIES AND THEIR

22  ATTORNEYS OF RECORD:

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## I. Introduction.

Pursuant to the instruction of the Court at the March 24, 2011 hearing on Plaintiffs' Motion for a Protective Order, on March 28, 2011, the Sheriff's Department and its counsel met with attorneys from the ACLU to meet and confer in an attempt to resolve issues raised by the subject Motion. The parties hereby submit this Joint Report to reflect the areas of agreement reached and disagreement remaining.[1] The parties have also communicated by e-mail and letter about other issues addressed at the March 24 hearing, including a schedule of dates for Plaintiff's "Motion to Compel Compliance."

## II. Discussions Regarding Updated Sheriff's Department Policies And Procedures.

### A. Defendants' Statement.

#### i. Updated Custody Policies

The Sheriff's Department will update its existing Custody Division Manual to clearly reflect that it is the policy of the Sheriff's Department that all persons, including inmates, are to be treated with respect and basic human dignity. The Department's policies will state that one of its goals is to provide inmates with an open ability to complain about issues of their confinement within the Los Angeles County Jail System. As such, employees may not willfully restrict access to, delay access to, or not accept, any formal inmate complaint. Similarly, employees shall not retaliate or attempt to retaliate (i.e., punish or deny privileges) against any inmate, or any person, who complains of any issue of confinement, on behalf of themselves, or any other person. When an inmate complaint is filed, custody staff shall refrain from asking the inmate what, why,

---

[1] Of course, Defendants have denied and continue to deny that there has been any retaliation against any inmates or that the Sheriff's Department condones retaliation. Without waiving its position, however, to assist the Court, the Department is willing to agree to the terms set forth herein.

RUTHERFORD\ Joint Repot re Retaliation Policy

1  or who they are complaining about, unless assigned to investigate and/or resolve
2  the matter.  Additionally, no inmate shall be discouraged, dissuaded, or threatened
3  if they contact resources (including, without limitation, a legal representative, the
4  American Civil Liberties Union, or other inmate advocacy organization) for
5  assistance with their complaint, and shall refrain from asking the inmate about
6  their communications or disseminating to others without legitimate need that the
7  inmate has contacted a resource for assistance.

8       The Sheriff's Department policy will reflect that inmates may not be denied
9  privileges, access to programs or services, or disciplined in retaliation for
10 speaking with a legal representative, the American Civil Liberties Union, or other
11 inmate advocacy organization.  Further, the Sheriff's Department's policy will be
12 revised to indicate that personnel are prohibited from discouraging inmates from
13 voicing complaints or concerns about anything associated with their incarceration
14 in Los Angeles County jail.  The Sheriff's Department will further agree that the
15 revised policies will be strictly enforced and in response to retaliation complaints,
16 as always, a thorough investigation will be conducted.  Nothing in the
17 Department's updated policies will excuse the obligation of inmates to comply
18 with jail rules, regulations, and the orders of Department members, nor lessen the
19 ability of Department members to investigate and, if necessary, impose discipline
20 upon inmates for said violations.

21           **ii.**    **Signage**

22      The Sheriff's Department will post signage reflecting the above-referenced
23 updated policies, in each County jail custody facility, in inmate housing areas,
24 common areas, indoor programming areas, and outdoor recreation areas, where
25 practicable and consistent with security needs.  The Department estimates that
26 signage can be designed, manufactured, and posted within 90 days after the
27 parties reach final agreement on this subject.  The Sheriff's Department will also
28 agree to include, among other things, a specific reference to the American Civil

3

Liberties Union and its phone number on signage in the jails. The Sheriff's Department further agrees to explore adding information regarding the above-referenced policies to video programming shown to inmates at various times during their incarceration. The Sheriff's Department further agrees to post signage, update video programming, and/or provide similar written materials to inmates housed in administrative segregation units. The Sheriff's Department is currently exploring possible signage options. Draft signage is attached hereto as Exhibit "A". The attached signage is preliminary and the Sheriff's Department reserves the right to make revisions and modifications to the signage or the language contained therein as deemed necessary prior to posting.

### iii.     Training

The Sheriff's Department will train relevant Custody personnel (both existing personnel and new personnel as they are assigned to the Division) on its updated policies and their implementation. The specific method of training will be left to the discretion of the Sheriff's Department training units, but at a minimum it will include presentation of the information in both oral and written/electronic distribution. Training for relevant personnel shall be initiated within 30 days of the adoption of the final policies adopted pursuant to the parties' agreement regarding the policies discussed herein.

### iv.     Inmate Protection and Medical Examinations

The Sheriff's Department will take reasonable steps to protect inmates who have made claims of retaliation which, in the discretion of management, may include, for example, the transfer of an inmate to another housing location if it is deemed an appropriate means of protecting the inmate.

Also, the Sheriff's Department will provide an expedited medical exam to any inmate who claims that he/she was physically injured due to retaliation for speaking with their legal counsel, the American Civil Liberties Union, or other inmate advocacy group.

### v.     Notice to the ACLU re Claims and Investigations

The Sheriff's Department will notify the American Civil Liberties Union of allegations by any inmate that he/she has been retaliated against for communicating with the American Civil Liberties Union, as well as the final results of said investigations; however, the Sheriff's Department will not provide any additional information due to legal restrictions governing said investigations.

### vi.     Conclusion

The above represents steps and measures the Sheriff's Department is willing to undertake to fully and finally resolve the American Civil Liberties Union's claims of retaliation against inmates by Department members. It is the Sheriff's Department's belief that the above measures fully address each and every concern raised by Plaintiffs during the parties' meeting on this issue and subsequent discussions. While the Sheriff's Department is willing to work cooperatively with the American Civil Liberties Union and make agreements aimed at addressing concerns associated with alleged retaliation, the Sheriff's Department will not agree to entry of a court *order* regarding the above-referenced measures. Under the Prison Litigation Reform Act ("PLRA"), the Court may not enter an order effecting prison conditions through injunctive relief unless and until the Court makes specific findings that a requested remedy is "necessary to remedy a proven violation of federal rights." H.R.Rep. No. 104-12, at 24 n.2 (1995); *Plyler v. Moore*, 100 F.3d 365, 369 (4th Cir. 1996); *Tyler v. Murphy*, 135 F.3d 594 (8th Cir. 1998). Thus, among other things, "the PLRA requires the court to make **particular findings** when it identifies [federal] violations" when prospective relief is sought by a plaintiff. *Handberry v. Thompson*, 436 F.3d 52, 63 (2nd Cir. 2006) (emphasis added), *citing* to *Benjamin v. Fraser*, 343 F.3d 35, 56 (2d Cir. 2003). Here, Plaintiffs have not met their burden of proving what is required under the PLRA and their proposed order does not comply with the obligations imposed by the PLRA. However, as stated

above, in a good faith effort to resolve this matter, the Sheriff's Department is willing to agree to the above changes to its policies and procedures.

### B.     Plaintiffs' Statement.

Plaintiffs believe that the Court should enter an order to address the retaliation motion argued on March 24, 2011, preferably on stipulation of the parties. They have attached a proposed stipulated order as Exhibit B, which also includes a proposed sign that should be posted in the jails.

A court order – as opposed to Defendants merely making promises about what they intend to do – is essential for three reasons. First, Defendants flatly deny that retaliation occurs, and they reject all of Plaintiffs' specific allegations as falsifications. Defendants have taken the position that they thoroughly investigate all claims of retaliation and that they have not found a single claim to be valid, but they refuse to disclose any information whatsoever from which the quality of the investigations can be evaluated. Merely having Defendants reaffirm their policy and conduct training on it is insufficient to address Plaintiffs' well-founded fears of retaliation.

Second, on June 20, 2009 Defendants responded to letters from Plaintiffs' counsel complaining about LASD retaliation against inmates who had spoken with the ACLU by adopting an anti-retaliation policy and Chief Dennis Burns stated in his November 5, 2010 declaration in opposition to Plaintiffs' motion for a Protective Order that LASD personnel are already trained at the Academy not to retaliate against inmates.  Nonetheless, as shown by the declarations that accompanied Plaintiffs' motion for a protective order, complaints of extreme retaliation have continued unabated *after* Defendants adopted their anti-retaliation policy. More than three-quarters of the incidents of retaliation discussed in the inmate declarations occurred after the Defendants adopted their anti-retaliation policy. Accordingly, merely having Defendants promise to reaffirm their anti-retaliation policy, conduct training on it, and post signage is

1  insufficient to address Plaintiffs' well-founded fears of retaliation, unless those
2  commitments are Court-ordered. We also note that Defendants' proposed signage
3  would instruct inmates to forward their complaints of retaliaton not to the ACLU
4  but to OIR – an entity which,  according to Chief Burns, is already tasked with
5  investigating Plaintiffs' retaliation complaints but has not validated a single one
6  of them, according to Chief Burns.

7       Third, Defendants' assertions about the steps they will take are not
8  enforceable except perhaps in state court through a separate contract action,
9  unless the agreement is court-ordered.  *See, e.g., Kokkonen v. Guardian Life Ins.*
10 *Co. of America*, 511 U.S. 375 (1994) (federal court lacks jurisdiction to enforce
11 terms of settlement between the parties where basis for jurisdiction over the suit
12 was federal question, unless settlement agreement is court-ordered).  Declaration
13 of Dennis Burns In Support of Defendants' Opposition to Plaintiffs' Motion for a
14 Protective Order, at p. 4.  Plaintiffs are unwilling to settle for an agreement that
15 cannot be enforced without their filing a separate state court action.

16      There is also no merit to Defendants' contention that an order may not be
17 entered because Plaintiffs have not met the requirements of the Prison Litigation
18 Reform Act.  As Plaintiffs explained in their reply brief in support of the motion
19 for a protective order, the Court has the both the inherent authority and authority
20 under the All Writs Act to enter an order prohibiting retaliation.  The PLRA does
21 not affect the Court's ability to enter such relief because the stipulated protective
22 order Plaintiffs propose "is not directed at providing relief to prisoners, but at
23 protecting the Court's ability to manage the case and ensure the orderly
24 presentation of evidence without intimidation of witnesses."   Plaintiffs' Reply
25 Brief at 4-5 (citing cases).
26 ///
27 ///
28 ///

7

RUTHERFORD\ Joint Repot re Retaliation Policy

### III. Sheriff's Department Agreements Requested of the ACLU.

#### A. Defendants' Portions

The Sheriff's Department has requested, and continues to request, that the American Civil Liberties Union agree to notify the Sheriff's Department of any claim of inmate retaliation it receives within 24 hours of its receipt of the information so that the claim can be timely investigated. During the March 24, 2011 meet and confer, counsel for the ACLU stated that they could not agree to this request because of potential attorney-client privilege issues. The parties discussed that this issue could potentially be avoided by using an independent jail monitor instead of counsel for Plaintiffs.

#### B. Plaintiffs' Portion.

Plaintiffs' lawyers are counsel for the class that consists of all inmates in the jails. When inmates complain to counsel or their representatives, such as Esther Lim, the Jails Project Coordinator, and seek their legal assistance, counsel are bound by the duty of confidentiality and can report those complaints to LASD or any other third party only with the clients' permission. When our clients ask us to report their complaints, we do so. If they ask us not to do so, we must honor that request – all the more so because of their very well-founded fear of extreme retaliation by security staff. Defendants' proposal that the parties can somehow avoid the issue of attorney-client confidentiality by "using an independent jail monitor instead of counsel for plaintiffs" is without merit. Class counsel has a non-delegable duty to represent the class and to receive complaints from members of the class who wish to communicate with their counsel.

///
///
///

RUTHERFORD\ Joint Repot re Retaliation Policy

## IV. Scheduling Order

### A. Plaintiffs' Portion

On April 7, 2011 Plaintiffs sent Defendants' counsel an e-mail proposing the following dates for a motion to compel compliance with the judgment in Rutherford:

- April 21, 2011: Deadline for Defendants' responses to Plaintiffs' third set of requests for production and first set of interrogatories
- April 29, 2011: Deadline for Defendants' production of documents responsive to Plaintiffs' first and second sets of requests for production,
- May 3, 2011: Start date for window period of Plaintiffs' experts' tours: Plaintiffs' experts may tour MCJ and Twin Towers, separately or together, on at least ten days' notice to Defendants, on any dates between May 3 and July 30, 2011.
- May 5, 2011: Deadline for completion of meet-and-confer process (if necessary) regarding Defendants' responses to Plaintiffs' third set of requests for production and first set of interrogatories.
- May 19, 2011: Deadline for briefing on all outstanding discovery disputes
- July 30, 2011: Deadline for Plaintiffs' expert witnesses to complete jail tours
- August 11, 2011: Deadline for Plaintiffs' expert witnesses to submit Rule 26(a)(2) reports
- August 21, 2010: Deadline for Defendants' expert witnesses to submit Rule 26(a)(2) reports
- September 29, 2011 Deadline for completion of all discovery
- October 6, 2011: Deadline for Rule 26(a)(3) pretrial disclosures
- October 11, 2011: Parties meet and confer to prepare proposed final pre-hearing order
- October 13, 2011: Deadline for submission of proposed findings of fact and conclusions of law, and of Proposed Final Pre-Hearing Order

1  October 17, 2011: Final pre-hearing conference

2  October 24, 2011:  Hearing commences at 10:00 AM.

3  **The estimated amount of time needed for the evidentiary hearing:**

4  Plaintiffs: Plaintiffs anticipate that they will need five days to present their case

5  in chief and one day for rebuttal

6  Defendants: Defendants anticipate that they will need xxx days to present their

7  case

8 Plaintiffs proposed this schedule based on its understanding from the Court that the issues Plaintiffs intend to address in an evidentiary hearing on a motion for compliance are properly part of *Rutherford* and do not need to be brought in a new civil action.  Those issues, as Plaintiffs' counsel explained in the March 24, 2011 hearing, are deputy on inmate violence; overcrowding in the dorms in Men's Central Jail; mistreatment of the mentally ill in Men's Central Jail, and lack of access to outdoor recreation and sanitary conditions resulting from overcrowding Men's Central Jail.

On April 19, 2011 Defendants' counsel sent Plaintiffs' counsel a letter stating that the proposed schedule was unacceptable because, among other things, it did not satisfy the procedural requirements that apply to new lawsuits.

### B. Defendants' Portion

Defendants' position respecting Plaintiffs' "Motion to Compel Compliance" is set forth in the letter attached hereto as Exhibit "C."

## V. Plaintiffs' Request to Bring Laptops Into the Attorney Rooms at the Jails

### A. Plaintiffs' Portion

On April 6, 2011, Plaintiffs' counsel sent Defendants' counsel a letter explaining that LASD personnel were refusing to allow Esther Lim, the ACLU's Jails Project Coordinator, and others working under her supervision to bring

laptop computers into the attorney rooms. The letter also explained that Plaintiffs' counsel had tried to resolve the issue with LASD personnel, but those personnel had informed the ACLU that no laptops would be permitted without a court order. Accordingly, the letter requested that Defendants enter into a stipulation and order, which is attached, permitting members of the ACLU Jails Project, whose access to the jails has been approved by LASD's Custody Services Division, to bring laptops and portable printers into the attorney rooms at the jails (but not into any other portions of the jails). Defendants' counsel have not responded to Plaintiffs' April 6, 2011 letter.

### B. Defendants' Portion

NOTE – This issue was not discussed with the Court at the March 24 Status Conference, nor was it discussed by the parties at their March 28 meeting. Plaintiffs' section on this issue was provided to Defendants on the afternoon that this Joint Report was filed with the Court. Therefore, Defendants could not and have not responded to it here.

## VI. Outstanding Discovery

### A. Plaintiffs' Position

Plaintiffs have previously served three sets of request for production of documents and one set of interrogatories directed to the four issues that will be the focus of their requested evidentiary hearing. The first set of requests for production, which dealt with the provision of mental health services, were the subject of the December 6, 2010 hearing on Plaintiffs' motion to compel.

On January 12, 2011, Plaintiffs provided to Defendants a set of questions about how Defendants maintained their records, with the goal of attempting to narrow the discovery based on Defendants' answers.
Defendants provided their answers on March 24, 2011. Plaintiffs then consulted with their experts and worked on reducing the volume of discovery.

1   On April 8, 2011, Plaintiffs notified Defendants that they were narrowing
2 four of the requests for production in set one and eliminating one. Plaintiffs
3 requested a response from Defendants by April 15, 2011 as to whether they
4 intended to respond to the narrowed requests. Defendants have not yet responded
5 to Plaintiffs' April 8, 2011 letter.
6   On April 20, 2011 Plaintiff sets Defendants' counsel revised versions of
7 their other pending discovery requests (Sets two and three) which radically
8 narrow the requests. The second set, consisting of 18 RFPs, was pared down to
9 14 requests, and several of the remaining RFPS were greatly narrowed in scope;
10 the third set , initially consisting of 117 RFPS was reduced to 32. Plaintiffs sent
11 along with the pared down discovery requests proposed protective orders to
12 address some of Defendants' objections, including one used in *Graves v. Arpaio*,
13 a case challenging conditions in the Maricopa County jails, in which plaintiffs
14 were represented by ACLU's National Prison Project.
15 ///
16 ///
17 ///

RUTHERFORD\ Joint Repot re Retaliation Policy

### B. Defendants' Portion

NOTE – This issue was not discussed with the Court at the March 24 Status Conference, nor was it discussed by the parties at their March 28 meeting. Plaintiffs' section on this issue was provided to Defendants on the afternoon that this Joint Report was filed with the Court. Therefore, Defendants could not and have not responded to it here.

Dated: April 20, 2010          LAWRENCE BEACH ALLEN & CHOI, PC

                              By _____/s/  Paul Beach_____
                                   Paul B. Beach
                                   Attorneys for Defendants
                                   Sherman Block, et al.

Dated: April 20, 2010          AMERICAN CIVIL LIBERTIES UNION
                               OF SOUTHERN CALIFORNIA

                              By ____/s/ Peter Eliasberg_____
                                   Peter Eliasberg
                                   Attorneys for Plaintiffs

RUTHERFORD\ Joint Repot re Retaliation Policy