1  MARK D. ROSENBAUM, SBN 59940
   mrosenbaum@aclu-sc.org
2  PETER ELIASBERG, SBN 189110
   peliasberg@aclu-sc.org
3  JESSICA G. PRICE, SBN 264053
   jprice@aclu-sc.org
4  ACLU Foundation of Southern California
   1313 W. 8th Street
5  Los Angeles, California 90017
   Telephone:  (213) 977-9500, x219
6  Facsimile:  (213) 977-5297

7  MARGARET WINTER*
   mwinter@npp-aclu-.org
8  ERIC G. BALABAN*
   ebalaban@npp-aclu.org
9  DAVID SHAPIRO
   dshapiro@npp-aclu.org
10 ACLU NATIONAL PRISON PROJECT
   915 15th Street NW, 7th Floor
11 Washington, D.C. 20005
   Telephone:  (202) 393-4930
12 Facsimile:  (202) 393-4931
   E-mail: mwinter@npp-aclu.org
13 *Not admitted in D.C.; practice limited to federal courts

14 Attorneys for Plaintiffs
   (continued on next page)
15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

| 19 | DENNIS RUTHERFORD, et al, | ) | Case No.  Civ. 75-04111-DDP |
|----|---|---|---|
| 20 | Plaintiffs, | ) ) ) | Honorable Dean Pregerson |
| 21 |  | ) | **PLAINTIFFS' REPLY TO** |
| 22 | vs. | ) ) | **DEFENDANTS' RESPONSE AND PLAINTIFFS' OPPOSITION TO** |
| 23 | LEROY BACA, et al., | ) ) | **DEFENDANTS' REQUEST TO STRIKE PLAINTIFF'S** |
| 24 | Defendants. _____ | ) ) ) | **SUPPLEMENT TO MOTION FOR PROTECTIVE ORDER REGARDING ALLEGED** |
| 25 |  |  | **RETALIATION** |

1  MELINDA BIRD, SBN 102236
2  melinda.bird@disabilityrightsca.org
   Disability Rights California
3  3580 Wilshire Blvd., Suite 902
   Los Angeles, California 90010
4  Telephone: (213) 355-3605
   Facsimile: (213) 427-8767

5  Bingham McCutchen LLP
   STEPHEN D. ALEXANDER, SBN 141099
6  stephen.alexander@bingham.com
   JENNIFER B. MIKOLEVINE, SBN 236745
7  jennifer.mikolevine@bingham.com
   355 South Grand Avenue, Suite 4400
8  Los Angeles, California 90071-1560
   Telephone: (213) 680-6400
9  Facsimile: (213) 680-6499

10 Bingham McCutchen LLP
   STACY W. HARRISON, SBN 175028
11 stacy.harrison@bingham.com
   1620 26th Street
12 4th Floor, Main Tower
   Santa Monica, California 90404
13 Telephone: (310) 907-1000
   Facsimile: (310) 907-2000
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS NEVER STATED OR IMPLIED THAT THEY WERE ENTERING INTO DISCUSSION WITH OIR AND DEFENDANTS WITH THE INTENTION OF WITHDRAWING THE MOTION**

At no point during any hearing or in-chambers meeting with the Court did Plaintiff's counsel state, or imply, that Plaintiffs would consider withdrawing their protective order motion based on the results of meetings with Defendants and Mr. Gennaco about LASD's anti-retaliation policies and complaint procedures. Moreover, Plaintiffs' counsel stated in response to the Court's suggestion that the parties meet to try to rework Defendants' policies that he was reluctant to do so because Plaintiffs major concern about retaliation was not Defendants' policies, but whether LASD personnel obeyed those policies. Immediately thereafter, Plaintiffs' counsel stated that he would nonetheless engage in the process because he believed that there were serious problems with the complaint forms and the complaint policy.

In addition, the proposed order Plaintiffs submitted with their protective order motion did not seek a rewriting of the Department's anti-retaliation policy; nor did it seek to have the complaint policy revamped. The first form of relief Plaintiffs sought was a court order barring Defendants from retaliating against inmates for making complaints to the ACLU. Thus, any assumption that Defendants' counsel may have made about the possibility of Plaintiffs' withdrawing their motion if Defendants were to revise their anti-retaliation or complaint policies was unwarranted.

Defendants' statement, "frankly, Defendants would have had little incentive to make agreements for changes of any kind" except as a bargaining chip to be exchanged for withdrawal of Plaintiffs' motion, Defs' Response and Request to Strike at 2, is surprising because Defendants obtained a tangible benefit from the negotiations that had nothing to do with Plaintiffs' withdrawal of their motion.

The Department's complaint forms and complaint policy were woefully

1

inadequate prior to the negotiations. For example, the old version of the complaint form nowhere stated the deadline by which an inmate was required to make a complaint, nor the time line by which the inmate could expect a response. See Declaration of Esther Lim ¶ 3 & Exhibit 1. The ACLU's Jails Project Coordinator had never observed a single posting anywhere in the jail that would inform inmates about what the complaint policy was, the relevant time lines, or other information necessary to submit a complaint. *Id.* at ¶ 4. Moreover, complaint forms were frequently unavailable at the complaint boxes in the modules. *Id.* at ¶ 5. As a result, inmates regularly complained to the ACLU that they had no idea what policies governed the filing of complaints and were unable to file complaints because no forms were available. *Id.* at ¶ 4

In addition, there were substantial flaws with the complaint policy itself. For example, the policy set no firm deadline for Defendants to respond to inmate complaints instead providing "A written response [to an inmate complaint] shall be delivered to the inmate generally within ten business days after the submission of the complaint." Lim Decl. ¶ 6, Exhibit 2.

As a result of the meetings chaired by Mr. Gennaco, Defendants have put in place clear deadlines that govern the complaint process, provided for notification to inmates of the complaint procedures by, among other things, putting deadlines on the draft revised complaint forms, and established a policy governing the stocking of complaint forms in the modules. In other words, the hard work put in during the sessions with Mr. Gennaco provided a tangible benefit to Defendants that had nothing to with Plaintiffs' withdrawal of their motion -- a workable and transparent complaint policy to replace both Defendants inadequate complaint forms, and a flawed policy about which inmates were kept in the dark.

Of course, none of this ensures that the new policies will actually be followed or that inmates will not face retaliation for filing complaints. A protective order therefore remains critical.

**Plaintiffs' Submitted the Additional Declarations About Retaliation in Response to a Question from the Court**

During the last status conference the Court directly inquired of Plaintiffs' counsel whether the ACLU was continuing to receive complaints of retaliation from inmates. Plaintiffs' counsel answered that the ACLU did continue to receive such complaints. Following the hearing, Plaintiffs submitted the additional declarations to support Plaintiffs' counsel's response to the Court's inquiry. Accordingly, the declarations are not "untimely."

Defendants' suggestion that the declarations should have been submitted to the Court months ago and are nonetheless in violation of the Local Rules is internally contradictory. If Defendants' reference to the Local Rules is intended to imply that the declarations should not have been submitted after the date for Plaintiffs' reply on their motion, then they would have been in violation of the Local Rule if submitted the day after the inmates first spoke to us about the incidents of retaliation. The incidents of retaliation described in the declarations attached to Plaintiffs' supplemental filing occurred in January, March and April of 2011, well after Plaintiffs' motion was submitted on December 6, 2011.

Finally, Defendants' suggestion that Plaintiffs have a duty as court-appointed monitors to inform them of every complaint made by inmates has no support in any order of the Court permitting Plaintiffs' counsel to have access to jails to speak with inmates. Defs' Response and Request to Strike at p. 2 (stating that the ACLU is "in dereliction" of its "role as monitor of conditions in the Los Angeles County jail"). Plaintiffs' counsel has reviewed all the orders of the Court granting Plaintiffs' counsel access to the inmates and jail facilities, and he is not aware of any such order stating that Plaintiffs' counsel must inform Defendants of inmate complaints.

Nor would such a requirement be consistent with the ACLU's duties as class counsel. As class counsel, the ACLU has a legal and ethical obligation not to

3

1  report matters to defendants if their clients request that they not do so. In many
2  cases, inmates specifically instruct us that they do not want to report incidents of
3  brutality and retaliation to the LASD because they are afraid they will only suffer
4  further abuse and retaliation. Lim Decl. ¶ 8. In other cases, inmates agree to file
5  their complaints with the Court because they hope they will obtain relief that they
6  do not believe they will obtain from the sheriff's department. *Id.* Finally, the fact
7  that the Sheriff's Department routinely concludes that every complaint of
8  retaliation that the ACLU makes to either the Sheriff's Department or to the Court,
9  is "unfounded" and yet refuses to reveal any specific information about the nature
10 of the investigations, only underscores the futility of trying to work through the
11 LASD to address the severe problem of retaliation. Indeed, after forwarding a
12 large group of inmate complaints of retaliation to LASD, Sheriff Baca responded
13 in January 2011that "none of these investigations uncovered any credible evidence
14 that that your clients had been subjected to any ill treatment and/or inappropriate
15 behavior by Department members as a result of having contacted your
16 organization." See Lim Decl. ¶ 7, Exh. 3; *see also* Declaration of Chief Dennis
17 Burns in Support of Defs' Opposition to Pls' Motion for a Protective Order ¶ 3
18 ("[It is imperative that the Court know that every allegation of retaliation at issue
19 in this Motion that the Department has investigated has been determined to be
20 **without merit**.") (emphasis in original). Indeed, Plaintiffs explained in great
21 detail their past efforts to resolve the retaliation problem with the LASD in their
22 motion for a protective order. Pls' Memorandum of Points and Authorities in
23 Support of Motion for Protective Order at 9-11. Only when those efforts failed did
24 Plaintiffs file the motion.
25 //
26 //
27 //
28 //

## CONCLUSION

Plaintiffs have more than satisfied the standard for a protective order. Defendants' opposition relied on inadmissible[1] and wholly conclusory statements by Chief Dennis Burns that the incidents of retaliation reported by inmates are "without merit." Individual damages claims, which can take as much as three years to resolve, are insufficient to provide the protection class members need to ensure that they feel that they can speak freely to the ACLU without fear of retaliation. The motion has been submitted for more than 120 days. Accordingly, Plaintiffs request that the motion be promptly decided and a protective order issued.

Dated: August 22, 2011

RESPECTFULLY SUBMITTED,

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

ACLU NATIONAL PRISON PROJECT

DISABILITY RIGHTS CALIFORNIA

BINGHAM MCCUTCHEON, LLP

s/ Peter Eliasberg

Peter Eliasberg
Attorney for Plaintiffs

---

[1] See Plaintiffs' Evidentiary Objections to the Declaration of Chief Burns (Docket No. 258, Filed 11/22/10).