| | |
|---|---|
| PETER J. ELIASBERG (189110)<br>peliasberg@aclusocal.org<br>MELISSA CAMACHO-CHEUNG (264024)<br>mcamacho@aclusocal.org<br>**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**<br>1313 W. 8th Street<br>Los Angeles, CA 90017<br>Phone: (213) 977-9500<br>Fax: (213) 977-5299 | DAVID C. FATHI (*pro hac vice*)\*<br>dfathi@aclu.org<br>ERIC BALABAN (*pro hac vice*)\*<br>ebalaban@aclu.org<br>**ACLU NATIONAL PRISON PROJECT**<br>915 15th St., NW<br>Washington, D.C. 20005<br>Phone: (202) 393-4930<br>Fax: (202) 393-4931<br><br>\*Not admitted in D.C., practice limited to federal courts |

CORENE T. KENDRICK (226642)
ckendrick@aclu.org
**ACLU NATIONAL PRISON PROJECT**
39 Drumm St.
San Francisco, CA 94111
Phone: (202) 393-4930
Fax: (202) 393-4931

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, *et al*.,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>ALEX VILLANUEVA, Sheriff of Los Angeles County, in his official capacity, and COUNTY OF LOS ANGELES, in their official capacities, *et al.*<br><br>　　　　　Defendants. | Case No. CV 75-04111 DDP<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE (Doc. 355)**<br><br>Date:　Oct. 17, 2022<br>Time:　10:00 a.m.<br>Judge:　Hon. Dean D. Pregerson |

Defendants contend that detainees are no longer spending more than 24 hours in the Inmate Reception Center ("IRC") before receiving a permanent housing assignment. Doc. 355 at 1. The IRC Clinic Reports show a significant decline in the number of people held in the IRC Clinic for over 24 hours since September 16, 2022. *Id.* The IRC Clinic Reports, however, do not provide an accurate count of the number of people held in IRC for more than 24 hours under the terms of the Preliminary Injunction. The IRC Clinic report only tracks the amount of time an individual spends in the IRC Clinic and does not count any time spent outside of the Clinic but still in the IRC (e.g., booking front, custody line cells). Declaration of Melissa Camacho-Cheung, filed herewith, ("Camacho Decl.") at ¶ 6. The Preliminary Injunction ("PI") requires the IRC clock to run continuously from the time of entry into IRC until the person leaves IRC. Doc. 351 ¶ 1. The clock cannot stop unless an individual is out of the IRC for longer than 12 hours with access to a bed. *Id.* The clock cannot stop when a person travels from one part of the IRC to another. *Id.*

  Despite the PI's clear instructions, the IRC Clinic report on which Defendants rely in their Response to the Order to Show Cause ("OSC"), does not take those requirements into account. The clock stops and restarts upon movement from one part of the IRC into the other (for example, booking front to Clinic). *See* Camacho Decl. at ¶¶ 6-7. The clock also stops for trips to urgent care and court. *Id.* at ¶ 6. The report also provides the length of stay in the IRC Clinic at a particular moment in time; it does not provide aggregate length of stay in in the IRC. *Id.* at ¶ 5. For example, if a person has been in the IRC Clinic for 23 hours when the report is run on a Monday and stays in the IRC until an hour before the report is run on a Tuesday, that person will have been in the IRC for 46 hours without showing up on any report.

  To provide an example, Eric Rodriguez recently spent more than 24 hours in the IRC without showing up on any IRC Clinic Report. Camacho Decl. at ¶¶ 14-

2

Case No. CV-75-04111-DDP
**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONES TO ORDER TO SHOW CAUSE (Doc. 355)**

17. Plaintiffs' counsel Melissa Camacho-Cheung visited the IRC on Friday, September 23, 2022. *Id.* at ¶ 9. While there, an individual named Eric Rodriguez approached her, complaining that he had been in custody for "days," but his name was not on the IRC Clinic Report for September 22 or 23, 2022. *Id.* at ¶¶ 9-11, 17. Ms. Camacho asked a deputy to print out Mr. Rodriguez's total movement history to determine the validity of his claim. *Id.* at ¶ 12. The report indicated that he had arrived at the IRC booking front on September 21, 2022 at 4:03 PM. *Id.*, Ex. B. His IRC Clinic clock, however, re-started from zero every time he moved in and out of the IRC Clinic, including for a three-hour trip to urgent care. *Id.*, Ex. B.

By the time counsel saw Mr. Rodriguez on September 23, 2022 at 11:30 AM, he had already been in the IRC for 43.5 hours, but because of the clock resetting to zero at multiple points during his stay in the IRC, he never appeared on the IRC Clinic Report. Plaintiffs do not know how many people are being undercounted by the current system, because Defendants have not yet produced the documentation required by the PI.

Defendants' offer to provide the Court and Plaintiffs with its "Report Back" to the Board of Supervisors, Doc. 355 at 3-5, while welcome, is inadequate and does not satisfy the Court's OSC. Doc. 352 at 1-2. Specifically, this Report Back focuses solely on the development and use of *secured* mental health care facilities. Doc. 355 at 3. Defendants contend that this complies with the OSC, *id.* at 3-4, but in this assertion, they omit a key section of the Court's OSC, specifically that they provide a written report

> detailing the number of people with mental illness who would need to be diverted from the Jail ***either pre-trial or subject to a probationary plea and placed in the community*** with appropriate mental health care and other services to reduce the backlog in IRC so that people booked into the jail can be placed in permanent housing in 24 hours or less. The report shall include, but not be limited to, an analysis of the likely effect on the population of people with mental illness in the jail caused by both (a) reductions in length of stay in the Jail resulting from pre-trial

3

> *diversion or placement in community* as a result of a probationary plea, and (b) reductions in the rates of recidivism for people with mental illness resulting from pre-trial *diversion or placement in community* as a result of a probationary plea, *including placement in programs within the Office of Diversion and Reentry*.

Doc. 352 at 1 (emphasis added). Defendants offer no reason why their response to the OSC should be limited to their use of secure facilities and not include community-based placements as ordered in the OSC.

Defendants have also stated they should not be required to comply with the provision in the OSC directing them to give a "written detailed explanation why Defendants have not increased funding to the Office of Diversion and Reentry to allow it to expand its ODR Housing Program by at least 1,000 beds in the community by March 31, 2023 for people with mental illness" (Doc. 352 at 1), or funded other programs to achieve the same jail population reduction, because they have recently provided for funding for 750 additional beds for ODR Housing, and because their decisions about funding for diversion reflect the "exercise of [the Board of Supervisor's] legislative prerogative." Doc 355 at 4-5.

Plaintiffs disagree.  In first place, the Office of Inspector General, which has been reporting on the multiple crises in the IRC for years, has concluded that the County needed to "increase efforts to divert qualified prisoners with mental illnesses to community-based mental health treatment programs in order to alleviate overcrowding in mental health housing locations" which was a cause of overcrowding in IRC.[1] In September 23, 2021 Assistant Inspector General Kathleen Beltz testified that the jail population needed to be reduced to the Board of State and Community Corrections rated capacity of 12,400 to address the "grossly inadequate"

---

[1] Office of Inspector General, *Review of the Inmate Reception Center Intake Evaluation Process*, at 13 (November 2019) available at https://assets-us-01.kc-usercontent.com/0234f496-d2b7-00b6-17a4-b43e949b70a2/c2463bac-4aab-43b6-9824-7e8c9c10fdb8/Review%20of%20IRC%20Intake%20Evaluation%20Process.pdf

conditions in IRC.[2]  However, as of September 11, 2022, the current jail population stands at 14,975 about 40% of which are people with mental illness.[3] Even if expanding ODR Housing by 750 beds led to a corresponding 750 person reduction in the jail's mental health population, that reduction would fall far short of the reduction the OIG has opined is necessary to address the problems in IRC.  Thus, the County should have to report on its decision not to fund at least 1,000 additional beds by March 31, 2023 to divert people with mental illness from jail into the community.

Second, Plaintiffs showed, and Defendants did not dispute that the gap between the number of people in the jails who needed mental health housing, and the availability of that housing was a principal cause of the IRC crises that justified a TRO and a PI.  If the County had funded more diversion beds it might well prevented the unconstitutional conditions that the TRO and PI address. It is not a legislative prerogative of a government entity to fail to fund programs when that budgetary choice leads to the violation of constitutional rights.  *See, e.g., Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc) ("Lack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations.") (citations omitted); *Wright v. Rushen*, 642 F.2d 1129, 1134 (9th Cir.1981) ("[C]osts cannot be permitted to stand in the way of eliminating conditions below Eighth Amendment standards.").[4]

Thus, Plaintiffs respectfully request the Court order Defendants to respond to Paragraph 2 of the OSC so that Defendants provide sufficient information for the

---

[2] See Exhibit N to Declaration of Melissa Camacho-Cheung in Support of Plaintiffs' Ex Parte Application for a TRO, at page 4, Doc 319.
[3] *See Care First L.A.: Tracking Jail Decarceration*, Vera Institute of Justice (available at https://www.vera.org/care-first-la-tracking-jail-decarceration).
[4] As previously noted, the legal standard for people detained in jails prior to conviction is the Fourteenth Amendment standard by which plaintiffs do not have to prove subjective deliberate indifference by officials. *See* Doc. 318-1, n.39 and cases cited therein.

Court to determine whether they have adequate plans in place over the next six months to ensure the crisis in IRC does not recur.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to comply with the Order to Show Cause.

Respectfully submitted,

DATED: October 12, 2022        By:  */s/ Peter J. Eliasberg*
Peter J. Eliasberg
Melissa Camacho-Cheung
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

David C. Fathi
Corene T. Kendrick
Eric Balaban
**ACLU NATIONAL PRISON PROJECT**

Attorneys for Plaintiffs Dennis Rutherford, *et al.*