PETER J. ELIASBERG (189110)
peliasberg@aclusocal.org
MELISSA CAMACHO (264024)
mcamacho@aclusocal.org
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 W. 8th Street
Los Angeles, CA 90017
Phone: (213) 977-9500

CORENE T. KENDRICK (226642)
ckendrick@aclu.org
MARISOL DOMINGUEZ-RUIZ (345416)
mdominguez-ruiz@aclu.org
**ACLU NATIONAL PRISON PROJECT**
39 Drumm St.
San Francisco, CA 94111
Phone: (202) 393-4930

DAVID C. FATHI (*pro hac vice*)*
dfathi@aclu.org
**ACLU NATIONAL PRISON PROJECT**
915 15th St., NW
Washington, D.C. 20005
Phone: (202) 393-4930

*Not admitted in D.C., practice limited to federal courts

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and COUNTY OF LOS ANGELES, in their official capacities, *et al.*<br><br>Defendants. | Case No. CV 75-04111 DDP<br><br>**DECLARATION OF MEREDITH GALLEN** |

1

I, Meredith Gallen, hereby declare:

1. I make this declaration based on my own personal knowledge, and if called to testify I could and would do so competently.

2. I am an attorney-at-law, duly licensed to practice in the State of California, and in good standing with the California State Bar. I am employed by the Los Angeles County Public Defender's Office and a board member of the Los Angeles County Public Defenders Union – Local 148.

3. I currently work in a felony trial assignment at the Clara Shortridge Foltz Criminal Justice Center in downtown Los Angeles. In this assignment I represent indigent clients charged with a wide range of felony offenses.

4. A significant number of my clients are people with mental illness who are currently incarcerated in Los Angeles County jails. Many of these clients were unhoused prior to their incarceration.

5. All of my clients who were assigned male at birth are detained and assessed at the Inmate Reception Center (IRC) prior to receiving their permanent housing locations in the jail system.

6. Since late summer of 2022, I have observed that my clients with mental illness are experiencing significant delays in receiving mental health medications at the jail.

7. At the time of their scheduled preliminary hearings – which occur 10 court days after arraignment—my clients often indicate that they have not been prescribed medications or been meaningfully evaluated by mental health staff in the jails. Some of them experience lapses in medication use even when they were regularly taking prescribed medications when living in the community.

8. I have frequently filed orders with the superior court (colloquially known as "medical orders") requesting that the court order that a client be evaluated by a mental health clinician in the jail and be prescribed medications as necessary.

9. On multiple occasions I have found that my clients have not been evaluated by mental health clinicians at the jail even after the court has submitted a signed medical order to the jail.

10. Additionally, in the past few months I have observed that some of my clients with serious mental illnesses such as major depressive disorder, schizoaffective disorder, bipolar disorder, have been assigned to permanent jail housing that is designated for persons without mental illness.

11. Many of my clients with mental illness would qualify for the services offered by the Office of Diversion and Reentry (ODR). Currently, ODR only accepts clients who were homeless at the time of their incarceration and have a diagnosis for schizophrenia, schizoaffective disorder, or bipolar I disorder. Through ODR, they may qualify for mental health diversion via ODR programming/housing or may be offered a plea in which they would receive ODR programming/housing as a condition of that plea. Due to the nature of their charges and/or the seriousness of their mental health needs they do no not qualify for other diversion programs.

12. I have many clients with other serious mental health diagnoses whom I believe need and would benefit from ODR-type treatment, yet they do not qualify.

13. In 2022, there was a months-long waitlist for clients to have an initial screening with ODR because there were not enough ODR beds available to meet the overwhelming need for them. On January 1, 2023, ODR abandoned the waitlist process for screening and launched an online portal system that defense attorneys can use to apply for clients to be screened by ODR.

14. The ODR online portal opens every Wednesday morning at 8:00 a.m. In the Public Defender's Office, we have taken to calling it "ODR Wednesday." Because ODR only has the capacity to screen a small number of people who are incarcerated each week, the portal link only remains active for long enough to allow a small handful of attorneys to complete the request for a screening application. In practice, this means that my colleagues and I all attempt to log into the portal seconds

before 8:00 a.m. Some of my colleagues try to submit the form from home because they believe they have faster internet connections outside the office. Some monitor the clock down to the second starting at 7:59 a.m. Others just mash the internet page refresh button continuously for minutes before 8:00 a.m. All of us are desperate to find a way to a path to ODR programming for our clients. In all seriousness, it feels very much like trying to obtain high-demand concert tickets through a rigged system.

15. I have spent several Wednesday mornings in 2023 frantically refreshing the portal page hoping to be granted access to the application for screening. This past week, I was able to access and complete the application for one of my clients, only to get to the end of filling out the form and then the program ultimately would not accept the application for reasons unknown. The failure felt crushing.

16. While I attempt to navigate this process to request a screening, my clients remain incarcerated in jail custody awaiting an ODR eligibility screening, and the number of clients on my caseload who require the services of ODR continues to grow.

17. Unfortunately, if my clients are not placed in ODR – due to ODR capacity issues or otherwise – their case disposition options will all include a very significant periods of incarceration during which time they will not receive appropriate treatment for mental health needs, and their mental health further decompensates while incarcerated.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and in my personal knowledge.

Executed February 23, 2023 in Los Angeles, California.

Meredith Gallen