OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
Acting County Counsel
  dharrison@counsel.lacounty.gov
Dylan Ford (228699)
Deputy County Counsel
  dford@counsel.lacounty.gov
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone:   (213) 974-1807/(213) 974-1811
Facsimile:    (213) 687-8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
  rdugdale@kbkfirm.com
Michael J. McCarthy (334829)
  mmccarthy@kbkfirm.com
Katelyn A. Kuwata (319370)
  kkuwata@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 272-7904
Facsimile:   (310) 556-2705

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna and the County of Los Angeles*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and the COUNTY OF LOS ANGELES,<br><br>    Defendants. | Case No. 75-cv-04111-DDP<br><br>**DECLARATION OF CHIEF PAULA TOKAR**<br><br>Hon. Dean D. Pregerson<br>Courtroom 9C |

**DECLARATION OF PAULA TOKAR**

I, Paula Tokar, declare as follows:

1. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been employed by the Los Angeles County Sheriff's Department (the "Department") for 33 years in various capacities. On December 6, 2022, I was assigned to serve as Acting Chief of the Custody Services Division – General Population. My responsibilities include oversight of the personnel and operations of Men's Central Jail ("MCJ"), Inmate Reception Center ("IRC"), Pitchess Detention Center North, and other Department facilities.

3. As Acting Chief, I am familiar with requirements of the Preliminary Injunction issued on September 28, 2022 by the Honorable Dean D. Pregerson of United States District Court for the District of Central California, as well as the preceding Temporary Restraining Order entered on September 16, 2022.

4. On or about January 31, 2023, I observed that routine mental health screening in the IRC had slowed to an alarming rate and was later informed by Joan Hubbell of the Correctional Health Services that issues with sufficient staffing were a contributing factor. The difficulty in conducting this screening at a sufficient rate is a contributing factor to excessive wait times for inmates within the IRC.

5. Due to a concern over adequate population management and for maintaining the Department's obligations under the Preliminary Injunction, and aware that the resulting backlog would likely progressively worsen throughout that week, I consulted with Department line supervisors at the IRC about how to address this emerging issue.

6. Following this consultation, I authorized an overflow plan which would identify and designate inmates who had received a preliminary mental health screening, were found to not have any acute mental conditions that required high observation housing, and had been in the IRC close to 24 hours. Those designated

inmates would be assigned to the 6050 Block of MCJ, and, if needed, to the 4800-A Row of MCJ, for temporary housing while awaiting a routine mental health screening.

7. On February 3, 2023, the Department began to utilize the 6050 Block for overflow due to the backlog of inmates at the IRC.

8. Both 6050 and 4800-A Row are flexible housing units which have, to my understanding, historically been used for multiple purposes, but as of February 3, 2023, were operational to serve in a capacity nearly similar to Module 231 at the Twin Towers Correctional Facility ("TTCF"), in that these housing units provided inmates with beds, mattresses, sanitary supplies, and showers. Inmates are provided bedding materials upon being relocated to either of the two housing areas.

9. 6050 contains three operational cells – 6051, 6052 and 6053 – with bedding for 12 people per cell. 4800-A Row contained 11 operational cells as of February 3, 2023, with bedding for 4 people per cell.

10. On February 3, 2023, I toured 6050 and observed that inmates assigned there had received bedding and that a deputy was passing out soap and towels.

11. That day Assistant Chief Sergio Aloma and I discussed informing the Office of the Inspector General for the County of Los Angeles (the "OIG") of the need to use the overflow housing areas. Assistant Chief Aloma later informed me that he contacted the OIG and explained the overflow plan, and that the OIG had indicated that it was already aware of this plan.

12. It is my understanding that 4800-A Row first was utilized as overflow on or about February 11, 2023.

13. A various points throughout the month of February 2023, 6050 and 4800-A Row were utilized for IRC overflow temporary housing to address the CHS staffing shortages experienced during that month. Since the time these staffing shortages have been addressed, the use of these temporary housing locations due to a delay in mental health screening has ceased. On March 10, 2023, overflow

housing was reopened to address a delay in COVID-19 testing. It is my understanding that a technical issue at Snap Labs created a delay in the Department receiving timely test results.

14. On February 23, 2023, in response to a report by Melissa Camacho, an attorney with the ACLU Southern California, that some of the mattresses in the overflow areas were inadequate, I toured these areas. I ordered the staff at the MCJ to address these issues and replace any mattresses that were in poor condition.

15. That same day, I encountered Catharine Wright, a member of the OIG, and she explained her concerns regarding the mattresses in the overflow areas. I told her that the Department was addressing the issue. The following day, February 24, 2023, I received a text from Ms. Wright. The text stated, in pertinent part: "I stopped by CJ overflow. All was good. Several people in custody who were there yesterday told me they appreciated that deputies out [sic] so much effort into improving conditions yesterday." A true and accurate copy of that text is attached as Exhibit A.

16. As evidenced by Assistant Chief Aloma and my outreach to the OIG, there was never any attempt to conceal the implementation of the overflow plan nor was the plan developed to circumnavigate the requirements of the September 28, 2022 Preliminary Injunction. Instead, the objective was to provide housing areas for those inmates who did not require immediate mental health attention and had spent nearly 24 hours in the IRC, where they had no access to a bed or shower. The provision of such a space was intended to be complimentary to Module 231, though for inmates who would likely be categorized for general population. When the IRC was ready to process an inmate for routine mental health screening, the inmate was relocated from the overflow area for that screening.

17. It is also my understanding that the ACLU has asserted that IRC inmates have been chained to gurneys in the MCJ hallways in an attempt to move them from the IRC Front Bench where the duration would have to be reported under

the Preliminary Injunction. This is inaccurate. While inmates were placed on gurneys near in the MCJ MOSH area hallway in order to be in proximity to the qualified mental health professionals, none of these inmates were assigned to the IRC at the time. All of these inmates had previously undergone mental health screening, had previously been processed through the IRC, had received and spent time in permanent housing in the LACJ, and were awaiting transfer to High Observation Housing ("HOH") due to suffering from an assessed mental health crisis. This practice was briefly employed to ensure that these inmates could not engage in self-harm. Based on my understanding of the Preliminary Injunction, no inmate placed on a gurney was implicated by the Court's orders in this case because none of these inmates were relocated from the IRC. (As noted above, they were being relocated from permanent housing elsewhere in the LACJ.) Finally, this practice of strapping inmates to gurneys as they wait for the availability of HOH has stopped.

18.     In an effort to increase performance in the IRC and best ensure the Department is adhering to the court orders in this case, the Department instituted several corrective actions in the IRC in the midst of the overcrowding issues encountered in February 2023. For instance, in February 2023, the Department created a new sergeant's position in the IRC – staffed 24 hours each day, seven days each week – tasked with the primary duties of ensuring compliance with the holding cell provisions of the preliminary injunction and documenting any instances when those provisions are violated. In addition, the Department has assigned a Custodial Assistant to monitor the time spent by inmates tethered to the Front Bench area of the IRC and ensure that time period does not exceed four hours before the needs of an inmate tethered to the Front Bench are attended to and the inmate is cleared from the Front Bench. The new IRC sergeant's collateral duties include supervising and providing back-up for the Custody Assistant monitoring the IRC Front Bench and

the IRC and ensure that time period does not exceed four hours before the needs of an inmate tethered to the Front Bench are attended to and the inmate is cleared from the Front Bench. The new IRC sergeant's collateral duties include supervising and providing back-up for the Custody Assistant monitoring the IRC Front Bench and documenting any instances when the provisions governing the front bench are violated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed March 13, 2023, at Los Angeles, California.

Paula Tokar

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd
Suite 1725
Los Angeles, CA 90067

603371286.1

6

DECLARATION OF PAULA TOKAR