PETER J. ELIASBERG (189110)
peliasberg@aclusocal.org
MELISSA CAMACHO (264024)
mcamacho@aclusocal.org
**ACLU FOUNDATION OF
SOUTHERN CALIFORNIA**
1313 W. 8th Street
Los Angeles, CA 90017
Phone: (213) 977-9500

CORENE T. KENDRICK (226642)
ckendrick@aclu.org
MARISOL DOMINGUEZ-RUIZ (345416)
mdominguez-ruiz@aclu.org
**ACLU NATIONAL PRISON PROJECT**
39 Drumm St.
San Francisco, CA 94111
Phone: (202) 393-4930

DAVID C. FATHI (*pro hac vice*)*
dfathi@aclu.org
**ACLU NATIONAL PRISON PROJECT**
915 15th St., NW
Washington, D.C. 20005
Phone: (202) 393-4930

*Not admitted in D.C., practice limited to federal courts

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and COUNTY OF LOS ANGELES, in their official capacities, *et al.* <br><br> Defendants. | Case No. CV 75-04111 DDP <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' REPORTS RESPONDING TO ORDER TO SHOW CAUSE (Dkt. 378)** |

Plaintiffs respectfully submit this reply to Defendants' Reports Responding to this Court's November 9. 2022 Order to Show Cause, Dkt No. 378.

Plaintiffs are pleased that Defendants acknowledge that there are far too many people with mental illness classified as P3s or P4s in the jails; that it will be

necessary to move large numbers of them into diversion programs like the ones run by the Office of Diversion and Reentry (ODR) to end the overcrowding and backlogs in the Inmate Reception Center (IRC); and that diverting people with mental illness into ODR's programs increases public safety because those programs "have a proven track record of drastically decreasing recidivism rates amongst the clients they serve." Dkt. No. 378 at 6.

However, Plaintiffs do have concerns with a number of points in Defendants' report and respectfully request the Court seek necessary clarification or additional information about the issues addressed below.

*First*, in response to the first portion of the OSC, Defendants state that they believe that they will need to lower the population of people incarcerated in the jail who are either P3 or P4 from approximately 1,750 to 1,050 to eliminate the bottlenecks in IRC caused by the lack of available permanent HOH housing in the jails. *Id.* at 5. They also state that they will need to divert about 1,500 people incarcerated in the jail who are either P3 or P4 out of custody and into community programs run by ODR or the Department of Mental Health (DMH) to achieve the necessary 700 person reduction. *Id.*

Plaintiffs do not doubt that a substantial reduction in the number of P3s and P4s will be necessary to eliminate bottlenecks that are an important cause of unconstitutional delays. They are concerned, however, that Defendants' reports provide no analysis explaining how they arrived at the estimate that they need to lower the P3 and P4 population by 700 and that they can do so with the creation of 1,500 ODR and DMH community beds.

*Second*, Plaintiffs believe that the timeline Defendants present for the creation of new community beds for diversion of people classified as P3 or P4 is too slow to address the crisis in IRC and is inconsistent with plans the County has already made to create community beds. Defendants' report includes two tables showing the plan to add new community beds of various types by ODR and DMH

for P3s or P4s over five years. *Id*. at 5-6. The tables below recreate Defendants' table but simplify them by omitting the different types of beds, e.g., permanent supportive housing, or skilled nursing facility, and simply shows the number of beds to be created by ODR and DMH per year in their plan.

**Planned Creation of ODR Beds**

| Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|
| 574 | 355 | 309 | 210 | 79 |

**Planned Creation of DMH Beds**

| 72 | 92 | 92 | 173 | 71 |
|---|---|---|---|---|

**Combined Yearly Total of Planned ODR and DMH Beds**

| 646 | 447 | 401 | 383 | 150 |
|---|---|---|---|---|

**Cumulative Total of Planned ODR and DMH Beds**

| 646 | 1,093 | 1,494 | 1,877 | 2,027 |
|---|---|---|---|---|

According to Defendants it will take a little over 36 months to reach the 1,500 bed threshold they estimate it will take to eliminate the backlog of P3 and P4s in IRC who are waiting for permanent HOH Housing in the jails.

But, as explained by Rohini Khanna, who was until recently one of two Deputy Directors from ODR, the Close Men's Central Jail Workgroup, which was chaired by then-Assistant Sheriff Bruce Chase and then-ODR Director, Judge Peter Espinoza (Ret.), the Workgroup developed a plan to create *3,600 new community beds* for people with serious mental illness on a *24 month* timeline. See Declaration of Rohini Khanna ¶¶ 11-12. The plan was based on the Board of Supervisors providing adequate funding and scaling up already existing programs, including those run by ODR. *Id*. ¶¶ 13-14. In developing the plan, the Workgroup consulted regularly with "Correctional Health Services division (CHS), community-based stakeholders and service providers, and other relevant partners." *Id*. ¶ 8. That plan

is set forth in the report entitled *Men's Central Jail Closure Plan: Achieving a Care First Vision*.[1] According to Ms. Khanna, that report was not submitted to the Los Angeles County Board of Supervisors until the "lead consultant and members of the ODR team, including me, met with the leadership of each of the named and involved County departments, to ensure that they were aware of the developed plan and how it could impact their respective departments or what their role would be in implementing this plan, *and each department signed on in support of this plan*." *Id.* ¶ 15 (emphasis added).

      Thus, the 3+year 1,500 bed timeline set forth in Defendants' report to the Court is significantly slower than the 2-year 3,600 bed plan drawn up by the Close MCJ Workgroup and signed off ODR, the Sheriff's Department and all other relevant County departments. Moreover, the realistic nature of the *Close MCJ Report* plan is illustrated by ODR's success in creating 211 new beds for COVID emergency housing for people with serious mental illness in one month in 2020 after receiving funding. *Id.* ¶ 6. Defendants' report does not refer to the Close MCJ Report plan or explain why the plan it now proposes in response to the OSC to address the unconstitutional conditions in IRC will take so much longer to implement.

      *Third*, Plaintiffs are concerned that Defendants' focus on reducing the population of P3s and P4s by diverting them into ODR and DMH programs – while a too slow step in the right direction – is not sufficient to address the numerous causes of backlogs in the IRC. Defendants' report says nothing about creation of beds in the community to divert people who need MOH housing, who are generally classified as P2s. It appears that omission results from Defendants' decision to create MOH housing in both Men's Central Jail and Pitchess North with the apparent goal of being able to move P2s out of IRC faster. However, this is a very troubling response to a serious problem. Dr. Tim Belavich, Director of

---

[1] Available at https://file.lacounty.gov/SDSInter/bos/bc/1104568_DEVELO_1.PDF

Correctional Health Services, has stated "Men's Central Jail is not a good place to have mentally ill individuals, and I advocate against it, and I know my custody partners advocate against it, but without any other options for housing, we are left with that." *See* Declaration of Melissa Camacho. (Dkt 382-1) ¶ 33, Ex M. at 2. Members of the Board of Supervisors have made similar statements about MCJ and housing people with mental illness in it.  Supervisor Hahn described MCJ as "an abomination. It is archaic, and it is not a good place both for those who are incarcerated and also our deputies that have to work there." Statement of Supervisor Janice Hahn, Transcript Board of Supervisors Hearing at 166  (June 22, 2021). Supervisor Solis said about MCJ, "someone earlier said [MCJ] . . . is dungeon.  We know it is.  For Pete's sake, who would want someone stay there when they have mental issues of substance abuse issues."  Transcript Board of Supervisors Hearing at 195-96 (March 1, 2022).

      Defendants are also putting more MOH patients in Pitchess North jail than the Board of State and Community Corrections (BSCC) permits. The MOH units in Pitchess North are in a dormitory setting of 80 beds per dorm. The BSCC, however, notified Defendant Luna that LASD violates state capacity limits for those dorms, as they are rated for only 48 people. Doc. 382-1, ¶ 36, Ex. P at 5, 7. Any plan to eliminate the unconstitutional backlog in IRC should not include putting people with mental illness into a facility not fit for them or putting them in overcrowded housing that violates state regulations.

      Moreover, the creation of MOH beds in MCJ and Pitchess North does not appear sufficient to address the backlog of people in IRC awaiting MOH housing. The reports Defendants are submitting to Plaintiffs' counsel about 12-hour holding cell violations and 24-hour IRC violations show that many of the people who are being held beyond the limits set forth in the PI are waiting for MOH or general population beds.  Of the 358 people in holding cells over 12 hours from Feb. 28-Mar. 16, 2023, only three were awaiting HOH beds. *See* Declaration of Marisol

Dominguez-Ruiz (Dkt. 382-5). ¶ 7, Ex. A. Of the 89 people in IRC more than 24 hours on days for which counsel has data for subsequent housing locations (Feb. 9, Mar. 16, and Mar. 22, 2023), only six were waiting for an HOH bed; and none in IRC overflow awaited HOH beds. Camacho Dec. (Dkt. 382-1) ¶¶ 13-14, 21, Ex. D, E, F; Doc. 379-4 ¶ 6 (IRC overflow used for those who do not require HOH).

Accordingly, Plaintiffs respectfully request that the Court order Defendants to produce the following additional written information relevant to the November 9, 2022 Order to Show Cause:

1) The basis for Defendants' estimate that they will need to lower the P3 and P4 jail population by about 700 people and will need to build about 1500 additional community beds for P3s and P4s to achieve the 700 person reduction;

2) An explanation of why Defendants cannot create 1500 additional beds for P3s and P4s in 24 months or less in light of the plan set forth in the Men's Central Jail Closure Plan report and ODR's standing up 211 community beds for people with serious mental illness within one month of receiving funding;

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

3) An explanation of how Defendants intend to reduce the population of P2s in the jail to a) eliminate the backlog of people in IRC awaiting MOH housing and b) eliminate the need to house P2s in MOH housing in MCJ or in dorms in Pitchess North that are operated above BSCC capacity.

Respectfully submitted,

DATED: April 5, 2023

By: */s/ Peter J. Eliasberg*
Peter J. Eliasberg
Melissa Camacho-Cheung
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

David C. Fathi
Corene T. Kendrick
Marisol Dominguez-Ruiz
**ACLU NATIONAL PRISON PROJECT**

Attorneys for Plaintiffs Dennis Rutherford, *et al.*

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2023, I electronically transmitted the above document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to Counsel for Defendants who are registered CM/ECF users.

DATED: April 5, 2023

       /s/ Peter J. Eliasberg
Peter J. Eliasberg
ACLU Foundation of Southern California

*Attorneys for Plaintiffs*