# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, *et al.*, | Case No. CV 75-04111 DDP |
| Plaintiffs, | **[REVISED PROPOSED]** |
| vs. | **ORDER AND JUDGMENT OF SANCTIONS FOR CONTEMPT OF COURT** |
| ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and COUNTY OF LOS ANGELES, in their official capacities, *et al.* | |
| Defendants. | |

     Having considered all filings, arguments, and testimony, on _____, 2023, the Court issued by separate Order its decision and reasoning finding Defendants in contempt of court. Doc. ____. The Court now sets forth its judgment of sanctions for Defendants' contempt of court.

     When considering a contempt sanction, the court should consider "the character and magnitude of harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). Courts have broad equitable power to order appropriate prospective relief for civil contempt. *S.E.C. v. Hickey*, 322 F.3d 1123, 1128, *amended*, 335 F.3d 834 (9th Cir.

2003). A court is not limited solely to monetary sanctions – it can also modify previous orders, or issue new injunctive relief as a compensatory contempt sanction. *Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016). Civil contempt sanctions can either be compensatory or coercive, or both. *Parsons v. Ryan*, 949 F.3d 443, 455-56 (9th Cir. 2020).

The Court concludes that both compensatory injunctive sanctions and coercive prospective financial sanctions are warranted.

## BACKGROUND

On September 27, 2022, this Court granted the stipulated Preliminary Injunction ("PI"), Doc. 351, and extended the PI on December 20, 2022, Doc. 371, and March 14, 2023. Doc. 381. The PI addressed overcrowding in the Los Angeles County Jail system's Inmate Reception Center (IRC), delays in processing and moving incarcerated people to permanent housing, the provision of adequate medical and mental health care to people in the IRC awaiting permanent housing, and general living conditions within the IRC; it also directed Defendants to log and provide reports on people detained beyond the timeframes set forth in the PI. *See generally* Doc. 351. This PI was rooted in and joined numerous other Court judgments and stipulations issued over the past 45 years setting forth basic standards for the IRC. *See Rutherford v. Pitchess*, 457 F. Supp. 104, 109-10, 113-14 (C.D. Cal. 1978), *rev'd in part on other grounds sub nom. Block v. Rutherford*, 468 U.S. 576 (1984); Feb. 16, 1979 Judgment [Doc. 318-2 at 126-131]; Aug. 27, 1992 Stipulation and Order [Doc. 318-2 at 133-144]; Nov. 18, 2005 Stipulation and Order [Doc. 64]; *Rutherford v. Baca*, 2006 WL 3065781, at *3-4 (C.D. Cal. Oct. 27, 2006) (Order to Show Cause) [Docs. 102, 121].

On February 27, 2023, Plaintiffs filed their Notice of Motion and Motion for an Order to Show Cause, supported by numerous class members' sworn declarations, a declaration from a psychiatric expert, Dr. Terry Kupers, documents and logs created by Defendants, and evidence of public statements made by multiple

County officials about the conditions in the IRC and the jail, and what appear to be efforts by jail staff to avoid the Court-ordered time limits set forth in the PI. The parties have fully briefed the matter, and have argued and presented the matter in court hearings. *See generally* Docs. 382, 379, 382, ___, ____, ___, ____. The parties also fully briefed the Court's Order to Show Cause related to the PI (Doc. 368). *See* Docs. 378, 383. The Court found Defendants in contempt of court on _____, 2023. Doc. ____.

## **CONTEMPT SANCTIONS**

The Court concludes that injunctive relief is warranted to compensate the Plaintiff class for Defendants' noncompliance with the PI as well as with previous court orders related to conditions in the IRC. These remedial sanctions are designed to address the root causes of the conditions in the IRC.

**A. Conditions in the IRC**

**IT IS ORDERED THAT** Defendants, their officers, agents, employees, attorneys, assignees, and all those in active concert with them are hereby restrained and enjoined from:

1. Holding an incarcerated person in the IRC for more than 24 hours. The IRC consists of a reception and booking area; a classification area; a bath area; the IRC Clinic (which includes the IRC Clinic Front Bench); a series of holding cells, and Module 231, an overflow module in Twin Towers Correctional Facility. This order shall not apply to Module 231. In the event that a person remains continuously in the IRC for more than 24 hours, Defendants shall document the following:

    (a) the name and booking number of the person and the date and time the person first entered the IRC;

    (b) the reasons why the person remained in the IRC longer than 24 hours;

    (c) the date and time the person was removed from the IRC; and

    (d) the location of the person after removal from the IRC.

Plaintiffs shall be provided with this documentation upon request.

In the event that a person leaves the IRC to go to court, the 24-hour period shall begin anew if the person returns to the IRC. If a person leaves the IRC for medical treatment at another facility within or without the Los Angeles County Jail System, the 24-hour period shall be paused and shall resume when the person returns to the IRC, unless the person is permanently housed at IRC 231 directly upon return from medical care. In the event that a person leaves the IRC for medical treatment at another facility within or without the Los Angeles County Jail System, the 24-hour period shall begin anew if the person returns to the IRC after an absence lasting twelve hours or more, if the person has been provided a bed off-site.

2.  Holding an incarcerated person on the IRC Clinic Front Bench, handcuffed, chained, or tethered to a chair or any other object, for more than four hours.  In the event a person remains on the Front Bench for more than four hours, Defendants shall document the following:

(a)  the name and booking number of the person and the date and time the person was first placed on the Front Bench;

(b)  the reason(s) why the person is on the Front Bench;

(c)  the date and time of initial mental health screening;

(d)  the date and time of any subsequent mental health or medical evaluation;

(e)  the date and time each person was removed from the Front Bench temporarily, how long the person remained untethered, and the reason why (e.g., escort to bathroom, mental health screening);

(f)  the date and time each person was permanently removed from the Front Bench; and

(g)  the location of the person after removal from Front Bench.

Plaintiffs shall be provided with this documentation upon request pursuant to

the terms of the parties' HIPAA-compliant protective order (Doc. 362).

3. Holding more people in a holding cell in the IRC than established by the Board of State and Community Corrections (BSCC) holding capacity without first exhausting every other means to avoid placing more people in a holding cell than the holding capacity permits. *See* Doc. 347-2. Two areas, however, will not be governed by the BSCC limits: (1) IRC Clinic Cage and (2) Cell 113. For purposes of this Order, the IRC Clinic cage, when locked, shall have a capacity of 50 people. Cell 113 shall be used as a holding cell with a 16-person capacity. Additionally, the "Release" cell is not subject to the provisions of the Preliminary Injunction provided that it continues to be used as a staging cell for brief release purposes. In the event more people are in a holding cell than holding capacity permits, this event shall be documented as follows:

    (a) the names and booking numbers of the persons and the date and time of placement;

    (b) the type of placement;

    (c) the date and time of release;

    (d) the number of persons in the cell at time of placement; and

    (e) the identification of the particular holding cell or cage.

Plaintiffs shall be provided with this documentation upon request.

4. Holding an incarcerated person in an IRC holding cell for more than 12 hours total. Moving a person from one holding cell in the IRC to another holding cell in the IRC does not re-start the 12-hour clock. In the event that a person is detained in a holding cell for longer than 12 hours, Defendants shall document the following:

    (a) the name and booking number of the person and the date and time of placement;

    (b) the reason(s) why the person was in holding cell or cells for more than 12 hours;

(c) the type of placement;

(d) the date and time of release;

(e) the number of persons in the cell at time of placement; and

(f) the identification of the particular holding cell.

Plaintiffs shall be provided with this documentation upon request. In the event that a person leaves the IRC holding cell to go to court, the 12-hour period shall begin anew if the person returns to the IRC.

5. Holding an incarcerated person locked in the IRC cage, when locked, for more than eight hours total. In the event that an incarcerated person is held in the IRC Clinic cage, when locked, for more than eight hours, Defendants shall document the following:

(a) the name and booking number of the person and the date and time of placement;

(b) the reasons why an individual was in the IRC Clinic cage for more than eight hours;

(c) the type of placement;

(d) the date and time of release; and

(e) the number of persons in the cage at time of placement.

6. Holding an incarcerated person in the IRC clinic area, cage, or any cell in the IRC when that location is not in a clean and sanitary condition, with access to functioning toilets, potable drinking water, clean water to wash, and sufficient garbage receptacles.

7. Holding an incarcerated person in the IRC clinic area, cage, or any cell in the IRC without providing ongoing access to adequate medical and mental health care, including but not limited to regular pill call.

### B. Implementation of Remedial Plans

Additionally, Defendants have provided the Court with detailed corrective action plans that they have represented will address the root causes why class

members spend more than 24 hours in the IRC before receiving permanent housing, spend more than four hours at the Front Bench, spend more than 12 hours in the holding cells, and why conditions in the IRC deteriorate to unsanitary conditions or to such an extent that class members do not receive adequate health care or medications. *See* Doc. 378 at 3-10, 378-1, 384.[1]

**IT IS FURTHER ORDERED** that Defendants shall implement the remedial plans presented to the Court in accordance with the timeframes that Defendants set forth in their past submissions. Defendants shall implement all programmatic and policy changes set forth, according to the timeframes in Defendants' plans. *See Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc) (holding that a "[l]ack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations.") (citations omitted).[2]

Specifically, Defendants are **ORDERED** as follows:

8. Defendants shall continue to train all personnel who work in the IRC on the requirements set forth above at Paragraphs 1-7. *See* Doc. 384 at 7-8.

9. Defendants shall continue to implement the new data tracking "Inmate Tracking System" and Defendants shall ensure that all funding necessary to keep the tracking system functional and operational is in place immediately and in the future. *See* Doc. 384 at 8-10.

10. Defendants shall maintain IRC health care staffing levels at no less than the levels set forth in their April 14, 2023 filing (Doc. 384 at 11-13), and continue

---

[1] Citations to the docket are to the page numbers assigned by the Court's Electronic Case Filing system.

[2] If Defendants encounter unforeseen circumstances that make the timely and complete implementation of their remedial plans impossible, they shall immediately notify counsel for Plaintiffs, and if necessary, notify the Court. Any request for modification or termination of this Order shall be presented to the Court through a properly-noticed motion to modify pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure, if the parties are unable to stipulate to such modification or termination.

1  to maintain the 20 percent pay increase differential for all health care staff in the
2  LACJ. *Id*. at 12-13. Nothing in this Order shall prevent Defendants from increasing
3  the staffing levels above those in their filing, or setting the pay differential at greater
4  than 20 percent.

5        11.    Defendants shall immediately implement and maintain a bridge
6  medication policy and practice whereby a clinician in IRC will attempt to ascertain
7  during screening whether a person has a valid prescription(s) for medication by
8  contacting any pharmacy, doctor's office, medical clinic or other medical or mental
9  health provider, or family member(s) who may be able to verify the prescription(s)
10 was prescribed and that it is valid. If the clinician verifies a person's prescription,
11 that person will be provided bridge medication. If the prescription cannot be verified,
12 the person will receive a psychiatric evaluation while still in the IRC to determine
13 whether they should be prescribed medication if: a person states they are taking
14 medication, states that they want or need to take medication, has documented
15 medication, has a history of mental illness, asks for a psychiatric evaluation, or
16 exhibits symptoms indicating a need for a psychiatric evaluation. *See* Doc. 384 at
17 13.

18       12.    Defendants shall implement and maintain a staffing plan whereby there
19 is psychiatric staff in IRC a minimum of 14 hours a day, whose responsibilities
20 include doing psychiatric assessments of people who do not qualify for psychiatric
21 medication under the bridge medication policy set forth in paragraph 11 above.
22 Defendants shall make all reasonable efforts to expand psychiatric staff so that
23 psychiatric staff are present in IRC 24 hours a day, 7 days a week. *See* Doc. 384 at
24 12.

25       13.    Defendants shall implement and maintain their more robust cleaning
26 schedule in the IRC, and have contract janitorial staff in place within 60 days of this
27 Order. Doc. 384 at 14.

28       14.    No later than 60 days from the issuance of this Order, Defendant Board

of Supervisors shall allocate the funding so that Defendant County will "bring an additional 1,211 new interim housing or permanent supportive housing beds on-line by the end of fiscal year 2024-25 (June 30, 2025)." Doc. 384 at 17. Nothing in this Order shall prevent Defendants from increasing the number of permanent supportive housing beds above 1,211, or from having them in place by an earlier deadline.

15. No later than 60 days from the issuance of this Order, Defendants shall finalize their contract with the California Department of State Hospitals (DSH) to "expand its current inventory of 794 beds to a total of 1,344 beds that will be used to divert FIST from the LACJ over the next five years, including over one hundred beds that will provide acute and subacute care for such individuals." Doc. 384 at17, 20. Nothing in this Order shall prevent Defendants from increasing the number of contracted beds to be above 1,344, or from having the beds in place by an earlier deadline.

16. No later than 60 days from the issuance of this Order, Defendants shall finalize an agreement from the California Department of Corrections and Rehabilitation ("CDCR") to expedite the transfer of persons in the jails sentenced to state prison terms, including but not limited to an agreement from CDCR to increase the number of specialty transfers it will accept each week, including people with disabilities or mental health concerns. Doc. 384 at 19-20.

17. No later than 60 days from the issuance of this Order, Defendant Board of Supervisors shall allocate funding to immediately start the implementation of the recommendations of the County Justice, Care, and Opportunities Department ("JCOD") set forth in JCOD's March 8, 2023 Report Back, filed with the Court at Doc. 378-1 at 2-21. This includes, but is not limited to, the recommendations that the County "increase its network of other (non-State Hospital) subacute psychiatric beds … either via contract or direct operation …" *id*. at 8, "starting with a pilot to develop 500 secured subacute mental health care beds…" *id.* at 11; *see also* Doc. 378 at 6-7; Doc. 384 at 17-10.

18. No later than 60 days from the issuance of this Order, Defendant Board of Supervisors shall allocate the funding to immediately start the implementation of the Phased Implementation Plan to increase community placements for divertible populations, as set forth in the March 8, 2023 Report Back from the Department of Health Services and Department of Mental Health, "Addressing the Mental Health Crisis in Los Angeles County: Developing Mental Health Care Facilities to Help Depopulate the Jail," filed with the Court at Doc. 378-1 at 22-38; *see also* Doc. 378 at 6-7 (chart with timeframe for adding P3/P4 beds on Years 1-5).

19. No later than 60 days from the issuance of this Order, Defendant Board of Supervisors shall allocate the funding to immediately start the implementation to "continue to divert P2 inmates from custody when (a) they qualify for diversion based on a FIST designation; or (b) a P3 or P4 inmate is not suitable for an available ODR bed that can be filled with a P2 inmate." Doc. 378 at 9-10.

Defendants shall provide the Court with bimonthly updates on the status of implementing these remedial efforts every 60 days, starting with 60 days from the date of this Order.

## PROSPECTIVE FINANCIAL SANCTIONS

The Court sets forth the following prospective financial sanctions to coerce future compliance with Paragraphs 1-7 of the Order, beginning six months from the date of this Order. Prospective per diem penalties are an appropriate civil contempt sanction. *Parsons*, 949 F.3d at 452, 456, 459; *Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, No. C14-1178-MJP, 2017 WL 4700326, at *1-2 (W.D. Wash. Oct. 19, 2017). "[C]oercive civil sanctions, intended to deter, generally take the form of conditional fines" because any future accrual of the threatened fines can be avoided by a party by simply complying with the past orders. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629, 630 (9th Cir. 2016); *see also Kelly v. Wengler*, 979 F. Supp. 2d 1104, 1117 & n.27 (D. Idaho 2013) (holding that a prospective fine schedule against prison officials of $100 per hour for each vacant mandatory staff

post is not punitive because "the amount of fine, if it succeeds in making them comply, should prevent the fine from reaching millions because Defendants will fix their behavior and begin living up to their promise in the Settlement Agreement. If a *prospective* fine leads to $2.4 million in penalties, [the party] has no one to blame but itself.") (emphasis in original), *aff'd*, 822 F.3d 1085 (9th Cir. 2016).

| |
|---|
| **Violations of the 24-hour IRC requirement (Paragraph 1)** |
| • $250 per person who exceeds 24 hours in IRC (housed 24-48 hours)<br>• $500 per person who exceeds 48 hours (housed 48-72 hours)<br>• $1,000 per person who exceeds 72 hours, and $1,000 for each 24 hours thereafter |
| **Violations of the 4-hour Front Bench requirement (Paragraph 2)** |
| • $250 per person for the first hour beyond the 4-hour limit<br>• $500 per person for first two hours beyond the 4-hour limit<br>• $1,000 per person for the first three hours beyond the 4-hour limit<br>• $2,500 per person for the first four hours beyond the 4-hour limit<br>• $5,000 per person for the first eight hours beyond the 4-hour limit<br>• $7,500 per person for the first 12 hours beyond the 4-hour limit<br>• $10,000 per person for the first 24 hours beyond the 4-hour limit, $10,000 for every portion of 24 hours thereafter |
| **Violation of the holding cell 12-hour limit (Paragraph 4)** |
| • $250 per person for the first 12 hours beyond the 12-hour limit<br>• $500 per person for the first 24 hours beyond the 12-hour limit<br>• $1,000 per person for the first 36 hours beyond the 12-hour limit, and $1,000 for every 24 hours thereafter |
| **Violations of the medication/health care requirements (Paragraph 7)** |
| • $250 per person for each first missed dose of each medication that the person had been taking prior to incarceration that was not prescribed as a bridge medication;<br>• $500 per person for each second missed dose of each medication that the person had been taking prior to incarceration that was not prescribed as a bridge medication;<br>• $1,000 per person for each third missed dose of each medication that the person had been taking prior to incarceration that was not prescribed as a bridge medication, and for each missed dose of each medication after the third missed dose. |

The fines will be cumulative. For example, a person chained to the Front

11

Bench between 7 and 8 hours (in other words, between three and four hours beyond the four-hour limit) would result in a sanction of $1,750 ($250 for the first hour beyond the limit, an additional $500 for the second hour, and an additional $1,000 for exceeding the limit by three hours). Every 90 days after the first time there is a violation of a provision, the fine amounts listed in the chart shall double. *See Trueblood*, 2017 WL 4700326, at *7.

Defendants shall deposit contempt sanctions with the Registry of the Court no later than the 15th of each month for the violations in the previous month. Defendants shall also file on the docket on the 15th of each month a report detailing for every provision, the booking number of the class member, and how long the class member was held beyond the timeframes. If there are violations that trigger financial sanctions, the Court will issue a further order directing the parties to offer their proposals on how the funds should be allocated and distributed by the Court.

## **CONCLUSION**

Based upon the entire record, the Court finds that the relief granted by this order satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violations of Plaintiffs' federal rights, and is the least intrusive means necessary to correct the violation of Plaintiffs' federal rights. The Court retains jurisdiction to enforce this and any subsequent remedial orders.

**IT IS SO ORDERED.**

Dated: _____, 2023

_____
HONORABLE DEAN D. PREGERSON
United States District Court Judge