1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

| | |
|---|---|
| DENNIS RUTHERFORD, *et al*., | Case No. CV 75-04111 DDP |
| Plaintiffs, | |
| vs. | **ORDER GRANTING JOINT STIPULATION (Doc. 399)** |
| ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, *et al.* | |
| Defendants. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On September 27, 2022, this Court granted the stipulated Preliminary Injunction ("PI"), Doc. 351, and extended the PI on December 20, 2022, Doc. 371, and March 14, 2023. Doc. 381. The PI addressed overcrowding in the Los Angeles County Jail system's Inmate Reception Center ("IRC"), delays in processing and moving incarcerated people to permanent housing, the provision of adequate medical and mental health care to people in the IRC awaiting permanent housing, and general living conditions within the IRC; it also directed Defendants to log and provide reports on people detained beyond the timeframes set forth in the PI. *See generally* Doc. 351. This PI was rooted in and followed numerous other past Court judgments and stipulations issued over the past 45 years, some of which set forth

1

1   basic standards for the IRC. *See Rutherford v. Pitchess*, 457 F. Supp. 104, 109-10,

2   113-14 (C.D. Cal. 1978), *rev'd in part on other grounds sub nom. Block v.*

3   *Rutherford*, 468 U.S. 576 (1984); Feb. 16, 1979 Judgment [Doc. 318-2 at 126-131];

4   Aug. 27, 1992 Stipulation and Order [Doc. 318-2 at 133-144]; Nov. 18, 2005

5   Stipulation and Order [Doc. 64]; *Rutherford v. Baca*, 2006 WL 3065781, at *3-4

6   (C.D. Cal. Oct. 27, 2006) (Order to Show Cause) [Docs. 102, 121].

7      On February 27, 2023, Plaintiffs filed their Notice of Motion and Motion for

8   an Order to Show Cause, supported by numerous class members' sworn

9   declarations; and documents and other logs created by Defendants. The parties have

10  fully briefed the matter, and have argued and presented the matter in court hearings.

11  *See generally* Docs. 382, 379, 382. The parties also fully briefed the Court's Order

12  to Show Cause related to the PI (Doc. 368). *See* Docs. 378, 383.

13     At Defendants' request, the Court has scheduled additional briefing on the

14  contempt motion, as well as two days of evidentiary hearings to be held in late June,

15  2023. *See* Docs. 392-394. The parties have met and conferred, and have concluded,

16  in light of improved conditions in the IRC resulting from the remedial actions taken

17  in recent months by Defendants, which are detailed below, that it is in the best

18  interest of both the class members and the Defendants that rather than continue any

19  protracted litigation related to Plaintiffs' Motion, that the parties instead resolve to

20  enter into a stipulated, permanent, and enforceable order memorializing the remedial

21  efforts that Defendants have proposed to take and are currently taking to address the

22  root causes of overcrowding, delays, and deteriorating conditions in the IRC, and to

23  ensure compliance with the PI (Doc. 368), the 2005 Stipulation (Doc. 64), and the

24  1979 Judgment. These remedial efforts are designed to address the root causes of the

25  conditions in the IRC.

26     The Court has reviewed the parties' Joint Stipulation (Doc. 399) and

27  concludes that it is fair, and protects the interest of class members.

28     //

2

1       Accordingly, **IT IS SO ORDERED**:

2       Defendants, their officers, agents, employees, attorneys, assignees, and all

3 those in active concert with them are hereby permanently restrained and enjoined

4 from:

5       1.    Holding an incarcerated person in the IRC for more than 24 hours. The

6 IRC consists of a reception and booking area; a classification area; a bath area; the

7 IRC Clinic (which includes the IRC Clinic Front Bench); a series of holding cells;

8 and Module 231, an overflow module in Twin Towers Correctional Facility.  This

9 order shall not apply to Module 231.  In the event a person shall remain continuously

10 in the IRC for more than 24 hours, Defendants shall document the following:

11             (a) the name and booking number of the person and the date and time

12                 the person first entered the IRC;

13             (b) the reasons why the person remained in the IRC longer than 24

14                 hours;

15             (c) the date and time the person was removed from the IRC; and

16             (d) the location of the person after removal from the IRC.

17     Plaintiffs shall be provided with this documentation upon request.

18       In the event that a person leaves the IRC to go to court or is placed in permanent

19 housing after leaving the IRC, the 24-hour clock shall stop and shall begin anew if

20 the person returns to the IRC. If a person leaves the IRC for medical treatment at

21 another facility within or outside the Los Angeles County Jail System, the 24-hour

22 clock shall be paused and shall resume when the person returns to the IRC, unless

23 the person is housed at IRC 231 directly upon return from medical treatment. In the

24 event that a person leaves the IRC for medical treatment at another facility within or

25 outside the Los Angeles County Jail System, the 24-hour period shall begin anew if

26 the person returns to the IRC after an absence extending twelve hours or more, where

27 the person has been provided a bed off-site.

28       2.    Holding an incarcerated person on the IRC Clinic Front Bench,

3

handcuffed, chained, or tethered to a chair or any other object, for more than four hours.  In the event a person remains on the Front Bench for more than four hours, Defendants shall document the following:

     (a)  the name and booking number of the person and the date and time the person was first placed on the Front Bench;

     (b)  the reason(s) why the person is on the Front Bench;

     (c)  the date and time of initial mental health screening;

     (d)  the date and time of any subsequent mental health or medical evaluation;

     (e)  the date and time each person was removed from the Front Bench temporarily, how long the person remained untethered, and the reason why (e.g., escort to bathroom, mental health screening);

     (f)  the date and time each person was permanently removed from the Front Bench; and

     (g)  the location of the person after removal from Front Bench.

Plaintiffs shall be provided with this documentation upon request pursuant to the terms of the parties' HIPAA-compliant protective order (Doc. 362).

3.    Holding an incarcerated person in an IRC holding cell for more than 12 hours total, or holding more people in a holding cell than its rated capacity by the Board of State and Community Corrections. *See* Doc. 347-2.  Moving a person from one holding cell in the IRC to another holding cell in the IRC does not re-start the 12-hour clock unless the person is provided with a bunk and bedding, as defined by Cal. Code. Reg. Tit. 15 § 1270,[1] in accordance with Cal. Code. Reg. Tit. 24

---

[1] Title 15, § 1270 requires that

> The standard issue of clean suitable bedding and linens, for each incarcerated person entering a living area who is expected to remain overnight, shall include, but not be limited to:

(cont'd)

Case No. CV-75-04111-DDP

**ORDER GRANTING JOINT STIPULATION (Doc. 399)**

§ 1231.2.2. In the event that a person is detained in a holding cell for longer than 12 hours, Defendants shall document the following:

        (a) the name and booking number of the person and the date and time of placement;

        (b) the reason(s) why the person was in holding cell or cells for more than 12 hours;

        (c) the type of placement;

        (d) the date and time of release;

        (e) the number of persons in the cell at time of placement; and

        (f) the identification of the particular holding cell.

Plaintiffs shall be provided with this documentation upon request. In the event that a person leaves an IRC holding cell to go to court or is placed in permanent housing after leaving the IRC, the 12-hour clock shall stop and begin anew if the person returns to the IRC.  If a person is provided with a bed in the holding cell, or leaves a holding cell to a temporary housing location with a bed or the person's former permanent housing location with a bed, the 12-hour clock shall pause and shall resume when the person returns to an IRC holding cell without a bed, unless the person is moved to such a location for more than 12 hours, in which case the clock shall stop and begin anew if the person returns to the IRC.

---

(a) one serviceable mattress which meets the requirements of Section 1272 of these regulations;
(b) one mattress cover or one sheet;
(c) one towel; and
(d) one blanket or more depending upon climatic conditions.
Policy and procedure shall require that items (a), (b), and (d) above be provided prior to the first night in the facility.
[. . .]
Temporary Holding facilities which hold persons longer than 12 hours shall provide an incarcerated person with bedding and linen that meet the requirements of (a), (b), and (d) above prior to their first night in the facility and every night thereafter.

5

4.   Holding an incarcerated person in the IRC Clinic cage, when locked, for more than eight (8) hours total.  In the event that an incarcerated person is held in the IRC Clinic cage, when locked, for more than eight hours, Defendants shall document the following:

  (a) the name and booking number of the person and date and time of placement;

  (b) the reasons why a person was in the Clinic cage for more than eight hours;

  (c) the type of placement;

  (d) the date and time of release;

  (e) the number of persons in the cage at time of placement.

Plaintiffs shall be provided with this documentation upon request.

5.   Holding an incarcerated person in the IRC Clinic area, cage, or any cell in the IRC when that location is not in a clean and sanitary condition, with access to functioning toilets, potable drinking water, clean water to wash, and sufficient garbage receptacles.

6.   Holding an incarcerated person in the IRC clinic area, cage, or any cell in the IRC without providing ongoing access to adequate medical and mental health care, including but not limited to regular pill call.

* * * *

7.   Defendants have provided detailed corrective action plans that they assert will address a number of root causes for why class members spend more than 24 hours in the IRC before receiving permanent housing, spend more than four hours at the Front Bench, spend more than 12 hours in the holding cells, and why conditions in the IRC deteriorate to unsanitary conditions or to such an extent that class members do not receive adequate health care or medications. Defendants assert that these plans have brought them into substantial compliance with these requirements. *See, e.g.*, Docs. 378 at 3-10, 378-1, 384, 396.

6

8.     As part of these corrective action plans, within 30 days of when this Order is entered by the Court, Defendants shall take the following remedial actions to address conditions in the IRC to the extent they are not already being undertaken (collectively, "the Remedial Actions"):

(a)     The Sheriff shall issue a Unit Order specifically setting forth and putting all personnel who work in the IRC on notice of the requirements set forth in paragraphs 1-6 above.

(b)     Defendants have trained and shall continue to train all personnel who work in the IRC on the requirements set forth in paragraphs 1-6 above.  All new personnel who begin work in the IRC shall receive such training within 10 days of when they begin work in the IRC, and all personnel in the IRC shall receive annual refresher training addressing these requirements in a format determined by Defendants.

(c)     The Sheriff has created a new supervisory position in the IRC which is filled by a sergeant on each of the three shifts of Los Angeles County Sheriff's Department ("LASD") personnel who cycle through the IRC each day (the "IRC Sergeant").  The IRC Sergeant shall monitor Defendants' compliance with the requirements set forth in paragraphs 1-6 above 24 hours each day, seven days each week.

(d)     Defendants have implemented and shall maintain a new data tracking system -- the Shared Intake Management (or "SIM") System -- in the IRC, which tracks, in real time, for each incarcerated person in the IRC the following information, among other information:  (1) how long that person has been in the IRC; (2) whether, and for how long, that person has been handcuffed, chained, or tethered in any other way to the IRC Clinic Front Bench; and (3) how long that person has been locked in an IRC holding cell or IRC cage.  The SIM System further provides an alert to IRC staff when any violation of the provisions set forth in paragraphs 1-4 are approaching in the case of any inmates, and, to the extent any of

7

**ORDER GRANTING JOINT STIPULATION (Doc. 399)**

the time limitations set forth in paragraphs 1-4 above are exceeded, it allows Defendants to generate a report setting forth such instances and an opportunity to explain why the time limitation was exceeded, supported by records tracking the movement of the individual in question between the time he entered the IRC and the time he exited the IRC.

(e)     The County has increased the number of Correctional Health Service ("CHS") employees designated to provide mental health services in the IRC, and shall maintain a staffing plan to include (1) two managers; (2) four supervisors; and (3) 24 clinicians, consisting of psychiatric social workers, psychologists, and mental health nurses.

(f)     To address unexpected CHS staffing shortages in the future in the IRC, the County shall cross-train 10 CHS employees who do not work in the IRC on the complex work demanded of CHS staff in the IRC so they can provide overtime hours when needed to account for CHS staffing shortages in the IRC.

(g)     The County has embedded a psychiatric staff stationed in the IRC consisting of the full-time equivalents of 2.75 psychiatrists and 6.25 psychiatric nurse practitioners (with two additional psychiatric nurse practitioners on-boarding who will be added to this staff). The county shall maintain a staffing plan of 2.75 FTE psychiatrist and 8.25 FTE psychiatric nurse practitioners. Currently, this staff provides 24/7 psychiatric coverage in the IRC from Tuesday through Friday, 10-17 hours on Saturdays, 14 hours on Sundays, and 21 hours on Mondays.

(h)     Defendants shall implement and maintain a Bridge Medication Policy and practice whereby a clinician in IRC the will attempt to ascertain during screening whether a person has a valid prescription(s) for medication by contacting any pharmacy, doctor's office, medical clinic or other medical or mental health provider, or family member(s) who may be able to verify the prescription(s) was prescribed and that it is valid.  If the clinician verifies a person's prescription, that information will be provided to a prescribing provider, who will determine whether

8

to bridge the medications or provide an alternative based on their evaluation. If the prescription cannot be verified, and that person leaves the IRC prior to an evaluation by a psychiatric provider, the person shall be expedited for a psychiatric evaluation, and shall be seen no later than within 24 hours from the time of the attempt to bridge the person's medication.

(i)    Additionally, Defendants shall maintain the psychiatric staff referenced in paragraph 8(g) above in order to provide, to the greatest degree possible, persons with mental health conditions or symptoms a psychiatric assessment for medication in the IRC before transferring to permanent housing. A person will be referred for a psychiatric evaluation while still in the IRC to determine whether they should be prescribed medication if: that person states they are taking medication, states that they want or need to take medication, has a documented history of receiving medication during a prior incarceration, has a history of mental illness, asks for a psychiatric evaluation, or exhibits symptoms indicating a need for a psychiatric evaluation. Those class members who receive a psychiatric referral in the IRC, but do not receive a corresponding psychiatric assessment in the IRC, shall be referred to Psych Line without requiring a clinical interview.

(j)    Defendants have implemented and shall maintain a new, robust cleaning schedule in the IRC which is staffed by newly-hired janitorial crews and supervised inmate work crews. In addition, Defendants have instituted the use of a "IRC TRO Compliance Inspection Checklist" in the IRC, which each shift's IRC Sergeant must complete, at a minimum, twice per shift (to be done once per shift by the Sergeant and once per shift by the Sergeant or the Sergeant's designee (which may include the cleaning crew present in the IRC during a shift), for a total of at least six times per day). The IRC TRO Compliance Inspection Checklist requires the IRC Sergeant (or the designee) to note whether each area of the IRC is occupied or vacant; whether there are concerns with toilet paper, trash, water fountains or toilets, or needed repairs or other notes related to sanitation, and to identify

9

1   corrective actions taken based on the observations noted in the checklist.

2          During in-person visits to the IRC, Plaintiffs' counsel may view and request
3   copies of the TRO Inspection Checklist. Plaintiffs' counsel may also review
4   checklists for certain days by emailing the IRC Chief and County Counsel.

5          9.     In addition to the Remedial Actions set forth above, the County is
6   committed to ending bottlenecks in the IRC by depopulating the Los Angeles County
7   Jail ("LACJ") through the diversion of incarcerated persons from the LACJ into non-
8   carceral settings, and particularly by diverting incarcerated persons from the LACJ
9   with serious mental health conditions into non-carceral settings (hereinafter referred
10  to as the "County's Diversion Efforts"). There is currently an inventory of
11  approximately 3,141 non-carceral beds being used to divert people who would
12  otherwise be incarcerated at the LACJ that periodically become available.  The
13  County shall add new beds to the inventory, and plans to add 1,527 additional beds
14  overseen by the Office of Diversion and Re-entry ("ODR") and 164 additional beds
15  overseen by the Department of Mental Health ("DMH") for a total of 1,691 beds,
16  over the next two fiscal years.  The County is finalizing funding for Fiscal Year 23-
17  24 for the first year of this ramp up (814 total additional beds).[2]  Furthermore, the
18  County has authorized the Department of Health Services ("DHS") to enter into a
19  contract with the California Department of State Hospitals for approximately $629
20  million in State funding to increase the number of ODR beds for those accused of
21  felonies found incompetent to stand trial ("FIST") from 794 to 1,344 over five
22  years.[3]  The County plans to add to this inventory of non-carceral beds overseen by
23  ODR and DMH in future years and shall use its best efforts to identify future funding
24  to add non-FIST beds.

25  _____
[2] The 814 beds in FY23-24 are part of the 1,691 beds planned for the next two fiscal
26  years.
[3] The growth of FIST beds funded by this contract for the period up to June 30, 2025
27  is included in the County's anticipated growth of diversion beds through June 30,
2025.  Specifically, the County's anticipated growth of 1,691 beds through June 30,
28  2025 will include 316 added FIST beds funded by this contract by June 30, 2025.

**ORDER GRANTING JOINT STIPULATION (Doc. 399)**

10.   Through this Stipulation, Defendants shall continue, and, where applicable, put into place the Remedial Actions and Diversion Efforts set forth above in paragraphs 8 and 9 respectively to reach and sustain substantial compliance with the requirements set forth in paragraphs 1-6.  Under the terms of this Stipulation, Defendants shall not be in substantial compliance with the requirements of paragraphs 1-4 unless, at a minimum:

(a) fewer than 25 persons who are processed through the IRC in a calendar month are held in the IRC for more than 24 hours in violation of Paragraph 1 (and no person is held in the IRC in a calendar month for more than 36 hours);

(b) there are no more than four (4) days in a calendar month where more than five (5) people are held for more than 24 hours in violation of Paragraph 1;

(c) no more than five (5) people in a calendar month are handcuffed, chained, or otherwise tethered to the IRC Clinic Front Bench for more than four (4) hours in violation of Paragraph 2 (and no person is tethered to the IRC Clinic Front Bench for more than six (6) hours); and

(d) no more than fifteen (15) persons are kept in an IRC holding cell or the IRC cage in a calendar month in violation of paragraphs 3 and/or 4 (and no person is kept in an IRC holding cell for more than 18 hours or in the IRC cage for more than 12 hours).

11.   No later than the 10th of each calendar month, the County shall notify Plaintiffs if it believes Defendants have reached substantial compliance with the requirements of paragraphs 1-4 above during the previous calendar month. Plaintiffs shall notify Defendants within ten days thereafter if they disagree with any conclusions of substantial compliance.

12.   To maintain flexibility in how Defendants manage the IRC, Defendants

11

may modify the Remedial Actions at Paragraphs 8(a), 8(e)-8(g) as Defendants deem appropriate, upon achieving six consecutive months of substantial compliance with Paragraphs 1-4, provided Defendants continue to achieve substantial compliance with the requirements of paragraphs 1-4 above in the IRC. Defendants shall notify Plaintiffs no later than 14 days in advance of any proposed modifications to their Remedial Actions.  Moreover, nothing in this Stipulation shall prevent Defendants from instituting additional or more robust Remedial Actions than set forth above (i.e., increasing IRC staffing, replacing the SIM System with a more comprehensive tracking system which expands on the SIM System's capabilities, etc.).

13.    Plaintiffs reserve the right to file any enforcement action with the Court based on any failure by Defendants to reach or maintain substantial compliance with the requirements of paragraphs 1-6 above subject to the following conditions:  (a) Plaintiffs shall not file any such enforcement action prior to 60 days from the date this stipulation is entered by the Court, in order to allow Defendants the opportunity to implement the Remedial Actions set forth above in a manner to achieve substantial compliance; (b) any such enforcement action brought by Plaintiffs shall be predicated on Defendants' failure to be in substantial compliance with the requirements of paragraphs 1-6, and not based on Defendants' failure to fully implement the Remedial Actions and/or the County's Diversion Efforts, unless those failures to do so contributed to Defendants' failure to meet substantial compliance with the requirements of paragraphs 1-6; and (c) Plaintiffs shall only file any such enforcement action after first meeting and conferring with Defendants in an attempt to resolve the issues that would be the subject of the enforcement action, and, if those issues cannot be resolved by the Parties, mediating any remaining disputes with the federal magistrate judge assigned to this case or any other magistrate judge in the Central District of California provided a mediation can be calendared within ten (10) days. There shall not be a requirement to hold such a mediation if there are emergent situations that arise in the IRC which pose a serious risk of immediate harm to class

12

members.

14. Defendants shall file with the Court, on a quarterly basis, starting on or before October 15, 2023, a report detailing for each of the three months of the previous quarter:

> (a) the status of implementing the Remedial Actions;
>
> (b) whether Defendants believe they are in substantial compliance with paragraphs 1-6 above, including data showing performance with paragraphs 1-4 as set forth in Paragraph 10;
>
> (c) the County's progress in bringing on-line new non-carceral beds pursuant to the County's Diversion Efforts, as well as its status in funding additional non-carceral beds scheduled to be added to the inventories of ODR and DMH after June 30, 2025 pursuant to the County's Diversion Efforts; and,
>
> (d) the impact the County's progress in adding non-carceral beds to the inventories of ODR and DMH is having on eliminating backlogs in the IRC.

Either Party at any time may request a status conference with this Court to address the issues raised in any quarterly status report filed with the Court.

The Court further finds that the relief granted by this stipulation satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violations of Plaintiffs' federal rights, and is the least intrusive means necessary to correct the violation of Plaintiffs' federal rights. The Court retains jurisdiction to enforce this and any subsequent remedial orders.

13

1       The Court orders that the remaining briefing schedule on this Motion

2 (Doc. 398) and the hearings scheduled for June 27-28, 2023, are hereby vacated.

3

4       **IT IS SO ORDERED.**

5

6

7 DATE: June 22, 2023

                                        _____

8                                         Hon. Dean D. Pregerson
                                        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14