OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
County Counsel
  dharrison@counsel.lacounty.gov
Dylan Ford (228699)
Deputy County Counsel
  dford@counsel.lacounty.gov
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone:  (213) 974-1807/(213) 974-1811
Facsimile:   (213) 687-8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
  rdugdale@kbkfirm.com
Michael J. McCarthy (334829)
  mmccarthy@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 272-7904
Facsimile:  (310) 556-2705

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and the COUNTY OF LOS ANGELES, <br><br> Defendants. | Case No. 75-cv-04111-DDP <br><br> **DEFENDANTS' THIRD QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION [DKT. NO. 402]** <br><br> Hon. Dean D. Pregerson <br> Courtroom 9C |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................... 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................... 2

    A.    Background ................................................................................................ 2

    B.    The Stipulated Order ................................................................................. 3

III. BETWEEN JANUARY 2024 AND MARCH 2024, DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE IN ALL BUT ONE AREA OF THE STIPULATED ORDER ...................................................... 6

    A.    Defendants Provided Plaintiffs With Timely Monthly Status Reports ..................................................................................................... 6

    B.    Defendants Have Implemented and Maintained the Remedial Actions Outlined in the Stipulated Order .................................................. 6

    C.    In the Third Quarterly Reporting Period, Defendants Nearly Achieved Substantial Compliance With Every Provision of the Stipulated Order Across the Entirety of the Reporting Period .............. 7

        1.    *Defendants Achieved Substantial (and Nearly Perfect) Compliance With Paragraphs 1-4 in January 2024 and February 2024* ....................................................................... 7

        2.    *In March 2024 Defendants Failed to Achieve Substantial Compliance with Paragraph 3 Due to One Non-Compliant Incident* ................................................................................. 8

        3.    *Despite the Single Setback that Occurred in March 2024 Centered on One Violation Taking Defendants Out of Substantial Compliance for that Month, Defendants Continue to Establish a Track Record Showing Substantially Improved Conditions in the IRC* .......................... 11

IV. NEW NON-CARCERAL BEDS HAVE BEEN ADDED THIS QUARTER ................................................................................................ 12

V. CONCLUSION .............................................................................................. 13

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

DEFENDANTS' THIRD QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

# I.

# INTRODUCTION

For its Third Quarterly Report—spanning the period from January 1, 2024 to March 31, 2024—the County of Los Angeles (the "County") and the Los Angeles County Sheriff (collectively, the "Defendants") continue to report positive progress in complying with the provisions of this Court's June 22, 2023 Stipulated Order (the "Stipulated Order") governing certain conditions at the Inmate Reception Center ("IRC") of the Los Angeles County Jail ("LACJ").  Indeed, with the exception of one incident over this three-month time span, Defendants have otherwise reached substantial compliance with the requirements of the Stipulated Order over this entire reporting period.  This success—which mirrors success Defendants have achieved over the previous two reporting periods—demonstrates remarkable improvements to the conditions in the IRC since the entry of the Stipulated Order, particularly when compared with the conditions that prompted the ACLU to seek injunctive relief from this Court in September 2022.  As shown herein, Defendants have achieved this notable turnaround and obtained near perfect compliance with the stringent requirements in the Stipulated Order over the past nine months through use of a new Shared Intake Management System ("SIMS"), which monitors inmate movement in the IRC in real time and prompts action prior to when violations of the Stipulated Order occur.  Equally important, on the rare occasion when a violation of the Stipulated Order did occur during the Reporting Period, whether due to an unforeseen glitch in the SIMS, human error, or some other circumstance, Defendants have promptly acted to investigate the root cause of the violation and taken steps to ensure the circumstances surrounding those rare violations are not repeated.

As shown in detail below, but for a single violation involving a single inmate that put Defendants out of substantial compliance with Paragraph 3 of the Stipulated Order during March 2024, Defendants would currently be in a position to invoke the

1

relief provided in Paragraph 12 of the Stipulated Order, which grants Defendants added discretion in implementing the remedial actions they are required to take in the IRC after achieving two successive quarters of substantial compliance with Paragraphs 1-4 of the Stipulated Order. However, as also described below, this single violation, although a setback, was critical in that it revealed an issue with SIMS and the backup process that provides a check for that system that must be rectified to ensure Defendants achieve sustained substantial compliance with the requirements of the Stipulated Order. Accordingly, while Defendants would have hoped to report another successful quarter with substantial compliance achieved across the board, the single violation that occurred during the quarter that brought Defendants out of substantial compliance during the month of March 2024 served as an important reminder that no system, computerized or not, is flawless. Defendants will use this moment to build upon their procedures and training to improve on the already outstanding track record that was established over the previous nine months in meeting the requirements of the Stipulated Order and improving conditions in the IRC.

## II.
## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  Background

During the Summer of 2022, Defendants encountered a massive influx of inmates into the IRC when the COVID-related Emergency Bail Schedule was lifted at the end of June 2022; and months later, in February 2023, Correctional Health Services ("CHS") faced a momentary staffing crisis in the IRC. Both of these challenges caused acute backlogs in processing inmates through the IRC and, for a time, impacted the general sanitary conditions and the timely provision of medical and mental health services in the IRC. (Dkt. Nos. 413, 415).

On September 27, 2022, this Court granted Plaintiffs' unopposed Motion for a Temporary Restraining Order and Motion for an Order to Show Cause Why a

Preliminary Injunction Should Not Issue (the "Contempt Motion").  (Dkt. No. 351). As Defendants worked to meet the requirements of the preliminary injunction entered by the Court, the February 2023 CHS staffing shortage referenced above significantly hampered those efforts, prompting Plaintiffs' Motion for an Order to Show Cause Re: Contempt, filed on February 27, 2023.  (Dkt. No. 375).  Over the next four months, Defendants redoubled their efforts to improve conditions in the IRC, initiated a plan to implement corrective actions to realize those improvements, and developed SIMS to provide IRC personnel with real-time data that tracks the location and overall flow of inmates into and out of the IRC, including data tracking the following areas central to the Court's injunctive relief:  (1) the overall length of time an inmate spends in the IRC; (2) the length of time an inmate is tethered to the IRC Front Bench; and (3) the length of time an inmate is in a locked cell or cage in the IRC.

**B.     The Stipulated Order**

Prior to the evidentiary hearing on the Contempt Motion scheduled for June 27, 2023, counsel for Plaintiffs and counsel for Defendants met and conferred and reached a joint stipulation, which the Court granted in the form of an order issued on June 22, 2023 ("Stipulated Order").  (Dkt. No. 402).

The Stipulated Order permanently restrains and enjoins Defendants from violating Paragraphs 1-6 of the Stipulated Order and memorializes Defendants' stated plans for remedial efforts to address overcrowding, delays in processing, the need to move inmates into permanent housing, the provision of adequate medical and mental health care, and the general living conditions in the IRC (hereinafter, the "Remedial Actions").[1]  In this regard, Paragraphs 1-6 of the Stipulated Order set forth the following limitations and conditions for the processing of inmates through

---

[1] A complete description of these Remedial Actions is included in Paragraph 8 of the Stipulated Order.  (Dkt. No. 402 at 7-10).

DEFENDANTS' THIRD QUARTERLY REPORT PURSUANT TO ORDER
GRANTING JOINT STIPULATION

the IRC and requires Defendants to self-report violations of these limitations and conditions:

1. Holding an incarcerated person in the IRC for more than 24 hours.
2. Holding an incarcerated person on the IRC Clinic Front Bench, handcuffed, chained, or tethered to a chair or any other object, for more than four hours.
3. Holding an incarcerated person in an IRC holding cell for more than 12 hours total, or holding more people in a holding cell than its rated capacity by the Board of State and Community Corrections.
4. Holding an incarcerated person in the IRC Clinic cage, when locked, for more than eight (8) hours total.
5. Holding an incarcerated person in the IRC Clinic area, cage, or any cell in the IRC when that location is not in a clean and sanitary condition, with access to functioning toilets, potable drinking water, clean water to wash, and sufficient garbage receptacles.
6. Holding an incarcerated person in the IRC clinic area, cage, or any cell in the IRC without providing ongoing access to adequate medical and mental health care, including but not limited to regular pill call.

(*Id.* ¶¶ 1-6).

The Stipulated Order further requires Defendants to document and provide monthly status reports to Plaintiffs and file a quarterly status report with the Court. (*Id.* ¶ 14). Paragraph 10 of the Stipulated Order defined the parameters that Defendants must meet each month to be considered in substantial compliance with their obligations under this agreement. In this regard, Defendants only achieve substantial compliance with the Stipulated Order's requirements if:

(a) fewer than 25 persons who are processed through the IRC in a calendar month are held in the IRC for more than 24 hours in violation of Paragraph 1 (and no person is held in the IRC in a calendar month for more than 36 hours);

(b) there are no more than four (4) days in a calendar month where more than five (5) people are held for more than 24 hours in violation of Paragraph 1;

(c) no more than five (5) people in a calendar month are handcuffed, chained, or otherwise tethered to the IRC Clinic Front Bench for

4

        more than four (4) hours in violation of Paragraph 2 (and no person is tethered to the IRC Clinic Front Bench for more than six (6) hours); and

    (d)    no more than fifteen (15) persons are kept in an IRC holding cell or the IRC cage in a calendar month in violation of paragraphs 3 and/or 4 (and no person is kept in an IRC holding cell for more than 18 hours or in the IRC cage for more than 12 hours).

(*Id.* ¶ 10).

Pursuant to the Stipulated Order, the County is also required, by no later than the 10th of each calendar month, to notify Plaintiffs if it believes Defendants achieved substantial compliance during the previous calendar month. Thereafter, within ten days of when the County provides Plaintiffs with this monthly assessment, Plaintiffs must notify Defendants if they dispute the County's account of Defendants' compliance with the Stipulated Order's requirements. (*Id.* ¶ 11).

The Quarterly Report, which covers the three months prior to its filing, requires the County to detail:

    (a)    the status of implementing the Remedial Actions;

    (b)    whether Defendants believe they are in substantial compliance with paragraphs 1-6 [], including data showing performance with paragraphs 1-4 as set forth in Paragraph 10;

    (c)    the County's progress in bringing on-line new non-carceral beds pursuant to the County's Diversion Efforts, as well as its status in funding additional non-carceral beds scheduled to be added to the inventories of ODR and DMH after June 30, 2025, pursuant to the County's Diversion Efforts; and

    (d)    the impact the County's progress in adding non-carceral beds to the inventories of ODR and DMH is having on eliminating backlogs in the IRC.

(*Id.* ¶ 14).

# III.

# BETWEEN JANUARY 2024 AND MARCH 2024, DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE IN ALL BUT ONE AREA OF THE STIPULATED ORDER

**A.   Defendants Provided Plaintiffs With Timely Monthly Status Reports**

As required by the Stipulated Order, Defendants have fully complied with the Stipulated Order's requirement that they send a monthly status report with respect to Paragraphs 1-4 to Plaintiffs no later than the 10th day of the following month. On February 9, 2024, March 8, 2024, and April 10, 2024, Defendants transmitted timely monthly status reports to Plaintiffs via e-mail.[2]

**B.   Defendants Have Implemented and Maintained the Remedial Actions Outlined in the Stipulated Order**

As first reported in the October 2023 Quarterly Report, Defendants implemented the Remedial Actions described in Paragraph 8 of the Stipulated Order within the required 30 days of the Court entering the Stipulated Order on June 22, 2023. (Dkt. No. 413 at 9-11). Defendants have continued these Remedial Actions, including, but not limited to, training staff on the Stipulated Order's requirements, maintaining CHS's staffing plan, sustaining a cleaning schedule for the IRC, and utilizing SIMS to track inmate movements in the IRC and capture potential violations of the Stipulated Order's requirements.

---

[2] Counsel for Plaintiffs can also track Defendants' performance of the Stipulated Order's requirements under paragraphs 1-4 via daily SIMS reports sent by the LASD. These reports track potential violations of the Stipulated Order and provide detailed information concerning the duration and explanation for the violation's cause.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## C. In the Third Quarterly Reporting Period, Defendants Nearly Achieved Substantial Compliance With Every Provision of the Stipulated Order Across the Entirety of the Reporting Period

Data from SIMS confirms that in the most recent quarter Defendants achieved substantial compliance with Paragraphs 1, 2, and 4 of the Stipulated Order, but due to one violation in March 2024 involving the circumstances of a single inmate, failed to reach substantial compliance with Paragraph 3 for all three months.[3]

1. *Defendants Achieved Substantial (and Nearly Perfect) Compliance With Paragraphs 1-4 in January 2024 and February 2024*

<u>For January 2024</u>, Defendants reported substantial compliance with Paragraphs 1-4 of the Stipulated Order. There were **zero** reported violations of the 24-hour limitation, **zero** violations of the IRC Front Bench 4-hour limitation, **one** reported violation of the 12-hour cell limitation, and the IRC Cage area was not utilized at any point in January 2024.

The lone violation of the Stipulated Order during this month occurred on January 3, 2024, when an inmate remained in a cell for 1 hour and 39 minutes beyond the 12-hour limit set by Paragraph 3. The individual voluntarily appeared at the IRC that day because he had been sentenced with a date and time to surrender to a custody facility. However, the LASD was unable to book him at the time of his arrival because the Los Angeles Regional Crime Information System and the Automated Jail Information System ("AJIS") were temporarily down, and, as a result, the individual could also not be added to SIMS to electronically track his movements in the IRC. Although IRC staff manually tracked this individual's movements in the IRC, they believed it was necessary to place him in a cell for his safety until he could be booked and the LASD could determine an appropriate

---

[3] Defendants are also in Substantial Compliance with Paragraphs 5 and 6 of the Stipulated Order.

security level or special handle categorization in his case. LASD supervisors later conducted a video surveillance review and confirmed this individual was an IRC holding cell 1 hour and 39 minutes beyond the 12-hour limit set in the Stipulated Order.

For February 2024, there were **zero** reported violations of the 24-hour limitation, **zero** violations of the IRC Front Bench 4-hour limitation, and **one** reported violation of the 12-hour cell limitation (which Defendants believe does not constitute a violation since it resulted from an inmate refusing to leave the holding cell where he was placed in the IRC after he was requested to do so within the 12-hour time limit). The IRC Cage was not utilized at any point in February 2024.

2.  *In March 2024 Defendants Failed to Achieve Substantial Compliance with Paragraph 3 Due to One Non-Compliant Incident*

Defendants reported substantial compliance with Paragraphs 1, 2, and 4 of the Stipulated Order for March 2024, but due to a single violation of the 12-hour cell limitation, which occurred on March 22, 2024, the LASD could not report substantial compliance with Paragraph 3 of the Stipulated Order for the month.

There were **four** reported violations of the 24-hour limitation during March 2024 (although Defendants contend that one does not constitute a violation because the inmate was in urgent care at the time of the violation with access to a bed).

One 24-hour violation occurred on March 21, 2024, due to the LASD moving an individual from Module 231 to the release processing area shortly before that individual reached the 24-hour limitation set forth in Paragraph 1 of the Stipulated Order. Although the individual was processed and released from custody altogether, the LASD incurred a short, 31-minute violation, in his case.

The other two violations were the byproduct of a glitch in SIMS which arises when an inmate's movement record is simultaneously updated with two separate entries. The glitch causes SIMS to exclude the inmate's record from the SIMS violations tracking report, hampering the IRC staff's ability to recognize potential

8

and ongoing violations in real time. When an inmate's individual record is updated, the inmate appears on the tracking report.

On March 2, 2024, the LASD updated an inmate's record simultaneously to reflect that he had received a pass to Module 4300 and had been moved to the IRC Custody line. This simultaneous update caused SIMS to exclude his record from the tracking report. The LASD later updated SIMS to reflect that the inmate had received a Release on Bond Pass and that the LASD had cleared that pass. When this update occurred, SIMS began reporting a violation of the 24-hour limitation and 12-hour cell limitation. Through a review of video surveillance, the LASD determined that the lengths of the violations were 3 hours and 12 minutes and 4 hours and 13 minutes, respectively.

On March 22, 2024, the same glitch occurred when an inmate's record was updated to show that the LASD had moved the inmate to an IRC cell and to reflect that he had received trustee housing (which he rejected). Unfortunately, the inmate's record was not further updated again until the LASD had incurred lengthier violations of the 24-hour and 12-hour limitations than the March 2nd incident described immediately above. Through video surveillance, the LASD found that the individual in this case remained in the IRC for 6 hours and 24 minutes beyond the 24-hour limit and in a cell for 14 hours and 18 minutes beyond the 12-hour limit set in the Stipulated Order.

A fourth reported violation, documented on March 3, 2024, occurred while an inmate was in urgent care receiving medical attention with access to a bed. Defendants maintain that these circumstances should not constitute violations of the Stipulated Order because urgent care is not located within the IRC and the

1  Stipulated Order does not include this area in its definition of the IRC.  (*See* Dkt.
2  No. 402 ¶ 1 (defining IRC areas)).[4]
3        In March 2024, there were **two** reported violations of the IRC Front Bench
4  4-hour limitation.  However, one was an erroneous report based on the LASD's
5  failure to update an inmate's movement from the bench prior to the 4-hour limit
6  elapsing.  (The inmate was actually moved before the 4-hour limit elapsed.)  The
7  other violation occurred on March 20, 2024, and it lasted approximately 11 minutes.
8        There were **three** reported violations of the 12-hour cell limitation.  The
9  LASD learned that one of the three was an erroneous report by SIMS after
10 reviewing the surveillance footage for the inmate and confirming that he had only
11 spent 2 hours and 20 minutes in an IRC cell.  The LASD has forwarded this issue
12 for internal technical review.  The remaining two 12-hour cell violations involve the
13 same individuals described above who were subject to 24-hour violations (occurring
14 on March 2 and March 22).  Although the SIMS glitch referenced above
15 substantially contributed to the LASD's failure to meet the Stipulated Order's
16 requirements in both of these cases, as IRC personnel were unable to track these
17 inmates via SIMS when these two violations occurred, inconsistent manual counting
18 procedures utilized by IRC deputies also played a significant role in these failures.
19 After experiencing the March 22 violation, LASD supervisors overseeing the IRC's
20 operations issued a reminder stressing the importance of adhering to its Inmate
21 Count Procedures Unit Order, which requires that manual counts be conducted using

---

23    [4] Defendants have long maintained this position and met and conferred with Plaintiffs on this issue on November 1, 2023.  Although the parties did not reach an agreement on this issue, Defendants confirmed they would continue to include these circumstances in the daily SIMS reports sent to counsel to ensure transparency when it comes to SIMS reporting.  Significantly, even if every such disputed violation was counted against Defendants during this quarterly reporting period, there would have been no change to Defendants' current report of substantial compliance with Paragraphs 1, 2, and 4 of the Stipulated Order.

reports from both SIMS and AJIS.  Additionally, while violations under these circumstances have been outliers,[5] Defendants recognize a need to begin supervisory inquiries for all violations of the Stipulated Order and conduct Unit Level investigations when violations occurred due to personnel oversight or mismanagement.  Defendants believe this added accountability will improve Defendants' performance during the rare situation when SIMS-related glitches occur.

     3.    *Despite the Single Setback that Occurred in March 2024 Centered on One Violation Taking Defendants Out of Substantial Compliance for that Month, Defendants Continue to Establish a Track Record Showing Substantially Improved Conditions in the IRC*

With the exception of the 12-hour violation on March 22, 2024, Defendants' performance over this quarterly period not only constituted substantial compliance, but far exceeded the agreed-upon limitations governing each area of inmate movement covered by the Stipulated Order.  Indeed, as was the case described in the Second Quarterly Report, (Dkt. No. 415 at 10), even if all of the violations between January 1, 2024 and March 31, 2024 occurred in a single month (with the exception of the violation that occurred on March 22), Defendants would still be able to report substantial compliance for that single month because (a) there were fewer than 25 occasions over the entire reporting period when individuals were held in the IRC for more than 24 hours and no more than four days where more than 5 individuals were held for more than 24 hours; (b) there were no more than 5 occasions over the entire reporting period when individuals were tethered to the IRC Clinic Front Bench for

---

[5] In the three reporting quarters since the Court entered the Stipulated Order in June 2023, Defendants have only reported failing to achieve substantial compliance in one other instance, which also involved a SIMS glitch.  (Dkt. No. 413 at 14).

longer than four hours and no occasion where an individual was tethered for more than 6 hours; (c) there were no more than 15 occasions over the entire reporting period when individuals were held in an IRC holding cell for longer than 12 hours and no occasion where an individual was held in an IRC holding cell for more than 18 hours (excluding the incident on March 22, 2024); and (d) the IRC cage was not utilized at any point during the reporting period.

Defendants continue to establish a reliable track record that has seen full compliance of separate areas of the Stipulated Order on multiple occasions. Additionally, by the measure of 24-hour violations during the peak of the Summer 2022 crisis against this past quarter, Defendants' improvements after the development of SIMS and reaffirmed training by the LASD of its line staff reflect a remarkable, sustained turnaround to conditions in the IRC. (*See* Figure 1, below).

Figure 1

| IRC 24 Hour Violations: August 2022 v. Q1 2024 | |
|---|---|
| Month | 24+ Hours SIMS-Reported Violations |
| August 2022 | 2771 |
| January 2024 | 0 |
| February 2024 | 0 |
| March 2024 | 4* |

\* In March 2024, one reported violation arose while an inmate was in urgent care with access to a bed.

**IV.**

**NEW NON-CARCERAL BEDS HAVE BEEN ADDED THIS QUARTER**

The County has also continued to execute its plan to expand its inventory of non-carceral housing slots that can be used to divert or otherwise remove eligible

inmates from custody.[6]  As previously reported, this plan includes adding new slots to programs overseen by the Office of Diversion and Re-Entry ("ODR") that provide community housing and mental health treatment as a condition of early release for individuals incarcerated in the LACJ, and adding new Department of Mental Health ("DMH") beds for justice-involved individuals.  For Fiscal Year 23-2024, Defendants set a goal of adding 814 new beds between ODR and DMH.  As previously reported, DMH has already exceeded its first-year goal by adding 84 new beds.  Furthermore, after three reporting periods, ODR is making good progress towards its first-year goal of reaching 3,883 total beds or slots across three programs—ODR Housing, ODR MIST, and ODR FIST.  ODR now has 3,531 beds or slots across those three programs—2,573 slots in the ODR housing program, 203 beds for the treatment of misdemeanants found incompetent to stand trial, and 755 beds for the treatment of felony defendants incompetent to stand trial.[7]

## V.

## CONCLUSION

Although one violation prevented Defendants from reporting substantial compliance with the Stipulated Order's requirements in full for what would have

---

[6] While Defendants described in the Stipulated Order their plans to increase their capacity to provide non-carceral housing in order to achieve substantial compliance with the Stipulated Order's requirements, the Stipulated Order does not require that Defendants meet any quota in bringing a particular number of community beds on-line that can be used to eliminate overcrowding in the LACJ, or even that Defendants achieve their stated ramp-up plan, although Defendants are making considerable progress towards doing so.  Moreover, Paragraph 13 expressly states that Plaintiffs may not file any enforcement action based solely on Defendants' failure to implement these diversion efforts.  (Dkt. No. 402 ¶ 13).

[7] Note that ODR may move beds between these programs as program needs change from month to month, and DMH may also change from time to time the mix of bed types allocated to justice-involved individuals.

been the second consecutive quarter, Defendants quickly responded to the areas in need of improvement within the IRC identified as a result of that violation. The task of turning around a facility that faced a crisis in the Summer of 2022 remains on track and Defendants look forward to continuing their momentum toward consistently achieving sustained substantial compliance with the Stipulated Order's requirements going forward.

DATED: April 15, 2024              KENDALL BRILL & KELLY LLP

By:     /s/ Robert E. Dugdale
        Robert E. Dugdale

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

14

DEFENDANTS' THIRD QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION