OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
County Counsel
  dharrison@counsel.lacounty.gov
Dylan Ford (228699)
Deputy County Counsel
  dford@counsel.lacounty.gov
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone:  (213) 974-1807/(213) 974-1811
Facsimile:   (213) 687-8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
  rdugdale@kbkfirm.com
Michael J. McCarthy (334829)
  mmccarthy@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 272-7904
Facsimile:  (310) 556-2705

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and the COUNTY OF LOS ANGELES,<br><br>Defendants. | Case No. 75-cv-04111-DDP<br><br>**DEFENDANTS' FIFTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION [DKT. NO. 402]**<br><br>Hon. Dean D. Pregerson<br>Courtroom 9C |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............... 2

    A. Background ......................................................................................... 2

    B. The Stipulated Order .......................................................................... 3

III. IN THIS PAST QUARTER, DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE WITH THE STIPULATED ORDER'S REQUIREMENTS IN ALL BUT ONE AREA ............................ 5

    A. Defendants Provided Plaintiffs with Timely Monthly Status Reports ................................................................................................. 5

    B. Defendants Have Maintained the Remedial Actions Outlined in the Stipulated Order ........................................................................... 6

    C. In the Fifth Quarterly Reporting Period, Defendants Nearly Achieved Perfect Compliance with the Stipulated Order ................... 6

IV. THE COUNTY'S BED INVENTORY RAMP UP GOALS ........................... 9

V. CONCLUSION ............................................................................................. 11

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

DEFENDANTS' FIFTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

# I.

# INTRODUCTION

In the fifteen months since the Court entered its June 22, 2023 Stipulated Order ("Stipulated Order"), which governs certain conditions—including the total processing time of individuals—at the Inmate Reception Center ("IRC") of the Los Angeles County Jail ("LACJ"), the County of Los Angeles (the "County") and the Los Angeles County Sheriff's Department (the "LASD") (collectively, the "Defendants") have consistently achieved substantial compliance with the Stipulated Order's requirements and have validated their substantial compliance with data from the LASD's Shared Intake Management System ("SIMS"). The last six months of such reporting confirm that violations of the Stipulated Order are now extremely rare occurrences and that serious violations preventing Defendants from achieving substantial compliance in even one area of the Stipulated Order are even rarer. In short, the current conditions in the IRC reflect a remarkable turnaround from the conditions inmates faced in the IRC in August and September 2022, when Plaintiffs first sought injunctive relief from this Court.

In this Fifth Quarterly Report, which covers the period of July 1, 2024 to September 30, 2024, Defendants report, as they did in the Fourth Quarterly Report, only a <u>single</u> violation involving a <u>single</u> inmate, albeit a violation that prevents Defendants from reporting an unbroken six-month period of sustained substantial compliance with Paragraphs 1-4 of the Stipulated Order. As explained further below, this single violation arose as a result of a glitch in the SIMS platform that omitted an inmate's name from the report used by LASD deputies to track potential violations of the Stipulated Order and confirm inmate counts in the IRC's holding cells. Though Defendants faced a similar isolated setback in the Third Quarterly Reporting Period, which also prevented them from reporting a six-month period of sustained substantial compliance, this lone violation does not and cannot take away from Defendants' track record in speedily implementing the Remedial Actions set

forth in Paragraph 8 of the Stipulated Order and maintaining vigilance throughout the LASD ranks in identifying and eliminating circumstances that would lead to the kinds of violations which occurred en masse in the IRC two years ago.  Defendants continue to examine potential improvements to IRC processing in the hopes of achieving the goal of *perfect* compliance with the Stipulated Order in future reporting periods.  And although Defendants again fell slightly short of that goal this quarter as a result of a single violation involving a single inmate, Defendants have nonetheless now established a 15-month track record of complying with the Stipulated Order's requirements in a near perfect manner.

## II.
## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**A.     Background**

During the Summer of 2022, Defendants encountered a massive influx of inmates into the IRC when the COVID-related Emergency Bail Schedule was lifted at the end of June 2022; and months later, in February 2023, Correctional Health Services ("CHS") faced a momentary staffing crisis in the IRC.  Both of these challenges caused acute backlogs in processing inmates through the IRC and, for a time, impacted the general sanitary conditions and the timely provision of medical and mental health services in the IRC.  (Dkt. Nos. 413, 415).

On September 27, 2022, this Court granted Plaintiffs' unopposed Motion for a Temporary Restraining Order and Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Contempt Motion").  (Dkt. No. 351). As Defendants worked to meet the requirements of the preliminary injunction entered by the Court, the February 2023 CHS staffing shortage referenced above significantly hampered those efforts, prompting Plaintiffs' Motion for an Order to Show Cause Re: Contempt, filed on February 27, 2023.  (Dkt. No. 375).  Over the next four months, Defendants redoubled their efforts to improve conditions in the IRC, initiated a plan to implement corrective actions to realize those improvements,

and developed SIMS to provide IRC personnel with real-time data that tracks the location and overall flow of inmates into and out of the IRC, including data tracking the following areas central to the Court's injunctive relief: (1) the overall length of time an inmate spends in the IRC; (2) the length of time an inmate is tethered to the IRC Front Bench; and (3) the length of time an inmate is in a locked cell or cage in the IRC.

**B.     The Stipulated Order**

Prior to the evidentiary hearing on the Contempt Motion scheduled for June 27, 2023, counsel for Plaintiffs and counsel for Defendants met and conferred and reached a joint stipulation, which the Court granted in the form of an order issued on June 22, 2023 ("Stipulated Order"). (Dkt. No. 402).

The Stipulated Order permanently restrains and enjoins Defendants from violating Paragraphs 1-6 of the Stipulated Order and memorializes Defendants' plans for remedial efforts to address overcrowding, delays in processing, the need to move inmates into permanent housing, the provision of adequate medical and mental health care, and general living conditions in the IRC (the "Remedial Actions").[1] In this regard, Paragraphs 1-6 of the Stipulated Order set forth the following limitations and conditions for the processing of inmates through the IRC and requires Defendants to self-report violations of these limitations and conditions:

1. Holding an incarcerated person in the IRC for more than 24 hours.
2. Holding an incarcerated person on the IRC Clinic Front Bench, handcuffed, chained, or tethered to a chair or any other object, for more than four hours.
3. Holding an incarcerated person in an IRC holding cell for more than 12 hours total, or holding more people in a holding cell than its rated capacity by the Board of State and Community Corrections.

---

[1] A complete description of these Remedial Actions is included in Paragraph 8 of the Stipulated Order. (Dkt. No. 402 at 7-10).

4. Holding an incarcerated person in the IRC Clinic cage, when locked, for more than eight (8) hours total.

5. Holding an incarcerated person in the IRC Clinic area, cage, or any cell in the IRC when that location is not in a clean and sanitary condition, with access to functioning toilets, potable drinking water, clean water to wash, and sufficient garbage receptacles.

6. Holding an incarcerated person in the IRC clinic area, cage, or any cell in the IRC without providing ongoing access to adequate medical and mental health care, including but not limited to regular pill call.

(*Id.* ¶¶ 1-6).

The Stipulated Order further requires Defendants to document and provide monthly status reports to Plaintiffs and file a quarterly status report with the Court. (*Id.* ¶ 14). Paragraph 10 of the Stipulated Order defined the parameters that Defendants must meet each month to be considered in substantial compliance with their obligations under this agreement. In this regard, Defendants only achieve substantial compliance with the Stipulated Order's requirements if:

(a) fewer than 25 persons who are processed through the IRC in a calendar month are held in the IRC for more than 24 hours in violation of Paragraph 1 (and no person is held in the IRC in a calendar month for more than 36 hours);

(b) there are no more than four (4) days in a calendar month where more than five (5) people are held for more than 24 hours in violation of Paragraph 1;

(c) no more than five (5) people in a calendar month are handcuffed, chained, or otherwise tethered to the IRC Clinic Front Bench for more than four (4) hours in violation of Paragraph 2 (and no person is tethered to the IRC Clinic Front Bench for more than six (6) hours); and

(d) no more than fifteen (15) persons are kept in an IRC holding cell or the IRC cage in a calendar month in violation of paragraphs 3 and/or 4 (and no person is kept in an IRC holding cell for more than 18 hours or in the IRC cage for more than 12 hours).

(*Id.* ¶ 10).

Pursuant to the Stipulated Order, the County is also required, by no later than the 10th of each calendar month, to notify Plaintiffs if it believes Defendants achieved substantial compliance during the previous calendar month. Thereafter, within ten days of when the County provides Plaintiffs with this monthly assessment, Plaintiffs must notify Defendants if they dispute the County's account of Defendants' compliance with the Stipulated Order's requirements. (*Id.* ¶ 11).

The Quarterly Report, which covers the three months prior to its filing, requires the County to detail:

(a) the status of implementing the Remedial Actions;

(b) whether Defendants believe they are in substantial compliance with paragraphs 1-6 [], including data showing performance with paragraphs 1-4 as set forth in Paragraph 10;

(c) the County's progress in bringing on-line new non-carceral beds pursuant to the County's Diversion Efforts, as well as its status in funding additional non-carceral beds scheduled to be added to the inventories of ODR and DMH after June 30, 2025, pursuant to the County's Diversion Efforts; and

(d) the impact the County's progress in adding non-carceral beds to the inventories of ODR and DMH is having on eliminating backlogs in the IRC.

(*Id.* ¶ 14).

## III.

## IN THIS PAST QUARTER, DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE WITH THE STIPULATED ORDER'S REQUIREMENTS IN ALL BUT ONE AREA

**A.   Defendants Provided Plaintiffs with Timely Monthly Status Reports**

As required by the Stipulated Order, Defendants have fully complied with the Stipulated Order's requirement that they send a monthly status report with respect to Paragraphs 1-4 to Plaintiffs no later than the 10th day of the following month. On

August 7, 2024, September 10, 2024, and October 10, 2024, Defendants transmitted timely monthly status reports to Plaintiffs via e-mail.[2]

**B.     Defendants Have Maintained the Remedial Actions Outlined in the Stipulated Order**

As required by the Stipulated Order, Defendants implemented the Remedial Actions described in Paragraph 8 of the Stipulated Order within the required 30 days of the Court entering the Stipulated Order on June 22, 2023. Defendants reported the successful implementation of the Remedial Actions in their First Quarterly Report (Dkt. No. 413 at 9-11) and continue to maintain them, including, but not limited to, continuously training new staff on the Stipulated Order's requirements, maintaining a steady cleaning schedule in the IRC, and tracking inmate movements and potential violations of the Stipulated Order in real time via SIMS.

**C.     In the Fifth Quarterly Reporting Period, Defendants Nearly Achieved Perfect Compliance with the Stipulated Order**

Data from SIMS confirms that Defendants achieved substantial—and in fact, perfect—compliance with Paragraphs 1, 2, and 4 of the Stipulated Order during the most recent quarter spanning July 1, 2024 through September 30, 2024.[3] Defendants achieved substantial compliance with Paragraph 3 in July and August 2024, but due to one incident occurring four days before the end of the quarter, did not achieve the same in September 2024.

---

[2] Counsel for Plaintiffs can also track Defendants' performance of the Stipulated Order's requirements under paragraphs 1-4 via daily SIMS reports sent to them by the LASD. These reports track potential violations of the Stipulated Order and provide detailed information concerning the duration and explanation for any purported violation's cause.

[3] Defendants were also in substantial compliance with Paragraphs 5 and 6 of the Stipulated Order.

For July 2024, Defendants reported substantial compliance with Paragraphs 1-4 of the Stipulated Order. There was **one** reported violation of the 24-hour limitation (which Defendants believe does not constitute a violation), **zero** reported violations of the IRC Front Bench 4-hour limitation, **zero** reported violations of the 12-hour cell limitation, and the IRC Cage area was not utilized in July 2024.

The only reported violation of the Stipulated Order in July occurred on July 10, 2024, when an inmate was not moved to permanent housing in the LACJ within 24 hours because he was in the jail's urgent care facility, where he had access to a bed and was receiving medical attention. Defendants maintain that this circumstance does not constitute a violation of the Stipulated Order because the jail's urgent care facility is not located within the IRC and the Stipulated Order does not include this area in its definition of the IRC. (*See* Dkt. No. 402 ¶ 1 (defining IRC areas)).[4] Even if the Court were to consider this occurrence a violation of the Stipulated Order, it would not affect Defendants' reporting of substantial compliance for this month.

For August 2024, there were **zero** reported violations of the 24-hour limitation, **zero** reported violations of the IRC Front Bench 4-hour limitation, and **zero** reported violations of the 12-hour cell limitation. The IRC Cage was not utilized at any point in August 2024.

For September 2024, there was **one** reported violation of the 24-hour limitation (although the LASD determined that this instance was not actually a violation and was erroneously reported after a review of available surveillance video) and **zero** reported violations of the IRC Front Bench 4-hour limitation.

---

[4] Defendants have long held this position and met and conferred with Plaintiffs' counsel on this issue on November 1, 2023. Although the parties did not reach an agreement, Defendants agreed to continue to include these circumstances in the daily SIMS reports sent to counsel to ensure transparency when it comes to SIMS reporting.

However, the LASD experienced **one** violation of the 12-hour cell limitation involving a single inmate that caused Defendants to fall out of substantial compliance with Paragraph 3 of the Stipulated Order. As in prior months, the IRC Cage was not utilized at any point in September 2024.

The lone violation during September occurred on September 26, 2024, just a few days before the end of the quarter, when an inmate remained in an IRC cell for approximately 23 hours and 36 minutes. This occurred due to a glitch in SIMS which resulted in this General Population inmate not appearing on the SIMS report used by LASD deputies when conducting cell checks. The inmate's movement was logged into the LASD's Automated Jail Information System ("AJIS"), and the LASD had previously amended its policies to require deputies to conduct manual checks against both the SIMS and AJIS systems to identify inmates who are not accounted for in the SIMS system. A preliminary assessment reveals that two of these manual checks failed to identify the discrepancy in the SIMS and AJIS systems as to this single inmate, and, as a result, the inmate was only identified in the IRC by the LASD after spending nearly 23 hours in an IRC cell after a third manual comparison of the SIMS and AJIS systems revealed his presence in the IRC. The inmate was thereafter promptly relocated to a permanent housing area in the Men's Central Jail.

This violation initially did not appear on the daily SIMS reports which are circulated to Plaintiffs' counsel. Upon discovering the violation and conducting an initial review of what had occurred, a LASD supervisor contacted counsel for the Plaintiffs directly and reported the incident.

There is no indication incidents like this are a systematic problem in the IRC, as this is only the second time in the past six months where this type of glitch in the SIMS systems has resulted in a non-compliant incident in the IRC. Nonetheless, the LASD is continuing to investigate this matter to determine the appropriate responsive action to take to ensure that similar future violations do not reoccur.

# IV.

# THE COUNTY'S BED INVENTORY RAMP UP GOALS

The County has also continued during this quarter to execute its plan to expand its inventory of non-carceral housing slots that can be used to divert or otherwise remove eligible inmates from custody.[5] As previously reported, this plan includes adding new slots to programs overseen by the Office of Diversion and Re-Entry ("ODR") that provide community housing and mental health treatment as a condition of early release for individuals incarcerated in the LACJ, and adding new Department of Mental Health ("DMH") beds for justice-involved individuals. For Fiscal Year 2023-2024, Defendants set a goal of adding 814 new beds between ODR and DMH. As previously reported, both DMH and ODR exceeded this first-year goal, as DMH added 84 new beds during this time period and ODR reached 3,951 total beds or slots across three programs—ODR Housing, ODR MIST, and ODR FIST.[6]

For Fiscal Year 2024-25, Defendants set a goal of adding a total of 1,527 new ODR slots (for a total of 4,668 slots across ODR's three programs by June 30, 2025) over the current fiscal year and the prior fiscal year and 164 new DMH beds in total

---

[5] The Stipulated Order does not require that Defendants meet any quota in bringing a particular number of community beds on-line that can be used to eliminate overcrowding in the LACJ, or even that Defendants achieve their stated ramp-up plan (although Defendants notably met the first year benchmarks they set for themselves in June 2023). Nor does the Stipulated Order permit Plaintiffs to file an enforcement action predicated solely on the County's failure to implement these diversion efforts, unless those failures contribute to a failure to meet substantial compliance with the requirements of Paragraphs 1-6 in the Stipulated Order. (Dkt. No. 402 ¶ 13).

[6] ODR may move beds between these programs as program needs change from month to month, and DMH may also change from time to time the mix of bed types allocated to justice-involved individuals.

over that same two-year time span.  Defendants continue to be on pace to reach that goal.  ODR reached **4,126** total beds or slots across the three programs discussed above.  While DMH has not brought on any additional beds since July 1, 2024 to meet its Fiscal Year 2024-25 goal, it does have beds in development and expects to report on them later in the fiscal year.

Finally, in the first quarter of the fiscal year, **640** patients were released from jail to ODR Housing, ODR MIST, or ODR FIST.  Of those, **482** were evaluated to be P3 or P4 at the time of assessment.[7]  Additional information regarding releases by ODR program and P-level follow in the table below.  (*See* Figure 1, below).

Figure 1

| ODR P-Level Release Data (July 2024 – September 2024) | | | | |
|---|---|---|---|---|
| | ODR | MIST | FIST | Total |
| **Assessment P-Level** | | | | |
| P0 | 1 | 2 | 1 | 4 |
| P1 | 4 | 0 | 4 | 8 |
| P2 | 70 | 29 | 47 | 146 |
| P3 | 225 | 78 | 104 | 407 |
| P4 | 15 | 21 | 39 | 75 |
| Total | 315 | 130 | 195 | 640 |
| **Release P-Level** | | | | |
| No P Level | 1 | | | |
| P0 | 2 | 3 | 3 | 8 |
| P1 | 8 | 0 | 4 | 12 |
| P2 | 154 | 39 | 74 | 267 |
| P3 | 150 | 86 | 110 | 346 |
| P4 | 0 | 2 | 4 | 6 |
| Total | 315 | 130 | 195 | 640 |

---

[7] The ODR Housing program currently focuses on inmates classified as P3 or P4 for initial admission to their treatment program, but if an ODR participant is detained again in jail after a relapse or set-back, then that person is evaluated by ODR for return to the program regardless of their P level at the time of re-arrest.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# V.

# CONCLUSION

Defendants have established and continue to build upon a track record of achieving not only substantial compliance, but now nearly perfect compliance, with the Stipulated Order. While violations of any kind today are outliers, Defendants recognize that the requirements for six months of sustained substantial compliance in this case have not yet been met. However, Defendants are justifiably confident they will achieve that goal in upcoming reporting periods.

DATED: October 15, 2024         KENDALL BRILL & KELLY LLP

By: _____
  Robert E. Dugdale

  *Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*