OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
County Counsel
  dharrison@counsel.lacounty.gov
Dylan Ford (228699)
Deputy County Counsel
  dford@counsel.lacounty.gov
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone:   (213) 974-1807/(213) 974-1811
Facsimile:   (213) 687-8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
  rdugdale@kbkfirm.com
Michael J. McCarthy (334829)
  mmccarthy@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 272-7904
Facsimile:  (310) 556-2705

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and the COUNTY OF LOS ANGELES,<br><br>　　　　Defendants. | Case No. 75-cv-04111-DDP<br><br>**DEFENDANTS' SIXTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION [DKT. NO. 402]**<br><br>Hon. Dean D. Pregerson<br>Courtroom 9C |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

    A.    Background ........................................................................................ 2

    B.    The Stipulated Order ......................................................................... 3

III. IN THIS PAST QUARTER, DEFENDANTS ACHIEVED ............................... 5
SUBSTANTIAL COMPLIANCE WITH THE STIPULATED ORDER .................. 5
IN ALL THREE MONTHS COVERED BY THIS REPORT .................................. 5

    A.    Defendants Provided Plaintiffs with Monthly Reports of LASD's Substantial Compliance with Paragraphs 1-4 ........................................... 5

    B.    Defendants Have Implemented the Remedial Actions .......................... 6

    C.    In the Sixth Quarterly Reporting Period, Defendants Achieved Substantial Compliance with Paragraphs 1-4 of the Stipulated Order During Each Month Covered by This Reporting Period .............. 6

IV. THE COUNTY'S BED INVENTORY RAMP UP GOALS ............................... 8

V. CONCLUSION .................................................................................................. 10

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

DEFENDANTS' SIXTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

# I.

# INTRODUCTION

In the 18 months since the Court entered its June 22, 2023 Stipulated Order ("Stipulated Order") governing conditions in the Inmate Reception Center ("IRC") of the Los Angeles County Jail ("LACJ"), the County of Los Angeles (the "County") and the Los Angeles County Sheriff's Department (the "LASD") (collectively, the "Defendants") have transparently reported their compliance with the Stipulated Order's requirements, as well as the rare instances when there has been non-compliance with those requirements, using the LASD's Shared Intake Management System ("SIMS").  Indeed, since the date the Stipulated Order was entered, Defendants have, without fail, reported each "SIMS violation" that has occurred in the IRC to Plaintiffs' counsel on a daily basis, and have further provided an aggregated monthly report of SIMS violations at the end of each month as well as a formal correspondence circulated by Defendants' counsel reporting whether or not Defendants achieved substantial compliance with each of the requirements of the Stipulated Order each month.

As this transparent reporting provided by Defendants has established, Defendants achieved substantial compliance with the Stipulated Order's directives over each of the three months covered by this Quarterly Report; and, on the rare occasions over the last quarter when the SIMS System reported anything less than perfect compliance in a given day, Defendants promptly reported any alleged SIMS violation to Plaintiffs' counsel; investigated any such alleged violation to determine if any aspect of the Stipulated Order was, in fact, violated; and took prompt corrective actions to correct any misstep in compliance that was verified after further investigating and determining its cause.  Accordingly, while Defendants are reporting substantial, rather than perfect, compliance for each of the three months addressed in this Quarterly Report, Defendants nonetheless take pride in the fact that their continuing efforts to address challenges Defendants have historically faced in

the IRC have yielded 18 months of overwhelmingly positive results and drastically improved the circumstances faced by inmates who enter and exit the LACJ.

## II.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

During the Summer of 2022, Defendants encountered a massive influx of inmates into the IRC when the COVID-related Emergency Bail Schedule was lifted at the end of June 2022; and months later, in February 2023, Correctional Health Services ("CHS") faced a momentary staffing crisis in the IRC. Both of these challenges caused acute backlogs in processing inmates through the IRC and, for a time, impacted the general sanitary conditions and the timely provision of medical and mental health services in the IRC. (Dkt. Nos. 413, 415).

On September 27, 2022, this Court granted Plaintiffs' unopposed Motion for a Temporary Restraining Order and Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Contempt Motion"). (Dkt. No. 351). As Defendants worked to meet the requirements of the preliminary injunction entered by the Court, the February 2023 CHS staffing shortage referenced above significantly hampered those efforts, prompting Plaintiffs' Motion for an Order to Show Cause Re: Contempt, filed on February 27, 2023. (Dkt. No. 375). Over the next four months, Defendants redoubled their efforts to improve conditions in the IRC, initiated a plan to implement corrective actions to realize those improvements, and developed SIMS to provide IRC personnel with real-time data that tracks the location and overall flow of inmates into and out of the IRC, including data tracking the following areas central to the Court's injunctive relief: (1) the overall length of time an inmate spends in the IRC; (2) the length of time an inmate is tethered to the IRC Front Bench; and (3) the length of time an inmate is in a locked cell or cage in the IRC.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

2
DEFENDANTS' SIXTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

B. **The Stipulated Order**

Prior to the evidentiary hearing on the Contempt Motion scheduled for June 27, 2023, counsel for Plaintiffs and counsel for Defendants met and conferred and reached a joint stipulation, which the Court granted in the form of an order issued on June 22, 2023 ("Stipulated Order"). (Dkt. No. 402).

The Stipulated Order permanently restrains and enjoins Defendants from violating Paragraphs 1-6 of the Stipulated Order and memorializes Defendants' plans for remedial efforts to address overcrowding, delays in processing, the need to move inmates into permanent housing, the provision of adequate medical and mental health care, and general living conditions in the IRC (the "Remedial Actions").[1] In this regard, Paragraphs 1-6 of the Stipulated Order set forth the following limitations and conditions for the processing of inmates through the IRC and requires Defendants to self-report violations of these limitations and conditions:

1. Holding an incarcerated person in the IRC for more than 24 hours.
2. Holding an incarcerated person on the IRC Clinic Front Bench, handcuffed, chained, or tethered to a chair or any other object, for more than four hours.
3. Holding an incarcerated person in an IRC holding cell for more than 12 hours total, or holding more people in a holding cell than its rated capacity by the Board of State and Community Corrections.
4. Holding an incarcerated person in the IRC Clinic cage, when locked, for more than eight (8) hours total.
5. Holding an incarcerated person in the IRC Clinic area, cage, or any cell in the IRC when that location is not in a clean and sanitary condition, with access to functioning toilets, potable drinking water, clean water to wash, and sufficient garbage receptacles.

---

[1] A complete description of these Remedial Actions is included in Paragraph 8 of the Stipulated Order. (Dkt. No. 402 at 7-10).

     6.     Holding an incarcerated person in the IRC clinic area, cage, or any cell in the IRC without providing ongoing access to adequate medical and mental health care, including but not limited to regular pill call.

(*Id.* ¶¶ 1-6).

The Stipulated Order further requires Defendants to document and provide monthly status reports to Plaintiffs and file a quarterly status report with the Court. (*Id.* ¶ 14). Paragraph 10 of the Stipulated Order defined the parameters that Defendants must meet each month to be considered in substantial compliance with their obligations under this agreement. In this regard, Defendants only achieve substantial compliance with the Stipulated Order's requirements if:

    (a)    fewer than 25 persons who are processed through the IRC in a calendar month are held in the IRC for more than 24 hours in violation of Paragraph 1 (and no person is held in the IRC in a calendar month for more than 36 hours);

    (b)    there are no more than four (4) days in a calendar month where more than five (5) people are held for more than 24 hours in violation of Paragraph 1;

    (c)    no more than five (5) people in a calendar month are handcuffed, chained, or otherwise tethered to the IRC Clinic Front Bench for more than four (4) hours in violation of Paragraph 2 (and no person is tethered to the IRC Clinic Front Bench for more than six (6) hours); and

    (d)    no more than fifteen (15) persons are kept in an IRC holding cell or the IRC cage in a calendar month in violation of paragraphs 3 and/or 4 (and no person is kept in an IRC holding cell for more than 18 hours or in the IRC cage for more than 12 hours).

(*Id.* ¶ 10).

Pursuant to the Stipulated Order, the County is also required, by no later than the 10th of each calendar month, to notify Plaintiffs if it believes Defendants achieved substantial compliance during the previous calendar month. Thereafter, within ten days of when the County provides Plaintiffs with this monthly assessment, Plaintiffs must notify Defendants if they dispute the County's account of Defendants' compliance with the Stipulated Order's requirements. (*Id.* ¶ 11).

The Quarterly Report, which covers the three months prior to its filing, requires the County to detail:

 (a) the status of implementing the Remedial Actions;

 (b) whether Defendants believe they are in substantial compliance with paragraphs 1-6 [], including data showing performance with paragraphs 1-4 as set forth in Paragraph 10;

 (c) the County's progress in bringing on-line new non-carceral beds pursuant to the County's Diversion Efforts, as well as its status in funding additional non-carceral beds scheduled to be added to the inventories of ODR and DMH after June 30, 2025, pursuant to the County's Diversion Efforts; and

 (d) the impact the County's progress in adding non-carceral beds to the inventories of ODR and DMH is having on eliminating backlogs in the IRC.

(*Id.* ¶ 14).

## III.

## IN THIS PAST QUARTER, DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE WITH THE STIPULATED ORDER IN ALL THREE MONTHS COVERED BY THIS REPORT

**A. Defendants Provided Plaintiffs with Monthly Reports of LASD's Substantial Compliance with Paragraphs 1-4**

As required by Paragraph 11 of the Stipulated Order, Defendants have transmitted monthly reports detailing their compliance with Paragraphs 1-4. On November 11, 2024, December 11, 2024, and January 10, 2025, Defendants described the violations that occurred in the preceding months in e-mail correspondence with counsel for Plaintiffs and stated their position that they had achieved substantial compliance for each month.[2]

---

[2] Importantly, this correspondence is not the only confirmation of substantial compliance that counsel for Plaintiffs receive from Defendants. LASD directly

**B.  Defendants Have Implemented the Remedial Actions**

As required by the Stipulated Order, Defendants implemented the Remedial Actions described in Paragraph 8 of the Stipulated Order within 30 days of the Court entering the Stipulated Order on June 22, 2023. Defendants reported the successful implementation of the Remedial Actions in their First Quarterly Report (Dkt. No. 413 at 9-11) and continue to maintain them, including, but not limited to, continuously training new IRC staff on the Stipulated Order's requirements, maintaining a steady cleaning schedule in the IRC, and tracking inmate movements and potential violations of the Stipulated Order in real time via SIMS.

**C.  In the Sixth Quarterly Reporting Period, Defendants Achieved Substantial Compliance with Paragraphs 1-4 of the Stipulated Order During Each Month Covered by This Reporting Period**

Data from SIMS confirms that Defendants achieved substantial compliance with Paragraphs 1-4 of the Stipulated Order during the most recent quarter spanning October 1, 2024 through December 31, 2024.

<u>For October 2024</u>, there was **one** (erroneously) reported violation of the 24-hour limitation, **zero** reported violations of the IRC Front Bench 4-hour limitation, and **one** (erroneously) reported violation of the 12-hour cell limitation. LASD investigated the two reported violations, which related to the same inmate, and confirmed through video surveillance the inmate's actual processing and cell time did not amount to a violation of the Stipulated Order.

---

transmits the daily SIMS report for the preceding day (or in the case of weekends, a report covering the previous three to four days is sent at the beginning of the following week), as well as a monthly report at the start of the month. These reports provide detailed information concerning the duration and explanation for any purported violation's cause. LASD has also proactively provided further explanation of violations' underlying circumstances and in response to additional inquiries from counsel for Plaintiffs.

The IRC Cage was not utilized at any point in November 2024.

For November 2024, there were **zero** reported violations of the 24-hour limitation and **zero** reported violations of the IRC Front Bench 4-hour limitation. However, the LASD experienced **three** reported violations of the 12-hour cell limitation due to a SIMS and related data platforms outage caused by LASD's ongoing maintenance efforts to modernize IT infrastructure. Although IRC staff has been communicating with the Data Services Bureau in advance of the expected timeframes to efficiently coordinate prisoner movement and prevent violations, the outage ultimately required closure of the IRC on the evening of November 19 through the following morning. After conducting a review of recorded video surveillance, the LASD confirmed the three violations and determined their durations as: (i) 20 minutes; (ii) 1 hour and 41 minutes; and (iii) 5 hours, respectively.

The IRC Cage was not utilized at any point in November 2024.

For December 2024, there was **one** reported violation of the 24-hour limitation (amounting to <u>three</u> minutes) and **zero** reported violations of the IRC Front Bench 4-hour limitation.

SIMS reported **twenty-three** violations of the 12-hour cell limitation. However, after investigating each of these 23 instances, the LASD determined, through a review of video evidence and other means, that only **two** of these 23 reported SIMS violations featured inmates who spent in excess of 12-hours in an IRC cell. Both violations were a result of the IT maintenance efforts that also affected the LASD's compliance in November 2024. This SIMS outage and related data platforms outage began on December 19, 2024, and continued into the following day. The LASD has confirmed that the length of the two violations that occurred were 3 hours and 24 minutes and 1 hour and 44 minutes, respectively. The inmate related to the latter circumstance also required an in-custody release to his

DEFENDANTS' SIXTH QUARTERLY REPORT PURSUANT TO ORDER
GRANTING JOINT STIPULATION

designated rehabilitation program, and he was not picked up for transportation to that program until after the 12-hour limit had been reached.

As in prior months, the IRC Cage was not utilized at any point in December 2024.

## IV.

## THE COUNTY'S BED INVENTORY RAMP UP GOALS

The County continues to be on track in its goals to expand the inventory of non-carceral housing slots that can be used to divert or otherwise remove eligible inmates from custody.[3] As previously reported, this plan includes adding new slots to programs overseen by the Office of Diversion and Re-Entry ("ODR") that provide community housing and mental health treatment as a condition of early release for individuals incarcerated in the LACJ, and adding new Department of Mental Health ("DMH") beds for justice-involved individuals.

For Fiscal Year 2023-2024, Defendants set a goal of adding 814 new beds between ODR and DMH. As previously reported, both DMH and ODR exceeded this first-year goal, as DMH added 84 new beds during this time period and ODR reached 3,951 total beds or slots across three programs—ODR Housing, ODR MIST, and ODR FIST.[4]

---

[3] The Stipulated Order does not require that Defendants meet any quota in bringing a particular number of community beds on-line that can be used to eliminate overcrowding in the LACJ, or even that Defendants achieve their stated ramp-up plan (although Defendants notably met the first year benchmarks they set for themselves in June 2023). Nor does the Stipulated Order permit Plaintiffs to file an enforcement action predicated solely on the County's failure to implement these diversion efforts, unless those failures contribute to a failure to meet substantial compliance with the requirements of Paragraphs 1-6 in the Stipulated Order. (Dkt. No. 402 ¶ 13).

[4] ODR may move beds between these programs as program needs change from month to month, and DMH may also change from time to time the mix of bed

For Fiscal Year 2024-25, Defendants set a goal of a total of 4,668 slots across ODR's three programs by June 30, 2025. For DMH, the goal is a total of 164 new DMH beds added in FY2023-2024 and FY2024-2025. This goal contemplates 80 more DMH beds beyond the 84 that came online in FY2023-2024. Defendants continue to make progress towards those goals. ODR reached **4,224** total beds or slots across the three programs discussed above. As of January 1, 2025, DMH has contracted for 22 additional beds. When added to the 84 new beds in FY2023-24, this totals to 106 total beds towards DMH's two-year goal of 164 new beds.

Finally, in the first quarter of the fiscal year, **626** patients were released from jail to ODR Housing, ODR MIST, or ODR FIST. Of those, **462** were evaluated to be P3 or P4 at the time of assessment.[5] Additional information regarding releases by ODR program and P-level follow in the table below. (*See* Figure 1, below).

Figure 1

| ODR P-Level Release Data, October 1, 2024 – December 31, 2024 | | | | |
|---|---|---|---|---|
| | ODR | MIST | FIST | Total |
| **Assessment P-Level** | | | | |
| P0 | 0 | 1 | 1 | 2 |
| P0 | 0 | 1 | 1 | 2 |
| P1 | 6 | 0 | 1 | 7 |
| P2 | 83 | 29 | 43 | 155 |
| P3 | 211 | 69 | 116 | 396 |
| P4 | 12 | 21 | 33 | 66 |
| Total | 312 | 119 | 194 | 626 |
| **Release P-Level** | | | | |
| P0 | 1 | 2 | 1 | 4 |

---

types allocated to justice-involved individuals.

[5] The ODR Housing program currently focuses on inmates classified as P3 or P4 for initial admission to their treatment program, but if an ODR participant is detained again in jail after a relapse or set-back, then that person is evaluated by ODR for return to the program regardless of their P level at the time of re-arrest.

9

DEFENDANTS' SIXTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

| | | | | |
|---|---|---|---|---|
| P1 | 14 | 0 | 4 | 18 |
| P2 | 174 | 43 | 83 | 300 |
| P3 | 122 | 73 | 103 | 298 |
| P4 | 1 | 2 | 3 | 6 |
| Total | 312 | 120 | 194 | 626 |

## V.
## CONCLUSION

While acute issues that lead to potential violations may arise from time to time, Defendants' track record of substantial compliance with the Stipulated Order is now firmly established. In a manner transparent to Plaintiffs and the Court, Defendants will continue to confront the challenges they face in the IRC on the road toward a lasting substantial compliance.

DATED: January 15, 2025           KENDALL BRILL & KELLY LLP


By:      /s/ Robert E. Dugdale
         Robert E. Dugdale

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*