OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
County Counsel
  dharrison@counsel.lacounty.gov
Dylan Ford (228699)
Deputy County Counsel
  dford@counsel.lacounty.gov
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone:   (213) 974-1807/(213) 974-1811
Facsimile:    (213) 687-8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
  rdugdale@kbkfirm.com
Michael J. McCarthy (334829)
  mmccarthy@kbkfirm.com
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 272-7904
Facsimile:  (310) 556-2705

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DENNIS RUTHERFORD, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and the COUNTY OF LOS ANGELES,<br><br>        Defendants. | Case No. 75-cv-04111-DDP<br><br>**DEFENDANTS' SEVENTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION [DKT. NO. 402]**<br><br>Hon. Dean D. Pregerson<br>Courtroom 9C |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................. 1

    A.   Background ............................................................................................ 2

    B.   The Stipulated Order ............................................................................. 3

III. PUTTING ASIDE VIOLATIONS OF THE STIPULATED ORDER THAT OCCURRED ON NEW YEAR'S DAY 2025—AND WHICH HAVE NOT REOCCURRED IN THE THREE MONTHS SINCE—DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE WITH THE STIPULATED ORDER IN EACH MONTH COVERED BY THIS REPORT .................................................................................................. 5

    A.   Defendants Provided Plaintiffs with Monthly Reports of LASD's Performance ........................................................................................... 5

    B.   Defendants Implemented the Remedial Actions .................................. 6

    C.   Defendants Were in Substantial Compliance With All But One Paragraph During Each Month of This Past Quarter ............................ 6

IV.  THE COUNTY'S BED INVENTORY RAMP-UP GOALS ......................... 9

V.   CONCLUSION ............................................................................................... 11

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

DEFENDANTS' SEVENTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

# I.

# INTRODUCTION

Nearly two years into the implementation of the Stipulated Order and Defendants' use of the Shared Intake Monitoring System ("SIMS") to track inmate processing through the Inmate Reception Center (the "IRC"), Defendants have generally only encountered two circumstances that impact Defendants' ability to substantially comply with all aspects of the Stipulated Order governing inmate movement and conditions in the IRC. The first is when a rise in inmate arrivals in the aftermath of a holiday or on a holiday slows inmate processing and creates backlogs in the IRC. The second (and more common) is when a SIMS outage occurs and IRC staff are forced to manually track the movement of inmates, which occasionally leads to mistakes. Both situations occurred during the quarter covered by this report and were at the root of every single violation of the Stipulated Order that occurred during the period: (1) a wave of inmate arrivals that occurred on New Year's Day and severely affected IRC processing, leading to 30 instances when individuals were held for short amounts of time in the IRC beyond the Stipulated Order's 24-hour limit; and (2) two brief SIMS outages that occurred during the quarter that resulted in a handful of violations when deputies were forced to manually track inmate movement in the IRC.

Although the violations that occurred on New Year's Day caused the County to fall out of substantial compliance with the Stipulated Order's requirements during the month of January, the lessons learned from that event have resulted in the County avoiding a recurrence of that situation on subsequent holidays during the quarter; and the track record the County has established over the past 21 months confirms that the violations that occurred in the IRC as a result of the New Year's Day surge appear to be an aberration the County has avoided in the past and can avoid in the future. (Indeed, on January 1, 2025, Defendants experienced more violations of the Stipulated Order on that single day than they have experienced for

all other days combined since August 2023.) And putting this single day aside, the County continued its remarkable run in achieving sustained compliance with the Stipulated Order's requirements during the quarter covered by this Report, sustaining only a few violations otherwise and achieving substantial compliance with the Stipulated Order in both February 2025 and March 2025. Thus, while Defendants cannot report substantial compliance across the board during each month of this past quarter, they are nonetheless proud of their continued success in providing improved services in the IRC that in no way resemble the issues that led to the imposition of the Stipulated Order.

## II.
## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  Background

During the Summer of 2022, Defendants encountered a massive influx of inmates into the IRC when the COVID-related Emergency Bail Schedule was lifted at the end of June 2022; and months later, in February 2023, Correctional Health Services ("CHS") faced a momentary staffing crisis in the IRC. Both these challenges caused acute backlogs in processing inmates through the IRC and, for a time, impacted the general sanitary conditions and the timely provision of medical and mental health services in the IRC. (Dkt. Nos. 413, 415).

On September 27, 2022, this Court granted Plaintiffs' unopposed Motion for a Temporary Restraining Order and Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue. (Dkt. No. 351). As Defendants worked to meet the requirements of the preliminary injunction entered by the Court, the February 2023 CHS staffing shortage referenced above significantly hampered those efforts, prompting Plaintiffs' Motion for an Order to Show Cause Re: Contempt (the "Contempt Motion"), filed on February 27, 2023. (Dkt. No. 375). Over the next four months, Defendants redoubled their efforts to improve conditions in the IRC, initiated a plan to implement corrective actions to realize those improvements, and

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

developed SIMS to provide IRC personnel with real-time data that tracks the location and overall flow of inmates into and out of the IRC, including data tracking the following areas central to the Court's injunctive relief: (1) the overall length of time an inmate spends in the IRC; (2) the length of time an inmate is tethered to the IRC Front Bench; and (3) the length of time an inmate is in a locked cell or cage in the IRC.

**B.    The Stipulated Order**

Prior to the evidentiary hearing on the Contempt Motion scheduled for June 27, 2023, counsel for Plaintiffs and counsel for Defendants met and conferred and reached a joint stipulation, which the Court granted in the form of an order issued on June 22, 2023 ("Stipulated Order"). (Dkt. No. 402).

The Stipulated Order permanently restrains and enjoins Defendants from violating Paragraphs 1-6 of the Stipulated Order and memorializes Defendants' plans for remedial efforts to address overcrowding, delays in processing, the need to move inmates into permanent housing, the provision of adequate medical and mental health care, and general living conditions in the IRC (the "Remedial Actions").[1] In this regard, Paragraphs 1-6 of the Stipulated Order set forth the following limitations and conditions for the processing of inmates through the IRC and requires Defendants to self-report violations of these limitations and conditions:

1. Holding an incarcerated person in the IRC for more than 24 hours.
2. Holding an incarcerated person on the IRC Clinic Front Bench, handcuffed, chained, or tethered to a chair or any other object, for more than four hours.
3. Holding an incarcerated person in an IRC holding cell for more than 12 hours total, or holding more people in a holding cell than its rated capacity by the Board of State and Community Corrections.

---

[1] A complete description of these Remedial Actions is included in Paragraph 8 of the Stipulated Order. (Dkt. No. 402 at 7-10).

4. Holding an incarcerated person in the IRC Clinic cage, when locked, for more than eight (8) hours total.

5. Holding an incarcerated person in the IRC Clinic area, cage, or any cell in the IRC when that location is not in a clean and sanitary condition, with access to functioning toilets, potable drinking water, clean water to wash, and sufficient garbage receptacles.

6. Holding an incarcerated person in the IRC clinic area, cage, or any cell in the IRC without providing ongoing access to adequate medical and mental health care, including but not limited to regular pill call.

(*Id.* ¶¶ 1-6).

The Stipulated Order further requires Defendants to document and provide monthly status reports to Plaintiffs and file a quarterly status report with the Court. (*Id.* ¶ 14). Paragraph 10 of the Stipulated Order defined the parameters that Defendants must meet each month to be considered in substantial compliance with their obligations under this agreement. In this regard, Defendants only achieve substantial compliance with the Stipulated Order's requirements if:

(a) fewer than 25 persons who are processed through the IRC in a calendar month are held in the IRC for more than 24 hours in violation of Paragraph 1 (and no person is held in the IRC in a calendar month for more than 36 hours);

(b) there are no more than four (4) days in a calendar month where more than five (5) people are held for more than 24 hours in violation of Paragraph 1;

(c) no more than five (5) people in a calendar month are handcuffed, chained, or otherwise tethered to the IRC Clinic Front Bench for more than four (4) hours in violation of Paragraph 2 (and no person is tethered to the IRC Clinic Front Bench for more than six (6) hours); and

(d) no more than fifteen (15) persons are kept in an IRC holding cell or the IRC cage in a calendar month in violation of paragraphs 3 and/or 4 (and no person is kept in an IRC holding cell for more than 18 hours or in the IRC cage for more than 12 hours).

(*Id.* ¶ 10).

Pursuant to the Stipulated Order, the County is also required, by no later than the 10th of each calendar month, to notify Plaintiffs if it believes Defendants achieved substantial compliance during the previous calendar month. Thereafter, within ten days of when the County provides Plaintiffs with this monthly assessment, Plaintiffs must notify Defendants if they dispute the County's account of Defendants' compliance with the Stipulated Order's requirements. (*Id.* ¶ 11).

The Quarterly Report, which covers the three months prior to its filing, requires the County to detail:

(a) the status of implementing the Remedial Actions;

(b) whether Defendants believe they are in substantial compliance with paragraphs 1-6 [], including data showing performance with paragraphs 1-4 as set forth in Paragraph 10;

(c) the County's progress in bringing on-line new non-carceral beds pursuant to the County's Diversion Efforts, as well as its status in funding additional non-carceral beds scheduled to be added to the inventories of ODR and DMH after June 30, 2025, pursuant to the County's Diversion Efforts; and

(d) the impact the County's progress in adding non-carceral beds to the inventories of ODR and DMH is having on eliminating backlogs in the IRC.

(*Id.* ¶ 14).

## III.

## PUTTING ASIDE VIOLATIONS OF THE STIPULATED ORDER THAT OCCURRED ON NEW YEAR'S DAY 2025—AND WHICH HAVE NOT REOCCURRED IN THE THREE MONTHS SINCE—DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE WITH THE STIPULATED ORDER IN EACH MONTH COVERED BY THIS REPORT

**A.   Defendants Provided Plaintiffs with Monthly Reports of LASD's Performance**

As required by Paragraph 11 of the Stipulated Order, Defendants transmitted monthly reports detailing their compliance with Paragraphs 1-4. On February 10,

2025, March 10, 2025[2], and April 10, 2025, Defendants described the violations that occurred in the preceding months in e-mail correspondence with counsel for Plaintiffs and stated their position that they had achieved substantial compliance for each month, with the exception of one day which placed Defendants out of substantial compliance with Paragraph 1 during January 2025.[3]

### B. Defendants Implemented the Remedial Actions

As required by the Stipulated Order, Defendants implemented the Remedial Actions described in Paragraph 8 of the Stipulated Order within 30 days of the Court entering the Stipulated Order on June 22, 2023. Defendants reported the successful implementation of the Remedial Actions in their First Quarterly Report (Dkt. No. 413 at 9-11) and continue to maintain them, including, but not limited to, continuously training new IRC staff on the Stipulated Order's requirements, maintaining the regular cleaning schedule in the IRC, and tracking potential violations of the Stipulated Order in real time via SIMS.

### C. Defendants Were in Substantial Compliance With All But One Paragraph During Each Month of This Past Quarter

Data from SIMS confirms that Defendants achieved substantial compliance with Paragraphs 2-4 of the Stipulated Order during the most recent quarter and

---

[2] On March 13, 2025, counsel for Defendants transmitted a supplemental monthly report to account for additional, previously unreported violations as well.

[3] Importantly, this correspondence is not the only confirmation of substantial compliance that counsel for Plaintiffs receive from Defendants. LASD directly transmits the daily SIMS report for the preceding day (or in the case of weekends, a report covering the previous three to four days is sent at the beginning of the following week), as well as a monthly report at the start of the month. These reports provide detailed information concerning the duration and explanation for any purported violation's cause. LASD has also proactively provided further explanation of violations' underlying circumstances and in response to additional inquiries from counsel for Plaintiffs.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

6
DEFENDANTS' SEVENTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

achieved the same with the exception of one day, New Year's Day 2025, for Paragraph 1.

In January 2025, there were **31** reported violations of the 24-hour limitation (one reported erroneously), **one** reported violation of the IRC Front Bench 4-hour limitation, and **one** (erroneously) reported violation of the 12-hour cell limitation.

The 31 substantiated violations of the Stipulated Order all occurred on New Year's Day 2025, when the morning shift inmate arrivals in the IRC were 200+% greater when compared to the same shift and day of the previous year. The increase was due, in significant part, to the transfer of a significant number of inmates from LASD station jails to the IRC at nearly the same point in time on New Year's Day, and above-average screening time that was needed for many of the individuals who arrived that day to clear the IRC. This combination of circumstances led to bottlenecks in the IRC, which were unprecedented since the launch of SIMS and resulted in reverberations that eventually required the brief closure of the IRC.

Thirty of the 31 violations that occurred in the IRC on January 1, 2025, resulted because the Defendants failed to clear an inmate from the IRC within the Stipulated Order's 24-hour limitation; and that number of violations resulted in Defendants falling out of substantial compliance with the Stipulated Order's requirements for the month of January. (*See* Paragraph 10(a) (requiring that fewer than 25 inmates be processed through the IRC in less than 24 hours during a month for Defendants to achieve substantial compliance with the Stipulated Order for the month.) Although Defendants are disappointed that such a significant violation of the Stipulated Order occurred on the first day of the quarter, it is notable that no single violation of the Stipulated Order that occurred that day was of a long enough duration to have violated any other substantial compliance benchmark in Paragraph 10(a). For instance, no single violation of the Stipulated Order involved a failure to process an inmate through the IRC within 36 hours, which is another way to violate the Stipulated Order: Seven of the violations that occurred on January 1, 2025 were

less than one hour in length; 11 were less than two hours; six were less than three hours; and six were less than four hours. This spectrum of violations, where none was more than four hours, reflects that the cause of the violations was a dramatic increase in incoming inmates that unexpectedly slowed the IRC's otherwise capable processing abilities.

The lone four-hour IRC Front Bench violation that occurred in January 2025 lasted approximately 38 minutes.

The IRC Cage was not utilized at any point in January 2025, nor in February 2025 and March 2025.

In the wake of the events of New Year's Day, Defendants have developed greater notice and communications networks between the station jails and the IRC in order to be better prepared for any threat that a flood of new inmates might overrun the IRC. And notably, since January 1, 2025, the IRC has only had one other violation of the Stipulated Order's 24-hour limitation.

<u>In February 2025</u>, there were **four** reported violations of the 24-hour limitation (although one was determined to be erroneous and Defendants contend two others did not constitute actual violations of the Stipulated Order), **one** reported violation of the IRC Front Bench four-hour limitation, and **zero** reported violations of the 12-hour cell limitation.

Two reported violations of the 24-hour limitation occurred on February 13, 2025 and February 26, 2025. On each of these occasions, both inmates were in urgent care with access to a bed. Defendants have long maintained that these circumstances do not constitute a violation because the IRC is not defined in the Stipulated Order to include Urgent Care (and both inmates had access to a bed). A third violation was later determined to be erroneous, as the inmate had been moved to Module 231 prior to the expiration of permitted time under Paragraph 1. However, a substantiated violation of the 24-hour limitation occurred on February 27, 2025, and lasted approximately one hour and 32 minutes. The violation was the

8

DEFENDANTS' SEVENTH QUARTERLY REPORT PURSUANT TO ORDER
GRANTING JOINT STIPULATION

result of a SIMS outage when deputies were attempting to manually track all inmates' movement.

The single violation of the four-hour IRC Front Bench limitation set forth in the Stipulated Order occurred on February 26, 2025 during a SIMS outage. On this occasion, LASD staff responsible for manually tracking movement of the front bench did not follow procedures, leading to one violation of one hour and three minutes.

In March 2025, there were **zero** reported violations of the 24-hour limitation, **zero** reported violations of the IRC Front Bench four-hour limitation, and **one** reported violation of the 12-hour cell limitation (lasting approximately two minutes). The lone violation occurred during a SIMS outage when the LASD was forced to track inmate movement in the IRC manually.

## IV.

## THE COUNTY'S BED INVENTORY RAMP-UP GOALS

For Fiscal Year 2024-25, Defendants set a goal[4] of achieving a total of 4,668 slots across ODR's three programs—ODR Housing, ODR MIST, and ODR FIST—by June 30, 2025. For DMH, the goal is a total of 164 new DMH beds added in FY2023-2024 and FY2024-2025. This goal contemplates adding 80 more DMH beds beyond the 84 that came online in FY2023-2024. Defendants continue to make progress towards those goals.

---

[4] The Stipulated Order does not require that Defendants meet any quota in bringing a particular number of community beds on-line that can be used to eliminate overcrowding in the LACJ, or even that Defendants achieve their stated ramp-up plan. Nor does the Stipulated Order permit Plaintiffs to file an enforcement action predicated solely on the County's failure to implement these diversion efforts, unless those failures contribute to a failure to meet substantial compliance with the requirements of Paragraphs 1-6 in the Stipulated Order. (Dkt. No. 402 ¶ 13).

ODR has reached 4,388 total beds or slots across the three programs discussed above and is on track to meet its overall bed goal.[5]  In this past quarter, the 22 beds DMH contracted for last quarter came online, and DMH is finalizing contracts for an additional 34 beds.  DMH also added eight beds in the Second Quarter of 2024 that were inadvertently not reported in Defendants' Fifth Quarterly Report, bringing the year one and two total to 156 new beds.  As a result of these additions, DMH is now on track to reach its two-year goal of 164 new beds.

Finally, in the first quarter of the fiscal year, 620 patients were released from jail to ODR Housing, ODR MIST, or ODR FIST.  Of those, 482 were evaluated to be P3 or P4 at the time of assessment.[6]  Additional information regarding releases by ODR program and P-level follows in the table (*Figure 1*), below.

*Figure 1*

| ODR P-Level Release Data, October 1, 2024 – December 31, 2024 | | | | |
|---|---|---|---|---|
| Assessment P-Level | ODR Housing | ODR MIST | ODR FIST | Total |
| P0 | 0 | 1 | 0 | 1 |
| P1 | 2 | 3 | 3 | 8 |
| P2 | 81 | 17 | 31 | 129 |
| P3 | 225 | 49 | 122 | 396 |
| P4 | 23 | 17 | 46 | 86 |
| Total | 331 | 87 | 202 | 620 |

---

[5] ODR may move beds between these programs as program needs change from month to month, and DMH may also change from time to time the mix of bed types allocated to justice-involved individuals.

[6] The ODR Housing program currently focuses on inmates classified as P3 or P4 for initial admission to their treatment program, but if an ODR participant is detained again in jail after a relapse or set-back, then that person is evaluated by ODR for return to the program regardless of their P level at the time of re-arrest.  In addition, ODR also considers referrals for P2 inmates housed in Enhanced Mental Health Moderate Observation Housing dorms.

| | ODR Housing | ODR MIST | ODR FIST | Total |
|---|---|---|---|---|
| Release P-Level | | | | |
| P0 | 0 | 1 | 0 | 1 |
| P1 | 9 | 3 | 5 | 17 |
| P2 | 198 | 32 | 75 | 305 |
| P3 | 123 | 50 | 117 | 290 |
| P4 | 1 | 2 | 5 | 7 |
| Total | 331 | 87 | 202 | 620 |

## V.

## CONCLUSION

The County is pleased to report that its adherence with the Stipulated Order's requirements continues to be laudable. Although the IRC occasionally experiences SIMS outages or other acute (but temporally short) events that impact its ability to achieve substantial compliance across the board, as was the case of New Year's Day 2025, those events are a demonstrable rarity, and the County remains committed to developing processes that will eliminate these aberrational instances of non-compliance with the Stipulated Order altogether.

DATED: April 15, 2025                KENDALL BRILL & KELLY LLP


By:   /s/ Robert E. Dugdale
      Robert E. Dugdale

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*