OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
County Counsel
  dharrison@counsel.lacounty.gov
Dylan Ford (228699)
Deputy County Counsel
  dford@counsel.lacounty.gov
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone:  (213) 974-1807/(213) 974-1811
Facsimile:   (213) 687-8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
  rdugdale@kbkfirm.com
Michael J. McCarthy (334829)
  mmccarthy@kbkfirm.com
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 272-7904
Facsimile:  (310) 556-2705

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DENNIS RUTHERFORD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, and the COUNTY OF LOS ANGELES, <br><br> Defendants. | Case No. 75-cv-04111-DDP <br><br> **DEFENDANTS' EIGHTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION [DKT. NO. 402]** |

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

DEFENDANTS' EIGHTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................... 2

    A.    Background ........................................................................................... 2

    B.    The Stipulated Order ........................................................................... 2

III. DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE WITH THE STIPULATED ORDER IN EACH MONTH COVERED BY THIS REPORT .................................................................................................... 5

    A.    Defendants Provided Plaintiffs with Monthly Reports of the LASD's Compliance with the Stipulated Order ...................................... 5

    B.    Defendants Implemented the Remedial Actions .................................. 6

    C.    Defendants Were in Substantial Compliance With the Requirements in Each of Paragraphs 1-4 of the Stipulated Order During Each Month of This Past Quarter ................................................ 6

IV. THE COUNTY'S BED INVENTORY RAMP-UP GOALS ............................... 9

V. CONCLUSION ...................................................................................................... 11

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

# I.
# INTRODUCTION

As the Stipulated Order passes its two-year milestone, Defendants' continued operation of the Shared Intake Monitoring System ("SIMS"), developed in the Spring of 2023 to track inmate processing through the Inmate Reception Center (the "IRC"), has helped the Defendants amass a record of substantial compliance with that order blemished only by the most extraordinary and acute circumstances. During this past quarter, Defendants are pleased to report that, despite facing more than one SIMS outage and navigating the IRC through Memorial Day Weekend and other busy times in the IRC caused by abnormally larger influxes of new inmates into the Los Angeles County Jail System due to the implementation of Proposition 36, they were able to achieve substantial compliance in April 2025, May 2025, and June 2025. In fact, during that three-month span, there were only **four** violations of the Stipulated Order at all, none of which served to bring Defendants out of substantial compliance with the Stipulated Order's requirements.

The remarkable improvement in the flow of inmates through the IRC over the last two years has not only been a story of Defendants' consistent effort to provide better conditions for inmates in the IRC but also a testament to their transparency. For the second time in two quarters, a computer system error impacted Defendants' reporting of violations to counsel for Plaintiffs. Although the previously unreported violation, which occurred in May 2025, would not have impacted Defendants' report of substantial compliance for that month, they promptly issued a correction and provided an explanation of the possible underlying cause of the error.

While it has been two years since the Stipulated Order was entered, Defendants continue to uncover areas of improvement and pursue solutions to make perfect compliance with that order a reality; and it is clearer now than ever that, when that goal is reached, Defendants' reporting that day will be beyond reproach.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

## II.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

During the Summer of 2022, Defendants encountered a massive influx of inmates into the IRC when the COVID-related Emergency Bail Schedule was lifted at the end of June 2022; and months later, in February 2023, Correctional Health Services ("CHS") faced a momentary staffing crisis in the IRC. Both these challenges caused acute backlogs in processing inmates through the IRC and, for a time, impacted the general sanitary conditions and the timely provision of medical and mental health services in the IRC. (Dkt. Nos. 413, 415).

On September 27, 2022, this Court granted Plaintiffs' unopposed Motion for a Temporary Restraining Order and Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue. (Dkt. No. 351). As Defendants worked to meet the requirements of the preliminary injunction entered by the Court, the February 2023 CHS staffing shortage referenced above significantly hampered those efforts, prompting Plaintiffs' Motion for an Order to Show Cause Re: Contempt (the "Contempt Motion"), filed on February 27, 2023. (Dkt. No. 375). Over the next four months, Defendants redoubled their efforts to improve conditions in the IRC, initiated a plan to implement corrective actions to realize those improvements, and developed SIMS to provide IRC personnel with real-time data that tracks the location and overall flow of inmates into and out of the IRC, including data tracking the following areas central to the Court's injunctive relief: (1) the overall length of time an inmate spends in the IRC; (2) the length of time an inmate is tethered to the IRC Front Bench; and (3) the length of time an inmate is in a locked cell or cage in the IRC.

### B. The Stipulated Order

Prior to the evidentiary hearing on the Contempt Motion scheduled for June 27, 2023, counsel for Plaintiffs and counsel for Defendants met and conferred

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

2

DEFENDANTS' EIGHTH QUARTERLY REPORT PURSUANT TO ORDER
GRANTING JOINT STIPULATION

and reached a joint stipulation, which the Court granted in the form of an order issued on June 22, 2023 ("Stipulated Order"). (Dkt. No. 402).

The Stipulated Order permanently restrains and enjoins Defendants from violating Paragraphs 1-6 of the Stipulated Order and memorializes Defendants' plans for remedial efforts to address overcrowding, delays in processing, the need to move inmates into permanent housing, the provision of adequate medical and mental health care, and general living conditions in the IRC (the "Remedial Actions").[1] In this regard, Paragraphs 1-6 of the Stipulated Order set forth the following limitations and conditions for the processing of inmates through the IRC and requires Defendants to self-report violations of these limitations and conditions:

1. Holding an incarcerated person in the IRC for more than 24 hours.

2. Holding an incarcerated person on the IRC Clinic Front Bench, handcuffed, chained, or tethered to a chair or any other object, for more than four hours.

3. Holding an incarcerated person in an IRC holding cell for more than 12 hours total, or holding more people in a holding cell than its rated capacity by the Board of State and Community Corrections.

4. Holding an incarcerated person in the IRC Clinic cage, when locked, for more than eight (8) hours total.

5. Holding an incarcerated person in the IRC Clinic area, cage, or any cell in the IRC when that location is not in a clean and sanitary condition, with access to functioning toilets, potable drinking water, clean water to wash, and sufficient garbage receptacles.

6. Holding an incarcerated person in the IRC clinic area, cage, or any cell in the IRC without providing ongoing access to adequate medical and mental health care, including but not limited to regular pill call.

(*Id.* ¶¶ 1-6).

---

[1] A complete description of these Remedial Actions is included in Paragraph 8 of the Stipulated Order. (Dkt. No. 402 at 7-10).

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

The Stipulated Order further requires Defendants to document and provide monthly status reports to Plaintiffs and file a quarterly status report with the Court. (*Id.* ¶ 14). Paragraph 10 of the Stipulated Order defined the parameters that Defendants must meet each month to be considered in substantial compliance with their obligations under this agreement. In this regard, Defendants only achieve substantial compliance with the Stipulated Order's requirements if:

(a) fewer than 25 persons who are processed through the IRC in a calendar month are held in the IRC for more than 24 hours in violation of Paragraph 1 (and no person is held in the IRC in a calendar month for more than 36 hours);

(b) there are no more than four (4) days in a calendar month where more than five (5) people are held for more than 24 hours in violation of Paragraph 1;

(c) no more than five (5) people in a calendar month are handcuffed, chained, or otherwise tethered to the IRC Clinic Front Bench for more than four (4) hours in violation of Paragraph 2 (and no person is tethered to the IRC Clinic Front Bench for more than six (6) hours); and

(d) no more than fifteen (15) persons are kept in an IRC holding cell or the IRC cage in a calendar month in violation of paragraphs 3 and/or 4 (and no person is kept in an IRC holding cell for more than 18 hours or in the IRC cage for more than 12 hours).

(*Id.* ¶ 10).

Pursuant to the Stipulated Order, the County is also required, by no later than the 10th of each calendar month, to notify Plaintiffs if it believes Defendants achieved substantial compliance during the previous calendar month. Thereafter, within ten days of when the County provides Plaintiffs with this monthly assessment, Plaintiffs must notify Defendants if they dispute the County's account of Defendants' compliance with the Stipulated Order's requirements. (*Id.* ¶ 11).

The Quarterly Report, which covers the three months prior to its filing, requires the County to detail:

(a) the status of implementing the Remedial Actions;

(b) whether Defendants believe they are in substantial compliance with paragraphs 1-6 [], including data showing performance with paragraphs 1-4 as set forth in Paragraph 10;

(c) the County's progress in bringing on-line new non-carceral beds pursuant to the County's Diversion Efforts, as well as its status in funding additional non-carceral beds scheduled to be added to the inventories of ODR and DMH after June 30, 2025, pursuant to the County's Diversion Efforts; and

(d) the impact the County's progress in adding non-carceral beds to the inventories of ODR and DMH is having on eliminating backlogs in the IRC.

(*Id.* ¶ 14).

## III.

## DEFENDANTS ACHIEVED SUBSTANTIAL COMPLIANCE WITH THE STIPULATED ORDER IN EACH MONTH COVERED BY THIS REPORT

**A.  Defendants Provided Plaintiffs with Monthly Reports of the LASD's Compliance with the Stipulated Order**

As required by Paragraph 11 of the Stipulated Order, Defendants transmitted monthly reports each month during the Second Quarter of 2025 detailing their compliance with the requirements of Paragraphs 1-4 of the Stipulated Order. On May 10, 2025, June 8, 2025, and July 9, 2025[2], Defendants described the violations that occurred in the preceding months in correspondence with counsel for Plaintiffs

---

[2] The report sent on July 9, 2025 also described two additional violations that occurred in May 2025. Neither had been registered by SIMS in May 2025, and thus they were not reported in the daily correspondence reporting compliance with the Stipulated Order supplied to Plaintiffs' counsel or the May 2025 monthly compliance report sent to counsel for Plaintiffs. As noted below, LASD ultimately determined that one of the two violations was erroneously labeled as a violation and that the other belatedly reported violation did not alter Defendants' previously stated conclusion of substantial compliance reported in the May 2025 monthly compliance report.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

and stated their position that they had achieved substantial compliance for each month.[3]

**B.  Defendants Implemented the Remedial Actions**

As required by the Stipulated Order, Defendants implemented the Remedial Actions described in Paragraph 8 of the Stipulated Order within 30 days of the Court entering the Stipulated Order on June 22, 2023.  Defendants reported the successful implementation of the Remedial Actions in their First Quarterly Report (Dkt. No. 413 at 9-11) and continue to maintain them, including, but not limited to, continuously training new IRC staff on the Stipulated Order's requirements, maintaining the regular cleaning schedule in the IRC, and tracking potential violations of the Stipulated Order in real time via SIMS.

**C.  Defendants Were in Substantial Compliance With the Requirements in Each of Paragraphs 1-4 of the Stipulated Order During Each Month of This Past Quarter**

Data from SIMS confirms that Defendants achieved substantial compliance with Paragraphs 1-4 of the Stipulated Order.

For April 2025, there were **zero** reported violations of the 24-hour limitation, **one** reported violation of the IRC Front Bench four-hour limitation, and **zero** reported violations of the 12-hour cell limitation.

The lone four-hour IRC Front Bench violation, which occurred on April 27, 2025, lasted approximately nine minutes.  Importantly, the involved individual did not remain on the IRC Front Bench for a period of more than four consecutive

---

[3] Importantly, this correspondence is not the only confirmation of substantial compliance that counsel for Plaintiffs receive from Defendants.  On a regular basis, LASD directly transmits a report detailing all of the violations that have occurred month-to-date.  These reports provide detailed information concerning the duration and explanation for any purported violation's cause.  The LASD has also proactively provided further explanation of the violations' underlying circumstances in response to additional inquiries from counsel for Plaintiffs.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

6
DEFENDANTS' EIGHTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

hours, and this violation only occurred because an intervening cell placement was not of sufficient length to reset the individual's four-hour IRC Front Bench clock under the terms of the Stipulated Order.

The IRC Cage was not utilized at any point between April 2025 and June 2025.

For May 2025, there were **two** reported violations of the 24-hour limitation (although LASD determined one to be erroneous), **zero** reported violations of the IRC Front Bench four-hour limitation, and **one** reported violation of the 12-hour cell limitation.

On May 25, 2025, an inmate remained in the IRC for 2 hours and 10 minutes beyond the 24-hour processing limitation. The violation was the result of a computer error that assigned multiple booking numbers to the inmate which disrupted SIMS tracking of the specific inmate. A second processing violation was reported by SIMS to have occurred on May 29, 2025. Those circumstances also involved multiple booking numbers assigned to the same inmate. However, the LASD confirmed via review of CCTV footage that the processing time for this inmate was not longer than 24 hours. The erroneous report was linked to one of the inmate's booking numbers that had not been updated to reflect the inmate's actual movement.[4]

---

[4] SIMS did not report either of these violations during the month of May 2025. A system error within the Replicated Automated Justice Information System prevented the violations from appearing in SIMS. In June 2025, the error was resolved, and Defendants learned about and investigated the two possible violations linked to this error. Both were communicated to counsel for Plaintiffs in the June 2025 monthly compliance report.

Defendants are confident that such situations are related to the erroneous issuance of multiple booking numbers, that such situations are anomalous, and that when they occur, the resulting violations will not go permanently undetected.

The 12-hour cell violation occurred on May 17, 2025, after a SIMS outage affected tracking of the IRC cells and IRC Front Bench. During the outage, deputies manually monitoring the cells failed to properly track an inmate in a K6G cell, resulting in a violation of approximately 2 hours and 3 minutes.

<u>For June 2025</u>, there was **one** erroneously reported violation of the 24-hour limitation, **zero** reported violations of the IRC Front Bench four-hour limitation, and **one** violation of the 12-hour cell limitation, which was discovered upon CCTV surveillance video review of the erroneous 24-hour violation. The lone violation occurred because a technical error resulted in multiple booking numbers for the same inmate, which disrupted SIMS tracking.

On June 16, 2025, SIMS reported that an inmate had remained in the IRC for approximately 144 hours. After an investigation, which included a review of CCTV footage, LASD confirmed that SIMS tracking of the inmate was incorrect due to the existence of multiple booking numbers. There was no processing violation, but LASD's review of the inmate's movement discovered that he had remained in a cell in the IRC beyond the 12-hour limit. Because the violation went undetected due to very specific circumstances involving multiple booking numbers, Defendants have no reason to believe that SIMS is failing to detect other violations.

**D.  Defendants Have Maintained Substantial Compliance For Six Consecutive Months Between January 2, 2025 and July 15, 2025, Triggering an Important Mechanism Afforded by the Stipulated Order**

Defendants' substantial compliance throughout the past quarter builds on a record of substantial compliance that began on January 2, 2025—the day after the New Year Holiday led to a dramatic increase in arrivals at the IRC and a rare but unfortunate falling out of substantial compliance with Paragraph 1 of the Stipulated Order on that single day.

As Defendants have remained in substantial compliance with Paragraphs 1-4 into through July 2, 2025 (and indeed, through the date of this filing), they are

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

8

DEFENDANTS' EIGHTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

entitled to modify the Remedial Actions contained in Paragraphs 8(a) and 8(e)-8(g) as they deem appropriate with sufficient notice to counsel for Plaintiffs. Dkt. No. 402 ¶ 12.

At this time, Defendants have elected not to make any modifications to the above-mentioned Remedial Actions. Should this intention change, Defendants will notify counsel for Plaintiffs at least 14 days in advance in accordance with Paragraph 12 of the Stipulated Order.

## IV.
## THE COUNTY'S BED INVENTORY RAMP-UP GOALS

For Fiscal Year 2024-25, Defendants set a goal[5] of amassing a total of 4,668 slots across ODR's three programs—ODR Housing, ODR MIST, and ODR FIST—by June 30, 2025. For DMH, the goal was a total of 164 new DMH beds added in FY2023-2024 and FY2024-2025. Defendants have met and surpassed these goals.

ODR has surpassed its goal for FY 2023-2025 and reached 4,697 total beds or slots across the three programs discussed above.[6] Likewise, DMH has surpassed its goal and added a total of 168 beds over the course of the past two fiscal years.

Finally, in the fourth quarter of the fiscal year, 706 patients were released from jail to ODR Housing, ODR MIST, or ODR FIST. Of those, 429 were

---

[5] The Stipulated Order does not require that Defendants meet any quota in bringing a particular number of community beds on-line that can be used to eliminate overcrowding in the LACJ, or even that Defendants achieve their stated ramp-up plan. Nor does the Stipulated Order permit Plaintiffs to file an enforcement action predicated solely on the County's failure to implement these diversion efforts, unless those failures contribute to a failure to meet substantial compliance with the requirements of Paragraphs 1-6 in the Stipulated Order, which, as stated above, has not occurred. (Dkt. No. 402 ¶ 13).

[6] ODR may move beds between these programs as program needs change from month to month, and DMH may also change from time to time the mix of bed types allocated to justice-involved individuals.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

1 evaluated to be P3 or P4 at the time of assessment.[7] Additional information regarding releases by ODR program and P-level follows in the table (Figure 1) below.

*Figure 1*

| ODR P-Level Release Data, April 1, 2025 – June 30, 2025 | | | | |
|---|---|---|---|---|
| Assessment P-Level | ODR Housing | ODR MIST | ODR FIST | Total |
| P0 | 3 | 2 | 7 | 12 |
| P1 | 7 | 7 | 6 | 20 |
| P2 | 166 | 30 | 49 | 245 |
| P3 | 223 | 66 | 121 | 410 |
| P4 | 3 | 4 | 12 | 19 |
| Total | 402 | 109 | 195 | 706 |
| Release P-Level | ODR Housing | ODR MIST | ODR FIST | Total |
| P0 | 4 | 2 | 1 | 7 |
| P1 | 13 | 6 | 5 | 24 |
| P2 | 240 | 36 | 86 | 362 |
| P3 | 145 | 65 | 100 | 310 |
| P4 | 0 | 0 | 3 | 3 |
| Total | 402 | 109 | 195 | 706 |

---

[7] The ODR Housing program currently focuses on inmates classified as P3 or P4 for initial admission to their treatment program, but if an ODR participant is detained again in jail after a relapse or setback, then that person is evaluated by ODR for return to the program regardless of their P level at the time of re-arrest. In addition, ODR also considers referrals for P2 inmates housed in Enhanced Mental Health Moderate Observation Housing dorms.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

10
DEFENDANTS' EIGHTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION

# V.

# CONCLUSION

The Eighth Quarterly Report covers a critical milestone where the County reached substantial compliance with all of the Stipulated Order's requirements after building on a three-month stretch between January 2025 and March 2025. It is clear now that substantial compliance with the Stipulated Order in the IRC is **now the norm**, such that when the rare violation does occur, it is more than likely due to an extraordinary event rather than a failure of the LASD's routine operations. Defendants are rightfully proud of this record and the dedication of the LASD and CHS staff that has served as the foundation for such incredible progress.

DATED: July 15, 2025        KENDALL BRILL & KELLY LLP

By: _____
Robert E. Dugdale

*Attorneys for Defendants Los Angeles County Sheriff Robert Luna, in his Official Capacity, and the County of Los Angeles*

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

11

DEFENDANTS' EIGHTH QUARTERLY REPORT PURSUANT TO ORDER GRANTING JOINT STIPULATION